1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LARSON & ZIRZOW, LLC
ZACHARIAH LARSON, ESQ.
Nevada Bar No. 7787
E-mail: zlarson@lzlawnv.com
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
E-mail: mzirzow@lzlawnv.com
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Telephone: (702) 382-1170
Fascimile: (702) 382-1169

Attorneys for Defendant

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEVADA

In re:

MARC JOHN RANDAZZA,

        Debtor.

_____

EXCELSIOR MEDIA CORP., a Nevada
corporation; and LIBERTY MEDIA
HOLDINGS, LLC, a Nevada limited liability
company,

        Plaintiffs,

v.

MARC JOHN RANDAZZA, an individual,

        Defendant.

Case No.: BK-S-15-14956-abl
Chapter 11


Adv. No. 15-01193-abl


**MOTION TO DISMISS, OR IN THE
ALTERNATIVE, FOR PARTIAL
SUMMARY JUDGMENT**


Date:  May 9, 2016
Time:  1:30 p.m.

**LARSON & ZIRZOW, LLC**
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

## TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................ 1

II.  JURISDICTION AND VENUE ......................................................................... 1

III. FACTUAL AND PROCEDURAL BACKGROUND ......................................... 1

    A.   Procedural History. ................................................................................. 1

    B.   Statement of Facts. ................................................................................. 3

IV.  LEGAL ARGUMENT ........................................................................................ 4

    A.   Standard of Decision on a Motion to Dismiss. ...................................... 4

    B.   Collateral Estoppel Does Not Apply to the Unconfirmed IAA, and Thus Any Claims Premised on That Decision Having Preclusive Effect Must Be Dismissed. .............................................................................................. 6

    C.   The First Claim for Relief:  Section 523(a)(2)(A). ................................ 8

        1.   General Elements and the Allegations in the Plaintiffs' Complaint. ........... 8

        2.   Alleged Subsequent Breaches/Torts Do Not Establish Fraud in Originally Entering Into the Agreement. ....................................................... 9

        3.   Plaintiffs Failed to Plead Fraud with the Requisite Particularity. ............. 10

    D.   The Second Claim for Relief:  Section 523(a)(4). ............................... 13

        1.   General Elements and the Allegations in the Plaintiffs' Complaint. ......... 13

        2.   A Mere Attorney-Client Relationship is Not Sufficient, Rather an Actual Trustee Relationship and a Specific Trust *Res* of Trust Funds is Required. .................................................................................. 15

        3.   Plaintiffs Failed to Plead Fraud with the Requisite Particularity. ............. 18

    E.   The Third Claim for Relief:  Section 523(a)(6). ................................. 18

        1.   General Elements and the Allegations in Plaintiffs' Complaint. ............... 18

        2.   The Allegations Pled in the Complaint Are Not Tortious. ........................ 19

            a.   Alleged Breaches of Fiduciary Duty and Legal Malpractice. ......... 19

            b.   Alleged Spoliation and Destruction of Evidence. ......................... 20

            c.   Alleged Perjury and Misrepresentations to Investigative Bodies. .............................................................................................. 21

i

d.      Alleged Breaches of the Employment Agreement ........................22

3.      Plaintiffs Failed to Satisfy Various Statutory Elements Required for Their 523(a)(6) Claims. ....................................................................24

4.      Plaintiffs Failed to Plead Fraud with the Requisite Particularity. ...........26

F.      Plaintiffs' Other Miscellaneous Requests Must Also Be Dismissed.....................26

1.      Plaintiffs' Request for a Jury Trial Must Be Dismissed. ..........................26

2.      Plaintiffs' Request for Disgorgement Must Be Dismissed........................26

3.      Plaintiffs' Request for Attorneys' Fees and Costs Must Be Dismissed. ...............................................................................................28

G.      In the Alternative, Partial Summary Judgment is Appropriate..............................29

V.      CONCLUSION ............................................................................................................29

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# I. INTRODUCTION

1.      Defendant, Marc John Randazza (the "Defendant"), by and through his attorneys, the law firm of Larson & Zirzow, LLC, hereby respectfully submits his *Motion to Dismiss or in the Alternative, for Partial Summary Judgment* (the "Motion") relative to the *First Amended Complaint* (the "Complaint") [ECF No. 120] filed by plaintiffs, Excelsior Media Corp. ("Excelsior") and Liberty Media Holdings, LLC ("Liberty" and together with Excelsior, the "Plaintiffs"), for:  (a) failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (the "Rule(s)"), made applicable to this adversary proceeding pursuant to Rule 7012(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rule(s)"); (b) for failure to plead fraud with particularity pursuant to Rule 9(b), made applicable pursuant to Bankruptcy Rule 7009; and (c) for partial summary judgment pursuant to Rule 56, made applicable pursuant to Bankruptcy Rule 7056.[1]  This Motion is made and based on the points and authorities herein, the docket in Defendant's underlying bankruptcy case, judicial notice of which is respectfully requested, and any arguments of counsel made at the time of any hearing on this matter.

# II. JURISDICTION AND VENUE

2.      The Court has subject matter jurisdiction to consider and determine this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B) and (J).  Pursuant to Local Rule 7008.1, the Defendant consents to the entry of final orders and judgments by the bankruptcy judge in this matter.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408(1) and 1409(a).

# III. FACTUAL AND PROCEDURAL BACKGROUND

A.      **Procedural History.**

3.      On August 28, 2015 (the "Petition Date"), the Defendant filed his voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), thereby commencing his bankruptcy case (the "Chapter 11 Case").

---

[1] Unless otherwise indicated, all capitalized terms shall have the same meaning as set forth in the Complaint.  All references to "ECF" are to the docket in the Defendant's underlying chapter 11 bankruptcy case.

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

4.      On October 28, 2015, the Plaintiffs filed their *Motion to Modify the Automatic Stay to Allow a Pre-Petition Arbitration to Proceed to Judgment* (the "Stay Relief Motion") [ECF No. 60], which the Court denied by order entered on December 18, 2015 ("Denial of Stay Relief Order") [ECF No. 93].  Plaintiffs attached copies of the IAA [ECF No. 60-5, Ex. 1] and the Employment Agreement between the Defendant and Excelsior [ECF No. 60-7, Ex. 3] to their pleadings in support of their request for stay relief to return to the Abitration.

5.      On November 30, 2015, the Plaintiffs filed their original complaint against the Defendant (the "Original Complaint") [ECF No. 83], but never served it.  The Original Complaint pled claims against Defendant pursuant to sections 523(a)(2)(A) and (a)(4) of the Bankruptcy Code.  Excelsior also attached a copy of the IAA as an exhibit to the Original Complaint as well.

6.      On December 29, 2015, Excelsior filed a *Proof of Claim* (the "Proof of Claim") in the stated amount of "in excess of $1,552,614.29," being Claim No. 8.  Liberty did not file its own separate proof of claim, but is listed as "another name the creditor used with the debtor" in Excelsior's Proof of Claim.  The IAA was also attached to Excelsior's Proof of Claim.

7.      On January 22, 2016, the Plaintiffs filed a *Notice of Appeal* [ECF No. 99] from this Court's Denial of Stay Relief Order, however, the appeal was dismissed by order entered on February 24, 2016 [ECF No. 122].

8.      On February 10, 2016, which was almost two and a half months after the Plaintiffs filed their Original Complaint, they filed their amended Complaint, thereby asserting claims pursuant to not only sections 523(a)(2) and (a)(4), but also pursuant to section 523(a)(6). Plaintiffs' Complaint contains many vague and conclusory allegations with little attention to the actual statutory elements required for nondischargeability.  The Complaint also relies in large part on the IAA even though, as hereinafter explained, that unconfirmed decision has no preclusive effect.[2]  As such, both the Defendant's underlying liability, if any (as well as his

---

[2] Moreover, the IAA is rife with internal inconsistencies, contains remedies that are contrary to both California and Nevada law, and, on its face, demonstrates such manifest error and such a degree of substantive and procedural bias, that it should be discounted on its face.

counterclaims), as well as whether any of his potential liability is nondischargeable are both at issue in this adversary proceeding.  This Motion seeks to dismiss all claims asserted against Defendant.

**B.    Statement of Facts.**

9.    As set forth in the Employment Agreement, Defendant was hired as General Counsel for Excelsior on or about June 10, 2009; the Agreement makes no mention of Defendant representing Liberty.  The Plaintiffs are not "alter egos" of anyone, including each other. IAA, p. 2 n.1. Plaintiffs allege they are simply "sister" companies. See Complaint ¶ 7.

10.    Thus, for example, in the litigation described in ¶ 18 of the Complaint, Defendant represented Liberty through his law firm, Marc J. Randazza P.A. d/b/a Randazza Legal Group ("Marc J. Randazza P.A."), rather than through Excelsior as required by Nev. R. Prof. Conduct 5.4(d).  See Liberty Media Holdings, LLC v. FF Magnat Ltd. d/b/a Oron.com, No. 12-01057, 2012 WL 3255044 (D. Nev. Aug. 7, 2012).[3]

11.    On or about July 1, 2012, Liberty and FF Magnat Ltd. d/b/a Oron.com (hereinafter "Oron") reached a settlement of the litigation between them.  Complaint ¶ 19.  Marc J. Randazza P.A. thereafter successfully obtained an order enforcing the settlement agreement on behalf of Liberty.  Complaint ¶ 21; Liberty Media Holdings, LLC, 2012 WL 3255044.

12.    Plaintiffs allege that, thereafter, Defendant negotiated a new settlement agreement with Oron containing certain terms with which they disagreed.  Complaint ¶¶ 22 & 24.  Notably, in fulfillment of his ethical obligations, Defendant presented the terms of the proposed new agreement, and with a full opportunity for Liberty's principal to review the terms. Id. ¶ 22.  Defendant did not believe any new settlement was in order because he had filed a motion to enforce the original one, but Liberty's principal insisted on getting his settlement faster than the courts would normally allow.

13.    Plaintiffs did not enter into that new settlement and do not allege they did.  Neither do they claim that it was feasible for Defendant to have achieved a resolution of the

---

[3] "A court may take judicial notice of 'matters of public record' without converting a motion to dismiss into a motion for summary judgment." Lee v. City of L.A., 250 F.3d 668, 689 (9th Cir. 2001).

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

3

dispute with Oron superior to the July 1 agreement enforced in the August 7, 2012 decision.

14.    Subsequently, at the end of August 2012, Marc J. Randazza P.A., as counsel for Liberty, seized the settlement funds from Oron through court order.  Id. ¶ 28.  The following day, Marc J. Randazza P.A. proposed a distribution of the proceeds, however, Liberty disagreed with the proposed distribution.[4]  Id. ¶ 30.  Thereupon, Defendant recommended to Liberty that his firm withdraw from representing Liberty in further matters due to the dispute between the two.  Id. ¶ 31.  In response, Excelsior communicated that it would treat that recommendation as Defendant's resignation from his General Counsel position and alleges that Defendant did, in fact, resign.  Id. ¶ 32.  Defendant disputed this contention then and continues to dispute it now.

15.    Excelsior then refused to pay Randaza reimbursement of funds he had advanced ($25,000.00) and his remaining pay.

16.    In light of the dispute over whether Defendant resigned, Defendant brought claims in Arbitration for contractual obligations owed by Excelsior as set forth in the Employment Agreement, as well as for wrongful termination, and in the alternative, constructive discharge and retaliation.

17.    Excelsior brought counterclaims and, in a miscarriage of justice riddled with error and perjured testimony by Excelsior, the Arbitrator found for Excelsior.  Notably, however, nothing in the IAA showed that Plaintiffs suffered any actual harm at all on account of their claims of liability.  The IAA omits all causal nexus and fashioned an award based on whimsy.

## IV.  LEGAL ARGUMENT

### A.    Standard of Decision on a Motion to Dismiss.

18.    Dismissal under Rule 12(b)(6) is proper when the complaint either:  (1) lacks a cognizable legal theory, or (2) fails to allege sufficient facts to support a cognizable legal theory.  Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013).  "To survive a motion to dismiss, a

---

[4] Marc J. Randazza, P.A. was only required to deliver to Liberty those funds to which Liberty was actual entitled to receive.  See, e.g., Nev. R. Prof. Conduct 1.5(c) ("Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter and, if there is a recovery, showing the remittance to the client and the method of its determination.").

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. Plausibility requires pleading facts, as opposed to conclusory allegations or the "formulaic recitation of the elements of a cause of action," Twombly, 550 U.S. at 555, and must rise above the mere conceivability or possibility of unlawful conduct that entitles the pleader to relief, Iqbal, 556 U.S. at 678-79.

19. Under Twombly and Iqbal, a court must undertake a two-step process in ruling on a motion to dismiss for failure to state a claim. First, the court must determine what is merely a legal conclusion and what is a factual assertion. The court should accept all well pled factual allegations in a complaint as true; however, a court should not assume the truth of legal conclusions merely because the plaintiff casts them in the form of factual allegations. Second, the court must determine whether the factual allegations allege a plausible claim for relief. Dismissal is appropriate where the court determines that the facts as alleged do not amount to more than a mere possibility of a claim. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). Although the court "must take all of the factual allegations in the complaint as true," the court is also "not bound to accept as true a legal conclusion couched as a factual allegation." Id. "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." Caviness v. Horizon Cmty. Learning Ctr., Inc., 590 F.3d 806, 812 (9th Cir. 2010). And, as set forth below, claims sounding in fraud must meet the heightened pleading standard of Rule 9(b).

20. "Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion. However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss." Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citation omitted). Similarly,

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

5

"documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss." Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994). Moreover, under Federal Rule of Evidence 201, a court may take judicial notice of matters within the context of a motion to dismiss. See Mack v. S. Bay Beer Distribs., Inc., 798 F.2d 1279, 1282 (9th Cir. 1986).

21.    Within the context of a 12(b)(6) motion to dismiss, a court may dismiss a specific claim that is grouped together with other claims in a single cause of action without dismissing the entire cause of action. See Hill v. Opus Corp., 841 F. Supp. 2d 1070, 1082 (C.D. Cal. 2011); Perez v. Banana Republic, LLC, No. 14-cv-01132, 2014 WL 2918421, at *3 (E.D. Cal. June 26, 2014).

22.    The grounds for exceptions to a debtor's discharge pursuant to section 523(a) of the Bankruptcy Code are "to be construed liberally in favor of debtors and strictly against the objector." Devers v. Bank of Sheridan, Mont. (In re Devers), 759 F.2d 751, 754 (9th Cir. 1985); see also Gleason v. Thaw, 236 U.S. 558, 562 (1915) (holding that exceptions to discharge "should be confined to those plainly expressed").

**B.    Collateral Estoppel Does Not Apply to the Unconfirmed IAA, and Thus Any Claims Premised on That Decision Having Preclusive Effect Must Be Dismissed.**

23.    A significant portion of the Plaintiffs' Complaint is premised on the alleged collateral estoppel/issue preclusive effect of the IAA. See Complaint ¶¶ 43-47, 54(1)(i), 60(1)(i), 63, and 66(1)(i). As hereinafter set forth, however, the IAA is not entitled to any preclusive effect as a matter of law and thus all of the Plaintiffs' claims premised on that faulty assumption must be dismissed as a matter of law.

24.    It is well established that an unconfirmed arbitration decision does not have any preclusive effect in a subsequent action. See McDonald v. City of W. Branch, Mich., 466 U.S. 284, 288 (1984); Caldeira v. Cnty. of Kauai, 866 F.2d 1175, 1178 n.2 (9th Cir. 1989); In re Sandwich Islands Distilling Corp., No. 07-0102, 2009 WL 3806680, at *4 (Bankr. D. Haw. Nov. 12, 2009); Lum v. City and Cnty. of Honolulu, 728 F. Supp. 1452, 1457 (D. Haw. 1989).

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

25.  As a result, courts have held that unconfirmed arbitration awards are not entitled to issue preclusive effect in subsequent bankruptcy nondischargeability proceedings. See Khaligh v. Hadaegh (In re Khaligh), 338 B.R. 817, 831 n.2 (B.A.P. 9th Cir. 2006); Yin-Ching Houng v. Tatung Co. (In re Yin-Ching Houng), 499 B.R. 751, 761 (C.D. Cal. 2013), aff'd on other grounds, 2016 WL 145841 (9th Cir. Jan. 11, 2016).

26.  All of Plaintiffs' cited caselaw is inapposite because the cases all involve either final and confirmed arbitration awards, or involve rulings and faulty analogies that have been rejected by the Supreme Court, the Ninth Circuit and other courts within this Circuit. See Complaint, ¶ 47.  First, Plaintiffs cite to Molina v. Seror (In re Molina), 228 B.R. 248, 250 (B.A.P. 9th Cir. 1998), however, that case involved a final arbitration award that was also confirmed by a state court, which is clearly distinguishable from the IAA in the case at hand, which is interim and unconfirmed by a state court.

27.  Second, Plaintiffs cite to In re O'Neill, 260 B.R. 122 (Bankr. E.D. Tex. 2001), however, as explained by the Court in Houng, the Texas decisions of O'Neill and In re Marx, 171 B.R. 219 (Bankr. N.D. Tex. 1994), which gave preclusive effect to unconfirmed arbitration awards both rely on Crain v. Limbaugh (In re Limbaugh), 155 B.R. 952, 861 (Bankr. N.D. Tex. 1993), which held that a state court default judgment was entitled to issue preclusive effect in a subsequent bankruptcy action. See Houng, 499 B.R. at 760 nn. 36 & 37.  As explained in Houng, however, the Marx decision "erroneously held that an unreviewed arbitration award was entitled to 'full faith and credit' under 28 U.S.C. § 1738." Id. at 761 n.37.  Further, the Court in Houng noted that the preclusive effect of a default judgment at issue in Limbaugh is simply a different matter than the issue preclusive effect of an unconfirmed arbitration award. Id. at 760 n.36.  As such, this trio of Texas decisions rest on a faulty analogy that an unconfirmed and interim arbitration award should be treated the same as a default judgment.

28.  As such, the claims set forth in ¶¶ 54(1)(ii), 60(1)(i), 63, and 66(1)(i) of the Complaint, which are the subject allegations with each of Plaintiffs' claims, as well as ¶¶ 43-47 from the general allegations to the extent they are incorporated in those later claims, must all be dismissed for failure to state a claim pursuant to Rule 12(b)(6)/Bankruptcy Rule 7012(b)

because the IAA is not entitled to any preclusive effect as a matter of law.  In the alternative, as hereinafter discussed, to the extent the Court does not adjudicate such a matter within the context of a motion to dismiss, the Defendant also request that the Court grant partial summary judgment dismissing those claims.

**C.    The First Claim for Relief:  Section 523(a)(2)(A).**

      **1.    General Elements and the Allegations in the Plaintiffs' Complaint.**

29.    Section 523(a)(2)(A) of the Bankruptcy Code provides an exception from discharge for any debt "for money, property, services, or an extension, renewal or refinancing of credit, to the extent obtained by--(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."  11 U.S.C. § 523(a)(2)(A).

30.    To succeed on their 523(a)(2)(A) claims, the Plaintiffs will have to establish all of the following elements: (1) misrepresentation, fraudulent omission or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of the statement or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5) damage to the creditor proximately caused by its reliance on the debtor's statement or conduct.  Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman), 234 F.3d 1081, 1085 (9th Cir. 2000).

31.    Plaintiffs allege that Defendant obtained money and/or property from Plaintiffs by virtue of his being paid his salary and benefits pursuant to his Employment Agreement with Excelsior.  See Complaint, ¶¶ 49-50.  Quite incongruously, however, Plaintiffs' allegations of fraud all occurred long after the Defendant entered into his Employment Agreement with Excelsior in June 2009.  Specifically, the Plaintiffs focus on events allegedly occurring in mid-2012 (i.e., almost three years after entering into the Employment Agreement) regarding the Defendant's handling of the settlement of the Oron litigation, and other events thereafter occurring and related thereto.  See id. ¶¶ 18-35.  Likewise, the Plaintiffs' other general allegations also all involve matters occurring long after the parties entered into their Employment Agreement in June 2009.  See id. ¶¶ 36-38, and 52.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

**2.    Alleged Subsequent Breaches/Torts Do Not Establish Fraud in Originally Entering Into the Agreement.**

32.    The Plaintiffs' 523(a)(2)(A) claim is premised entirely on events occurring <u>after</u> Defendant entered into his Employment Agreement with Excelsior in June 2009, and they do not plead any specific alleged misrepresentations Defendant made <u>prior to or at the time</u> the parties actually entered into the Employment Agreement establishing that he never had the intent to comply with the terms of that Agreement.

33.    Fraud sufficient to support a claim pursuant to section 523(a)(2)(A) of the Bankruptcy Code cannot be premised upon a mere breach of contract; rather, to be actionable as fraud, the plaintiff must establish that the debtor <u>entered into the contract with the intent of never complying with its terms</u>. "'[A] promise <u>made</u> with a positive intent not to perform or without a <u>present</u> intent to perform satisfies § 523(a)(2)(A).'" <u>McCrary v. Barrack (In re Barrack)</u>, 217 B.R. 598, 606 (B.A.P. 9th Cir. 1998) (citing <u>Rubin v. West (In re Rubin)</u>, 875 F.2d 755, 759 (9th Cir. 1989)) (emphases added); <u>Kuan v. Lund (In re Lund)</u>, 202 B.R. 127, 131 (B.A.P. 9th Cir. 1996) ("A debtor must make a promise while knowing it to be false <u>at the time</u> in order to support a nondischargeability action under 11 U.S.C. § 523(a)(2)(A).") (emphasis added); <u>Soares v. Lorono</u>, No. 12-05979, 2015 WL 151705, at *17 (N.D. Cal. Jan. 12, 2015) (holding that section 523(a)(2)(A) "focuses on the intent of the parties at a discrete point in time: <u>when the debt was incurred</u>.") (emphasis added); <u>In re Yaikian</u>, 508 B.R. 175, 185 (Bankr. S.D. Cal. 2014) (holding that "[t]he intention not to perform must be present <u>when the agreement is formed</u>; otherwise only a breach of contract is proven.") (emphasis added); <u>see also</u> <u>Cai v. Shenzhen Smart-In Indus. Co., Ltd. (In re Cai)</u>, 571 Fed. Appx. 580, 582 (9th Cir. 2014) (holding that a debtor's failure to disclose to a creditor his or her <u>intent</u> not to pay <u>at the time of contract formation</u> may constitute a false representation under section 523(a)(2)(A).)

34.    "A <u>complete failure</u> to take steps towards carrying out a promise can support an inference that the promisor never intended to perform." <u>Field v. Baldwin (In re Baldwin)</u>, No. 11-00474, 2012 WL 909293, at *3 (Bankr. D. Haw. Mar. 15, 2012) (citing <u>In re Barnette</u>, 281 B.R. 869, 876 (Bankr. W.D. Pa. 2002)) (emphasis added).  Likewise, "'where the promisor knew or should have known of his prospective inability to perform,' the promise can be found to

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

1   be fraudulent." Barrack, 217 B.R. at 606 (citing In re Firestone, 26 B.R. 706, 715 (Bankr. S.D.

2   Fla. 1982)).

3       35.     By contrast, the mere failure to fulfill a promise to pay a debt is dischargeable

4   unless the debtor made the promise while not intending to pay and/or knowing that payment

5   would be impossible. Citibank (S.D.), N.A. v. Eashai (In re Eashai), 87 F.3d 1082, 1088 (9th

6   Cir. 1996); Strominger v. Giquinto (In re Giquinto), 388 B.R. 152, 166 (Bankr. E.D. Pa. 2008)

7   ("failure to perform as promised, standing alone, gives rise to a case for breach of contract, not

8   actionable fraud.").

9       36.     In the case at hand, the Plaintiffs improperly focus on allegations occurring in

10  2012 and thus 3 years after contract formation, and thus involve allegations occurring long after

11  the Defendant faithfully worked on behalf of Plaintiff for years.   Crucially, Plaintiffs do not

12  allege that Defendant never had the ability or intent to perform the Employment Agreement with

13  Excelsior at the time he entered into it in 2009.  As a result, Plaintiffs' 523(a)(2)(A) claim must

14  be dismissed as a matter of law, and any amendment for such an allegation would be futile given

15  the clear fact that Defendant did comply with the terms of the Agreement.

16      **3.    Plaintiffs Failed to Plead Fraud with the Requisite Particularity.**

17      37.     Further, Plaintiffs' allegations in their 523(a)(2)(A) claim lack the requisite

18  particularity required by the heightened federal pleading requirements for allegations of fraud.

19  Rule 9(b), made applicable by Bankruptcy Rule 7009, requires a party alleging fraud to state

20  "with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); Vess v. Ciba-

21  Geigy Corp., 317 F.3d 1097, 1103 (9th Cir. 2003).  To meet this standard the complaint must

22  identify "the who, what, when, where, and how of the misconduct charged," as well as "what is

23  false or misleading about the [purportedly fraudulent] statement, and why it is false." Cafasso

24  ex rel. United States v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1055 (9th Cir. 2011)

25  (quotation omitted).  If particular averments of fraud are insufficiently pled under Rule 9(b), a

26  court should "disregard" those averments, or "strip" them from the claim, and then the court

27  should then examine the allegations that remain to determine whether they state a claim.  Vess,

28  317 F.3d at 1105; Sanford v. MemberWorks, Inc., 625 F.3d 550, 558 (9th Cir. 2010).

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

38.    The heightened "particularity" requirements for allegations of fraud in Rule 9(b) apply to claims under 523(a)(2), (a)(4) and (a)(6) to the extent the underlying wrong asserted therein is premised on fraud. LBS Fin. Credit Union v. Craciun (In re Craciun), No. 13-1552, 2014 WL 2211742, at *4 (B.A.P. 9th Cir. May 28, 2014); Malekan v. Etesamnia (In re Etesmnia), No. 15-1005, 2015 WL 6736159 (B.A.P. 9th Cir. Feb. 3, 2015).

39.    As applied in the case at hand, Plaintiffs claims sounding in fraud lack allegations that the Defendant made any misrepresentations or omissions to Plaintiffs other than a general allegation that he would implictly abide by his duties as an attorney.[5]  Complaint, ¶ 49. They also allege that, through the course of his employment and representation he failed to disclose "various facts" including:

> [T]he true nature of his dealings with infringers of Plaintiffs [sic] intellectual property; his engagement in negotiations with adverse parties who had litigation pending against Plaintiffs, regarding those parties retaining his services in order to conflict him out of any future cases against them; his negotiations to broker a deal for the sale of a defendant (TNAFlix) while actively litigating against them on EL's behalf.

Id. ¶ 52.    Plaintiffs further allege that had Defendant not made the promises or made the disclosure they would not have paid him or taken his advice. Id. ¶¶ 50 & 53. These vague and conclusory allegations fail to clearly specify "the who, what, when, where, and how of the misconduct charged," as well as "what is false or misleading about the [purportedly fraudulent] statement, and why it is false.

40.    In particular, with respect to the Plaintiffs' allegations that the Defendant failed to disclose "the true nature of his dealings with infringers of Plaintiffs [sic] intellectual property," the Plaintiffs failed to plead, among other matters, which specific infringers are at issue, what specifically did the Defendant allegedly misrepresent to the Plaintiffs, when exactly

---

[5] Although Plaintiffs' claims fail on the merits, they are also untimely.  A complaint is properly dismissed under Rule 12(b)(6) where it is apparent on the face of the pleading that plaintiffs' claims are barred by the statute of limitations. See Jablon v. Dean Witter & Co., 614 F.2d 677, 682 (9th Cir. 1980). Claims sounding in fraud must be brought within three years.  NRS § 11.190(3)(d).  None of the issues before the Arbitrator sounded in fraud. See IAA.  And, as set forth in the Complaint, all of the events occurred more than three years prior to the Petition Date and/or their filing of the Original Complaint.  On that basis alone, the Complaint may be dismissed.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

the Defendant made such alleged misrepresentations, and whether and how exactly the Plaintiffs were damaged as a result.[6]

41.    Likewise, with respect to the Plaintiffs' allegations that the Defendant "engage[d] in negotiations with adverse parties who had litigation pending against Plaintiffs regarding those parties retaining his services in order to conflict him out of any future cases against them," the Plaintiffs failed to plead which specific adverse parties are at issue, what specifically the Defendant allegedly misrepresented to the Plaintiffs, when exactly the Defendant made his alleged misrepresentations with respect to these adverse parties, and whether and how exactly the Plaintiffs were damaged as a result. Plaintiffs claim Defendant engaged in negotiations with adverse parties, such as Oron, TNAFlix, and Megaupload, for him to be retained by them to preclude future adverse actions by him. Complaint ¶ 37 (the second paragraph labelled ¶37). Notably, Plaintiffs do not allege that he consummated any of those negotiations or that they suffered harm thereby. The Arbitrator himself found the communications regarding such negotiations were bluffs.[7] See IAA at p. 12.

42.    With respect to the Plaintiffs' allegations that the Defendant "negotiat[ed] to broker a deal for the sale of a defendant (TNAFlix) while actively litigating against them on [Plaintiffs'] behalf," the Plaintiffs failed to plead what specifically the Defendant allegedly misrepresented to the Plaintiffs, when exactly the Defendant made the alleged misrepresentations with respect to these adverse parties, and whether and how exactly the Plaintiffs were damaged as a result. Indeed, Plaintiffs do not allege that they suffered any harm, they do not allege, for example, that they purchased TNAFlix, or would have, but for Defendant.

43.    Finally, to the extent the Plaintiffs are claiming any other "engagement in

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

---

[6] Although Plaintiffs incorporated the IAA by reference in the Complaint, the IAA is confused and disjointed. At no point does it suggest Defendant made any specific misrepresentations in 2009 with intent to deceive. Neither does the IAA establish how the claimed damages were proximately caused by the alleged breaches. For example, the IAA does not set forth the proximate relationship between Defendant's August 2012 negotiations with Oron and the Plaintiffs' alleged damages of $275,000.

[7] Despite this finding, the Arbitrator awarded Plaintiffs, presumably Liberty, with damages in the amount of $275,000, somehow based on the earlier proposed revised settlement that was never consummated when, instead, that figure came from new settlement negotiations with Oron that occurred after Defendant's separation. Complaint ¶ 44(j); IAA, p. 23, ¶ 2. This incongruity further undermines the IAA.

1    negotiations" other than with respect to the Oron litigation settlement, which is the only one

2    discussed in their Complaint, they failed to plead the who, what, when, where, and how of the

3    misconduct charged, as well as what is false or misleading about the purportedly fraudulent

4    statement, and why it is false.

5        44.    As a result, the Plaintiffs' first claim for relief pursuant to section 523(a)(a)(A) of

6    the Bankruptcy Code should be dismissed for a failure plead the fraud allegations underpinning

7    that claim with the requisite particularity.  Such failure is especially inexcusable in light of the

8    substantial pre-petition Arbitration proceedings and the discovery and initial proceedings

9    already occurring therein.

10   **D.    The Second Claim for Relief:  Section 523(a)(4).**

11       **1.    General Elements and the Allegations in the Plaintiffs' Complaint.**

12       45.    Section 523(a)(4) of the Bankruptcy Code provides an exception from discharge

13   for any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or

14   larceny."  11 U.S.C. § 523(a)(4).

15       46.    A claim pursuant to section 523(a)(4) may be based on one of three separate

16   bases for nondischargeability:  (1) fraud or defalcation while acting in a fiduciary capacity; (2)

17   embezzlement; or (3) larceny.   Plaintiffs appear to rely on the first basis (*e.g.*, fraud or

18   defalcation while acting in a fiduciary capacity), and thus they must establish that "1) an express

19   trust existed, 2) the debt was caused by fraud or defalcation, and 3) the debtor acted as a

20   fiduciary to the creditor at the time the debt was created.'"  Otto v. Niles (In re Niles), 106 F.3d

21   1456, 1459 (9th Cir. 1997); Stephens v. Bigelow (In re Bigelow), 271 B.R. 178, 186 (B.A.P. 9th

22   Cir. 2001).

23       47.    Federal bankruptcy law, rather than state law, determines whether there is a

24   fiduciary relationship within the meaning of section 523(a)(4) of the Bankruptcy Code.  See

25   Bigelow, 271 B.R. at 187 (citing Blyler v. Hemmeter (In re Hemmeter), 242 F.3d 1186, 1189

26   (9th Cir. 2001)).  "An express or technical trust is generally created by an agreement between

27   two parties to impose a trust relationship.  'The general characteristics of an express trust are:

28   (1) sufficient words to create a trust; (2) a definite subject; and (3) a certain and ascertained

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

object or res.'" Id. (quoting Lovell v. Stanifer (In re Stanifer), 236 B.R. 709, 714 (B.A.P. 9th Cir. 1999)).

48.    "Fiduciary relationships imposed by statute may cause the debtor to be considered a fiduciary under § 523(a)(4)." Id. (citing Hemmeter, 242 F.3d at 1190). "For a statute to create a technical trust, "[t]he statute must define the trust res, spell out the trustee's fiduciary duties[,] and impose a trust prior to and without reference to the wrong which created the debt." Id. (quoting Woodworking Enters., Inc. v. Baird (In re Baird), 114 B.R. 198, 202 (B.A.P. 9th Cir. 1990)).

49.    Therefore, state law is relevant to the inquiry. See id. (citing Runnion v. Pedrazzini (In re Pedrazzini), 644 F.2d 756, 758 (9th Cir. 1981), and Stanifer, 236 B.R. at 715). The parties agreed that California law governed their relationship. See Employment Agreement at ¶ 9(E). Accordingly, the Court must determine whether California statutory or case law with regard to the attorney-client relationship creates an express or technical trust within the meaning of section 523(a)(4).

50.    Under California law, a fiduciary relationship arises as a matter of law between an attorney and his or her client, however, this is a fiduciary status that does not fit the narrow federal definition in section 523(a)(4). See Bigelow, 271 B.R. at 187 (finding as such with respect to an attorney-client relationship under Washington law) (citing Lewis, 97 F.3d at 1185); Cal-Micro, Inc. v. Cantrell (In re Cantrell), 329 F.3d 1119, 1125 (9th Cir. 2003) (holding that the broad definition of fiduciary under nonbankruptcy law--a relationship involving trust, confidence, and good faith--is inapplicable in the dischargeability context); see also Lewis v. Short (In re Short), 818 F.2d 693, 695 (9th Cir. 1987); Ragsdale v. Haller, 780 F.2d 794, 796 (9th Cir. 1986); Honkanen v. Hopper (In re Honkanen), 446 B.R. 373, 379 (B.A.P. 9th Cir. 2011) (noting that a real estate agent did not hold any property in trust and "[i]n the absence of a trust res, a fundamental requirement to form a trust, there was no express, technical or statutory trust formed" and thus no fiduciary capacity pursuant to section 523(a)(4)).

51.    In the case at hand, the Plaintiffs' Complaint lists out a number of typical duties inherent in the attorney-client relationship and as imposed by the applicable rules of professional

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

14

conduct. <u>See</u> Complaint ¶ 56. The Complaint then goes on to allege, in a conclusory fashion, that the Defendant breached those duties by engaging in the following acts:

> [W]illfully violating the Employment Agreement, engaging in willful conflicts of interest at the expense of Plaintiffs, benefitting himself at the expense of Plaintiffs, committing acts of legal malpractice, making false representations, spoliation and destruction of evidence, failing to account for or pay over to Plaintiffs funds belonging to them and converting Plaintiffs['] funds and property.

Complaint ¶ 57.

### 2. A Mere Attorney-Client Relationship is Not Sufficient, Rather an Actual Trustee Relationship and a Specific Trust *Res* of Trust Funds is Required.

52. "In the Ninth Circuit, a general fiduciary attorney-client relationship may rise to the level of a fiduciary relationship for purposes of § 523(a)(4) <u>if there are client trust funds involved.</u>" <u>Bigelow</u>, 271 B.R. at 187 (emphases added); <u>Banks v. Gill Distrib. Centers, Inc. (In re Banks)</u>, 263 F.3d 862, 871 (9th Cir. 2001) (holding that when the debtor-lawyer placed funds into his client trust account, he became his client's fiduciary for purposes of section 523(a)(4)).

53. In addition to the BAP's seminal decision in <u>Bigelow</u>, which expressly required that a trustee relationship with trust funds being misappropriated from a trust account are required in order to sustain a 523(a)(4) claim, numerous other lower courts within the Ninth Circuit have also held that the mere existence of an attorney-client relationship involving a debtor-attorney is insufficient without actual trust funds being involved and entrusted to the attorney as a trustee. <u>See, e.g.</u>, <u>Herrle v. Kamb (In re Kamb)</u>, No. 11-13856, 2011 WL 5240369, at *7 (Bankr. W.D. Wash. 2011) ("In Washington, a fiduciary relationship arises as a matter of law between an attorney and his or her client. This fiduciary relationship, however, while it meets the broad definition of a fiduciary under state law, does not, without more, satisfy the more narrow federal definition. Nondischargeability based upon an attorney client relationship is usually reserved for those situations where money or property has been entrusted to the attorney-debtor. Thus, a general fiduciary attorney-client relationship may rise to the level of a fiduciary relationship for purposes of Section 523(a)(4) if there are client trust funds involved. In such cases, where the debt arises out of the attorney's mishandling of the client's funds that

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

15

are placed into a trust account the debt will be nondischargeable.") (citations omitted); <u>In re Denton</u>, No. 06-02073, 2009 WL 399437, at *14 (Bankr. D. Ariz. Feb. 17, 2009) ("In this case, the Court concludes that the Debtor provided legal advice to the Plaintiff and Ms. Robertson, and that an attorney-client relationship was created. However, the Plaintiff and Ms. Robertson provided the Debtor with a retainer, not client trust funds. At no point was the Debtor requested to hold and manage funds on behalf of the Robertsons. Therefore, since there were no trust funds involved in the Debtor's attorney-client relationship with the Plaintiff and Ms. Robertson, the Court is unable to find a fiduciary relationship that was created within the narrow meaning of Section 523(a)(4).") (footnote omitted); <u>In re Snyder</u>, No. 05-14194, 2008 WL 2699934, at *2 n.2 (Bankr. N.D. Cal. July 10, 2008) ("A finding of defalcation can be made only if a specific, identifiable sum was entrusted to Snyder. It cannot be based merely on the fact that Snyder is a lawyer. General fiduciary duties under state law do not form a basis for a finding of defalcation in a fiduciary capacity under federal bankruptcy law. The latter requires an express trust imposed before and not arising out of the wrongdoing which caused the debt. "In the Ninth Circuit, a general fiduciary attorney-client relationship may rise to the level of a fiduciary relationship for purposes of § 523(a)(4) if there are client trust funds involved.") (citations omitted); <u>Vahle v. Gasster (In re Gasster)</u>, 301 B.R. 568, 569-70 (Bankr. N.D. Cal. 2003) (holding that no fiduciary relationship existed for purposes of section 523(a)(4) between an attorney and client since there were no trust funds involved); <u>Braud v. Stokes (In re Stokes)</u>, 142 B.R. 908, 910 n.3 (Bankr. N.D. Cal. 1992) (holding that the professional rule requiring a client trust fund is the sole exception to the general statement that no California statute elevated the attorney-client relationship to trustee-beneficiary status).

54.    In sum, courts within the Ninth Circuit have repeatedly rejected a 523(a)(4) claim simply because the debtor was an attorney and the debt arose out of the debtor-attorney's attorney-client relationship with a client; rather, the courts have steadfastly required that a specific trust *res* and trustee relationship must also exist, which means an actual deposit of trust funds and a misappropriation thereof--for a debt to be held nondischargeable pursuant to section 523(a)(4). In the case at hand, however, no specific trustee relationship or trust *res* in the form

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

of specific money was ever deposited into the Defendant's trust account and then mishandled. As such, Plaintiffs' 523(a)(4) claim must be dismissed as a matter of law.[8]

55.     In light of the foregoing, the only specific allegation in the Plaintiffs' Complaint that could even possibly give rise to a section 523(a)(4) claim is "failing to account for or pay over to Plaintiffs funds belonging to them and converting Plaintiffs['] funds and property." Complaint ¶ 57.  As such, as an initial matter, the Defendant requests that all other claims asserted within the Plaintiffs' 523(a)(4) claim be dismissed because they lack the required trustee relationship and defined trust *res* in the form of funds held in trust by the Defendant in his capacity as an attorney to the Plaintiffs.  For the avoidance of doubt, such clearly unsustainable claims would include the following claims in ¶ 57 of the Complaint:  "[W]illfully violating the Employment Agreement, engaging in willful conflicts of interest at the expense of Plaintiffs, benefitting himself at the expense of Plaintiffs, committing acts of legal malpractice, making false representations, spoliation and destruction of evidence . . . ."

56.     With respect to the Plaintiffs' remaining claim that the Defendant "fail[ed] to account for or pay over to Plaintiffs funds belonging to them and converting Plaintiffs['] funds and property," although it is unclear, this is apparently a reference to the gravamen of the allegations involving the handling of the Oron litigation settlement.  See Complaint, ¶¶ 18-36.  A careful reading of those allegations, however, as well as the laundry list of other vague allegations in ¶¶ 37 and 28 of the Complaint, reveal that at no point in time did the Defendant ever act as a trustee for the Plaintiffs by taking possession of any specific funds or trust *res* to be held in safekeeping for the Plaintiffs in his client trust account, and that such funds were misappropriated.[9]  As a result, this deficiency is fatal to the Plaintiffs' 523(a)(4) claim and thus

---

[8] Although not specifically alleged, for the avoidance of doubt, to the extent the Plaintiffs would ever try to assert claims under the other theories under section 523(a)(4) of the Bankruptcy Code--for embezzlement or larceny--those would also fail as a matter of law for the same reason.  See Transamerica Commercial Fin. Co. v. Littleton (In re Littleton), 942 F.2d 551, 555 (9th Cir. 1991) (defining "embezzlement" within the meaning of section 523(a)(4) as requiring the non-owner debtor's misappropriation of the property to a use other than that for which it was entrusted); U-Save Auto Rental of Am. v. Mickens (In re Mickens), 312 B.R. 666, 680 (Bankr. N.D. Cal. 2004) (defining "larceny" within the meaning of section 523(a)(4) as having the same elements as embezzlement, except that "a larcenous debtor has come into possession of funds wrongfully").

[9] To the extent the Complaint speaks of client funds, none of the allegations suggest Defendant held those funds; as Plaintiffs pleaded, litigation was conducted by Marc J. Randazza P.A. d/b/a Randazza Legal Group.  See Complaint

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

requires that the entire claim be dismissed.

### 3.    Plaintiffs Failed to Plead Fraud with the Requisite Particularity.

57.    Further, and based on the same caselaw previously cited with respect to Plaintiffs' 523(a)(2)(A) claim, the Plaintiffs failed to plead their 523(a)(4) claim with the requisite particularity pursuant to Rule 9/Bankruptcy Rule 7009.  The Plaintiffs failed to state with particularity specifically how a trustee relationship arose, including the amount and source of any and all funds allegedly held in trust and allegedly misappropriated by the Defendant, all of which they have simply failed to do.  As a result, the Plaintiffs' third claim for relief pursuant to section 523(a)(4) of the Bankruptcy Code must be dismissed pursuant to Rule 9/Bankruptcy Rule 7009 for failure to plead the alleged underlying fraud with the required particularity.

### E.    The Third Claim for Relief:  Section 523(a)(6).

### 1.    General Elements and the Allegations in Plaintiffs' Complaint.

58.    Section 523(a)(6) of the Bankruptcy Code provides an exception from discharge for any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity."  11 U.S.C. § 523(a)(6).

59.    Only intentional torts, not negligent or reckless acts, can constitute willful and malicious injury, and a "knowing breach of contract" is insufficient to trigger 523(a)(6). Kawaauhau v. Geiger, 523 U.S. 57, 60-62 (1998) ("[T]he (a)(6) formulation triggers in the lawyer's mind the category 'intentional torts,' as distinguished from negligent or reckless torts); Lockerby v. Sierra, 535 F.3d 1038, 1041 (9th Cir. 2008).  "[C]onduct is not tortious under § 523(a)(6) simply because injury is intended or 'substantially likely to occur," but rather is only tortious if it constitutes a tort under state law."  Lockerby, 535 F.3d at 1042 (citing Petralia v. Jercich (In re Jercich), 238 F.3d 1202, 1206 (9th Cir. 2001), and Del Bino v. Bailey (In re

---

at ¶¶ 13 & 35.  There is no allegation that Defendant personally, rather than the separate legal entity law firm, was the fiduciary for those funds.  To the contrary, Plaintiffs pleaded that the funds were transferred to non-party Marc J. Randazza P.A. Id. ¶ 20.  Further, this Court may take judicial notice of the fact that Plaintiffs have alleged that Randazza Legal Group, not Defendant himself, failed to turn over funds.  Moreover, it is undisputed, and indeed the Court can take judicial notice, of the fact that the funds in question were remitted pursuant to a stipulation and order dated June 18, 2015, and thus many months prior to the Petition Date.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

1    <u>Bailey</u>), 197 F.3d 997, 1000 (9th Cir. 1999)).  In other words, "state-specific tortious conduct is

2    required under § 523(a)(6) of the Bankruptcy Code, and thus the Court must determine whether

3    the debtor engaged in conduct that would constitute a tort under applicable state law.  <u>Id.</u> at

4    1043 (citing <u>Jercich</u>, 238 F.3d at 1026, and <u>Bailey</u>, 197 F.3d at 1000).  As such, an examination

5    of each of the Plaintiffs' allegations of tortious conduct follows.

6         **2.**      **The Allegations Pled in the Complaint Are Not Tortious.**

7            **a.**      **Alleged Breaches of Fiduciary Duty and Legal Malpractice.**

8        60.     The claims in ¶¶ 63(a) and (f) of the Complaint that Defendant engaged in

9    "voluntary conflicts of interest for the sole benefit of himself and at the intentional expense of

10   his clients," and that the Defendant breached his fiduciary duty must be dismissed because they

11   are both breach of fiduciary duty/legal malpractice claims, which are a matter of negligence, not

12   an intentional tort.  <u>Stalk v. Mushkin</u>, 199 P.3d 838, 844 (Nev. 2009) (holding that the

13   plaintiffs' "breach of fiduciary duty claim [was], in essence, a legal malpractice claim, since it

14   [was] grounded on allegations that [the defendant] breached certain duties, namely,

15   confidentiality and loyalty, that would not exist but for the attorney-client relationship");

16   <u>Warmbrodt v. Blanchard</u>, 692 P.2d 1282, 1285 (Nev. 1984) ("It is the 'contractual relationship

17   creating a duty of due care upon an attorney [which is] the primary essential to a recovery for

18   legal malpractice.'" (alteration in original).

19        61.     "Legal malpractice involves the same elements as an ordinary negligence claim,

20   but it is premised on an attorney-client relationship and involves a breach by the attorney of a

21   duty owed to the client."  <u>Dushane v. Acosta</u>, No. 68359, 2015 WL 9480185, at *2 (Nev. Ct.

22   App. Dec. 16, 2015) (citing <u>Sanchez ex rel. Sanchez v. Wal-Mart Stores, Inc.</u>, 221 P.3d 1276,

23   1280 (Nev. 2009) (explaining that to prevail on a negligence claim, a plaintiff must establish

24   "(1) the existence of a duty of care, (2) breach of that duty, (3) legal causation, and (4)

25   damages"), and <u>Semenza v. Nev. Med. Liab. Ins. Co.</u>, 765 P.2d 184, 185 (1988) (providing that

26   "legal malpractice is premised upon an attorney-client relationship, a duty owed to the client by

27   the attorney, breach of that duty, and the breach as proximate cause of the client's damages").  It

28   is not a matter of intentional conduct (much less willful and malicious conduct), but rather a

breach of a duty of care in that the attorneys' conduct falls below a requisite standard of care. Simple negligence claims, however, are not the intentional tort required to hold a claim nondischargeable pursuant to section 523(a)(6) of the Bankruptcy Code as a "willful and malicious injury by the debtor."

62.    As such, the Plaintiffs claims in ¶¶ 63(a) and (d) that Defendant engaged in "voluntary conflicts of interest for the sole benefit of himself and at the intentional expense of his clients," must be dismissed because a breach of fiduciary duty/legal malpractice claim against a lawyer is not the tortious conduct required under 523(a)(6).

### b.    Alleged Spoliation and Destruction of Evidence.

63.    The claims in ¶¶ 63(b) and 63(c) of the Complaint alleging spoliation and/or destruction of evidence must be dismissed as a matter of law because courts have rejected any separate tort cause of action for even intentional spoliation or destruction of evidence.  See Warden v. Cross, 94 Fed. Appx. 474, 475 (9th Cir. 2004) (citing Cedars-Sinai Med. Ctr. v. Super. Ct., 954 P.2d 511 (Cal. 1998)); Temple Cmty. Hosp. v. Super. Ct., 976 P.2d 223, 230 (Cal. 1999); Peterson v. Miranda, 57 F. Supp. 3d 1271, 1278 (D. Nev. 2014) (citing Timber Tech Engineered Bldg. Prods. v. The Home Ins. Co., 55 P.3d 952, 954 (Nev. 2002)).

64.    As a result, the spoliation and/or destruction of evidence asserted in ¶¶ 63(b) and 63(c) cannot serve as the necessary underlying tort required to support Plaintiffs' claim pursuant to section 523(a)(6) of the Bankruptcy Code, and thus the claim must be dismissed to the extent premised on such a non-existent tort.

65.    Further, nothing in the Complaint or IAA describes with particularity that any property or evidence was spoliated or destroyed.  Even the Arbitrator recognized that Plaintiffs could not identify any missing files.  See IAA at p. 22.  Instead, Defendant's actions were consistent with Nev. R. Prof. Conduct 1.6(c) to secure Plaintiffs' confidential information, ensuring that Randazza Legal Group could safeguard the records of Liberty as its litigation counsel.[10]  Complaint ¶¶ 33 & 34.  Although records were alleged to have been deleted from

---

[10] As Plaintiffs do not disambiguate themselves, it is unknown what information belonging solely to Excelsior they claim Defendant transferred to the firm's file system.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

1    certain computers, Plaintiffs do not claim that copies were not preserved or that they were denied

2    access to those copies, or that they were otherwise harmed.

3        **c.**    **Alleged Perjury and Misrepresentations to Investigative Bodies.**

4      66.  The claims in ¶ 63(d) of the Complaint that the Defendant "ma[de] repeated

5    representations to investigative bodies including the State Bar of Nevada - to conceal his willful

6    and malicious injuries to the Plaintiff" must be dismissed because courts have rejected a civil

7    action in tort for perjury.[11] See Meier v. Shinseki, 626 Fed. Appx. 706, 708-09 (9th Cir. 2015)

8    (citing Pollock v. Univ. of S. Cal., 112 Cal. App. 4th 1416, 1429, 6 Cal. Rptr. 3d 122 (2003))

9    (applying California law); Nordeen v. Bank of Am., N.A. (In re Nordeen), 495 B.R. 468, 484

10    (B.A.P. 9th Cir. 2013) (citing Jordan v. State ex rel. Dep't of Motor Vehicles & Public Safety,

11    110 P.3d 30, 47 n.51 (Nev. 2005), overruled on other grounds, Buzz Stew, LLC v. City of N. Las

12    Vegas, 181 P.3d 670, 672 n.6 (Nev. 2008) (applying Nevada law); see also Healy v. Rose (In re

13    Healy), No. 13-1200, 2015 WL 3407237 (B.A.P. 9th Cir. May 27, 2015) (noting that there is an

14    absolute litigation privilege against a civil action for perjury, and thus a fee award for pursuing

15    such vexatious and frivolous litigation was itself nondischargeable pursuant to section 523(a)(6)).

16      67.  Moreover, the Plaintiffs obviously lack standing to assert such claims in any event

17    as that would be within the exclusive province of the applicable State Bar, investigative body

18    and/or potentially the district attorneys' office for potential criminal prosecution.  See Nordeen,

19    495 B.R. at 484-85 (rejecting any private right of action and instead holding that alleged perjury

20    is a criminal matter).

21      68.  As a result, any alleged misrepresentations made by Defendant to a State Bar or

22    other investigative body as asserted in ¶ 63(d) of the Complaint cannot serve as the necessary

23    underlying tort required to support Plaintiffs' claim pursuant to section 523(a)(6) of the

24    Bankruptcy Code, and thus the claim must be dismissed to the extent premised on such a non-

25

26    [11] Although Defendant, if required to litigate this matter, would demonstrate that he made no material
27    misrepresentations to Plaintiffs, he reserves the right to challenge this improper claim of perjury on its face.  As
with many other issues, the Arbitrator significantly misinterpreted the evidence.  Since Plaintiffs obviously lack
28    standing, and this allegation appears to have been improperly asserted in order to engender bias, which tactic must
not be condoned.

existent tort.

### d.    Alleged Breaches of the Employment Agreement

69.    Finally, Plaintiffs' ironic claims pursuant to ¶ 63(g) of the Complaint[12] that the Defendant "willfully, maliciously, and intentionally breached his employment contract with Plaintiffs, to whom he owed a fiduciary duty," must be dismissed as a matter of law because a breach of contract is not the type of injury addressed by section 523(a)(6) of the Bankruptcy Code, and could only ever be excepted from discharge when it is accompanied by separate malicious and willful tortious conduct. See Lockerby, 535 F.3d at 1041; Jercich, 238 F.3d at 1205; Snoke v. Riso (In re Riso), 978 F.2d 1151, 1154 (9th Cir. 1992); Zeeb v. Farah (In re Zeeb), No. 15-1012, 2015 WL 6720934, at *4 (B.A.P. 9th Cir. Nov. 3, 2015).

70.    As stated by the Ninth Circuit, "[s]omething more than a knowing breach of contract is required before conduct comes within the ambit of § 523(a)(6)," and that "something more" is "tortious conduct." Lockerby, 535 F.3d at 1041 (citing Jercich, 238 F.3d at 1209). In fact, the Ninth Circuit cautioned that "[e]xpanding the scope of § 523(a)(6) to include contracts that are intentionally breached whenever it is substantially certain that injury will occur would severely circumscribe the ability of debtors to 'start afresh.'" Id. at 1042.

71.    For example, in Jercich, the court held that the breach of contract violated California law because, in California, tort recovery was permitted when "in addition to the breach of the covenant [of good faith and fair dealing] a defendant's conduct violates a fundamental public policy of the state." 238 F.3d at 1206 (emphasis added). At issue was a state court judgment awarding punitive damages for the nonpayment of employee wages despite an ability to pay. Id. at 1204. The state trial court had concluded that this intentional nonpayment was "willful and deliberate" and "constituted substantial oppression" under California law. Id. The state trial court also emphasized California courts' strong policy regarding employers' obligation to pay their employees. Id. at 1206-07. The Jercich court based its finding of "tortious conduct" on the state court findings of oppression and the public policy violation, finding that the conduct

---

[12] Plaintiffs' Complaint does not have a ¶ 63(e), but rather skips from ¶ 63(d) to ¶ 63(f).

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

was tortious under state law. Id. The Jercich court also emphasized that "[w]ages are not ordinary debts." Id. at 1207.

72.    In Lockerby, by contrast, the Ninth Circuit held that a lawyer's intentional breach of a settlement agreement involving alleged legal malpractice claims by not paying the client was an "ordinary debt," and not the wage claims like at issue in Jercich, and thus not excepted from discharge pursuant to section 523(a)(6) of the Bankruptcy Code. 535 F.3d at 1043. In so doing, the Court held that the lack of "just cause" in breaching a contract does not render the matter tortious because parties often breach contracts when it is to their financial benefit, and even though that may not be "just," it also does not render such a breach tortious and thus excepted from discharge pursuant to section 523(a)(6). Id. In other words, even when a breach of contract was intentional, and done without just cause, that, without tortious conduct, is not enough to have the debt excepted from discharge pursuant to section 523(a)(6) of the Bankruptcy Code.

73.    In the case at hand, breaching a contract, even when done intentionally and without "just cause" or excuse, is not tortious and is thus insufficient to establish a 523(a)(6) claim. Moreover, as previously explained, the "tortious conduct" required under 523(a)(6) does not exist even when a lawyer breaches his fiduciary duty, whether a duty of care or of loyalty to a client, and/or commits legal malpractice because those are all matters of negligence, and thus not the tortious conduct required. As a result, Plaintiffs' claims for intentional breach of contract are simply insufficient to sustain their 523(a)(6) claim as a matter of law.

74.    Finally, when a fraud claim has been asserted that is required by the plain language of the statute to be asserted under section 523(a)(2) of the Bankruptcy Code, but it fails under that section due to the failure to meet one of the required statutory elements of such a claim, then the claim also cannot state a cause of action under section 523(a)(6) of the Bankruptcy Code. See Barrack, 217 B.R. at 606 (rejecting a plaintiffs' argument that a 523(a)(2)(B) claim that fails due to a lack of a writing could still be nondischargeable pursuant to section 523(a)(6)); Weiss v. Alicea (In re Alicea), 230 B.R. 492, 507-08 (Bankr. S.D.N.Y. 1999) (same). In other words, if a fraud claim fails a specific statutory element required under the under 523(a)(2), then a claimant cannot use 523(a)(6) as a "backdoor" to still have a debt arising

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170    Fax: (702) 382-1169

from the same alleged conduct held nondischargeable.

75.     As applied in the case at hand, as previously explained, Plaintiffs' 523(a)(2)(A) claim fails as a matter of law for a variety of reasons, including principally that they alleged only subsequent breaches of the employment agreement and/or torts allegedly occurring after execution of the Employment Agreement, which do not establish the misrepresentations <u>at the time of entering into the agreement</u> as is necessary to establish a 523(a)(2)(a) claim.  As such, because Plaintiffs' 523(a)(2)(A) claim fails, their 523(a)(6) claim premised on the same alleged conduct must also fail as well because any other result would allow Plaintiffs to misuse 523(a)(6) as an improper way to get around the more specific statute for fraud claims in 523(a)(2).

**3.     Plaintiffs Failed to Satisfy Various Statutory Elements Required for Their 523(a)(6) Claims.**

76.     Similar to the other claims for relief, the allegations in Plaintiffs' 523(a)(6) claim lack the required particularity with regard to the Defendant as is required by the heightened federal pleading requirements for allegations of fraud.  Plaintiffs repeat their pattern of asserting not a single factual allegation related to any improper conduct by Defendant that supports any of the elements of section 523(a)(6) of the Bankruptcy Code. There are no allegations that the Defendant engaged in any fraudulent conduct. There are no allegations showing any intent to willfully or maliciously injure the Plaintiffs on the part of the Defendant.  Other than speculative, conclusory statements, there are no specific allegations that the Defendant benefited from the co-defendant's alleged conduct.

77.     First, Plaintiffs allege conflicts of interest, being the potential revised settlement with Oron, the disbursement of settlement funds, the transfer of client data, and representation of potentially adverse parties.  Complaint ¶ 63(a).  There is no allegation, other than *ipse dixit* that Defendant intended to harm Plaintiffs thereby.  Although the potential Oron settlement would have benefitted Defendant, had Plaintiffs lived up to <u>their</u> contractual obligations, it also inured to the benefit, not harm, of Plaintiffs as Oron had not paid any of the prior settlement it had disclaimed.  Moreover, there was no actual injury; the settlement was never executed and Oron's funds were received.  As to the disbursement of settlement funds, the Complaint indicates a

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

dispute over allocation rather than an intent to deprive.   Further, there is no allegation that Plaintiffs did not receive the proper allocation.

78.   As to the transfer of client data to Randazza Legal Group's servers, there is no allegation that the copies of the data were not turned over to Plaintiffs or that Defendant did it to harm Plaintiffs rather than simply abide his ethical requirements.

79.   Finally, as to the representation of potentially adverse parties, there is no claim Plaintiffs were harmed or that Defendant intended harm, rather than, at worst, failure to obtain informed consent to the representation of "potentially" adverse parties, with that "potential" existing only in the minds of the Plaintiffs.

80.   Second, in repetition of part of the first allegation, there is no proper allegation of destruction of corporate files.  Id. ¶ 63(b).  Plaintiffs repeat this allegation a third time in ¶ 63(c). Although Plaintiffs allege Defendant destroyed files, they also allege he simply transferred them to a separarate, thereby acknowledging they were not actually destroyed, but simply moved to a different storage medium.  Id. ¶ 33.  Neither is there an allegation he did so to harm Plaintiffs rather than fulfill his duties to ensure client files, including those of third-parties, remained confidential.

81.   Third, Plaintiffs allege that Defendant made misrepresentations to state bars.  Id. ¶ 63(d).  There is no allegation of injury or intent to harm Plaintiffs, nor could there be, as only Defendant, not Plaintiffs, would be subject to bar discipline.

82.   Fourth, Plaintiffs again repeat the allegation regarding the potential revised settlement with Oron.  Id. ¶ 63(f).[13]  As set forth above, Plaintiffs did not execute the revised settlement, and they do not set forth a chain of proximate causation, despite its conclusory statement that $275,000 in damages flowed from the negotiation.  Moreover, as to "intentional violations of Plaintiffs' settlement agreements," this conclusory statement offers no allegation as to what agreement Defendant allegedly violated, whether he did so to harm Plaintiffs, or whether they suffered actual harm.

---

[13] There is no paragraph 63(e) in the Plaintiffs' Complaint.

83.     In sum, Plaintiffs have failed to assert the requisite specific facts against Defendant that support that relief could be granted against the Defendant under section 523(a)(6) of the Bankruptcy Code.

**4.    Plaintiffs Failed to Plead Fraud with the Requisite Particularity.**

84.     In further alternative, and based upon the same caselaw as previously cited with respect to Plaintiffs' 523(a)(2)(A) claim, the Plaintiffs have also failed to plead any alleged fraud committed by the Defendant with the requisite particularity as to their 523(a)(6) claim as well. As a result, the Plaintiffs' third claim for relief pursuant to section 523(a)(6) of the Bankruptcy Code should be dismissed pursuant to Rule 9/Bankruptcy Rule 7009.

**F.    Plaintiffs' Other Miscellaneous Requests Must Also Be Dismissed.**

**1.    Plaintiffs' Request for a Jury Trial Must Be Dismissed.**

85.     Plaintiffs' Complaint makes a demand for a jury trial. See Complaint, pp. 1 and 21. It is well settled, however, that bankruptcy litigants have no Seventh Amendment right to a jury trial in dischargeability proceedings because such proceedings are equitable in nature. Am. Express Travel Related Servs. Co. v. Hashemi (In re Hashemi), 104 F.3d 1122, 1124 (9th Cir. 1996); One Longhorn Land I, L.P. v. Presley, 529 B.R. 755, 765 (C.D. Cal. 2015) (citing Locke v. United States Trustee (In re Locke), 205 B.R. 592, 699-600 (B.A.P. 9th Cir. 1996)); Stanbrough v. Valle (In re Valle), 469 B.R. 35, 43 (Bankr. D. Idaho 2012).

86.     Additionally, because Excelsior has filed a Proof of Claim in the Defendant's underlying Chapter 11 Case, it has waived any jury trial right it may have had and any legal dispute that it may have originally been entitled to a trial by jury on has been transformed into an equitable issue and triable without a jury in bankruptcy. See Benedor Corp. v. Conejo Enterps. (In re Conejo Enterps., Inc.), 96 F.3d 346, 354 n.6 (9th Cir. 1996); Hickman v. Hana (In re Hickman), 384 B.R. 832, 837 (B.A.P. 9th Cir. 2008).

87.     As a result, for both of the foregoing reasons, the Plaintiffs' demand for a jury trial must be dismissed as a matter of law.

**2.    Plaintiffs' Request for Disgorgement Must Be Dismissed.**

88.     Plaintiffs include in their prayer for relief a request "[f]or a disgorgement of the

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

monies paid to Defendant in his capacity as Plaintiffs' attorney." Complaint, ¶ 44(l), 52, 58, 59, and Prayer for Relief, p. 20, ¶ 2. Disgorgement is an equitable remedy that requires a wrongdoer to return the profits of his wrongdoing. Disgorgement also prevents unjust enrichment by ensuring that violators do not profit from their undeserved gains. See, e.g., Cnty. of San Bernardino v. Walsh, 158 Cal. App. 4th 533, 69 Cal. Rptr. 3d 848 (Cal. Dist. Ct. App. 2d Dist. 2007).

89.    Disgorgement is not a remedy available in bankruptcy, rather only claims for monetary relief, because allowing such a remedy would violate the ratable distribution policy of the Bankruptcy Code because it would allow the Plaintiffs to jump ahead in priority ahead of other creditors of equal or indeed even higher priority. See, e.g., SEC v. Brennan, 230 F.3d 65 (2d Cir. 2000); SEC v. Bilzerian, 131 F. Supp. 2d 10, 14 (D.D.C. 2001); see also Beiger v. IRS, 496 U.S. 53, 58 (1990). In other words, a claim for "disgorgement" should just be treated as a general unsecured claim because there is no special collection right associated to any specific property, and thus to the extent the Plaintiffs are attempting to "jump ahead in line" of other creditors in priority, such a request must be denied.

90.    Additionally, disgorgement of Defendant's salary as a method of damages also violates the Employment Agreement and governing law. California Labor Code, Section 221, governing "Repayment of wages to employer" states that "[i]t shall be unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee." Labor Code section 221's rights are nonnegotiable and cannot be waived by the parties. Lindell v. Synthes USA, No. 11-02053, 2016 WL 70305, at *12 (E.D. Cal. Jan. 6, 2016) (citing Cal. Lab. Code, § 219). "By enacting [Labor Code] section 221 . . . the Legislature has prohibited employers from using self-help to take back any part of 'wages theretofore paid' to the employee, except in very narrowly defined circumstances provided by statute." Id. (quoting Hudgins v. Neiman Marcus Grp., 34 Cal. App. 4th 1109, 1121, 41 Cal. Rptr. 2d 46 (1995). "An employment compensation system which deducts company losses and expenses from employee base pay runs afoul of California public policy." Id. (quoting Naser v. Metro. Life Ins. Co., No. 10-04475, 2013 WL 4017363, at *11 (N.D. Cal. July 31, 2013) (citing Prachasaisoradej v.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

Ralph's Grocery Co., 42 Cal. 4th 217, 64 Cal. Rptr. 3d 407, 165 P.3d 133 (2007)).  Under California law, an employee is entitled to commissions that he has earned, even if they have not vested at the time of his departure.  Id. (citing Schachter v. Citigroup, Inc., 47 Cal. 4th 610, 622, 101 Cal. Rptr. 3d 2, 218 P.3d 262 (2009) ("He who shakes the tree is the one to gather the fruit.").  "Thus, under California's default approach, any deductions taken from a final paycheck would be suspect."  Id.  Thus, even if outside counsel may arguably subject to a disgorgement order,[14] in-house counsel like Defendant, as an employee protected by the Labor Code, is not.[15] In sum, given that Plaintiffs are not entitled to disgorge Defendant's earned salary as a matter of law, their request for disgorgement must be denied as a matter of law.[16]

### 3.   Plaintiffs' Request for Attorneys' Fees and Costs Must Be Dismissed.

91.   Plaintiffs' Complaint requests an award of attorneys' fees and costs premised on the "prevailing party" attorneys fee provision in the Employment Agreement.  See Complaint, ¶¶ 44(m), 53, 54(2), 58, 60(2), 65, 66(2), and Prayer for Relief, p. 20, ¶¶ 5 and 6.

92.   If fees and costs are recoverable under state law or pursuant to agreement or contract, then they are recoverable in a bankruptcy proceeding.  See Travelers Cas. and Sur. Co. of Am. v. Pac. Gas and Elec. Co., 549 U.S. 443-49 (2007).  It is well established, however, that tort claims including for misrepresentation and breach of fiduciary duty (i.e., the underlying tort claims needed to support a nondischargeability determination pursuant to section 523), as well as even claims for professional negligence are not actions "on a contract" and even if the

---

[14] See, e.g., Pringle v. LaChapelle, 73 Cal. App. 4th 1000, 1005 & n.4, 87 Cal. Rptr. 2d 90, 93-94 & n.4 (1999) (collecting cases, but all involving outside counsel, not in house counsel).

[15] Although not technically binding and it does not otherwise usurp the California Labor Code, the [Proposed] Restatement of the Law - The Law Governing Lawyers, § 37, cmt. (e) provides as follows:  "When a lawyer-employee of a client is discharged for misconduct, except in an extreme instance this Section does not warrant forfeiture of all earned salary and pension entitlements otherwise due.  The lawyer's loss of employment will itself often be a penalty graver than would be the loss of a fee for a single matter for a nonemployee lawyer.  Employers, moreover, are often in a better position to protect themselves against misconduct of their lawyer-employees through supervision and other means."  Notably also, the Restatement addresses disgorgement of fees collected and not salaries paid.

[16] Moreover, allowing disgorgement of an in house-employee's salary raises a host of issues.  Even if salary could be disgorged under the law, how would it be done when it is a salary?  Would benefits paid upon that salary also be disgorges?  Would pre or post-tax dollars be disgorged?  Would the 401k funds paid on that salary also be disgorged, among other benefits like medical and otherwise?  The IAA never considered such practical issues.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

tort/negligence claims arose out of the contractual relationship itself.  See In re Quinones, No. 12-46834, 2015 WL 9412851, at *16 (Bankr. N.D. Cal. Dec. 19, 2015); Moallem v. Coldwell Banker Commercial Grp., Inc., 25 Cal. App. 4th 1827, 1830, 31 Cal. Rptr. 2d 253, 255 (1994); Super 7 Motel Assocs. v. Wang, 16 Cal. App. 4th 541, 549, 20 Cal. Rptr. 2d 193, 199 (1993).

93.    As a result, an award of attorneys' fees and costs pursuant to a prevailing party attorney fee provision "on the contract" are simply not available for the Plaintiffs' claims in the case at hand as a matter of law because they are all "off the contract."  As a result, the Plaintiffs' requests for an award of attorney's fees and costs must be dismissed as a matter of law.

**G.     In the Alternative, Partial Summary Judgment is Appropriate.**

94.    In the alternative, to the extent the Court does not dismiss the claims in the Complaint and/or some or all of the portions of the claims referenced herein for failure to state a claim upon which relief can be granted, Defendant requests partial summary judgment on the following specific issues:  (a) Whether collateral estoppel applies to an unconfirmed and interim arbitration award like the IAA and thus whether that decision has preclusive effect in this nondischargeability proceeding; (b) Whether the Plaintiffs have a right to a jury trial in this nondischargeability proceeding; (c) Whether the Plaintiffs' requests for disgorgement are permitted in a bankruptcy case and legally permitted in contravention of the California labor law; (d) Whether the Plaintiffs' requests attorneys' fees and costs pursuant to a prevailing party attorneys' fees provision in the Employment Agreement is permitted when the Plaintiffs' nondischargeability claims are "off the contract."  The foregoing issues involve purely legal matters, and thus are ripe and appropriate for summary adjudication as a matter of law.

### V.  CONCLUSION

WHEREFORE, Defendant respectfully requests that the Court order as follows:

1.    Dismiss all of Plaintiffs' claims to the extent they are premised on the alleged collateral estoppel/issue preclusive effect of the unconfirmed and interim IAA;

2.    Dismiss Plaintiffs' claims pursuant to 523(a)(2)(A) of the Bankruptcy Code for: (a) failure to state a claim or for a failure to meet the requisite statutory elements, or in the alternative; and (b) for failure to plead fraud with the requisite particularity;

3.    Dismiss Plaintiffs' claims pursuant to 523(a)(4) of the Bankruptcy Code for: (a) failure to state a claim or for a failure to meet the requisite statutory elements, or in the alternative; and (b) for failure to plead fraud with the requisite particularity;

4.    Dismiss Plaintiffs' claims pursuant to 523(a)(6) of the Bankruptcy Code for: (a) failure to state a claim or for a failure to meet the requisite statutory elements; and (b) for failure to plead fraud with the requisite particularity;

5.    Dismiss Plaintiffs' requests for a jury trial, disgorgement, and for attorneys' fees and costs;

6.    In the alternative, grant summary judgment in favor of Defendant, thereby dismissing as a matter of law Plaintiffs' claims premised on the preclusive effect of the unconfirmed IAA, and their requests for a jury trial, disgorgement of salary, and for attorneys' fees and costs; and

7.    Grant Defendant such other and further relief as is just and proper.

Dated: March 14, 2016.

LARSON & ZIRZOW, LLC

By: _____
ZACHARIAH LARSON, ESQ.
Nevada Bar No. 7787
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
850 E. Bonneville Ave.
Las Vegas, Nevada 89101

Attorneys for Defendant

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

30