James D. Greene, Esq., NV Bar No. 2647

E-filed on: *April 19, 2016*

**GREENE INFUSO, LLP**
3030 South Jones Boulevard, Suite 101
Las Vegas, Nevada 89146
Ph: (702) 570-6000
Fax: (702) 463-8401
E-mail: jgreene@greeneinfusolaw.com

Attorneys for Plaintiffs

## UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>MARC JOHN RANDAZZA<br><br>        Debtors.<br>―――――――――――――<br>EXCELSIOR MEDIA CORP., a Nevada Corporation; and LIBERTY MEDIA HOLDINGS, LLC, a Nevada Limited Company,<br><br>        Plaintiffs,<br><br>v.<br><br>MARC JOHN RANDAZZA, an individual,<br><br>        Defendant. | Case No BK-15-14956-ABL<br><br>Chapter 11<br><br><br>Adversary Proceeding No. 15-01193-ABL<br><br><br><br>**OPPOSITION TO MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT**<br><br><br>**Hearing Date:  May 9, 2016**<br>**Hearing Time:  1:30 p.m.** |

Plaintiffs Media Excelsior Corp. ("Excelsior") and Liberty Media Holdings, LLC ("Liberty" and, collectively with Excelsior, "E/L" or "Plaintiffs"), by and through their undersigned counsel, James D. Greene, Esq., of Greene Infuso, LLP file their Opposition to Motion ("Opposition") to Dismiss or in the Alternative, for Partial Summary Judgment ("Motion").  This Opposition is made and based upon the attached points and authorities, the pleadings and papers on file in this adversary proceeding, and such argument of counsel as may be presented at the hearing on the Motion.

**POINTS AND AUTHORITIES**

### I. Introduction

The Defendant in this adversary proceeding and Debtor in the underlying bankruptcy case, Marc Randazza, is the former in-house counsel of the Plaintiffs who, from the inception of his employment with Plaintiffs, engaged in a continual pattern of deliberate and intentional conduct designed to enrich himself and to harm the Plaintiffs. Randazza lied about his intentions to serve as Plaintiffs' competent and ethical in-house counsel, and engaged in a pattern, of deceptive conduct that he knew and intended to harm Plaintiffs. Randazza is not an "honest but unfortunate debtor" seeking a fresh start, but rather is a dishonest debtor for whom the nondischargeability statutes are intended. *See Grogan v Garner*, 498 U.S. 279, 286-287 (1991). More important for the instant Motion, Plaintiffs' First amended Complaint (docket no. 11) properly states claims for relief under Bankruptcy Code sections 523(a)(2)(A), (a)(4) and (a)(6). Accordingly, Defendant's Motion to Dismiss should be denied. If, however, the Court determines that Plaintiffs' Complaint is deficient, Plaintiffs request that they be granted on opportunity to amend.

### II. Jurisdiction and Venue

1. In their Complaint, E/L have alleged and acknowledge that this Court has jurisdiction over E/L's matter under 28 U.S.C. §157 and 11 U.S.C. §523. The claims for relief alleged in E/L's complaint arise under Title 11 of the United States Code and are related to a case pending in the United States Bankruptcy Court for the District of Nevada (the "Bankruptcy Court"). The pending bankruptcy case to which the claims for relief alleged in E/L's Complaint are related is *In re Marc John Randazza,* Bk Case No. BK-S-15-14956-abl (the "Randazza Case").

2. Plaintiffs have pled and acknowledge that the determination of dischargeability is a core proceeding under 28 U.S.C. §157(b). Regardless of whether this is a core proceeding, Plaintiffs have consented to the entry of final orders and judgment by the Bankruptcy Court.

3. Pursuant to 28 U.S.C. §1409, E/L have pled and acknowledge that venue is proper in the District of Nevada, because the Randazza Case is pending in this district and division. Accordingly, E/L acknowledges that venue is proper in this Court.

GREENE INFUSO, LLP
3030 South Jones Boulevard Suite 101
Las Vegas, Nevada 89146
(702) 570-6000

**GREENE INFUSO, LLP**
3030 South Jones Boulevard Suite 101
Las Vegas, Nevada 89146
(702) 570-6000

*III.   Factual Background[1]*

A. *Randazza's Employment at E/L*

6.      Defendant Randazza is the former in-house General Counsel of E/L.  Randazza was employed as E/L's General Counsel continuously from June, 2009 until August 2012, when Randazza resigned.

7.      Excelsior is a sister company to various entities including Liberty and Corbin Fisher.  Corbin Fisher is an on-line entertainment website and brand name whose intellectual property is owned by Liberty.  Excelsior is a film production company that creates videos for Corbin Fisher.  E/L has consistently endeavored to and succeeded at conducting its business in a principled and professional manner.  E/L relocated its headquarters from San Diego, California to Las Vegas in February 2011.

8.      Randazza also relocated from San Diego, California to Las Vegas in 2011 to continue his employment relationship with E/L.  Randazza markets himself as a "specialist" in First Amendment and intellectual property law; particularly with regard to the adult entertainment industry.

9.      E/L and Randazza became acquainted while Randazza was an associate at a firm specializing in First Amendment work in Florida.  E/L later decided to hire a General Counsel. Randazza pursued and accepted the position.  Randazza drafted an employment agreement ("Employment Agreement"), which was executed by the parties in June, 2009.  A copy of the Employment Agreement is attached as Exhibit 1 to the Defendant's Request for Judicial Notice (Adv. Docket No. 23-1) ("Defendant's RJN").

10.     The primary reason E/L decided to hire a General Counsel was to ensure its intellectual property was protected.  One of the most significant challenges faced by E/L and all companies in the film and entertainment industry is the illegal downloading and sharing of

---

[1] The Factual Background portion of this Opposition is taken largely form E/L's Complaint in this matter.  This is appropriate because, in the context of a motion to dismiss for failure to state a claim, the Court must assume the truth of the allegations in the Complaint.

content/videos produced by E/L.  However, Randazza was tasked with handling all of E/L's legal matters.

11.    Pursuant to the Employment Agreement, Randazza was to wind down his private practice during his first 90 days of employment and become E/L's full-time General Counsel employed on an at-will basis.  Specifically, the Employment Agreement states:

> Excelsior understands and acknowledges that as an attorney, Randazza owes certain duties to those clients whom he has represented prior to accepting employment with Excelsior.  Randazza will make every reasonable effort to conclude all representational efforts with respect to such clients (except as provided for in Section 6C, below) prior to commencing employment with Excelsior.  However, to the extent that Randazza is called upon to advise, provide information to or otherwise engage with his former law partners or subsequent counsel for the benefit of former clients and with respect to matters for which previous representation was provided, Excelsior expressly authorizes him to do so.
>
> The parties understand that *the majority of Randazza's current client work will taper down as quickly as ethically and practically possible*.  However, during the first 90 days of this contract's duration, Excelsior shall liberally grant Randazza accommodations to facilitate the winding down of his private practice.

Defendant's RJN, Exhibit 1, page 2, Section 1A (emphasis added).[2]

12.    Section "6.C" of the Employment Agreement permitted Randazza to continue to provide professional services to a "limited number of outside clients" during non-working hours if such work did not present a conflict of interest for E/L.  Defendant's RJN, Exhibit 1, pages 6-7.  Contrary to his obligations under the Employment Agreement, however, Randazza continued to aggressively grow his private practice during his employment with E/L.

13.    Randazza's compensation under the Employment Agreement consisted of an annual salary of $208,000.  Randazza also included in the Employment Agreement the rather unique arrangement of a nondiscretionary bonus of 25% of any settlement funds paid to E/L. Defendant's RJN, Exhibit 1, pages 3-4.

14.    At the time of the execution of the Employment Agreement, the parties contemplated that Randazza would be handling all of E/L's legal matters independently.  Instead,

---

[2] Reference to page numbers on documents filed in the Bankruptcy Court are to be docketing information at the top of each document.

GREENE INFUSO, LLP
3030 South Jones Boulevard Suite 101
Las Vegas, Nevada 89146
(702) 570-6000

Randazza utilized his own firm, Randazza Legal Group ("RLG") and various outside counsel to assist in E/L's legal matters.

15.     The Employment Agreement also required that E/L provide Randazza with a laptop computer and PDA/phone, which were to be primarily used for E/L business with only occasional and incidental personal use permitted.  The Employment Agreement further provided that such equipment was not to be used for professional services rendered to other clients.  With respect to equipment provided to Randazza, the Employment agreement states:

> Excelsior equipment, such as any laptop paid for by Excelsior, *shall not be used for any outside projects*.  Incidental or de minimis use shall not constitute a violation of this policy.  Nevertheless, Randazza shall keep a "wall of separation" between Excelsior and any outside work.

Defendant's RJN, Exhibit 1, page 2, Section 1A (emphasis added).

16.     The Employment Agreement provided for severance in the amount of 12 weeks of salary if E/L were to unilaterally terminate Randazza in the fourth year of employment or later. There is no severance obligation if Randazza resigned or was terminated for cause.  Defendant's RJN, Exhibit 1, pages 7-8.

17.     The Employment Agreement also includes a governing law provision stating "[t]his Agreement shall be governed by and construed in accordance with the laws of the State of California, without regard to conflict of laws."  Defendant's RJN, Exhibit 1, page 12.  Randazza was able to reside virtually anywhere he wanted.  Initially, Randazza and his wife were located in San Diego, California.  However, Randazza relocated to Las Vegas, Nevada in June 2011, just a few months after E/L relocated its headquarters to Las Vegas.

18.     At Randazza's request, E/L hired Erika Dillon ("Dillon"), a paralegal.  Dillon was employed by E/L as a paralegal at the time of Randazza's resignation.

*B.*     *The Oron Litigation*

19.      Randazza had filed suit on behalf of E/L in  the U.S. District Court of Nevada and in Hong Kong against an Internet file-locker website, Oron.com ("Oron"), asserting copyright infringement claims arising out of Oron's facilitation of the illegal downloading of E/L content.

GREENE INFUSO, LLP
3030 South Jones Boulevard Suite 101
Las Vegas, Nevada 89146
(702) 570-6000

GREENE INFUSO, LLP
3030 South Jones Boulevard Suite 101
Las Vegas, Nevada 89146
(702) 570-6000

Randazza and counsel for E/L in Hong Kong obtained a preliminary injunction on behalf of E/L preventing Oron from disbursing any of its Hong Kong based assets.

20.    After extensive negotiations, in which E/L's CEO, Jason Gibson ("Gibson") was involved, on July 1, 2012, E/L and Oron executed a settlement agreement which provided for payment by Oron to Excelsior of $550,000.

21.    Pursuant to the settlement agreement, $550,000 was to be transferred to the RLG trust account and Randazza agreed to be personally liable if the funds were prematurely disbursed (before all terms were complied with), including being responsible for a 10% penalty.

22.    Oron later claimed the settlement agreement was not enforceable.  E/L sought the intervention of the district court and obtained an order declaring the settlement agreement to be valid and enforceable as a judgment against Oron.  *See* Defendant's RJN, Exhibit 2.

23.    After entry of the order declaring the settlement agreement to be enforceable, Randazza engaged in further settlement negotiations with Oron's counsel to resolve both the Hong Kong proceeding and to address the judgment/order issued by the District Court of Nevada. On August 13, 2012, Randazza presented Gibson with a new Oron settlement agreement.  The settlement agreement provided for a payment of $600,000 to E/L to be held in trust until various provisions of the settlement agreement were preformed.  The settlement agreement also provided for payment of $75,000 to Randazza.  Notably, there were no restrictions upon disbursement of Randazza's payment.

24.    Randazza did not inform Gibson that the settlement offer by Oron was only valid until August 14, 2012, only 24 hours after its delivery to Gibson.

25.    Upon review of the settlement agreement, Gibson discovered the provision calling for a payment of $75,000 to Randazza.  Randazza had not previously disclosed this provision to Gibson and did not obtain Gibson's authority or consent to negotiate or include such a provision. The payment to Randazza immediately raised questions for Gibson as did the nervous manner in which Randazza presented the agreement to him.  In response to Gibson's inquiry regarding the $75,000 payment, Randazza characterized it to be a "bribe" to his firm for a promise not to sue Oron again.  When Gibson questioned why that payment should not go to the E/L, Randazza

claimed Oron had specifically taken the position that not a penny more than $600,000 could go to E/L.

26.     Randazza's entire explanation did not ring true in Gibson's eyes, nor did Randazza's self-dealing sit well with E/L.  Gibson advised Randazza that he was not comfortable with that payment given that Randazza was already being compensated by E/L for his work on the matter and that it seemed illogical that Oron would care whether all of the $675,000 it was willing to pay went to E/L or not.

27.     E/L's concerns with Randazza grew significantly because of this incident.  Over the ensuing weeks, Randazza made various attempts to discuss the "bribe" in an effort to obtain Gibson's consent to include it in the settlement agreement.  Gibson rebuffed Randazza's efforts, having determined it was best to closely consider the quality of Randazza's work for E/L.

28.     Randazza reacted strongly to Gibson's refusal to address the term of the settlement agreement.  Following a happy hour event during this time period, Randazza began cleaning personal items out of his office and loudly saying "F**ck this shit, I quit."

29.     In late August, 2012, Gibson learned from outside counsel in Hong Kong that the $550,000 settlement payment from Oron had been received by Randazza into his firm's trust account and that Randazza had not notified Gibson.  In previous instances, Randazza had notified the E/L executive team as soon as settlement monies were received, touting his successes.

30.     Gibson questioned Randazza about the delay and Randazza responded claiming the delay was due to the money finally being released late the day before.  Gibson indicated E/L's desire to move forward with fulfilling the conditions of settlement such that the $550,000 could be released to E/L and also expressed displeasure with the fact that E/L likely would only receive about $262,500 of the total settlement amount once fees, costs, and Randazza's 25% bonus were taken into account.

31.     Randazza refused to comply with Gibson's directive, stating that he was not forwarding the $550,000 and instead, "I'm taking out my share, the costs we owe to outside parties, and paying myself back the $25,000 I advanced.  Then I'm giving you your net, which is more than you expected."  In other words, Randazza was unilaterally taking control of the

GREENE INFUSO, LLP
3030 South Jones Boulevard Suite 101
Las Vegas, Nevada 89146
(702) 570-6000

settlement funds.  E/L found this to be completely inappropriate but was at a loss as to how to rectify the situation as the money was in Randazza's trust account over which it had no control.

*C. Randazza's Resignation and Subsequent Conduct.*

32.  Only a couple of hours later, Randazza communicated the following to E/L: "Given our now openly adversarial relationship, it seems appropriate that I withdraw from representing Liberty in any further matters.  There might be a way I can continue to wind down existing matters, but it's going to require a call to discuss it.  When are you free?"

33.  E/L communicated to Randazza that it construed his email as a resignation, which it accepted effective immediately, instructed that neither he nor RLG touch the Oron settlement funds, advised it had retained new counsel, Littler Mendelson, and further instructed that Randazza retain all E/L property in its possession for the time being.  E/L then promptly paid Randazza his salary through his last day of employment and accrued, unused PTO.

34.  After Randazza's resignation, E/L learned that, without its knowledge or consent, Randazza had begun storing all of E/L's legal records on the RLG server to which only he and the paralegal had access in deliberate and direct violation of the Employment Agreement. Immediately after resigning, Randazza  deliberately and intentionally cut off all E/L access to its legal records and refused to grant E/L any access to, or copies of, its records.  In addition, E/L had no access to records regarding legal settlements or agreements with vendors and outside counsel that were engaged in its legal matters.  These spiteful acts were done by Randazza to delibertately harm E/L.

35.  Since his resignation, Randazza has continually and intentionally engaged in conduct designed to make E/L's life difficult while at the same time attempting to portray a facade of being conciliatory.  E/L's paralegal Erika Dillon informed E/L's Human Resources Manager that Randazza was pressuring her to leave E/L to work for Randazza's outside firm.  On the day of Randazza's resignation, but prior to his resignation email being sent, Randazza and Dillon plotted to delete and wipe information from computer hard drives and cut-off E/L's access to its records in anticipation of their resignations.

Randazza further engaged in the following conduct:

GREENE INFUSO, LLP
3030 South Jones Boulevard Suite 101
Las Vegas, Nevada 89146
(702) 570-6000

8

**GREENE INFUSO, LLP**
3030 South Jones Boulevard Suite 101
Las Vegas, Nevada 89146
(702) 570-6000

a.      The day he resigned, Randazza contacted Hong Kong counsel and in a deliberate attempt to harm E/L, informed them he was no longer counsel for E/L because E/L refused to pay his or the Hong Kong firm's fees.  This blatant falsehood was calculated to cause harm to E/L.  In corresponding with the Hong Kong firm, E/L learned Randazza had not disclosed to them that he was General Counsel for E/L.  E/L had to immediately wire approximately $33,000 to the Hong Kong firm in order for the firm to continue representing E/L because of their unease over Randazza's false and improper communication.

b.      Randazza also began contacting other outside counsel attempting to influence them to withdraw from representation of E/L.  On August 20, 2012 local counsel for litigation in Philadelphia informed E/L that he had been contacted by Randazza about Randazza's departure and requested to withdraw as counsel for E/L.

c.      On September 4, 2014, when Randazza knew E/L's CEO was out of state, Randazza and Dillon appeared unannounced at E/L's headquarters despite knowing this was not something that E/L would tolerate from an ex-employee.  Caught off-guard, the Human Resources Manager allowed Randazza access to his office.

d.      After much prodding, Randazza eventually returned his company owned laptop, but not without first wiping the computer several times in what appears to be a deliberate cover up of his activities.  In fact, Randazza wiped his laptop the day before his resignation even though he had been directed in writing to retain all E/L property in his possession before he wiped his computer.  In addition, E/L subsequently sent Randazza a formal preservation notice.  As an attorney, Randazza knows he is not permitted to spoliate evidence.  Randazza's spoliation is a serious issue as it at least creates an adverse inference that he deliberately destroyed relevant evidence.

e.      E/L has further learned that Randazza attempted to coerce at least one former employee to provide unfavorable testimony against E/L in the parties' underlying arbitration (thus suborning perjury).  Fortunately, that former employee alerted E/L to the duress he was being placed under by Randazza.

36.     Randazza involved his lawfirm, RLG, in the Oron litigation.  Randazza never had E/L enter into any form of fee agreement with RLG as any prudent General Counsel would and should.  Randazza often asserted to E/L that when he used RLG, he would not make money on his firm's work and E/L would only have to pay a highly discounted hourly rate reflecting RLG's direct costs incurred for the labor.  In short, E/L was never to be charged the customary hourly rates of RLG attorneys.   Nor, would it ever have incurred charges of $500 per hour for Randazza's time as he was an employee of E/L.  With that in mind, Randazza and his firm filed a Motion for Attorneys Fees and Costs in the Oron matter.  In the Motion, Randazza represented to the court that E/L incurred/expended approximately $134,000 in attorneys fees and costs.

37.     Unbeknownst to E/L, Randazza misrepresented to the court that it paid Randazza and RLG their standard rates to the tune of $134,000, and that E/L was receiving regular billing from RLG.  A review of Randazza's filings in other matters show this is not the first time such misrepresentations have been made.  E/L discovered these misleading statements during the process of locating new counsel.

38.     Discovery in the underlying arbitration between the parties has also confirmed that throughout the course of Randazza's employment with E/L, he engaged in unethical conduct, and the representation of various companies that created conflicts of interest in light of his employment as E/L's General Counsel.  Indeed, Randazza offered legal advice to known infringers of E/L's copyrighted material and ignored E/L's pleas to take action against said companies.  On some occasions, Randazza even dissuaded E/L from taking action against those undisclosed clients, including but not limited to, Xvideos.com and XNXX.com.  The full extent of Randazza's conflicts remain unknown as E/L does not have knowledge of Randazza's full and complete client base.

39.     On multiple occasions, Randazza engaged in negotiations with adverse parties who had litigation pending against E/L, regarding those parties retaining his services in order to conflict him out from any future cases against them.  In fact, Randazza improperly engaged in those negotiations during E/L's litigation with TNAFlix, Oron, and Megaupload.  Each time

GREENE INFUSO, LLP
3030 South Jones Boulevard Suite 101
Las Vegas, Nevada 89146
(702) 570-6000

GREENE INFUSO, LLP
3030 South Jones Boulevard Suite 101
Las Vegas, Nevada 89146
(702) 570-6000

Randazza engaged an adverse client, he was obligated to disclose such information to E/L, but he did not do so which was part of a continued pattern of fraudulent conduct.

40.     Randazza also, without notifying E/L management, negotiated to potentially broker a deal for the sale of TNAFlix while actively litigating against them on E/L's behalf, he encouraged E/L to enter into an unethical business transaction during the Oron litigation, jeopardized the entire Oron settlement as a result of his unethical behavior and explicit non-compliance with the settlement agreement, and encouraged E/L to enter into agreements with vendors he represented without any disclosure therefor.  Randazza never disclosed the existence of any of these conflicts of interest and never sought written informed consent from E/L which, again was part of a pattern of deliberately fraudulent conduct designed and intended to harm E/L.

D. The Employment Agreement Arbitration

41.     On December 19, 2012, Randazza initiated arbitration proceedings against E/L, under the auspices of Judicial Arbitration and Mediation Services, Inc. ("JAMS") for employment-related claims lacking any basis in law or fact (the "Arbitration").  See Plaintiffs' Request for Judicial Notice ("Plaintiffs' RJN"), **Exhibit 1.**

42.     In the Arbitration, E/L filed counterclaims against Randazza alleging numerous serious violations of his fiduciary duties to E/L, legal malpractice, conversion, breach of contract, and other claims.  See Defendant's RJN, **Exhibit 3.**

43.     The parties agreed to the appointment of the Hon. Stephen E. Haberfeld (Ret.) As the arbitrator for that matter (the "Arbitrator").

44.     The parties conducted over two years of discovery and pre-hearing litigation, as well as the Arbitration hearing itself which was held over five days from February 9-13, 2015.

45.     On June 3, 2015, the Arbitrator issued his Interim Arbitration Award (the "IAA"). The IAA found in favor of E/L on all of the claims and counterclaims, and awarded E/L damages against Randazza in a sum exceeding $568,715.  A true and correct copy of the IAA is attached as Exhibit 3, to the Defendant's RJN.

46      Among other things, the Arbitrator made numerous findings of fact in the underlying dispute, particularly relevant are the following:

GREENE INFUSO, LLP
3030 South Jones Boulevard Suite 101
Las Vegas, Nevada 89146
(702) 570-6000

a.      "Whether or not Mr. Randazza's employment by E/L was terminated voluntarily by Mr. Randazza or involuntarily by E/L, the principal proximate cause for the ending of Mr. Randazza's employment was Mr. Randazza's breaches of fiduciary duty and the covenant of good faith and fair dealing, implied in his employment agreement, as an employee, executive and general counsel of E/L." IAA, p.2 ¶C

b.      "Mr. Randazza's credibility was also undermined by the variance between his testimony and positions at hearing and his written Nevada State Bar submission concerning the Oron litigation $75,000 bribe..." IAA p. 6 fn.4

c.      "The evidence established at the hearing was that Mr. Randazza intended that his allegations would induce [Gibson] to authorize a settlement financially favorable to Mr. Randazza, based on Mr. Randazza's belief at the time – and ultimately proven incorrect – that [Gibson] would so settle, rather than have to litigate true or false allegations related to his own sexuality, sexual activity, and the pornographic nature of E/L's business." IAA p. 6-7 ¶F

d.      "Turning to E/L's counterclaims, Mr. Randazza owed fiduciary duties to E/L, because he was their in-house general counsel and their attorney of record in judicial civil actions, and an E/L executive and employee.  As such, Mr. Randazza owed E/L, as his clients, employers and principals, the highest duty of loyalty and honesty in the performance of his professional and executive obligations [...] Each of Mr. Randazza's ethical duties owed to his principals/clients was a legal fiduciary duty owed to them.  Mr. Randazza violated those fiduciary duties owed by him to E/L, as his principals/clients/employers – including by the following:" IAA p.13 ¶Q

e.      "(1) engaging in negotiations for monetary bribes to be paid to him – including the Oron $75,000 which [Gibson] noticed, without Mr. Randazza's affirmative disclosure of it – which would result in his being 'conflicted out' of future litigation or any disputes with parties then and/or in the future with interests adverse to E/L's interests, (2) taking control for his personal benefit of, and refusing to relinquish control over, Oron settlement funds – all of which ought to have been for the benefit and under the direction and control of his principals/clients E/L, before and after the end of his employment and representations on behalf

of E/L, (3) Mr. Randazza's ordering and causing the deliberate 'wiping' of his and legal assistant's corporate laptops, as an integral part of his planned resignation as E/L's General Counsel and outside counsel of record, and (4) Mr. Randazza's continuing an undisclosed (and thus uncontested-to) legal work for clients (e.g., Bang Bros., Xvideos, XNXX, Porn [Guardian], Titan Media, Kink), whose interests were actually and potentially adverse to E/L's interests." IAA p.14-15

f.      "As E/L's inside general counsel and employee, Mr. Randazza had a legal and fiduciary duty – no later than when his employment ceased, regardless of whether or not with or without cause and/or by whom ended – to deliver every file and other piece of data and/or information – complete, intact and undeleted, unmodified and immediately accessible and usable by E/L [...] Because of his noncompliance, indeed resistance to compliance with those duties, they continue to the day of the rendering of this award [...] Those continuing fiduciary duties owed by him to E/L exist, including by reason of his exclusive control over the computers and thus superior knowledge of what was on each computer's hard drive before and after he had everything on the returned laptops completely and multiply deleted..."  IAA p.16

g.      "By the same token, that ordered conduct raises an inference that whatever was deleted was known and intended by Mr. Randazza to be harmful to him and any claims and contentions which he might make in any dispute with E/L – i.e., deliberate spoliation, in addition to conversion."  IAA p.17

h.      "Mr. Randazza committed spoliation of evidence, as well as improper conversion of his employer's files, data and equipment and, in so doing, also violated his fiduciary duties owed to E/L."  IAA p. 17

i.      "... Mr. Randazza's response to E/L's [state bar] grievance contained at least one material misrepresentation acknowledged during an evidentiary session in this arbitration..." IAA p. 17 ¶S

j.      "E/L was damaged in at least the amount of $275,000, by reason of the Oron resettlement, as a direct and proximate result of events being set in motion by Mr.

GREENE INFUSO, LLP
3030 South Jones Boulevard Suite 101
Las Vegas, Nevada 89146
(702) 570-6000

13

Randazza's violations of fiduciary duty and other duties, by his having secretly negotiated a $75,000 bribe to conflict himself out from suing Oron in the future." IAA p. 18 ¶T

k.    "The extent of Mr. Randazza's contractual material breaches made them also breaches of fiduciary duty – regardless of whether or not those breaches of fiduciary duty were conflicts of interests, as some were." IAA p. 19 ¶V

l.    "Disgorgement of compensation paid by E/L to Mr. Randazza is an available remedy, which is appropriate in the circumstances of Mr. Randazza's clear and serious violations of fiduciary duty owed to E/L, and within the Arbitrator's discretion, based on the evidence in this arbitration." IAA p. 19 ¶W

m.    "E/L are the prevailing parties in this arbitration.  As such one or both of Respondents is or may be entitled to contractual attorneys fees under the employment agreement." IAA p. 22 ¶Y

47.    The damages awarded by the Arbitrator to E/L have not been fully calculated, but exceed $1 million. IAA p.23-26 ¶1-9

48.    Subject to a determination of the full amount of damages to be awarded to Plaintiffs, the IAA, "including the Determinations hereinabove set forth, is intended to be in full settlement of all claims, issues, allegations and contentions, on the merits, submitted by any party against any adverse party in this arbitration." IAA p. 26.

### *Legal Argument*

### A.    Motion to Dismiss Standard

The standard for the court's consideration of a motion to dismiss are well known and, for the most part, are adequately laid out in the Defendant's Motion.  However, two points deserve emphasis in the context of the instant Motion.  First, all of the factual allegations contained in the Complaint must be taken as true when the court evaluates whether the facts in the Complaint state a claim for relief.  *Neitzke v Williams*, 490 U.S. 319, 326-327 (1989) ("What Rule 12(b)(6) does not countenance are dismissals based on a judge's disbelief of a complaint's factual allegations.") Thus, whether the statements of fact contained in the Complaint are couched in terms of quotes from the IAA or are simply stated as facts, the Court must take them as true.

GREENE INFUSO, LLP
3030 South Jones Boulevard Suite 101
Las Vegas, Nevada 89146
(702) 570-6000

Secondly, the Court should grant the Motion to Dismiss if, and only if, the Court determines that there is no possible set of facts described in the complaint that give rise to the causes of action being asserted. *Swierkiewicz v Sorema N.A*., 534 U.S. 506, 514 (2002); *Scheuer v Rhodes*, 416 U.S. 232, 236 (1974). Thus, if there is any way to construe the facts contained in the complaint as giving rise to the causes of action asserted therein, the Motion must be denied.

**B.    The Collateral Estoppel Issue is Premature and Irrelevant**

Defendant argues that the IAA is entitled to no preclusive effect because it was not confirmed by a court prior to Defendant's bankruptcy filing. Defendant then concludes that all of the allegations contained in the complaint that refer to the IAA must be dismissed for failing to state a claim. Motion, page 7, ¶28. Defendant is off the mark for multiple reasons.

First, it is not as clear as Defendant would have the Court believe that an unconfirmed arbitration award is entitled to no preclusive effect. The cases cited by Defendant are either distinguishable or rely on dicta and are therefore are not persuasive. For instance, *McDonald v City of W. Branch, Mich.,* 466 US 284 (1984), is distinguishable because it dealt with civil rights actions brought under federal law and declined to give an arbitration award preclusive effect because of considerations relating to an arbitrator's potential inability to apply and address policy considerations involving federal law as opposed to resolution of contract-based disputes. *See id.* at 290 ("although arbitration is well suited to resolving contractual disputes, … it cannot provide an adequate substitute for a judicial proceeding in protecting the federal statutory and constitutional rights that §1983 is designed to safeguard.") None of the statutory or constitutional issues at play in *McDonald* are present in the case before the Court here.

The Defendant cites in *Caldeira v County of Kauai,* 866 F2d.1176 (9th Cir. 1989), but there the court addressed, not an *unconfirmed* arbitration award, but a *confirmed* arbitration award. The court's statement that an unconfirmed arbitration award would not have preclusive effect is mere dicta. *Id*. at 1178. [3] Finally, Defendant cities *Lum v City and County of Honolulu*, 728 F. Supp. 1452 (D. Haw 1989), which is distinguishable for the same reasons as *McDonald* as

---

[3] Defendant also cites *In re Sandwich Islands Distilling Corp*., 2009 WL 3806680 (Bankr. D. Haw. 2009), which relies on the dicta of *Caldeira*.

GREENE INFUSO, LLP
3030 South Jones Boulevard Suite 101
Las Vegas, Nevada 89146
(702) 570-6000

GREENE INFUSO, LLP
3030 South Jones Boulevard Suite 101
Las Vegas, Nevada 89146
(702) 570-6000

1  it dealt with a Title VII action.  Thus, the same statutory and constitutional issues referenced in

2  *McDonald* were involved in *Lum*, but are not present in the case at bar.

3      Meanwhile, each of the cases cited in paragraph 47 of Plaintiffs' complaint stand for the

4  proposition that an unconfirmed arbitration award can be given preclusive effect.  Similarly, the

5  United States bankruptcy court for the District of Oregon reached the same conclusion in *In re*

6  *Rosendahl,* 307 B.R. 199, 208 (Bankr. D. Ore. 2014). (holding that decisions of arbitrators are

7  entitled to full faith and credit for issue preclusion purposes in adversary proceedings).   In

8  *Rosendah*l, the court noted that the arbitration held in that matter was a full blown adversary

9  proceeding in which all the parties were represented by counsel of their choosing, witnesses

10 testified under oath, the arbitrator was a competent and neutral arbitrator and there was a verbatim

11 transcript of the arbitration proceedings maintained.  Accordingly, the court determined that the

12 arbitration was appropriately entitled to preclusive effect.  *Id*. at 208.[4]

13     As in *Rosendahl*, in the case at bar, the five day arbitration was held after more than two

14 years of discovery and pre-arbitration proceedings, the parties were represented by counsel of

15 their choosing, witnesses testified under oath, dozens if not hundreds of documents were

16 introduced, and the arbitrator was a competent neutral arbitrator provided by a highly respected

17 national arbitration organization.  Accordingly, the Court should give preclusive effect to the

18 arbitration award in the instant matter.

19     Second, the issue of the preclusive effect of the IAA is premature in the context of a

20 motion to dismiss.[5]  As discussed above, in considering a motion to dismiss, the Court must

21 accept as true all factual allegations contained in the complaint.  Whether the allegations are

22 couched in terms of quotes from the IAA or are simply stated outright as allegations is

23 immaterial; either way the Court must accept them as true in determining whether to grant or

24
[4] Defendant's Motion cites to *Houng v Tatung Co. (In re Yin-Ching Houng)*, 499 B.R. 751 (C.D. Ca. 2013), which is
25 critical of *Rosendahl* and *In re Marx*, 171 B. R. 218 (Bankr. N.D. Tex 1994).  The *Houng* court says *Rosendahl*
improperly relies on *In re Baldwin* 249 F. 3d 912 (9th Cir. 2001), in holding that an unconfirmed arbitration award is
26 entitled to preclusive effect. 499 B.R. at 760 n.36. But *Rosendahl* does not cite *Baldwin* for that proposition.  *See* 307
B.R. at 208. *Houng* makes a similar criticism of *Marx. Id.*  But in both *Rosendahl* and *Marx* the court was well aware
27 of the difference between a default judgment and an arbitration award and each concluded that, because of the nature
of the arbitration, it is entitled to preclusive effect. 307 B.R. at 208; 171 B.R. at 222.
28 [5] Alternatively, Defendant's Motion argues that summary judgment on the collateral estoppel issue is appropriate.
For the reason discussed above, this argument should be rejected.

16

GREENE INFUSO, LLP
3030 South Jones Boulevard Suite 101
Las Vegas, Nevada 89146
(702) 570-6000

deny the motion.  That is, the Complaint's allegations are entitled to the presumption that they are true whether they are stated within quotation marks or not.  *See Neitzke,* 490 U.S. at 326-327.

Finally, the Court strongly implied at the hearing when it denied Plaintiff's motion for relief from stay, that it would give heed to the decisions of the arbitrator when it stated that "the sole remaining issue in arbitration for which creditors seek relief from the stay is establishment of the amount of interest, costs, attorney's fees and spoliation damages creditors should receive through a modification of the IAA."  Plaintiffs' RJN, Exhibit 7, page 29, line 22 through page 30, line 1.  The logic of the Court's thought process is sound.  It makes little sense for this Court to disregard the IAA in its entirety after parties spent many thousands of dollars leading up to and including a five day arbitration.

### C.     The Complaint States a Claim for Relief Under Section 523(a)(2)

Bankruptcy Code section 523(a)(2)(A) of the bankruptcy code excepts a debt from discharge "for money, property, services, or an extension, renewal or refinancing of credit to the extent obtained by … false pretenses, a false representation or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.  11 U.S.C. § 523(a)(2)(A).  The Motion correctly notes that to succeed in asserting a claim under 523(a)(2)(A) the plaintiff must establish the following elements: (1) misrepresentation, fraudulent omission, or *deceptive conduct* by the Debtor; (2) knowledge of the falsity or the deceptiveness of the statement or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor on the Debtor's statement or conduct; and (5) damage to the creditor approximately caused by its reliance on the debtor's statement or conduct.  *See Turtle Rock Meadows Homeowners Ass'n v Slyman (In re Slyman)*, 234 F.3d 1081, 1085 (9th Cir. 2000)

In its Motion the Defendant argues that the claims asserted in the Complaint under section 523 (a)(2)(A) are nothing more than a breach of contract and akin to a breach of a promise and as such claim does not give rise to fraud.  That is not the case.

Defendant's Motion as to the section 523(a)(2)(A) claim is based on the notion that the claim is based solely upon the parties entering into the Employment Agreement and that no facts are alleged that Randazza made any false representations in connection with entering into the

Agreement.  *See* Defendant's Motion. ¶32.  But Plaintiffs' claim under section 523(a)(2)(A) is not only based on Randazza's intent not to perform the contract, it is also based on numerous subsequent acts that Randazza was obligated to disclose, but did not.

Paragraphs 4-53 of Plaintiff's Complaint contain allegations that Randazza made actual and implied representations to Plaintiffs that he would comply with his obligations under the Employment Agreement and that he never intended to do so.   As Defendant's Motion acknowledges, "a promise made with a positive intent not to perform or without a present intent to perform satisfies § 523(a)(2)(A)."  Defendant's Motion, ¶¶ 33-34 (quoting *McCrary v Barrack (In re Barrack),* 217 B.R. 598, 606 (B.A.P. 9th Cir. 1998) and citing numerous other authorities). As such, both the original and the First Amended Complaint state a claim for relief under section 523(a)(2)(A) with respect to the execution of the Employment Agreement.

In addition, however, the Complaint alleges that Randazza continually failed to disclose facts about his activities that were material and caused Plaintiffs to continue to retain Randazza as their in-house counsel and to compensate him.  *See Harmon v Kobrin (In re Harmon),* 250 F.3d. 1240, 1246 n.4 (9th Cir. 2001) (failure to disclose material facts constitutes fraudulent omission). Paragraphs 51 and 52 of the Complaint describe this pattern of fraudulently concealed deceptive conduct.  In particular, paragraph 52 of the Complaint states:

> Defendant failed to disclose the Plaintiffs various facts material to his work and to his continued of employment including: the true nature of his dealings with infringers of Plaintiffs intellectual property; his engagement in negotiations with adverse parties who had litigation pending against Plaintiffs, regarding those parties retaining his services in order to conflict him out of any future cases against them; his negotiations to broker a deal for the sale of a defendant (TNAFlix) while actively litigating against them on EL's behalf.

Based on the foregoing, Plaintiffs submit that both the original Complaint and the First Amended Complaint adequately state a claim based upon Bankruptcy Code section 523(a)(2)(A).

The Motion also argues that the Complaint fails to plead the allegations of fraud under section 523(a)(2)(A) with sufficient particularity as required by Federal Rule of Civil Procedure 9(b).  That also is not the case.  Plaintiffs submit that the comprehensive statement of facts contained in paragraphs 6 through 44 of the Complaint and First Amended Complaint, combined

GREENE INFUSO, LLP
3030 South Jones Boulevard Suite 101
Las Vegas, Nevada 89146
(702) 570-6000

18

with the "cause of action specific" recitation of facts in paragraphs 49 and 53 of the Complaints more than satisfies the requirements of Rule 9(b)[6]. However, if the Court determines that Plaintiffs have not pled their claims under section 523(a)(4) with sufficient particularity, the Court should grant them leave to amend.

Amendment of pleadings is governed by Federal Rule of Bankruptcy Procedure 7015, which incorporates in its entirety Federal Rule of Civil Procedure 15. Rule 15 provides that permission to amend a pleading should be freely given "when justice so requires". Amendment is appropriate in the case at bar because the Defendant's pending Motion is the first challenge to the Complaint. Although Plaintiffs amended their initial Complaint when they filed their First Amended Complaint (adversary docket no. 11), the only change was to add a cause of action under Bankruptcy Code section 523(a)(6). The First Amended Compliant made no other changes to the original Complaint. As a result, Plaintiffs submit that, if the Court grants the Defendant's Motion in whole or part, justice requires they be allowed to amend their Complaint to cure any defects.

### D.    The Complaint States a Claim for Relief Under Section 523(a)(4)

Bankruptcy Code section 523(a)(4) excepts from discharge any debt for "fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny." 11 U.S.C. §523(a)(4). In his Motion, Defendant correctly notes that under Ninth Circuit law, in order to establish fraud or defalcation while acting in fiduciary capacity as contemplated by section 523(a)(4), the Plaintiff must show that "1) an express trust existed, 2) the debt was caused by fraud or defalcation, and 3) the Debtor acted as a fiduciary to the Creditor at the time the debt was created." Motion, page 13 ¶46 (citing *Otto v Niles* (*In re Nile*s, 106 F.3d 1456, 1459 9th Cir. 1997)).

Defendant's argument that Plaintiff's Complaint fails to state a claim for relief under Bankruptcy Code section 523(a)(4) rests on two notions. First, that the ordinary attorney-client relationship docs not give rise to the type of fiduciary relationship contemplated by section

---

[6] This is especially true in the present case where the parties were involved in years of litigation leading up to the February 2015 arbitration.

GREENE INFUSO, LLP
3030 South Jones Boulevard Suite 101
Las Vegas, Nevada 89146
(702) 570-6000

523(a)(4).   See Motion, ¶50.   Second, that there was no express trust relationship between Plaintiffs and Defendant because there was no "trust res" held by Defendant.

As to the first issue, the only caselaw cited by Defendant that involves the ordinary attorney-client relationship is *In re Bigelow*, 271 B.R. 178 (B.A.P. 9th Cir. 2001).  There, the court held that the debtor, the Plaintiff's criminal attorney, was not, solely by virtue of that relationship, a fiduciary as defined in section 523(a)(4). *Id* at 181.  The court also noted that there were no trust funds involved in the relationship. *Id* at 188.

Here, Randazza was not merely an attorney retained by Plaintiffs who committed malpractice.  Rather, Randazza was Plaintiffs' in-house counsel on a full time basis.  As such, Plaintiffs submit that his relationship is more akin to that of a partner which has been held to give rise to a fiduciary relationship under section 523(a)(4).  *See Lewis v Short (In re Short)*, 818 F.2d. 693, 696-697 (9th Cir. 1987) (applying Washington law); *Ragsdale v Haller*, 780 F.2d. 794, 796 (9th Cir. 1986) (applying California law).

Defendant also argues that there was no trust res" but that ignores the $550,000 held in the Randazza Law Group trust account that Randazza had refused to turn over to Plaintffs.  The existence of such funds distinguishes the present case from *Bigelow. See* 271 B.R. at 188 ("Since there were no trust funds involved in Bigelow's attorney-client relationship with Stephens, there was not a "fiduciary" relationship within the narrow meaning of §523(a)(4).")  Given the facts that Randazza was not merely an attorney retained by Plaintiffs, but was a full time employee as in-house counsel, and that there were at a minimum, trust funds of $550,000 held by Randazza, the Court should conclude that Plaintiffs' Complaint states a claim for relief under section 523(a)(4).

Defendant asserts that Plaintiffs' Complaint fails to plead their claims under section 523(a)(4) with sufficient particularity as required under FRCP 9(b).  Defendant cites no authority that Rule 9(b) applies to claims asserted under section 523(a)(4).  Defendant merely refers to "the same caselaw previously cited with respect to Plaintiffs' 523(a)(2)(A) claim."  Motion, page 18:3-4.  But that caselaw deals only with claims under section 533(a)(2)(A) (which sound in fraud) and not to claims under other subsections of section 523.  *See In re Craciun*, 2014 WL 221742

GREENE INFUSO, LLP
3030 South Jones Boulevard Suite 101
Las Vegas, Nevada 89146
(702) 570-6000

(B.A.P. 9th Cir. 2014). Defendant cites (and Plaintiffs' counsel could locate) no authority that Rule 9(b) applies to claims under section §523(a)(4) or (a)(6). However, if the court determines that Rule 9(b) does apply, Plaintiffs submit that the allegations contained in paragraphs 6 through 44 and 55 through 60 meet Rule 9(b)'s requirements.

Further, even if the Court determines that Plaintiffs have not plead their claims under section 523(a)(4) with sufficient particularity, the Court should grant them leave to amend for the same reasons as stated above.

**E.      The Complaint States a Claim for Relief Under Section 523(a)(6)**

Bankruptcy Code section 523(a)(6) excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. §523(a)(6). In his Motion, Defendant asserts that only conduct that constitutes a form of intentional tort can give rise to a non-dischargeable claim under section 523(a)(6). Defendant further argues that the claims asserted in the Complaint are little more than generic malpractice claims that sound in negligence and cannot support a claim under section 523(a)(6). See Motion, page 19, ¶60. This is not the case. The Complaint describes an extensive pattern of fraudulent conduct aimed at benefitting Randazza at the expense of E/L.

Defendant argues that the claims asserted in paragraph 63(a) and (f) of the Complaint are malpractice claims based in negligence and not intentional tort. But unlike malpractice claims based upon negligence where are attorney makes an inadvertent error, the allegations at issue assert deliberate conduct intended to harm-and in fact harming-Plaintiffs. As such, they are not mere generic negligence claims causes inadvertent harm, but intentional tort claims causing deliberate harm.

Defendant argues that the Complaint's allegations relating to spoliation and destruction of evidence do not support a section 523(a)(6) claim because courts do not recognize an independent cause of action for such claims. But the allegations concerning those matters are part and parcel of a collection of allegations of actions that collectively give rise to a claim under section 523(a)(6). Plaintiffs do not assert that these claims are separate and independent cause of action.

In addition to the foregoing, the gravamen of Defendant's argument concerning section 523(a)(6) is that the allegations in paragraphs 61 through 66 of the Complaint are akin to an intentional breach of a contract, citing to *Lockerby v Sierra (In re Lockerby)*, 535 F.3d 1038 (9th Cir. 2008). In *Lockerby,* the debtor was sued for malpractice and settled with the plaintiff, but deliberately defaulted on the settlement and filed bankruptcy. The bankruptcy and district courts held for the plaintiff, but the Ninth Circuit reversed, holding that tortions conduct was required to support a claim for relief under section 523(a)(6). The present case, however, involves far more than a mere breach of a settlement agreement; it involves a prolonged and extensive pattern of deliberate misconduct intended to benefit the Debtor and harm Plaintiffs. As such, Plaintiffs submit that this case rises to the level of a claim under section 523(a)(6).

Once again Defendant argues that Plaintiffs fail to plead its claims under Bankruptcy Code section 523(a)(6) with sufficient particularity as required by FRCP 9(b). As with his arguments under section 523(a)(4), Defendant cites no authority that Ruyle 9(b) applies to claims asserted under section 523(a)(6). As stated above, however, if the Court agrees with Defendant's argument, the Court should grant Plaintiffs leave to amend their Complaint to more precisely assert their claim under this provision.

## F. Plaintiffs' "Miscellaneous Claims"

### 1. *Jury Trial*

Plaintiffs acknowledge that under Ninth Circuit law, they are not entitled to a jury trial in this proceeding. *See American Express Travel Services Co. v. Hashemi (In re Hashemi)*, 104 F.3d 1122, 1124 (9th Cir. 1996); *Locke v United States Trustee*, 205 B.R. 592, 599-600 (B.A.P 9th Cir. 1996). Accordingly, Plaintiffs do not oppose the denial of their jury demand.

### 2. *Request for Disgorgement*

Plaintiffs acknowledge that in the bankruptcy context their demand for disgorgement is, in a literal sense, not feasible. However, Defendant's Motion seems to go further and asserts that, as a matter of law. Plaintiffs are not entitled to include in their claims against Randazza the amounts underlying their disgorgement claims (namely the amounts fraudulently obtained by Defendant as salary). The crux of Defendant's argument is that California law bars an employer

GREENE INFUSO, LLP
3030 South Jones Boulevard Suite 101
Las Vegas, Nevada 89146
(702) 570-6000

from recovery of amounts paid as salary or wages. Randazza argues that the Governing Law clause in the Employment Agreement specifying that California law will govern the interpretation of the Employment Agreement, acts to import California's wage and hour laws to his employment in the State of Nevada. Randazza's position fundamentally confuses the purpose of a choice of law provision. The Governing Law clause in Section 9(E) states that the Agreement "shall be governed by and construed in accordance with the laws of the State of California, without regard to conflict of laws." Defendant's RJN, Exhibit 1, page 12. Unfortunately for Randazza, the Governing Law clause does not imply that Randazza is subject to all of the protections of California law without regard to the state in which he primarily works. Rather, a choice of law provision does nothing more than govern the law used for claims arising out of the contract, such as contractual claims. Randazza's claims in this regard are statutory and not contractual, and are completely unrelated to the Governing Law clause.

Case law, including that within the Ninth Circuit, establishes that choice of law clauses apply only to claims asserting breach of a contract and not to statutory claims. *See e.g., Dollar Systems, Inc. v Avcar Leasing Systems, Inc.*, 890 F.2d 165, 171 (9th Cir. 1989) (choice of law clause does not govern statutory cause of action not founded on performance or interpretation of contract); *Telequest, Inc. v Norton Cattle Co.,* 189 F.3d 474 (9th Cir. 1999)(unpublished disposition)(applying Nevada choice of law rules, holding that forum selection clause "only governs the interpretation of the agreement, not the resolution of tort claims," which "ordinarily are not controlled by contractual choice of law provisions"); *Med. Instrument Dev. Labs. V. Alcon Labs.*, WL 1926673, *3 (N.D. Cal. 2005) (choice-of-law clause does not govern non-contractual claim arising under California Business Profession Code); *Red Roof Inns, Inc. v Murat Holdings, L.L.C.*, 223 S.W.3d 676, 684 (Tex. App. 2007) (choice-of-law clause does not cover statutory claims); *Ayco Co. v. Frisch,* 795 F. Supp. 2d 193, 203 (N.D.N.Y. 2011) (choice of law clause stating agreement "shall be governed by and construed and enforced in accordance with the laws" of New Your does not govern non-contractual claims).

In addition, the Arbitrator ruled in his IAA that California's wage and hour laws do not act extraterritorially. Adversary Docket No. 23-3, p. 13 of 27. Thus, the Governing Law clause

GREENE INFUSO, LLP
3030 South Jones Boulevard Suite 101
Las Vegas, Nevada 89146
(702) 570-6000

does not offer Randazza the protections of California law for his employment in Nevada. As a resident of Nevada performing work solely in Nevada during the time period specified in the allegation of the claims, Randazza has no basis for asserting any statutory claims brought pursuant to the California Labor Code.

Even if Randazza's theory was correct and California substantive law applied to his employment relationship with E/L while working in Nevada by virtue of the Governing Law clause, California's wage and hour laws would still not supply to his employment in Nevada. California follows the presumption against extraterritoriality. In other words California does not apply its laws outside of its borders unless intent to apply extraterritorially is set forth explicitly within a statute. *See Sullivan v Oracle Corp.*, 51 Cal. 4th 1191, 1207 (Cal. 2011) (noting California's long standing presumption against extraterritoriality). If the Governing Law clause imports all of California law to the employment relationship between Excelsior and Randazza, Randazza cannot pick and choose which parts of California law he wants and discard the others. He is also forced to live with California's presumption against extraterritoriality.[7]

### 3. Request for Attorneys' Fees

Defendant argues that Plaintiffs are not entitled to an award of attorneys' fees and that, if they are, such amounts are dischargeable. See Motion ¶¶91-93. Defendant acknowledges that Plaintiffs are entitled to recover attorney's fees as part of their claims against Randazza. Motion, ¶92. To the extent they assert an unsecured claim against Randazza's bankruptcy estate, such fees would be included.[8]

Defendant argues, however, that Plaintiffs are not entitled to include attorney's fees as part of their non-dischargeability claim because the claims giving rise to the non-dischargeable claim sound in tort, not contract. However, courts applying California law have held that tort claims arising from the subject matter of a contract with attorney's fee provision allow for an award of

---

[7] In fact, the Supreme Court of California reinforced its reliance on the presumption against extraterritorial application in a wage and hour case and held that California laws, unless explicitly stated within the language of the statute, do not extend to acts occurring outside of the state. *Sullivan,* 51 Cal. 4th at 1207. Moreover, in *Wright v Adventures Rolling Cross Country, Inc.,* 2012 U.S. Dist. LEXIS 104378 (N.D. Cal., May 3, 2012), the court noted that the presumption against extraterritorial application of state law applies to the California Labor Code with regard to claims for unpaid wages.

[8] Plaintiffs have filed a proof of claim asserting a claim for attorney's fees. See Claims Register, Claim No. 8.

GREENE INFUSO, LLP
3030 South Jones Boulevard Suite 101
Las Vegas, Nevada 89146
(702) 570-6000

24

attorney's fees for tort, as well as contract claims, arising from the subject matter of the contract. For instance, in *3250 Wilshire Boulevard Building v W.R. Grace Co.*, 990 F.2d 487 (9th Cir. 1993), the court concluded that "California law permits recovery of attorney's fees by agreement, for tort as well as contact actions." *Id.* at 489. Here, the attorney's fee provision allows the arbitrator, at his or her discretion, to award attorney's fees to the prevailing party. *See* Adversary Docket No. 23-1, page 11 of 12. The provision contains no limitation on the nature of the claims at issue. Accordingly, Plaintiffs may include attorney's fees as part of their claim of non-dischargeability.

### G.  Defendant's Request for Summary Judgment

Defendant alternatively requests summary judgment on four matters discussed above: (1) collateral estoppel; (2) jury trial; (3) disgorgement; and (4) attorneys' fees. As discussed above, Plaintiffs acknowledge they are not entitled to a jury trial in this proceeding. As to the other issues, for the reasons stated above, Defendant's request for summary judgment should be denied

### IV.  *Conclusion*

For all of the foregoing reasons, Defendant's Motion to Dismiss should be denied or, if the Court is inclined to grant it in whole or part, Plaintiffs should be allowed to amend their Complaint. As to Defendant's request for summary judgment, it should be denied except as to the issue of a jury trial.

DATED this 19th day of April, 2016.

GREENE INFUSO, LLP


   /s/ James D. Greene
James D. Greene, Esq.
Nevada Bar No. 2647
3030 South Jones Boulevard, Suite 101
Las Vegas, Nevada  89146

GREENE INFUSO, LLP
3030 South Jones Boulevard Suite 101
Las Vegas, Nevada 89146
(702) 570-6000

**CERTIFICATE OF SERVICE**

I am employed by the law firm of Greene Infuso, LLP in Clark County.  I am over the age of 18 and not a party to this action. My business address is 3030 South Jones Boulevard, Suite 101, Las Vegas, Nevada 89146.

On April 19, 2016 I served the document(s), described as:

**OPPOSITION TO MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT**

☒     by placing the ☐ original ☒ a true copy thereof enclosed in a sealed envelope addressed as follows

☐ a. ECF System *(You must attach the "Notice of Electronic Filing", or list all persons and addresses and attach additional paper if necessary)*

☒ b. BY U.S. MAIL. I deposited such envelope in the mail at Las Vegas, Nevada.  The envelope(s) were mailed with postage thereon fully prepaid.

Zachariah Larson, Esq.
Matthew Zirzow, Esq.
LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101

I am readily familiar with Greene Infuso, LLP.'s practice of collection and processing correspondence for mailing.  Under that practice, documents are deposited with the U.S. Postal Service on the same day which is stated in the proof of service, with postage fully prepaid at Las Vegas, Nevada in the ordinary course of business.  I am aware that on motion of party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after the date stated in this proof of service.

☐ c.  BY PERSONAL SERVICE.

☐ d.  BY DIRECT EMAIL

☐ e.  BY FACSIMILE TRANSMISSION

I declare under penalty of perjury that the foregoing is true and correct.

Dated, this 19th day of April, 2016

         /s/ Frances M. Ritchie
         An employee of Greene Infuso, LLP

**GREENE INFUSO, LLP**
3030 South Jones Boulevard Suite 101
Las Vegas, Nevada 89146
(702) 570-6000