1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LARSON & ZIRZOW, LLC
ZACHARIAH LARSON, ESQ.
Nevada Bar No. 7787
E-mail: zlarson@lzlawnv.com
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
E-mail: mzirzow@lzlawnv.com
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Telephone: (702) 382-1170
Fascimile: (702) 382-1169

Attorneys for Defendant

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>MARC JOHN RANDAZZA,<br><br>        Debtor. | Case No.: BK-S-15-14956-abl<br>Chapter 11 |
| EXCELSIOR MEDIA CORP., a Nevada corporation; and LIBERTY MEDIA HOLDINGS, LLC, a Nevada limited liability company,<br><br>        Plaintiffs,<br><br>v.<br><br>MARC JOHN RANDAZZA, an individual,<br><br>        Defendant. | Adv. No. 15-01193-abl<br><br><br>__***AMENDED***__ **REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date: May 9, 2016<br>Time: 1:30 p.m. |

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

**TABLE OF CONTENTS**

I.    RESPONSE TO PLAINTIFFS' "FACTUAL BACKGROUND" ..................................1

    A.    Defendant Was Not an Employee of Liberty, Only of Excelsior. ..........................1

    B.    The Oron Matter was Not Re-Settled Due to Defendant's Conduct..................................................................................................................4

II.   LEGAL ARGUMENT....................................................................................................7

    A.    The IAA and Its Import (Or Lack Thereof) in These Proceedings. ..........................7

        1.    Plaintiffs' Claims Premised on the Unconfirmed IAA Having Preclusive Effect Must Be Dismissed as a Matter of Law.........................................................................................................7

        2.    An Immediate Determination Regarding Whether the IAA Has Preclusive Effect in These Proceedings is Appropriate, and Not "Premature." .........................................13

        3.    The Court Made No Determinations in its Denial of Stay Relief Order Regarding the IAA's Import in These Proceedings..................................................................................15

        4.    The Court Need Not "Heed" the IAA; In Fact, It Must Make its Own Separate Determinations Based Upon its Own Independent Review. ..................................................16

    B.    Plaintiffs Fail to State a Claim Pursuant to Section 523(a)(2)(A).......................17

        1.    Allegations of Subsequent Breaches of Contract are Not Sufficient to Sustain a Claim that Defendant Fraudulently Entered into the Contract..................................................17

        2.    Plaintiffs Fail to Plead the Alleged Fraud with the Requisite Particularity. ..................................................................21

    C.    Plaintiffs Fail to State a Claim Pursuant to Section 523(a)(4). ...........................24

        1.    A Mere Attorney-Client Relationship is Not Sufficient; Rather, Trust Funds Must Also be Misappropriated as Well. .................................................................................................24

        2.    Plaintiffs Fail to Alleged Their 523(a)(4) With the Required Particularity....................................................................27

    D.    Plaintiffs Fail to State a Claim Pursuant to Section 523(a)(6). ...........................27

    E.    No Jury Trial is Available in Dischargeability Proceedings.................................29

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

F.    Disgorgement is Not Available. ................................................ 29

G.    Recovery of Attorneys' Fees and Costs is Not Available. .................... 29

III.    CONCLUSION ............................................................................ 31

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

Defendant, Marc John Randazza (the "Defendant"), submits his *amended* reply (the "Reply")[1] to the *Opposition to Motion to Dismiss, or in the Alternative, for Partial Summary Judgment* (the "Opposition") [Adv. ECF No. 37] filed by plaintiffs, Excelsior Media Corp. ("Excelsior") and Liberty Media Holdings, LLC ("Liberty" and together with Excelsior, the "Plaintiffs") in response to his *Motion to Dismiss, or in the Alternative, for Partial Summary Judgment* (the "Motion") [Adv. ECF No. 19].[2] This Reply is supported by a *Supplemental Request for Judicial Notice* (the "Supp. RJN"), as well as the Defendant's *Limited Objection to Plaintiffs' Request for Judicial Notice in Support of Opposition to Motion to Dismiss, or in the Alternative, for Summary Judgment* ("Opposition to Plaintiffs' RJN").

## I. RESPONSE TO PLAINTIFFS' "FACTUAL BACKGROUND"

### A. Defendant Was Not an Employee of Liberty, Only of Excelsior.

1.      The Plaintiffs' Opposition, and especially its "Factual Background" section goes far beyond both its own amended Complaint and the actual arguments raised in the Defendant's Motion in a cynical attempt to paint the Defendant in a negative light to the Court rather than focus on legal argument. As such, and prior to turning to the actual merits of the Motion, the Defendant is compelled to respond to Plaintiffs' inaccurate history of the actual interactions among the parties.

2.      The Plaintiffs' Opposition repeatedly and intentionally confuses the point, but in actuality, the Defendant was the in-house counsel of and employed by Plaintiff Excelsior as set forth in his Employment Agreement with Excelsior.[3] See RJN, Ex. 1. Defendant's independent law firm, Marc J. Randazza, P.A. ("MJRPA"), served as outside, retained counsel to Plaintiff

---

[1] Defendant's counsel inadvertently filed an earlier draft version of the Reply last night and is hereby correcting and replacing that with this amended filing. The prior reply as Adv. ECF No. 42 is hereby withdrawn and replaced and superceded in its entirety. For the avoidance of doubt, this amended Reply adds no new substantive legal arguments to the previous reply on file, but rather mostly corrects certain incorrect or incomplete factual statements.

[2] Unless otherwise indicated, all capitalized terms herein shall have the same meanings as set forth in the Motion. Plaintiffs' Opposition was filed together with their own Request for Judicial Notice (the "Plaintiffs' RJN") [Adv. ECF No. 38], and their *Response to Separate Statement of Undisputed Facts* [Adv. ECF No. 39].

[3] Plaintiffs claim that Defendant drafted the Employment Agreement. Opp'n, p. 3, ¶ 9. In fact, both parties contributed to the drafting, but this dispute is not outcome determinative.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

Liberty in various litigations.[4]  Such was required by law.[5]

3.    This conflation of Plaintiffs' identities is not a mere oversight by Plaintiffs; rather, since August 2012, they have intentionally confused their identities in an effort to avoid paying Defendant wages owed pursuant to his Employment Agreement with Excelsior, this, in part, leading to the Defendant's bankruptcy filing.  On August 2012, Defendant notified Mr. Gibson, the owner of both Plaintiffs, that his law firm and he would need to withdraw from representing Liberty in further litigation.  See Opp'n, p. 8, ¶ 32.  Nothing in that notice suggested a resignation from Excelsior or even mentioned it; yet, immediately, with outside counsel already on retainer, they pretextually corrupted this email into a letter of resignation and refused to permit Defendant to continue his employment.  Excelsior admits that Defendant did not explicitly resign his employment, but rather that they "construed his email as a resignation, which it accepted immediately." Id. p. 8, ¶ 33.  It is because of this, along with a refusal to pay a vested bonus and owed reimbursements, Defendant filed his arbitration claims.[6]

4.    Although Defendant never deemed himself employed by Liberty, Defendant sought to hold them to their new theory; because Excelsior improperly deemed withdrawal from Liberty as resigning from Excelsior, they must be alter egos of each other, jointly and severally liable for the unpaid wages.  Plaintiffs, however, denied alter ego status, and the arbitrator impermissibly agreed, without any analysis or discussion.[7]

---

[4] Neither Defendant nor MJRPA billed Liberty normal hourly rates for the time representing Liberty.  Instead, Defendant was paid a 25% contingent fee by Excelsior, styled as a nondiscretionary bonus.  See Opp'n, p. 4, ¶ 13.  There is nothing unique about a contingent fee arrangement, nor is it unusual for a third party to pay for a lawyers' services.  Both are common enough to be addressed by law.  See, e.g., Nev. R. Prof. Conduct 1.5(c) (governing contingent fees) & 5.4(c) (requiring lawyers paid by a third party to remain professionally independent).

[5] See Nev. R. Prof. Conduct 5.4(d).  Moreover, Plaintiffs have never shown Defendant's private practice to have presented a conflict of interest for Excelsior nor identified tasks Defendant failed to perform in a timely manner due to his representation of outside clients, let alone that he did this work during Excelsior work hours.

[6] Defendant disputes that Defendant was paid his full salary, but that question is immaterial to the instant Motion.  See Opp'n, p. 8, ¶ 33.  Defendant had not been paid raises owed under his Employment Agreement, nor was he paid his severance or the bonus from the Oron settlement.  Defendant also denies attempting to coerce a witness or suborn perjury as alleged.  See Opp'n, p. 9, ¶ 35(d).  To the contrary, lawyers should interview prospective witnesses.  See, e.g., Slack v. McDaniel, 141 Fed. Appx. 572, 573 (9th Cir. 2005) (collecting cases).  Furthermore, Liberty itself clearly committed perjury and suborned perjury in the testimony of Char Vorrias.

[7] The Arbitrator previously ruled he would bifurcate the issue of alter-ego status, and argument and testimony on the issue was severed from the arbitration hearing.  Despite his own order, however, the Arbitrator ultimately

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

5. Now, Plaintiffs are back to arguing joint employment, which is convenient given the damages they claim. Practically all of the monies awarded in the IAA and claimed by the Plaintiffs herein are tied to Defendant's and his law firm's representation of Liberty, not his employment with Excelsior.[8] The so-called "resettlement" with Oron was the result of litigation in which Liberty, not Excelsior, was a party, as was $5,000 in fees paid by a third-party for Liberty's benefit (which were demonstrably donated to Liberty's Hong Kong counsel, but the Arbitrator refused to review evidence to that fact). And the alleged conflicts of interest giving rise to the $197,000 wage disgorgement related to copyright interests held by Liberty.[9] See Opp'n, p. 3, ¶ 7 (the "intellectual property is owned by Liberty"). Yet, the specific alleged "deception" relates to the contract formation for his employment with Excelsior. See id. p. 18. In sum, regardless of what Plaintiffs may claim, as pleaded, and the Court may take judicial notice of the Employment Agreement, Defendant was never an employee of *Liberty*. All of the Plaintiffs' objections to discharge, included the alleged debts, must therefore be evaluated under this framework.

---

somehow purported to rule on the issue in a footnote to the IAA. See IAA, p. 2, n.1.

[8] The Arbitrator awarded costs of forensic examination of a laptop computer as a discovery cost despite Plaintiffs' failure to identify a single missing document that was not preserved in cloud storage. The so-called "spoliation" alleged by the Plaintiffs was, instead, required by the Employment Agreement's "wall of separation" provision. See Opp'n, p. 5, ¶ 15. Plaintiffs' claims that Defendant stored all of their records on his firm's server undermine their claims of spoliation. See id. p. 8, ¶¶ 34 & 35. Simply put, Plaintiffs cannot in one breath claim Defendant preserved the records on a secure server and in another claim a failure to preserve. Neither do they claim this was unusual, nor can they; it was a pattern and practice for the files to be stored on the firm's server and for computers to be wiped regularly, including upon an employee's separation. Moreover, although Defendant was employed by Excelsior, his representation of Liberty was through the firm. In anticipation of termination, Defendant ensured that all firm files, including those of unrelated clients, could not be accessed through his Excelsior computer, which would have to be returned. Thus, Defendant wiped the computer to fulfill his obligations under law, preserving client confidentiality. See Nev. R. Prof. Conduct 1.6. MJRPA was otherwise entitled to withhold property under a retaining lien. See Leventhal v. Black & LoBello, 305 P.3d 907, 909 (Nev. 2013). The arbitrator also impermissibly awarded $55,000 allegedly earned by a non-party law firm to be disgorged as unjust enrichment.

[9] For example, Plaintiffs allege Defendant opted not to take action against Xvideos.com and XNXX.com and dissuaded Liberty from taking such action. See Opp'n, p. 10, ¶ 38. Yet, there is no claim that Liberty could not have taken such action after Defendant's withdrawal and despite knowledge of the alleged conflict for years, Liberty did not take any such action. Neither does Liberty demonstrate it had meritorious causes of action, presenting merely speculative claims of harm (and intent to deceive) that do not support the alleged debt. The same vague and conclusory allegations relating to the other supposed conflicts similarly cannot show an intent to deceive or having proximately caused harm. See id. p. 10-11, ¶¶ 39-40.

**B.    The Oron Matter was Not Re-Settled Due to Defendant's Conduct.**

6.    There are many flaws with Plaintiffs' claim that post-settlement negotiations by Defendant caused a $275,000 loss in the Oron matter.  Among them, first, as the only party to the settlement agreements and the litigation with Oron, the loss, if any, was Liberty's alone. Second, nothing Defendant did or failed to do caused that loss.  Third, the alleged loss was not the result of the resolution of Liberty's claim against Oron, but rather Oron's subsequent claim against Liberty for breach of contract.  It is worth nothing that the details subsequent settlement was never revealed in any way, and its convenient collusive effect calls its validity into question. Meanwhile, Liberty has steadfastly refused to share any details of this "settlement," except for the amount it claims it paid.

7.    Defendant's non-party law firm, MJRPA, recovered $550,000 for Liberty as a result of its litigation efforts.  Per the terms of the settlement, as enforced by the U.S. District Court for the District of Nevada, these funds were transferred to MJRPA's trust account.  See Opp'n, p. 6, ¶ 21 & p. 7, ¶ 29.  Pursuant to his non-discretionary bonus, Defendant was already to be entitled to a 25% contingency fee of $137,500 on the $550,000 recovery.  Between the time the Court issued its order enforcing the settlement on August 7, 2012,[10] and the time the funds were seized by MJRPA for Liberty later that month, Defendant engaged with Oron on behalf of Liberty to reach an agreement to obtain Oron's voluntary payment.  Less than a week after the Court ordered the settlement enforced, on August 13, 2012, Oron made an offer of $675,000, which included payment of $600,000 to Liberty and $75,000 in legal fees to be paid to Oron's attorney's trust account.  See Opp'n, p. 6, ¶ 23.  Both parties had an interest in further negotiations.[11]  Liberty could not be certain that it would successfully seize the funds and Oron

---

[10] Liberty Media Holdings, LLC v. FF Magnat Ltd., No. 12-01057, 2012 WL 3255044 (D. Nev. Aug. 7, 2012)

[11] Defendant denies that he lacked Mr. Gibson's consent or authority to negotiate for fees.  See Opp'n, p. 6, ¶ 25. The resolution of the issue is immaterial, however, as Liberty has not asserted and cannot assert that it would have been better off if the negotiations had not occurred or even that a better negotiated outcome was possible. First, there was no guarantee at that time that the $550,000 could be seized.  Second, Liberty did not execute the agreement and ultimately was issued a larger award by the Court.  Similarly, the claim that Defendant did not inform Mr. Gibson that the offer was only valid for 24 hours is disputed and immaterial.  See id. p. 6, ¶ 24.  Liberty rejected the offer.  Defendant also denies any "nervous manner" in presenting the proposed settlement.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

was facing a motion for attorneys' fees in the amount of $214,964.[12]  Added to the $550,000 already ordered, Oron was facing having to pay $764,964.00.

8.    Pursuant to Nev. R. Prof. Conduct 1.4(a)(1), Defendant presented the August 13, 2012 offer of $675,000 to Mr. Gibson.  See Opp'n, p. 6, ¶ 23.  Mr. Gibson "discovered" the $75,000 fee payment, written in plain English using standard numerals, in the document Defendant sent to him for his review.  Id. at ¶ 25.  Although Plaintiffs use the term "bribe" in order to color these proceedings, in reality the settlement stated clearly that the earmarked fee was to be paid to Oron's attorney, Valentin Gurvits.  Mr. Gurvits had gratuitously agreed to use it to later retain Defendant's firm.  Since Defendant already had a vested fee of $137,500 due him, he would have gained nothing by the $75,000 earmark except a higher certainty of actual payment.[13]  The Court ultimately issued a fee award of $131,797.50, for a total of $681,797.50 ordered by the Court on Defendant's and his firm's efforts.  See Liberty Media Holdings, LLC v. FF Magnat Ltd., No. 2:12-cv-01057, 2012 WL 3834744, *17 (D. Nev. Sept. 4, 2012).

9.    Although Mr. Gibson rejected Oron's August 13, 2012 settlement offer, Defendant continued to diligently attempt to resolve the matter through the courts and through negotiations.  Defendant agrees that there was animosity and he contemplated quitting.  See Opp'n, p. 7, ¶ 28.  However, Defendant determined to continue and even advanced $25,000 *of his own funds* to continue efforts to secure Liberty's representation in Hong Kong,[14] efforts that

---

[12] Defendant denies having made any material misrepresentations to the Court as alleged.  See Opp'n, p. 10, ¶¶ 36 & 37.  Plaintiffs' entire theory is a semantic argument resting upon Defendant's use of the word "incurred" in the fee petition in the Oron litigation.  See id.; see also FF Magnat Ltd. v. Liberty Media Holdings, No. 12-16976 (9th Cir. Feb. 13, 2013) (Liberty's motion for miscellaneous relief).  Nonetheless, Liberty agreed that the amount of fees awarded was appropriate and that MJRPA's labors were worth the fees claimed and could be properly awarded.  This issue is ultimately immaterial to the question of dischargeability.

[13] In truth, Defendant had more to lose if Mr. Gibson executed the proposed settlement agreement than to gain.  Although Oron's cooperation could ensure payment, it was a total sum significantly less than what was sought from the Court (and less than what was ultimately awarded), thus reducing Defendant's total potential fee, while at the same time precluding him from earning fees representing others against Oron.

[14] That Defendant notified Hong Kong and Philadelphia co-counsel that he withdrew from representing Liberty is good practice, to ensure that co-counsel would not subsequently divulge confidential matter to him in the absence of notice.  See Opp'n, p. 9, ¶¶ 35(a) & (b).  That Hong Kong co-counsel independently adjusted its retainer requirement or that Philadelphia co-counsel independently opted to withdraw as a result does not imply that Defendant intended such results.  See Opp'n, p. 9, ¶¶ 35(a) & (b).  Plaintiffs' conclusory allegations in those paragraphs are the product of a vivid imagination and only speculate as to Defendant's state of mind.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

proved successful. Such an advance was not part of Defendant's customary course of dealing with Liberty, but he did so at their request.[15]

10.     Because Liberty was represented by multiple attorneys in the Oron matter, Mr. Gibson, the Plaintiffs' principal, learned from Hong Kong counsel that the $550,000 had been secured before Defendant had a reasonable opportunity to do so. See Opp'n, p. 7, ¶ 29. While for dishonest dramatic effect, Plaintiffs make it seem that Defendant kept this information from him for an inordinate amount of time. Meanwhile, in reality, this communication occurred within hours of receipt of the funds.[16] See id. p. 7, ¶ 30. Defendant was prepared to deliver to Liberty the funds it was "entitled to receive;" however, Liberty demanded the entire res and without payment to MJRPA for its fees and costs, and with the express position that the Defendant himself would be cheated of his vested bonus. Compare Nev. R. Prof. Conduct 1.15(d) with Opp'n, p. 7, ¶¶ 30 & 31. Given this impropriety, MJRPA felt it appropriate to withdraw as counsel for Liberty and communicated the same. Opp'n, p. 8, ¶ 32.

11.     Oron subsequently alleged that Liberty breached the settlement after the receipt of the $550,000 and Oron claimed damages of $20,000,000. See Liberty Media Holdings v. FF Magnat Ltd., Case No. 2:12-cv-01057, at *4-5 (D. Nev. Jan. 8, 2013). On its face, a $20,000,000 arbitration over a $550,000 litigation does not pas the smell test. Nevertheless, Oron supposedly initiated an arbitration to vindicate its claim of breach – which occurred after Randazza left Liberty. Id. *5. Given the timeframe, the alleged breaches necessarily occurred more than two weeks after the so-called bribe negotiation and, notably, after Defendant withdrew from his representation of Liberty, as his withdrawal occurred within twenty four (24) hours of MJRPA's receipt of the funds. When Liberty entered into an agreement with Oron to pay Oron $275,000, it was not a revision of the initial settlement, but rather a separate

---

[15] Contrary to common sense, Plaintiffs claim that the Defendant, as the alleged perpetrator of a fraud, gave Liberty, the alleged victim, $25,000 of his own funds and got nothing illicit in return. See Opp'n, p. 7, ¶ 31. Simply put, that is not how a fraud works. Neither do people with the intent to resign lend $25,000, being 1/8 of their annual salary, to their employer's sister company. The facts lay Plaintiffs' dishonesty bare.

[16] Although Defendant was required to "promptly notify" Liberty upon receipt of the funds, see Nev. R. Prof. Conduct 1.15(d), there was no appreciable delay in the case at hand.

settlement of Oron's new claim for breach--the details of which remain undisclosed by any party.[17]  Plaintiffs thus cannot credibly claim the payment of $275,000 to Oron was in any way related to Defendant's negotiations in mid-August 2012.[18]

12.    Now that the Defendant has addressed the Plaintiffs' misstatements and mischaracterizations in their Complaint and "Factual Background" of their Opposition so that the Court does not get any false impressions, the Defendant will now address the legal substance of the Opposition, which is what is appropriately before the Court at present.

## II. LEGAL ARGUMENT

**A.    The IAA and Its Import (Or Lack Thereof) in These Proceedings.**

**1.    Plaintiffs' Claims Premised on the Unconfirmed IAA Having Preclusive Effect Must Be Dismissed as a Matter of Law.**

13.    In their Complaint, the Plaintiffs alternate between making their own allegations on the one hand, and asserting that the arbitrator's findings in the IAA are entitled to preclusive effect on the other hand.  See Complaint, ¶¶ 43-47, 54(1)(i), 60(1)(i), 63, and 66(1)(i); Opp'n, ¶ 46.  As explained in the Defendant's Motion, however, as a matter of binding Supreme Court and Ninth Circuit caselaw, as well as various other lower court decisions within the Ninth Circuit, including the Bankruptcy Appellate Panel, the IAA lacks preclusive effect as a matter of law because, as admitted by the Plaintiffs, it was only an interim and unconfirmed award that was never reviewed and confirmed by any court.  As a result, as a matter of law, this Court should grant Defendant partial summary judgment dismissing any claims in the Complaint premised on the IAA having preclusive effect in this proceeding.  For the avoidance of doubt, such a ruling would not, by itself, prevent Plaintiffs from casting such findings as their own allegations; rather, such a ruling would only prevent the Plaintiffs from attempting to use

---

[17] Defendant assumes *arguendo* that the settlement of Oron's arbitration claim was executed or was otherwise enforceable, however, he also notes that the Plaintiffs have not demonstrated that they ever paid Oron the $275,000 nor that the payment (if made) was ever for anything except to further collusion between the parties.

[18] Plaintiffs attempt to mislead the Court to believe that the return of $275,000 was a "re-settlement" of the original claims rather than a new settlement of Oron's affirmative claims.  If it was a re-settlement, then Defendant would only be entitled to 25% of $275,000 rather than 25% of $550,000, a savings of $68,750.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170    Fax: (702) 382-1169

1    preclusion law as a shortcut to actually proving up their claims before this Court.

2        14.    Plaintiffs' Arguments that the unconfirmed IAA is entitled to preclusive effect

3    are unavailing.[19]  Although the conflict in <u>McDonald v. City of W. Branch, Michigan</u>, 466 U.S.

4    284 (1984), dealt with the interplay of federal claims under 42 U.S.C. § 1983 and an unappealed

5    arbitration award, the underlying issue is the same as in the case at hand:  whether an arbitration

6    award should be given preclusive effect in the face of a federal statutory scheme where Congress

7    intended that arbitration could not provide an adequate substitution for judicial proceedings in

8    adjudicating claims under those statutes.  <u>See id.</u> at 289.

9        15.    Just as arbitrators cannot vindicate section 1983 claims, their decisions are not

10    compatible with dischargeability determinations under the Bankruptcy Code because, as

11    reasoned by the Supreme Court in <u>McDonald</u>: 1) the arbitrator's expertise is to the law of the

12    shop, not the law of the land, and thus an arbitrator would not have the expertise required to

13    resolve the complex legal questions involved in § 1983 actions; 2) the arbitration's authority

14    derives solely from the contract, and thus the arbitrator may not have the authority to enforce §

15    1983, and 3) an arbitrator's factfinding is not equivalent to judicial fact finding given that it

16    lacks the formal rules of discovery and evidence.  <u>Id.</u> at 290-291.

17        16.    Such a federal scheme also clearly exists in the context of bankruptcy cases

18    generally and matters involving a debtor's discharge and dischargeability determinations

19    specifically.  Under 28 U.S.C. § 157(b)(1), bankruptcy courts may hear and determine "core

20    proceedings."   28 U.S.C. § 157(b)(2)(I) specifically defines n action to determine the

21    dischargeability of a particular debt as a core proceeding.  Jurisdiction to hear dischargeability

22    actions is vested in the federal district courts under 28 U.S.C. § 1334(b) and can be heard by

23    bankruptcy courts under 28 U.S.C. § 157(a) and LR 1001(b)(1).  <u>See, e.g.</u>, <u>McGhan v. Rutz (In</u>

24    <u>re McGhan)</u>, 288 F.3d 1172, 1179-80 (9th Cir. 2002) (noting a bankruptcy court's plenary

25    authority over a debtor's discharge).  Indeed, the bankruptcy court has <u>exclusive</u> jurisdiction

26

27    _____

    [19] Moreover, to be sure, the Plaintiffs did not file any cross-motion for summary judgment on this point (or any

28    other point for that matter) and thus it would be inappropriate for the Court to grant the Plaintiffs any decision in this regard in any event.

over most determinations under sections 523(a)(2), (4) and (6), which are the sections implicated in the case at hand, pursuant to Bankruptcy Rule 4007.

17.    Similarly, just as no court has reviewed the IAA on the merits, the IAA is not entitled to preclusive effect just as the court in Lum v. Honolulu, 728 F. Supp. 1452, 1459 (D. Haw. 1989), held that it could not give preclusive effect to the arbitration award at issue in that case, where the same predicates were absent in the Title VII context.  The issue in McDonald and Lum is not simply about civil rights claims; rather, it is about the importance of federal statutory schemes in general, which the Bankruptcy Code, much like section 1983 actions, is certainly one.

18.    Likewise, the statement in Caldeira v. County of Kauai, 866 F.2d 1175, 1176 n.2 (9th Cir. 1989), is not mere *dicta* as asserted by the Plaintiffs; rather, the fact that the arbitration award in question in that case was not confirmed and thus was not given preclusive effect was part of the analytical framework used by the Ninth Circuit to resolve and distinguish the application of a confirmed award in that case.

19.    Additionally, as also noted in the Defendant's Motion (and not discussed by the Plaintiffs in their Opposition), the Bankruptcy Appellate Panel also has held specifically that unconfirmed arbitration awards are not entitled to issue preclusive effect in subsequent nondischargeability proceedings.  See Khaligh v. Hadaegh (In re Khaligh), 338 B.R. 817, 831 n.2 (B.A.P. 9th Cir. 2006).  In so holding, the BAP cited the same binding Supreme Court case of McDonald, and the Ninth Circuit case of Caldeira, as cited by the Defendant in his Motion and which Plaintiffs attempt to argue are distinguishable.

20.    The District Court's decision in Houng v. Tatung Co. (In re Yin-Ching Houng), 499 B.R. 751, 761 (C.D. Cal. 2013), aff'd on other grounds, 2016 WL 145841 (9th Cir. Jan. 11, 2016), is by far the most thorough recent summary of the state of the law in the Ninth Circuit on whether unconfirmed arbitration awards are entitled to issue preclusive effect in subsequent bankruptcy nondischargeability proceedings.  The Houng Court first noted that although the parties assumed in their briefing that California preclusion law applied, the Court held that such state law would not apply to a federal question case like the dischargeability determinations

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

pursuant to Section 523(a) of the Bankruptcy Code. Id. at 759.

21.    Second, the Court in Houng held that under Supreme Court and BAP precedent, the "full faith and credit" statute in 28 U.S.C. § 1738 does not require federal courts to give collateral estoppel effect to unconfirmed arbitration awards because "[a]rbitration is not a 'judicial proceeding'" within the meaning of that statute. Id. (citing McDonald, 466 U.S. at 292; Khaligh, 338 B.R. at 824 n.2; and other authorities).

22.    Third, and as a result of 28 U.S.C. § 1738 not applying, the Court in Houng held that federal common law would apply to the determination of whether an arbitrator's unconfirmed award would be entitled to preclusive effect. 499 B.R. at 760-61. In looking at such federal common law, the Court cited to four (4) Supreme Court and three (3) Ninth Circuit cases wherein those courts have consistently held that unreviewed arbitration awards do not have preclusive effect in a federal action. See 499 B.R. at 761 (collecting cases). As a result of the foregoing substantial and binding authority, the Court in Houng held that the bankruptcy court had erred in finding that an unconfirmed arbitration award had preclusive effect in a nondischargeability proceeding.

23.    In so holding, the Court in Houng was careful to note the contrary decisions in both In re Rosendahl, 307 B.R. 199 (Bankr. D. Or. 2004), and In re Marx, 171 B.R. 218, 221-23 (Bankr. N.D. Tex. 1994), among other cases, as relied upon by the Plaintiffs in their Opposition, however, the Court went back and reviewed the precedent cited in those and similar decisions (including the Ninth Circuit's decision in Baldwin v. Kilpatrick (In re Baldwin), 249 F.3d 912 (9th Cir. 2001)), and found that those precedents (including Baldwin) all involved decisions actually deciding the issue preclusive effect of state court default judgments, not unconfirmed arbitration awards, and thus that the Rosendahl and Marx cases were improperly decided and/or premised on inapposite precedents. The Houng Court is certainly correct in this regard because the issue preclusive effect of state court default judgments is an entirely different matter than the effect of an interim and unconfirmed arbitration award because the former is entered by an actual, real court, whereas the latter is a private arbitrator. As such, the Houng Court's analysis in this regard is unassailable.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

24.     Additionally, it is notable that the Courts in <u>Rosendahl</u> and <u>Marx</u>, unlike the Court in Houng, did not reference the binding Supreme Court caselaw of <u>McDonald</u> (among numerous other persuasive Supreme Court precedent referenced above), and the Court in <u>Rosendahl</u> did not reference the binding Ninth Circuit caselaw of <u>Caldeira</u>, in deciding whether whether unconfirmed arbitration awards are entitled to preclusive effect in a subsequent proceeding.  Such a failure to acknowledge and apply mandatory and persuasive authority of such a magnitude is ultimately fatal to the reasoning in the <u>Rosendahl</u> and <u>Marx</u> decisions (and similar out-of-circuit decisions cited in the Plaintiffs' Opposition) and thus illustrate why such decisions should not be followed in the case at hand.

25.     Additionally, the Plaintiffs mis-cite the year the <u>Rosendahl</u> decision was actually decided.  Specifically, the Plaintiffs' Opposition indicates that the Rosendahl decision was decided in 20<u>14</u>, when in fact it was actually decided in 20<u>04</u>, or nearly a decade prior, and indeed prior to the BAP's authoritative decision in <u>Khaligh</u> in 2006, among other caselaw, holding to the contrary.  Instead, the Court in <u>Rosendahl</u> premised its decision on out-of-circuit, non-binding authority, including the <u>Marx</u> decision from Texas, which, as the Court in <u>Houng</u> explained, was incorrectly decided and is contrary to binding Supreme Court and Ninth Circuit precedent, as well as the persuasive authority of the BAP's decision in <u>Khaligh</u>.  Indeed, had the <u>Rosendahl</u> Court actually applied the binding Supreme Court and Ninth Circuit precedent in this area (instead of not discussing those cases at all), and had that Court had available the BAP's persuasive decision in <u>Khaligh</u>, it presumably would have decided the matter differently.

26.     Even if the Court were inclined to apply the reasoning from the <u>Rosendahl</u> case, the decision is also clearly distinguishable from the case at hand.  Specifically, in that case, the Court was determining the issue preclusive effect of a <u>final</u> arbitration award, 307 B.R. at 209 (noting repeatedly that the arbitration award in question was final decision and resolved all issues), whereas the case at hand only involves an <u>interim</u> arbitration award that leaves open various substantial issues, including but not limited to a pending Motion to Vacate the entire award in state court as of the Defendant's Petition Date.  This is an important distinction because even if this Court were to even consider applying the reasoning of <u>Rosendahl</u>, which is

premised on the the final arbitration award at issue in that case being "sufficiently adjudicatory" such that it should be given preclusive effect, by contrast, in the case at hand, the IAA is only an interim award, was the subject of a pending Motion to Vacate calling into question its entire decision as of the Petition Date, and also still leaves open various significant issues unresolved and requiring subsequent determination. In other words, even assuming the Court would ever apply the reasoning of Rosendahl, the IAA in the case at hand is not "sufficiently adjudicatory" even under that Court's incorrect standard to be entitled to preclusive effect in this nondischargeability proceeding.

27.     The policy reasons supporting why courts have refused to grant issue preclusive effect to unconfirmed arbitration awards are especially appropriate and evident in the case at hand given that the Defendant did not have a fair arbitration hearing and the significant deficiencies in the arbitration proceeding itself. In this regard, Defendant generally refers this Court to the litany of biases and irrational decisions set forth in his Motion to Vacate the award before the Nevada state court, which specifies how the arbitrator acted in manifest disregard of the law and evidence, and exceeded his authority. See RJN, Ex. 5.[20]

28.     Because the IAA was otherwise unconfirmable, there is no reason in this case why it should be given any preclusive effect in any event. As a result, the Court should dismiss

---

[20] A few highlights bear mention: (1) The arbitrator clearly instructed the Defendant as to how to position himself while testifying and yet then used that very body position to draw the conclusion that nothing that Defendant said in the Arbitration could be believed. (2) The arbitrator explicitly ordered bifurcation of the issue of Plaintiffs' alter ego status, yet ignored that order in his IAA, depriving Defendant the opportunity to offer evidence on the issue. (3) The arbitrator failed to postpone the hearing despite Plaintiffs' failure to produce documents in discovery, in contravention of his own orders. (4) The arbitrator agreed that Defendant was bluffing during negotiations, yet used that bluff as conveying his true intent. (5) The arbitrator recognized that Plaintiffs suffered no harm on account of the bluff negotiations, yet awarded $275,000 without explanation. (6) The arbitrator refused to allow Defendant to present evidence as to expenditures made on Liberty's behalf, ordering him to disgorge spent money. (7) The arbitrator ordered disgorgement of fees earned by Defendant's non-party law firm in a completely separate case, mandating fee splitting in violation of the Nevada Rules of Professional Conduct. (8) The arbitrator denied Defendant's entire claim for unpaid severance, despite the explicit terms of the Employment Agreement when even Plaintiffs focused only on the amount. (9) The arbitrator required Defendant to disgorge earned wages, in violation of California and Nevada law, inventing a remedy relying on an inapplicable Texas case, where the arbitrator admitted Plaintiffs demonstrated no tangible harm. (10) The arbitrator determined Defendant spoliated documents without identifying any missing documents and in the face of Plaintiffs' lamentation, instead, that Defendant provided them with over a hundred thousand pages of documents. (11) The arbitrator ordered Defendant to deliver a non-specific laptop computer without Plaintiffs ever identifying what laptop Defendant did not return (and which, for the record, does not exist).

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

as a matter of law the Plaintiffs' claims in their Complaint to the extent they are premised on the alleged preclusive effect of the IAA, or in the alternative, grant the Defendant partial summary judgment dismissing such claims, because such an interim and unconfirmed arbitration award is not entitled to preclusive effect as a matter of law.

    **2.**    **An Immediate Determination Regarding Whether the IAA Has Preclusive Effect in These Proceedings is Appropriate, and Not "Premature."**

    29.    The Plaintiffs' Opposition next argues that deciding whether the IAA has preclusive effect in this proceeding would be "premature" at this juncture. In support of their argument, the Plaintiffs cite only a single case that simply applies the general standard of decision on a motion to dismiss as requiring all well-pleaded factual allegations to be taken as true, and nothing more. Plaintiffs' attempt to avoid a decision on this important issue by arguing that it is premature is unavailing for numerous reasons.

    30.    First, the issue of the preclusive effect of an unconfirmed and interim arbitration award is exclusively a legal determination, and thus is ripe for decision now because it will not be informed by discovery or further delay. See, e.g., Dias v. Elique, 436 F.3d 1125, 1128 (9th Cir. 2006) (holding that an appellate court reviews a bankruptcy court's decision regarding the availability of preclusion law *de novo*); Khaligh, 338 B.R. at 823 (same).[21] Purely legal determinations are fertile grounds in which the Court can and should grant a motion to dismiss, or at least partial summary judgment, because they do not require the Court to assume any facts as true, or indeed involve any facts at all. This is one of the central dictates from the Twombly and Iqbal line of cases: although the court must take all of the well-pleaded factual allegations in the complaint as true when considering a motion to dismiss, the court is also "not bound to accept as true a legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007) (emphasis added)). "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat

---

[21] Moreover, Plaintiffs make no request pursuant to or in compliance with Rule 56(d), which would be the proper procedure for seeking a deferral of consideration of this issue, nor could they ever make the requisite showing required by that Rule. See, e.g., Tatum v. City & Cnty. of S.F., 441 F.3d 1090, 1101 (9th Cir. 2006).

a motion to dismiss for failure to state a claim." <u>Caviness v. Horizon Cmty. Learning Ctr., Inc.</u>, 590 F.3d 806, 812 (9th Cir. 2010) (emphasis added).

31.    As applied in the case at hand, the Plaintiffs specifically assert in numerous parts of their Complaint that the clearly flawed interim and unconfirmed IAA is legally binding on this Court and thus precludes this Court from making various determinations in this adversary proceeding. Indeed, in one paragraph of the many in their Complaint that they make this legal conclusion, the Plaintiffs even go so far as to actually cite caselaw in support of such a theory. <u>See</u> Complaint, ¶ 47. Under <u>Twombly</u>, <u>Iqbal</u> and their progeny, however, this is exactly the kind of "legal conclusion couched as a factual allegation," and/or "conclusory allegation of law" that the Court is <u>not</u> bound to accept as true for purposes of a motion to dismiss. Moreover, even if the Court is somehow not inclined to decide such a legal issue in the context of a motion to dismiss, such a purely legal issue, by definition, does not involve any genuine issues of material fact, and thus is appropriately decided on partial summary judgment as well. <u>See</u> <u>Robi v. Five Platters, Inc.</u>, 918 F.2d 1439, 1441 (9th Cir. 1990) (summary judgment appropriate to decide claim or issue preclusion) (citing <u>Takahashi v. Board of Trustees of Livingston Union School District</u>, 783 F.2d 848, 849 (9th Cir. 1986)).

32.    Second, the issue is presented to the Court for decision in the form of both a motion to dismiss and, in the alternative, a motion for partial summary judgment. As such, the issue is presented in a proper procedural postures and is ripe and appropriate for immediate determination under either standard. Indeed, Rule 56 specifically provides that the Court "shall" grant summary judgment if appropriate, and Rule 56(b) was specifically amended in 2009 to allow such a motion to be brought "at any time." Fed. R. Civ. P. 56(b).

33.    Finally, there is no good reason for the Court to avoid or delay determining whether the IAA has preclusive effect at this juncture of the case because it is an important issue that may have a critical effect on the conduct of this adversary proceeding. For example, the Court's decision may potentially dictate whether the Plaintiffs can bring their own motion for summary judgment on their claims based on the IAA's alleged preclusive effect, and could impact the scope of permissible discovery, among possibly other matters.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

34.    In sum, there is no appropriate reason why the Court should "duck" determining whether the IAA has preclusive effect in this proceeding at the outset of this case because it is an important and substantive matter, it is a purely legal issue, and the matter has been well briefed by the parties and is ripe for immediate determination.  Indeed, this is exactly the reason the rules allow for dispositive motion practice even at the outset of a case.

### 3.    The Court Made No Determinations in its Denial of Stay Relief Order Regarding the IAA's Import in These Proceedings.

35.    Finally, Plaintiffs argue that this Court has already "strongly implied . . . that it would heed to the decisions of the arbitrator," and quotes to a portion of the Court's previous oral ruling denying their Stay Relief Motion in support of such a theory.  See Opp'n, p. 17 (quoting Plaintiffs' RJN, Ex. 7, p. 29:22 to p. 30:1).  It is not entirely clear what the Plaintiffs mean as a legal matter by asserting that this Court should "heed" to the arbitrator's interim and unconfirmed award, nor do they cite any caselaw in support of such a proposition, but in any event, there are numerous problems with the Plaintiffs' assertion in this regard.

36.    First, although the Court really does not need the Plaintiffs telling it what the Court had previously ruled just last year--because the Court is undoubtedly aware and does not need to be reminded--for the avoidance of doubt, in its findings on the Court's Denial of Stay Relief Order, the Court did not, in fact, make any determination regarding the preclusive effect (or lack thereof) of the IAA, nor could it have because that issue was not before the Court for decision in those proceedings.  Indeed, on the very next page of the Court's ruling, the Court recognized that the continuation of the arbitration (and, necessarily, the state proceedings to confirm or vacate the IAA), conflicts with the Bankruptcy Code, including centralization of the resolution of disputes before the Bankruptcy Court.  See Plaintiffs' RJN, Ex. 7, p. 31:8-15.

37.    Second, it is clear from the context of the Court's ruling that it was merely reciting the remaining issues still left to be decided by the arbitrator after entry of the IAA, and not making any legal conclusions regarding the evidentiary import, if any, of the IAA.  In other words, Plaintiffs' attempt to "read into" or imply from this Court's background recitation of facts a substantive determination regarding the IAA's evidentiary import that was never briefed

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

15

by the parties in those stay relief proceeding, was not before the Court, and most importantly, was not decided by the Court.

38.    In sum, Plaintiffs' argument attempting to twist this Court's statements from the stay relief proceedings does not preclude the immediate legal determination that the IAA does not have issue preclusive effect in this separate adversary proceeding as a matter of law.

### 4.    The Court Need Not "Heed" the IAA; In Fact, It Must Make its Own Separate Determinations Based Upon its Own Independent Review.

39.    Finally, the Plaintiffs' argument that this Court should "heed" the IAA is incorrect as a matter of law for at least several reasons. First, although courts generally may take judicial notice pursuant to Fed. R. Evid. 201 to establish the fact of litigation in another court, they may not take judicial notice for purposes of the truth of the matters asserted or decided in that litigation. See Wyatt v. Terhune, 315 F.3d 1108, 1114 n.5 (9th Cir. 2003). As such, this Court cannot take judicial notice of the IAA for the truth of the matters asserted therein, including taking any findings or conclusions made by the arbitrator to establish matters at issue in this proceeding.

40.    Second, as a matter of law, the Court will need to undertake its own independent review of the record in this proceeding, and make its own separate determinations regarding all matters based upon the evidence and arguments presented herein, including even any matters purportedly to be found or decided by the arbitrator in the IAA. See, e.g., Michaely v. Michaely (In re Michaely), 201 Fed. Appx. 440, 441 (9th Cir. 2006) (affirming a bankruptcy court's refusal to take judicial notice or give evidentiary effect in nondischargeability proceedings to a discovery referee's report and recommendations issued in conjunction with a martial dissolution proceeding between the debtor and his spouse, and noting instead that the bankruptcy court had properly independently reviewed the evidentiary record and made its own findings and conclusions based upon the admissible evidence submitted to it).

41.    In sum, no matter how the Plaintiffs may attempt to utilize the unconfirmed IAA from the arbitration in this separate adversary proceeding as a procedural "shortcut" to their ultimate burden of proof herein--whether by way of preclusion doctrine, judicial notice, or

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

16

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

1   simply that this Court should "heed" that decision--all such attempts must fail.  Instead, this

2   Court can and indeed must make its own independent determinations based upon its own

3   separate review of the evidence and arguments presented, including but not limited to any

4   matters addressed in the IAA.

**B.**   **Plaintiffs Fail to State a Claim Pursuant to Section 523(a)(2)(A).**

   **1.**   **Allegations of Subsequent Breaches of Contract are Not Sufficient to Sustain a Claim that Defendant Fraudulently Entered into the Contract.**

42.   Defendant's Motion argues that although Plaintiffs' Complaint asserts a claim

pursuant to section 523(a)(2)(A) for fraud in the inducement in entering into the Employment

Agreement with Excelsior (*i.e.*, Liberty was never a party to that agreement), the only claims

Excelsior actually raises are the failure to honor certain contractual promises occurring after it

entered into the Employment Agreement with Defendant, and indeed, principally in 2012, or

more than three (3) years later.  As noted in the Defendant's Motion, however, fraud sufficient

to support a claim pursuant to section 523(a)(2)(A) cannot be premised upon a breaches of

contract; rather, to be actionable as fraud, the plaintiff must establish and specifically plead that

the debtor entered into the contract in question and from its inception never had the intent of

complying with its terms.  See Motion, ¶¶ 32-33.  This is fatal to the Plaintiffs' 523(a)(2)(A)

claim because their Complaint focuses solely on events occurring after, and indeed long after,

the Defendant and Excelsior had entered into the Employment Agreement.[22]

43.   In response, Plaintiffs' Opposition first intentionally avoids specifying which

Paragraphs of their Complaint are implicated and instead refers generally to Paragraphs 4-53

and vaguely asserts that they contain allegations "that Randazza made actual and implied

representations to Plaintiffs that he would comply with his obligations under the Employment

Agreement and that he never intended to do so." Opp'n, p. 18, ll. 4-6.

44.   It is well settled that if the money or property were obtained before the making of

any false representation, subsequent misrepresentations will have no effect on dischargeability.

---

[22] Liberty was never a party to the Employment Agreement, and thus to the extent the Complaint pleads a claim for fraud in the inducement on behalf of Liberty pursuant to section 523(a)(2)(A) in entering into the Employment Agreement, that claim must be dismissed as a matter of law.

17

See 4 Collier on Bankruptcy § 523.08[1][d] n.17 (Alan N. Resnick & Henry J. Somers eds., 16th ed.) (citing cases). "The failure to perform a mere promise is not sufficient to make a debt nondischargeable, even if there is no excuse for the subsequent breach." Id.

45.     A recent case example illustrates this point well.  In Yaikian v. Yaikian (In re Yaikian), 508 B.R. 175 (Bankr. S.D. Cal. 2014), a chapter 7 debtor's father brought a claim pursuant to 523(a)(2)(A) to except from discharge a state court judgment debt arising from the debtor's nonperformance of a share repurchase agreement of his father's stock in a closely-held family corporation.  The Court ultimately held that the father had failed to satisfy his burden of showing that when the debtor promised to provide his father with a lifetime of support as one of conditions imposed in the repurchase agreement, that he had no intention of performing, and thus that the father failed to show that debtor made the promise with any intent to injure. Id. at 186.  The Court noted that for a time the debtor had made payments under the repurchase agreement and had only breached it later.  See id.  In so holding, the Court stressed that the intention not to perform a contract must be present when the agreement is formed for it to sustain a claim pursuant to section 523(a)(2)(A); otherwise only a breach of contract is proven. See id. (citing Rubin v. West (In re Rubin), 875 F.2d 755, 759 (9th Cir. 1989)); Strominger v. Giquinto (In re Giquinto), 388 B.R. 152, 166 (Bankr. E.D. Pa. 2008) (explaining that "failure to perform as promised, standing alone, gives rise to a case for breach of contract, not actionable fraud.").  As a result of the Yaikan's debtor's partial performance of the repurchase agreement, the Court held that the father had only proven a dischargeable breach of contract claim.  See id. (citing Anastas v. Am. Savings Bank (In re Anastas), 94 F.3d 1280, 1287 (9th Cir. 1996) (holding that partial payment establish no intent to defraud)); see also Soares v. Lorono, No. 12-05979, 2015 WL 151705, at *17 (N.D. Cal. Jan. 12, 2015) (holding that when a debtor substantially performs a settlement agreement, the subsequent breach thereof through the failure to make the remaining payments is not sufficient to sustain a 523(a)(2)(A) claim).[23]

---

[23] This is also the case under applicable state law governing fraud claims as well.  See, e.g., Riverisland Cold Storage, Inc. v. Fresno-Madera Prod. Credit Ass'n, 291 P.3d 316 (Cal. 2013); Cundiff v. Dollar Loan Ctr. LLC, 726 F. Supp. 2d 1232, 1238 (D. Nev. 2010); see also Rest. 2d Torts § 530, and comm. b and d.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

46.     In the case at hand, the Plaintiffs (really only Excelsior as the only party to the Employment Agreement) do not allege that the Defendant completely failed to take any steps toward carrying out the Employment Agreement; indeed, quite to the contrary, issues only arose almost three (3) years later.  Moreover, the Plaintiffs never specifically allege that the Defendant lacked the intent to perform at the time the parties entered into the Agreement in 2009, or that Defendant knew he was not capable of performing the Agreement from the outset.  Rather, in 2012, Plaintiffs' principal, Mr. Gibson, had a change of heart regarding the contingency compensation proposed to be paid to Defendant in the Oron settlement with Liberty.  In fact, the Oron litigation was not even <u>commenced</u> until June 20, 2012, which was nearly three (3) years <u>after</u> the parties had entered into the Employment Agreement.

47.     This defect is also highlighted by the specific property the Plaintiffs claim was obtained by the Defendant through fraud:  Defendant's salary and other benefits obtained for his three (3) years of employment with Excelsior as paid pursuant to his Employment Agreement.  But Defendant's salary was not obtained by the alleged fraud involving the Oron settlement or any of the other things Plaintiffs apparently allege occurred in 2012.  Indeed, Liberty removed MJRPA, Defendant's law firm, from representation of any cases effective as of the same time, and Excelsior unilaterally and improperly deemed MJRPA's resignation from representing Liberty in that litigation as a termination of his Employment Agreement with Excelsior as of the same date.  As such, Defendant could not have obtained his salary for the first three (3) or more years of his employment with Excelsior as a result of such alleged fraud.  Such a result is mandated by the statutory text, which only allows for a debt to be excepted from discharge pursuant to section 523(a)(2)(A) "to the extent obtained by" fraud.

48.     Plaintiffs agree in their Opposition that a claim for breach of contract does not give rise to a claim for nondischargeabilty pursuant to section 523(a)(2)(A) of the Bankruptcy Code.  <u>See</u> Opp'n, pp. 17-18.  Plaintiffs' 523(a)(2)(A) claim, however, is precisely structured as a breach of contract claim, with paragraph 49 being the establishment of the contractual duties and paragraph 52 being the alleged breaches thereof.  <u>See</u> Complaint, ¶¶ 49 and 52.

49.     This is not surprising because Plaintiffs' Complaint herein is largely "cut and

pasted" from their claims as asserted in the arbitration (albeit with a haphazard attempt to weave in the statutory language of the applicable provisions of statutory text of section 523, but without many specifics). Notably and quite tellingly, the Plaintiffs did <u>not</u> plead a fraud claim in the arbitration proceedings; rather, the seven (7) claims they pled in the arbitration were for breach of fiduciary duty, conversion, intentional interference with contractual relations,[24] breach of the implied duty of good faith and fair dealing, legal malpractice, unjust enrichment, and breach of contract. See Plaintiffs' RJN, Ex. 1, pp. 3-10.

50.     The elements of fraud to be proven by a preponderance of the evidence to establish a 523(a)(2)(A) claim are: (1) the debtor made representations; (2) he knew that the representations were false at the time they were made; (3) the representations were made with the intention and purpose of deceiving the creditor; (4) the creditor relied on the representations; and (5) the creditor sustained the alleged loss and damage as the proximate result of the representations having been made. <u>Eugene Parks Law Corp. Defined Benefit Pension Plan v. Kirsh (In re Kirsh)</u>, 973 F.2d 1454, 1457 (9th Cir. 1992). In other words, "deceptive conduct" is not sufficient; rather, there must be an allegation of actual fraud by way of a misrepresentation or concealment when a duty to disclose existed.

51.     First, as discussed above, the prior paragraphs in the Complaint assert no actual misrepresentation or failure to disclose. The primary allegation of deception would appear to be the so-called "bribery" provision in Oron's settlement offer, which was basically a provision to include attorneys' fees in the agreement for MJRPA for its efforts. There was no misrepresentation or concealment in conjunction with the Oron settlement offer, however, because there is no allegation that the Defendant misrepresented or concealed anything to Liberty/Mr. Gibson in that proposed settlement agreement. Plaintiffs' use of the word "deception" turns that word on its head, effectively defining it as "disclose an unpleasant thing" in the form of the attorneys' fees and costs Defendant's law firm, MJRPA, was claiming and seeking to recover for its hard work in the representation of Liberty in that litigation and related

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

---

[24] Although Excelsior dismissed this claim after the arbitration. See Plaintiffs' RJN, Ex. 5, p. 71.

matters, which was fully disclosed and not concealed in any way. As such, the Plaintiffs'
Complaint, to the extent it is premised on a 523(a)(2)(A) claim related to the Oron settlement,
such a claim must be dismissed as a matter of law for failure to state a claim upon which relief
can be granted due to the lack of any actual fraud, misrepresentation or concealment.

> 2. **Plaintiffs Fail to Plead the Alleged Fraud with the Requisite Particularity.**

52.    Regardless of whether the Plaintiffs' 523(a)(2)(A) claim is premised on "false
pretenses," "false representation," "actual fraud," or "deceptive conduct," such matters must
also be pled with the requisite particularity pursuant to Rule 9(b), made applicable to this
adversary proceeding pursuant to Bankruptcy Rule 7009. To meet this standard, a complaint
making fraud allegations must identify "the who, what, when, where, and how of the
misconduct charged," as well as "what is false or misleading about the [purportedly fraudulent]
statement, and why it is false." Cafasso ex rel. United States v. Gen. Dynamics C4 Sys., Inc.,
637 F.3d 1047, 1055 (9th Cir. 2011)

53.    In reviewing whether the Plaintiffs had pled fraud with the requisite particularity
in their Complaint, it is important to distinguish between the allegations made with respect to
the Oron settlement involving Liberty, which is discussed at length and does have some detail,
and paragraph 52[25] of the Complaint, which contains a host of other conclusory statements
utterly lacking in any of the particularity required pursuant to Rule 9(b).

54.    In their Opposition, Plaintiffs attempt to recast paragraph 52 of their Complaint
as alleging "deceptive conduct," and generally rely upon the earlier paragraphs in their
Complaint as providing the required particularity. See Opp'n, p. 18. Those earlier paragraph,
however, really only address the Oron litigation involving Liberty and MJRPA in any detail, and
provide nothing by way of particulars as to the host of other allegations made in Paragraph 52.

55.    In its entirety, Paragraph 52 of the Complaint reads as follows:

> [T]he true nature of his dealings with infringers of Plaintiffs [sic]

---

[25] Defendant presumes Plaintiffs are referring the first paragraph 52 (i.e., on page 14 of the Complaint). The
Complaint misnumbers the second paragraph on page 15 of the Complaint as a second paragraph 52, and continues
the erroneous numbering thereafter as well.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

intellectual property; his engagement in negotiations with adverse parties who had litigation pending against Plaintiffs, regarding those parties retaining his services in order to conflict him out of any future cases against them; his negotiations to broker a deal for the sale of a defendant (TNAFlix) while actively litigating against them on EL's behalf.

Complaint, ¶ 52.  Plaintiffs further allege that had Defendant not made the promises or made the disclosure they would not have paid him or taken his advice.  Id. ¶¶ 50 & 53.  The foregoing vague and conclusory allegations fail to clearly specify "the who, what, when, where, and how of the misconduct charged," as well as "what is false or misleading about the [purportedly fraudulent] statement as required by Rule 9(b), and therefore must be dismissed.

56.    In particular, with respect to the Plaintiffs' allegations that the Defendant failed to disclose "the true nature of his dealings with infringers of Plaintiffs [sic] intellectual property," the Plaintiffs failed to plead, among other matters, which specific infringers are at issue, what specifically did the Defendant allegedly misrepresent to the Plaintiffs, when exactly the Defendant made such alleged misrepresentations, and whether and how exactly the Plaintiffs were damaged as a result.

57.    Likewise, with respect to the Plaintiffs' allegations that the Defendant "engage[d] in negotiations with adverse parties who had litigation pending against Plaintiffs regarding those parties retaining his services in order to conflict him out of any future cases against them," the Plaintiffs failed to plead which specific adverse parties are at issue, what specifically the Defendant allegedly misrepresented to the Plaintiffs, when exactly the Defendant made his alleged misrepresentations with respect to these adverse parties, and whether and how exactly the Plaintiffs were damaged as a result.  Plaintiffs claim Defendant engaged in negotiations with adverse parties, such as Oron, TNAFlix, and Megaupload, for him to be retained by them to preclude future adverse actions by him.  Complaint ¶ 37 (the second paragraph labelled ¶37).  Notably, Plaintiffs do not allege that he consummated any of those negotiations or that they suffered harm thereby.  The Arbitrator himself found the communications regarding such negotiations were bluffs.[26]  See IAA, p. 12.

---

[26] Despite this finding, the Arbitrator awarded Plaintiffs (presumably Liberty), with damages in the amount of $275,000, somehow based on the earlier proposed revised settlement that was never consummated when, instead,

58.    With respect to the Plaintiffs' allegations that the Defendant "negotiat[ed] to broker a deal for the sale of a defendant (TNAFlix) while actively litigating against them on [Plaintiffs'] behalf," the Plaintiffs failed to plead what specifically the Defendant allegedly misrepresented to the Plaintiffs, when exactly the Defendant made the alleged misrepresentations with respect to these adverse parties, and whether and how exactly the Plaintiffs were damaged as a result.  Indeed, Plaintiffs do not allege that they suffered any harm, they do not allege, for example, that they purchased TNAFlix, or would have, but for Defendant.

59.    Finally, to the extent the Plaintiffs are claiming any other "engagement in negotiations" other than with respect to the Oron litigation settlement, which is the only one discussed in their Complaint, they failed to plead the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false.

60.    As a result, in the alternative to dismissal for failure to state a claim, the Plaintiffs' 523(a)(a)(A) claim should also be dismissed for a failure plead the fraud allegations underpinning that claim with the requisite particularity as required by Rule 9(b).  Such failure is especially inexcusable in light of the substantial pre-petition Arbitration proceedings among the parties and the discovery and initial proceedings already occurring therein.  As a result, the Plaintiffs have had a more than sufficient opportunity through discovery and pleading in the Arbitration to develop such allegations, yet they still cannot plead a 523(a)(2)(A) claim with the requisite particularity.[27]

61.    For the avoidance of doubt, and this applies to all of the Plaintiffs' causes of action, as set forth in the Defendant's Limited Objection to Plaintiffs' RJN, the Plaintiffs may not bolster or add to the deficient allegations in their Complaint, which pleading they have

---

that figure came from new settlement negotiations with Oron that occurred after Defendant's separation.  See Complaint ¶ 44(j); IAA, p. 23, ¶ 2.  This incongruity further undermines the IAA.

[27] Although Defendant recognizes that leave to amend may be granted, it is improper to do so if the complaint could not possibly be cured and the amendment would otherwise be futile.  See United States v. Smithkline Beecham Clinical Labs., 245 F.3d 1048, 1052 (9th Cir. 2001).  In the case at hand, leave to amend for a *second* amended complaint should be denied because Plaintiffs have had more than adequate opportunity to plead their case, especially considering the lengthy pre-petition Arbitration and the discovery and hearings therein among the parties.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170    Fax: (702) 382-1169

1    already amended once in this adversary proceeding, by way of seeking judicial notice pursuant

2    to Fed. R. Evid. 201 of pleadings they filed in the arbitration; rather, they are required to set

3    forth the requisite specificity in their Complaint.

4    **C.    Plaintiffs Fail to State a Claim Pursuant to Section 523(a)(4).**

5          **1.    A Mere Attorney-Client Relationship is Not Sufficient; Rather, Trust Funds Must Also be Misappropriated as Well.**

6    62.    Pursuant to the substantial body of caselaw cited in the Defendant's Motion,

7    including most prevalently, the BAP's authoritative decision on this issue in <u>Stephens v.</u>

8    <u>Bigelow (In re Bigelow)</u>, 271 B.R. 178 (B.A.P. 9th Cir. 2001), and numerous lower court

9    authority, <u>see</u> Motion, ¶¶ 50-53, the mere existence of an attorney-client relationship (*i.e.*, in this

10    case, between the Defendant and Excelsior as its in house counsel pursuant to the Employment

11    Agreement, and between the Defendant/MJRPA and Liberty as outside, retained counsel to

12    Liberty) is insufficient as a matter of law to establish the requisite fiduciary relationship needed

13    for a claim pursuant to section 523(a)(4) of the Bankruptcy Code; rather, the attorney must also

14    have misappropriated and/or failed to account for specific trust funds as well.

15    63.    In an attempt to avoid this substantial body of caselaw, the Plaintiffs first attempt

16    to recast the Defendant as a "partner," however, there are numerous problems with such an

17    assertion.  First, Plaintiffs cite no authority holding that in-house counsel retained pursuant to an

18    employment agreement or a retained outside counsel should be treated as a "partner" to a

19    corporation; rather, they simply cite to caselaw establishing that partners in a partnership are in a

20    fiduciary relationship for purposes of section 523(a)(4) claims.  <u>See</u> Opp'n, p. 20 (citing cases).

21    64.    Second, such an assertion is contrary to the plain language of the Employment

22    Agreement between Excelsior and the Defendant that he was "in house counsel," and the

23    obvious relationship of MJRPA/Defendant as outside, retained counsel for Liberty in various

24    litigations.  <u>See</u> Opp'n, p. 20.  Bankruptcy courts have rejected attempts by creditors to argue

25    that a debtor was a "partner" in order to sustain a 523(a)(4) claim when such an assertion is

26    contrary to the plain text of the parties' written agreement.  <u>See</u> <u>Utnehmer v. Crull (In re</u>

27    <u>Utnehmer)</u>, 499 B.R. 705 (B.A.P. 9th Cir. 2013) (reversing a bankruptcy court's finding that a

28    partnership was established between the parties pursuant to a loan agreement between the

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170    Fax: (702) 382-1169

1    parties because it was contrary to their intent); <u>Hillsman v. Morgan (In re Morgan)</u>, No. 3:13-cv-

2    256, 2014 WL 3749156, at *3 (D. Nev. July 30, 2014) (affirming the decision of the bankruptcy

3    court granting a motion to dismiss a 523(a)(4) claim, and calling the claim "probably frivolous"

4    because at issue was an "arms-length loan transaction wherein the parties negotiated and

5    arranged the contours of their rights and responsibilities, not a traditional trust-like relationship

6    such as a partnership").

7        65.    Additionally and critically, the Employment Agreement itself requires Defendant

8    to report to Mr. Gibson, <u>see</u> RJN, Ex. 1, § 2.C which relegated role subject to supervision by the

9    Plaintiffs' principal is inconsistent with Defendant being a "partner" with equal authority.

10   Moreover, the Plaintiffs do not allege, and in fact the Defendant never had, any right to

11   participate in the management and control of the Plaintiffs' businesses, which is the

12   determinative indicia of a partnership, the lack of which is fatal to a claim of partnership in an

13   attempt to sustain a 523(a)(4) claim.  <u>See</u> <u>Haig v. Shart (In re Shart)</u>, No. 14-1065, 2014 WL

14   6480307, at *12 (B.A.P. 9th Cir. Nov. 19, 2014) (holding that an agreement by a landowner to

15   share in the profits to be derived from the sale of land does not, without more, create a

16   partnership or joint venture relationship sufficient to sustain a 523(a)(4) claim) (citing <u>Bank of</u>

17   <u>Cal. v. Connolly</u>, 36 Cal. App. 3d 350, 364. 36 Cal. Rptr. 468 (Cal. Ct. App. 1973) (collecting

18   cases); and <u>Utnehmer</u>, 499 B.R. at 716 (holding that participation in management of the

19   business is the essential element to determining whether a partnership exists)).  Finally, both of

20   the Plaintiffs are corporations, and thus it would be nonsensical for them to bring on a "partner,"

21   as opposed to a new officer, director or shareholder, none of which do they allege in their

22   Complaint the Defendant actually became in any event.

23       66.    Additionally, to the extent the Plaintiffs attempt to recast the Defendant as an

24   officer, director or other executive of the companies, such efforts are also unavailing because

25   courts have specifically held that corporate officers and directors are not fiduciaries of a

26   corporation's assets within the meaning of section 523(a)(4) of the Bankruptcy Code.  <u>See</u> <u>Gray</u>

27   <u>v. Wenzel (In re Gray)</u>, No. 10-1304, 2011 WL 4503078 (B.A.P. 9th Cir. July 7, 2011) (citing

28   <u>Cal-Micro Inc. v. Cantrell (In re Cantrell)</u>, 329 F.3d 1119, 1125 (9th Cir. 2003), in turn citing

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170    Fax: (702) 382-1169

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

Bainbridge v. Stoner, 106 P.2d 423 (Cal. 1940)).  As a result, such an argument also fails to establish the Defendant as a fiduciary for purposes of section 523(a)(4) of the Bankruptcy Code.

67.    Second, Plaintiffs admit that their alleged debt arising out of the allegations in the arbitration have nothing to do with that $550,000 held in trust by MJRPA, Defendant's law firm.  Indeed, the dispute over those funds was resolved before Defendant filed his bankruptcy petition through the filing of a stipulation and order in state court litigation pending in the Eighth Judicial District Court Clark County, Nevada as Case No. A-12-673275-C between MJRPA and the Plaintiffs.  Specifically, on April 8, 2015, the parties in that case agreed that the funds would be interpled into that Court pending a determination in the Arbitration, those funds were in fact interpled in April 2015, and shortly after the IAA was issued by the arbitrator on June 3, 2015, the parties agreed to a further stipulation as approved by the state court on June 18, 2015, thereby releasing the appropriate funds to the Plaintiffs.  See Supp. RJN, Exs. 1-3.  As such, and as a matter of public record, the Defendant never misappropriated any trust funds, and never failed to account for any monies MJRPA held in trust from the Oron litigation; rather, as a matter of public record, subject to his retaining lien rights available as a matter of law, and as expressly authorized and approved by the state court as a matter of public record as subject to judicial notice, such funds were never misappropriated, were always fully protected, and were always fully accounted for without question.  As more fully addressed in the Defendant's Limited Opposition to the Plaintiffs' RJN, Plaintiffs cannot avoid a motion to dismiss for failure to state a claim simply by creatively pleading around obvious matters, including failing to reference public filings that are subject to judicial notice.

68.    Third, Plaintiffs' allegations of fraud and/or defalcation is unrelated to the trust funds alleged.  Plaintiffs essentially attempt to use section 523(a)(4) to restate their claims under section 523(a)(2)(A), but without setting forth any particulars regarding how Defendant committed fraud and/or defalcation with specific reference to any trust funds.  See Complaint, ¶¶ 56 & 57.  To sustain a 523(a)(4) claim, the alleged debt in question must actually arise from and be caused by the fraud of defalcation alleged.   See Motion, ¶ 46 (cases cited).   The Plaintiffs' Complaint fails to allege such a direct and proximate cause between any alleged

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170    Fax: (702) 382-1169

1  misappropriation or defalcation of trust funds and the damages claimed, and thus it has failed to

2  plead a sufficient 523(a)(4) claim.

3       69.    Instead, as the documents subject to judicial notice readily indicate, the Oron

4  settlement funds were obtained via a court order, and then interpled into the Nevada state court

5  for protection, and only released from that Court after the IAA was issued, both of which were

6  done pursuant to various stipulations and orders of the parties. See RJN, Ex. 2; Supp. RJN, Exs.

7  1-3. The existence of the trust funds is separate from the allegations and incidental, and without

8  such a direct tie, any debt arising therefrom is not properly pled pursuant to section 523(a)(4).

9      **2.**    **Plaintiffs Fail to Alleged Their 523(a)(4) With the Required Particularity.**

10       70.    Second and in the alternative, the Defendant's Motion argued that the Plaintiffs'

11  Complaint failed to assert the underlying fraud in support of their 523(a)(4) claim with the

12  requisite particularity required by Rule 9(b). See Motion, ¶ 57. In their Opposition, the

13  Plaintiffs first question whether Rule 9(b) even applies to claims pursuant to sections 523(a)(4)

14  and (6), and indicates that they could find no caselaw holding as such. See Opp'n, pp. 20-21.

15  Plaintiffs need not look any further than the cases cited in Defendant's Motion for caselaw

16  establishing that the heightened "particularity" requirements for allegations of fraud in Rule 9(b)

17  apply to claims under 523(a)(2)(A), (4) and (6) to the extent the underlying wrong asserted

18  therein is premised on fraud. See Motion, ¶ 38 (citing cases). Indeed, Rule 9(b) would

19  obviously apply to the extent the Plaintiffs' 523(a)(4) claim is premised on allegations that the

20  Defendant committed "fraud . . . while acting in a fiduciary capacity," because the statutory text

21  expressly requires "fraud." 11 U.S.C. § 523(a)(4) (emphasis added). Based on the same

22  analysis previously referenced with respect to Plaintiffs' 523(a)(2)(A) claim, the Plaintiffs failed

23  to plead their 523(a)(4) claim with the requisite particularity pursuant to Rule 9(b), and thus it

24  must be dismissed on that basis.

25  **D.**    **Plaintiffs Fail to State a Claim Pursuant to Section 523(a)(6).**

26       71.    Defendant's Motion establishes that specific tortious conduct must be pled to

27  sustain a 523(a)(6) claim, see Motion, ¶¶58-59, and then cites to extensive caselaw

28  demonstrating how each and every allegation that the Plaintiffs assert in their Complaint--

including their allegations of breach of fiduciary duty, legal malpractice, perjury, misrepresentations to investigative bodies, and breaches of the Employment Agreement (indeed even a knowing breach of contract done without just cause)--all are not the tortious conduct required to sustain a 523(a)(6) claim. See Motion, ¶¶ 60-75. In their Opposition, the Plaintiffs really avoid the issue and only vaguely assert that they alleged "deliberate conduct intended to harm--and in fact harming--Plaintiffs," Opp'n, p. 21, and that "[t]he present case . . . involves far more than a mere breach of a settlement agreement; it involves a prolonged and extensive pattern of deliberate misconduct intended to benefit the Debtor and harm Plaintiffs." Opp'n, p. 22, ll. 7-10. Other than Plaintiffs' mere vague recitation, however, their Complaint and Opposition do not specify a specific tort that would except any debt owing from Defendant from discharge pursuant to section 523(a)(6) of the Bankruptcy Code.

72.    With respect to Excelsior's allegations that Defendant intentionally breached the Employment Agreement without just cause,[28] which appears to be the Plaintiffs' focus, they never explain how they can avoid the binding Ninth Circuit precedents in both Lockerby v. Sierra, 535 F.3d 1038, 1041 (9th Cir. 2008), and Petralia v. Jercich (In re Jercich), 238 F.3d 1202, 1206 (9th Cir. 2001), that plainly reject such a theory as sufficient to sustain a 523(a)(6) claim as presently pled. In point of fact, the Plaintiffs' 523(a)(6) claim is really just its 523(a)(2)(A) claim masquerading under an inapplicable alternative theory. As such, the Plaintiffs' 523(a)(6) claim must be dismissed as a matter of law for failure to state a claim upon which relief can be granted.

73.    Finally, even if the Court somehow determines that the Plaintiffs have pled the required tortious conduct sufficient to sustain a 523(a)(6) claim, the particularity requirement in Rule 9(b) also applies where the intentional tort alleged to give rise to the willful and malicious injury thereunder is fraud. See Craciun, 2014 WL 2211742, *19 (B.A.P. 9th Cir. May 28, 2014). In the case at hand, the Plaintiffs' Opposition affirms this fact by stating that their claims

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170    Fax: (702) 382-1169

---

[28] Nor can Plaintiffs ever explain how Liberty was harmed by an alleged breach of contract (i.e., the Employment Agreement between the Defendant and Excelsior) to which it was never a party. As such, to the extent Liberty purports to be asserting a 523(a)(4) claim on this basis, such a claim must be dismissed as a matter of law because a nonparty to a contract cannot recover for an alleged breach of that contract as a matter of law.

1   under that provision relate to "an extensive pattern of fraudulent conduct." Opp'n, p. 21. Based

2   on the same analysis previously referenced with respect to Plaintiffs' 523(a)(2)(A) claim, the

3   Plaintiffs failed to plead their 523(a)(6) claim with the requisite particularity pursuant to Rule

4   9(b), and thus it must be dismissed on that basis.

5   **E.**    **No Jury Trial is Available in Dischargeability Proceedings.**

6        74.    The Plaintiffs concede in their Opposition that there is no right to a jury trial on

7   the claims in their Complaint. See Opp'n, p. 22. As a result, and for the reasons as stated in the

8   Defendant's Motion, see Motion, ¶¶ 85 and 86, the Court should grant the Defendant partial

9   summary judgment striking or dismissing Plaintiffs' request for a jury trial as a matter of law.

10  **F.**    **Disgorgement is Not Available.**

11       75.    With respect to their disgorgement claim, the Plaintiffs appear to make only a

12  partial, and ultimately incomplete, concession that even though their "demand for disgorgement

13  is, in a literal sense, not feasible" in a bankruptcy case, at the same time, they maintain that "the

14  amounts underlying their disgorgement claims" can still be maintained as part of their claim.

15  See Opp'n, p. 22.[29] In other words, presumably the Plaintiffs are conceding that, at best, the

16  "amounts underlying their disgorgement claims" could only ever be general unsecured claims in

17  the Defendant's bankruptcy case. That still leaves the issue as to whether the disgorgement of

18  compensation from an in house attorney is ever available as a matter of law, which Plaintiffs

19  then go on to analyze and dispute whether California Labor Code has any application, yet ignore

20  the reference to the Restatement of the Law Governing Lawyers that does not allow such a

21  recovery. See Motion, ¶ 90, n.15.

22  **G.**    **Recovery of Attorneys' Fees and Costs is Not Available.**

23       76.    Even if the Plaintiffs are able to prevail on their claims, they are not entitled to

24  attorneys' fees and costs for various reasons. First, the Employment Agreement only grants

25  Excelsior, as the party to that contract, an ability to recovery its fees and costs if it is the

26  prevailing party, not Liberty. As such, Liberty has no basis under California law or the

27

28  _____

[29] Plaintiffs' Opposition appears to have a period on p. 22, l. 25, when, in fact, they meant to put a comma instead.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

1  Bankruptcy Code to recover its fees and costs in the arbitration or this proceeding, and thus its

2  prayer for recovery thereof in the Complaint must be denied as a matter of law.  See Savage v.

3  Brill (In re Savage), No. 14-1074, 2015 WL 2452626 (B.A.P. 9th Cir. May 20, 2015).

4        77.    Second, with respect to Excelsior's claim of attorneys' fees and costs, the

5  specific terms of the Employment Agreement only authorize an arbitrator to award fees and

6  costs, not a court.  Specifically, the applicable provision in the Employment Agreement is

7  entitled as "Fees and Costs of Arbitration" and reads as follows:  "Each party shall bear their

8  own attorneys fees and costs; however, the Arbitrator is hereby authorized to direct the non-

9  prevailing party to pay to the prevailing party their attorneys fees and costs, in the Arbitrator's

10  sole discretion."  RJN, Ex. 1, § 8.B (emphases added).  As a result, even Excelsior's claim for

11  attorneys' fees and costs must dismissed as a matter of law because this Court is not an

12  arbitrator, and cannot award such fees pursuant to the express terms of the contract.  Courts will

13  hold the parties to the express terms of any contractual attorneys' fees provision.  See Savage,

14  2015 WL 2452626, at *6 (refusing to interpret a provision governing actions for "breach" of the

15  agreement as authorizing recovery of attorneys fees incurred in a related nondischargeability

16  action); see also Redwood Theaters, Inc. v Davison (In re Davison), 289 B.R. 716, 724-725

17  (B.A.P. 9th Cir. 2003) (refusing to interpret a contractual attorneys provision authorizing fees to

18  "interpret or enforce" the agreement as applying to a debtor's right to recover fees for defending

19  against a 523(a)(2)(A) fraud claim for nondischargeability).

20        78.    Finally, and in the alternative, even if the Court somehow interprets § 8.B of the

21  Employment Agreement as authorizing Excelsior to recovery its attorneys fees and costs in the

22  Arbitration, such a provision cannot be expanded or extrapolated to allow Excelsior to also

23  recover any fees and costs incurred with respect to seeking the confirmation of the IAA in state

24  court, or to any fees and costs incurred in this nondischargeability proceeding because such

25  matters are not expressly provided for therein.  For example, in Savage, the Court held that a

26  contractual provision providing that "in the event of any form of breach of contract or threatened

27  breach of this agreement" a party would be recover all reasonable attorneys fees and expenses

28  was not sufficient to allow for the recovery of fees for pursuing a nondischargeability claims

1  because it did not state all actions "resulting from" the agreement. By contrast, in 3250 Wilshire

2  Partners v. W.R. Grace & Co. (In re 3250 Wilshire Blvd. Bldg.), 990 F.2d 487 (9th Cir. 1993),

3  which is the case cited by the Plaintiffs in their Opposition, the provision in question was much

4  more broadly drafted to include, in pertinent part "any action or other proceeding with respect to

5  the subject matter of enforcement of this Agreement." Id. at 489. In the case at hand, no such

6  broad wording exists in the Employment Agreement, and thus any claim for the recovery of fees

7  and costs by Excelsior related to this Chapter 11 Case or nondischargeablity proceeding must be

8  dismissed as a matter of law.

### III.  CONCLUSION

10  WHEREFORE, Defendant's respectfully request that the Court grant his Motion and

11  grant him such other and further relief as is just and proper.

12  Dated: May **3**, 2016.

LARSON & ZIRZOW, LLC

By: _____

ZACHARIAH LARSON, ESQ.
Nevada Bar No. 7787
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
850 E. Bonneville Ave.
Las Vegas, Nevada  89101

Attorneys for Defendant

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*LARSON & ZIRZOW, LLC*
*810 S. Casino Center Blvd. #101*
*Las Vegas, Nevada 89101*
*Tel: (702) 382-1170   Fax: (702) 382-1169*