LARSON & ZIRZOW, LLC
ZACHARIAH LARSON, ESQ.
Nevada Bar No. 7787
E-mail: zlarson@lzlawnv.com
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
E-mail: mzirzow@lzlawnv.com
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel:  (702) 382-1170
Fax:  (702) 382-1169

Attorneys for Defendant

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>MARC JOHN RANDAZZA,<br><br>       Debtor. | Case No.: BK-S-15-14956-abl<br>Chapter 11 |
| EXCELSIOR MEDIA CORP., a Nevada corporation; and LIBERTY MEDIA HOLDINGS, LLC, a Nevada limited liability company,<br><br>       Plaintiffs,<br><br>v.<br><br>MARC JOHN RANDAZZA, an individual,<br><br>       Defendant. | Adv. No. 15-01193-abl<br><br><br>**MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**<br><br><br>Date:   September 20, 2016<br>Time:   9:30 a.m. |

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

**TABLE OF CONTENTS**

I.     INTRODUCTION ...................................................................................... 1

II.    JURISDICTION AND VENUE ................................................................. 1

III.   FACTUAL AND PROCEDURAL BACKGROUND ................................. 2

    A.   Pre-Petition Procedural History. ................................................... 2

    B.   Post-Petition. ................................................................................. 4

        1.   Preliminary Events in the Chapter 11 Case. ...................... 4

        2.   This Adversary Proceeding. ................................................ 4

        3.   The MJRPA Settlement Agreement. ................................... 5

        4.   Summary of Specific Allegations in the SAC. ................... 6

IV.    LEGAL ARGUMENT ............................................................................... 8

    A.   Standard of Decision on a Motion to Dismiss. ............................. 8

    B.   Allegations of Defendant's Outside Work Through MJRPA While He Was Under Excelsior's Employ Per the Employment Agreement. ................................................................................... 9

        1.   Bang Bros. ........................................................................ 10

        2.   XVideos and XNXX. ........................................................ 11

        3.   Wayne Hoehn (The Righthaven Litigation). .................... 11

    C.   TNAFlix. ...................................................................................... 12

    D.   FF Magnat/Oron. ......................................................................... 13

    E.   The First Claim for Relief:  Section 523(a)(2)(A). ..................... 18

        1.   Elements for a 523(a)(2)(A) Claim and the SAC's Specific Allegations. ..................................................................... 18

        2.   Liberty Has No Fraud Claim Based on Nondisclosure or Fraudulent Concealment Arising Out or Related to the Defendant's Employment Agreement with Excelsior. .... 20

        3.   A Mere Breach of Contract is Not Sufficient to Sustain a 523(a)(2)(A) Claim. ....................................................... 21

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

i

4.  Plaintiffs Still Fail to Plead Fraud with the Requisite Particularity for Their 523(a)(2)(A) Claim..................................23

F.  The Second Claim for Relief:  Section 523(a)(4)..............................25

1.  General Elements of a 523(a)(4) Claim.................................25

2.  A Mere Attorney-Client Relationship is Not Sufficient, Rather an Actual Trustee Relationship and a Specific Trust *Res* of Trust Funds is Required. ..........................................27

G.  The Third Claim for Relief:  Section 523(a)(6)..............................29

1.  General Elements and the Allegations in Plaintiffs' SAC.........29

2.  The Allegations Pled in the SAC Are Not Tortious. ...............30

a.  Breaches of the Employment Agreement are Not a Tort. ..................................................................30

b.  Breaches of Fiduciary Duty/Legal Malpractice are Not Torts.................................................................32

c.  Alleged Spoliation and Destruction of Evidence are Not Torts.................................................................33

3.  Plaintiffs Still Fail to Satisfy Various Elements for Their 523(a)(6) Claim. ..............................................................34

H.  Plaintiffs' Prayer for Only Their Pre-Petition Attorneys' Fees and Costs Still Must Be Dismissed Either in Whole or in Part........................34

1.  Liberty..............................................................................35

2.  Excelsior. ..........................................................................38

I.  Plaintiffs Should Not Be Granted Additional Leave to Amend. ...........39

V.  CONCLUSION .........................................................................40

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

## I. INTRODUCTION

1.     Defendant, Marc John Randazza (the "Defendant"), by and through his attorneys, Larson & Zirzow, hereby submits his *Motion to Dismiss* (the "Motion") the *Second Amended Complaint* (the "SAC") [Adv. ECF No. 156] filed by the plaintiffs, Excelsior Media Corp., a Nevada corporation ("Excelsior"), and Liberty Media Holdings, LLC, a Nevada limited liability company ("Liberty" and together with Excelsior, the "Plaintiffs"), for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), made applicable per Fed. R. Bankr. P. 7012(b), and for failure to plead fraud with particularity pursuant to Fed. R. Civ. P. 9(b), made applicable pursuant to Fed. R. Bankr. P. 7009.[1]

2.     This Motion is made and based on the points and authorities herein, the previously filed *Request for Judicial Notice* [Adv. ECF No. 23] and *Supplemental Request for Judicial Notice* [Adv. ECF No. 43], and the *Second Supplemental Request for Judicial Notice* ("RJN") submitted herewith, the dockets in Defendant's underlying bankruptcy case (the "Chapter 11 Case") and this adversary proceeding (the "Adversary Proceeding"), judicial notice requested, and arguments of counsel made at the time of any hearing on this Motion.

## II. JURISDICTION AND VENUE

3.     On August 28, 2015 (the "Petition Date"), the Defendant filed his voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").   The Court has subject matter jurisdiction to consider and determine this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and Local Rule 1001(b)(1).   This Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (I).   Pursuant to Local Rule 7008.1, the Defendant consents to the entry of final orders and judgments by the bankruptcy judge in this matter.   Venue is proper for this bankruptcy case in this District pursuant to 28 U.S.C. § 1408(1) and for this Adversary Proceeding pursuant to 28 U.S.C. § 1409(a).

---

[1] Unless otherwise indicated, all capitalized terms shall have the same meaning as set forth in the SAC.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

### III.  FACTUAL AND PROCEDURAL BACKGROUND

**A.     Pre-Petition Procedural History.**

4.      On or about June 10, 2009, Excelsior hired the Defendant as its General Counsel pursuant to an Employment Agreement (the "Employment Agreement").[2]  The Agreement makes no mention of the Defendant representing Liberty, the brand name/website "Corbin Fisher," or any other party.  Plaintiffs allege they are simply "sister" entities.  See SAC ¶ 8.

5.      Thus, for example, in the litigation described in SAC ¶ 49, Defendant represented Liberty Media Holdings, LLC, a California limited liability company ("LMH"), through his law firm, Marc J. Randazza P.A. d/b/a Randazza Legal Group ("MJRPA"), as required by Nev. R. Prof. Conduct 5.4(d),[3] rather than through his job with Excelsior.  See Liberty Media Holdings, LLC v. FF Magnat Ltd. d/b/a Oron.com, No. 12-01057, 2012 WL 3255044 (D. Nev. Aug. 7, 2012).

6.      In contrast to Plaintiffs' allegation (really only Excelsior's allegation because it was the only party to the Employment Agreement, not Liberty) in SAC ¶ 10 that Defendant did not "advise Plaintiffs that they should seek independent counsel to review the [Employment A]greement", Mr. Gibson, as CEO of Excelsior, just above where he signed, specifically acknowledged, in **BOLDFACED AND ALL CAPITALIZED LETTERS**, that he "**HAD AN OPPORTUNITY TO CONSULT WITH LEGAL COUNSEL REGARDING THIS**

---

[2] Plaintiffs claim that Defendant drafted the Employment Agreement.  In fact, both parties contributed to the drafting, but this dispute is not outcome determinative.  Plaintiffs do not attach the Employment Agreement as an exhibit to the SAC, although they do reference specific provisions of it.  See, e.g., SAC ¶ 13.  Under the incorporation by reference doctrine, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to into a motion for summary judgment.  See In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 2002); United States v. Ritchie, 342 F.3d 903 at 907-08 (9th Cir. 2003).  Additionally, no party questions the authenticity of the Employment Agreement--indeed it has been attached to numerous of the Plaintiffs' previous filings, including their FAC [Adv. ECF No. 23, Ex. 1], and their Stay Relief Motion (as hereinafter defined) [ECF No. 60-7, Ex. 3] filed in the Debtor's Chapter 11 Case--and thus the document may be considered in deciding this Motion as well.

[3] Nev. R. Prof. Conduct 5.4(d) provides as follows:  "A lawyer shall not practice with or in the form of a professional corporation or association authorized to practice law for a profit, if:  (1) A nonlawyer owns any interest therein, except that a fiduciary representative of the estate of a lawyer may hold the stock or interest of the lawyer for a reasonable time during administration; (2) A nonlawyer is a corporate director or officer thereof or occupies the position of similar responsibility in any form of association other than a corporation; or (3) A nonlawyer has the right to direct or control the professional judgment of a lawyer."

**AGREEMENT AND HAS EITHER DONE SO OR DECLINES TO DO SO**.”  Employment Agreement p. 11 (emphasis in original). Plaintiffs' contention in SAC ¶ 10 is directly controverted by the Agreement.

7.    In light of disputes over whether Defendant had resigned from his job at Excelsior, Defendant initiated an arbitration proceeding against Excelsior, being JAMS No. 1260002283 (the "Arbitration") for contractual obligations owed to him under that agreement, as well as for wrongful termination, and in the alternative, for constructive discharge and retaliation.   LMH voluntarily entered the Arbitration too.   On or about January 2, 2013, Excelsior served its answer and counterclaims in the Arbitration.

8.    On December 9, 2012, as later amended, MJRPA filed an action against LMH in the Eighth Judicial District Court, Clark County, Nevada, being Case No. A-12-673275-C, therein alleging claims for monies due for legal services rendered in the Oron litigation (the "Fee Litigation").  See RJN Exs. 1 & 2.

9.    On March 28, 2013, LMH answered the amended complaint in the Fee Litigation, and filed a counterclaim against MJRPA alleging malpractice claims against MJRPA arising out its representation of LMH in the Oron Litigation, which are similar to those asserted against the Defendant in this Adversary Proceeding.  See RJN Ex. 3.

10.    On June 3, 2015, the arbitrator in the Arbitration between the Defendant, Excelsior and LMH entered an Interim Arbitration Award (the "IAA") in favor of Excelsior and LMH.  Notably, however, nothing in the IAA showed that either Excelsior or LMH suffered any actual harm at all on account of their claims of liability.

11.    On June 15, 2015, Excelsior and LMH filed a motion (the "Motion to Confirm") in the Eighth Judicial District Court, Clark County, Nevada (the "Nevada State Court"), thereby commencing Case No. A-15-719901-C (the "State Court Action"), which sought to confirm the IAA and have formal judgment entered against the Defendant.  Defendant opposed the Motion to Confirm and also sought to vacate or modify the IAA.  Prior to the Nevada State Court ruling on the foregoing, the Defendant filed this Chapter 11 Case, thereby staying that proceeding.

3

**B.**    **Post-Petition.**

  **1.**  **Preliminary Events in the Chapter 11 Case.**

  12.  On the Petition Date, the Court Clerk issued a *Notice of Chapter 11 Bankruptcy Case, et al.* [ECF No. 6], which provided that the Debtor's 341 meeting of creditors was scheduled for October 1, 2015, and thus that the deadline to file a dischargeability complaint was November 30, 2015, and the deadline to file proofs of claim for non-governmental units was December 30, 2015.

  13.  On October 28, 2015, the Plaintiffs filed their *Motion to Modify the Automatic Stay to Allow a Pre-Petition Arbitration to Proceed to Judgment* (the "Stay Relief Motion") [ECF No. 60], which the Court denied by order entered on December 18, 2015 (the "Denial of Stay Relief Order") [ECF No. 93].  Plaintiffs attached copies of the IAA and the Employment Agreement to their Stay Relief Motion.  [ECF No. 60-5, Ex. 1; ECF No. 60-7, Ex. 3].

  14.  On December 29, 2015, Excelsior filed a *Proof of Claim* (the "Proof of Claim") in the stated amount of "in excess of $1,552,614.29."  [Claim No. 8].  LMH did not file its own separate proof of claim, but is listed as "another name the creditor used with the debtor" in Excelsior's Proof of Claim.  Excelsior also attached the IAA as an exhibit to its Proof of Claim.

  **2.**  **This Adversary Proceeding.**

  15.  On November 30, 2015, the Plaintiffs filed their original complaint against the Defendant (the "Original Complaint") [Adv. ECF No. 1], which asserted claims pursuant to sections 523(a)(2)(A) and (a)(4) of the Bankruptcy Code only.

  16.  On February 10, 2016, which was almost two and a half months after the Plaintiffs filed their Original Complaint, but neglected to serve it, they filed their FAC, thereby asserting claims pursuant to not only sections 523(a)(2) and (a)(4), but also for the first time and indeed after the Dischargeability Deadline pursuant to section 523(a)(6).  Plaintiffs' FAC contained many vague and conclusory allegations with little attention to the actual statutory elements required for nondischargeability.  The FAC also relied in large part on the IAA even though that unconfirmed decision has no preclusive effect as a matter of law.[4]

---

[4] In their SAC, and unlike their FAC, Plaintiffs do not appear to rely upon the IAA as providing any preclusive

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

17.    On March 14, 2016, Defendant filed a motion to dismiss the FAC or, in the alternative, for partial summary judgment [Adv. ECF No. 19], which was thereafter fully briefing by the parties.  [Adv. ECF Nos. 23, 24, 37-39, 43-45 and 48].  On June 10, 2016, the Court issued its oral ruling [Adv. ECF No. 55] (transcript), therein substantially granting the Defendant's motion to dismiss, but with leave to replead.  A written order incorporating the Court's ruling was entered on June 16, 2016 (the "Dismissal Order") [Adv. ECF No. 52].

### 3.    The MJRPA Settlement Agreement.

18.    On June 15, 2016, the Debtor filed a *Motion to Approve Settlement Pursuant to Bankruptcy Rule 9019* (the "MJRPA Settlement Motion") [ECF No. 148], which sought court approval of a proposed Settlement Agreement and Mutual Release (the "MJRPA Settlement Agreement") by and between Excelsior, LMH and Gibson (collectively, the "LMH Parties") on the one hand, and MJRPA, the Defendant, and others on the other hand (collectively, the "RLG Parties").  The MJRPA Settlement Agreement principally involved the resolution of any and all alleged liability of MJRPA, including but not limited to arising out of the Fee Litigation in Nevada state court as against MJRPA.  Among other pertinent parts, Paragraph 3 of the MJRPA Settlement Agreement provided that, with the express exception of certain matters as to the Debtor and his personal liability referenced in Paragraph 4, the LMH Parties (as defined therein) were releasing MJRPA, among others, of any and all liability.

19.    On July 20, 2016, the Court granted the MJRPA Settlement Motion.  On July 22, 2016, the Court entered a written order granting the MJRPA Settlement Motion (the "MJRPA Settlement Order") [ECF No. 157], thereby finding in a fair and equitable compromise pursuant to Fed. R. Bankr. P. 9019.  The MJRPA Settlement Order is fully effective and enforceable. Moreover, the settlement funds required under that agreement have been paid and the MJRPA Settlement Agreement and the releases therein are fully effective and enforceable.

---

effect in this Adversary Proceeding, and instead relegate it to only a brief mention in Paragraph 66 as background. To the extent Plaintiffs continue to rely on the IAA in their SAC to suggest it has any form of preclusive or evidentiary effect in this Adversary Proceeding, however, the Defendant incorporates by reference the points and authorities on these issues from his previous filings as to the FAC, which clearly reject giving the IAA any effect whatsoever.  See Adv. ECF No. 19, ¶¶ 23-28; Adv. No. 44, ¶¶ 13-41.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

20. On August 2, 2016, the parties filed a *Joint Stipulation and Order for Dismissal With Prejudice* in the Fee Litigation, which the Nevada State Court has entered, thereby confirming the complete effectuation of the MJRPA Settlement Agreement.  See RJN, Ex. 4.

**4.    Summary of Specific Allegations in the SAC.**

21. On July 7, 2016, and with leave of this Court per the Dismissal Order, Plaintiffs filed their SAC.  Plaintiffs' SAC presents a long "laundry list" of allegations, many of which appear minor and/or inconsequential, and without specificity as to how those matters truly implicate the statutory elements for their 523 claims.  Specifically, the Plaintiffs' allegations in the SAC can be summarized as follows:

(a)    Defendant allegedly breached § 1.A of his Employment Agreement with Excelsior that he was to "taper down" his law practice by continuing to represent various third parties, SAC ¶¶ 12-13, 20-21, and notwithstanding § 6.C, which allowed him to "continue to render ongoing representation to a select portfolio of private clients;"

(b)    Defendant's alleged violations of a duty (apparently implied from the Employment Agreement or otherwise at law) that he would represent Plaintiffs "independently," although no damage therefrom is specified, SAC ¶ 15;

(c)    Defendant's alleged use of Excelsior-issued laptop computer and phone per the Employment Agreement for other unintended or outside uses, although no damage is specified as resulting therefrom, SAC ¶ 16;

(d)    Defendant's alleged nondisclosure of his discussions with TNA regarding (1) a potential payment to him as part of settlement negotiations he, on behalf of RLGPA, maintained on behalf of LMH, which payment never actually happened, and (2) TNA's potential retention of RLGPA, the Defendant's law firm, after the TNA-LMH settlement, which retention/conflict also did not actually happen, SAC ¶¶ 23-38, 70, 71;

(e)    Defendant's alleged failure to disclose his concurrent representation of Bang Bros., an alleged competitor to the Plaintiffs, although no damage is specified as resulting therefrom, SAC ¶¶ 39-42, 69;

(f)    Defendant's alleged failure to disclose his concurrent representation of

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

6

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

XVVideos and XNXX, which entities LMH allegedly contemplated suing at one point for copyright infringement, but which LMH never actually did in fact sue, and indeed has never sued to this day even though it could have, and thus no damages specified; SAC ¶¶ 43-48, 69;

(g)     In the Oron Litigation and settlement, ¶¶ 49-63:   (1) the Defendant presented a proposed settlement agreement to LMH that included a payment of the RLGPA's legal fees and costs, which provision LMH's principal objected to, SAC ¶¶ 53-57, 60; (2) the Defendant's insistence on behalf of RLGPA that it be entitled to its fees and costs as part of the settlement and setting off from the settlement funds the amount he believed his law firm was rightfully owed prior to the remaining balance being interpled after the dispute arose; (3) RLGPA's lack of an actual written legal representation agreement with LMH, and its seeking fees and costs based on the law firm's standard hourly rates from the Court, when in fact such rates would not ever have been paid by LMH internally, SAC ¶¶ 67-68, 71;

(h)     after the Defendant and the Plaintiffs disengaged from each other, the Defendant allegedly cutoff Plaintiffs' access to its legal records and agreements with outside counsel, SAC ¶¶ 64;

(i)     after the Defendant and the Plaintiffs disengaged from each other, Defendant's alleged pressuring of a paralegal to leave the Plaintiffs and work for his law firm; SAC ¶ 65;

(j)     after the Defendant and the Plaintiffs disengaged from each other, the Defendant allegedly spoliating Plaintiffs' legal records, SAC ¶ 65;

(k)     after the Defendant and the Plaintiffs disengaged from each other, the Defendant contacted outside counsel regarding his no longer being associated with the them, although alleging no actual harm resulting therefrom other than those outside counsel requiring an additional retainer as a result, SAC ¶¶ 65(a) and (b);

(l)     after the Defendant and the Plaintiffs disengaged from each other, the Defendant showed up unannounced at the Plaintiffs' headquarters, although no harm is

allegedly to have occurred as a result, SAC ¶ 65(c); and

(m)    after the Defendant and the Plaintiffs disengaged from each other, the Defendant allegedly attempted to coerce a former employee to provide unfavorable testimony against the Plaintiffs in the Arbitration, but without specifying who that employee was or any damage resulting therefrom, because that employee informed the Plaintiffs of the matter, SAC ¶ 65(e);

22.    The foregoing summary of specific allegations in the SAC is critical to keep in mind because the Plaintiffs fail to sufficiently tie these allegations to the specific statutory elements for their 523(a) claims.

## IV.  LEGAL ARGUMENT

### A.    Standard of Decision on a Motion to Dismiss.

23.    Dismissal under Fed. R. Civ. P. 12(b)(6) is proper when the complaint either:  (1) lacks a cognizable legal theory, or (2) fails to allege sufficient facts to support a cognizable legal theory.  Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. at 678; see also Hebbe v. Pliler, 627 F.3d 338, 341-342 (9th Cir. 2010).  Plausibility requires pleading facts, as opposed to conclusory allegations or the "formulaic recitation of the elements of a cause of action," Twombly, 550 U.S. at 555, and must rise above the mere conceivability or possibility of unlawful conduct that entitles the pleader to relief.  Iqbal, 556 U.S. at 678-79.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

24.    The Court should not accept as true a legal conclusion couched as a factual allegation.  Id.  "[C]onclusory allegations of law and unwarranted inferences are insufficient to

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

defeat a motion to dismiss for failure to state a claim." <u>Caviness v. Horizon Cmty. Learning Ctr., Inc.</u>, 590 F.3d 806, 812 (9th Cir. 2010).  Formulaic recitations are insufficient to meet the plausibility standard.  <u>Iqbal</u>, 556 U.S. at 678.  And, as set forth below, claims sounding in fraud must meet the heightened pleading standard of Fed. R. Civ. P. 9(b).

25.     "Material which is properly submitted as part of the complaint may be considered on a motion to dismiss." <u>Hal Roach Studios, Inc. v. Richard Feiner & Co.</u>, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citation omitted).  Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss." <u>Branch v. Tunnell</u>, 14 F.3d 449, 454 (9th Cir. 1994).  Finally, a court may take judicial notice of matters within the context of a motion to dismiss.  <u>See</u> <u>Mack v. S. Bay Beer Distribs., Inc.</u>, 798 F.2d 1279, 1282 (9th Cir. 1986).  The Court may reject allegations contradicted by material it judicially notices.  <u>See</u> <u>Schwartz v. United States</u>, 234 F.3d 428, 435 (9th Cir. 2000).

26.     The grounds for exceptions to a debtor's discharge pursuant to section 523(a) of the Bankruptcy Code are "to be construed liberally in favor of debtors and strictly against the objector." <u>Devers v. Bank of Sheridan, Mont. (In re Devers)</u>, 759 F.2d 751, 754 (9th Cir. 1985).

**B.     <u>Allegations of Defendant's Outside Work Through MJRPA While He Was Under Excelsior's Employ Per the Employment Agreement.</u>**

27.     As indicated in the SAC, Excelsior never found fault in Defendant's performance during the course of his employment; he successfully resolved complaints, litigated vigorously, and advised them on a variety of legal matters, as well as provided business advice and public relations advice for years.  Despite now complaining that Defendant exercised his ability under Section 6.C of the Employment Agreement to continue represent a "limited number of outside clients" through his law firm, MJRPA, there is not a single allegation that Defendant did not perform his assigned tasks for Excelsior or that he worked for those outside clients during his work hours with Excelsior.

28.     In fact, in the entirety of the SAC, Plaintiffs only identify three (3) outside clients with whom they take issue:  Bang Bros., XVideos/XNXX, and Wayne Hoehn (the Righthaven

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

litigation). Given that the foregoing is all that the Plaintiffs can muster in support, they cannot argue the number of clients is not limited, they take pains to calculate the amount of time Defendant spent not to even suggest he did so at the expense of time he should have devoted to Plaintiffs, but rather that his exercise of his Section 6.C rights conflicted with his obligation to "wind down" his prior representations under Section 1.A. See SAC ¶¶ 20-22. Yet, by Plaintiffs' own admission, the "tapered down" outside practice billed only an average of 564 hours per year, a fraction of the number of hours Defendant would reasonably have been expected to bill as an associate. See SAC ¶ 21.

### 1.    Bang Bros.

29.    Plaintiffs assert that Defendant represented Bang Bros. subsequent to being hired by Excelsior. See SAC ¶ 39. Specifically, they claim that Defendant *suggested* that Bang Bros. lend Liberty funds to purchase Cody Media, but also admit that they chose not to consummate the transaction.[5] See SAC ¶¶ 40-42. There is no suggestion that Plaintiffs did not know Bang Bros. business may have competed with theirs; they only speculate that Defendant knew that borrowing such funds from them could somehow, in some unknown way, harm Plaintiffs.

30.    Second, there is no mention of any allegations as to Bang Bros. (or Megaupload) in Plaintiffs' Original Complaint, and thus these allegations appearing in the SAC do not related back, are untimely, barred and therefore must be disregarded. An amendment to a pleading relates back to the date of the original pleading when it asserts a claim or defense that "arose out of the same conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed. R. Civ. P. 15(c)(1)(B); Fed. R. Bankr. P. 7015. This link will be found when the claim to be added is likely to be proven by the same kind of evidence that would be used to support the original pleading. See Dominguez v. Miller (In re Dominguez), 51 F.3d 1502, 1510 (9th Cir. 1995); Magno v. Rigsby (In re Magno), 216 B.R. 34, 39 (B.A.P. 9th Cir. 1997). As applied in the case at hand, there is simply no mention of such events in the Original Complaint, and thus they do not and cannot relate back, and thus are untimely and barred.

---

[5] Moreover, Defendant's introduction of LMH to Bang Bros. enabled it to seek out trade secret information from its chief competitor.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

## 2.    XVideos and XNXX.

31.    Plaintiffs similarly assert that Defendant represented XVideos and XNXX after being hired by Excelsior.  See SAC ¶ 43.  Although Plaintiffs claim they wanted to bring suit against one or both of them in 2011, Defendant gave specific reasons why such suits would not likely be successful and disclosed that he, himself, could not file such suits.  See SAC ¶¶ 44 & 46.  Plaintiffs offer no facts or law to suggest Defendant was in error as to the likely outcome, neither have they pleaded any facts to suggest they were prevented from filing such suit once Defendant's employment with Excelsior was terminated, and MJRPA's representation of LMH was terminated.  Any claims they would have had against these entities would have been subject to a three year statute of limitations, which had not run at termination and had not run once they retained new counsel.  See 17 U.S.C. § 507(b).  As such, the Plaintiffs allege no cognizable legal claim as to XVideos and XNXX.

## 3.    Wayne Hoehn (The Righthaven Litigation).

32.    Plaintiffs also incorrectly assert that Defendant was awarded $55,000 in a suit against Righthaven filed on behalf of a third-party *pro bono* client.[6]  See SAC ¶¶ 93-97.  First, MJRPA represented the defendant, Wayne Hoehn ("Hoehn") involving litigation against a well-known "copyright troll."[7]  See Righthaven, LLC v. Hoehn, 792 F. Supp. 2d 1138 (D. Nev. 2011).  Second, the $55,000 was not awarded for representing Hoehn, but was a distribution for administrative expenses on behalf of the Court-appointed receiver.  See Righthaven, LLC v. Hoehn, 2:11-cv-00050 (D. Nev. Mar. 15, 2013) (ECF Nos. 120, report of receiver; ECF No. 130 (order adopting report of receiver); RJN Exs. 5 & 6.  Third, it was not the Defendant individually, but his law firm, MJRPA, that received the distribution.  See id.  And fourth, the distribution to MJRPA occurred nine (9) months after Defendant's employment with Excelsior

---

[6] Although Defendant disputes the *pro bono* nature of the representation, though it served the public interest, it will be presumed true for purposes of this motion.

[7] See https://en.wikipedia.org/wiki/Righthaven.  Defendant and his law firm received much positive press for his work on the Righthaven litigation.  See Wired Magazine, "Copyright Troll's Assets Targeted for Seizure" (Sept. 19, 2011), available at https://www.wired.com/2011/09/righthaven-assets-targeted/.  It is inexplicable how the tremendous goodwill generated by the Righthaven litigation could have resulted in anything other than positive press by association for Randazza's employer, Excelsior, and his law firm's other clients, like LMH, as well.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170    Fax: (702) 382-1169

terminated. <u>See id.</u> As such, the Plaintiffs have also failed to state a cognizable claim, including in particular how they were damaged, as a result of the representation of Hoehn in the Righthaven litigation.

**C.    <u>TNAFlix.</u>**

33.    During the course of his employment, Defendant found himself facing repeat opposing counsel,[8] notably Valentin Gurvits, Esq. of the Boston Law Group ("<u>Gurvits</u>"), when he dealt with TNAFlix and FF Magnat Ltd., d/b/a Oron.com ("<u>Oron</u>") on LMH's behalf. <u>See, e.g.</u>, SAC at ¶¶ 23 (Gurvits representing TNAFlix); <u>see also</u> <u>Datatech Enters. LLC v. FF Magnat Ltd.</u>, No. 12-4500, 2013 WL 1007360 (N.D. Cal. Mar. 13, 2013) (Gurvits representing Oron).[9]

34.    Although Gurvits raised the potential of retaining Defendant's law firm, MJRPA, on behalf of TNAFlix during settlement negotiations, Defendant determined that such an arrangement might run afoul of the Rules of Professional Conduct. <u>See</u> SAC ¶ 27. As a result, Defendant, acting through his law firm, MJRPA, caused there to be a satisfactory settlement between LMH and TNAFlix without ethical quandary. <u>See</u> SAC ¶¶ 27-28. Notably, LMH never alleges that TNAFlix ever made any settlement offer that would have resulted in greater financial compensation to LMH, with or without any compensation to MJRPA/Defendant.[10]

35.    In furtherance of his professional relationship with Gurvits, MJRPA, did not suddenly and suspiciously drop his theoretical offer to represent TNAFlix. <u>See</u> SAC ¶¶ 28-38. Instead, after approximately one month of keeping up such a posture, Defendant terminated the

---

[8] Plaintiffs also make mention of negotiations with Megaupload, but fail to provide any factual basis for any alleged claim for nondischargeability. <u>See</u> SAC ¶ 70.

[9] Although Mr. Gurvits' name does not appear in the reported orders of the Oron Litigation, the Datatech case demonstrates Mr. Gurvits was its counsel, though Plaintiffs did not plead it. Similarly, Mr. Gurvits' name does not appear in <u>Liberty Media Holdings, LLC v. Youngtek Solutions, Ltd. d/b/a TNAFlix.com</u>, No. 3:10-cv-01972, 2010 U.S. Dist. LEXIS 136525 (S.D. Cal. Dec. 27, 2010), despite all parties recognizing Mr. Gurvits' participation therein. The Court may take judicial notice of the docket and filings in these cases.

[10] Neither does Liberty claim that the amount was insufficient or that it was somehow less than any amount hoped for. Nor could it make such allegation in good faith and amendment to allege such would be futile. LMH's CEO, Mr. Gibson insisted upon settling the case for $40,000 -- a sum that Defendant protested was far too little. However, Mr. Gibson was adamant that he wanted a quick settlement for that amount to cover a six months' rent at a residence used for filming pornographic films. RLGPA ultimately settled the matter for $50,000 and within LMH's insisted time frame.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

12

discussion of such potential representation.  See SAC ¶ 38.

**D.    FF Magnat/Oron.**

36.    On June 20, 2012, LMH, with MJRPA acting as its counsel, filed suit against Oron.  See Liberty Media Holdings v. FF Magnat Ltd. d/b/a Oron.com, No. 2:12-cv-01057 (D. Nev. Jun. 20, 2012) (Complaint) [hereinafter, the "Oron Litigation"].

37.    Plaintiffs assert that Defendant received $5,000 from a James Grady to help fund the suit against Oron.  See SAC ¶ 90.  Plaintiffs do not specify in what capacity Defendant received the funds; however, as Excelsior was not a party to the suit and Defendant's law firm, MJRPA, represented LMH, it must be that Plaintiffs are alleging MJRPA, a non-party to this litigation, received the funds.  Notably, to the extent Plaintiffs had any legitimate claim against MJRPA regarding the $5,000, any such claim has been settled and released pursuant to the MJRPA Settlement Agreement as approved by the Settlement Order (as those terms are hereinafter defined).  See ECF Nos. 148 and 157.

38.    On or about July 1, 2012, LMH and Oron reached a settlement in the Oron Litigation.  See SAC ¶ 50.  MJRPA successfully obtained an order enforcing the settlement agreement on behalf of LMH against Oron.  See SAC ¶ 52; Liberty Media Holdings, LLC v. FF Magnat Ltd. d/b/a Oron.com, No. 2:12-cv-01057, 2012 WL 3255044 (D. Nev. Aug. 7, 2012).

39.    Plaintiffs (really LMH) allege that, thereafter, Defendant (really MJRPA) negotiated a new *potential* settlement agreement with Oron, who was represented by Gurvits, containing certain terms with which they disagreed.  See SAC ¶¶ 53 & 55.  Notably, in fulfillment of his ethical obligations, Defendant--again, in his capacity as an attorney with MJRPA--presented the terms of the proposed new agreement and with a full opportunity for LMH's principal, Gibson, to review the terms.  See id. ¶ 53.

40.    Defendant did not believe any new settlement was in order because the law firm had filed a motion to enforce the original one, but Gibson insisted that LMH get its settlement faster than the courts would normally allow.[11]  As a result, Defendant was forced to negotiate

---

[11] Defendant denies that he lacked Mr. Gibson's consent or authority to negotiate for fees.  The resolution of the issue is immaterial, however, as Liberty has not asserted and cannot assert that it would have been better off if the negotiations had not occurred or even that a better negotiated outcome was possible.  First, there was no guarantee

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

once more the prospect of potential representation of Gurvits' client.

41.    Plaintiffs (really LMH) did not enter into that new settlement and do not allege they did or even desired to.  Pending at that time was a motion for attorneys' fees and costs filed by MJRPA seeking an additional $214,964.00; the Court ultimately awarded $131,797.50.[12]  See Liberty Media Holdings, LLC v. FF Magnat Ltd., d/b/a Oron.com, No. 2:12-cv-01057, 2012 WL 3834744 (D. Nev. Sept. 4, 2012).  Plaintiffs do not allege that it was feasible for Defendant (really MJRPA) to have achieved a resolution of the dispute with Oron superior to the $764,964.00 that had obtained for LMH.

42.    Pursuant to Nev. R. Prof. Conduct 1.4(a)(1), Defendant presented the August 13, 2012 offer of $600,000 to Gibson as the head of LMH.  See SAC ¶ 53.  Gibson, on behalf of LMH, claims that he "discovered" the $75,000 disbursement, written in plain English, in the draft settlement agreement the Defendant, acting through MJRPA, sent to him for his review.  Id. at ¶ 55.  Although Plaintiffs misleadingly describe this proposed disbursement "bribe" in order to color these proceedings, in reality the draft proposed agreement stated clearly that certain funds were to be released to Oron's attorney, Gurvits.  See RJN Ex. 7.[13]  Since Defendant (really MJRPA) already had a vested fee of $137,500 due, Defendant/MJRPA would have gained nothing by the $75,000 earmark, if it were ultimately paid to him for additional legal work, except arguably a higher certainty of payment.[14]  The Court ultimately issued a fee

---

at that time that the $550,000 could be seized.  Second, LMH did not execute the agreement and ultimately was issued a larger award by the Court.  Similarly, the claim that Defendant did not inform Mr. Gibson that the offer was only valid for 24 hours is disputed and immaterial.  LMH rejected the offer.  Defendant also denies any "nervous manner" in presenting the proposed settlement.

[12] Defendant denies having made any material misrepresentations to the Court as alleged.  Plaintiffs' entire theory is a semantic argument resting upon Defendant's use of the word "incurred" in the fee petition in the Oron Litigation.  See FF Magnat Ltd. v. Liberty Media Holdings, No. 12-16976 (9th Cir. Feb. 13, 2013) (Liberty's motion for miscellaneous relief).  Nonetheless, LMH agreed that the amount of fees awarded was appropriate and that Defendant's firm's labors were worth the fees claimed and could be properly awarded.  This issue is ultimately immaterial to the question of dischargeability.

[13] There is no dispute as to the authenticity of this exhibit and it may be considered under the "incorporation by reference" doctrine as having been referred to in the SAC.

[14] In truth, Defendant had more to lose if Gibson executed the proposed settlement agreement than to gain.  Although Oron's cooperation could ensure payment, it was a total sum significantly less than what was sought from the Court (and less than what was ultimately awarded), thus reducing RLGPA's total potential fee, while at the same time precluding him from earning fees representing others against Oron if he was actually retained by them.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

award of $131,797.50, for a total of $681,797.50 ordered by the Court based upon MJRPA's efforts.  See Liberty Media Holdings, LLC v. FF Magnat Ltd., d/b/a Oron.com, No. 2:12-cv-01057, 2012 WL 3834744, at *17 (D. Nev. Sept. 4, 2012).

43.    Defendant agrees that there was animosity and he contemplated quitting.  As Excelsior recognizes, however, Defendant determined to continue and even advanced $25,000 *of his own funds* to LMH's representation in Hong Kong, efforts that indisputably proved successful.[15]  Specifically, at the end of August 2012, MJRPA, as counsel for LMH, with the assistance of Hong Kong counsel, seized the settlement funds from Oron through court order. See SAC ¶ 59.  For dishonest, dramatic effect, Plaintiffs attempt to make it seem that Defendant withheld this information from Gibson at LMH for an inordinate amount of time, however, in actuality, Defendant communicated this within hours of receipt of the funds.[16]

44.    The following day, Defendant, acting on behalf of MJRPA, proposed a distribution of the proceeds, however, LMH disagreed with the proposed distribution, even though it resulted in a larger net benefit to LMH.[17]  Id. ¶¶ 60 & 61.  MJRPA was prepared to deliver the funds to LMH that it was "entitled to receive;" however, LMH demanded the entire *res* and without payment to the firm for its fees and costs, and with the express position that the Defendant himself would be cheated of his vested bonus.  Compare Nev. R. Prof. Conduct 1.15(d).    Thereupon, Defendant recommended that his firm, MJRPA, withdraw from representing LMH in further matters due to the dispute between the two.  See SAC ¶ 62.  In

---

[15] Contrary to common sense, Plaintiffs claim that the Defendant, as the alleged perpetrator of a fraud, gave Liberty, the alleged victim, $25,000 of his own funds and got nothing illicit in return.  Simply put, that is not how a fraud works.  Neither do people with the intent to resign lend $25,000, being 1/8 of their annual salary, to their employer's affiliate.  The facts lay Plaintiffs' dishonesty bare.

[16] Defendant was required to "promptly notify" Liberty upon receipt of the funds, see Nev. R. Prof. Conduct 1.15(d).  "Promptly" certainly contemplates a delay of a few hours, as happened in the case at hand, especially on a day that Defendant was out of the office to attend his sister's wedding.

[17] MJRPA was only required to deliver to LMH those funds to which LMH was actual entitled to receive.  See, e.g., Nev. R. Prof. Conduct 1.5(c) and (d).  Specifically, NRPC 1.15(d) provides that "[u]pon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property." (emphasis added).

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

15

response, and rather than simply rely on the words Defendant actually used, <u>Excelsior</u> stated it would "construe his email" as a resignation from his General Counsel position with <u>Excelsior</u> and alleges that Defendant did, in fact, resign. <u>Id.</u> ¶ 63. Defendant disputed this contention then and continues to dispute it now.

45. Excelsior then refused to pay Defendant a reimbursement of funds he had advanced ($25,000.00) and his remaining pay.

46. Although Plaintiffs claim that Defendant "spoliate[d] evidence" by erasing files from his laptop (SAC ¶ 65(d)), they actually admit that all of their records were actually preserved on a separate server. <u>See</u> SAC ¶ 65. Plaintiffs do not identify a single missing document that was not preserved in cloud storage. Simply put, Plaintiffs cannot in one breath claim Defendant preserved the records on a secure server and in another claim a failure to preserve. The so-called "spoliation" alleged by the Plaintiffs was, instead, required by the Employment Agreement's "wall of separation" provision in the Employment Agreement and indeed mandated by the applicable rules of professional conduct. Neither do Plaintiffs claim this was unusual, nor can they; it was a pattern and practice for the files to be stored on the server and for computers' files to be wiped regularly, including upon an employee's separation.

47. Moreover, although Defendant was employed by <u>Excelsior</u>, his representation of LMH was through his law firm, MJRPA. In anticipation of termination, Defendant ensured that all firm files, including those of unrelated clients, could not be accessed through his Excelsior computer, which would have to be returned. Thus, Defendant wiped the computer to fulfill his obligations under law of preserving client confidentiality. <u>See</u> Nev. R. Prof. Conduct 1.6.[18] Further, MJRPA was otherwise entitled to withhold property under a retaining lien. <u>See</u> <u>Leventhal v. Black & LoBello</u>, 305 P.3d 907, 909 (Nev. 2013). To the extent the Plaintiffs argue that an attorney or law firm lacks the right to setoff, there is simply no support for such a

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

---

[18] NRPC 1.6 governs the confidentiality of information. NRPC 1.6(a) provides that "[a] lawyer shall not reveal information relating to representation of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation, or the disclosure is permitted by [certain exceptions not applicable herein]." NRPC 1.6(c) provides that "[a] lawyer shall make reasonable efforts to prevent the inadvertent or unauthorized disclosure of, or unauthorized access to, information relating to the representation of a client."

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

proposition as that right is longstanding in commercial law.  See, e.g., Studley v. Boylston Nat'l Bank, 229 U.S. 523, 528 (1913); Bohack Corp. v. Borden, Inc. (In re Bohack Corp.), 599 F.2d 1160, 1164 (2d Cir. 1979) (noting the origins of setoff in Roman law, its incorporation into English bankruptcy law in 1705, and in the American Bankruptcy Act of 1800).

48.    Finally, any dispute relating to these files has been resolved by way of the MJRPA Settlement Agreement (as hereinafter defined) as recently approved by this Court.  See ECF No. 148 & 157.  Any claim that could be maintained by the Plaintiffs in this regard could only ever have been properly maintained as against that entity as the real party in interest, and any such claim against that entity has been fully resolved and released.

49.    Although Plaintiffs claim that LMH was forced to wire $33,000 to its Hong Kong attorneys because Defendant correctly informed them that MJRPA was no longer LMH's attorney (SAC ¶ 65(a)), Plaintiffs do not allege and indeed cannot allege any damages because the Hong Kong firm had earned or would have earned that amount in fees for services performed and expenses incurred, would return any unearned amounts, and such counsel's retainer requirements were within its sole and exclusive discretion.  That Defendant notified Hong Kong and Philadelphia co-counsel that MJRPA was withdrawing from representing LMH is good, professional and indeed required practice for a variety of reasons, including but not limited to ensuring that such co-counsel would not subsequently divulge confidential matter to him in the absence of notice after the separation.  That Hong Kong co-counsel independently adjusted its retainer requirement or that Philadelphia co-counsel independently opted to withdraw as a result does not imply that Defendant/MJRPA caused or intended such results.  Plaintiffs' conclusory allegations are mere conjecture and insufficient to survive a motion to dismiss for failure to state a claim upon which relief can be granted.

50.    Similarly, even if Defendant, acting on behalf of MJRPA, contacted Philadelphia-based co-counsel more than a week before his actual separation, see SAC ¶ 65(b), it is undisputed that such counsel nonetheless continued to represent LMH through the conclusion of litigation.  See Liberty Media Holdings, LLC v. John Does 1-265, No. 2:12-cv-04703 (E.D. Pa. Sept. 5, 2012) (the same attorney who filed the Complaint filed the Notice of

Voluntary Dismissal); RJN Ex. 8.  Plaintiffs fail to allege and indeed cannot allege any harm or damages whatsoever as a result of this alleged contact.  As such, Plaintiffs fail to state a claim upon which relief can be granted law as to this allegation, and it must be dismissed as a matter of law.

51.    Further, Defendant was permitted by an agent of Excelsior (its human resources director) to access his former office, and Plaintiffs identify no harm thereby; to the contrary, they admit that Defendant returned Excelsior's property.  See SAC ¶¶ 65(c) & (d).  As such, Plaintiffs also fail to state a claim upon which relief can be granted as to these specific allegations, and thus they must be dismissed as a matter of law.

52.    Finally, Defendant also denies attempting to coerce a witness or suborn perjury as alleged, but without any pleading of what Defendant said, Plaintiffs' *ipse dixit* conclusions are not sufficient to state a claim upon which relief can be granted.  See SAC ¶ 65(e).  Moreover, talking to a former employee is not inappropriate; to the contrary, lawyers should interview prospective witnesses.  See, e.g., Slack v. McDaniel, 141 Fed. Appx. 572, 573 (9th Cir. 2005) (collecting cases).

E.    **The First Claim for Relief:  Section 523(a)(2)(A).**

    1.    **Elements for a 523(a)(2)(A) Claim and the SAC's Specific Allegations.**

53.    Section 523(a)(2)(A) of the Bankruptcy Code provides an exception from discharge for any debt "for money, property, services, or an extension, renewal or refinancing of credit, to the extent obtained by--(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."  11 U.S.C. § 523(a)(2)(A).

54.    To succeed on their 523(a)(2)(A) claims, the Plaintiffs must establish the following five (5) elements:  (1) misrepresentation(s), fraudulent omission(s), or deceptive conduct; (2) knowledge of the falsity or deceptiveness of such representation(s), omission(s), or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor on the subject representation(s), omission(s), or conduct; and (5) damage to the creditor proximately caused by its reliance on such representation(s), omission(s), or conduct.  See Ghomeshi v. Sabban (In re

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

Sabban), 600 F.3d 1219, 1222 (9th Cir. 2010); Oney v. Weinberg (In re Weinberg), 410 B.R. 19, 35 (B.A.P. 9th Cir. 2009).

55.    Plaintiffs make the following specific allegations in the 523(a)(2)(A) claim in their SAC:

(a)    Defendant induced the Plaintiffs (really only Excelsior as it was the only party to that agreement, not Liberty) to enter into the Employment Agreement based upon representations that he would abide by its terms, and that he would abide his fiduciary and/or contractual duties, when he never had the intent to honor such terms, SAC ¶¶ 73-75;

(b)    Given his position with and/or relationship to the Plaintiffs, the Defendant owed them duties to disclose and to keep them fully apprised of his activities, SAC ¶ 76;

(c)    Defendant engaged in deceptive conduct by failing to disclose the "true nature of his dealing with infringers of the Plaintiffs' intellectual property," SAC, ¶ 77 (which is apparently a reference to TNA and Bang Bros.);

(d)    Defendant engaged in deceptive conduct by "his engagement in negotiations with adverse parties who had litigation pending against Plaintiff, regarding those parties retaining his services in order to conflict him out of any future cases against them," SAC ¶ 77 (which is apparently a reference to the Oron Litigation and settlement);

(e)    Defendant engaged in deceptive conduct by "his negotiations to broker a deal for the sale of an infringing defendant (TNAFlix) while actively litigating against them on [Plaintiffs'] behalf," SAC ¶ 77;

(f)    Defendant engaged in deceptive conduct by "his deliberate failure to wind down his law practice and, in fact, his expansion of that practice, including his undertaking representation of parties whose interests were adverse to Plaintiffs' interests," SAC ¶ 77.

56.    Plaintiffs then go on to allege that had they been aware of the Defendant's true intentions, Excelsior would not have paid him all of the compensation and benefits it did

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

19

pursuant to the Employment Agreement, and it would have terminated him instead.  SAC ¶¶ 79, 83, 84.

> **2.** **Liberty Has No Fraud Claim Based on Nondisclosure or Fraudulent Concealment Arising Out or Related to the Defendant's Employment Agreement with Excelsior.**

57.    Plaintiffs allege that Defendant made misrepresentations, fraudulent omissions, or deceptive conduct arising out his Employment Agreement with Excelsior.  Liberty, by contrast, was never a party to, a signatory of the Employment Agreement, or an intended beneficiary thereof, and thus it lacks any fraud claim based upon that Agreement.

58.    A third party beneficiary may enforce a contract made for its benefit.  See Hess v. Ford Motor Co., 41 P.3d 46, 51 (Cal. 2002) (citing Cal. Civ. Code, § 1559).  However, "[a] putative third party's rights under a contract are predicated upon the contracting parties' intent to benefit" it.  Id. (quoting Garcia v. Truck Ins. Exchange, 682 P.2d 1100 (Cal. 1984)).  Ascertaining this intent is a question of ordinary contract interpretation.  Id.  Thus, "[t]he circumstance that a literal contract interpretation would result in a benefit to the third party is not enough to entitle that party to demand enforcement."  Id. (quoting Neverkovec v. Fredericks, 74 Cal. App. 4th 337, 348, 87 Cal. Rptr. 2d 856 (Cal. Ct. App. 1999)).

59.    Under long standing contract law, a "contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful."  Id. (citing Cal. Civ. Code, § 1636).  Although "the intention of the parties is to be ascertained from the writing alone, if possible," id. (quoting Cal. Civ. Code § 1639)), "[a] contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates."  Id. (quoting Cal. Civ. Code § 1647).  "However broad may be the terms of a contract, it extends only to those things which it appears that the parties intended to contract."  Id. (quoting Cal. Civ. Code § 1648).

60.    As applied to the case at hand, Liberty was never a party to, a signatory of, or an intended third party beneficiary under the Employment Agreement; rather, only Excelsior was ever a party to and signatory of that agreement, and thus Defendant did not and could not have undertaken any duty.

20

61.     Under California law, an omission is fraudulent only if there is a duty on the party making the omission to disclose.  See Wong v. Lewis (In re Lewis), 551 B.R. 41, 48-49 (Bankr. E.D. Cal. 2016) (citing SCC Acquisitions Inc. v. Cent. Pac. Bank, 207 Cal. App. 4th 859, 864, 143 Cal. Rptr. 3d 711 (Cal. Ct. App. 2012) (quoting Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC, 162 Cal. App. 4th 858, 868, 76 Cal. Rptr. 3d 325 (Cal. Ct. App. 2008)).

62.     "A duty to speak may arise in four ways: it may be directly imposed by statute or other prescriptive law; it may be voluntarily assumed by contractual undertaking; it may arise as an incident of a relationship between the defendant and the plaintiff; and it may arise as a result of other conduct by the defendant that makes it wrongful for him to remain silent."  Blickman Turkus, LP, 162 Cal. App. 4th at 867, 76 Cal. Rptr. 3d 325.  In the case at hand, the Defendant had no duty to disclose to Excelsior any matters that MJRPA may perform for Liberty.

63.     It is undisputed that at the time the Defendant and Excelsior entered into the Employment Agreement, neither the Defendant, nor his law firm, MJRPA, had any ongoing attorney-client or other relationship with Liberty.  Indeed, MJRPA's representation of LMH did not occur until after the Defendant entered into his Employment Agreement with Excelsior.

64.     Second, Liberty could not never have justifiably relied on any representations of the Defendant in his entering into the Employment Agreement with Excelsior, as a non-party, non-signatory and a party that is not an intended third party beneficiary could never rely on such representations as a matter of law.  As a result, any 523(a)(2)(A) claim of Liberty must be dismissed as a matter of law for failure to state a claim upon which relief can be granted.

**3.     A Mere Breach of Contract is Not Sufficient to Sustain a 523(a)(2)(A) Claim.**

65.     Fraud sufficient to support a claim pursuant to section 523(a)(2)(A) of the Bankruptcy Code cannot be premised upon a mere breach of contract.  See McCrary v. Barrack (In re Barrack), 217 B.R. 598, 606 (B.A.P. 9th Cir. 1998) (citing Rubin v. West (In re Rubin), 875 F.2d 755, 759 (9th Cir. 1989)); Soares v. Lorono, No. 12-05979, 2015 WL 151705, at *17 (N.D. Cal. Jan. 12, 2015); Yaikian v. Yaikian (In re Yaikian), 508 B.R. 175, 185 (Bankr. S.D. Cal. 2014) (holding that "[t]he intention not to perform must be present when the agreement is

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

formed; otherwise only a breach of contract is proven.").

66.     By contrast, the mere failure to fulfill a promise to pay a debt is dischargeable unless the debtor made the promise while not intending to pay and/or knowing that payment would be impossible.  See Citibank (S.D.), N.A. v. Eashai (In re Eashai), 87 F.3d 1082, 1088 (9th Cir. 1996); Strominger v. Giquinto (In re Giquinto), 388 B.R. 152, 166 (Bankr. E.D. Pa. 2008) ("failure to perform as promised, standing alone, gives rise to a case for breach of contract, not actionable fraud."); 4 Collier on Bankruptcy § 523.08[1][d] n.17 (Alan N. Resnick & Henry J. Somers eds., 16th ed.) ("The failure to perform a mere promise is not sufficient to make a debt nondischargeable, even if there is no excuse for the subsequent breach").[19]

67.     Although Plaintiffs now plead in their SAC the alleged failure to "taper down" Defendant's law practice among the parade of horribles, such remains among alleged errors and Plaintiffs occurring after contract formation.  Compare FAC ¶ 52, with SAC at ¶ 77.  Notably, they continue to admit that any alleged misrepresentation occurred when Excelsior entered into the Employment Agreement with Defendant in June 2009, despite their complaints being for actions taken (or not taken) long afterward in alleged breach of the contract (or some other duty).  See SAC at ¶ 82.

68.     Additionally, as with the FAC, the SAC fails to establish justifiable reliance by Plaintiffs on any actions or statements made by Defendant.  Plaintiffs (really LMH) did not rely on Defendant's representations in the Oron Litigation or the Cody Media potential purchase, let alone justifiably.  And the alleged misconduct they complain of regarding TNAFlix was specifically extricated before the settlement was executed.

69.     Neither do Plaintiffs establish damages.  Although they (really Excelsior) complain that they paid Defendant's wages and benefits for his ongoing employment per the Employment Agreement, they otherwise would not have received the benefit of his work product or, alternately, would have had to similarly pay another attorney and fail to allege

---

[19] This is also the case under applicable state law governing fraud claims as well.  See, e.g., Riverisland Cold Storage, Inc. v. Fresno-Madera Prod. Credit Ass'n, 291 P.3d 316 (Cal. 2013); Cundiff v. Dollar Loan Ctr. LLC, 726 F. Supp. 2d 1232, 1238 (D. Nev. 2010); see also Rest. 2d Torts § 530, and comm. b and d.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170    Fax: (702) 382-1169

anything to the contrary.  Thus, Plaintiffs' SAC does not cure many of the deficiencies of the previously dismissed FAC.

4.       **Plaintiffs Still Fail to Plead Fraud with the Requisite Particularity for Their 523(a)(2)(A) Claim.**

70.       Further, Plaintiffs' allegations in their 523(a)(2)(A) claim in the SAC still lack the requisite particularity required by the heightened federal pleading requirements for allegations of fraud.  Fed. R. Civ. P. 9(b) requires that a party alleging fraud to state "with particularity the circumstances constituting fraud."  See Vess v. Ciba-Geigy Corp., 317 F.3d 1097, 1103 (9th Cir. 2003).  To meet this standard, the complaint must identify "the who, what, when, where, and how of the misconduct charged," as well as "what is false or misleading about the [purportedly fraudulent] statement, and why it is false."  Cafasso ex rel. United States v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1055 (9th Cir. 2011) (quotation omitted).  If particular averments of fraud are insufficiently pled under Fed. R. Civ. P. 9(b), a court should "disregard" those averments, or "strip" them from the claim, and then the court should then examine the allegations that remain to determine whether they state a claim.  Vess, 317 F.3d at 1105; Sanford v. MemberWorks, Inc., 625 F.3d 550, 558 (9th Cir. 2010).

71.       The heightened "particularity" requirements for allegations of fraud in Fed. R. Civ. P. 9(b) apply to claims under 523(a) to the extent the underlying wrong asserted therein is premised on fraud.  See Malekan v. Etesamnia (In re Etesmnia), No. 15-1005, 2015 WL 6736159 (B.A.P. 9th Cir. Feb. 3, 2015); LBS Fin. Credit Union v. Craciun (In re Craciun), No. 13-1552, 2014 WL 2211742, at *4 (B.A.P. 9th Cir. May 28, 2014);

72.       In particular, with respect to the Plaintiffs' allegations that the Defendant failed to disclose "the true nature of his dealings with infringers of Plaintiffs [sic] intellectual property," the Plaintiffs still fail to plead, among other matters, which specific infringers are at issue, what specifically did the Defendant allegedly misrepresent to the Plaintiffs, when exactly the Defendant made such alleged misrepresentations, and whether and how exactly the Plaintiffs were damaged as a result.

73.       To the extent such vague allegations relate to TNAFlix, XVideos/XNXX, and/or

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

23

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

Oron, such claims are insufficient.    The alleged failure to disclose negotiations with TNAFlix and Oron regarding possible future retention of Defendant as their attorney is not material where there was no duty to disclose, neither is there any factual basis to suggest an intent to deceive. To the contrary, Defendant disclosed the prospect of payment to MJRPA.  See SAC ¶ 55. Neither were Plaintiffs damaged:  Defendant achieved success on behalf of LMH through settlement and Court orders without any allegation that a superior result was possible.  Further, such negotiations were not a terminable offense, merely cause to more scrupulously monitor Defendant.  See SAC ¶ 57.

74.    Similarly, Plaintiffs both plead that Defendant actually disclosed he provided counsel to XVideos/XNXX and thus could not litigate against them and do not take issue with his advice that there were no viable claims against them, despite years of hindsight.  Thus, there was no misrepresentation and no harm.

75.    Likewise, with respect to the Plaintiffs' allegations that the Defendant "engage[d] in negotiations with adverse parties who had litigation pending against Plaintiffs regarding those parties retaining his services in order to conflict him out of any future cases against them," the Plaintiffs fail to plead which specific adverse parties are at issue, what specifically the Defendant allegedly misrepresented to the Plaintiffs, when exactly the Defendant made his alleged misrepresentations with respect to these adverse parties, and whether and how exactly the Plaintiffs were damaged as a result.  Plaintiffs claim Defendant engaged in negotiations with adverse parties, such as Oron, TNAFlix, and Megaupload, for him to be retained by them to preclude future adverse actions by him.  See SAC ¶ 70.  Notably, Plaintiffs do not allege that he consummated any of those negotiations or that they in fact suffered harm thereby.

76.    To the extent the Plaintiffs are claiming any other "engagement in negotiations" other than those named entities, which are the only ones specifically discussed in the SAC, Plaintiffs fail to plead the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false, and thus any such claim must be dismissed as a matter of law.

77.    With respect to the Plaintiffs' allegations that the Defendant "negotiat[ed] to

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

broker a deal for the sale of a defendant (TNAFlix) while actively litigating against them on [Plaintiffs'] behalf," Plaintiffs do not allege that they suffered any harm, they do not allege, for example, that they purchased TNAFlix, or would have, but for Defendant, or that they could have settled for a greater amount.

78.     Finally, with respect to Defendant's alleged "deliberate failure to wind down his law practice and, in fact, his expansion of that practice," Plaintiffs fail to plead what is false or misleading, why it is false, and that any harm was suffered.  Plaintiffs' own representations demonstrate he represented a handful of clients, as permitted by Section 6.C of Defendant's Employment Agreement with Excelsior, there is no claim of a decline in quality or quantity of work on Excelsior or LMH's behalf, and there is no demonstrable harm occasioned by such representation.

79.     As a result, the Plaintiffs' first claim for relief pursuant to section 523(a)(a)(A) of the Bankruptcy Code should be dismissed for failure to state a claim and for a failure plead the fraud allegations underpinning that claim with the requisite particularity.  Such failure is especially inexcusable in light of the substantial pre-petition Arbitration proceedings and the discovery and initial proceedings already occurring therein, which should have more than adequately equipped the Plaintiffs to adequately plead any claims, as well as the several previous amendments to the Complaint herein.  No further leave to amend is warranted.

**F.      The Second Claim for Relief:  Section 523(a)(4).**

**1.      General Elements of a 523(a)(4) Claim.**

80.     Section 523(a)(4) of the Bankruptcy Code provides an exception from discharge for any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."  11 U.S.C. § 523(a)(4).  A section 523(a)(4) claim may be based on:  (1) fraud or defalcation while acting in a fiduciary capacity; (2) embezzlement; or (3) larceny.  Plaintiffs appear to rely on the first basis (*e.g.*, fraud or defalcation while acting in a fiduciary capacity), and thus they must establish that "'1) an express trust existed, 2) the debt was caused by fraud or defalcation, and 3) the debtor acted as a fiduciary to the creditor at the time the debt was created.'"  <u>Otto v. Niles (In re Niles)</u>, 106 F.3d 1456, 1459 (9th Cir. 1997); <u>Stephens v. Bigelow</u>

(In re Bigelow), 271 B.R. 178, 186 (B.A.P. 9th Cir. 2001).

81.    Federal bankruptcy law, rather than state law, determines whether there is a fiduciary relationship under section 523(a)(4). See Bigelow, 271 B.R. at 187 (citing Blyler v. Hemmeter (In re Hemmeter), 242 F.3d 1186, 1189 (9th Cir. 2001)).  "An express or technical trust is generally created by an agreement between two parties to impose a trust relationship. 'The general characteristics of an express trust are: (1) sufficient words to create a trust; (2) a definite subject; and (3) a certain and ascertained object or res.'" Id. (quoting Lovell v. Stanifer (In re Stanifer), 236 B.R. 709, 714 (B.A.P. 9th Cir. 1999)).

82.    "Fiduciary relationships imposed by statute may cause the debtor to be considered a fiduciary under § 523(a)(4)." Id. (citing Hemmeter, 242 F.3d at 1190).  "For a statute to create a technical trust, "[t]he statute must define the trust res, spell out the trustee's fiduciary duties[,] and impose a trust prior to and without reference to the wrong which created the debt." Id. (quoting Woodworking Enters., Inc. v. Baird (In re Baird), 114 B.R. 198, 202 (B.A.P. 9th Cir. 1990)).  Therefore, state law is relevant to the inquiry. See id. (citing Runnion v. Pedrazzini (In re Pedrazzini), 644 F.2d 756, 758 (9th Cir. 1981), and Stanifer, 236 B.R. at 715).  The parties agreed that California law governed their relationship. See Employment Agreement § 9(E).  Accordingly, the Court must determine whether California statutory or case law with regard to the attorney-client relationship creates an express or technical trust within the meaning of section 523(a)(4).

83.    Under California law, a fiduciary relationship arises as a matter of law between an attorney and his or her client, however, this is a fiduciary status that does not fit the narrow federal definition in section 523(a)(4). See Bigelow, 271 B.R. at 187 (finding as such with respect to an attorney-client relationship under Washington law) (citing Lewis, 97 F.3d at 1185); Cal-Micro, Inc. v. Cantrell (In re Cantrell), 329 F.3d 1119, 1125 (9th Cir. 2003) (holding that the broad definition of fiduciary under nonbankruptcy law--a relationship involving trust, confidence, and good faith--is inapplicable in the dischargeability context); see also Lewis v. Short (In re Short), 818 F.2d 693, 695 (9th Cir. 1987); Ragsdale v. Haller, 780 F.2d 794, 796 (9th Cir. 1986); Honkanen v. Hopper (In re Honkanen), 446 B.R. 373, 379 (B.A.P. 9th Cir.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

26

2011) (noting that a real estate agent did not hold any property in trust and "[i]n the absence of a trust res, a fundamental requirement to form a trust, there was no express, technical or statutory trust formed" and thus no fiduciary capacity pursuant to section 523(a)(4)).

> **2.  A Mere Attorney-Client Relationship is Not Sufficient, Rather an Actual Trustee Relationship and a Specific Trust *Res* of Trust Funds is Required.**

84.    "In the Ninth Circuit, a general fiduciary attorney-client relationship may rise to the level of a fiduciary relationship for purposes of § 523(a)(4) <u>if there are client trust funds involved</u>."  <u>Bigelow</u>, 271 B.R. at 187 (emphasis added); <u>Banks v. Gill Distrib. Centers, Inc. (In re Banks)</u>, 263 F.3d 862, 871 (9th Cir. 2001) (holding that when the debtor-lawyer placed funds into his client trust account, he became his client's fiduciary for purposes of section 523(a)(4)).

85.    In addition to the BAP's seminal decision in <u>Bigelow</u>, which expressly required that a trustee relationship with trust funds being misappropriated from a trust account are required in order to sustain a 523(a)(4) claim, numerous other lower courts within the Ninth Circuit have also held that the mere existence of an attorney-client relationship involving a debtor-attorney is insufficient without actual trust funds being involved and entrusted to the attorney as a trustee.  See <u>Herrle v. Kamb (In re Kamb)</u>, No. 11-13856, 2011 WL 5240369, at *7 (Bankr. W.D. Wash. 2011); <u>In re Denton</u>, No. 06-02073, 2009 WL 399437, at *14 (Bankr. D. Ariz. Feb. 17, 2009); <u>In re Snyder</u>, No. 05-14194, 2008 WL 2699934, at *2 n.2 (Bankr. N.D. Cal. July 10, 2008); <u>Vahle v. Gasster (In re Gasster)</u>, 301 B.R. 568, 569-70 (Bankr. N.D. Cal. 2003); <u>Braud v. Stokes (In re Stokes)</u>, 142 B.R. 908, 910 n.3 (Bankr. N.D. Cal. 1992) (holding that the professional rule requiring a client trust fund is the sole exception to the general statement that no California statute elevates the attorney-client relationship to trustee-beneficiary status for purposes of 523(a)(4)).

86.    In sum, courts within the Ninth Circuit have repeatedly rejected a 523(a)(4) claim simply because the debtor was an attorney and the debt arose out of the debtor-attorney's attorney-client relationship with a client; rather, the courts have steadfastly required that a specific trust *res* and trustee relationship must also exist--which means an actual deposit of trust funds and a misappropriation thereof--for a debt to be held nondischargeable pursuant to section

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

27

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

523(a)(4).  In the case at hand, however, no specific trustee relationship or trust *res* in the form of specific money was ever deposited into the Defendant's trust account and then mishandled. As such, Plaintiffs' 523(a)(4) claim must be dismissed as a matter of law.

87.    The only specific allegation in the Plaintiffs' SAC that could even possibly give rise to a section 523(a)(4) claim is "failing to account for or pay over to Plaintiffs funds belonging to them and converting Plaintiffs['] funds and property."  SAC ¶ 87.  As such, as an initial matter, the Defendant requests that all other claims asserted within the Plaintiffs' 523(a)(4) claim be dismissed because they lack the required trustee relationship and defined trust *res* in the form of funds held in trust by the Defendant in his capacity as an attorney to the Plaintiffs.  For the avoidance of doubt, such clearly unsustainable claims would include the following claims in SAC ¶ 87:  "[W]illfully violating the Employment Agreement, engaging in willful conflicts of interest at the expense of Plaintiffs, benefitting himself at the expense of Plaintiffs, committing acts of legal malpractice, making false representations, spoliation and destruction of evidence . . . ."

88.    Furthermore, as the Court observed in ruling on the Original Dismissal Motion, defalcation "[i]ncludes a culpable state of mind requirement."  [Adv. ECF No. 55, p. 32 (citing Bullock v. BankChampaign, N.A., 133 S. Ct. 1754, 1757 (2013))].  Unlike the other alleged "willful" acts set forth in FAC ¶ 87, the claim of "failing to account for or pay over" does not include any allegation of willfulness and should, therefore, be dismissed.

89.    Plaintiffs claim defalcation relating to the following funds: $550,000 from Oron, $5,000 from James Grady, and $55,000 in the Hoehn (Righthaven) litigation.  See SAC ¶¶ 88-98.  As set forth above, however, none of these funds were received by Defendant himself; rather, they were received by non-party MJRPA.  As with the FAC, the SAC does not allege how and when Defendant himself misappropriated funds.

90.    Moreover, as this Court is aware, all claims relating to the Oron Litigation, which includes the $550,000 from Oron and $5,000 from Grady, as against the recipient of those funds, the non-party law firm, have been resolved by way of the MJRPA Settlement Agreement as approved by the Settlement Order.  See ECF 148 & 150.  In this regard, the Court may take

judicial notice of the fact that Plaintiffs previously alleged that the law firm (MJRPA), not Defendant himself, failed to turn over funds in that litigation.

91.    Additionally, the Court may take judicial notice of the filings in the Fee Litigation, which clearly indicate that the dispute over those funds was resolved before Defendant filed his bankruptcy petition through the filing of a stipulation and order in the Fee Litigation. Specifically, on April 8, 2015, the parties to the Fee Litigation agreed that the funds would be interpled into that Court pending a determination in the Arbitration, those funds were in fact interpled in April 2015, and shortly after the IAA was issued by the arbitrator on June 3, 2015, the parties agreed to a further stipulation as approved by the state court on June 18, 2015, thereby releasing the appropriate funds to the Plaintiffs. See Adv. ECF No. 43, Exs. 1-3. As such, and as a matter of public record and subject to judicial notice, the Defendant never misappropriated any trust funds, and never failed to account for any monies MJRPA held in trust from the Oron Litigation; rather, as a matter of public record, subject to his retaining lien rights available as a matter of law, and as expressly authorized and approved by the state court as a matter of public record as subject to judicial notice, such funds were never misappropriated, were always fully protected, and were always fully accounted for without question.

92.    And, despite Plaintiffs' *ipse dixit*, the receipt of the $55,000 in the Righthaven Suit did not arise from the representation of a *pro bono* client under the Employment Agreement, but rather, as set forth above, for services rendered by the law firm to a court-appointed receiver, and no trust was ever created, let alone for the benefit of Plaintiffs.

93.    In sum, there is no plausible basis for any claim of fraud or defalcation by Defendant while acting in a fiduciary capacity, and thus Plaintiffs' 523(a)(4) claims must be dismissed for failure to state a claim upon which relief can be granted.

## G.    The Third Claim for Relief:  Section 523(a)(6).

### 1.    General Elements and the Allegations in Plaintiffs' SAC.

94.    Section 523(a)(6) of the Bankruptcy Code provides an exception from discharge for any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). Only intentional torts, not negligent or reckless acts, can

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170    Fax: (702) 382-1169

constitute willful and malicious injury, and a "knowing breach of contract" is insufficient to satisfy 523(a)(6).  Kawaauhau v. Geiger, 523 U.S. 57, 60-62 (1998); Lockerby v. Sierra, 535 F.3d 1038, 1041 (9th Cir. 2008).  It must be both willful and malicious.  See Ormbsby v. First Am. Title Co. (In re Ormsby), 591 F.3d 1199, 1206 (9th Cir. 2010).  There must be subjective motive to inflict injury or the debtor must be substantially certain injury will result.  See Carillo v. Su (In re Su), 290 F.3d 1140, 1142 (9th Cir. 2002).  "[C]onduct is not tortious under § 523(a)(6) simply because injury is intended or 'substantially likely to occur," but rather is only tortious if it constitutes a tort under state law."  Lockerby, 535 F.3d at 1042 (citing Petralia v. Jercich (In re Jercich), 238 F.3d 1202, 1206 (9th Cir. 2001), and Del Bino v. Bailey (In re Bailey), 197 F.3d 997, 1000 (9th Cir. 1999)).  In other words, "state-specific tortious conduct is required under § 523(a)(6) of the Bankruptcy Code, and thus the Court must determine whether the debtor engaged in conduct that would constitute a tort under applicable state law.  Id. at 1043 (citing Jercich, 238 F.3d at 1026, and Bailey, 197 F.3d at 1000).

95.     Plaintiffs do not actually plead any specific conduct in their SAC in their 523(a)(6) claim; rather, they plead it as "wrongful conduct described herein" and incorporate by reference the entirety of the preceding pleading.  See SAC ¶¶ 101-104.  Neither willful injuries nor malicious injuries were caused or specifically alleged.  Instead, Plaintiffs simply attempt to recite the statutory elements of 523(a)(6) claim without application of law to fact.  See SAC ¶¶ 102-104.  Other than Plaintiffs' mere vague recitation, however, the SAC does not specify an actual and specific tort that would except any debt owing from Defendant from discharge pursuant to section 523(a)(6) of the Bankruptcy Code.

**2.      The Allegations Pled in the SAC Are Not Tortious.**

**a.      Breaches of the Employment Agreement are Not a Tort.**

96.     Breaching a contract like the Employment Agreement, even when done intentionally and without "just cause" or excuse, is not tortious and is insufficient to establish a 523(a)(6) claim.  As a result, Plaintiffs' claims for "intentional" breach of the Employment Agreement or any other agreement are insufficient to sustain their 523(a)(6) claim as a matter of law, and could only excepted from discharge when it is accompanied by separate malicious and

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

willful tortious conduct.  See Lockerby, 535 F.3d at 1041; Jercich, 238 F.3d at 1205; Snoke v. Riso (In re Riso), 978 F.2d 1151, 1154 (9th Cir. 1992); Zeeb v. Farah (In re Zeeb), No. 15-1012, 2015 WL 6720934, at *4 (B.A.P. 9th Cir. Nov. 3, 2015).

97.    As stated by the Ninth Circuit, "[s]omething more than a knowing breach of contract is required before conduct comes within the ambit of § 523(a)(6)," and that "something more" is "tortious conduct."  Lockerby, 535 F.3d at 1041 (citing Jercich, 238 F.3d at 1209).  In fact, the Ninth Circuit cautioned that "[e]xpanding the scope of § 523(a)(6) to include contracts that are intentionally breached whenever it is substantially certain that injury will occur would severely circumscribe the ability of debtors to 'start afresh.'"  Id. at 1042.

98.    For example, in Jercich, the court held that the breach of contract violated California law because, in California, tort recovery was permitted when a defendant's conduct violates a fundamental public policy of the state.  238 F.3d at 1206.  At issue was a state court judgment awarding punitive damages for the nonpayment of employee wages despite an ability to pay.  Id. at 1204.  The state trial court had concluded that this intentional nonpayment was "willful and deliberate" and "constituted substantial oppression" under California law.  Id.  The state trial court also emphasized California courts' strong policy regarding employers' obligation to pay their employees.  Id. at 1206-07.  The Jercich court based its finding of "tortious conduct" on the state court findings of oppression and the public policy violation, finding that the conduct was tortious under state law.  Id.  The Jercich court also emphasized that "[w]ages are not ordinary debts."  Id. at 1207.

99.    In Lockerby, by contrast, the Ninth Circuit held that a lawyer's intentional breach of a settlement agreement involving alleged legal malpractice claims by not paying the client was an "ordinary debt," and not the wage claims like at issue in Jercich, and thus not excepted from discharge pursuant to section 523(a)(6) of the Bankruptcy Code.  535 F.3d at 1043.  In so doing, the Court held that the lack of "just cause" in breaching a contract does not render the matter tortious because parties often breach contracts when it is to their financial benefit, and even though that may not be "just," it also does not render such a breach tortious and thus excepted from discharge pursuant to section 523(a)(6).  Id.  In other words, even when a breach of contract

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

was intentional, and done without just cause, that, without tortious conduct, is not enough to have the debt excepted from discharge pursuant to section 523(a)(6) of the Bankruptcy Code.

100.    In the case at hand, breaching a contract, even when done intentionally and without "just cause" or excuse, is not tortious and is thus insufficient to establish a 523(a)(6) claim.  Moreover, as hereinafter explained, the "tortious conduct" required under 523(a)(6) does not exist even when a lawyer breaches his fiduciary duty, whether a duty of care or of loyalty to a client, and/or commits legal malpractice because those are all matters of negligence, and thus not the tortious conduct required.  As a result, Plaintiffs' claims for intentional breach of contract are simply insufficient to sustain their 523(a)(6) claim as a matter of law.

101.    Finally, as previously noted, only Excelsior, as the party to the Employment Agreement, could ever assert a claim arising out of or related to that agreement in any event, not Liberty.  Liberty is not a party to, signatory of, or expressly stated to be an intended third-party beneficiary, and thus has no right or claim arising out of or related to the Defendant's Employment Agreement with Excelsior as a matter of law.  As such, to the extent Liberty asserts a 523(a)(6) claim arising out of or relating to the Employment Agreement, such a claim must be dismissed as a matter of law.

### b.    Breaches of Fiduciary Duty/Legal Malpractice are Not Torts.

102.    Second, the "tortious conduct" required under section 523(a)(6) does not exist even when a lawyer breaches his fiduciary duty--whether a duty of care or of loyalty to a client, and/or commits legal malpractice--because those are all either matters of negligence or breaches of a contractual legal representation agreement, and thus not the tortious conduct required to have a debt arising therefrom excepted from discharge.  See Stalk v. Mushkin, 199 P.3d 838, 844 (Nev. 2009) (holding that the plaintiffs' "breach of fiduciary duty claim [was], in essence, a legal malpractice claim, since it [was] grounded on allegations that [the defendant] breached certain duties, namely, confidentiality and loyalty, that would not exist but for the attorney-client relationship"); Warmbrodt v. Blanchard, 692 P.2d 1282, 1285 (Nev. 1984) ("It is the 'contractual relationship creating a duty of due care upon an attorney [which is] the primary essential to a recovery for legal malpractice.'" (alteration in original).

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

103.    "Legal malpractice involves the same elements as an ordinary negligence claim, but it is premised on an attorney-client relationship and involves a breach by the attorney of a duty owed to the client."  Dushane v. Acosta, No. 68359, 2015 WL 9480185, at *2 (Nev. Ct. App. Dec. 16, 2015) (citing Sanchez ex rel. Sanchez v. Wal-Mart Stores, Inc., 221 P.3d 1276, 1280 (Nev. 2009), and Semenza v. Nev. Med. Liab. Ins. Co., 765 P.2d 184, 185 (1988) (providing that "legal malpractice is premised upon an attorney-client relationship, a duty owed to the client by the attorney, breach of that duty, and the breach as proximate cause of the client's damages").  It is not a matter of intentional conduct (much less willful and malicious conduct), but rather a breach of a duty of care in that the attorneys' conduct falls below a requisite standard of care.  Simple negligence claims, however, are not the intentional tort required to hold a claim nondischargeable pursuant to section 523(a)(6) of the Bankruptcy Code as a "willful and malicious injury by the debtor."

104.    As a result, Plaintiffs' claims for breach of fiduciary duty against the Defendant, which are really just legal malpractice and thus negligence claims, are simply insufficient to sustain their 523(a)(6) claim as a matter of law.

### c.    Alleged Spoliation and Destruction of Evidence are Not Torts.

105.    SAC ¶ 65(d) alleges spoliation and/or destruction of evidence must be dismissed as a matter of law because courts have rejected any separate tort cause of action for even intentional spoliation or destruction of evidence.  See Warden v. Cross, 94 Fed. Appx. 474, 475 (9th Cir. 2004) (citing Cedars-Sinai Med. Ctr. v. Super. Ct., 954 P.2d 511 (Cal. 1998)); Temple Cmty. Hosp. v. Super. Ct., 976 P.2d 223, 230 (Cal. 1999); Peterson v. Miranda, 57 F. Supp. 3d 1271, 1278 (D. Nev. 2014) (citing Timber Tech Engineered Bldg. Prods. v. The Home Ins. Co., 55 P.3d 952, 954 (Nev. 2002)).  As a result, the spoliation and/or destruction of evidence cannot serve as the necessary underlying tort required to support Plaintiffs' claim pursuant to section 523(a)(6) of the Bankruptcy Code, and thus the claim must be dismissed to the extent premised on such a non-existent tort.

106.    Further, nothing in the Complaint or IAA describes with particularity that any property or evidence was spoliated or destroyed.  Even the Arbitrator recognized that Plaintiffs

33

could not identify any missing files.  See IAA at p. 22.  Instead, Defendant's actions were consistent with Nev. R. Prof. Conduct 1.6(c) to secure LMH's confidential information. Although records were alleged to have been deleted from specific computers, Plaintiffs do not claim that full copies were not preserved or that they were denied access to those copies, or that they were otherwise harmed.

       **3.**       **Plaintiffs Still Fail to Satisfy Various Elements for Their 523(a)(6) Claim.**

       107.    As described above in detail, nothing Defendant did was wrongful; there is no evidence he acted willfully or intentionally to cause harm to Plaintiffs; there is no evidence he knew it might cause injury to Plaintiffs; and Plaintiffs suffered no actual injuries.  Specifically: a) merely negotiating with TNAFlix and Oron could not have and did not cause any harm to Plaintiffs; b) introducing Plaintiffs to Bang Bros., even if a competitor, could not be predicted to be necessarily harmful and no harm was caused; c) Defendant preserved copies of all of the files that were claimed spoliated and could not have intended harm thereby; d) Plaintiffs have not pled any viable causes of action against XVideos or XNXX or that Defendant had a subjective intent to harm Plaintiffs when he rendered his advice; e) there is no claim Defendant caused any witness to perjure himself; and f) none of the funds in question were converted or misappropriated.

       108.    In sum, Plaintiffs have failed to assert the requisite specific facts against Defendant that support that relief could be granted against the Defendant under section 523(a)(6) of the Bankruptcy Code.

**H.**      **Plaintiffs' Prayer for Only Their Pre-Petition Attorneys' Fees and Costs Still Must Be Dismissed Either in Whole or in Part.**

       109.    In their SAC, the Plaintiffs request an award of "attorneys fees incurred pre-petition" and costs of suit.  See SAC, p. 21, ¶¶ 3 and 4 (emphasis added).  Further, within each of its repled 523(a) claims in their SAC, the Plaintiffs request "attorneys' fees and costs incurred . . . in connection with the prosecution and defense of the pre-petition arbitration."  Id. ¶¶ 85(2), 100(2), & 106(2) (emphases added).  Plaintiffs' attorneys' fees request in their SAC is more limited than in their FAC, which improperly sought the recovery of fees and costs incurred post-

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

petition as well, which post-petition request the Court dismissed as part of its ruling on the Original Dismissal Motion.  See Dismissal Order, pp. 2-3.  As hereinafter explained, however, Plaintiffs' revised request in their SAC for only a recovery of all of their attorneys' fees and costs remains overbroad in several important respects, however, and thus still must be dismissed as a matter of law for the reasons as hereinafter detailed.

1.    **Liberty**.

110.    First, the Employment Agreement grants only <u>Excelsior</u>, as the party to that contract (and indeed the only signatory to the contract other than Randazza), with an ability to recover its fees and costs if it is ultimately the prevailing party, <u>not Liberty</u> or any other party who is not a party to or signatory to that contract.    See Employment Agreement § 8.B. Specifically, § 8 of the Employment Agreement is entitled "Dispute Resolution," and provides, in pertinent part as follows:

> <u>Excelsior and Randazza</u> hereby agree that any controversy, dispute or claim <u>arising out of this Agreement or relating to Randazza's employment with Excelsior</u> . . . shall first be settled through good faith negotiation and voluntary mediation.  If the dispute cannot be settled through negotiation or mediation, the parties agree to settle such dispute by binding arbitration . . . .

(emphases added).    In sum, the dispute resolution provision in the Employment Agreement expressly and repeatedly references potential disputes only as between <u>Excelsior</u> and Randazza (either based on the contract between the two or his employment with Excelsior), and does not reference disputes as to any other companies--including but not limited to <u>Liberty</u>.

111.    Further, § 8.B of the Employment Agreement provides as follows:

> *Fees and Costs of Arbitration*.  Excelsior agrees to pay all forum fees and all fees and expenses charged or incurred by the arbitrator. Each party shall bear their own attorneys' fees and costs; however, the Arbitrator is hereby authorized to direct the non-prevailing party to pay to the prevailing party their attorneys fees and costs, in the Arbitrator's sole discretion.

Employment Agreement § 8.B.

112.    As a general rule, each party to litigation must bear its own attorney's fees, unless otherwise provided by statute or contract.  Cal. Code Civ. Proc. § 1021 ("Except as attorney's

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

35

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties").[20]  Attorney fees are recoverable "only when the party entitled to costs has a legal basis, independent of the cost statutes and grounded in an agreement, statute, or other law, upon which to claim recovery of attorney fees." Santisas v. Goodin, 951 P.2d 399, 404 (Cal. 1998); see also Reynolds Metals Co. v. Alperson, 599 P.2d 83, 84 (Cal. 1979).

113.    Cal. Civ. Code § 1717(a) provides, in pertinent part, as follows:

> In any <u>action on a contract</u>, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, <u>shall be entitled to reasonable attorney's fees in addition to other costs</u>.

(emphasis added).  In short, section 1717 is limited to only an "action on a contract" containing an attorney's fees provision.  As a non-signatory, non-party to the Employment Agreement, Liberty could not bring an action on that contract against the Defendant.

114.    Second, the Employment Agreement does not expressly indicate that Liberty was an intended third-party beneficiary of the agreement.  Third, Liberty cannot argue that the contracting parties (Excelsior and Randazza) must have intended to benefit Liberty, as an unnamed party, because nothing in the agreement reflects that intent whatsoever.  In fact, the specific language used in the attorney's fee provision of the Employment Agreement reflects an intention to exclude anyone other than parties to the agreement from its scope.

115.    "[A] nonsignatory seeking relief as a third party beneficiary may recover fees under a fee provision only if it appears that the contracting parties intended to extend such a right to one in his position." Hyduke's Valley Motors v. Lobel Fin'l Corp., 189 Cal. App. 4th 430, 432, 436, 117 Cal. Rptr. 3d 19, 20, 23 (Cal. Ct. App. 2010) (quoting Blickman Turkus, LP, 162 Cal. App. 4th at 897, 76 Cal. Rptr. 3d 325).

---

[20] Section 9.E of the Employment Agreement provides that it "shall be governed by and construed in accordance with the laws of the State of California, without regard to conflicts of law."

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

116.    "A third party beneficiary may enforce a contract made <u>expressly</u> for his or her benefit.  It is also true that a party not named in the contract may qualify as a beneficiary under it <u>where the contracting parties must have intended to benefit the unnamed party and the agreement reflects that intent</u>.  The party claiming to be a third party beneficiary bears the burden of proving that the contracting parties actually promised the performance which the third party beneficiary seeks. This remains largely a question of interpreting the written contract."  <u>Whiteside v. Tenet Healthcare Corp.</u>, 101 Cal. App. 4th 693, 124 Cal. Rptr. 2d 580 (Cal. Ct. App. 2002) (quoting <u>Sessions Payroll Mgmt., Inc. v. Noble Constr. Co.</u>, 84 Cal. App. 4th 671, 680, 101 Cal. Rptr. 2d 127 (Cal. Ct. App. 2003) (emphases added).

117.    "'A third party should not be permitted to enforce covenants made not for his benefit, but rather for others.  He is not a contracting party; <u>his right to performance is predicated on the contracting parties' intent to benefit him</u>.  As to any provision made not for his benefit but for the benefit of the contracting parties or for other third parties, he becomes an intermeddler. Permitting a third party to enforce a covenant made solely to benefit others would lead to the anomaly of granting him a bonus after his receiving all intended benefit."  <u>Id.</u> (quoting <u>Sessions Payroll Mgmt., Inc.</u>, 84 Cal. App. 4th at 680, 101 Cal. Rptr. 2d at 127) (citations omitted and emphasis added); <u>see also</u> <u>Murphy v. Allstate Ins. Co.</u>, 553 P.2d 584, 588 (Cal. 1976).

118.    Language limiting the right to attorney fees to disputes "between the parties hereto" very clearly excludes non-signatories from its coverage.  <u>Blickman Turkus, LP</u>, 162 Cal. App. 4th at 896, 76 Cal. Rptr. 3d at 355 (attorney fee clause applying to litigation "between the parties hereto" plainly limits fees to litigation between signatories); <u>see also</u> <u>Sessions Payroll Mgmt., Inc.</u>, 84 Cal. App. 4th at 681, 101 Cal. Rptr. 2d at 680-81 (holding that use of the word "party" in an attorney's fee clause reflects an intent to exclude non-signatories).

119.    In the case at hand, Liberty can point to nothing indicating that the contracting parties (Randazza and Excelsior) intended to extend Liberty any benefit under the Employment Agreement, including but not limited to as to the attorney's fee provision.  Indeed, if anything, the attorney's fee provision in the agreement is expressly limited to the "parties" thereto.  As a result, any claim for attorneys' fees by Liberty must be dismissed as a matter of law for a failure

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

to state a claim upon which relief can be granted.

### 2. **Excelsior.**

120.   As to Excelsior, even though it is a party and signatory to the Employment Agreement (unlike Liberty), there are still some further limits on Excelsior's ability to recover for its pre-petition attorney's fees and costs, which limits are imposed by the specific wording of the Agreement itself.

121.   First, § 8.B of the Employment Agreement only expressly authorizes Excelsior to recovery its attorneys' fees and costs in the Arbitration and by award of the arbitrator.  Section 8 of the Employment Agreement cannot be extrapolated beyond its plain language to allow this Court to award attorneys' fees and costs allegedly incurred by Excelsior because this Court is obviously not the arbitrator and this Court is not making a decision in the Arbitration proceeding. Such a strict interpretation is in keeping with the general strict construction afforded to creditor's attorney fees provisions because they are in derogation of the traditional "American Rule" that each side should bear its own attorney's fees and costs.  See In re I-Mind Educ. Sys., Inc., 269 B.R. 47, 48 (Bankr. N.D. Cal. 2001) ("Provisions granting creditor's attorney's fees must be strictly construed to not contradict the traditional American Rule that parties bear their own fees and costs.") (citing In re Kudlacek, 109 B.R. 424, 427 (Bankr. D. Nev. 1989); In re Roberts, 20 B.R. 914, 920 (Bankr. E.D.N.Y. 1982)).  As such, pursuant to this argument, Excelsior's entire prayer for recovery of its pre-petition fees and costs must be dismissed or struck because the specific language of the parties' agreement, being strictly construed as it must, only allows the arbitrator to award them in an arbitration, and thus this Court and this Adversary Proceeding do not qualify under that wording as strictly construed.[21]  Indeed, this Court has already denied the Plaintiffs' Stay Relief Motion, which sought relief from the automatic stay in order to continue with the Arbitration, thereby precluding that proceeding from continuing and/or resulting in a

---

[21] Notably also, the specific wording of this provision would also not allow Excelsior to recover any alleged post-petition fees and costs on this specific basis as well, including but not limited to any such fees and costs allegedly incurred in the Debtor's Chapter 11 Case or this Adversary Proceeding.  Notwithstanding the foregoing, the Court has already disallowed such post-petition fees and costs based upon different points raised in the Defendant's Original Dismissal Motion.  Regardless, the specific wording of this provision provides another reason why the Court's previous decision to strike such post-petition fees was appropriate.

final or enforceable award.

122.    Moreover, such an interpretation makes sense because even though Excelsior and Randazza agreed to arbitrate their disputes per the Employment Agreement, they both could have ignored that provision such as by proceeding in state court litigation notwithstanding and, if neither side sought to compel the other to arbitrate, they would have waived their rights to compel arbitration, and also thereby waive their potential right to a recovery of attorney's fees and costs as a result should they be the prevailing party.  In other words, a contractual provision allowing for the recovery of attorney's fees and costs can only be enforceable and allow a prevailing party to so recover if the party seeking such a recovery followed the specific terms and conditions imposed by that contractual provision and, in the absence of complying with those requirements, the party is not permitted to a recovery pursuant to that provision.

123.    Second, and in the alternative, even if the Court determines that Section 8.B of the Employment Agreement authorizes it to award Excelsior its fees and costs incurred pre-petition (for example, should Excelsior prevail in this Adversary Proceeding), the terms of this provision only expressly allow Excelsior to recover any fees and costs incurred in the Arbitration proceeding itself, which would necessarily exclude an award of any attorney fees and costs allegedly incurred by Excelsior outside of that proceeding--including but not limited to any fees and costs allegedly incurred by Excelsior in seeking confirmation of the IAA in Nevada State Court.  As such, to the extent Excelsior prays for a recovery of its pre-petition attorneys' fees and costs allegedly incurred in Nevada State Court--which would have necessarily been incurred outside of the Arbitration proceeding itself--such a request must be struck or dismissed as a matter of law because it is contrary to the express scope of the provision in the Employment Agreement between the parties.

## I.    **Plaintiffs Should Not Be Granted Additional Leave to Amend.**

124.    Plaintiffs amended their claims once as of right and a second time with leave of this Court following the dismissal of their prior claims per the Dismissal Order.  As this Court previously observed in its oral ruling granting the Defendant's Original Dismiss Motion [Adv. ECF No. 55, p. 42], the Court has broad discretion to deny leave to amend where the plaintiff has

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

previously amended the complaint if there have been repeated failure to cure deficiencies by amendments previously allowed, if the amendment would be futile, result in undue delay, or undue prejudice to the opposing party.  See Foman v. Davis, 371 U.S. 178, 182 (1962); Cafasso v. Gen. Dynamics C4 Sys., 637 F.3d 1047, 1059 (9th Cir. 2011); see also Zullo v. Lombardo (In re Lombardo), 755 F.3d 1, 3-4 (1st Cir. 2014) (affirming the bankruptcy court's denial of leave to amend a nondischargeability complaint).

125.    As noted above, amending the complaint once more would be futile; after three tries, Plaintiffs still cannot plead sufficiently and property plead grounds to have its alleged debts excepted from discharge.  No further amendment should be permitted because Plaintiffs have been provided every opportunity to do so, and this litigation is holding up the timely administration of the Defendant's Chapter 11 Case, and unduly holding hostage a determination of his discharge, which thus results in undue prejudice and delay, and interferes with the "fresh start" goals of bankruptcy relief of allowing a debtor to enjoy finality and certainty in relief from financial distress as quickly as possible.

## V.  CONCLUSION

WHEREFORE, Defendant respectfully requests that the Court order as follows:

1.    Dismiss with prejudice all three of the Plaintiffs' claims for relief for failure to state a claim or for a failure to meet the requisite statutory elements; or in the alternative as to the 523(a)(2)(A) claim, dismiss it for failure to plead fraud with the requisite particularity;

2.    Dismiss the Plaintiffs' claims for attorneys' fees and costs as set forth herein; and

3.    Grant the Defendant such other and further relief as is just and proper.

Dated:  August 8, 2016.

By:   /s/ Matthew C. Zirzow
LARSON & ZIRZOW, LLC
ZACHARIAH LARSON, ESQ.
MATTHEW C. ZIRZOW, ESQ.
850 E. Bonneville Ave.
Las Vegas, Nevada  89101

Attorneys for Defendant

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169