LARSON & ZIRZOW, LLC
ZACHARIAH LARSON, ESQ.
Nevada Bar No. 7787
E-mail: zlarson@lzlawnv.com
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
E-mail: mzirzow@lzlawnv.com
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Telephone: (702) 382-1170
Fascimile: (702) 382-1169

Attorneys for Defendant

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>MARC JOHN RANDAZZA,<br><br>Debtor. | Case No.: BK-S-15-14956-abl<br>Chapter 11 |
| EXCELSIOR MEDIA CORP., a Nevada corporation; and LIBERTY MEDIA HOLDINGS, LLC, a Nevada limited liability company,<br><br>Plaintiffs,<br>v.<br><br>MARC JOHN RANDAZZA, an individual,<br><br>Defendant. | Adv. No. 15-01193-abl<br><br>**REPLY TO OPPOSITION TO MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**<br><br>Date: September 20, 2016<br>Time: 1:30 p.m. |

Defendant, Marc John Randazza ("Mr. Randazza" or "Defendant"), by and through counsel, Larson & Zirzow, submits his reply to the *Opposition* (the "Opposition") [Adv. ECF No. 85] filed by Plaintiffs, Excelsior Media Corp., a Nevada corporation ("Excelsior"), and Liberty Media Holdings, LLC, a Nevada limited liability company ("Liberty" and collectively, the "Plaintiffs"), in response to the Defendant's *Motion to Dismiss Plaintiffs' Second Amended Complaint* (the "Motion") [Adv. ECF No. 75].

## I. INTRODUCTION

Plaintiffs present no argument in their Opposition that would preserve any part of their now third attempt to state claims by way of their SAC.[1]  Additionally, although Plaintiffs request leave to amend once more in their Opposition, none should be granted as they have repeatedly failed to cure deficiencies by amendments previously allowed, and because allowing further amendment would be futile, result in undue delay, and would result in undue prejudice and only serve to delay the Defendant, Mr. Randazza's, efforts to reorganize.  As a result, the Court should grant the Defendant's Motion and dismiss the SAC with prejudice.

## II. LEGAL ARGUMENT

**A.     Plaintiffs' Preliminary Arguments Should Not Be Considered.**

1.     By now this Court is well-versed in the history of the dispute between the parties. Though Plaintiffs seek to malign Mr. Randazza at every turn, where not even the arbitrator found proximate causation of harm in any of their claims,[2] their hypocritical calumnies offer them no refuge.[3]

2.     Liberty's claims are not saved where they offer no factual rebuttal to the judicial record that the legal work was performed by MJRPA (mistakenly referred to by them as "P.C."), leaving them without any direct claims against Mr. Randazza personally.  A settlement with the firm, per the MRJPA Settlement Agreement of the Fee Litigation--a case all about the firm's representation--was approved by this Court only about a month ago.  Though they claim the arrangement "makes no sense," Mr. Randazza previously explained it was required by Nev. R. Prof. Conduct 5.4 once he learned the true nature of the relationship between the entities <u>after</u> entering into the Employment Agreement with Excelsior:  that LMH[4] was allegedly a "sister"

---

[1] All capitalized terms shall have the same meanings as in the Defendant's Motion [Adv. ECF No. 75].

[2] This was one of the many reasons why Mr. Randazza opposed confirmation of the arbitration award and cross-moved to vacate the award in the State Court Action and prior to his bankruptcy filing.

[3] For example, on the very page Plaintiffs demand that the Court only look to their naked allegations in the SAC, without taking judicial notice of the record and other matters it may appropriately consider, they direct the Court to the Nevada State Bar complaint. <u>See</u> Opp'n, p. 2. An unproven bar complaint is immaterial to the issues at hand and should be stricken as irrelevant and new evidence not alleged in the complaint and thus not properly before the Court on a motion to dismiss.

[4] Liberty was not in existence at the time.

2

1    company -- a fact the Plaintiffs could not allege, and indeed do not alleged, that they revealed to him prior to his entering into his Employment Agreement with Excelsior. Although Plaintiffs claim that this Court must accept their allegations as true, it should not do so where flatly contradicted by the judicial record. See Schwartz v. United States, 234 F.3d 428, 435 (9th Cir. 2000).[5] Additionally, the Court must disregard the Plaintiffs' new theories or allegations raised for the first time in their Opposition that were not pled in their SAC. See, e.g., Wasco Prods., Inc. v. Southwall Techs., Inc., 435 F.3d 989, 991 (9th Cir. 2006); Greenidge v. Allstate Ins. Co., 446 F.3d 356, 361 (2d Cir. 2006); see also 5 Charles Alan Wright & Arthur R. Miller, Fed. Practice & Procedure § 1183, at 23 n.9 (3d ed. 2004) ("An opposition to a summary judgment motion is not the place for a plaintiff to raise new claims.").

3.    If Excelsior thought the arrangement nonsensical at the time, it could have terminated the in-house relationship and simply retained Mr. Randazza's law firm as outside counsel. Or the applicable entities could have refused to utilize the law firm and pay its deeply discounted bills. However, there is nothing nonsensical about it; it is sufficiently similar to, for example, an insurer's staff counsel operating as a firm to represent the insureds.

4.    Conclusory allegations deserve no credit in ruling on a motion to dismiss. Plaintiffs complain of the amount of time Mr. Randazza spent on other clients through his law firm and suggest it is evidence of his intent to not wind down a private practice. See Opp'n, p. 7. However, there is not a single allegation that he did not devote himself to his full-time employment nor any reasonably implication that spending his personal time on these matters suggests that he intended to not devote himself to his employment with Excelsior before the Employment Agreement was signed, which is fatal to this aspect of the SAC. They claim that he spent 47 hours per month on outside clients. This boils down to less than 1 hour and 45

---

[5] To the extent that false allegations must be treated as true, such as the notion that Mr. Randazza markets himself as a "specialist," any non-rebuttal should not be deemed an admission. For the sake of clarity, Mr. Randazza agrees he has significant experience in First Amendment and intellectual property law in the adult entertainment industry. Neither should the Court be swayed by argument couched as an ethical violation where no ethical duty existed or violation occurred, *e.g.*, the claim that Mr. Randazza did not advise Excelsior to obtain independent counsel in negotiating a fee agreement. Compare Fla. R. Prof. Conduct 4-1.5 & 1.7 (imposing no such duty in the negotiation of fee agreements). Moreover, the only question before the Court is whether claims can survive under the Bankruptcy Code and not any other regime.

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

minutes per day, if it took place every day. Given that the average person would have about 80 free hours per week, outside of sleeping and working 8 hours a day, is not even plausible to claim that such outside work meaningfully interfered in his commitment to Excelsior (and indeed outside work was expressly contemplated in the Employment Agreement in any event).

5. Plaintiffs have regularly scattered immaterial allegations throughout their pleadings that bear no connection to dischargeability issues at issue. Hiring Ms. Dillon,[6] negotiating with TNAFlix, returning to the premises to recover his property (and to return Excelsior's), and talking to witnesses and other attorneys are all discussed in the SAC, but do not relate to any of their 523 claims. In fact, Plaintiffs curiously devote several pages of their SAC and Opposition to the TNAFlix negotiations where it is undisputed that Mr. Randazza explicitly refrained from an agreement to represent TNAFlix as part of the settlement and never actually represented TNAFlix. Even if it must be believed at this stage that Mr. Randazza intended to represent them, rather than negotiating as a ploy to obtain settlement, such did not give rise to any debt to Plaintiffs, dischargeable or otherwise. Although Mr. Randazza does not suggest that such would even give rise to a viable breach of contract claim, the allegations sound in contract rather than section 523(a). Rather than move under Fed. R. Bankr. P. 7012(b)/Fed. R. Civ. P. 12(f) for such immaterial and impertinent matter to be stricken, and thus further fill the docket, this Court should simply ignore them.

6. Further, although Defendant agrees that Plaintiffs were permitted to flesh-out their SAC in order to attempt to meet the requirements of Fed. R. Civ. P. 9(b), which they failed to meet in their FAC, it did not permit them to raise new matters. Bang Bros. is but briefly mentioned in FAC ¶ 44(e), and there is no mention of Megaupload. The sole reference to Bang Bros. was that such representation was "actually and potentially adverse to E/L's interests," without any specific argument that it gave rise to claims under section 523(a). Such allegations in the SAC, in addition to failing on the merits and being immaterial since Plaintiffs admit no

---

[6] Notably, Plaintiffs do not, and indeed cannot allege in their SAC that Ms. Dillon did not leave Excelsior's employ voluntarily or that she otherwise desired to continue to work with Excelsior. The lack of such allegations in the SAC renders such a claim untenable as against the Defendant as a matter of law.

adverse transaction was consummated (Opp'n, p. 12, ¶ 44), do not relate back and are untimely.

7.      Plaintiffs continue to take inconsistent positions. They accuse Mr. Randazza of violating his duties to disclose claimed conflicts of interest, but then attack him for allegedly disclosing such conflict to the other party in interest (XVideos). See Opp'n, pp. 12-13. They also misrepresent the nature of a Digital Millenium Copyright Act ("DMCA")[7] takedown request--a DMCA notice is not adverse to the host of the allegedly infringing material (here, XVideos); rather, it is adverse to the party who posted it using that host. See Perfect 10, Inc. v. Cybernet Ventures, Inc., 213 F. Supp. 2d 1146, 1174 (C.D. Cal. 2002) ("The DMCA created a series of four 'safe harbors' to protect 'providers of online services' from liability, primarily monetary, based on claims of copyright infringement attributable to the actions of users.").

8.      To the contrary, the very purpose of a DMCA § 512 "takedown" notice is to provide a safe harbor to the host so they may remove the allegedly infringing material uploaded by a third party and act as a conduit to transmit the complaint to the true party in interest, the uploader. See Lenz v. Universal Music Corp., 815 F.3d 1145, 1151 (9th Cir. 2016). The takedown request is adverse to the third-party uploader, not the host. Moreover, at no time do Plaintiffs actually allege a specific transaction where they had a viable claim against XVideos & XNXX that Mr. Randazza failed to pursue;[8] thus, there is no debt, dischargeable or otherwise.

9.      With respect to the Oron settlement negotiations, Plaintiffs continue to misrepresent the record. There was no provision calling for a payment of $75,000 to Mr. Randazza; to the contrary, it was a release of frozen funds to Oron's counsel that was fully disclosed in plain English.[9] See RJN, Ex. 7. Further, that potential settlement was never

---

[7] The DMCA, which includes the Online Copyright Infringement Liability Limitation Act, creates a conditional safe harbor for online service providers and other internet intermediaries by shielding them for their own acts of direct copyright infringement or from potential secondary liability for the infringing acts of others, as long as they do not have actual knowledge that they are hosting infringing material or become aware of facts or circumstances from which infringing activity is apparent. A "takedown" notice sent to such party, however, does put them on notice and requires them to act or face potential liability. See 17 U.S.C. § 512.

[8] It is undisputed by the Plaintiffs, there is no allegation in the SAC to the contrary, and the Court may take judicial notice that the Plaintiffs have never, even after hiring new copyright counsel to replace Mr. Randazza and/or MJRPA, filed suit against XVideos or XNXX.

[9] Mr. Randazza did inform Mr. Gibson of the August 14, 2012 deadline, but does acknowledge that at least within the context of ruling on a motion to dismiss that the contrary allegation in the SAC must be assumed as true.

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

approved by Mr. Gibson and there is no evidence or allegation that Oron ever would have agreed to pay $675,000. More importantly, with the prior $550,000 settlement and Mr. Randazza ultimately prevailing on his fee motion resulted in enforceable orders (far superior than a mere settlement) in excess of the $675,000 at issue. Once more, such actions resulted in no debt owed to Plaintiffs, dischargeable or otherwise. Similarly, the subsequent events leading to his separation, taking such allegations as true,[10] are immaterial and impertinent, and there is no purpose for this Court to consider them as they bear no relationship to their 523 claims.[11]

### B.   Plaintiffs Continue to Fail to State a Claim.

10.   None of Plaintiffs' allegations under sections 523(a)(2)(A), (a)(4), or (a)(6) of the Bankruptcy Code meet the requirements thereof to warrant that any debt is nondischargeable.

#### 1.   Liberty.

11.   Liberty now claims, rather than having a direct claim for fraudulent inducement under section 523(a)(2)(A),[12] it was a third-party beneficiary of the employment agreement. No such allegation appears in the SAC and it should not be permitted to be raised at this time.

12.   More important, as a matter of law, a third-party beneficiary cannot simply stand in the shoes of a party to a contract and assert a claim under section 523(a)(2)(A). See, e.g., Marco Plumbing & Heating Co. (In re Reeb), 214 B.R. 319, 321 (Bankr. S.D. Ohio 1997). Rather, it must have a claim as a third-party beneficiary sounding in fraud under state law. See id. Liberty cannot meet the essential elements of such a claim. Specifically, Liberty must allege

---

[10] Of course, even taking such allegations as true shows that Mr. Randazza personally advanced $25,000 and agreed, at Mr. Gibson's insistence, to be personally liable in the amount of $605,000 as a term in the judicially enforced settlement agreement if he transferred any funds before each and every condition of the agreement was met. There is no actual allegation, nor could there be, that Mr. Randazza ever took or sought funds that otherwise belonged to another. It is undisputed that his advance was never repaid, and it is undisputed and subject to judicial notice that MJRPA continued to maintain the funds in its trust account, as it should have, until the matter was resolved. To release funds prior thereto would have been both impermissible, and would have potentially subjected him to liability of the entire $550,000 *plus* a penalty of 10% of those funds ($55,000).

[11] It is inconsistent and disingenuous for Plaintiffs to suggest that Mr. Randazza made misrepresentations in his fee petition when it is undisputed that replacement counsel nonetheless still argued that the fees sought should be awarded nonetheless. Indeed, the Plaintiffs actions estop them from making a claim to the contrary.

[12] By making an argument that applied only to one Plaintiff, such does not mean that there is any implicit admission that the other Plaintiff has a valid claim nor does it warrant any such interpretation. Furthermore, even the judge in the Fee Litigation saw this argument as disingenuous when LMH attempted to make an issue of it for the sole purpose of taking a swipe at Mr. Randazza.

6

that Mr. Randazza's representations to Excelsior were intended to influence Liberty to act in a transaction subjecting it to pecuniary loss. See Beutel v. Fergusson, 2006 Cal. App. 9663, 2006 WL 3035374, at *19-20 (Cal. App. 6th Dist. Oct. 26, 2006) (quoting R. (Second) Torts, § 533). No transaction involving Liberty is alleged, only the Employment Agreement involving Excelsior. Neither is there a specific allegation as to any actual pecuniary loss suffered by Liberty as a result. To the contrary, the SAC is replete with examples of Mr. Randazza and/or his law firm achieving quite handsome financial rewards for the applicable parties.

13. Plaintiffs argue that whether Liberty is a third-party beneficiary of the contract is a question of intent, and thus a question of fact that may not be decided within the context of a motion to dismiss. See Opp'n, p. 20. Plaintiffs are incorrect on several counts. First, Liberty's argument that "whether a party is a third party beneficiary of a contract is a question of intent" is an incomplete and thus misleading statement of applicable California law. The most recent and thorough explanation of the issue is as follows:

> Under California law, a contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it. <u>The test for determining whether a contract was made for the benefit of a third person is whether an intent to benefit a third person appears from the terms of the contract. The intent to make the obligation inure to the benefit of a third party must be clearly manifested by the contracting parties in order for the beneficiary to maintain an action.</u> The contract does not have to be for the exclusive benefit of a third party to be enforceable by him; both contracting parties can receive benefits under an enforceable third party beneficiary contract.
>
> If the terms of the contract necessarily require the promisor to confer a benefit on a third person, then the contract, and hence the parties thereto, contemplate a benefit to the third person. The third person need not be named or identified individually to be an express beneficiary. A third party may enforce a contract if it can be shown that he or she is a member of the class for whose express benefit the contract was made. <u>Whether a third party is an intended beneficiary or merely an incidental beneficiary to the contract involves construction of the parties' intent, gleaned from reading the contract as a whole in light of the circumstances under which it was entered</u>.

Jajco, Inc. v. Leader Drug Stores, Inc., No. 12-05703, 2013 WL 2403593, at *4-5 (N.D. Cal. May 31, 2013) (citations and quotations omitted; emphases added). In short, although it is a question of intent, that intent must be found in the specific language of the agreement itself,

7

which task the Court is fully capable of doing within the context of a motion to dismiss.

14. As applied to the case at hand, Liberty is clearly not an expressly intended third-party beneficiary under the Mr. Randazza's Employment Agreement with Excelsior because Liberty is not referenced anywhere in that Agreement--whether as a party, a signatory, participant, recipient, beneficiary, or otherwise. Indeed, the entire Agreement consistently and exclusively refers only to Excelsior and no other party.

15. Moreover, Liberty does not plead in its SAC and cannot point in its Opposition to any specific provisions in the Agreement itself (as it must), whereby a benefit was intended to be conferred on it, as opposed to only Excelsior. For example, there is no provision in the Agreement that Mr. Randazza may also provide services for Excelsior's alleged "sister" companies (as Liberty calls itself), there is suggestion by the structure of the Agreement itself that other non-parties to the Agreement may also benefit or be intended to benefit, and it is undisputed by Plaintiffs that Liberty is not a wholly-owned subsidiary (or parent company) of Excelsior. By contrast, in Jajco, the Court noted that although the contract at issue had a general "no third party beneficiaries" clause, such a general clause was trumped by specific provisions also in the contract that clearly demonstrated an intent to benefit third parties. In such a situation where a general provision in a contract conflicted with specific provisions, which specific provisions clearly conferred a benefit on the third party, the Jajco could found it appropriate to deny a motion to dismiss because the claimed third party beneficiary was arguably a member of the class for whose benefit the contract was created.

16. In the case at hand, and perhaps most critically, the very terms of the Agreement expressly contemplate that Mr. Randazza, through his separate law firm, would provide services for clients other than Excelsior outside of the Agreement. See Employment Agreement §§ 1A[13]; § 6C.[14]

---

[13] Providing that: "Also, as outlined in Section 6C, Randazza shall continue to render ongoing representation to a select portfolio of private clients."

[14] Providing that: "Excelsior agrees that Randazza may, without breaching such duties and agreements, provide professional services to a limited number of outside clients on an ongoing basis, as long as such services are rendered without legal or professional conflict with Excelsior, and such projects are rendered through a separate legal entity, such as Marc J Randazza, PA or another outside law firm. Under no circumstances shall Randazza

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

17. In fact, Mr. Randazza's Employment Agreement with Excelsior went so far as to provide that his law firm would obtain its <u>own separate insurance coverage</u> for representations other than Excelsior. See id. § 5C.[15] Such a provision makes sense because if Mr. Randazza were not acting in his role as Excelsior's General Counsel, then he presumably would not be covered by Excelsior's insurance. As the Court recently saw with respect to approval of the MJRPA Settlement Agreement pursuant to Fed. R. Bankr. P. 9019, that provision was actually observed, as that litigation involved a settlement of certain Fee Litigation wherein LMH (not Excelsior) counterclaimed against MJRPA in Nevada State Court, see RJN, Ex. 3, regarding MJRPA's representation of LMH in certain matters to which Excelsior was never a party, and MJRPA's separate insurance carrier ended up providing coverage and provided the settlement funds to end that litigation (and notwithstanding Mr. Randazza's vehement denial of the validity of the underlying claims).

18. In sum, when an agreement like the Employment Agreement expressly provides a party thereto could represent other clients, but only through an outside law firm, and even goes so far as to require that the outside law firm would need to have in place its own insurance coverage (so that any party represented by the law firm could not look to the insurance of the counterparty to the Agreement for coverage because the work performed by the law firm was outside the scope of the Agreement), and those provisions are actually implemented, and a non-party to the contract now claiming to be a third-party beneficiary actually sues the outside law firm and recovers on the firm's separate insurance policy, such a non-party to the contract has unequivocally admitted through its own actions and conduct that it never was an intended third-party beneficiary of the Agreement itself. Simply put, a party cannot have it both ways--it cannot claim that it has rights against a law firm under the legal representation arrangement it had with that law firm and then also try to claim that it is a third-party beneficiary of a separate

---

represent, nor allow the perception to exist, that such services are being rendered as part of his duties with Excelsior."

[15] Providing that: "Randazza's outside projects shall not be covered by any professional liability insurance provided by Excelsior, and Randazza must carry his own liability coverage or self-insure for those purposes."

9

employment agreement between an individual member of that law firm and another party.

19. In an attempt to salvage its position and the deficiencies in the SAC, the Opposition improperly makes three (3) additional factual allegations <u>not contained in the Plaintiffs' SAC</u>. First, Plaintiffs assert that "because Defendant and Plaintiffs were well aware that virtually all the work Randazza would be doing pursuant to the [Employment Agreement] would be for Liberty," Opp'n, p. 20, ll. 4-6 and n.8; however, there is absolutely no allegation to that effect in the SAC and it would be improper for the Court to consider such an allegation raised for the first time in an opposition to a motion to dismiss.

20. Second, Plaintiffs assert that Defendant allegedly admitted in the Arbitration that he did almost no work for Excelsior and that the vast majority of his work was for LMH, <u>id.</u> p. 3 n.3; however, there is absolutely no allegation to that effect in the SAC, it would be improper for the Court to consider such an allegation raised for the first time in an opposition to a motion to dismiss, and Plaintiffs' reference to evidence outside of the record in the form of the Arbitration transcript (Opp'n, Ex. 2) must be struck and not be considered in ruling on the Motion.

21. Third, Plaintiffs assert that "[s]ince Liberty held all of the rights to intellectual property rights of E/L, the whole point of hiring in-house counsel to protect those rights was to benefit Liberty as well as Excelsior." <u>Id.</u> p. 20, ll. 9-12 (and citing SAC ¶ 11 in support). Plaintiffs' argument proves too much, and, in so doing, ultimately undercuts their own position. If it were so "obvious" that Mr. Randazza would also necessarily be doing work for companies other than Excelsior (such as LMH) and such work was intended to be covered by the Employment Agreement then: Why not expressly include such other parties (other than Excelsior) as a parties to the Agreement? Why not provide that such other parties (other than Excelsior) would at least be third-party beneficiaries and/or that Randazza would also be expected as part of his duties under the Agreement to also do work for such other companies under the Agreement? Why have a provision in the Agreement expressly providing for Mr. Randazza to still represent such other parties (other than Excelsior), but require that such representations be done through a separate law firm and get its own insurance?

22. Additionally, Plaintiffs cite to SAC ¶ 11 in their Opposition, see id. p. 20, l. 11, to apparently assert that they made such an allegation, however, that citation does not actually help them for a few reasons. First, nowhere in that allegation do Plaintiffs ever disambiguate themselves; rather, they continually refer to themselves as the amorphous "E/L", when it is clear that the only party to the Employment Agreement is actually the "E" in that moniker--Excelsior. Second, as previously noted, if it really was, as SAC ¶ 11 alleges, that it was "E/L's" decision to hire General Counsel, and "significant challenges were faced by E/L," and "Randazza was tasked with handling all of E/L's legal matters," then why was the Agreement drafted as it was to only reference Excelsior, and making no reference to any other party, including "L"? The plausibility standard for allegations in a complaint sufficient to survive a motion to dismiss may not be a particularly demanding standard, but when an allegation such as SAC ¶ 11 as to "L" is controverted by an absolute lack of any express reference to that company in that agreement or any intent in that agreement to benefit it, and indeed the allegation is controverted by other provisions in the agreement and the actual undisputed conduct of the alleged third-party beneficiary at issue in contravention of such an interpretation, then such an allegation simply does not survive even the plausibility standard on a motion to dismiss. At best, any party other than Excelsior could be an incidental beneficiary under the Employment Agreement, which is simply insufficient as a matter of law to be able to raise claims of breach of that Agreement.

23. The Court should also note that nowhere is the SAC does Liberty ever even allege that it is, in fact, a third-party beneficiary of the Employment Agreement; rather, the Plaintiffs continually refer to themselves as the amorphous "E/L" on the apparent and quite mistaken assumption that they are both actual parties to the Agreement. Additionally, there is no allegation in the SAC that Mr. Randazza even knew of Liberty's existence when he entered into the Agreement with Excelsior. Such a failure to either plead third-party beneficiary status, or even specific provisions in the Employment Agreement at issue indicating why the claimant is a party or a third-party beneficiary notwithstanding the language of the agreement and the parties' undisputed course of conduct to the contrary is fatal to unsupported assertions raised only for the first time in the Plaintiffs' Opposition. See, e.g., Hardage Hotels X, LLC v. First

Co., No. D053980, 2010 WL 1512138, at *19-21 (Cal. Super. Ct. Apr. 16, 2010) (noting that the pleadings in that case did not allege sufficient facts from which one could determine that a company was a third-party beneficiary).

24. Finally, Liberty's argument that "the question of whether Liberty was a third party beneficiary is a question of fact that should not be decided in the context of a motion to dismiss" is also incorrect because courts can and regularly do decide whether a party is a third-party beneficiary of a contract within the context of a motion to dismiss. See, e.g., GECCMC 2005-C1 Plummer St. Office Ltd. P'ship v. JPMorgan Chase Bank, Nat. Ass'n, 671 F.3d 1027, 1033-1035 (9th Cir. 2012); Lory v. Fed. Ins. Co., No. 03-16008, 2005 WL 115456, at *2-3 (9th Cir. Jan. 20, 2005); Bal v. New Penn Financial, LLC, No. 14-1558, 2015 WL 3867984, at *5 (C.D. Cal. June 22, 2015); Bancomer, S.A. v. Superior Ct., 44 Cal. App. 4th 1450, 52 Cal. Rptr. 2d 435 (Ct. App. 2d Div. 3 Apr. 30, 1996) (denying plaintiffs' writ challenging a trial court's dismissal of its third-party beneficiary claims in the context of a motion to dismiss).

25. The upshot of Liberty not being a party or a third-party beneficiary to the Employment Agreement is that any claims it makes premised on that Agreement, as well as its claim for a recovery of any attorneys' fees and costs based on the contractual provisions in that Agreement, must be dismissed as a matter of law.

**2. Excelsior.**

26. As to whether Excelsior stated a claim, Plaintiffs' arguments are unavailing. Although they made the naked allegation that Mr. Randazza intended, at the time he entered into the Employment Agreement, to not comply with it, there is no factual allegation; just a mere legal conclusion. And, it is belied by the SAC itself, demonstrating Mr. Randazza did substantially perform under the material terms of the Employment Agreement. His wound-down private practice consisted of but a handful of clients, representing an average of 11 hours and 45 minutes of work per week, none of which was alleged to be during time working for Excelsior, just as the parties intended, as the plain language of Agreement allows.

27. Plaintiffs newly argue that Mr. Randazza's alleged ongoing failure to disclose *potential* conflicts of interest amounted to a continuing misrepresentation, for which they

Excelsior continued to retain Mr. Randazza as in-house counsel. But, they point to no pecuniary loss or other harm resulting from the ongoing employment of Mr. Randazza. None of the complained-of conduct involving TNAFlix, Bang Bros., or Oron resulted in consummation of a deal involving a conflict of interest. They do not plead Mr. Randazza ever dissuaded them from pursuing legally viable cases or caused them to achieve lower settlements or judgments based on the conflict. They do not even plead that the cost of paying Mr. Randazza exceeded the revenue he generated or plead that they would have paid an alternate in-house counsel less (while achieving the same results).

28. Finally, merely pointing to the paragraph numbers and asserting that the facts were sufficiently alleged does not overcome the deficiencies observed in Defendant's motion pursuant to Fed. R. Civ. P. 9(b). Plaintiffs already were permitted two do-overs; no further amendment is warranted.

29. As to Plaintiffs' 523(a)(4) claim, they attempt to distinguish In re Bigelow, 271 B.R. 178 (B.A.P. 9th Cir. 2001), but fail. The argument is that an employee should be treated like a partner. The cases cited by Plaintiffs only address partners and parties to a joint venture (akin to partners) as fiduciaries under the Bankruptcy Code. No caselaw is cited that treats an employee as a fiduciary within the meaning of section 523(a)(4) of the Bankruptcy Code.

30. In fact, reading In re Short, 717 F.2d 693 (9th Cir. 1987), cited by Plaintiffs (Opp'n, p. 22), reference is made to Chapman v. Forsyth, 43 U.S. 202 (1844), in which it was held that a factor, *i.e.* an agent, who retains the money of his principal is not a fiduciary debtor under the act. Plaintiffs do no more than essentially claim that Mr. Randazza, an employee of Excelsior, improperly withheld property. Moreover, Mr. Randazza was not even an employee of Liberty even under Plaintiffs' argument. The claim for defalcation is not cognizable.

31. Further, it is undisputed and subject to judicial notice that the funds Plaintiffs' alleged were defalcated were held by MJRPA, the non-party law firm, and held in trust. Plaintiffs do not, and cannot, legitimately dispute this and even acknowledge that the firm, not Mr. Randazza personally, held the funds in trust. Thus, they cannot distinguish Bigelow on that ground, nor do they dispute that the matters involving the funds have all be resolved and that all

13

claims against MJRPA have been released,[16] which are all facts the Court may judicially notice.

32. And, once again, merely pointing to the paragraph numbers in the SAC and asserting that the facts were sufficiently alleged does not overcome the deficiencies observed in Defendant's Motion pursuant to Fed. R. Civ. P. 9(b). Plaintiffs already were permitted two do-overs, and no further leave to amend is warranted or appropriate.

33. No proper claims under section 523(a)(6) exist either, notwithstanding Plaintiffs' protestations. Though they generically refer to SAC ¶¶ 20-71, they fail to specify what, exactly, was tortious. There are no allegations, other than conclusory ones, as to their claims as to Mr. Randazza's state of mind. And, despite multiple opportunities to do so, Plaintiffs have yet to identify a single dollar they lost or a single computer file they were not provided.[17]

34. Finally, although Plaintiffs acknowledge In re Lockerby, 535 F.3d 1038 (9th Cir. 2008), they do not distinguish it. They argue, without reference to the facts, that there was "a prolonged and extensive pattern of deliberate misconduct intended to benefit the Debtor and harm Plaintiffs." Opp'n, p. 24. First, as previously set forth, there was no misconduct, let alone deliberate. If Mr. Randazza did not disclose alleged "potential" conflicts, there is nothing to suggest he did so deliberately; neither is there anything alleged by which it would be known there was a conflict. It is undisputed that Mr. Randazza ceased negotiating his own representation as part of the TNAFlix settlement. It is undisputed that Mr. Randazza did not represent Bang Bros. in the Cody Media transaction. It is undisputed that Mr. Randazza did not represent XVideos or XNXX against LMH's or Excelsior's interests. Mr. Randazza specifically

---

[16] Although Plaintiffs dispute how the funds in the Righthaven matter were earned, the judicial record cited in the motion is dispositive--they were not earned under the auspices of Excelsior. Moreover, if they were, such would be unlawful fee splitting that the Court cannot suborn. Instead, they were for an outside client, as contemplated by the employment agreement, in which not even an indication that they were under Excelsior's umbrella would have been permitted. Further, the funds were earned by MJRPA, not by Mr. Randazza personally. The time records in that case will also show that the work was performed not just by Mr. Randazza, but by other staff members and attorneys at MJRPA. Accordingly, what claim does Excelsior have over any funds earned in that case?

[17] Plaintiffs finally admit that their claims for spoliation and destruction of evidence are not actionable. See Opp'n, p. 24. Notably, they also do not identify any missing files. The gravamen of the claim remains that somehow, preserving client files on secured and encrypted firm cloud storage system and giving a copy of their files, yet erasing a laptop to protect third-party confidences, caused harm. Such has never made sense and simply does not satisfy even the plausibility threshold on a motion to dismiss.

14

ensured he was not guaranteed to be retained by Oron, but that Oron, like any other business, had the option to retain him, if they valued his services. Each and every one of those actions, moreover, benefitted the applicable companies. Plaintiffs point to no benefit Mr. Randazza received on account of the alleged misconduct,[18] nor have they identified a single harm they suffered. As a result, no cognizable claim exists under section 523(a)(6).

35. And, once again, merely asserting that the facts were sufficiently alleged does not overcome the deficiencies observed in Defendant's motion pursuant to Fed. R. Civ. P. 9(b). Plaintiffs already were permitted one do-over; again, no further amendment is warranted.[19]

### III. CONCLUSION

Plaintiffs have now had three chances to plead cognizable claims against Defendant, yet their SAC still fails to assert plausible claims under sections 523(a)(2)(A), 523(a)(4), or 523(a)(6) of the Bankruptcy Code. As Plaintiffs admit, there have been years of litigation; if Plaintiffs could have properly pleaded such any grounds for nondischargeability, they have had more than ample opportunity to do so. As a result, the SAC should be dismissed with prejudice.

Dated: September 15, 2016.

LARSON & ZIRZOW, LLC

By: /s/ Matthew C. Zirzow
ZACHARIAH LARSON, ESQ.
Nevada Bar No. 7787
E-mail: zlarson@lzlawnv.com
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
E-mail: mzirzow@lzlawnv.com
850 E. Bonneville Ave.
Las Vegas, Nevada 89101

Attorneys for Defendant

---

[18] Although Plaintiffs have discussed previously his continued employment by Excelsior, Excelsior does not claim that if Mr. Randazza had engaged in their preferred course of conduct he would have lost his job.

[19] Defendant will not want to belabor the attorneys' fees issue, but to the extent the SAC reasserts such claims, they should be dismissed, and the Court is able to review them in the context of this Motion because it either did not reach the arguments alleged (or realleged) in conjunction with the FAC, or even if it did, its previous denial was without prejudice as set forth in the transcript and thus may be re-raised. Defendant reserves all rights.