1   LARSON & ZIRZOW, LLC
    ZACHARIAH LARSON, ESQ.
2   Nevada Bar No. 7787
    E-mail: zlarson@lzlawnv.com
3   MATTHEW C. ZIRZOW, ESQ.
    Nevada Bar No. 7222
4   E-mail: mzirzow@lzlawnv.com
    850 E. Bonneville Ave.
5   Las Vegas, Nevada 89101
    Tel: (702) 382-1170
6   Fax: (702) 382-1169
7
8   Attorneys for Defendant

9

10              UNITED STATES BANKRUPTCY COURT
                 FOR THE DISTRICT OF NEVADA
11

12  In re:                                    Case No.: BK-S-15-14956-abl
                                              Chapter 11
13  MARC JOHN RANDAZZA,

14            Debtor.

15  ────────────────────────────────

16  EXCELSIOR MEDIA CORP., a Nevada           Adv. No. 15-01193-abl
    corporation; and LIBERTY MEDIA
17  HOLDINGS, LLC, a Nevada limited liability
    company,
18
              Plaintiffs,                     ANSWER TO PLAINTIFFS' SECOND
19                                            AMENDED COMPLAINT, OBJECTION
    v.                                        TO PROOF OF CLAIM, AND
20                                            COUNTERCLAIM
    MARC JOHN RANDAZZA, an individual,
21
              Defendant.
22

23  ────────────────────────────────

24  AND RELATED COUNTERCLAIMS.

25

26

27

28

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

Defendant, Marc John Randazza (the "Defendant"), by and through his attorneys, the Larson & Zirzow, hereby respectfully submits his *Answer, Objection to Proof of Claim, and Counterclaims* to the *Second Amended Complaint* (the "SAC") [Adv. ECF No. 58] filed by plaintiffs, Excelsior Media Corp., a Nevada corporation ("Excelsior"), and Liberty Media Holdings, LLC, a Nevada limited liability company ("Liberty" and together with Excelsior, the "Plaintiffs"). Pursuant to the Order of October 19, 2016 [Adv. ECF No. 91], Plaintiffs' First Claim for Relief pursuant to 11 U.S.C. § 523(a)(2)(A) was dismissed with prejudice, and no answer to such claim or the predicate factual allegations is required. Defendant otherwise answers and defends each allegation in each paragraph of the SAC, brings counterclaims, and objects to Excelsior's Proof of Claim as follows:[1]

## ANSWER AND DEFENSES

1.      Admitted.

2.      Admitted. Pursuant to Local Rule 7008.1, the Defendant consents to the entry of final orders and judgments by the bankruptcy judge in this matter.

3.      Admitted.

4.      Defendant lacks sufficient information to admit or deny the allegations in this paragraph. To the extent a response is required, the allegation is denied.

5.      Defendant lacks sufficient information to admit or deny the allegations in this paragraph. To the extent a response is required, the allegation is denied.

6.      Admitted.

7.      Defendant admits the allegation to the extent it relates to Excelsior and denies the remaining allegations of the paragraph.

8.      Defendant lacks sufficient information to admit or deny the allegations in this paragraph. To the extent a response is required, the allegations are denied.

9.      Defendant admits the allegation that he relocated to Las Vegas to San Diego,

---

[1] No response is given to Plaintiffs' section headers, *i.e.* I. Jurisdiction and Venue, II. The Parties, etc., as they are non-substantive and no response is required. Defendant's reference to any such section header is not and should not be construed as an admission of the truth of any allegation therein.

California in 2011 to continue his employment relationship with Excelsior and denies the allegation as it relates to Liberty. Defendant admits, as to the second sentence, that he practices First Amendment and intellectual property law and represents clients in the adult entertainment industry and denies the remaining allegations.

10.    Defendant admits that he became acquainted with Excelsior while working as an associate at a firm practicing First Amendment law in Florida. Defendant admits that Excelsior decided to hire a General Counsel and he pursued and accepted the position. Defendant admits that he contributed to the drafting of an employment agreement executed by himself and Excelsior in June 2009. Defendant admits that he participated in counseling Excelsior regarding corporate decisions. Defendant denies the remaining allegations of this paragraph.

11.    Defendant lacks sufficient information to admit or deny the allegations in the first two sentences in this paragraph. To the extent a response is required, the allegation is denied. Defendant admits he was tasked with handling Excelsior's legal matters and denies the remaining allegations in the last sentence.

12.    Defendant admits that he was to have a limited private practice while Excelsior's General Counsel and denies the remaining allegations of this paragraph.

13.    As to the first sentence, the allegations are admitted as they relate to Excelsior and the remaining allegations are denied. Defendant denies the allegations in the second sentence of this paragraph.

14.    Defendant admits the first sentence. Defendant admits that Excelsior and he included the payment of a 25% contingent fee regarding settlements and judgments related to Corbin Fisher and denies the remaining allegations of the second sentence.

15.    Defendant denies the allegations of the first sentence. Defendant admits that Marc J. Randazza, P.A. d/b/a Randazza Legal Group ("MJRPA") and other firms assisted where necessary and approved by Excelsior, and he denies the remaining allegations of the second sentence.

16.    Defendant admits the allegations of this paragraph as they relate to Excelsior and denies the remaining allegations.

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

2

17.    Defendant admits the allegations of this paragraph as they relate to Excelsior and denies the remaining allegations.

18.    Defendant admits the allegations of this paragraph as they relate to Excelsior and denies the remaining allegations.

19.    Defendant admits that he requested Excelsior to hire Erika Dillon as a paralegal and that she was so employed at the time of his termination.  Defendant denies the remaining allegations of this paragraph.

20.    Defendant admits that he was to have a limited private practice while Excelsior's General Counsel and denies the remaining allegations of this paragraph.

21.    Defendant admits that MJRPA represented clients from October 2009 through August 2012 and that he billed the hours so alleged.  Defendant denies the remaining allegations of this paragraph.

22.    Defendant admits the allegations of this paragraph as they relate to Excelsior and denies the remaining allegations.

23.    Defendant admits that he, through MJRPA, represented the plaintiff in Liberty Media Holdings, LLC, v. TNAFlix, Case No. 10-cv-1972-JHA-POR (S.D. Cal.) ("TNA Matter") alleging the defendant TNAFlix infringed the plaintiff's copyrighted works and denies the remaining allegations of the first sentence.  Defendant admits the allegations of the second sentence.

24.    Admitted.

25.    Defendant admits that Attorney Gurvits offered to retain MJRPA to represent TNAFlix in the amount of $5,000.  Defendant admits that the governing rules of professional conduct would preclude his firm from representing parties with a conflict of interest.  Defendant admits that he sent an e-mail to Mr. Gurvits on December 22, 2010, with the partially quoted text alleged, save for the bracketed text.  Defendant denies the remaining allegations of this paragraph.

26.    Defendant admits that he and Attorney Gurvits discussed the prospect of MJRPA representing TNAFlix.  Defendant admits that the governing rules of professional conduct

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170    Fax: (702) 382-1169

3

would preclude his firm from representing parties with a conflict of interest.  Defendant admits that he sent an e-mail to Mr. Gurvits on January 11, 2011, with the partially quoted text alleged, save for the asterisks.  Defendant denies the remaining allegations of this paragraph.

27.    Defendant admits that he sent an email on January 12, 2011, containing the partially quoted text, save for the bracted text.  Defendant admits that an attorney is not permitted to agree to limit his ability to practice as part of a settlement under the governing rules of professional conduct.  Defendant denies the remaining allegations of this paragraph.

28.    Defendant admits that a settlement agreement in the TNA Matter was made on February 1, 2011, in the amount of $50,000.00.  Defendant admits that after the settlement was executed, on the day payment was received, but before he received a fully signed copy, he maintained the pretense of having MJRPA potentially represent TNAFlix and that he sent an e-mail to Mr. Gurvits on February 2, 2011, containing the partially quoted text.  Defendant denies the remaining allegations of this paragraph.

29.    Defendant admits that on February 11, 2011, he sent a draft flat fee agreement to Mr. Gurvits for MJRPA to represent TNAFlix upon payment of $36,000.00, which went unsigned.  Defendant further admits that he wrote to Mr. Gurvits in June 2011 containing the partially quoted text, save for the bracketed text.  Defendant denies the remaining allegations of this paragraph.

30.    Denied.

31.    Defendant admits that he sent an e-mail to Mr. Gurvits on December 30, 2010, stating that a client of MJRPA was interested in acquiring TNAFlix and containing the partially quoted text.  Defendant denies the remaining allegations of this paragraph.

32.    Defendant further admits that he wrote to Mr. Gurvits on December 30, 2010, containing the partially quoted text, save for the bracketed text.  Defendant denies the remaining allegations of this paragraph.

33.    Admitted.

34.    Defendant admits that Mr. Gurvits wrote the quoted text and can neither admit nor deny the remaining allegations of this paragraph.  To the extent a response is required, the

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

4

1  allegations are denied.

2          35.     Admitted.

3          36.     Admitted.

4          37.     Defendant admits that he sent an e-mail to Mr. Gurvits on February 14, 2011,

5  containing the partially quoted text, save for the bracketed text, and denies the remaining

6  allegations of this paragraph.

7          38.     Defendant admits that on February 15, 2011, he e-mailed Mr. Gurvits a draft

8  broker agreement signed by him for MJRPA. Defendant admits that on the morning of February

9  15, 2011, after sending the broker agreement, he sent an e-mail to Mr. Gurvits suggesting

10 TNAFlix would be "screwed" if another client of MJRPA filed suit against it the following day.

11 Defendant denies the remaining allegations of this paragraph.

12         39.     Defendant admits that, through MJRPA, he represented Bang Bros. and billed 79

13 hours to Bang Bros. when not otherwise required to perform his role as Excelsior's General

14 Counsel. Defendant denies the remaining allegations of this paragraph.

15         40.     Defendant lacks sufficient information to admit or deny the allegations of this

16 paragraph. To the extent a response is required, the allegations are denied.

17         41.     Defendant admits that he informed Excelsior that Bang Bros. might finance a

18 purchase of Cody Media. Defendant denies the remaining allegations of this paragraph.

19         42.     Defendant lacks sufficient information to admit or deny the allegations of this

20 paragraph. To the extent a response is required, the allegations are denied.

21         43.     Defendant admits that, through MJRPA, he represented the owners of XVideos

22 and XNXX, which permit the sharing of pornographic videos and that he billed over 100 hours

23 to them when not otherwise required to perform his role as Excelsior's General Counsel.

24 Defendant denies the remaining allegations of this paragraph.

25         44.     Defendant admits that Liberty Media Holdings, LLC, considered bringing suit

26 against XVideos in January 2011 for copyright infringement. Defendant admits that he sent an

27 e-mail on January 17, 2011 disclosing his prior counsel to XVideos regarding the

28 implementation of a system to detect unauthorized uploads of copyrighted works, and that such

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

5

system would factor as a strong defense in copyright infringement claims. Defendant admits that he disclosed it would be an "ethical problem", that is, a conflict of interest, were he to bring suit against XVideos. Defendant denies the remaining allegations of this paragraph.

45. Defendant admits that he informed XVideos he would not represent it in any case filed by Liberty Media Holdings, LLC. Defendant denies the remaining allegations of this paragraph.

46. Defendant denies the allegations in the first sentence of this paragraph. Defendant admits that he provided his opinion that the alleged infringement likely constituted fair use, subjecting Liberty Media Holdings, LLC, to potential liability for an improper DMCA takedown request. Defendant denies the remaining allegations of this paragraph.

47. Denied.

48. Denied.

49. Defendant admits that, on behalf of Liberty Media Holdings, LLC, he filed suit against FF Magnat Ltd. d/b/a Oron.com ("Oron") in the United States District Court for the District of Nevada asserting copyright infringement claims arising out of Oron's facilitation of the illegal downloading of Corbin Fisher content. Defendant further admits that he retained counsel in Hong Kong on behalf of Liberty Media Holdings, LLC, to seize assets of Oron on account of the infringement. Defendant admits that Oron was enjoined from disbursing its Hong Kong based assets upon the efforts of Defendant and Hong Kong counsel. Defendant denies the remaining allegations of this paragraph.

50. Defendant admits that on July 1, 2012, Liberty Media Holdings, LLC, and Oron executed a settlement agreement providing for payment of $550,000 by Oron. Defendant admits that Jason Gibson was, at all relevant times, CEO of Excelsior and a managing member of Liberty Media Holdings, LLC. Defendant admits that Mr. Gibson was involved in the negotiations of the said settlement agreement. Defendant denies the remaining allegations of this paragraph.

51. Defendant admits that, pursuant to the settlement agreement, Oron would transfer $550,000 to the MJRPA trust account, while retaining legal title thereto, and that Defendant

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170 Fax: (702) 382-1169

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170    Fax: (702) 382-1169

would be personally liable were Oron's funds prematurely disbursed, which included a 10% penalty.

52.    Defendant admits that Oron later claimed the settlement agreement was unenforceable. Defendant admits that, on behalf of Liberty Media Holdings, LLC, he sought the intervention of the district court and obtained an order declaring the settlement agreement to be valid and enforceable as a judgment against Oron. Defendant denies the remaining allegations of this paragraph.

53.    Defendant admits the allegations in the first two sentences. Defendant admits the allegations of the third sentence with the exception that the payment was not to Plaintiffs to be held in trust, but rather was to be held in trust for Oron until performance was made and then it could be paid to Liberty Media Holdings, LLC. Defendant denies the allegations of the fourth and fifth sentences.

54.    Denied.

55.    Defendant denies the allegations of the first sentence to the extent "discovered" means anything other than Defendant plainly presenting it to Gibson for his review. Defendant denies the allegations in the second sentence to the extent it suggests prior disclosure was appropriate or that, as an attorney, he lacked authority or consent to negotiate settlement terms. Defendant can neither admit nor deny what questions Gibson may have had and otherwise denies the allegations of the third sentence. Defendant denies the allegations of the fourth sentence. Defendant admits that Oron took the position it would not pay more than $600,000 to Liberty Media Holdings, LLC.

56.    Defendant can neither admit nor deny the allegations of the first sentence and otherwise denies lack of sense or self-dealing. Defendant admits the allegations of the second sentence to the extent compensation was from Excelsior and payment was to Liberty Media Holdings, LLC.

57.    Defendant can neither admit nor deny the allegations in the first and third sentences and, to the extent a response is required, denies them. Defendant denies the allegations of the second sentence.

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

58.    Defendant denies the allegations of the first sentence.  Defendant admits the allegations of the second sentence with the exception that he did not actually quit.

59.    Defendant denies the allegations of the first sentence to the extent it suggests a reasonable opportunity for notification by Defendant or MJRPA.  Defendant admits the allegations of the second sentence to the extent that "as soon as" meant as soon as reasonably practical.

60.    Defendant admits the allegations of the first sentence with the exception that he denies any such delay.  Defendant admits the allegations of the second sentence to the extent it relates to Liberty Media Holdings, LLC.

61.    Defendant admits that he wrote the quoted text, but denies the allegation to the extent such was a directive or that he was otherwise obligated to forward the funds at that time.  Defendant denies the allegations of the second sentence.  Defendant can neither admit nor deny the allegations of the third sentence; to the extent a response is required, it is denied.

62.    Defendant admits the allegations of this paragraph to the extent it relates to Liberty Media Holdings, LLC.

63.    Defendant admits the allegations of the first sentence to the extent it relates to Excelsior.  Defendant denies the allegations of the second sentence to the extent salary includes bonuses and severance.

64.    Defendant can neither admit nor deny the allegations of the first sentence and otherwise denies the allegations of this paragraph.

65.    The allegations of the primary paragraph are denied.  Defendant denies the allegations of the first two sentences of subparagraph (a) and can neither admit nor deny the allegations of the second two sentences; to the extent a response is required, they are denied.  Defendant denies the allegations of subparagraph (b). Defendant denies the allegations of the first sentence of subparagraph (c), with the exception that he admits to appearing at Excelsior's headquarters that day; Defendant can neither admit nor deny the allegations of the second sentences, and to the extent a response is required, they are denied.  Defendant admits to returning the laptop as alleged in subparagraph (d), with sensitive client confidential information

8

that may have resided thereon deleted, and that he was informed by Excelsior to retain property and was sent a formal preservation notice following his termination, and understands the law of spoliation; Defendant denies the remaining allegations in this subparagraph. Defendant denies the allegations of subparagraph (e).

66.    Defendant admits the allegations of the first sentence. Defendant admits the allegations of the second sentence to the extent it relates to Excelsior. Defendant admits the allegations of the third sentence to the extent it relates to Excelsior, but denies the allegations to the extent it suggests a final, enforceable decision or that all of his claims were rejected.

67.    Defendant admits the allegations of the first sentence. Defendant enies the allegations of the second sentence. Defendant admits the third and fourth sentences to the extent it relates to Liberty Media Holdings, LLC. Defendant denies the allegations of the third sentence. Defendant admits the allegations of the sixth sentence. Defendant admits the allegations of the second sentence to the extent it relates to Liberty Media Holdings, LLC.

68.    Denied.

69.    Denied.

70.    Defendant denies the allegations of the first paragraph to the extent it suggests he intended to represent parties who had claims against Excelsior or Liberty Media Holdings, LLC. Defendant admits the allegations of the second sentence as it relates to Liberty Media Holdings, LLC, but denies that such negotiations were improper.

71.    Defendant admits to negotiating potential brokerage of a sale of TNAFlix while litigating on behalf of Liberty Media Holdings, LLC, acting in his client's interest, and denies the remaining allegations of this paragraph.

**FIRST CLAIM FOR RELIEF**

72.    No response to this allegation is required as this claim was dismissed with prejudiced.

73.    No response to this allegation is required as this claim was dismissed with prejudiced.

74.    No response to this allegation is required as this claim was dismissed with

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

1  prejudiced.

2  　　　　75.　　No response to this allegation is required as this claim was dismissed with

3  prejudiced.

4  　　　　76.　　No response to this allegation is required as this claim was dismissed with

5  prejudiced.

6  　　　　77.　　No response to this allegation is required as this claim was dismissed with

7  prejudiced.

8  　　　　78.　　No response to this allegation is required as this claim was dismissed with

9  prejudiced.

10  　　　　79.　　No response to this allegation is required as this claim was dismissed with

11  prejudiced.

12  　　　　80.　　No response to this allegation is required as this claim was dismissed with

13  prejudiced.

14  　　　　81.　　No response to this allegation is required as this claim was dismissed with

15  prejudiced.

16  　　　　82.　　No response to this allegation is required as this claim was dismissed with

17  prejudiced.

18  　　　　83.　　No response to this allegation is required as this claim was dismissed with

19  prejudiced.

20  　　　　84.　　No response to this allegation is required as this claim was dismissed with

21  prejudiced.

22  　　　　85.　　No response to this allegation is required as this claim was dismissed with

23  prejudiced.

24  　　　　　　　　　　**SECOND CLAIM FOR RELIEF**

25  　　　　86.　　Defendant incorporates by reference his foregoing responses as if fully restated

26  herein.

27  　　　　87.　　Denied.

28  　　　　88.　　Defendant admits the allegations to the extent it may relate to any funds

Defendant may have held on behalf of Excelsior.   The allegations of this paragraph are otherwise denied.

89.    Denied.

90.    Defendant admits that MJRPA received $5,000 from James Grady to litigate against Oron, and denies the remaining allegations of this paragraph.

91.    Denied.

92.    Denied.

93.    Defendant admits this allegation to the extent it relates to Excelsior.

94.    Defendant admits this allegation to the extent it relates to Excelsior.

95.    Defendant admits this allegation to the extent it relates to Excelsior.

96.    Denied.

97.    Denied.

98.    Denied.

99.    Denied.

100.    This allegation is conclusory and no response is required; to the extent a response is required, the allegation is denied.

### THIRD CLAIM FOR RELIEF

101.    Defendant incorporates by reference his foregoing responses as if fully restated herein.

102.    Denied.

103.    Denied.

104.    Denied.

105.    Denied.

106.    This allegation is conclusory and no response is required; to the extent a response is required, the allegation is denied.

### AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred for failure to state claims upon which relief can be granted.

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

**SECOND AFFIRMATIVE DEFENSE**

Plaintiffs' claims are barred for lack of standing.

**THIRD AFFIRMATIVE DEFENSE**

Plaintiffs' claims are barred under the applicable Statute of Limitations.

**FOURTH AFFIRMATIVE DEFENSE**

Plaintiffs' claims are barred under the doctrine of unclean hands.

**FIFTH AFFIRMATIVE DEFENSE**

Plaintiffs' claims are barred for failure to mitigate their damages, to the extent any may have been suffered.

**SIXTH AFFIRMATIVE DEFENSE**

Plaintiffs' claims are barred under the doctrine of accord and satisfaction.

**SEVENTH AFFIRMATIVE DEFENSE**

Plaintiffs' claims are barred under the doctrine of waiver.

**EIGHTH AFFIRMATIVE DEFENSE**

Plaintiffs' claims are barred for failure to join one or more necessary parties.

**NINTH AFFIRMATIVE DEFENSE**

Plaintiffs' claims are barred under the doctrine of contributory or comparative negligence.

**TENTH AFFIRMATIVE DEFENSE**

Liberty's claims premised on the Employment Agreement are precluded because it is neither a named party thereto, or an intended third party beneficiary under that agreement.

**ELEVENTH AFFIRMATIVE DEFENSE**

Liberty has no claim in the Randazza Chapter 11 Case because its potential claim was listed as contingent, unliquidated and disputed in Randazza's bankruptcy schedules [ECF No. 15], and it did not timely file its own proof of claim in the Debtor's Chapter 11 Case by the deadline of December 30, 2015 as set forth in both the *Notice of Bankruptcy, et al.* [ECF No. 6] filed on August 28, 2015 and as set by operation of LR 3003.

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

**TWELFTH AFFIRMATIVE DEFENSE**

The conduct of the Defendant was legally justified, including as a result of the anticipatory breach of the agreements by the Plaintiffs, which bar the Plaintiffs from recovering damages.

**THIRTEENTH AFFIRMATIVE DEFENSE**

Plaintiffs are equitably estopped from taking the positions being taken in the current litigation.

**FOURTEENTH AFFIRMATIVE DEFENSE**

The Plaintiffs' claims against the Defendant have been released.

**FIFTEENTH AFFIRMATIVE DEFENSE**

The Plaintiffs are not the real parties in interest to file the suit.

**SIXTEENTH AFFIRMATIVE DEFENSE**

The conduct of the Defendant was in good faith and in compliance with the terms of the applicable agreements and Rules of Professional Responsibility.

**SEVENTEENTH AFFIRMATIVE DEFENSE**

Plaintiffs were unjustly enriched as a result of their conduct and at the expense of the Plaintiff.

**EIGHTEENTH AFFIRMATIVE DEFENSE**

Plaintiffs consented to the acts causing the alleged harm they claim against the Defendant.

**NINETEENTH AFFIRMATIVE DEFENSE**

Plaintiffs ratified the acts of the Defendant and thus cannot now complain.

**TWENTIETH AFFIRMATIVE DEFENSE**

Plaintiff failed to mitigate its damages and thus cannot recover damages that resulted from such failure to mitigate.

**TWENTY FIRST AFFIRMATIVE DEFENSE**

Defendant was not the proximate or legal cause of Plaintiffs' alleged injury.

**TWENTY SECOND AFFIRMATIVE DEFENSE**

Defendant was excused from performing the terms of the contracts due to Plaintiffs' failure to perform.

**TWENTY SECOND AFFIRMATIVE DEFENSE**

Defendant was ready, willing and able to perform the contract, and Plaintiff prevented and frustrated such performance.

**TWENTY THIRD AFFIRMATIVE DEFENSE**

Plaintiffs' claims are barred by the parole evidence rule, and the court cannot consider extrinsic evidence of what the terms of a clear and explicit contract are.

**TWENTY FOURTH AFFIRMATIVE DEFENSE**

There is no statute or contract that allows the Plaintiffs to see recovery of attorneys' fees and costs.

**TWENTY FIFTH AFFIRMATIVE DEFENSE**

Plaintiff is seeking to recover damages that are completely speculative in nature.

**TWENTY SIXTH AFFIRMATIVE DEFENSE**

Defendant's conduct is justified due to Plaintiffs' default.

**TWENTY SEVENTH AFFIRMATIVE DEFENSE**

Plaintiffs' claim for damages must be reduced for setoffs owing to Defendant.

**TWENTY EIGHTH AFFIRMATIVE DEFENSE**

Plaintiffs fail to plead fraud with the requisite particularity.

**TWENTY NINTH AFFIRMATIVE DEFENSE**

Plaintiffs' claim pursuant to 11 U.S.C. § 523(a)(6) was not plead until after the deadline to file claims for exception to discharge pursuant to Fed. R. Bankr. P. 4007, and thus is untimely and barred as a matter of law.

**THIRTIETH AFFIRMATIVE DEFENSE**

Plaintiffs engaged in unreasonable delay in commencing the action and thus is barred by the doctrine of laches.

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170    Fax: (702) 382-1169

14

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

## COUNTERCLAIMS AND OBJECTION TO PROOF OF CLAIM

Defendant, Plaintiff-in-Counterclaim, and debtor-in-possession, Marc John Randazza ("Mr. Randazza" or "Debtor"), by and through his attorneys, Larson & Zirzow, hereby respectfully submits his counterclaims and objection to proof of claim against Plaintiff and Defendant-in-Counterclaim, Excelsior Media Corp., a Nevada corporation ("Excelsior"), as follows:

### JURISDICTION AND VENUE

1.      The Court has subject matter jurisdiction to consider and determine this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

2.      The basis for relief herein are 11 U.S.C. §§ 502(b)(1), and Fed. R. Bankr. P. 3007, 4007(a), and 7001(1), (6) and (9).

3.      This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (C) and (I).

4.      Pursuant to Local Rule 7008.1, Randazza consents to the entry of final orders and judgments by the bankruptcy judge in this matter.

5.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408(1) and 1409(a).

### THE PARTIES

6.      Plaintiff-in-Counterclaim, Mr. Randazza, is an individual residing in Las Vegas, Clark County, Nevada.

7.      Defendant-in-Counterclaim, Excelsior Media Corporation is a Nevada corporation that claims to be doing business primarily in Clark County, Nevada.

### GENERAL ALLEGATIONS

8.      Mr. Randazza, is a well-respected First Amendment attorney who regularly represents individuals and institutions accused of defamation and other claims arising from their speech, and litigates, among other things, copyright claims.

9.      At all relevant times herein, Excelsior produced primarily gay pornography.

10.     At all times relevant herein, Liberty Media Holdings, LLC, a California limited liability company ("Liberty"), held the copyrights to and distributed the pornography produced by Excelsior.

11.    At all times relevant herein, Excelsior and Liberty conducted their business under the brand name "Corbin Fisher".

12.    At all times relevant herein, Corbin Fisher was one of the largest and most recognized companies in its genre.

13.    At all times relevant herein, Jason Gibson operated and controlled both Excelsior and Liberty.

14.    Randazza had previously provided services to Corbin Fisher while an associate, and then partner, of the Florida law firm Weston, Garrou, Walters & Mooney ("WGWM").

15.    In the Spring of 2009, Randazza left WGWM and his valuable partnership therein to move to California, where Excelsior was then headquartered, to become its employee and in-house General Counsel.

16.    Both Excelsior and Randazza jointly drafted the Employment Agreement, executed on June 10, 2009, by which he became its in-house General Counsel.  A true and correct copy of the Employment Agreement is attached hereto as **Exhibit 1**.

17.    In addition to the typical transactional and advisory obligations of an in-house General Counsel, Randazza was tasked by Excelsior with bringing copyright infringement actions for Corbin Fisher videos that were pirated.

18.    Due to the structure of the Corbin Fisher joint venture, suits and settlements were brought in the name of Liberty.

19.    Upon information and belief, upon recovery, Liberty would tender all such funds to Excelsior.

20.    Because Liberty was not named as a joint employer in the Employment Agreement, Randazza and Corbin Fisher agreed that litigation would be conducted through Randazza's outside law firm, Marc J. Randazza, P.A. d/b/a Randazza Legal Group ("MJRPA").

21.    At all relevant times herein, and as memorialized in Section 6(c) of the Employment Agreement, Randazza and Excelsior agreed that Randazza, through MJRPA, could render legal services to parties other than Excelsior.

22.    Pursuant to the Employment Agreement, §§ 3(A) & (B), Randazza was to be

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

paid an annual salary, to be increased annually by at least 5% upon satisfactory job performance.

23.    Having relocated to San Diego, Randazza's initial salary was $239,200 annually, being $4,600 per week.

24.    As of June 10, 2010, his salary increased by 5% to $251,160, being $4,830 per week.

25.    As of June 10, 2011, his salary increased by 5% to $263,718, being $5,071.50 per week.

26.    As of June 10, 2012, his salary should have increased by at least 5% to at least $276,903.90, being $5,325.08 per week.

27.    Excelsior never paid the 2012 salary increase.

28.    Pursuant to the Employment Agreement, § 3(C), in addition to salary, Randazza was to be paid a 25% contingent fee for all monies recovered on behalf of any Corbin Fisher property.

29.    Pursuant to the Employment Agreement, § 7(B), in exchange for foregoing his law firm partnership, Randazza was to receive severance payment in the event Excelsior unilaterally terminated his employment.

30.    On June 20, 2012, Liberty, through MJRPA filed suit against FF Magnat Ltd. d/b/a Oron.com ("Oron") for copyright infringement in the U.S. District Court for the District of Nevada.  See Liberty Media Holdings v. FF Magnat Ltd., No. 2:12-cv-01057 (D. Nev. Jun. 20, 2012) (Complaint).

31.    On or about July 1, 2012, Randazza, for Corbin Fisher, reached a settlement with Oron by which payment of $550,000 would be made, to be held in trust by Randazza for Oron until such time as the terms of the settlement permitted the release to Liberty.

32.    Oron thereupon refused to perform under the settlement and MJRPA thereafter successfully obtained an order enforcing the settlement agreement on behalf of Liberty.  See Liberty Media Holdings, LLC v. FF Magnat Ltd., No. No. 2:12-cv-01057, 2012 WL 3255044 (D. Nev. Aug. 7, 2012).

33.    Pursuant to Court orders, $550,000 of Oron's monies were deposited into

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

MJRPA's trust account on or about August 29, 2012.

34. Upon information and belief, Liberty fulfilled all material terms of the settlement agreement with Oron.

35. Title to the funds transferred to Liberty and, by extension, to Excelsior.

36. Such deposit entitled Randazza to a nondiscretionary bonus of $137,500 under the Employment Agreement within 30 days of receipt.

37. Excelsior failed to pay that nondiscretionary bonus and has continued to refuse to make such payment.

38. Pursuant to the Settlement Agreement and Mutual Release executed by the parties thereto as of June 3, 2016 [ECF No. 148, Ex. 1], Liberty and Excelsior have released and waived all claims against MJRPA arising from the deposit of the $550,000 into its trust account, which settlement the Bankruptcy Court has approved pursuant to that certain Order Granting Debtor's Motion to Authorize and Approve Settlement Pursuant to Bankruptcy Rule 9019 [ECF no. 157] entered on July 22, 2016.

39. To facilitate the litigation against Oron, an injunction in Hong Kong was obtained.

40. In August 2012, Randazza personally advanced $25,000 of his own money in litigation costs for Liberty's Hong Kong expenses at the insistence of Excelsior.

41. At that time, Randazza and Excelsior agreed that he would be reimbursed that $25,000 from funds recovered from Oron.

42. Excelsior has never repaid the $25,000 advance.

43. Due to a strained relationship with Liberty, on August 29, 2012, Randazza, for MJRPA, recommended by email that MJRPA would not represent Liberty in further new matters.

44. Withdrawal of MJRPA or even Randazza from representation of Liberty in any future matters would not have constrained Randazza from performing his duties as Excelsior's General Counsel.

45. Excelsior communicated in response that they would "construe [his] email as a

resignation of [his] employment and accept [his] resignation effective immediately."

46.     Randazza's email did not include any language communicating a resignation of his employment with Excelsior.

47.     Randazza did not voluntarily resign from his employment with Excelsior.

48.     Randazza was not terminated for gross misconduct or non-performance without correction, after a full investigation and upon detailed written explanation.

49.     Randazza was never paid the twelve weeks of severance to which he was entitled under the Employment Agreement under the salary rate then being paid, let alone the one to which he was entitled.

50.     On August 11, 2012, Randazza brought, *inter alia*, the foregoing claims in an arbitration against Excelsior, Liberty, and Mr. Gibson, before JAMS, filed as Claim No. 1260002283.

51.     On January 2, 2013, Excelsior filed counterclaims in the arbitration asserting seven alleged theories for relief based primarily on the allegations asserted in the Second Amended Complaint.

52.     On June 3, 2015, the arbitrator issued an Interim Arbitration Award (the "IAA").

53.     The IAA is non-final and has not been confirmed or reduced to a judgment.

54.     The Arbitrator has not issued a final award for Excelsior or Liberty's claim of attorneys' fees or the costs of arbitration.

55.     Following the issuance of the IAA, Excelsior and Liberty moved in the state court of Nevada to confirm the award, in response to which Randazza cross-moved to vacate or modify the IAA.

56.     Those motions remained pending at the time Randazza filed his Chapter 11 petition and such have been stayed.

57.     On December 18, 2015, the Bankruptcy Court entered an order [ECF No. 93] denying the request of Excelsior and Liberty to grant them relief from the automatic stay in the Debtor's Chapter 11 Case in order to continue pursuing both the completion of the Arbitration and/or the confirmation of the award in the Nevada state court.

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

19

58. On December 29, 2015, Excelsior filed its Proof of Claim (the "Proof of Claim") in the Chapter 11 Case (Claim 8-1), identifying Liberty as an alternate name used. A true and correct copy of Excelsior's Proof of Claim is attached hereto as **Exhibit 2**.

59. At all relevant times, Excelsior and Liberty denied during the arbitration proceedings that they were alter egos of each other.

60. In the Proof of Claim, Excelsior states that the basis of the claim is the unconfirmed IAA.

61. The unconfirmed IAA has no preclusive effect in these or any other proceedings.

62. The Arbitrator, in the IAA, wrongly awarded $275,000 to Liberty, which asserted no counterclaims in the arbitration.

63. The Arbitrator, in the IAA, wrongly awarded $275,000 to Liberty where there was no basis or other causation that the so-called "bribe" on which the award was based caused Liberty to tender that amount back to Oron.

64. The Arbitrator, in the IAA, wrongly awarded $55,000 to Excelsior for fees earned by MJRPA pursuant to a court order for services rendered to a court-appointed receiver in a case with absolutely no connection to Excelsior or Liberty in any way.

65. At all relevant times herein, Excelsior knew or should have known by examination of the public docket in Righthaven, LLC, v. Hoehn, 2:11-cv-00050 (D. Nev.) that such $55,000 was earned by MJRPA, not Randazza personally, and that he did not personally receive such $55,000. See Righthaven, LLC v. Hoehn, 2:11-cv-00050 (D. Nev. Mar. 15, 2013) (report of receiver); Righthaven, LLC v. Hoehn, 2:11-cv-00050 (D. Nev. Jun. 6, 2013) (order adopting report of receiver).

66. The Arbitrator, in the IAA, wrongly awarded $5,000 where MJRPA tendered the funds from James Grady to Liberty's Hong Kong counsel on Liberty's behalf.

67. At all relevant times herein, Excelsior and Liberty knew or should have known, through the billing records of Liberty's Hong Kong counsel or otherwise, that MJRPA tendered such funds to Liberty's Hong Kong counsel on Liberty's behalf.

68. The Arbitrator, in the IAA, wrongly awarded $197,000 to Excelsior as

20

disgorgement of salary where there were no actual conflicts of interest.

69.    The Arbitrator, in the IAA, wrongly awarded $197,000 to Excelsior as disgorgement of salary where the alleged conflicts caused Excelsior no harm.

70.    The Arbitrator, in the IAA, wrongly awarded $197,000 to Excelsior as disgorgement of salary where the Employment Agreement expressly permitted Randazza to represent third parties.

71.    The Arbitrator, in the IAA, wrongly awarded $197,000 to Excelsior as disgorgement of salary where neither the law nor contract permitted such disgorgement.

72.    The Arbitrator, in the IAA, wrongly ordered the return of a laptop to Excelsior where the information that would identify the subject laptop, and demonstrate its existence, was never offered.

73.    The Arbitrator, in the IAA, wrongly ordered the payment of $3,215.98 for Excelsior's forensic costs where nothing was spoliated or converted, but rather preserved by MJRPA.

74.    The Arbitrator, in the IAA, wrongly failed to order payment of the unpaid salary increase, severance, and bonus, where such was earned by Randazza under the plain terms of the Employment Agreement.

75.    The Arbitrator, in the IAA, wrongly failed to order repayment of the $25,000 advanced by Randazza, despite otherwise recognizing he was owed as much and permitting Randazza to use it as an offset.

76.    The Arbitrator, in the IAA, wrongly found against Randazza in reliance on perjurious statements offered at the Arbitration and promoted and suborned by Excelsior and its counsel, who knowingly and willfully presented evidence that she knew to be perjurious.

77.    The Arbitrator was biased against Randazza.

78.    The Arbitrator exceeded the scope of his authority.

79.    The Arbitrator engaged in a manifest disregard of the law and facts.

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

21

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

### (Objection to Claim)

80.     Randazza repeats, realleges, and fully incorporates the allegations plead above.

81.     On December 29, 2015, Excelsior filed its Proof of Claim in Randazza's Chapter 11 Case asserting a general unsecured claim in the amount of $1,552,614.29 based on the IAA. The unconfirmed IAA is conclusory, not confirmed, and interim; it has no independent evidentiary value and it is not admissible evidence.  No backup or supporting documentation is attached to Excelsior's Proof of Claim, and thus the claim is not entitled to even *prima facie* validity.

82.     Excelsior's claim is unenforceable against Randazza because the IAA is not binding or enforceable against him.

83.     Excelsior's claim is unenforceable against Randazza because it is based on false and misleading allegations of wrongdoing.

84.     Excelsior's claim is unenforceable against Randazza because most of the alleged damages were suffered by Liberty, not Excelsior, and Excelsior lacks standing to assert such claims.

85.     Excelsior's claim is unenforceable against Randazza because disgorgement is not a remedy permitted by law.

86.     Excelsior's claim is unenforceable against Randazza because it suffered no harm caused by him.

87.     Excelsior's claim is unenforceable against Randazza because it is not a prevailing party entitled to attorneys' fees, expert witness expenses, or arbitration costs.

88.     Excelsior's claim is unenforceable against Randazza because he engaged in no impermissible conflicts of interest.

89.     Excelsior's claim is unenforceable against Randazza because Oron was not entitled to the return of $275,000.

90.     Excelsior's claim is unenforceable against Randazza because the laptop never

existed.

91.    Excelsior's claim is unenforceable against Randazza because he never spoliated or converted evidence or property.

92.    Excelsior's claim is unenforceable against Randazza because the $5,000 from Mr. Grady was tendered to representatives of Corbin Fisher.

93.    Excelsior's claim is unenforceable against Randazza because the Employment Agreement permitted MJRPA to earn the $55,000.

94.    To the extent the Excelsior Proof of Claim is allowed, it is more than setoff or offset by the substantial damages incurred by Randazza as a result of Excelsior's multiple breaches of contract.

95.    Liberty has no enforceable claim against Randazza or his bankruptcy estate because it has never filed a timely proof of claim in the Chapter 11 Case by the required bar date of December 30, 2015 pursuant to the *Notice of Bankruptcy, et al.* [ECF No. 6] and per LR 3003, and it may not "piggyback" on Excelsior's Proof of Claim.

## SECOND CLAIM FOR RELIEF

### (Breach of Contract)

96.    Randazza repeats, realleges, and fully incorporates the allegations plead above.

97.    Excelsior was a party to the Employment Agreement with Randazza.

98.    Prior to June 10, 2012, Randazza performed satisfactorily under the Employment Agreement.

99.    Pursuant to the Employment Agreement, Excelsior was to increase Randazza's salary by at least 5% as of June 10, 2012.

100.    Excelsior failed to increase Randazza's salary as of June 10, 2012, or thereafter.

101.    Such failure constituted a breach of the Employment Agreement.

102.    As a proximate result of the breach, Randazza suffered monetary losses.

103.    Randazza is otherwise entitled to be paid such amount under the California or Nevada labor and employment laws.

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170    Fax: (702) 382-1169

104.    Randazza is entitled to be compensated for the unpaid salary increase.

### THIRD CLAIM FOR RELIEF

### (Breach of Contract)

105.    Randazza repeats, realleges, and fully incorporates the allegations plead above.

106.    Excelsior was a party to the Employment Agreement with Randazza.

107.    Randazza recovered a $550,000 settlement for Corbin Fisher from Oron.

108.    Pursuant to the Employment Agreement, Randazza was to be paid a nondiscretionary bonus of 25% of that settlement, totaling $137,500.

109.    Excelsior failed to pay such bonus.

110.    Such failure constituted a breach of the Employment Agreement.

111.    As a proximate result of the breach, Randazza suffered monetary losses.

112.    Randazza is otherwise entitled to be paid such amount under the California or Nevada labor and employment laws.

113.    Randazza is entitled to be compensated for the unpaid bonus.

### FOURTH CLAIM FOR RELIEF

### (Breach of Contract)

114.    Randazza repeats, realleges, and fully incorporates the allegations plead above.

115.    Excelsior was a party to the Employment Agreement with Randazza.

116.    Randazza was unilaterally terminated from his employment with Excelsior.

117.    Pursuant to the Employment Agreement, Excelsior was to pay Randazza twelve weeks of salary, at the then-proper contractual rate, as severance upon his termination.

118.    Excelsior failed to pay such severance.

119.    Such failure constituted a breach of the Employment Agreement.

120.    As a proximate result of the breach, Randazza suffered monetary losses.

121.    Randazza is otherwise entitled to be paid such amount under the California or Nevada labor and employment laws.

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

122.    Randazza is entitled to be compensated for the unpaid severance.

## FIFTH CLAIM FOR RELIEF

### (Breach of Contract)

123.    Randazza repeats, realleges, and fully incorporates the allegations plead above.

124.    Excelsior was a party to the Employment Agreement with Randazza.

125.    Randazza was required by Excelsior to advance $25,000 on behalf of Liberty to be repaid upon receipt of settlement funds from Oron.

126.    Such advance was memorialized by a promissory note.

127.    Corbin Fisher received $550,000 in settlement funds from Oron.

128.    Excelsior failed to repay the $25,000 advance.

129.    Such failure constituted a breach of contract.

130.    As a proximate result of the breach, Randazza suffered monetary losses.

131.    Randazza is otherwise entitled to be repaid such amount under the California or Nevada labor and employment laws.

132.    Randazza is entitled to be compensated for the unpaid monetary advance.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Randazza prays for the following relief:

1.    Disallowing Excelsior's Proof of Claim in its entirety;

2.    Dismissing Plaintiffs' Discharge Objection with prejudice;

3.    Awarding judgment in favor of Mr. Randazza for his attorneys' fees, costs and expenses as a result of the filing of a frivolous Proof of Claim and a frivolous Discharge Objection and for breach of the Employment Agreement;

4.    Awarding judgment in favor of Mr. Randazza and against Excelsior for compensatory damages;

5.    Pre-judgment and post-judgment interest as allowable by law; and

6.    Granting Mr. Randazza such other and further relief as is just and proper.

. . .

. . .

Dated:  November 2, 2016.

LARSON & ZIRZOW, LLC

By:  /s/ Matthew C. Zirzow
ZACHARIAH LARSON, ESQ.
Nevada Bar No. 7787
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
850 E. Bonneville Ave.
Las Vegas, Nevada  89101

Attorneys for Defendant

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

# EXHIBIT "1"

CONTRACT OF EMPLOYMENT FOR CORPORATE GENERAL COUNSEL
*By and Between Excelsior Media Corp. and Marc J. Randazza*

By the signature mark below, Excelsior Media Corp. (hereinafter "Excelsior") hereby extends this offer of employment to Marc J. Randazza (hereinafter "Randazza"), which is contingent upon satisfactory results of a criminal background investigation and reference verification. Randazza, by his signature mark below, does accept such offer as detailed by the terms and conditions set out in this Agreement and the fully integrated Addendums specified herein.

1.    Pre-Employment and Transition Period

    A.    *Duties Owed to Former Clients*

    Excelsior understands and acknowledges that as an attorney, Randazza owes certain duties to those clients whom he has represented prior to accepting employment with Excelsior. Randazza will make every reasonable effort to conclude all representational efforts with respect to such clients (except as provided for in Section 6C, below) prior to commencing employment with Excelsior. However, to the extent that Randazza is called upon to advise, provide information to, or otherwise engage with his former law partners or subsequent counsel for the benefit of former clients and with respect to matters for which previous representation was provided, Excelsior expressly authorizes him to do so.

    The parties understand that the majority of Randazza's current client work will taper down as quickly as ethically and practically possible. However, during the first 90 days of this contract's duration, Excelsior shall liberally grant Randazza accommodations to facilitate the winding down of his private practice.

    Also, as outlined in Section 6C, Randazza shall continue to render ongoing representation to a select portfolio of private clients.

    B.    *Relocation*

    While Randazza shall, initially, have the right to determine his regular location of employment, Excelsior shall have the right to request that Randazza relocate to another location for the convenience of the company. Randazza shall be entitled to delay any relocation for a time period sufficient to sell his residence or to lessen the disruption on any school-age children by having any move scheduled for the summer time, after the school year ends, and if his wife is employed at the time of any request, similar accommodations shall be granted.

    If Excelsior requests that Randazza relocate to a location other than San Diego or Tampa, uncontemplated by the parties at the time of the execution of this agreement, then Randazza may refuse to relocate and be deemed to be unilaterally discharged, as defined in Section 7B of this Agreement, and shall be entitled to the severance compensation provided therein.

    In the event that Randazza elects to relocate to San Diego, reasonable relocation expenses and two house hunting trips will be paid for by Excelsior.

2.    Start Date, Location, Job Title, Job Duties, and Reporting Relationship

    A.    *Start Date*

EMC000494

Randazza's employment with Excelsior will commence no earlier than July 1, 2009 and no later than September 15, 2009, and will continue thereafter on an at-will basis until terminated by either party pursuant to the procedures and specific provisions of this contract.

### B.    Work Location

Excelsior and Randazza agree that the job duties of General Counsel may be performed at a location of Randazza's choice. However, Excelsior will only provide relocation assistance if Randazza is to relocate to San Diego, California, or if Excelsior, for its own convenience, requires Randazza to relocate to another geographic location at some point in the future. However, any such "required relocation" shall be subject to the other terms and conditions of this contract.

During periods when Randazza resides outside of San Diego, California, Randazza will work primarily from a home office, or other office space maintained and paid for wholly at Randazza's expense. Randazza will generally be available electronically via internet and telephone during normal business hours. Randazza's office space, if paid for by Randazza may be used jointly for outside projects. However, no Excelsior equipment (as discussed below) may be used for any outside projects.

Should Randazza relocate to San Diego, Randazza will work primarily from Excelsior's San Diego office.

However, should Randazza relocate to San Diego, Randazza shall be permitted and entitled to work remotely. It is contemplated that if Randazza relocates to San Diego, he may work remotely for extended periods of time from Massachusetts, New York, or elsewhere. These extended periods shall be approved by Excelsior, and Randazza shall be fully available and "on duty" during these periods. These periods shall not be during times that, for Excelsior's convenience, Randazza's presence in San Diego is required. Additionally, these periods shall not be of such duration as to cause inconvenience to Excelsior.

In the event that Randazza relocates to San Diego, any days required for such relocation (including house hunting) shall not be charged to Randazza's vacation time.

### C.    Job Title, Job Duties, Reporting Relationship

Randazza's job title will be General Counsel, reporting to Jason Gibson, CEO. The position of General Counsel encompasses a variety of duties and responsibilities, which may include, but are not limited to, those outlined in the General Counsel Job Description, attached hereto as Addendum A.

## 3.    Remuneration

### A.    Starting Salary

Randazza will earn an annual starting salary of $208,000.00, which will be paid by Excelsior on a weekly basis in the amount of $4,000.00 per week. In the event that Randazza relocates to San Diego, his salary shall be raised to $239,200 annually or $4,600 per week.

### B.    Salary Reviews and Adjustments

After six months, Randazza and Excelsior's CEO shall conduct a salary and performance review. At that time, Randazza's salary may be adjusted if deemed appropriate by both parties.

Thereafter, subject to overall satisfactory job performance as determined by Excelsior's CEO, Randazza's annual salary will be reviewed on each employment anniversary date and increased by not less than 5% of his then current annual salary. If unforeseen business

EMC000495

*Excelsior-Randazza*
*Employment Contract*
*Page 3 of 11*

conditions make it necessary, the annual salary increase may be deferred or waived by the execution of a Memorandum of Understanding signed by Randazza and Excelsior, which will be attached and fully integrated into this Agreement.

In the event that an annual review does not result in an increase deemed sufficient by Randazza, then Randazza shall have the right to request a mid-year salary review six months thereafter. Excelsior shall not be obliged to re-adjust at this mid-year review, but shall in good faith endeavor to resolve any discrepancies between actual remuneration and salary expectations at that time.

C.    Nondiscretionary and Discretionary Bonuses

Randazza will receive, as a nondiscretionary bonus, twenty-five (25) percent of any settlement funds paid to Excelsior in connection with legal matters (whether or not formal litigation is commenced). Settlement fund bonuses will vest at the time of settlement, and be paid within thirty (30) days of the date that the funds are received by Excelsior. If Randazza's employment terminates, for any reason by either party, Randazza will be entitled to all vested settlement bonus amounts, regardless of when the settlement funds are collected. Randazza will also be eligible to receive other nondiscretionary bonuses, such as year-end bonuses, incentive program bonuses, or profit-sharing bonuses, as determined by Excelsior's current and future bonus plans, according to the terms of such plans. Randazza will be eligible for discretionary bonuses, such as merit or performance bonuses, as determined solely by Excelsior.

E.    Vacation and Paid Holidays

Randazza will earn 15 days of Paid Time Off (PTO), accrued on a weekly basis as labor is performed, during the first year of employment; and 20 PTO days per year for the 2nd and 3rd year, 25 PTO days per year for 4-6 years, and 30 PTO days per year for 7th year onward. These PTO days would be accrued weekly per the company policy.

Randazza will be entitled to paid holidays under the same terms and conditions as other Excelsior employees.

F.    Sick time: Randazza shall have the same sick time privileges as afforded to all other Excelsior employees.

G.    Changes to company policies: In the event that Excelsior changes from a PTO policy to separate Vacation and Sick Time policies, Randazza's PTO as contemplated in this Agreement shall be deemed to be vacation time.

4.    Fringe Benefits

As of commencement of employment, Randazza will be eligible to participate in and be covered by the health, dental, disability and life insurance plans offered by Excelsior to its employees, subject to the terms and conditions of those plans. Following the required waiting period, Randazza will be eligible to participate in Excelsior's 401k plan, and to receive employer matching contributions, as determined by the terms and conditions of the plan. Randazza acknowledges that the terms and conditions of the fringe benefit plans offered by Excelsior to its employees may change following the Effective Date of this Agreement.

5.    Professional Memberships, Liability Insurance, and Resources

A.    Bar Association Dues

At the time of employment, Randazza is licensed in Florida and Massachusetts and in all federal and appellate courts in those states, as well as in the Federal Circuit. During all periods

EMC000496

of employment, Excelsior will pay annual state bar association dues for each state in which Randazza is licensed as an attorney, renewal fees for federal and appellate court licenses, and continuing legal education credits required to maintain his bar memberships in good standing. Excelsior shall also cover membership fees for Bar practice sections relevant to Randazza's role as General Counsel.

B.    California Bar Exam

Excelsior acknowledges that membership in the State Bar of California is necessary for effective performance of the position of General Counsel, and that as of the Effective Date of this Agreement, Randazza is not yet a member of the State Bar of California. Excelsior agrees to pay all fees and costs required for Randazza to prepare for and pass the California Bar Exam, including all application and background investigation fees and costs, all BarBri or similar bar study course fees, as well as all incidental costs associated with taking the required exams, including travel, meal and lodging expenses.

In addition, Excelsior acknowledges that preparing for the California Bar Exam will require study time that Randazza would otherwise spend performing his job duties. Excelsior agrees that during the sixty (60) day period preceding the test date selected by Randazza and Excelsior, Randazza will be expected to dedicate no more than fifteen (15) hours per week to General Counsel job duties, with the understanding that the remainder of his time will be spent studying and otherwise preparing to take the California Bar Exam. During the 21 days preceding the selected test date, Excelsior agrees that Randazza will perform no work related duties, and will devote all of his time to exam preparation. Randazza will be permitted to devote this time and focus to preparing for and taking the bar exam without reduction in salary, and without using accrued PTO. During this period, Randazza and Excelsior will cooperate to arrange work load and work commitments to permit Randazza to focus on bar exam studies, and that depending on business needs, it may be necessary to engage outside counsel to handle certain assignments during this period.

C.    Professional Liability Insurance

Excelsior warrants that it maintains corporate Errors and Omissions insurance and that the work performed by its General Counsel is covered by such insurance. Randazza will also maintain professional malpractice insurance, as separate coverage, and at his sole discretion and expense.

Randazza's outside projects shall not be covered by any professional liability insurance provided by Excelsior, and Randazza must carry his own liability coverage or self-insure for those purposes.

D.    Other Professional Memberships and Resources

Memberships: Excelsior agrees that Randazza's membership in the First Amendment Lawyer's Association (FALA), which is the adult entertainment lawyers' guild, is valuable to his role as Excelsior's General Counsel, and agrees to pay the annual dues required to maintain such membership. In addition, Randazza's membership in the International Trademark Association is deemed valuable to Excelsior and shall be paid for as well. Randazza will attend the twice-annual conferences of FALA, the annual conference of the International Trademark Association, and any other conferences or engagements that are agreed by both parties to be beneficial to Randazza's duties as General Counsel including AVN, Internext, and the like. Excelsior will pay all reasonable necessary and incidental fees and costs associated with attending these events, including for travel, lodging, meals, and business networking.

Legal Research: Excelsior will open and maintain a Lexis® or Westlaw® account, with a subscription level sufficient to permit Randazza to fully perform the duties of General Counsel.

EMC000497

Excelsior will also purchase required treatises or other tools deemed by Randazza to be needed to perform his duties as General Counsel effectively, subject to a reasonable annual budget that may be set by Excelsior.

Secretarial Support: At the time of the execution of this agreement, it is not anticipated that Randazza will require secretarial support. However, in the event that Randazza does require secretarial support, Excelsior agrees to either hire secretarial support for Randazza, or to reimburse Randazza for part-time secretarial services that may be available in any space-sharing arrangements or offices that Randazza may rent. In particular, Randazza is contemplating an office rental (and he shall pay for that office rental) in Massachusetts, where secretarial services may be purchased on an hourly basis. In the event that secretarial support is required, Randazza shall endeavor to use part-time assistance prior to retaining full time support staff assistance.

Equipment: Excelsior shall reimburse Randazza for the cost of a PDA/Phone, a laptop computer (preferably Apple operating system), a high-speed internet connection, and a dedicated fax/phone line. While these may, occasionally and incidentally, be used for personal purposes, their primary use shall be for Excelsior.

Education and CLE: Excelsior shall pay for any Continuing Legal Education (CLE) required to maintain good standing in the various Bars to which Randazza is admitted. Additionally, should Randazza identify a CLE or a course, which would benefit Excelsior, Randazza shall petition Excelsior for approval. Shall such course be approved, Randazza shall have his tuition for such course or program reimbursed by Excelsior.

6.    Ethics and Conflicts; Confidentiality, Inventions, Interference, and Solicitation; Outside Projects

A.    Ethics and Conflicts

Excelsior acknowledges that in addition to complying with accepted business ethics standards and Excelsior's internal code of conduct, Randazza is bound to adhere to the professional ethical standards imposed upon attorneys by state bar associations and under the common law. Excelsior covenants it will not require, as any condition of initial or continued employment, that Randazza breach an ethical standard as required by law and the bar associations to which he belongs. This includes the continuing duties of confidentiality and loyalty Randazza owes to his former clients. Excelsior agrees that it's insistence on a course of conduct that violates a legally mandated professional ethical standard would be a material breach of this Agreement, constituting Excelsior's unilateral termination of this Agreement and entitling Randazza to the severance provisions of this Agreement as detailed in Section 7B below.

B.    Confidentiality, Inventions, Interference and Solicitation

In exchange for the consideration detailed herein, Randazza agrees to be bound to the Confidentiality and Inventions Assignment Agreement attached hereto as Addendum B, which is fully integrated into this Agreement. Excelsior and Randazza agree that the Confidentiality and Inventions Assignment Agreement is intended to comply with, and be construed in accordance with, California Business and Professions Code Section 16600 (prohibiting noncompete agreements) and the rules of professional conduct of the California, Florida, and Massachusetts state bar associations.

Randazza is the owner of Exile Political Media, LLC, and publishes a legal blawg (currently called "The Legal Satyricon"; although the name may change in the future without detriment to ownership rights). Excelsior acknowledges that this blawg is 100% Randazza's intellectual property.

C.    Outside Projects

EMC000498

Insofar as such activities do not violate any professional ethical standard or the Confidentiality and Inventions Assignment Agreement attached hereto as Addendum B, Excelsior agrees that Randazza may, without breaching such duties and agreements, provide professional services to a limited number of outside clients on an ongoing basis, as long as such services are rendered without legal or professional conflict with Excelsior, and such projects are rendered through a separate legal entity, such as Marc J Randazza, PA or another outside law firm. Under no circumstances shall Randazza represent, nor allow the perception to exist, that such services are being rendered as part of his duties with Excelsior.

Randazza agrees that any such outside projects shall be rendered during non-working hours, on vacation days, or on unpaid leave days. If a necessity arises to be available for an outside project during working hours, Randazza shall be obligated to either take a vacation day or an unpaid leave period during that time of necessity, or shall make up the time to Excelsior. In any circumstance where there is such a necessity, yet it conflicts with an Excelsior project or an Excelsior appointment, the Excelsior responsibility shall always, without exception, prevail.

In the event that Excelsior's management perceives that Randazza's outside projects are interfering with his duties as General Counsel, the parties shall endeavor, in good faith, to resolve the issue. However, Randazza acknowledges that his duties as General Counsel are paramount and that his first duty of legal and temporal loyalty must always lie with Excelsior.

Excelsior equipment, such as any laptop paid for by Excelsior, shall not be used for any outside projects. Incidental or de minimis use shall not constitute a violation of this policy. Nevertheless, Randazza shall keep a "wall of separation" between Excelsior and any outside work.

D.      *Excelsior Pro Bono Services*

From time to time, at Randazza may present to Excelsior a pro-bono project to be conducted under the auspices of Excelsior's legal department as part of his duties as General Counsel. These projects shall generally be free speech and civil rights cases, and they shall only be rendered under this paragraph if Excelsior approves of them as being in Excelsior's best interest.

When such projects are rendered, Randazza shall coordinate his efforts with Excelsior's public relations staff to maximize the benefit to Excelsior for such community service.

7.      Contract Termination and Severance

A.      *Contract Termination*

This Agreement may be terminated by either party, with or without advance notice to the other party, and with or without cause.

B.      *Severance*

Excelsior acknowledges that in accepting its offer of employment, Randazza forgoes a valuable partnership in an established law firm, and in so doing, withdraws from representing the vast majority of his clients and passes such representation to other attorneys. It is highly unlikely that Randazza can reclaim representation of such clients if his employment relationship with Excelsior terminates. In recognition of this, Excelsior agrees that if it unilaterally terminates Randazza's employment and this Agreement, severance will be paid to Randazza according to the following schedule and in the following amounts:

If termination occurs during the first year of employment, Excelsior will pay Randazza as severance the equivalent of forty-eight (48) weeks salary at his then effective salary rate, less applicable withholdings;

If termination occurs during the second year of employment, Excelsior will pay Randazza as severance the equivalent of thirty-six (36) weeks salary at his then effective salary rate, less applicable withholdings;

If termination occurs during the third year of employment, Excelsior will pay Randazza as severance the equivalent of twenty-four (24) weeks salary at his then effective salary rate, less applicable withholdings;

If termination occurs during the fourth year of employment or at any time thereafter, Excelsior will pay Randazza as severance the equivalent of twelve (12) weeks salary at his then effective salary rate, less applicable withholdings.

*Exceptions*: Excelsior will not be deemed to have unilaterally terminated Randazza, and no severance benefits will be owed, if (a) Randazza resigns voluntarily and without coercion, or (b) if Excelsior unilaterally terminates Randazza, after full investigation and upon detailed written explanation, for gross misconduct or for non-performance without correction as defined below.

For the purposes of this Agreement, the term "unilaterally terminates" shall be understood to mean a decision by Excelsior to terminate Randazza's employment for any reason, including by layoff, business closure or bankruptcy, or the creation or allowance of working conditions constituting a constructive discharge including any involuntary reduction in salary or material change to the terms of employment.

Additionally, Randazza is accepting employment largely as a result of his working relationship with the current Excelsior management.  In the event that Excelsior is acquired by another company or merged with another company, this shall constitute "unilateral termination" by Excelsior, even if the new or successor entity offers employment on the same or more favorable terms than previously provided by Excelsior.  However, if Randazza continues employment with the new or successor entity, and if this Agreement is superseded by a new agreement between Randazza and the new or successor entity, a "unilateral termination" will not have been perfected

The term "gross misconduct" shall be understood to mean discharge for acts of violence against persons or property, theft, embezzlement, acts of dishonesty causing verifiable harm to Excelsior or its reputation, or conviction for a felony offense.

The term "non-performance without correction" shall mean that Randazza has been duly terminated pursuant to the following procedures:

      i.     Step One - Verbal Counseling:

          As the first step in correcting unacceptable performance or behavior, Excelsior's management should review pertinent job requirements with Randazza to ensure his or her understanding of them. Verbal counseling should consider the severity of the problem, Randazza's previous performance appraisals and all of the circumstances surrounding the particular case, stating that a written warning, probation or possible termination could result if the problem is not resolved should indicate the seriousness of the performance or misconduct. Randazza shall be asked to review what has been discussed to ensure his or her understanding of the seriousness of the problem and the corrective action necessary. The verbal counseling session shall be documented for future reference

EMC000500

Immediately following the review.

ii    **Step Two - Written Counseling:**

If the unacceptable performance or behavior continues, the next step should be a written warning. Certain circumstances, such as violation of a widely known and key policy or safety requirement, may justify a written warning without first using verbal counseling. The written warning defines the problem and how it may be corrected. The seriousness of the problem is again emphasized, and the written warning shall indicate that probation or termination or both may result if improvement is not observed. Written counseling will become part of Randazza's personnel file, although his supervisor may direct that the written warning be removed after a period of time, under appropriate circumstances.

iii    **Step Three - Probation**

If the problem has not been resolved through verbal counseling, followed by written counseling, Randazza shall be placed on probation. Probation is a serious action in which the employee is advised that termination will occur if improvement in performance or conduct is not achieved within the probationary period.

The probation period for Randazza shall be at least 30 days and no longer than 90 days, depending on the circumstances.

The probation period shall commence with a meeting between Randazza and Excelsior's CEO (or other party that the CEO shall designate). In this meeting, Randazza and Excelsior shall agree upon a "probation plan," which shall include a statement of the following:

- A review of oral and written warnings;
- The length of probation;
- The specific behavior modification or acceptable level of performance;
- suggestions for improvement;
- A scheduled counseling session or sessions during the probationary period, during which both parties shall endeavor in good faith to resolve the issues leading to probation; and
- A statement that further action, including termination, may result if defined improvement or behavior modification does not result during probation.

"Further action" may include, but is not limited to, reassignment, reduction in pay, grade or demotion.

Excelsior's CEO should personally meet with Randazza to discuss the probationary letter and answer any questions and to create an outline of goals and actions, which will result in a resolution of the probationary status.

Randazza shall acknowledge receipt by signing the letter. Such signature shall not be deemed to be an acknowledgement of any wrongdoing – but shall be evidence that the probationary document was delivered and received.

EMC000501

The probationary letter becomes part of Randazza's personnel file. On the defined probation counseling date or dates, Randazza and his supervisor will meet to review the his progress in correcting the problem that led to the probation.  There shall be no fewer than two "progress meetings."  Brief written summaries of these meetings should be prepared with copies provided to Randazza.  Randazza shall be given written feedback after each meeting, informing him if the probationary period is resulting in the desired improvement, and/or suggesting additional improvements.

At the completion of the probationary period, the Excelsior's CEO will determine whether Randazza has achieved the required level of performance and to consider removing him from probation, extending the period of probation or taking further action. Randazza is to be advised in writing of the decision. Should probation be completed successfully, Randazza should be commended, though cautioned that any future recurrence may result in further disciplinary action.

iv.    Step Four – Unpaid Leave

In the event the above procedures do not correct the employment problem that led to the probationary period, either party may demand that Randazza be placed on unpaid leave.  During the period of unpaid leave, Randazza may not engage in any of his prior duties nor shall he collect any pay nor benefits, and Randazza shall render his work station empty and shall return all company property and cease using any company resources.

During the unpaid leave period, Randazza shall not report to Excelsior's premises, except at Excelsior's request or per Excelsior's permission. Additionally, during this period, Randazza shall be permitted (and encourages) to seek alternate employment and Excelsior shall be permitted to seek a replacement for Randazza.

It is understood that during the Unpaid Leave period, Randazza shall collect neither pay nor benefits of any kind from Excelsior, nor may he represent to anyone but potential subsequent employers that he is employed by Excelsior.  Randazza may apply for unemployment benefits during the unpaid leave period, and Excelsior shall not dispute any claim for benefits.

During the unpaid leave period, if Randazza and Excelsior wish to come to a new employment arrangement, they are permitted to do so. However, neither party shall be obliged to do so, and both parties shall presume that the unpaid leave period is a prelude to involuntary termination or resignation.

Both Randazza and Excelsior agree that during the unpaid leave period, Randazza will not be deemed to have either been terminated or to have resigned, and that for the purposes of California Labor Code Sec. 201, 202, and 203, Randazza is not entitled to be paid all final wages, including accrued but unused PTO/vacation benefits until the time of termination or resignation as expressed in writing, or as provided in Step Five below, and that no waiting time penalties will be due to Randazza during the period of unpaid leave.

EMC000502

*Excelsior-Randazza*
*Employment Contract*
*Page 10 of 11*

v.    **Step Five: Involuntary Termination:** In 60 days, the Unpaid Leave period shall automatically end and the employee shall be deemed to be terminated. The parties may lengthen or shorten this time by mutual agreement.

8.    **Dispute Resolution**

Excelsior and Randazza hereby agree that any controversy, dispute or claim arising out of this Agreement or relating to Randazza's employment with Excelsior—including any claims arising under state or federal anti-discrimination laws—shall first be settled through good faith negotiation and voluntary mediation. If the dispute cannot be settled through negotiation or mediation, the parties agree to settle such dispute by binding arbitration administered by the Judicial Arbitration and Mediation service or American Arbitration Association pursuant to its Employment Arbitration Rules & Procedures and subject to its policies on employment arbitration minimum standards for procedural fairness. Judgment on any Award made by the arbitrator may be entered in any court having jurisdiction. This agreement to arbitrate shall include the following terms, as required by California law:

A.    *Initiation of Arbitration.* Once either party determines that efforts at good faith negotiation and mediation have failed, within 60 days of notifying the other party of this determination, either party may initiate arbitration proceedings by submitting to the Judicial Arbitration and Mediation service or American Arbitration Association a written demand for arbitration listing the name and contact information for both parties, along with a copy of this Agreement, and providing the other party a copy of the written demand.

B.    *Fees and Costs of Arbitration.* Excelsior agrees to pay all forum fees and all fees and expenses charged or incurred by the arbitrator. Each party shall bear their own attorneys fees and costs; however, the Arbitrator is hereby authorized to direct the non-prevailing party to pay to the prevailing party their attorneys fees and costs, in the Arbitrator's sole discretion.

C.    *Arbitrator Selection.* This Agreement does not provide for the pre-selection of a specific arbitrator. A neutral arbitrator will be selected according to the normal rules and procedures of the Judicial Arbitration and Mediation service or American Arbitration Association, as agreed to by the parties.

D.    *Discovery.* The arbitrator will determine the appropriate scope of discovery as governed by the normal rules and procedures of the Judicial Arbitration and Mediation service or American Arbitration Association, and will in any case be sufficient to permit each party to fully investigate and present their claims and defenses.

E.    *Written Decision.* The arbitrator will provide all parties with a written decision that details the arbitrator's findings of law and fact, as well as the arbitrator's reasoning in making those findings. The arbitrator is expressly authorized to award either party any and all remedies to which he would otherwise be entitled under state or federal law, as if the matter were brought in a civil court of competent jurisdiction.

F.    *Place of Arbitration.* The arbitration will be conducted within 40 miles of the city of San Diego, California, or as otherwise mutually agreed to by the parties.

G.    *Statute of Limitations.* Any claim governed by this Agreement shall be filed no later than the legally applicable statute of limitations for the type of claim

EMC000503

presented, accruing from the date that the claim is discovered, or one year from the last date of employment, whichever comes first.

9.    **Miscellaneous Terms and Conditions**

A.    *Effective Date*

The Effective Date of this Agreement will be the last date that any party signs the Agreement.

B.    *Counterparts*

This Agreement may be executed in multiple counterparts or on multiple pages bearing a party's signature, as if the Agreement was signed by all parties on the same page.

C.    *Severance of Unenforceable Provisions*

Should any court or arbitrator with authority to interpret and enforce this Agreement rule that any provision, paragraph or term of this Agreement be is unenforceable, such unenforceable terms will be severed and the remaining provisions, paragraphs and terms of the Agreement will remain in full force and effect.

D.    *Modification*

Any modification of this Agreement must be made in writing and signed by Randazza and Jason Gibson, CEO of Excelsior.

E.    *Governing Law*

This Agreement shall be governed by and construed in accordance with the laws of the State of California, without regard to conflict of laws. Any action to enforce an arbitrator's award will be venued in San Diego County, California, unless otherwise agreed to by the parties.

F.    *Integrated Addendums*

Addendum A – General Counsel Job Description
Addendum B – Confidentiality and Inventions Assignment Agreement

BY SIGNING BELOW, EACH PARTY REPRESENTS THAT THEY ARE AUTHORIZED TO ENTER INTO THIS AGREEMENT, AND DO SO KNOWINGLY AND VOLUNTARILY, THAT EACH HAS HAD AN OPPORTUNITY TO CONSULT WITH LEGAL COUNSEL REGARDING THIS AGREEMENT AND HAS EITHER DONE SO OR DECLINES TO DO SO, AND THAT EACH PARTY INTENDS TO BE BOUND BY THE TERMS, CONDITIONS AND PROMISES EXPRESSED IN THIS AGREEMENT AND ITS INTEGRATED DOCUMENTS.

Date: June 9, 2009          Date: 6/10/2009

Signed:                     Signed:


Marc J. Randazza, Esq.          Jason Gibson, CEO, Excelsior Media

EMC000504

# EXHIBIT "2"

**Fill in this information to identify the case:**

Debtor 1      MARC JOHN RANDAZZA

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:   District of Nevada

Case number    BK-S-15-14956-ABL

---

Official Form 410

# Proof of Claim

12/15

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

---

| **Part 1:** | **Identify the Claim** |
| --- | --- |

| 1. Who is the current creditor? | Excelsior Media Corp. |
| --- | --- |
| | Name of the current creditor (the person or entity to be paid for this claim) |
| | Other names the creditor used with the debtor   Liberty Media Holdings, LLC |

| 2. Has this claim been acquired from someone else? | ☑ No |
| --- | --- |
| | ☐ Yes.  From whom? _____ |

| 3. Where should notices and payments to the creditor be sent? | **Where should notices to the creditor be sent?** | **Where should payments to the creditor be sent? (if different)** |
| --- | --- | --- |
| Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | Lang, Hanigan & Carvalho, LLP | Lang, Hanigan & Carvalho, LLP |
| | Name | Name |
| | 21550 Oxnard Street, Suite 760 | 21550 Oxnard Street, Suite 760 |
| | Number     Street | Number     Street |
| | Woodland Hills       CA       91367 | Woodland Hills       CA       91367 |
| | City       State       ZIP Code | City       State       ZIP Code |
| | Contact phone  (818) 883-5644 | Contact phone  (818) 883-5644 |
| | Contact email  vgreenwalt@lhcllp.com | Contact email  vgreenwalt@lhcllp.com |
| | Uniform claim identifier for electronic payments in chapter 13 (if you use one): | |
| | _ _ _ _ — _ _ _ _ — _ _ _ _ — _ _ _ _ | |

| 4. Does this claim amend one already filed? | ☑ No | |
| --- | --- | --- |
| | ☐ Yes.  Claim number on court claims registry (if known) _____ | Filed on _____ |
| | | MM / DD / YYYY |

| 5. Do you know if anyone else has filed a proof of claim for this claim? | ☑ No | |
| --- | --- | --- |
| | ☐ Yes.  Who made the earlier filing? _____ | |

---

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ___ ___ ___ ___

**7. How much is the claim?**

$ <u>In excess of $1,500,000.00</u>    Does this amount include interest or other charges?

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

<u>Claims originating out of ethical and professional misconduct of Debtor</u>
<u>as determined in the arbitration between Creditor and Debtor. See Exhibit 1.</u>

**9. Is all or part of the claim secured?**

☑ No

☐ Yes. The claim is secured by a lien on property.

Nature of property:

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

Basis for perfection: _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:                    $_____

Amount of the claim that is secured:    $_____

Amount of the claim that is unsecured:  $_____    (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition:    $_____

Annual Interest Rate (when case was filed) _____ %

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. Amount necessary to cure any default as of the date of the petition.    $_____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☑ No<br>☐ Yes. *Check all that apply:* | Amount entitled to priority |
|---|---|---|
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/16 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3:  Sign Below

| The person completing this proof of claim must sign and date it. FRBP 9011(b).<br><br>If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.<br><br>A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571. | *Check the appropriate box:*<br><br>☐ I am the creditor.<br>☑ I am the creditor's attorney or authorized agent.<br>☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.<br>☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.<br><br>I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.<br><br>I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.<br><br>I declare under penalty of perjury that the foregoing is true and correct.<br><br>Executed on date  12/29/2015<br>　　　　　　　　　MM / DD / YYYY |

Print the name of the person who is completing and signing this claim:

| Name | Vaughn Michael Greenwalt |
|---|---|
| | First name　　　　Middle name　　　　　　　　Last name |
| Title | Attorney for Creditor Excelsior Media Corp., and Liberty Media Holdings, LLC |
| Company | Lang, Hanigan & Carvalho, LLP |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. |
| Address | 21550 Oxnard Street, Suite 760 |
| | Number　　　　　　Street |
| | Woodland Hills　　　　　　　　　CA　　　91367 |
| | City　　　　　　　　　　　　　　　State　　　ZIP Code |
| Contact phone | (818) 884-5644　　　　　　Email  vgreenwalt@lhcllp.com |

EXHIBIT "A"

| Description of Each Claim Item | Amount in USD |
|---|---|
| Losses due to Oron.com relitigation | $275,000.00 |
| Pre-award interest up to arbitration award due to Oron.com relitigation at the rate of 10% per annum | In excess of $75,000.00 |
| Losses due to unjust enrichment of Debtor | $60,000.00 |
| Losses due to spoliation and conversion damages | In excess of $3,215.98 |
| Losses due to disgorgement of employment compensation | $197,000.00 |
| Accounting of Debtor's client trust account, cost to be solely born by Debtor | Awaiting determination by Bankruptcy Court |
| Return of company laptop | In excess of $500.00 |
| Contractual attorneys fees resulting from Debtor's ethical and professional misconduct | In excess of $666,792.50 |
| Costs of Arbitration | $275,105.81 |
| **TOTAL** | In excess of $1,552,614.29 |

Case 15-01193-abl    Doc 98    Entered 11/02/16 20:26:38    Page 45 of 71
Case 15-14956-abl    Doc 60-5    Entered 10/28/15 15:59:00    Page 1 of 27
Case 15-14956-abl    Claim 8    Filed 12/29/15    Page 5 of 31

# EXHIBIT 1

Case 15-01193-abl    Doc 98    Entered 11/02/16 20:26:38    Page 46 of 71
Case 15-14956-abl    Doc 60-5    Entered 10/28/15 15:59:00    Page 2 of 27
Case 15-14956-abl    Claim 8    Filed 12/29/15    Page 6 of 31

Hon. Stephen E. Haberfeld
JAMS
555 W. 5th St. , 32nd Fl.
Los Angeles, CA 90013
Tel: 213-253-9704
Fax: 213-620-0100

Arbitrator

JAMS

| | |
|---|---|
| MARC J. RANDAZZA,<br><br>             Claimant,<br><br>         v.<br><br>EXCELSIOR MEDIA CORP., a Nevada<br>Corp.; LIBERTY MEDIA HOLDINGS, LLC,<br>a California limited liability company; and<br>JASON GIBSON, individually<br><br>             Respondents. | JAMS No. 1260002283<br><br>INTERIM ARBITRATION AWARD |

     I, THE UNDERSIGNED ARBITRATOR --- in accordance with the arbitration provision in Section 8 of the Contract For Employment Agreement As General Counsel Between Marc J. Randazza and Excelsior Media Corp., dated June 6/10, 2009 ("employment agreement"), and based upon careful consideration of the evidence, the parties' written submissions and applicable law, and good cause appearing --- make the following findings, conclusions, determinations ("determinations") and this Interim Arbitration Award, as follows:

Case 15-01193-abl    Doc 98    Entered 11/02/16 20:26:38    Page 47 of 71
Case 15-14956-abl    Doc 60-5    Entered 10/28/15 15:59:00    Page 3 of 27
Case 15-14956-abl    Claim 8    Filed 12/29/15    Page 7 of 31

<u>DETERMINATIONS</u>

1.      The determinations in this Interim Arbitration Award include factual determinations by the Arbitrator, which the Arbitrator has determined to be true and necessary to this award.  To the extent that the Arbitrator's determinations differ from any party's positions, that is the result of determinations as to relevance, burden of proof considerations, and the weighing of the evidence.

2.      The Arbitrator has jurisdiction over the subject matter and over the parties to the arbitration which are as follows:  Claimant and Counter-Respondent Marc J. Randazza ("Mr. Randazza"), Respondents and Counterclaimants Excelsior Media Corp. ("Excelsior"), Liberty Media Holdings, LLC ("Liberty"), and Respondent Jason Gibson. [1]

3.      On February 9, 10, 11, 12 and 13, 2015, the Arbitrator held in-person evidentiary sessions on the merits of the parties' respective claims, counterclaims and contentions. All witnesses who testified did so under oath and subject to cross-examination.  All offered exhibits were received in evidence.

4.      This Interim Arbitration Award is timely rendered.  See Order of June 1, 2015.

5.      The following is a summary of the Arbitrator's principal merits determinations:

---

[1] Except as otherwise stated or indicated by context, "E/L" shall be used to reference Excelsior and Liberty, collectively and interchangeably for convenience in this Interim Arbitration Award, only.  Nothing should be inferred or implied that there is any determination, or basis for any determination, that either or both of those entities are "alter egos" of Jason Gibson or of any person or entity. Mr. Randazza failed to sustain his burden of proof that either Excelsior or Liberty were or are "alter egos" of Respondent Jason Gideon or of any person or entity. Mr. Gideon will be dismissed as a party in this arbitration. See Interim Arbitration Award, Par. 9, at p. 29, <u>infra</u>.

Case 15-01193-abl    Doc 98    Entered 11/02/16 20:26:38    Page 48 of 71
Case 15-14956-abl    Doc 60-5    Entered 10/28/15 15:59:00    Page 4 of 27
Case 15-14956-abl    Claim 8    Filed 12/29/15    Page 8 of 31

     A.    Mr. Randazza voluntarily ended his employment by Excelsior and Liberty.

     B.    Mr. Randazza's employment by Excelsior and Liberty was not involuntarily terminated by Excelsior, Liberty or at all.[2]

     C.    Whether or not Mr. Randazza's employment by E/L was terminated voluntarily by Mr. Randazza or involuntarily by E/L, the principal proximate cause for the ending of Mr. Randazza's employment was Mr. Randazza's breaches of fiduciary duty and the covenant of good faith and fair dealing, implied in his employment agreement, as an employee, executive and general counsel of E/L. The precipitating events which led to the end of Mr. Randazza's employment was Mr. Gideon's having first learned on August 13, 2012 that Mr. Randazza had been involved in and successfully concluded negotiations for a bribe in the amount of $75,000, to be paid to Mr. Randazza by the other side in connection with resolution of high-importance litigation, commonly referred to as the "Oron litigation," which had been initiated and pursued on behalf of E/L by Mr. Randazza, as E/L's counsel of record.    The first indication of that was Mr. Gideon's noticing a provision included in an execution copy of an Oron settlement agreement, presented to him for signature by Mr. Randazza on that date, and Mr. Gideon's inquiring of Mr. Randazza about that provision.

     After initial contacts with Mr. Randazza concerning what Mr. Gideon discovered in the Oron settlement agreement, communications and relations between Messrs. Gideon and Randazza noticeably chilled during Mr. Randazza's remaining employment, which ended on August 29, 2012.

---

[2] While not accepting Mr. Randazza's "core contentions" concerning the end of his employment by E/L, the Arbitrator agrees with Mr. Randazza's assertion that "The nature of Mr. Randazza's departure from Excelsior is central to several of his causes of action, and crucial to the defenses Respondents raise" --- including whether there was a breach of contract, wrongful termination, constructive termination and/or retaliatory termination. Reply at p. 7:12-15. As also stated elsewhere herein, none of those claims were proven.

Case 15-01193-abl    Doc 98    Entered 11/02/16 20:26:38    Page 49 of 71
Case 15-14956-abl    Doc 60-5    Entered 10/28/15 15:59:00    Page 5 of 27
Case 15-14956-abl    Claim 8    Filed 12/29/15    Page 9 of 31

The chilled relations, including greatly reduced communication, was in stark contrast with the custom and practice of Messrs. Gibson and Randazza, practically right up to August 13, 2012, being in regular, frequent, cordial and occasionally sexually-peppered communication with each other by face-to-face meetings, texting and emails.

That Mr. Gideon's reaction was not feigned or a pretext for anything asserted by Mr. Randazza in his competing narrative are shown by the following:

1.    A sudden and significant reduction of those previously primarily electronic (i.e., email and text) communications --- beginning only after Mr. Gideon learned of the $75,000 bribe --- with Mr. Randazza sending Mr. Gideon unresponded-to emails attempting to attempting to salvage and revive his communications and relationship with Mr. Gideon.

2.    Mr. Randazza beat a hasty retreat, in an attempt to salvage the situation by offering to pay the bribe money over to E/L, when initially confronted by Mr. Gideon concerning the "bribe" provision in the Oron settlement agreement, presented for Mr. Gideon's signature.

3.    Mr. Gideon did not timely sign the execution copy of the Oron settlement agreement, as negotiated and presented to him by Mr. Randazza.

D.    The ending of Mr. Randazza's employment E/L was not --- as contended by Mr. Randazza --- (1) constructive discharge, proximately caused by Mr. Gibson becoming distant and out-of-communication with Mr. Randazza, which made it difficult or impossible for Mr. Randazza to get needed instructions or direction in his employment by E/L as their general counsel, leading to Mr. Randazza's August 29, 2012 email of resignation from employment, or (2) retaliatory termination, which was caused by Mr. Randazza's having "expressed his feelings" of having been "upset, betrayed, offended, and

4

Case 15-01193-abl    Doc 98    Entered 11/02/16 20:26:38    Page 50 of 71
Case 15-14956-abl    Doc 60-5    Entered 10/28/15 15:59:00    Page 6 of 27
Case 15-14956-abl    Claim 8    Filed 12/29/15    Page 10 of 31

stressed" anything of a sexual nature whatsoever --- including, as highlighted during hearing, a pornographic video shot in Mr. Randazza's office in April, 2012 or a homosexual oral copulation allegedly performed by Mr. Gideon and another E/L executive in the backseat of Mr. Randazza's car, which allegedly greatly upset Mr. Randazza while he was driving his passengers back from a party aboard Mr. Gideon's boat on August 9, 2012.

E.    The immediately foregoing Determination's repeated use of the word "allegedly" is because it is not necessary to resolve a conflict of evidence as to whether the alleged sexual act in Mr. Randazza's car actually occurred or the degree of upset it caused Mr. Randazza, if it actually occurred.  That is because the Arbitrator has determined that --- contrary to Mr. Randazza's central contentions in this arbitration --- the factual and legal cause of the end of Mr. Randazza's employment had nothing whatsoever to do with anything having to do with alleged sexual activity in Mr. Randazza's car --- alone or taken together with a pornographic shoot which, without dispute, occurred in his office, without prior notice to Mr. Randazza, but which the evidence shows did not occur as alleged, was not strongly or even negatively reacted to by Mr. Randazza as initially alleged and did not, as shot or shown, include a photograph of Mr. Randazza's family, as initially presented by Mr. Randazza.

The foregoing determination includes that anything relating to sex --- including in connection with a filmed video in Mr. Randazza's E/L office or in the back seat of his car --- had nothing whatsoever to do with any decision --- which the Arbitrator has determined was neither made or considered --- to terminate Mr. Randazza's E/L employment. 2012.  There was no E/L contrived pretext or any retaliation by E/L in connection with the cessation of Mr. Randazza's E/L employment, which was entirely voluntary on

/////
/////

5

Case 15-01193-abl    Doc 98    Entered 11/02/16 20:26:38    Page 51 of 71
Case 15-14956-abl    Doc 60-5    Entered 10/28/15 15:59:00    Page 7 of 27
Case 15-14956-abl    Claim 8    Filed 12/29/15    Page 11 of 31

Mr. Randazza's part.[3]  For those reasons, the Arbitrator has determined that Mr. Randazza failed to sustain his burden of proof required to establish his claims of and relating to anything having to do with sex --- e.g., sexual harassment, hostile work environment, constructive termination, retaliatory termination, etc.

F.    As stated above --- and as picked up and amplified later in the Determinations portion of this Award --- since the outset of the arbitration, Mr. Randazza made highly-charged, sexually-based "core allegations" and his claimed strong reactions to them in support of his statutory and contractual claims, which were in the main disproved or not proved.  That failure of proof undermined and impaired Mr. Randazza's credibility concerning all of his

/////
/////
/////

testimony and his claims and related contentions.[4]  The evidence established at hearing was that Mr. Randazza intended that his allegations would induce

---

[3] The same is true with respect to Mr. Randazza's contention(s) that Mr. Gideon's discovery of Mr. Randazza having been involved with and negotiating a $75,000 "bribe" in connection with a settlement of the Oron litigation was a pretext for an earlier-formed intention by Mr. Gideon to end Mr. Randazza's E/L employment.
[4] Mr. Randazza's credibility was also undermined by the variance between his testimony and positions at hearing and his written Nevada State Bar submission concerning the Oron litigation $75,000 bribe --- including what, if anything, Mr. Gideon knew about it and when, and who solicited the bribe in the first instance.
Mr. Randazza's credibility was also undermined by the variance between his testimony and his EEOC submission.  At hearing, Mr. Randazza admitted that the EEOC complaint contained errors, but tried to explain them away by saying that he did not prepare it. That is not a sufficient excuse or explanation, in the circumstances.
Resolving a credibility-related issue presented in the post-hearing briefs concerning asserted testimonial evasiveness implied by Mr. Randazza's body positioning and whether he had eye contact with the Arbitrator (as asserted by Mr. Randazza in his Reply), throughout his extensive testimony at hearing and primarily on cross-examination, the Arbitrator observed that Mr. Randazza sat sideways in his chair, relative to Claimant's counsel's table --- with his back to (i.e., 180 degrees away from) his own counsel and 90 degrees away from Respondent's counsel --- albeit with his seated body positioned toward the part of the wall behind and to Mr. Randazza's left from

Case 15-01193-abl    Doc 98    Entered 11/02/16 20:26:38    Page 52 of 71
Case 15-14956-abl    Doc 60-5    Entered 10/28/15 15:59:00    Page 8 of 27
Case 15-14956-abl    Claim 8    Filed 12/29/15    Page 12 of 31

Mr. Gideon to authorize a settlement financially favorable to Mr. Randazza,

based on Mr. Randazza's belief at the time — and ultimately proven incorrect —

that Mr. Gideon would so settle, rather than have to litigate true or false

allegations relating to his own sexuality, sexual activity, and the pornographic

nature of E/L's business. Mr. Randazza's miscalculation, as aforesaid, led to an

---

where the Arbitrator was seated. Mr. Randazza almost always listened to questions and answered in that position — leaning well forward and looking down or straight ahead into "middle distance" in the direction of the wall behind where the Arbitrator was seated. Mr. Randazza rarely answered a question on cross-examination with sustained eye contact with either the questioning attorney or the Arbitrator.

The Arbitrator has determined, based on the evidence, that Mr. Randazza solicited the bribe in the first instance, attempted to negotiate with Oron's counsel ways and means whereby it would be concealed from and not become known by E/L, and disclosed it to E/L, per Mr. Gideon, for the first time only on August 13, 2012, when the settlement documentation prepared and presented for Mr. Gideon's signature on behalf of E/L by Oron's counsel surfaced a $75,000 retainer payment to Mr. Randazza.

The Arbitrator has further determined that E/L never gave Mr. Randazza permission or consent to solicit, negotiate or accept the $75,000 bribe,* or any bribe or any other payment other than payment of all proceeds being solely for the benefit of and deposited to the account of his clients/principals, E/L.

[*On August 13, 2013, Mr. Gideon handwrote an arrow and "Who gets this" next to the $75,000 payment provision in the copy of the execution copy of the Oron settlement agreement presented to him by Mr. Randazza. The Arbitrator credits that notation as being first notice to and genuine surprise expressed by Mr. Gideon about any Oron settlement payment not being made directly to E/L.

[That notation also was the genesis of a rapid unraveling of the theretofore close professional and personal relationship, symbolized by Mr. Gideon's sharply reducing communications with Mr. Randazza and Mr. Randazza's repeated and ultimately unsuccessful efforts to salvage his situation, by attempting to re-establish direct contact with Mr. Gideon. As previously stated, the Arbitrator has not accepted Mr. Randazza's central contention and narrative that this state of affairs, triggered on August 13, 2012, was manufactured by Mr. Gideon and served as a convenient or other pretext for an earlier-decided termination of Mr. Randazza's employment.]

The Arbitrator has not accepted that E/L's knowledge of or informed consent to any such situation can be implied by non-objection and silence in response to an unspecific, Delphic allusion in one of Mr. Randazza's emails prior to August 13, 2012 or to Mr. Randazza's after-the-fact, self-serving reference to alleged earlier communications, wherein Mr. Randazza claimed in the later email to have "fully disclosed...overtures about that."

In addition, except for admissions, anything which Mr. Randazza and his opposing counsel in the <u>Oron</u> litigation, Val Gurvitz, communicated to each other lacked credibility, because Mr. Randazza testified that he and Mr. Gurvitz routinely lied to each other in their settlement communications.

Case 15-01193-abl    Doc 98    Entered 11/02/16 20:26:38    Page 53 of 71
Case 15-14956-abl    Doc 60-5    Entered 10/28/15 15:59:00    Page 9 of 27
Case 15-14956-abl    Claim 8    Filed 12/29/15    Page 13 of 31

ultimately successful counterattack by E/L, via counterclaims in this arbitration,
centering on ethical and legal challenges to Mr. Randazza's conduct as E/L's
general counsel and litigation counsel during his employment by E/L.  Mr.
Randazza's alleged misconduct consisted of engaging in ethically-prohibited
negotiations with adverse parties, including concerning monetary "bribes" to
"conflict (Mr. Randazza) out" from future litigation, further damaging E/L's
recovery in the Oron litigation by knowingly forwarding illegally "hacked"
computer data to counsel for another company, without authorization and in
contravention of an E/L settlement agreement, engaging in other prohibited
conflicts of interest, including representing competitors of E/L, not disclosing
and not obtaining informed written client consents from E/L where actual or
potential conflicts of interest arose, working and not disclosing that he was
working as a practicing lawyer on non-E/L matters during his employment
significantly in excess of what was contractually permitted, spoliation of
evidence to cover up the foregoing and his undisclosed intention to resign from
E/L's employment, including via planning and causing the deletion of legal files
and other relevant data from E/L-owned computers, taking control of client
funds, in form of Oron litigation settlement proceeds, and refusing to
unconditionally release the same to E/L.

        G.      As stated above, Mr. Randazza voluntarily ended his employment
by E/L.  The principal evidence of that consisted of (1) Mr. Randazza's August
29, 2012 email to Mr. Gideon, (2) days before sending Mr. Gideon his August 29
email, Mr. Randazza cleaned out his personal belongings from his office, (3)
shortly after Noon on August 28 — and more than 24 hours before sending his
August 29 email to Mr. Gideon — Mr. Randazza had his corporate laptop
computer "wiped" the first of four times during his last week of employment,
and (4) before that, Mr. Randazza was overheard to say "Fuck this shit, I quit,"
following a company "happy hour" event.

Case 15-01193-abl    Doc 98    Entered 11/02/16 20:26:38    Page 54 of 71
Case 15-14956-abl    Doc 60-5    Entered 10/28/15 15:59:00    Page 10 of 27
Case 15-14956-abl    Claim 8    Filed 12/29/15    Page 14 of 31

H.    In his August 29, 2012 email to Mr. Gideon, Mr. Randazza stated that he could no longer represent the Company, i.e., E/L.[5]  In the circumstances then known, Mr. Gideon and other E/L executives with whom he consulted reasonably, and not hastily,[6] concluded from their review of Mr. Randazza's August 29, 2012 email that Mr. Randazza had resigned from his employment. Their conclusion was proven accurate by facts which became known after Mr. Randazza's departure.  Any actions taken by them based on that reasonable belief did not result in any involuntary termination of Mr. Randazza's E/L employment.

I.    The lack of absolute, unquestionable, pristine clarity in      Mr. Randazza's August 29, 2012 carefully worded and crafted email that he      was resigning his employment was deliberate.

J.    In addition to Mr. Randazza's disputed, disproved and unproved allegations of sexual conduct engaged in or authorized by is important evidence which established that Mr. Randazza was not either (1) a target of any discriminatory or conduct which created a hostile work environment, because of his being a heterosexual or "straight" male, or (2) offended by any of the sexually-related conduct of which he has complained.

K.    Prior to and subsequent to agreeing to go "in house" as E/L's general counsel, Mr. Randazza was outside counsel to several companies engaged in Internet pornography, including videos and stills available on openly homosexual websites.  Since at least the date of the commencement of his employment as E/L's inside general counsel through his last day of E/L employment, Mr. Randazza knew of and was not in any way uncomfortable with Mr. Gideon's gay sexual orientation — which was also that of most, but not all,

_____

[5] Mr. Randazza also said he could "potentially" work to wind up his E/L pending matters.  The Arbitrator interprets the inclusion of that to be part of Mr. Randazza's crafted effort to both resign and leave open his attempt to engage Mr. Gideon directly.
[6] The Arbitrator has not accepted Mr. Randazza's assertion that "Respondents hastily decided to call that [August 29, 2012 email] a resignation." Mr. Randazza's Reply at p. 7:20-21.

Case 15-01193-abl   Doc 98   Entered 11/02/16 20:26:38   Page 55 of 71
Case 15-14956-abl   Doc 60-5   Entered 10/28/15 15:59:00   Page 11 of 27
Case 15-14956-abl   Claim 8   Filed 12/29/15   Page 15 of 31

of E/L's other executives — and the frequent seasoning of business and socially-related conversation and written communications with crude gay and other sexual terms, references and allusions, which Mr. Randazza also used.[7]  Mr. Randazza was not embarrassed to be seen or filmed in full undress at a poolside business-social event at Mr. Gideon's home.  Mr. Randazza permitted and encouraged his children to have warm personal relationships with Mr. Gideon, who they called "Uncle."

L.      The evidence was that the only complaints which          Mr. Randazza had concerning the pornographic filming in his offices in April 2012 — four months before the end of his employment — were that (1) he was not given the courtesy of advance notice of the shoot and (2) after the shoot was completed, Mr. Randazza's office was not restored to just the way it had been before the office was prepped for filming.

The preponderance of disputed evidence was not that Mr. Randazza complained to Mr. Gideon centering on or in any way reasonably relating to sexual discrimination or harassment or a hostile work environment based on sex, including "male-on-male" sex, which has been recognized as a basis for a legal claim.   Accordingly, allegedly involuntary termination of Mr. Randazza's employment, based on Mr. Randazza's April 2012 complaint about the filming of pornography in his office — which did not constitute statutorily "protected activity" — is not includible as a component for a statutory claim that he had been fired in retaliation for making that complaint.  Mr. Randazza's complaint about the allegedly personally offensive oral copulation of Mr. Gideon

---

[7] For example, Mr. Randazza admitted that he used the term "butthurt" — which he alleged that Mr. Gideon used to demean his expression of feelings about the pornographic filming in his office.  In a series of texts about the shoot, Mr. Randazza texted, in a crude possible sexual/legal "double entendre," "Don't jizz on my briefs."  Mr. Randazza has admitted that "The Arbitrator has seen many texts and emails from Mr. Randazza with informal, rough, vulgar content." Reply at p. 10:9-10. In making a different point, Mr. Randazza concedes by assertion that "Respondents [have] conceded that jokes and banter were common in the office."

Case 15-01193-abl    Doc 98    Entered 11/02/16 20:26:38    Page 56 of 71
Case 15-14956-abl    Doc 60-5    Entered 10/28/15 15:59:00    Page 12 of 27
Case 15-14956-abl    Claim 8    Filed 12/29/15    Page 16 of 31

in the back seat of his car on August 9, 2012 was not genuinely or deeply felt and was made primarily for tactical reasons. Therefore, the end of Mr. Randazza's employment was not and was not the product of anything retaliatory, in violation of public policy (e.g., engaging in protected activity), as a matter of law.

Moreover, the preponderance of the evidence is that Mr. Randazza had advance notice of the filming of a pornographic video in his office and that he did not either object or indicate that the noticed shoot was in any way objectionable or offensive to him. That evidence is the playful exchange of texts between Messrs. Randazza and Gideon concerning the intended shoot and the testimony of the director of the shoot, Chaz Vorrias, who testified that he advised Mr. Randazza of the shoot in advance and received no objection from Mr. Randazza.[8]

M.      Contrary to the strong impression created by Mr. Randazza's pre-Arbitration Hearing narrative of allegations, there was no evidence that any photograph(s) of his wife or children or anything personal of or concerning Mr. Randazza or any member of his family, or in any way reasonably violative of their respective personal privacy, were used or visible in the video. The (possible) visibility of a painting on the wall of Mr. Randazza's office, which was painted by Mr. Randazza's wife, is not to the contrary.

In the circumstances, there was no action taken which was either statutorily offensive or hostile.

N.      Mr. Randazza's California Labor Code-based claims --- for Excelsior's failure to (1) pay him his final wages in August 2012 (2nd Claim) or (2) reimburse and indemnify his for business expenses incurred by him in during 2012 (1st Claim) --- fail as a matter of law. The same is true for Mr. Randazza's

---

[8] Mr. Vorrias testimony was not unfair surprise, Mr. Vorrias's admitted deletion of his emails with Mr. Randazza was done without knowledge of their significance in connection with the dispute underlying this arbitration and, in the event, is not attributable to either Excelsior or Liberty, because he was not a managing agent of either entity.

Case 15-01193-abl    Doc 98    Entered 11/02/16 20:26:38    Page 57 of 71
Case 15-14956-abl    Doc 60-5    Entered 10/28/15 15:59:00    Page 13 of 27
Case 15-14956-abl    Claim 8    Filed 12/29/15    Page 17 of 31

claim for payment of all of his wage-related claims --- including payment of raises, bonuses and repayment of his $25,000 loan. That is because --- at all times relevant to those California Labor Code claims, since June 2011, Mr. Randazza worked and lived in Nevada, to which Mr. Randazza relocated, as did E/L, in order to continue as E/L's general counsel.  As stated or indicated in a pretrial ruling bearing on the same issue, (1) the California Labor Code, presumptively, does not apply extraterritorially,[9] and does not apply to the facts and circumstances of this case, and relatedly, (2) that determination, concerning Mr. Randazza's non-contractual claims, is unaffected by the California-as-governing-substantive-law provision of Mr. Randazza's employment agreement with Excelsior, which applies and controls only as to breach-of-contract claims and not, as in this instance, Mr. Randazza's statutory claims.[10]

In the event, Mr. Randazza was properly compensated for all services as to which he has asserted statutory and contractual claims.[11]

O.    Mr. Randazza's claim for unpaid wages and penalties under Nevada NRS Sec.608.050 (3rd Claim) fails as a matter of law, because there is no private right of action for enforcement of that statute.  It is therefore not necessary to decide whether the a claim has been stated under that statute.

P.    As to Mr. Randazza's contractual claims --- which are governed by the Employment Agreement, including the provision that California law governs its interpretation and enforcement, etc. --- (1) Mr. Randazza is not entitled to a contractual severance payment, because he voluntarily resigned his

---

[9] Sullivan v. Oracle Corp. , 51 Cal.4th 1191, 12016 (2011); Wright v. Adventures Rolling Cross Country, Inc., 2012 U.S. Dist. LEXIS 104378 (N.D. Cal. 2012) (presumption against extraterritorial application of state law applies to unpaid wage claims under California Labor Code, plus "situs of the work" is the most important factor in determining extraterritoriality, trumping residency and where wages are paid).
[10] See, e.g., Narayan v. EGL, Inc. , 616 F.3d 895, 899 (9th Cir. 2010).
[11] For example, Mr. Randazza's bonuses were to be based on net and gross amounts (which he acknowledged prior to the end of his employment, claimed compensation raises were discretionary. Whatever Mr. Randazza was paid as compensation and bonuses is subject to the remedy of disgorgement.

employment,[12] (2) Mr. Randazza is not entitled to any payment for expenses in connection with the annual International Trademark Association Conference, which he did not attend, and (3) Mr. Randazza's bonuses were to be paid on "net" amount, not "gross" amounts, as contended by Mr. Randazza.  In the event, E/L has been legally excused from any obligation to make any further contractual payment, by reason of Mr. Randazza's material breaches of contract with respect to the his obligations under the same contract, Mr. Randazza's employment agreement.  That is so under contract law principles --- separate and apart from equitable principles, which are also applicable to contract claims, including the equitable doctrine of unclean hands, which is applicable to Mr. Randazza's contract claims.

Q.    Turning to E/L's counterclaims, Mr. Randazza owed fiduciary duties to E/L, because he was their in-house general counsel and their attorney of record in judicial civil actions, and an E/L executive and employee.  As such, Mr. Randazza owed E/L, as his clients, employers and principals, the highest duty of loyalty and honesty in the performance of his professional and executive obligations.  That duty --- among other things --- included legal and ethical duties of acting honestly and solely for the benefit of his clients/employers/principals, avoiding acting inconsistently with those duties, and where actual or potential conflicts of interests existed to make full written disclosure of the same and to obtain informed written consents from his clients/principals as to each and every such conflict of interest.  Each and all of Mr. Randazza's ethical duties owed to his principals/clients was a legal fiduciary duty owed to them.  Mr. Randazza violated those fiduciary duties owed by him to E/L, as his principals/clients/employers --- including by the following:

---

[12] See Pars. 5(A), (B) and (G), supra, concerning Mr. Randazza's having voluntarily ended his E/L employment, including via and as evidenced by written and verbal and non-verbal conduct. Mr. Randazza was contractually entitled to payment equivalent to 12-week severance only if his employment was involuntarily terminated.

13

Case 15-01193-abl    Doc 98    Entered 11/02/16 20:26:38    Page 59 of 71
Case 15-14956-abl    Doc 60-5    Entered 10/28/15 15:59:00    Page 15 of 27
Case 15-14956-abl    Claim 8    Filed 12/29/15    Page 19 of 31

(1) engaging in negotiations for monetary bribes to be paid to him --- including

the "Oron $75,000" which Mr. Gideon noticed, without Mr. Randazza's

affirmative disclosure of it ---- which would result in his being "conflicted out" of

future litigation or any disputes with parties then and/or in the future with

/////
/////
/////

interests adverse to E/L's interests (e.g., Oron, TNA),[13] (2) taking control for his

personal benefit of, and refusing to relinquish control over, Oron settlement

funds --- all of which ought to have been for the benefit and under the direction

and control of his principals/clients E/L, before and after the end of his

employment and representations on behalf of E/L --- (3) Mr. Randazza's

ordering and causing the deliberate "wiping" of his and legal assistant's

corporate laptops, as an integral part of his planned resignation as E/L's General

---

[13] It is irrelevant that none of Mr. Randazza's negotiations concerning bribes ---
including the Oron bribe --- resulted in an actual bribe payment. See Mr. Randazza's
Reply at pp.4:24-5:1: "Yet despite years of discovery in this matter, Respondents have not
been able to point to a single 'bribe' paid to Mr. Randazza, or a single consummated deal
between him and the opposing party."*   The Arbitrator has accepted, as an admission
by Mr. Randazza that "he repeatedly engaged in these 'bribe' negotiations," but the
Arbitrator has not accepted Mr. Randazza's testimony and further contention that he did
so "because they were par for the course in dealing with counsel for infringers and
because engaging in them was the best way to soften up the other side and get more
money for respondents." Id., at p. 5:2-5.
    In this arbitration, Mr. Randazza has established a virtually unbroken pattern of
asserting a legal/fiduciary variant of the sports cliché, "No harm, no foul."  The
Arbitrator has not accepted those assertions --- including, for example, a professional
or fiduciary duty has been violated, whether spoliation has been committed, etc.

Case 15-01193-abl   Doc 98   Entered 11/02/16 20:26:38   Page 60 of 71
Case 15-14956-abl   Doc 60-5   Entered 10/28/15 15:59:00   Page 16 of 27
Case 15-14956-abl   Claim 8   Filed 12/29/15   Page 20 of 31

Counsel and outside counsel of record, and (4) Mr. Randazza's continuing and undisclosed (and thus unconsented-to) legal work for clients (e.g., Bang Bros., XVideos, XNXX, Porn Garian, Titan Media, Kink), whose interests were actually and potentially adverse to E/L's interests.[14]

     R.    The Arbitrator respectfully disagrees with Mr. Randazza's expert witnesses, who respectively testified that, under both Nevada and California rules of ethics and/or professional responsibility, there were no violations of fiduciary duty, if and because they concluded that there was no resulting harm.

     The "fact of damage" or proximate cause is not an essential element of either "duty" or "breach of duty" — but rather a separate element of a claim or cause of The Arbitrator's disagreement with Mr. Randazza's expert witnesses centers

     Whether or not Mr. Randazza's breaches of fiduciary duty proximately resulted in damages sustained by Excelsior, Liberty or both of them — as a matter of sound public policy — Mr. Randazza should not be allowed to retain any pecuniary or legal benefit resulting from or closely connected to those breaches.

     For example, Mr. Randazza has included in his defense of his admitted deletion of files and other legal information via multiple wipings of company-owned computers the assertion that Respondents have not been able to show any damage resulting from those multiple wipings.  This is another of Mr. Randazza's assertions in this arbitration of "No harm, no foul" — which the Arbitrator has not accepted, primarily because of the violations of duties constituting and/or including fiduciary duties.  Ethical and other violations of

---

[14] Mr. Randazza's legal work for non-E/L clients — independent of the violations of Mr. Randazza's ethical and fiduciary duties — were significantly beyond the contractually-permitted scope under his employment agreement.  The Arbitrator may award the equivalent to amounts of funds ordered to be immediately turned over by Mr. Randazza to E/L.  See Interim Arbitration Award, Par.

Case 15-01193-abl   Doc 98   Entered 11/02/16 20:26:38   Page 61 of 71
Case 15-14956-abl   Doc 60-5   Entered 10/28/15 15:59:00   Page 17 of 27
Case 15-14956-abl   Claim 8   Filed 12/29/15   Page 21 of 31

fiduciary duties do not require "fact of harm" to be shown by a preponderance of the evidence or otherwise.

Moreover, in the circumstances of (1) multiple ethical violations having been shown to have been committed by Mr. Randazza --- including negotiating for and in the instance of the <u>Oron</u> settlement agreeing to a "bribe" to be conflicted out of future litigation with adverse settling parties and other conflicts of interest --- and (2) Mr. Randazza's ethical challenges shown in this arbitration, there should be a presumption of "fact of harm" caused to E/L by Mr. Randazza's conduct and, additionally, a presumption of Mr. Randazza's intention to harm his clients by wiping everything off of his and his legal assistant's company-owned computers.

As E/L's inside general counsel and employee, Mr. Randazza had a legal and fiduciary duty --- no later than when his employment ceased, regardless of whether or not with or without cause and/or by whom ended --- to deliver every file and other piece of data and/or information --- complete, intact and undeleted, unmodified and immediately accessible and usable by E/L. That included all files and data stored on the computers entrusted to Mr. Randazza and his legal assistant Erika Dillon for their use by and on behalf of E/L. Because of his noncompliance, indeed resistance to compliance with those duties, they continued and continue to the day of the rendering of this award --- including beyond Mr. Randazza's belated and resisted turnover of one of the laptop computers --- because another laptop entrusted to Mr. Randazza remains unreturned. Those continuing fiduciary duties owed by him to E/L exist, including by reason of his exclusive control over the computers and thus superior knowledge of what was on each computer's hard drive before and after he had everything on the returned laptops completely and multiply deleted --- including prior and in contemplation of his planned resignation on August 29, 2012.

16

Case 15-01193-abl    Doc 98    Entered 11/02/16 20:26:38    Page 62 of 71
Case 15-14956-abl    Doc 60-5    Entered 10/28/15 15:59:00    Page 18 of 27
Case 15-14956-abl    Claim 8    Filed 12/29/15    Page 22 of 31

In the circumstances, Mr. Randazza's generalized and unspecified claims of privacy — in attempted justification of his ordered complete and multiple wipings of company-owned computers — cannot be accorded weight or credibility. By the same token, that ordered conduct raises an inference that whatever was deleted was known and intended by Mr. Randazza to be harmful to him and any claims and contentions which he might make in any dispute with E/L — i.e., deliberate spoliation, in addition to conversion.

Mr. Randazza cannot escape liability for spoliation or conversion — or, additionally, violation of his fiduciary duties as an employee, executive and general counsel of E/L, by reason of the same conduct — by claiming, as he has, that Respondents have not shown any specific or tangible injury by reason of his conduct in causing company-owned computers to be completely wiped of all data prior to their resisted and belated return. In the circumstances — and paraphrasing former Defense Secretary Donald Rumsfeld — neither Respondent should bear any burden or responsibility to come forward with any evidence of damage, when they do not know what they do not know. As stated above — with his actual exclusive knowledge of what was on the computers' hard drives, before and because he ordered them to be completely wiped and, in the instance of his returned laptop, multiply wiped before ultimate return — Mr. Randazza committed spoliation of evidence, as well as improper conversion of his employer's files, data and equipment and, in so doing, also violated his fiduciary duties owed to E/L.

S.      The closure of the Nevada State Bar's file on the grievance filed by E/L has not been given any weight in this arbitration. The reasons for that are manifold, several of the most significant of which include the following: (1) the State Bar did not reach the merits of E/L's grievance, (2) even if it would have, the standard of evaluation would have been "clear and convincing evidence," rather than the standard applicable in this arbitration of "preponderance of the evidence," (3) Mr. Randazza's response to E/L's grievance contained at least one

17

Case 15-01193-abl   Doc 98   Entered 11/02/16 20:26:38   Page 63 of 71
Case 15-14956-abl   Doc 60-5   Entered 10/28/15 15:59:00   Page 19 of 27
Case 15-14956-abl   Claim 8   Filed 12/29/15   Page 23 of 31

material misrepresentation acknowledged during an evidentiary session in this
arbitration (that he stopped representing XVideos in 2009), (4) the Nevada State
Bar closed its file with an express statement that it has "no authority to take any
action which could affect the outcome of any civil disputes or litigation, (5) many
of the issues and much of the evidence presented in this arbitration (identities of
represented entities, retainer and billing records, emails, etc.) was not available to
be presented by E/L in support of its grievance (e.g., Mr. Randazza's assisting
Datatech, including via forwarding fruits of a disclosed (unnamed) computer
"hacker").

      T.     E/L was damaged in at least the amount of $275,000, by reason of
the Oron resettlement, as a direct and proximate result of events being set in
motion by Mr. Randazza's violations of fiduciary duty and other duties, by his
having secretly negotiated a $75,000 bribe to conflict himself out from suing Oron
in the future.

      U.     Mr. Randazza was unjustly enriched in the amount of $60,000. Of
that amount, $55,000 was paid to and received by Mr. Randazza's law firm,
rather than E/L, in connection with (1) Mr. Randazza's ostensibly pro bono
representation in connection with the so-called "Righthaven cases," of which E/L
was generally aware and consented to (A) with the understanding and on the
condition that Mr. Randazza was acting as a faithful, compensated E/L
employee, including in compliance with his employment agreement, with costs
of the representation advanced by E/L, including compensation as employees of
Mr. Randazza and his legal assistant Erika Dillon, and (2) unaware that
compensation was to be or actually paid to Mr. Randazza, via his law firm, until
after the fact, indeed after Mr. Randazza's resignation from E/L employment.[15]
Mr. Randazza also received $5,000 from James Grady, in connection with E/L's
Oron litigation. Although Mr. Randazza testified, without corroboration, that

---

[15] Of the $60,000 paid and received, (A) $55,000 was court-awarded attorneys' fees,
which were paid to Mr. Randazza's law firm, and (B) $5,000 was paid by James Grady.

Case 15-01193-abl    Doc 98    Entered 11/02/16 20:26:38    Page 64 of 71
Case 15-14956-abl    Doc 60-5    Entered 10/28/15 15:59:00    Page 20 of 27
Case 15-14956-abl    Claim 8    Filed 12/29/15    Page 24 of 31

Mr. Grady's payment was used for Oron litigation expenses, Mr. Randazza did not disclose the receipt of the Grady $5,000 payment to E/L. In the circumstances, and under principles of unjust enrichment, all compensation paid to or for the benefit of Mr. Randazza should have been paid directly to E/L or turned over to E/L by Mr. Randazza — neither of which was done, immediately or ever.

V.  Mr. Randazza materially breached his employment agreement with Excelsior by (1) acting as an attorney in connection with the TNAFlix litigation and the MegaUpload case, his concurrent representation of XVideos and/or XNXX during his employment by Excelsior and (2) spending significantly excessive time on non-Excelsior/Liberty matters beyond contractually-permitted time under his employment agreement with Excelsior and by failing to wind down his non-Excelsior/Liberty legal activities, as also provided in Mr. Randazza's employment agreement.[16]

The extent of Mr. Randazza's contractual material breaches made them also breaches of fiduciary duty — regardless of whether or not those breaches of fiduciary duty were conflicts of interests, as some were.

W.  Disgorgement of compensation paid by E/L to Mr. Randazza is an available remedy, which is appropriate in the circumstances of Mr. Randazza's clear and serious violations of fiduciary duty owed to E/L, and within the Arbitrator's discretion, based on the evidence in this arbitration.[17]

---

[16] Mr. Randazza materially breached his employment agreement with Excelsior by maintaining a private law practice, with billed hours shown to be in excess of that permitted by that agreement, performing non-E/L legal services during the time he could and should have been performing services as E/L's General Counsel, and by failing or refusing, consistent with ethical duties and requirements, to reduce and taper off to zero his professional services for clients other than his employer, E/L.

The extent of Mr. Randazza's contractual material breaches made them also breaches of fiduciary duty — regardless of whether or not those breaches of fiduciary duty were conflicts of interests, as some were.

[17]  See Burrow v. Arce, 997 S.W.2d 229 (Tex. 1999) ("Burrow")(remedy of forfeiture/disgorgement upheld, including court discretion to determine whether some or all compensation paid to attorney who breached fiduciary duty of loyalty owed to

///// 

///// 

///// 

There is no requirement that causation or "fact of damage" be shown.[18] There is

no valid reason to distinguish between an executive who is "in house" general

---

client to be forfeited or disgorged, where clear and serious violation(s) of fiduciary duty
shown).

[18] That is because, among other reasons, one of the primary purposes of a remedy like
forfeiture/disgorgement for breaches of fiduciary duty is to deter, not reward and to
remove incentives of fiduciary disloyalty — including by denying the benefits of
disloyalty, regardless of provable or even actual harm to the principal, including after
payment of compensation.  As the Texas Supreme Court pertinently stated in Burrow in
connection with the remedy of forfeiture/disgorgement as a deterrent and disincentive
for an attorney or other agent to breach of fiduciary duty:

  "Pragmatically, the possibility of forfeiture of compensation discourages an agent
  from taking personal advantage of his position of trust in every situation,
  no matter the circumstances, whether the principal may be injured or not.
  The remedy of forfeiture removes any incentive for an agent to stray from his duty of
  loyalty based on the possibility that the principal will be unharmed or may have
  difficulty proving the existence of amount of damages."

The California cases cited by Claimant are distinguishable. Frye v. Tenderloin
Housing Clinic, Inc., 38 Cal.4th 23 (2006)("Frye"), Slovensky v. Friedman, 142 Cal.App.
4th 1518 (2006) ("Slovensky").  The appellate court's conclusion in Slovensky was based
on its misreading and/or misstatement of the Supreme Court's holding and the basis
and reasoning for its holding in Frye — which was, in effect, a "one-off" opinion strongly
driven by the facts and public policy considerations articulated and emphasized by the
Supreme Court in the opinion.  The Slovensky court's mistake is highlighted by its
reliance on what it called the "Frye rule" — which was no such thing, or at least not as
stated and relied on by the court in Slovensky.

There would be little or no reason for the remedy of disgorgement, if there was a so-
called "Frye rule" as misstated by the Slovensky court and urged by Mr. Randazza.
If fact of damage and extent of damages must be proven by a preponderance of the
evidence, in order to obtain disgorgement, that remedy would be rendered duplicative
of the remedy of compensatory damages, except in name only.  Moreover, the strong
public policy to deter and remove any incentive for clear and serious violations of
fiduciary duty - where injury to the client or other principal might be difficult or
impossible to prove, as a matter of compensable damages - would be severely
undermined.

In Frye , the California Supreme Court appears to have been offended by the
plaintiff/client's overreach in the circumstances.  The Court determined not that the
remedy of disgorgement was legally unavailable but, rather, that its application — in the

20

Case 15-01193-abl    Doc 98    Entered 11/02/16 20:26:38    Page 66 of 71
Case 15-14956-abl    Doc 60-5    Entered 10/28/15 15:59:00    Page 22 of 27
Case 15-14956-abl    Claim 8    Filed 12/29/15    Page 26 of 31

counsel and other corporate executives with respect to the availability of the remedy of forfeiture/disgorgement of compensation for breaches of fiduciary duty.[19]   While it might be less easy to determine the appropriate amount of disgorgement --- because, for example, the compensation paid is not a fixed percentage, as in an all-or-nothing legal or brokerage contingency fee arrangement,  contractual hourly arrangements, etc. --- that is not a disqualifying factor or consideration.   Considerations of proportionality and non-overlap with an award under other remedies are applicable.

 Disgorgement will be applied to E/L-paid compensation received by Mr. Randazza in connection with litigation and other engagements on behalf of non-E/L clients --- in material breach of contract, while employed by E/L and beyond the significantly limited scope of his employment agreement (in terms of subject matter and time) and/or, in all events, in violation of his professional and fiduciary duties owed to his principal/client/employer, E/L.  See Par. 1(V), above.

 None of the expert witnesses who testified concerning breaches of legal ethics and fiduciary duties by attorneys and remedies for such breaches opined that disgorgement is unavailable in all instances.  The Arbitrator had the

---

special context of a technical failure to properly register for the practice of law by a public interest non-profit organization, engaged in what the Court considered to be important, worthy public interest work, expressly supported by the Court (including by affirming very substantial statutory attorneys' fees awards, as stated in that opinion) — was "grossly disproportionate to the wrongdoings" of the defendant there and therefore "would constitute a totally unwarranted windfall" to the plaintiff there. 38 Cal.4th, at p. 50. Frye, therefore, is distinguishable from the facts of this case.

 Because the basis for its opinion was wrong, Slovensky is distinguishable or, more aptly, inapplicable to Mr. Randazza's proven clear and serious ethical and fiduciary breaches in this case.

[19] See Zakibe v. Ahrens & McCarron, Inc., 28 S.W.3d 373, 385-386 (Mo. Ct. App. 2000) (executive's breaches of fiduciary duty resulted affirmed forfeiture of his right to "all compensation, including bonuses and severance pay to which he may have been entitled"); Riggs Investment Management Corp. v. Columbia Partners, LLC, 966 F. Supp. 1250, 1266-1267 (DDC 1997) (former chairman and CEO of corporation forfeited all salary, bonuses and other compensation paid from the time disloyal action began, as determined by the appellate court, to date of end of employment six months later).

Case 15-01193-abl    Doc 98    Entered 11/02/16 20:26:38    Page 67 of 71
Case 15-14956-abl    Doc 60-5    Entered 10/28/15 15:59:00    Page 23 of 27
Case 15-14956-abl    Claim 8    Filed 12/29/15    Page 27 of 31

sense, however, that Mr. Joseph Garin came close to opining that causation and/or "fact of damage" caused by an assumed breach of an ethical/fiduciary duty is or should be a prerequisite to the imposition of disgorgement, with which opinion the Arbitrator respectfully disagrees (if that is Mr. Garin's opinion).[20]   In so opining, Mr. Garin (as did Mr. Randazza's California expert witness, Ms. Ellen Peck) testified that --- based on information provided by Mr. Randazza --- there was not a single instance of an ethical violation, with which the Arbitrator also respectfully agrees, based on all of the evidence adduced at hearing.

See Burrow v. Arce, 997 S.W.2d 229 (Tex. 1999) and Restatement of Agency 3d, Sec. 8.01 comment d(2).

X.    While Mr. Randazza's obtaining Mr. Gideon's signature on the promissory note for Mr. Randazza's $25,000 loan to E/L for Hong Kong legal fees was rife with ethical infirmities, in the exercise of the Arbitrator's discretion, the Arbitrator will not void the underlying loan.  However --- again in the exercise of the Arbitrator's discretion --- the Arbitrator will limit the benefit of that decision to allowing Mr. Randazza to assert an offset, under this paragraph, to any and all amounts awarded on E/L's counterclaims, up to a maximum amount of $25,000 (i.e., no interest) --- which right of offset shall be conditional upon Claimant's transfer to Respondent Liberty of all Oron settlement-related and other E/L funds held in Claimant's attorney trust account,[21] plus interest at the legal rate of ten percent (10%) per annum from August 29, 2012.

Y.    E/L are the prevailing parties in this arbitration.  As such one or both of Respondents is or may be entitled to contractual attorneys fees under the employment agreement.[22]

---

[20] Mr. Garin conceded, on cross-examination, that Section 37 of the Restatement 3rd of The Law Governing Lawyers does not say that a showing of actual monetary loss is required for disgorgement of attorney compensation.
[21] See Interim Arbitration Award, Pars. 4 & 5, at p. 28, infra.
[22] See Interim Arbitration Award, Pars. 8 at pp. 28-29, infra.

## INTERIM ARBITRATION AWARD

Based upon careful consideration of the evidence, the applicable law, the parties' written submissions, the Determinations hereinabove set forth, and good cause appearing, the Interim Arbitration Award in this arbitration is as follows:

1.    Claimant and Counter-Respondent Marc J. Randazza ("Claimant") shall take nothing by any of his claims set forth in his Amended Arbitration Demand.

2.    Claimant shall pay Respondent(s) the following sums and amounts, as and for monetary damages in connection with Respondents' counterclaims.   Said amounts are exclusive and non-duplicative of any amount separately and additionally awarded to Respondents as part of the remedy of disgorgement.  See below.

Said amount includes the amount of $275,000, plus pre-award interest from August 13, 2012, at the legal rate of ten percent (10%) per annum, as and for monetary damages in connection with the resettlement of the Oron litigation, as a direct and proximate result of Claimant's violations of fiduciary duty in connection with his negotiating for a $75,000 "bribe" (to conflict him out of future representation against Oron) as part of the resolution of the Oron litigation.

Said amount will include the amount of $60,000, by which amount Claimant was unjustly enriched --- in that Claimant (via his law firm), rather than either Respondent received (A) $60,000 in connection with Claimant's ostensibly pro bono representation in connection with the Righthaven cases, while compensated for Claimant's time spent on the representation as employee, in the course of his employment, as to which representation the costs were advanced by Claimant's employer, and (B) received from James Grady in connection with the Oron litigation.

Said amount will include the amount of $3,215.98 --- as and for Respondents' expenses reasonably incurred in connection with QUIVX forensic

23

Case 15-01193-abl    Doc 98    Entered 11/02/16 20:26:38    Page 69 of 71
Case 15-14956-abl    Doc 60-5    Entered 10/28/15 15:59:00    Page 25 of 27
Case 15-14956-abl    Claim 8    Filed 12/29/15    Page 29 of 31

examination and attempted restoration of data on employer-owned laptop computers and an iPhone used and returned, as applicable, by Claimant and Erika Dillon. In addition, an amount yet to be determined, in the exercise of the Arbitrator's discretion, will be awarded for Claimant's spoliation and conversion of Excelsior's and Liberty's files and other data contained on employer-owned laptop computers entrusted to Claimant and Erika Dillon during their employment by Respondents or either of them. The additional amount awarded will be set forth in a further and/or amended interim arbitration award and/or in the final arbitration award.

3.    Claimant shall pay Respondent Excelsior the amount of $197,000.00 --- as and for disgorgement of an appropriate amount of Claimant's employment compensation (including salary and bonuses) paid under his employment agreement).

The awarded amount under this paragraph is non-duplicative of and does not overlap with any amount award as monetary damages under any other paragraph of this Interim Award.

The amount awarded under this paragraph does not include disgorgement based on Claimant's post-employment violations of fiduciary duty. That is because it appears to the Arbitrator that they are instances of Respondents having rights without a remedy --- as the limits of case law on disgorgement do not extend to post-employment violations of fiduciary duty.

Disgorgement shall be based on Claimant's violations of fiduciary duty ---including as acting as an attorney in connection with the TNAFlix litigation and the MegaUpload case, Claimant's concurrent representation of XVideos and/or XNXX during his employment by Excelsior and spending excessive, undisclosed, time on non-Excelsior/Liberty matters far beyond contractually-permitted time under his employment agreement.

4.    Claimant is hereby ordered forthwith (i.e., within ten (10) days of the date of the issuance of this Interim Arbitration Award) to turn over to

Case 15-01193-abl    Doc 98    Entered 11/02/16 20:26:38    Page 70 of 71
Case 15-14956-abl    Doc 60-5    Entered 10/28/15 15:59:00    Page 26 of 27
Case 15-14956-abl    Claim 8    Filed 12/29/15    Page 30 of 31

Respondents all <u>Oron</u>-related funds and, further, an additional $30,000 of non-<u>Oron</u>-related client funds of Respondents --- which funds have been held in Claimant's attorney trust account --- plus pre-award interest at the legal rate of ten percent (10%) per annum from August 29, 2012.

     5.     An accounting of Claimant's attorney trust account is hereby ordered --- including to ensure compliance with Paragraph 4 hereof. The accounting shall be performed by a qualified third-party accountant and/or accounting firm appointed and/or approved by the Arbitrator. The cost and expense of which shall be borne solely by Claimant --- although Respondents may advance the funds necessary for the accounting, subject to ordered reimbursement by Claimant. Claimant is hereby ordered to cooperate fully with the ordered accounting.

     6.     Claimant is hereby ordered to return the as-yet-unreturned company-owned laptop to Respondents' counsel forthwith --- and in no event later than ten (10) days from the date of the issuance of this Interim Arbitration Award.

     7.     Respondent shall be awarded as damages or costs reasonably incurred with this litigation, expenses reasonably incurred by QVIX or similarly qualified expert vendor --- up to a maximum of $3,500 --- in connection with the vendor's performance of successful and/or attempted retrieval of data a report to the Arbitrator of what, if anything was deleted from the computer and when.

     8.     Respondents and Counterclaimants Excelsior Media Corp. and Liberty Media Holdings, LLC shall be afforded the right in this arbitration to establish their rights --- if any, and according to proof --- to contractual attorney's fees and costs.

     Counsel for the parties are ordered to immediately commence and diligently conduct and conclude meet-and-confer communications and to submit to the Arbitrator within ten (10) days of the issuance of this Interim Arbitration

Case 15-01193-abl    Doc 98    Entered 11/02/16 20:26:38    Page 71 of 71
Case 15-14956-abl    Doc 60-5    Entered 10/28/15 15:59:00    Page 27 of 27
Case 15-14956-abl    Claim 8    Filed 12/29/15    Page 31 of 31

Award an emailed proposed briefing and hearing schedule for any application for contractual attorney's fees and costs.

     9.    Respondent Jason Gideon will be dismissed as a party to this arbitration.

    Subject to further order and/or a further and/or amended interim arbitration award, and the Final Arbitration Award, this Interim Arbitration Award, including the Determinations hereinabove set forth, is intended to be in full settlement of all claims, issues, allegations and contentions, on the merits, submitted by any party against any adverse party in this arbitration. Subject to the immediately preceding sentence, claims and requests for relief not expressly granted in this Interim Arbitration Award are hereby denied.

Dated: June 3, 2015

                                 STEPHEN E. HABERFELD
                                     Arbitrator