LARSON & ZIRZOW, LLC
ZACHARIAH LARSON, ESQ.
Nevada Bar No. 7787
E-mail: zlarson@lzlawnv.com
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
E-mail: mzirzow@lzlawnv.com
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170
Fax: (702) 382-1169

Attorneys for Defendant

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170 Fax: (702) 382-1169

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>MARC JOHN RANDAZZA,<br><br>Debtor. | Case No.: BK-S-15-14956-abl<br>Chapter 11 |
| EXCELSIOR MEDIA CORP., a Nevada corporation; and LIBERTY MEDIA HOLDINGS, LLC, a Nevada limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>MARC JOHN RANDAZZA, an individual,<br><br>Defendant. | Adv. No. 15-01193-abl<br><br>**OPPOSITION TO MOTION FOR ORDER CONFIRMING INTERIM ARBITRATION AWARD**<br><br>Date: March 14, 2017<br>Time: 1:30 p.m. |
| AND RELATED COUNTERCLAIMS. | |

# TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................................. 1

II.   FACTUAL AND PROCEDURAL BACKGROUND ......................................... 3

    A.    Pre-Petition. ........................................................................................... 3

    B.    Post-Petition............................................................................................ 13

        1.    The Debtor's Bankruptcy Schedules and the Claims Asserted............... 13

        2.    The Stay Relief Motion............................................................................ 13

        3.    The Adversary Proceeding (Through Dismissal of the FAC)................. 17

        4.    The MJRPA Settlement Agreement. ........................................................ 19

        5.    The Adversary Proceeding (From the SAC through the
            Counterclaims). ...................................................................................... 19

III.  LEGAL ARGUMENT........................................................................................... 20

    A.    The Motion to Confirm Cannot Be Used as an "End Run" Around the
        Bankruptcy Code and the Federal Rules of Bankruptcy Procedure. ................. 20

        1.    Confirmation of the IAA Cannot Be Used as a Backdoor Attempt to
            Establish the Unfiled and Now Time-Barred Potential Claim of LMH. . 20

        2.    Confirmation of the IAA Cannot Be Used as Backdoor Attempt to
            Resurrect Claims That Have Already Been Dismissed in This Adversary
            Proceeding................................................................................................ 22

        3.    Confirmation of the IAA Must Be Denied as a Backdoor and Quite
            Belated Attempt to Reconsider the Court's Previous Stay Relief Denial
            Order, and Must Be Denied as Inappropriate. ........................................ 22

    B.    Confirmation of the IAA is Time-Barred Under the FAA............................... 24

    C.    This Court Lacks Jurisdiction to Confirm the IAA Under the FAA.................. 25

    D.    The IAA Is Not Final and Thus Cannot be Confirmed. .................................... 25

    E.    The IAA Cannot be Confirmed Where the Arbitrator Exceeded his Powers,
        Committed Manifest Errors, and Demonstrated Bias. ..................................... 26

        1.    The IAA was Replete with Bias. ............................................................ 28

        2.    Errors of Counsel Were Misattributed to Randazza............................. 31

        3.    The Arbitrator Cannot Make An Adverse Credibility Finding Based On
            An Issue He Opted Not To Decide....................................................... 32

    F.    The Arbitrator Made Gross Factual and Legal Errors. ..................................... 33

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

i

1.    The Arbitrator Made Improper Factual Findings. ................................. 33

2.    The Arbitrator Made Improper Legal Determinations. ......................... 36

IV.    CONCLUSION ................................................................................................ 61

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

Marc J. Randazza ("Randazza" or "Debtor" or "Defendant", as applicable) hereby submits his opposition (the "Opposition")[1] to the *Motion for Order Confirming Interim Arbitration Award* [Adv. ECF No. 104] filed by Excelsior Media Corp., a Nevada corporation ("Excelsior"), and Liberty Media Holdings, LLC, a Nevada limited liability company ("Liberty" and together with Excelsior, the "Plaintiffs"), which seeks to confirm a pre-petition *Interim Arbitration Award* ("IAA"). See Motion, Ex. 1.

This Opposition is made and based on the points and authorities herein, the *Declaration of Marc J. Randazza* (the "Randazza Declaration"), the *Declaration of James Grady* (the "Grady Declaration"), the *Declaration of Kenneth P. White* (the "White Declaration"), and the *Request for Judicial Notice* (the "RJN") submitted herewith, the papers and pleadings on file in both the Debtor's underlying bankruptcy case and this Adversary Proceeding, judicial notice of which are respectfully requested, and any arguments of counsel made at the time of any haring on the Motion. Additionally, prior to any confirmation of the IAA, the Court should also adjudicate Randazza's separately filed *Motion for Summary Judgment* in this Adversary Proceeding.

## I. INTRODUCTION

1.      The Plaintiffs filed their motion to confirm because they do not like how this Adversary Proceeding is progressing. This Court, unlike the Arbitrator, is actually addressing the elements of the claims, and indeed has already made decisions dismissing certain of the Plaintiffs' claims. The Plaintiffs' request to confirm the IAA must first be denied because it essentially seeks to "short circuit" the proper functioning of this Court, including the Bankruptcy Code and Bankruptcy Rules. In particular, confirmation of the IAA should not be used as a backdoor attempt to establish the unfiled and now time-barred potential claim of LMH, and/or to resurrect claims that have already been dismissed in this Adversary Proceeding. Further, confirmation of the IAA must be denied as a backdoor and quite belated attempt to reconsider the Court's previous

---

[1] Pursuant to Local Rule 7008.1, Randazza consents to the entry of final orders and judgments by the bankruptcy judge in this matter. Capitalized terms shall have the same meanings as set forth *infra*. Unless otherwise indicated, all references to the "Bankruptcy Code" are to title 11 of the United States Code, and all references to the "Bankruptcy Rules" are to the Federal Rules of Bankruptcy Procedure.

Stay Relief Denial Order, and is otherwise not proper in light of this Court's core jurisdiction over matters.

2.      Second, even if the Plaintiffs' are somehow able to get beyond all of the bankruptcy-related reasons for why confirmation of the IAA must be denied, the IAA is not subject to confirmation under applicable arbitration law, and the Nevada Uniform Arbitration Act, NRS 38.206, *et seq.* (the "NAA"), and NRS 38.239 in particular.  Additionally, although Plaintiffs reference the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* (the "FAA"), and 9 U.S.C. § 9 briefly in passing in their Motion, their Motion is not based on that federal law, but rather only on the NAA.  As addressed herein, the IAA would have been subject to vacatur for evident partiality, misconduct, and exceeding of powers under NRS 38.241 or, alternately, to modification.[2]

3.      The Employment Agreement, see Motion, Ex. 2, only empowered the Arbitrator to apply California law, however, the Arbitrator exceeded his powers and instead reached to Texas *dicta* in order to support his chosen result.  See Employment Agreement § 9(f) (stating, "[t]his Agreement shall be governed by and construed in accordance with the laws of the State of California, without regard to conflict of laws.").  Further, it incorrectly requires Randazza to pay Excelsior, Liberty Media Holdings, LLC, a California limited liability company ("LMH"), and Jason Gibson ("Gibson"), jointly, $275,000, plus interest, for an alleged breach of fiduciary duty. Id. p. 23.  It requires Randazza to remit to them, jointly, $60,000--ignoring the fact that this $60,000 was earned by a non-party law firm, over which there was no arbitration agreement, and which was never a party to the Arbitration.  Id.  It requires Randazza to pay $3,215.98 for expert costs, plus an unspecified amount for spoliation and conversion, notwithstanding lack of evidence of the value of the allegedly spoliated data[3] and the absence of a cause of action in California for

---

[2] At the time Defendant filed his Chapter 11 Case, not only was Excelsior and LMH's similar motion to confirm pending in the Nevada State Court, but also Defendant's cross motion to vacate or to modify the IAA.  Both were stayed as a result of the filing of the bankruptcy filing.

[3] Despite a five day hearing, preceded by extensive discovery practice, during which time Excelsior and LMH had the opportunity to have the alleged laptop that is the subject of the spoliation issue produced for inspection, the Arbitrator is requesting that Excelsior's and LMH's expert newly determine what data may have been deleted.  See IAA, p. 24.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

2

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

spoliation, <u>Cedars-Sinai Med. Ctr. v. Superior Ct.</u>, 954 P.2d 511 (Cal. 4th 1998).  Excelsior did not plead spoliation, but the Arbitrator nonetheless invented such a claim on his own, thus further exceeding his powers.  <u>Id.</u> pp. 23-24.  The IAA also improperly required an accounting of a non-party law firm's trust account.  <u>Id.</u> p. 25.  Again, as an exceedance of powers.

4.    The IAA further improperly requires Randazza to disgorge the salary he earned in the amount of $197,000.00, for allegedly breaching a fiduciary duty and for spending excessive time on other matters.  <u>Id.</u> p. 24.  There was no showing that Randazza did not perform the work and earn his salary, and the award is in violation of California Law, specifically California Labor Code, Section 221, which states that "[i]t shall be unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee."[4]  This is in addition to the improper denial of Randazza's claims.  For all the foregoing reasons, Plaintiffs' motion to confirm the IAA must be denied.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

### A.    Pre-Petition.

5.    On or about June 10, 2009, Excelsior hired Randazza as its General Counsel as set forth in the Employment Agreement.  The Employment Agreement makes no mention of Randazza representing LMH or the brand name/website "Corbin Fisher."  Plaintiffs allege they are simply "sister" entities.  <u>See</u> SAC ¶ 8.

6.    While serving as general counsel, Randazza was contractually permitted to practice law on behalf of other clients through a law firm, Marc J. Randazza P.A. d/b/a Randazza Legal Group ("<u>MJRPA</u>").  <u>See</u> Employment Agreement § 6(c) (stating in part, "Excelsior agrees that Randazza may, without breaching such duties and agreements, provide professional services to a limited number of outside clients on an ongoing basis as long as such services are rendered without legal or professional conflict with Excelsior . . ." ).  This outside law practice worked to

---

[4] The IAA also requires Randazza to return a laptop.  Randazza has already done so, rendering the issue moot.  It also dismisses Jason Gibson as a party, which Randazza does not oppose.  But this dismissal as a party would preclude the issuance of a monetary award to him, notwithstanding the fact that Gibson did not even file a counterclaim that was before the Arbitrator.

**LARSON & ZIRZOW, LLC**
**810 S. Casino Center Blvd. #101**
**Las Vegas, Nevada 89101**
**Tel: (702) 382-1170   Fax: (702) 382-1169**

Excelsior's benefit.  For example, in the litigation described in SAC ¶ 49, Randazza represented LMH, through his law firm, MJRPA, as required by Rule 5.4(d) of the Nevada Rules of Professional Conduct (the "NRPC"), rather than through his job with Excelsior.  See Liberty Media Holdings, LLC v. FF Magnat Ltd. d/b/a Oron.com, No. 12-01057, 2012 WL 3255044 (D. Nev. Aug. 7, 2012).  Gibson is also LMH's managing member.

7.    As alleged in the SAC, Excelsior never found fault in Randazza's performance during the course of his employment with it; he successfully resolved complaints, litigated vigorously, and advised them on a variety of legal matters, as well as provided business advice and public relations advice for years.  There is not a single allegation that Randazza did not perform his assigned tasks or that he improperly worked for outside clients during his work hours with Excelsior.  In fact, in the entirety of the SAC, Plaintiffs only identify three (3) outside clients with whom they take issue:  1) Bang Bros., 2) XVideos/XNXX, and 3) Wayne Hoehn in the Righthaven litigation.  They take pains to calculate the amount of time Randazza spent not to even suggest he did so at the expense of time he should have devoted to Excelsior.  Yet, by Plaintiffs' own admission, the wound-down outside practice billed only an average of 564 hours per year, a fraction of the number of hours Randazza would reasonably have been expected to bill as an associate.  See SAC ¶ 21.

8.    Plaintiffs assert that Randazza represented Bang Bros. subsequent to being hired by Excelsior.  See SAC ¶ 39.  Specifically, they claim that Randazza suggested that Bang Bros. lend LMH funds to purchase Cody Media, a competitor.  They then admit that they independently chose not to consummate the transaction.  See SAC ¶¶ 40-42.  There is no suggestion that Plaintiffs did not know Bang Bros.' primary business may have hypothetically competed with theirs; they only speculate that Randazza knew that merely suggesting them as a source of funding for the transaction could somehow, in some unknown way, harm Plaintiffs.

9.    Plaintiffs similarly assert that Randazza represented XVideos and XNXX after being hired by Excelsior.  See SAC ¶ 43.  Although Plaintiffs claim they sought to bring suit against one or both of them in 2011, Randazza gave specific reasons why such suits would not likely be successful and disclosed that he, himself, could not file such suits.  See SAC ¶¶ 44 &

46. Plaintiffs offer no facts or law to suggest Randazza was in error as to the likely outcome, and even refrained from filing such suit once his employment was terminated – despite hiring multiple other law firms within the statute of limitations.

10.    Plaintiffs also incorrectly assert that <u>Randazza</u> was awarded $55,000 in a suit against Righthaven filed on behalf of a third-party client.  <u>See</u> SAC ¶¶ 93-97.  First, MJRPA represented the <u>defendant</u>, Mr. Wayne Hoehn, not a plaintiff.  <u>See</u> <u>Righthaven, LLC v. Hoehn</u>, 792 F. Supp. 2d 1138 (D. Nev. 2011).  Accordingly, neither Excelsior nor the Arbitrator were correct about Randazza's role in those proceedings, despite the clarity of the public record in that regard.

11.    Second, the $55,000 was not actually awarded for representing Mr. Hoehn, but was a distribution for administrative expenses on behalf of the Court-appointed receiver.  <u>See</u> RJN, Exs. 1 and 2 (<u>Righthaven, LLC v. Hoehn</u>, 2:11-cv-00050 (D. Nev. Mar. 15, 2013) (report of receiver), and <u>Righthaven, LLC v. Hoehn</u>, 2:11-cv-00050 (D. Nev. Jun. 6, 2013) (order adopting report of receiver)).  Third, it was not Randazza individually, but his law firm, MJRPA, that received the distribution.  <u>See id.</u>  And fourth, the distribution to MJRPA occurred nine (9) months <u>after</u> Randazza's employment with Excelsior terminated.  <u>See id.</u>  Thus, none of Randazza's representation of outside clients caused any harm to Plaintiffs, nor was any even sufficiently alleged.

12.    During the course of his employment, Randazza found himself facing repeat opposing counsel,[5] notably Valentin Gurvits. Esq. ("<u>Gurvits</u>"), when he dealt with TNAFlix and FF Magnat Ltd., d/b/a Oron.com ("<u>Oron</u>") on LMH's behalf.  <u>See, e.g.</u>, SAC ¶ 23 (Gurvits representing TNAFlix); <u>see also</u> RJN, Ex. 3 (<u>Datatech Enters. LLC v. FF Magnat Ltd.</u>, No. 3:12-cv-4500, 2013 WL 1007360 (N.D. Cal. Mar. 13, 2013) (Gurvits representing FF Magnat Ltd., d/b/a Oron.com)).[6]

---

[5] Plaintiffs also make mention of negotiations with Megaupload, but fail to provide any factual basis for any claim of harm.  <u>See</u> SAC at ¶ 70.

[6] Although Gurvits' name does not appear in the reported orders of <u>Liberty Media Holdings, LLC v. FF Magnat LLC d/b/a Oron.com</u>, the Datatech case demonstrates Gurvits was its counsel, though Plaintiffs did not plead it.  Similarly,

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

13.     Although Gurvits raised the potential of retaining Randazza on behalf of TNAFlix during settlement negotiations, Randazza determined that such might run afoul of the Rules of Professional Conduct.  See SAC ¶ 27.  As a result, Randazza caused there to be a satisfactory settlement between LMH and TNAFlix without ethical quandary.  See SAC ¶¶ 27-28.  Notably, at no time does LMH claim that TNAFlix ever made any settlement offer that would have resulted in greater financial compensation to LMH, with or without any compensation to Randazza.

14.     On June 20, 2012, LMH, through its outside counsel, MJRPA, filed suit against Oron for copyright infringement.  See Liberty Media Holdings v. FF Magnat Ltd., No. 2:12-cv-01057 (D. Nev. Jun. 20, 2012) (Complaint).

15.     Plaintiffs assert that Randazza received $5,000 from a James Grady ("Grady") to help fund the suit against Oron.  See SAC ¶ 90.  As Excelsior was not a party to the suit and Randazza's law firm, MJRPA, represented LMH, it is clear that Randazza received the funds on behalf of MJRPA, a non-party to this litigation.  Further, to the extent Plaintiffs had any legitimate claim against MJRPA regarding the $5,000, such claim has been settled pursuant to the MJRPA Settlement Agreement as approved by the Settlement Order (as those terms are hereinafter defined), which provided for general releases between those parties.  See ECF Nos. 148 and 157.

16.     Furthermore, Grady gave these funds to MJRPA to use as it saw fit.  In fact, MJRPA / Randazza had every right to retain this $5,000 payment for services unrelated to Excelsior or LMH.  Nevertheless, Randazza and MJRPA elected to donate it to LMH's legal bills.  See Grady Decl.  Despite this, Excelsior comes to this Court expecting it to determine that giving away $5,000 unjustly enriched him.

17.     On or about July 1, 2012, LMH and Oron reached a settlement of the litigation between them.  See SAC ¶ 50.  MJRPA thereafter successfully obtained an order enforcing the settlement agreement on behalf of LMH.  See SAC ¶ 52; Liberty Media Holdings, LLC v. FF

---

Mr. Gurvits' name does not appear in Liberty Media Holdings, LLC v. Youngtek Solutions, Ltd. d/b/a TNAFlix.com, No. 3:10-cv-01972, 2010 U.S. Dist. LEXIS 136525 (S.D. Cal. Dec. 27, 2010), despite all parties recognizing Gurvits' participation therein.  The Court may take judicial notice of the docket and filings in these cases.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

6

Magnat Ltd., No. 2:12-cv-01057, 2012 WL 3255044 (D. Nev. Aug. 7, 2012).

18.    Thereafter, Gurvits wished to re-open settlement discussions, and proposed a new agreement (after the Court had already enforced the existing one) containing certain terms with which Excelsior and LMH allegedly disagreed.  See SAC ¶¶ 53 & 55.  Randazza (in his capacity as an attorney with MJRPA) did not believe any new settlement was in order because MJRPA had filed a successful motion to enforce the original one, but Gibson insisted that LMH get its settlement faster than the courts would normally allow.  As a result, Randazza (in his capacity as an attorney with MJRPA) was forced to negotiate once more the prospect of potential representation of Gurvits' client.  Then, in fulfillment of his ethical obligations, Randazza, on behalf of MJRPA, presented the August 13, 2012 offer of $600,000 to Gibson as the head of LMH.  See SAC ¶ 53.

19.    Although Plaintiffs and the Arbitrator use the term "bribe" in order to color these proceedings, in reality the settlement stated clearly that certain funds were to be released to Oron's attorney, Gurvits, without any provision for Randazza's retention.  See Randazza Decl., Ex. 11. Since Randazza already had a vested fee of $137,500 due him, he would have gained nothing by the $75,000 released to Gurvits, even if there were some guarantee MJRPA would be hired.

20.    LMH did not enter into that new settlement and does not allege it did or even desired to.  Pending at that time was a motion for attorneys' fees and costs filed by MJRPA seeking an additional $214,964.00; and the Court ultimately awarded $131,797.50.[7]  See Liberty Media Holdings, LLC v. FF Magnat Ltd., No. 2:12-cv-01057, 2012 WL 3834744 (D. Nev. Sept. 4, 2012).  Plaintiffs do not claim that it was feasible for Randazza, through MJRPA, to have achieved a resolution of the dispute with Oron superior to the $764,964.00 he obtained for them. In fact, the proposed settlement was for less.

21.    Randazza agrees that there was animosity at Excelsior and he contemplated quitting.  As Excelsior recognizes, however, Randazza determined to continue and even advanced

---

[7] LMH agreed that the amount of fees awarded was appropriate and that Randazza's firm's labors were worth the fees claimed and could be properly awarded.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170    Fax: (702) 382-1169

7

$25,000 *of his own funds on or about August 21, 2012* to continue efforts to secure LMH's representation in Hong Kong, efforts that proved successful.[8]  More specifically, Randazza, through Hong Kong counsel, caused LMH to obtain a *Mareva* injunction in Hong Kong against Oron's worldwide assets.  Randazza's advance of funds directly paid the invoices of Hong Kong counsel.

22.    August of 2012 was a trying time for Excelsior.  On August 7, 2012, Gibson reported that two significant employees would be terminated, one specifically for economic reasons.  See Randazza Decl, Ex. 26 (E-mail correspondence between Randazza and Gibson dated Aug. 7, 2012).  Benefits, including 401k matching and dependent coverage, were eliminated.  Id. Sales were declining and the ownership claimed to be dipping into personal assets to cover business expenses.  Id.

23.    In addition to corporate financial strain, Randazza became subject to personal disrespect.  In April 2012, without prior notice to him or obtaining his consent, which he would not have given, a pornographic film was made in Randazza's office, which included a woman urinating on his desk.  Filming in employee offices was not to be anticipated prior to that date. At that time, Randazza had no choice but to attempt to take it in stride.  In that same filming session, homosexual pornography also was photographed in Randazza's office.  Mr. Gibson explicitly highlighted to Randazza that he was "shooting gay porn on [Randazza's] office desk & couch."  Randazza Decl., Ex. 27 (Communications between Randazza and Gibson dated April 20, 2012 to April 24, 2012).  Then, on August 9, 2012, Gibson performed fellatio on another employee in the back seat of Randazza's vehicle, adjusting the rear view mirror in an attempt to compel him to watch.  In light of the personal harassment and the financial pressures, Randazza anticipated his termination was imminent.  This was par for the course by Gibson any time someone fell into disfavor.

---

[8] Contrary to common sense, Excelsior and LMH claimed that the Randazza, as the alleged perpetrator of a fraud, gave LMH, the alleged victim, $25,000 of his own funds and got nothing illicit in return.  Simply put, that is not how a fraud works.  Neither do people with the intent to resign lend $25,000, being 1/8 of their annual salary, to their employer's affiliate.  The facts lay Plaintiffs' manifest dishonesty bare.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

8

24. At the end of August 2012, MJRPA, as counsel for LMH, with the assistance of Hong Kong counsel, seized the settlement funds from Oron through court order. See SAC ¶ 59. MJRPA, acting through Randazza, communicated receipt of the funds to LMH within hours of receipt.[9] Notwithstanding the foregoing undisputed fact, Plaintiff continuously, and dishonestly, claims that it was not kept informed of this development.

25. The following day, MJRPA, acting through Randazza, proposed a contingent distribution of the proceeds. It was contingent because all settlement terms had not yet been performed, and because the settlement agreement explicitly provided that Randazza was personally liable, as an escrow agent, for the funds plus a 10% penalty if he released them before all terms were complied with.

26. LMH disagreed with the contingent distribution proposed, even though it resulted in a larger net benefit to LMH than LMH proposed.[10] Id. ¶¶ 60 & 61. MJRPA was prepared to deliver to LMH the funds it was "entitled to receive;" however, LMH demanded the entire *res* and without payment to the firm for its fees and costs, and with Gibson taking the express position that he would cause Excelsior to cheat Randazza of his vested bonus. Compare NRPC 1.15(d).

27. Thereupon, Randazza, on behalf of MJRPA, recommended to LMH that his firm cease representing LMH in further matters due to the dispute between the two. See SAC ¶ 62. In response, Excelsior communicated that, rather than simply rely on the words Randazza actually used, that MJRPA would file no new cases on LMH's behalf, Gibson chose to "construe his email" as his resignation from his position with Excelsior and alleges that Randazza did, in fact, resign. Id. ¶ 63. Randazza disputed this contention then and continues to dispute it now.

---

[9] Mr. Randazza was required to "promptly notify" LMH upon receipt of the funds, see NRPC 1.15(d); there was no appreciable delay in the case at hand. "Promptly" certainly contemplates a delay of a few hours, especially on a day that Mr. Randazza was out of the office to attend his sister's wedding.

[10] MJRPA was only required to deliver to LMH those funds to which LMH was actual entitled to receive. See, e.g., NRPC 1.5(c) and (d). Specifically, NRPC 1.15(d) provides that "[u]pon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property." (emphasis added).

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

9

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

28.    Excelsior then refused to reimburse Randazza the $25,000 he had advanced for the retention of Hong Kong-based counsel in the Oron Litigation and his remaining pay.  To date, Excelsior continues to refuse to reimburse these employee-advanced litigation funds.  This theft has gone un-remedied.

29.    Plaintiffs claim that Randazza "spoliate[d] evidence" by erasing files from his laptop (SAC ¶ 65(d)), but they admit that all of their records were actually preserved on a separate server.  See SAC ¶ 65.  Additionally, Plaintiffs do not identify a single missing document that was not preserved in cloud storage.  Simply put, Plaintiffs cannot in one breath claim Randazza preserved the records on a secure server and in another claim a failure to preserve.  The so-called "spoliation" alleged by the Plaintiffs was, instead, required by the Employment Agreement's "wall of separation" provision.  See Employment Agreement § 6(C).[11]  Neither do Plaintiffs claim this was unusual, nor can they; it was a pattern and practice for the files to be stored on the firm's server and for computers to be wiped regularly, including upon an employee's separation.

30.    Moreover, although Randazza was employed by Excelsior, his representation of LMH was through his law firm, MJRPA.  In anticipation of termination, Randazza ensured that all MJRPA firm files, including those of unrelated clients, could not be accessed through his Excelsior computer, which would have to be returned.  Thus, Randazza wiped the computer to fulfill his ethical obligations of preserving client confidentiality.  See NRPC 1.6.[12]

31.    Further, MJRPA was entitled to withhold property under a retaining lien.  See Leventhal v. Black & LoBello, 305 P.3d 907, 909 (Nev. 2013).  Finally, any dispute relating to these files has been resolved by way of the MJRPA Settlement Agreement (as hereinafter defined)

---

[11] This provision reads as follows:  "Excelsior equipment, such as any laptop paid for by Excelsior, shall not be used for any outside projects.  Incidental or de minimis use shall not constitute a violation of this policy.  Nevertheless, Randazza shall keep a 'wall of separation' between Excelsior and any outside work."

[12] NRPC 1.6 governs the confidentiality of information.  Specifically, NRPC 1.6(a) provides that "[a] lawyer shall not reveal information relating to representation of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation, or the disclosure is permitted by [certain exceptions not applicable herein]."  Further, NRPC 1.6(c) provides that "[a] lawyer shall make reasonable efforts to prevent the inadvertent or unauthorized disclosure of, or unauthorized access to, information relating to the representation of a client."

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

as recently approved by this Court.  See ECF No. 148 & 157.

32.    In light of the dispute over whether he resigned, as well as his attempt to recover funds owing to him, Randazza initiated an arbitration proceeding against Excelsior, being JAMS No. 1260002283 (the "Arbitration") for amounts owed from Excelsior under the Employment Agreement and state law, as well as for wrongful termination, and in the alternative, constructive discharge and retaliation.  On or about January 2, 2013, Excelsior served its answer and counterclaims in the Arbitration.  After Randazza filed his initial arbitration claims, LMH voluntarily entered the Arbitration too.  Neither LMH nor Gibson filed counterclaims against Randazza in the Arbitration.

33.    On December 9, 2012, MJRPA filed an action against LMH in the Eighth Judicial District Court, Clark County, Nevada, Case No. A-12-673275-C, therein alleging claims for monies due for legal services rendered in the Oron Litigation (the "Fee Litigation").  On March 13, 2013, MJRPA filed its amended complaint in the Fee Litigation, which asserted claims for breach of contract, unjust enrichment, and account stated.

34.    On March 28, 2013, LMH answered the amended complaint in the Fee Litigation, and filed a counterclaim against MJRPA alleging malpractice claims arising out its representation of LMH in the Oron Litigation.  The counterclaims brought by LMH in the Fee Litigation are related to the allegations they asserted in the Arbitration against the Debtor, and also now in the instant Adversary Proceeding.

35.    On June 3, 2015, the Arbitrator entered the IAA largely in favor of Excelsior and LMH.  Notably, however, nothing in the IAA showed that they had suffered any actual harm at all on account of their claims of liability.  The IAA awarded certain monetary damages in favor of Excelsior and/or LMH and against Randazza.  Id. pp. 23-25, ¶¶ 2-4, and 7.  Critically, however, the IAA was interim only because it left at least three (3) substantial matters unresolved and pending further proceedings.

36.    First, the IAA left open the possibility that the Arbitrator would award additional damages for the alleged spoliation and conversion of Excelsior and/or LMH's files and other data, with such additional amounts to be set forth in a further and/or amended arbitration award and/or

in a final arbitration award. Id. pp. 23-24, ¶ 2. Such further arbitration proceedings would require additional briefing and the presentation of additional evidence and/or arguments, as well as additional fees and costs paid to the Arbitrator in order for a final decision to be rendered at some unknown, future date. Moreover, those proceedings would have involved additional evidence and argument that would have potentially modified the IAA upon entry of a final award.

37.    Second, the IAA ordered an accounting from MJRPA's client trust account, even though MJRPA was not party to the Arbitration. Id. p. 25, ¶ 5. Further, the IAA required that accounting to be performed by a third-party accountant and/or accounting firm approved by the Arbitrator and paid for by Randazza, which will undoubtedly be at significant additional cost, and also impose unknown delays on any final and complete resolution of the Arbitration. Further, the Arbitrator had no power to enter such a ruling under the Employment Agreement.

38.    Third, the IAA also allowed Excelsior and/or LMH to establish through further arbitration proceedings the amount of attorneys' fees and costs it may be entitled to recover, if any, under the applicable Employment Agreement. Id. p. 25, ¶ 8. The costs sought by Excelsior and/or LMH in such further arbitration proceedings will undoubtedly include hundreds of thousands of dollars in fees and costs to be paid to the Arbitrator, which fees and costs will continue to accrue if the Arbitration were allowed to proceed. Notably, however, this Court has already determined that such proceedings should not proceed in denying the Stay Relief Motion (as hereinafter defined).

39.    On June 15, 2015, Excelsior, LMH, and Gibson filed a motion (the "Motion to Confirm") in the Eighth Judicial District Court, Clark County, Nevada (the "Nevada State Court"), thereby commencing Case No. A-15-719901-C (the "State Court Action"), which sought to confirm the IAA and have formal judgment entered against Randazza.[13]  See RJN, Ex. 4. Randazza opposed the Motion to Confirm and also sought to vacate or modify the IAA. See RJN,

---

[13] The State Court Action was filed in the wrong jurisdiction, because any action to enforce any arbitration award arising from the Employment Agreement was contractually required to be venued in San Diego County, California. See Employment Agreement § 9.E.  Notwithstanding this defect, confirmation was otherwise unwarranted.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

Ex. 5.  As set forth in Randazza's opposition to the Motion to Confirm filed in the State Court Action, there are substantial and significant disputes about the confirmability of the IAA and such award might otherwise be subject to modification, if not complete vacatur.  Id.

40.    Prior to the Nevada State Court hearing argument and ruling on the Motion to Confirm and/or Randazza's opposition and motion to vacate or modify, and obviously also prior to the Arbitration proceeding any further beyond the IAA, Randazza filed his bankruptcy petition, thereby staying both proceedings.  Randazza filed for bankruptcy because of the foregoing practical concerns with how much was left to still do in the Nevada State Court and the Arbitration, as well as the associated costs, as well as in an attempt to achieve a more economical, unified and complete resolution of the disputes.

**B.    Post-Petition.**

    **1.    The Debtor's Bankruptcy Schedules and the Claims Asserted.**

41.    On September 11, 2015, the Debtor filed his bankruptcy *Schedules* and *Statement of Financial Affairs* [ECF No. 15], which listed the following parties having the following claims arising from the Arbitration:  Excelsior in the amount of $1,000,000, Jason Gibson in the amount of $565,215.98, and LMH in an unknown amount.  The Debtor scheduled each these three potential claims as disputed, contingent and unliquidated.  See id. p. 21-22.

42.    The deadline to file a complaint to determine dischargeability of debts in this Chapter 11 Case was November 30, 2015 (the "Dischargeability Deadline"), and the deadline to file proofs of claim for non-governmental units was December 30, 2015 (the "Claims Bar Date").  See ECF No. 6; Fed. R. Bankr. P. 4007; LR 3003.

43.    On December 29, 2015, Excelsior filed a *Proof of Claim* (the "Proof of Claim"), being Claim No. 8, in the stated amount of "in excess of $1,552,614.29."  LMH did not file its own separate proof of claim, but is listed as "another name the creditor used with the debtor" in Excelsior's Proof of Claim.  Excelsior also attached the IAA as an exhibit to its Proof of Claim.  Gibson also did not file a proof of claim in the Debtor's Chapter 11 Case.

    **2.    The Stay Relief Motion.**

44.    On October 28, 2015, Excelsior and LMH filed their *Motion to Modify the*

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

13

*Automatic Stay to Allow a Pre-Petition Arbitration to Proceed to Judgment* (the "Stay Relief Motion") [ECF No. 60], which sought not only to return to the Nevada State Court proceedings commenced shortly before the Petition Date, but also to continue on with the Arbitration proceeding given that the IAA was interim only, and there were numerous matters yet to be resolved therein on a complete and final basis.

45.    On November 10, 2015, Randazza filed his opposition to the Stay Relief Motion. [ECF No. 77].[14] First, Randazza argued that instead of using the Bankruptcy Court to bring about an efficient and economical liquidation of its claims, Excelsior and LMH's Stay Relief Motion, if granted, would only serve to add further fees and costs to the adjudication of the matters--both through the parties' own Nevada State Court and separate arbitration counsel as well as the Arbitrator's fees in the Arbitration.  For example, Randazza noted that in the Arbitration to date he has paid in excess of $60,000.00 just in arbitration costs, and in addition to the costs of his own counsel.  Additionally, Randazza noted that as of the Petition Date, Randazza still owed his California-based counsel in the Arbitration the sum of $28,392.86 [ECF No. 15, p. 19], and exclusive of any additional fees and costs that may be incurred in the future were Excelsior and/or LMH's Stay Relief Motion be granted and the Arbitration proceedings continued.  Such a balance owing would also likely prevent such counsel from being able to represent the Debtor as special counsel in that Arbitration if it is allowed to proceed.  Similarly, as of the Petition Date, Randazza incurred approximately $40,000.00 in fees and costs to his Nevada-based counsel in the State Court Action, and still owed them the sum of $29,656.40 [ECF No. 15, p. 21] as of the Petition Date, and exclusive of any additional fees and costs that may be incurred in the future were Excelsior, Liberty and Gibson's Motion granted and those proceedings continued.  Such balances would also likely prevent such counsel from continuing to represent the Debtor as special counsel in that proceeding if Excelsior and/or LMH's Stay Relief Motion had been granted and those proceedings continued, as Randazza would not have the ability to pay for such fees and costs,

---

[14] To avoid repetition, Randazza incorporates the arguments in his opposition to the Stay Relief Motion by reference.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

14

which would obviously have a deleterious impact on his representation in those proceedings. In other words, Randazza argued that Excelsior and LMH's Stay Relief Motion was part of a clear "divide and conquer" strategy of foisting as much costs in multiple forums on the Debtor as possible to run up costs and outspend him into submission.

46. Second, Randazza also argued that granting stay relief would only result in a partial resolution of the issues, thus still leaving for this Court the remainder of the action, including most importantly, determinations with respect to the dischargeability of particular debts, which are "core" proceedings pursuant to 28 U.S.C. § 157(b)(2)(I), as well as are determinations regarding the allowance or disallowance of to-be filed claims against the estate pursuant to 28 U.S.C. § 157(b)(2)(B), which are also "core." See Continental Ins. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.), 671 F.3d 1011, 1021 (9th Cir. 2012). Thus, as in Thorpe, Randazza argued that the Court should deny further arbitration.

47. In further support, Randazza also cited the Ninth Circuit's decision in Ackerman v. Eber (In re Eber), 687 F.3d 1123, 1130 (9th Cir. 2012), wherein the Court identified that "in actuality, they [are] seeking to arbitrate dischargeability under §§ 523(a)(2), (4) and (6), a core bankruptcy issue," and the Court found that "allowing an arbitrator to decide issues that are so closely intertwined with dischargeability would conflict with the underlying purposes of the Bankruptcy Code." Id. at 1130-1131 (internal quotation omitted). Similar to the Ninth Circuit in Eber, in various other recent decisions, Randazza cited various other bankruptcy courts that also exercised their discretion to decline to compel further arbitration proceedings when those further proceedings were inextricably intertwined with nondischargeablity claims at issue in a debtor's bankruptcy case.

48. On December 18, 2015, the Court entered an order denying Excelsior and LMH's Stay Relief Motion (the "Denial of Stay Relief Order") [ECF No. 93], which incorporated by reference the Court's oral findings and conclusions made on the record on December 15, 2015 [ECF No. 116]. In support of the Court's decision to deny stay relief, the Court concluded as follows:

(a) Granting stay relief to allow the Arbitration to proceed would not result in

complete relief, but rather only a partial resolution of the issues between the parties because whatever the Arbitrator may decide, the matter would still then be subject to significantly contested confirmation proceedings, and the bankruptcy court would then still have to adjudicate the nondischargeability aspects, over which it has exclusive jurisdiction pursuant to <u>Sasson v. Sokoloff (In re Sasson)</u>, 424 F.3d 864 (9th Cir. 2005), <u>see</u> ECF No. 116, pp. 18-19;

(b)      The Arbitration is connected to the bankruptcy case because it relates to the claim asserted by the principal alleged creditors in the case, and the Bankruptcy Court is the only forum in which there can be a complete resolution of all of the issues between the parties because that Court has exclusive jurisdiction over the nondischargeability issues; <u>see id.</u> pp. 19-20;

(c)      The interests of judicial economy and the expeditious determination of litigation between the parties would not be served by allowing the Arbitration to proceed because it would only result in a partial adjudication of the issues between the parties, and because of the exclusive jurisdiction of the Bankruptcy Court over nondischargebility claims; <u>see id.</u> p. 24-25;

(d)      The impact of the stay and the "balance of the hurt" favors denial of stay relief because the matter could be adjudicated in a proof of claim and a dischargeability adversary proceeding, which the alleged creditors had already commenced in the Bankruptcy Court; <u>see id.</u> pp. 25-27;

(e)      Core proceedings "implicate more pressing bankruptcy concerns," and even the "core/non-core distinction, though relevant, is not alone dispositive," and that "even in a core proceeding, the <u>McMahon</u> standard must be met—that is, a bankruptcy court has discretion to decline to enforce an otherwise applicable arbitration provision only if arbitration would conflict with the underlying purposes of the Bankruptcy Code." <u>Continental Ins. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.)</u>, 671 F.3d 1011, 1020-23 (9th Cir. 2012) (citing <u>Shearson/Am. Express, Inc. v. McMahon</u>, 482 U.S. 220, 227 (1987)).  In weighing this, the Court referenced the Ninth Circuit's discussion in

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

16

Thorpe that the purposes of the Bankruptcy Code included the "centralization of disputes concerning a debtor's legal obligations," and protecting reorganizing debtors from piecemeal litigation, and that arbitration of a creditor's claims "prevents the coordinated resolution of debtor/creditor rights and can delay the confirmation of a plan of reorganization." Id. pp. 27-31

### 3.    The Adversary Proceeding (Through Dismissal of the FAC).

49.    On November 30, 2015, the Excelsior and LMH filed their original complaint against Randazza (the "Original Complaint") [Adv. ECF No. 1], thereby commencing this adversary proceeding (the "Adversary Proceeding").[15]  The Original Complaint asserted claims against Randazza arising out of the IAA pursuant to sections 523(a)(2)(A) and (a)(4) of the Bankruptcy Code.  The Original Complaint relied entirely on the IAA, and quoted from it extensively, and made no attempt to harmonize it with the statutory elements required on their 523(a) claims.  Additionally, the prayer for relief in Excelsior and LMH's Original Complaint requested that the Bankruptcy Court enter a monetary award either based on some final award of the Arbitrator, or according to proof at trial before this Court.  See id. p. 17, ¶¶ 1-2.  In the Original Complaint, Excelsior and LMH also pled that their claims were core proceedings, and otherwise consented to the Court's jurisdiction over all matters therein.  See id. ¶ 2.

50.    On February 10, 2016, which was almost two and a half months after the Original Complaint was filed, but never served (and thus a delay attributable entirely to Excelsior and LMH), the Plaintiffs filed their *First Amended Complaint* (the "FAC") [Adv. ECF No. 11],[16] which asserted claims pursuant to not only sections 523(a)(2) and (a)(4), but also pursuant to section 523(a)(6).  Similar to the Original Complaint, Plaintiffs' FAC relied entirely on the IAA, and quoted from it extensively, and made no attempt to harmonize that with the statutory elements

---

[15] Gibson was not included as a plaintiff in the Original Complaint, or indeed as a plaintiff at any other point in this Adversary Proceeding, including in the FAC and SAC (as hereinafter defined).

[16] LMH was not a plaintiff to the FAC or the SAC.  Instead, Liberty was substituted as a plaintiff.  LMH was a California entity; Liberty is a Nevada entity.  There is no allegation, evidence, or determination of successorship, despite the similarity in names.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

required on the 523(a) claims.  Additionally, and also just like in the Original Complaint, the Plaintiffs apparently assumed that the Court would either still allow them to go back to Nevada State Court and for further proceedings in the Arbitration, or at least that this Court would apparently allow the IAA to have issue preclusive effect in this Adversary Proceeding because their prayer for relief in the FAC requested that the bankruptcy court enter a monetary award either based on some final award of the Arbitrator (but not the IAA), or according to proof at trial before this bankruptcy court, including consequential and special damages, punitive damages, and even punitive damages according to proof at trial before the bankruptcy court.  See id. p. 20, ¶¶ 1-3.  Notably again, in the FAC, the Plaintiffs again pled that their claims were core proceedings, and otherwise consented to the Court's jurisdiction to decide all matters therein.  See id. ¶ 2.

51.    On March 14, 2016, Randazza filed a motion to dismiss the FAC or, in the alternative, for partial summary judgment (the "Original Dismissal Motion") [Adv. ECF No. 19], along with a request for judicial notice [Adv. ECF No. 23].  Randazza's pleadings briefed how the IAA not only lacks any preclusive effect because it is an interim and unconfirmed arbitration award, but also in fact that it has no evidentiary import and that the Court is required to undertake its own independent review of the record in this proceeding, and make its own separate determinations regarding all matters based on the evidence and arguments presented, including even any matters purportedly found or decided by the Arbitrator in the IAA.  See Adv. ECF No. 19, pp. 6-8; Adv. ECF No. 42, pp. 7-16.[17]

52.    On June 10, 2016, the Court issued its oral ruling [Adv. ECF No. 55] (transcript) and specifically finding that Plaintiffs had failed to state a claim under section 523(a)(2), (a)(4), and (a)(6) of the Bankruptcy Code, but allowed them leave to replead.  Additionally, the Court also dismissed Plaintiffs' request for a jury trial, their request for disgorgement, and their request for attorney's fees and costs incurred in this Adversary Proceeding.  A written order incorporating

---

[17] To avoid repetition, Randazza incorporates those points and authorities herein by reference.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

18

the Court's ruling was entered on June 16, 2016 (the "Dismissal Order") [Adv. ECF No. 52].

### 4. The MJRPA Settlement Agreement.

53. On June 15, 2016, the Debtor filed a *Motion to Approve Settlement Pursuant to Bankruptcy Rule 9019* (the "MJRPA Settlement Motion") [ECF No. 148], which sought court approval of a proposed Settlement Agreement and Mutual Release (the "MJRPA Settlement Agreement") by and between Excelsior, LMH and Gibson (collectively, the "LMH Parties") on the one hand, and MJRPA, Randazza, and others on the other hand (collectively, the "RLG Parties"). The MJRPA Settlement Agreement principally involved the resolution of their alleged liability including that arising out of the Fee Litigation in Nevada State Court. Among other pertinent parts, Paragraph 3 of the MJRPA Settlement Agreement provided that the LMH Parties were releasing MJRPA of any and all liability. *See* ECF No. 148, Ex. 1. The MJRPA Settlement Motion and Randazza's Declaration accompanying it repeatedly indicated that the settlement was done over his strenuous objection, and that he still very much disputed the claims being resolved. In particular, Randazza asserted that the insurance carrier and/or underwriter that had issued/underwrote the policy for MJRPA had made the financial decision to settle the matter, rather than expend additional fees on litigation. As a result, rather than jeopardize the remaining coverage, or risk exhaustion of the policy through continued protracted litigation, Randazza and MJRPA reluctantly agreed to the settlement agreement.

54. On July 20, 2016, the Court held a hearing on the MJRPA Settlement Motion and thereafter entered a written order granting it (the "MJRPA Settlement Order") [ECF No. 157]. Thereafter, MJRPA's insurance company timely made the settlement payment to Excelsior and LMH, and thus the release in the MJRPA Settlement Agreement is fully effective. Further, and as a result of the foregoing, the parties have dismissed the Fee Litigation with prejudice.

### 5. The Adversary Proceeding (From the SAC through the Counterclaims).

55. On July 7, 2016, and with leave of this Court per the Dismissal Order, Plaintiffs filed their *Second Amended Complaint* (the "SAC") [Adv. ECF No. 58], which is now the operative complaint in this Adversary Proceeding. The SAC also alleged claims under sections 523(a)(2)(A), (a)(4), and (a)(6), and again pled that their claims were core proceedings, and

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

otherwise consented to the Court's jurisdiction to decide all matters therein.  See id. ¶ 2.

56.    On August 8, 2016, Randazza filed a motion to dismiss the SAC for failure to state a claim upon which relief can be granted.  [Adv. ECF No. 75].

57.    On October 19, 2016, the Court entered a written order granting in part and denying in part Randazza's motion to dismiss the SAC [Adv. ECF Nos. 91 & 94].   In particular, the Court dismissed the Plaintiffs' 523(a)(2)(A) claim with prejudice, but denied his motion to dismiss the 523(a)(4) and (a)(6) claims.

58.    On November 2, 2016, Randazza filed his *Answer to the Second Amended Complaint and Counterclaims* (the "Answer" and the "Counterclaim" as applicable) [Adv. ECF No. 98].   In addition to asserting various affirmative defenses to the Plaintiffs' 523(a)(4) and (a)(6) claims in the Answer, the Counterclaim also asserted counterclaims for objection to Excelsior's Proof of Claim, as well as various breach of contract claims relative to unpaid salary, unpaid severance, unpaid bonus, and an unreimbursed advance.  The Counterclaim alleged that the matters therein were core proceedings pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B), (C) and (I).  See id. p. 98, ¶ 3.

59.    On December 5, 2016, the Plaintiffs filed an *Answer to Counterclaims and Response to the Objection to Claim* (the "Answer to Counterclaim") [Adv. ECF No. 103]. Critically, the Plaintiffs admitted that all of the counterclaims in the Defendant's Counterclaim were core proceedings.  See id. ¶ 3.

60.    On December 22, 2016, and thus after the Plaintiffs filed their Answer to Counterclaim and also after they admitted that this Court had core jurisdiction over not only all of their claims against the Defendant, but also over the Defendant's counterclaims against them, the Plaintiffs filed their Motion seeking to confirm the IAA.

### III.  LEGAL ARGUMENT

**A.    The Motion to Confirm Cannot Be Used as an "End Run" Around the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure.**

**1.    Confirmation of the IAA Cannot Be Used as a Backdoor Attempt to Establish the Unfiled and Now Time-Barred Potential Claim of LMH.**

61.    Only Excelsior has filed a Proof of Claim in this Chapter 11 Case, not LMH.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

20

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

Although Excelsior listed "Liberty Media Holdings" as "another name used by the creditor," this is obviously not true; rather, the two are separate and distinct legal entities with their own potential claims. Indeed, Excelsior and LMH successfully argued in the Arbitration that the two were not alter egos of each other, and that they were in fact separate "sister" companies. See IAA, p. 2, n. 1. Similarly, Plaintiffs argued in this Adversary Proceeding that LMH was not a party to the Employment Agreement between Randazza and Excelsior, but rather that it was only a third-party beneficiary of that agreement. See Adv. ECF No. 85, p. 20.

62.    LMH's potential claim was listed as disputed, contingent and unliquidated in the Debtor's Schedule F, thus triggering an affirmative obligation on the part of LMH to file its own proof of claim. See 11 U.S.C. §§ 501 and 1111(a); Fed. R. Bankr. P. 3002(a) and 3003(c)(2). Section 501(a) of the Bankruptcy Code provides, in pertinent part, that "[a] creditor or an indenture trustee may file a proof of claim. An equity security holder may file a proof of interest. 11 U.S.C. § 501(a) (emphases added). Further, section 1111(a) of the Bankruptcy Code provides that "[a] proof of claim or interest is deemed filed under section 501 of this title for any claim or interest that appears in the schedules filed under section 521(a)(1) or 1106(a)(2) of this title, except a claim or interest that is scheduled as disputed, contingent, or unliquidated." 11 U.S.C. § 1111(a). Fed. R. Bankr. P. 3002(a) provides that "[a]n unsecured creditor or an equity security holder must file a proof of claim or interest for the claim or interest to be allowed, except as provided in Rules 1019(3), 3003, 3004 and 3005." (emphasis added). Fed. R. Bankr. P. 3003(c)(2), in turn, provides that "[a]ny creditor or equity security holder whose claim or interest is not scheduled or scheduled as disputed, contingent, or unliquidated shall file a proof of claim or interest within the time prescribed by subdivision (c)(3) of this rule; any creditor who fails to do so shall not be treated as a creditor with respect to such claim for the purposes of voting and distribution." (emphasis added). As such, applicable provisions of the Bankruptcy Code and Bankruptcy Rules require each creditor to file its own separate proof of claim. This is also borne out in the caselaw. For example, in In re Office Prods. Co. Secs. Litig., 313 B.R. 73, 83-84 (D.D.C. 2004), the Court noted that the official proof of claim form, Form B 410, expressly requires the "name of creditor" who is filing the proof of claim to be listed, and Fed. R. Bankr. P.

3001(a) requires "[a] proof of claim shall confirm substantially to the appropriate Official Form," and thus that because a partnership could not file a valid proof of claim on behalf of the claims on individual partners in the partnership, the partnership proof of claim was invalid as not being the filed by the relevant creditor.

63.     LMH has never filed its own proof of claim in this Chapter 11 Case, and it cannot "piggyback" onto Excelsior's own claim by claiming that it is just "another name" for Excelsior. By virtue of the Plaintiffs' Motion seeking to confirm the IAA, however, Liberty is, in part, seeking to have the Court confirm the existence of a claim in its favor even though it has never filed a proof of claim in this Chapter 11 Case, and notwithstanding the Claims Bar Date having long ago expired.  The Plaintiffs simply cannot use their Motion as a way to establish a claim that should have been asserted by way of a filed proof of claim in this Chapter 11 Case.  As a result, the Court must deny confirmation of the IAA to the extent that it seeks to confirm an award on behalf of LMH or Liberty.

### 2.     Confirmation of the IAA Cannot Be Used as Backdoor Attempt to Resurrect Claims That Have Already Been Dismissed in This Adversary Proceeding.

64.     As previously noted, the Court has already dismissed with prejudice, among other matters, the Plaintiffs' claims pursuant to section 523(a)(2)(A) of the Bankruptcy Code, as well as their claims for disgorgement and attorneys' fees and costs incurred in this Adversary Proceeding.  See Adv. ECF No. 52, p. 2.  These dismissals are adjudications of this Court and thus are established.  By seeking confirmation of the IAA, however, Plaintiffs are essentially indirectly asking the Court to resurrect those now dismissed claims, which is improper.  As a result, the Court must deny confirmation of the IAA to the extent that Plaintiffs seek to confirm any of the claims the Court has previously dismissed in this Adversary Proceeding.

### 3.     Confirmation of the IAA Must Be Denied as a Backdoor and Quite Belated Attempt to Reconsider the Court's Previous Stay Relief Denial Order, and Must Be Denied as Inappropriate.

65.     Plaintiffs have already asked for the Court to impose a monetary judgment as part of their nondischargeability claims.  See SAC, ¶¶ 84, 85, 99, 100, 105, 106, and p. 21, ¶ 1.  Further, the Plaintiffs have already admitted that all claims and counterclaims in this Adversary

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

Proceeding are "core" proceedings, and/or otherwise submitted to this Court's jurisdiction in their SAC, the Answer to Counterclaim, and Excelsior's filing of its Proof of Claim.  To the extent the Plaintiffs are now using their motion to confirm to buttress their 523(a) claims, they are essentially asking this Court to belatedly reconsider its prior Stay Relief Denial Order.  In denying the Stay Relief Motion, however, the Court was careful to note how determinations of nondischargeability, claims against the estate, and counterclaims of the estate against parties asserting claims against the estate are all core proceedings and that only the bankruptcy court can make such determinations.  Plaintiffs are once more trying to impermissibly substitute the Arbitrator's decision making for this Court's.

66.    Further, the matters at issue therein are far different than the 523(a) nondischargeability claims now at issue.  The Court simply cannot mesh the interim and unconfirmed findings and conclusions in the IAA to the unique and very different 523(a) claims principally at issue in this Adversary Proceeding.  With the intervention of the Chapter 11 Case, the central issue at bar is whether any claims are nondischargeable pursuant to section 523(a) of the Bankruptcy Code and this is the only Court where that determination can take place.  It was for this reason that this Court previously denied the Stay Relief Motion at the outset of this Chapter 11 Case, and notwithstanding arguments regarding judicial economy, which are the same arguments now repackaged in the motion to confirm.

67.    Additionally, as the Defendant previously briefed at length, an unconfirmed and interim arbitration award not only lacks issue preclusive effect as a matter of law, see Adv. ECF No. 10, pp. 6-8; Adv. ECF No. 42, pp. 7-16, but also lacks any evidentiary effect.  Instead, faced with such an unconfirmed decision by a non-judicial officer, the Court must make its own separate and independent determinations based upon the evidence and arguments presented herein, including even any matters purportedly to be found or decided in the IAA.  See Michaely v. Michaely (In re Michaely), 201 Fed. Appx. 440, 441 (9th Cir. 2006) (affirming a bankruptcy court's refusal to take judicial notice or give evidentiary effect in nondischargeability proceedings to an unapproved discovery referee's report and recommendations issued in conjunction with a martial dissolution proceeding between the debtor and his spouse, and noting instead that the

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

bankruptcy court had properly independently reviewed the evidentiary record and made its own findings and conclusions based upon the admissible evidence submitted to it).  Indeed, it is not too much to ask that the Plaintiffs actually be required to prove their claims and defenses in this Adversary Proceeding and in a court of law, and that those matters also actually be adjudicated in a court of law.

68.    Thus, no matter how the Plaintiffs may attempt to utilize the unconfirmed IAA from the arbitration in this separate Adversary Proceeding as a procedural "shortcut" to their ultimate burden of proof herein, all such attempts must fail.  Plaintiffs' current request to confirm the IAA is just another attempted repackaging of their prior attempts in this regard, and thus should be denied.

**B.** **Confirmation of the IAA is Time-Barred Under the FAA.**

69.    Although Plaintiffs invoke the Nevada Arbitration Act, that law has no applicability because the FAA governs arbitration of employment disputes.  See Brennan v. Opus Bank, 796 F.3d 1125, 1129 (9th Cir. 2015).  The FAA also controls as to procedure where the parties do not explicitly intend to be bound by state law rules governing arbitration.  See id.; see also Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 63-64 (1995).  Here, though Excelsior and Randazza agreed that the Employment Agreement would be governed by the laws of the State of California and that confirmation actions would be venued in San Diego, California, there is no mention therein of what law governs the arbitration itself.[18]  See Employment Agreement § 9(E).  This scenario is similar to that in Brennan where only discovery and substantive claims and defenses were stated to be governed by California law.  Brennan, 796 F.3d at 1129.

---

[18] Because the parties agreed to California law generally governing the employment relationship, the substantive law of California governs the substantive claims and defenses.  See Zabelny v. CashCall, Inc., No. 2:13-cv-00853-PAL, 2014 WL 67638, at *8 (D. Nev. Jan. 7, 2014) (noting that under Nevada choice-of-law rules, choice-of-law provisions are enforced if the chosen jurisdiction has a substantial relationship to the transaction and the agreement is not contrary to public policy).  Here, Randazza was originally hired to work for Excelsior in San Diego, where it was then-headquartered.  Thus, there is a substantial relationship to the transaction and there is no suggestion it is contrary to the public policy of Nevada.

**C.    This Court Lacks Jurisdiction to Confirm the IAA Under the FAA.**

70.     Although Plaintiffs reference the FAA, 9 U.S.C. § 9, with respect to confirmation in their Motion, they do not explicitly move for confirmation thereunder.  They should have.  They likely did not do so because they knew their Motion would be time-barred.  Pursuant to 9 U.S.C. § 9, "at any time within one year after the award is made any party to the arbitration may apply . . . for an order confirming the award."  It is now more than one year since the IAA was issued, and the time for seeking confirmation in this Court has expired.  Specifically, the IAA was issued on June 3, 2015, whereas the Motion seeking confirmation of it was not filed until December 22, 2016, and thus mor The FAA requires that "if no court is specified in the agreement of the parties, then such application may be made to the <u>United States court</u> in and for the district within which such award was made."  9 U.S.C. § 9 (emphasis added).  In related contexts, however, Courts within the Ninth Circuit have repeatedly held that bankruptcy courts are not "courts of the United States" within the meaning of 28 U.S.C. § 451 because they are not expressly listed therein.  <u>See, e.g.</u>, <u>Perroton v. Gray (In re Perroton)</u>, 958 F.2d 889, 893-96 (9th Cir. 1992) (holding that a bankruptcy court had no authority to waive filing fees under 28 U.S.C. § 1915(a)); <u>Miller v. Cardinale (In re Deville)</u>, 280 B.R. 483, 494 (B.A.P. 9th Cir. 2002) (holding that a bankruptcy court had no authority to award fees under 28 U.S.C. § 1927).  As a result, this Court lacks the jurisdiction to confirm and enter judgment on the IAA pursuant to the FAA.

**D.    The IAA Is Not Final and Thus Cannot be Confirmed.**

71.     Should the Court find that Nevada arbitration law supplants the FAA, there is no basis to confirm.  Plaintiffs state, without support, that the IAA qualifies as an arbitral award subject to confirmation under NRS 38.236 and 38.239.  Pursuant to NRS 38.222(2)(a), an "arbitrator may issue . . . orders for provisional remedies including interim awards, as the arbitrator finds necessary to protect the effectiveness of the arbitral proceeding and to promote the fair and expeditious resolution of the controversy, to the same extent and under the same conditions as if the controversy were the subject of a civil action . . . ."  By definition, a provisional "interim award" is not a final award.  Pursuant to NRS 38.330(4), an "award" must be made within 30 days after the conclusion of arbitration, demonstrating that the term, "award" as

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

25

presented in NRS chapter 38 refers to a final arbitration award following the arbitration – as opposed to a provisional "interim award" pending the final resolution of the arbitration.

72.    NRS 38.239 only permits a party to seek confirmation of a final "award" after the party "receives notice of an award."[19]  This language indicates that the Nevada Legislature intended that an award must be final before a party seeks to confirm it with the district court.  The IAA was not final.  See Millmen's Local 550, United Brotherhood of Carpenters and Joiners of America, AFL-CIO v. Well's Exterior Trim, 828 F.2d 1373, 1376 (9th Cir. 1987) ("an arbitration award that postpones the determination of a remedy should not constitute a 'final and binding award'"); Bosack v. Soward, 586 F.3d 1096 (9th Cir. 2009) (stating that only final awards may be confirmed, and noting that the criteria for finality must be met, which includes that the arbitrator states it is final, and the arbitrator intended the award to be final); see also McKinney Restoration, Co. v. Ill. Dist. Council No. 1 of the Int'l Union of Bricklayers & Allied Craftworkers, 392 F.3d 867, 871 (7th Cir. 2004); Public Serv. Elec. and Gas Co. v. Sys. Council U-2, IBEW, AFL-CIO, 703 F.2d 68 (3d Cir. 1983).  Thus, absent such finality, Plaintiffs' motion to confirm the IAA is premature and must be denied.[20]

**E.    The IAA Cannot be Confirmed Where the Arbitrator Exceeded his Powers, Committed Manifest Errors, and Demonstrated Bias.**

73.    Even if the Plaintiffs are somehow able to get beyond all of the foregoing issues raised above with respect to Plaintiffs' request to confirm the IAA, confirmation would be manifestly unjust.  Plaintiffs have sought confirmation of IAA under Nevada law.  Nevada recognizes nonexclusive common law grounds and statutory authority under which a court may review an arbitration award.  See Graber v. Comstock Bank, 905 P.2d 1112, 1115 (Nev. 1995).

---

[19] Although NRS 38.222(2)(a) permits the issuance of interim awards as a provisional remedy, such must be "to the same extent and under the same conditions as if the controversy were the subject of a civil action."  In a civil action, such would thus contemplate preliminary injunctive relief, but not act as final judgment on a particular cause of action where separate and final judgment is not entered.

[20] Similarly, the IAA would not be subject to confirmation under the FAA because it does not dispose of a self-contained issue, such as temporary equitable relief.  Pac. Reinsurance Mgmt. Corp. v. Ohio Reinsurance Corp., 935 F.2d 1019, 1022 (9th Cir. 1991).

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

The common law grounds are "(1) whether the award is arbitrary, capricious, or unsupported by the agreement; and (2) whether the arbitrator manifestly disregarded the law." Clark Cnty. Educ. Ass'n v. Clark Cnty. Sch. Dist., 131 P.3d 5, 8 (Nev. 2006). The Nevada Supreme Court has defined the "manifest disregard of the law" standard as error that is "obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator." Graber, 905 P.2d at 1115 (quoting Williams v. Cigna Fin. Advisors Inc., 197 F.3d 752, 762 n.2 (5th Cir. 1995)) (citation omitted).

74.    Federal authorities construing the federal statute are persuasive for the construction of the state statute. The award must be final; review is not permissible of interim orders. See, e.g., Northland Truss Sys., Inc. v. Henning Constr. Co., LLC, 808 F. Supp. 2d 1119, 1123 (S.D. Iowa 2011). Where a reasonable person would conclude that the arbitrator was partial to one party to the arbitration, "evident partiality" within the meaning of 9 U.S.C. § 10 will be found. See Morelite Constr. Corp. v. New York City Dist. Council Carpenters Ben. Funds, 748 F.2d 79, 84 (2d Cir. 1984). An arbitrator will be deemed to have exceeded his powers or imperfectly executed them where the record before him demonstrates unambiguous and undisputed mistakes of fact and the arbitrator relied on those mistakes in making his award. Nat'l Post Office Mailhandlers v United States Postal Serv., 751 F.2d 834, 843 (6th Cir. 1985). The Arbitrator's partiality, misconduct, and exceedance of his powers, precludes confirmation of the IAA under the FAA in the case at hand.

75.    In performing its review function, this Court is required to review the necessary transcript and exhibits. Graber, 905 P.2d at 1429. Plaintiffs did not submit such to the Court and, for that reason alone, the Motion should be denied. Notwithstanding that failure, the Motion should be denied on the merits because the IAA is not subject to confirmation for the additional reasons as hereinafter detailed. Plaintiffs' Motion fails both procedurally and substantively. Plaintiffs improperly submitted an interim, rather than final, award. Substantively, the IAA is so manifestly and thoroughly rife with errors, omissions, disregard of applicable California law, and evident bias that it would be a miscarriage of justice to enforce it. Rather, to the extent applicable, the Court should deny the Motion.

1

1.    **The IAA was Replete with Bias.**

76.    It is evident throughout the IAA that the Arbitrator was biased against Randazza and resolved all factual and credibility disputes, as well as conflicting expert opinions, against him.  In doing so, the Arbitrator demonstrated his bias, failing to draw logical conclusions and placing Randazza in catch-22 situations.  There are several instances that highlight this.

a.    **Physical Position Is Not An Indicium Of Credibility When The Arbitrator Directed Such Position.**

77.    Relegating the credibility determination to Footnote 4 of the IAA, the Arbitrator determined Randazza lacked credibility based upon his physical position.  See IAA, pp. 6-7, n. 4.  This demonstrates a lack of consistency and apparent bias on the Arbitrator's part.  Randazza was the only witness who was told prior to his testimony where to face, and the Arbitrator said that it was for no other reason than to ensure the court reporter and the Arbitrator properly heard him.  See Randazza Decl., Ex. 1., pp. 10:16-11:22 (Excerpts of Arbitration Hearing Transcripts).  At the hearing, the Arbitrator instructed Randazza as follows:

> ARBITRATOR HABERFELD: I would just ask, Randazza, if you could, as much as you can, although the questions will be coming from Mr. White, who is to your right, and I am to your left, and the court reporter is across from you, to please try to be as much giving your testimony to me and to the court reporter, rather than looking to Mr. White, which would be making it difficult to read your lips and to hear you better.

Id. at 11:10-19.  Yet, in the IAA, the Arbitrator completely did a 180 and interpreted Randazza's compliance with his order to be proof of his untrustworthiness.  For Randazza's near perfect obedience "leaning well forward and looking down or straight ahead into 'middle distance' in the direction of the wall behind where the Arbitrator was seated."  IAA, pp. 6-7, n.4.  He further criticized Randazza for not maintaining "eye contact with either the questioning attorney or the Arbitrator" even though the Arbitrator had instructed him not to even make eye contact with his own counsel and to face the middle distance between the court reporter and the Arbitrator.  Id.  In other words, the Arbitrator told Randazza where to face, and Randazza complied, so the Arbitrator concluded that this compliance was a reason to doubt Randazza's credibility.

78.    There was no similar colloquy before any other witness testified.  See, e.g.,

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

28

Randazza Decl., Ex. 1, pp. 658-659 (testimony of Jason Gibson in Arbitration). The record does not indicate anywhere that Randazza deviated from the physical position the Arbitrator required; the Arbitrator's findings do not even indicate that his position during cross-examination differed from that during direct examination. IAA, pp. 6-7, n.4; White Decl. It is patently unfair and prejudicial of the Arbitrator to make a credibility assessment adverse to Randazza based on him having followed the Arbitrator's explicit instruction.[21] And, the positioning prejudicially colored the Arbitrator's entire decision, thus precluding confirmation.

### b. The Arbitrator Refused to Contemplate that Randazza Could Ever be a Target of Harassment.

79.    The Arbitrator prejudicially refused to believe that Randazza could simultaneously support his client's public operations while taking offense to actions targeted at him. Such closed-mindedness and unwillingness to actually listen to Randazza's complaint is patently partial. Mere "exposure to porn could constitute harassment 'based on sex.'" Carlson v. C.H. Robinson Worldwide, Inc., No. 02-3780 (JNE/JGL), 2005 WL 758601, at *114 (D. Minn. Mar. 31, 2005). Forcing Randazza to watch Gibson fellate another employee constitutes a severe episode sufficient to violate Title VII. Compare Howley v. Town of Stratford, 217 F.3d 141 (2d Cir. 2000) (finding that a single instance of an "extended barrage of obscene verbal abuse" created a hostile work environment). And even though this was not Randazza's primary complaint, the Arbitrator took it as such and it prejudiced his view of every other claim and counterclaim, causing him to manifestly disregard fact and law in Randazza's favor, even to the extent of reaching inconsistent and incompatible conclusions.

### c. The Arbitrator Expressly Bifurcated The Question Of Alter-Ego Liability But Disregarded His Own Order.

80.    The Arbitrator, again by footnote, dismissed Gibson as a party, finding that Randazza had failed to show Gibson was an alter ego of either Excelsior or LMH, and determined

---

[21] Moreover, in raising the position of Randazza in their post-hearing brief, Excelsior and LMH improperly dropped a footnote relaying an outside-the-hearing incident, without any actual evidence and without relevance to the proceedings themselves. This further prejudiced the entire decision making process, barring confirmation.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

that neither Excelsior nor LMH were alter egos of anybody or entity.  IAA at 2, n. 1.  Randazza had specifically sought declaratory relief in Count 8 of his Amended Arbitration claim that Excelsior, LMH, and Gibson were alter egos of each other, to be held jointly and severally liable.  See Randazza Decl., Ex. 3, at 34-37.  The Arbitrator omits from this footnote and the remainder of the IAA any reference to his earlier ruling of January 8, 2014.  In that earlier ruling, the Arbitrator states that Randazza's "'alter ego' contentions will be segmented from [his] claims for liability and damages and will be deferred to a later phase of the arbitration or will become moot."  See Randazza Decl., Ex. 4, at 1 (Order of Jan. 8, 2014).  This order precluded even the taking of discovery from Gibson and the entities that would tend to have shown alter-ego status.  Without notice to Randazza, the Arbitrator disregarded his own order, denying due process, effectively pretending it did not exist.  Randazza lacked opportunity to take discovery or present evidence or argument on the question of alter ego.  The issue was not bifurcated, per the Arbitrator's own order.  And the Arbitrator failed to undertake any actual analysis or application of the facts to the law.  Yet, rather than even finding the issue moot based on the other rulings, the Arbitrator ignored due process and made a determination without even having a proper record before him.

81.    Curiously, despite this ruling, the Arbitrator treats Excelsior and LMH as alter egos of each other.  In that very same footnote, and throughout the interim award, the Arbitrator opts to treat Excelsior and LMH interchangeably.  In fact, in the IAA the Arbitrator issues a monetary award to Excelsior, LMH, and Gibson,[22] jointly.  IAA, p. 23, ¶ ,.  If they are not alter egos and proper parties, then the only party entitled to any award would be Excelsior, being the only party to have asserted a counterclaim.  The Arbitrator exceeded his authority in making any award in favor of LMH or Gibson, and Excelsior lacked standing to bring claims on their behalf.

82.    Excelsior and LMH cannot have it both ways—they are either alter egos or the award is void; and the Arbitrator acted with manifest disregard of the law and facts to let them

---

[22] In a further demonstration of the lack of reason and manifest disregard of the facts and law, Gibson could not be entitled to enforce a monetary award in his favor where he was dismissed as a "party," not merely as Respondent, depriving him of standing.

have it both ways.

83.    Further, without even being presented the issue for adjudication, and thus in grave excess of his authority, the Arbitrator in his interim award, at paragraphs 2, 4, & 5, treated non-parties MJRPA and Randazza Legal Group, PLLC, as Randazza's alter egos.  As noted above, MJRPA, a Florida entity, was the outside law firm representing LMH and other clients.  Randazza Legal Group, PLLC, did not begin operations until after Randazza's termination and could never have been liable.  Yet, the cited paragraphs of the IAA would require one or both of these non-party law firms to disgorge legal fees for work performed in part by other lawyers, disgorge funds held in trust and certain disputed funds to Excelsior and/or LMH, and require one or both of their trust accounts to be audited.  There was no evidence Randazza personally received the funds, and the record, both arbitral and public, indicates to the contrary. The Arbitrator manifestly disregarded the record indicating that all litigation was conducted through the non-party law firm, MJRPA.  See Randazza Decl., Ex. 1, p. 55:11-24.  The Arbitrator had no authority to determine the firms were his alter egos and they were not parties to the arbitration.  Thus, not only did the Arbitrator blatantly disregard his prior ruling relative to the alter ego status of Excelsior and LMH, he opted to doubly surprise Randazza by *sua sponte* determining Randazza and his law firms were alter egos in the IAA.  This further evidences the Arbitrator's determination to construct an award adverse to Randazza, in an arbitrary fashion, without regard for facts or law.

## 2.    Errors of Counsel Were Misattributed to Randazza.

84.    In retaliation for Randazza having filed his arbitration claims, Gibson filed bar complaints against him in each of the five jurisdictions in which he was admitted.  To properly preserve his sexual harassment claim, Randazza filed a complaint with the Nevada Equal Rights Commission & Equal Employment Opportunities Commission.  See Randazza Decl., Ex. 5 (Charge of Discrimination).  Randazza required different attorneys for each these proceedings.  Notably, this matter included over 100,000 documents exchanged as part of discovery.  See id. Ex. 1, p. 801:14-18. The Arbitrator stated that Randazza's attorneys made factual errors, where one or more attorneys appear to have either not yet located or overlooked evidence.  IAA, p. 6, n. 4, pp. 17-18.  Given the volume of pleadings and documents at issue, mistakes of counsel are

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

bound to happen.  However, in disregard of the record, the Arbitrator attributed these errors to Randazza personally, and then he prejudicially drew adverse credibility findings against Randazza for the errors of counsel.  See id.  Such constitutes guilt by association, "one of the most odious institutions of history."  Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 178 (1951).  And yet, this guilt by association was a significant factor in the credibility determination and must not be condoned.

85.    Issues of credibility are separate from issues of estoppel; if Randazza is estopped from pursuing a claim because of a prior position taken by counsel that has been adjudicated, that is because equity does not suffer such inconsistencies.[23]  There is no authority to suggest that a mistake by counsel makes the client's testimony unbelievable.  Yet, this is how the Arbitrator proceeded and it undermined every finding and ruling.

3.    **The Arbitrator Cannot Make An Adverse Credibility Finding Based On An Issue He Opted Not To Decide.**

86.    Due to office-desk pornography and back-seat fellatio incidents in which Randazza was targeted, separate and apart from the explicit nature of the industry, a sexual harassment and retaliatory termination claim was filed with the Nevada Equal Rights Commission and EEOC and made part of Randazza's arbitration claims.  See Randazza Decl, Ex. 5.  Excelsior, LMH, and Gibson denied the occurrence of the fellatio incident and denied that these events actually upset Randazza.  The Arbitrator found, ultimately (and contrary to the clear evidence), that Randazza resigned, thus he explicitly held that he was not resolving a conflict of evidence as to how or whether the incidents occurred and their effect on Randazza.  See IAA, p. 5.

87.    Even though the Arbitrator expressly stated that the sexual incidents were not being decided, he once more contradicted himself and prejudicially held this against Randazza.  At page 6, paragraph F, the Arbitrator states that Randazza's failure to prove his sexually-based allegations and reactions to them undermined his credibility.  Id.  Yet, Randazza never failed to prove them; instead, the Arbitrator decided that no proof was required.  This demonstrates that

---

[23] Randazza has never taken any inconsistent positions, and there is no actual issue of estoppel.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

the Arbitrator ignored his own record in a determination to decide against Randazza. Such demonstrates clear bias and the absolute failure of the Arbitrator to execute his duties.

**F.  The Arbitrator Made Gross Factual and Legal Errors.**

88.  The Arbitrator made numerous findings and determinations that are factually and legally misplaced, so much so that he failed to execute his duties in manifest disregard of the facts and the law, exceeding his powers, demonstrating his arbitrariness and caprice.

**1.  The Arbitrator Made Improper Factual Findings.**

89.  Throughout the IAA, the Arbitrator made numerous findings of fact. Many of these findings are wholly separated from the evidence and demonstrate the Arbitrator's failure to perform. Two of them are of particular note: wrongly deeming Randazza to have resigned and improperly determining that Randazza was seeking personal remuneration in a settlement negotiation.

**a.  Randazza Did Not Resign.**

90.  The Arbitrator erroneously found that Randazza's August 29, 2012, e-mail constituted a resignation. See Randazza Decl., Ex. 6. As set forth above, on August 29, 2012, Randazza stated to Gibson that it seemed appropriate that MJRPA withdraw as LMH's counsel. Id. Although there is no language about separation of employment with Excelsior, Excelsior improperly treated it as a letter of resignation by Randazza individually. As documented in this exhibit, immediately upon learning that Excelsior construed the e-mail as a resignation, Randazza disputed that characterization. Id.; Ex. 1, pp. 206-207.

91.  "A resignation is in the nature of a notice of the termination of a contract of employment and is contractual in its nature. It is ineffectual without the intent of the incumbent to sever the relationship of employer and employee." Sherman v. Board of Trustees, 9 Cal. App. 2d 262, 266, 49 P.2d 350, 352 (Cal. App. 1935). There is no evidence that Randazza had the intent to sever the employment relationship. All of the alleged context only suggests that Randazza thought about quitting and anticipated a voluntary or involuntary separation. But the record is devoid of evidence of actual resignation from Excelsior. Several reasons demonstrate it was not a resignation. First, and most telling, if Randazza intended to resign, he would not have

33

disputed that characterization of his e-mail immediately. Instead, it is clear that it was disingenuously called a resignation, with Excelsior having already retained its employment counsel at Littler. Excelsior intended to terminate Randazza and seized upon the e-mail in order to pretextually treat it as a resignation.[24] Upon learning of their incorrect interpretation of the e-mail, a rational employer would have required Randazza to work. Excelsior took no steps to enable Randazza to perform his work on August 30, 2012, the next day. It treated him as separated, not properly pursuant to a voluntary resignation. Such constitutes an involuntary termination.

92. Randazza never said in that letter he was leaving his employment with Excelsior, only that MRJPA's withdrawal from representing LMH was anticipated. Excelsior and LMH argued vehemently, and the Arbitrator (in contravention of his prior order) ruled, that the entities are not alter egos of each other. If they are not alter egos, then Excelsior is estopped from claiming the e-mail message about no longer representing LMH in new matters was also construable as a resignation from Excelsior.

93. Second, as set forth above, on August 21, 2012, Randazza advanced LMH $25,000 of his own funds at the behest of his employer, Excelsior. See Randazza Decl. Ex. 1, pp. 832:25-833:15; Ex. 7. Excelsior and LMH attempted to suggest that Randazza intended to quit in the weeks leading up to August 29. It simply makes no sense that an employee with designs on quitting, would advance $25,000 mere weeks before a voluntary resignation.

94. Third, the Arbitrator arbitrarily considered that the transfer of client files to MJRPA's cloud storage, and then erasing those on Excelsior's hardware, evidenced an intent to resign. Instead, Randazza had prudently hoped for the best, but planned for the worst. In fact, he was informed by Excelsior's Human Resources manager at the time that Gibson had met with lawyers to terminate him, and that he should take steps such as that.

95. The Arbitrator misconstrued the protective measures of wiping personal and

---

[24] As general counsel, Randazza would have been involved in the hiring process for outside counsel, were Littler on a standard retainer. Instead, it appears Littler was specifically hired relative to the termination of Randazza.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

1    MJRPA privileged information as an intent to quit; to the contrary, Randazza expected to be fired

2    and was required to ensure that other clients' files remained confidential, and he would not have

3    been able to do so after termination.  See NRPC 1.6.  It is a miscarriage of justice to penalize

4    Randazza for following his ethical duties.

5              **b.    There Was No "Bribe."**

6         96.    The Arbitrator grounded his conclusions that Randazza breached fiduciary duties

7    and committed malpractice on Randazza's alleged negotiation for a $75,000 "bribe."  As set forth

8    above, in prior dealings with an opposing attorney, Gurvits, MJRPA had been presented with

9    offers that, following the settlement, he would be retained by the opposing side.  This could create

10   a conflict of interest for MJRPA should another party seek to engage it to pursue a similar claim

11   against Gurvits' client.  Randazza testified that he participated in these conversations to increase

12   available settlement funds.  See Randazza Decl., Ex. 1, pp. 242:16-243:2.  Randazza testified that

13   he never intended to individually profit.  See id. p. 173:1-22.  No evidence was presented to the

14   contrary.[25]  Neither was there any evidence that Randazza ultimately intended to consummate

15   such a negotiation.[26]  Randazza had never previously consummated such a deal, despite it then

16   being part of the negotiations as well.  See id. p. 397:7-10.

17        97.    In fact, the final language of the proposed agreement contained no language calling

18   for the retention of MJRPA or Randazza.  See Randazza Decl., Ex. 11.  Rather, the $75,000 at

19   issue was to be released to Gurvits, who was under no obligation to retain MJRPA or Randazza.

20   See id.

21

22   _____

23

24   [25] Randazza did express a concern that delivering the earmarked $75,000 to LMH might constitute improper fee
     sharing under NRPC 5.4, and he intended to adjust his employment bonus and firm's bill commensurately to avoid
     impropriety.  See Randazza Decl., Ex. 1, p. 421:1-15.  Typically, an attorney's fee is the property of the client.  Evans
25   v. Jeff D., 475 U.S. 717, 731 (1986).  Here, however, it was at most a potential legal fee to MJRPA for the
     representation of Oron, not an attorneys' fee award.  However, Randazza ultimately agreed that he would figure out
26   a way to ensure the earmark would be remitted to LMH as part of the global settlement fund.  See Randazza Decl.,
     Ex. 8 (E-mail from Randazza to Gibson dated Aug. 16, 2012).

27   [26] The only expert as to California professional responsibility, Attorney Ellen Peck, testified that this was not
     improper.  See Randazza Decl., Ex. 9, pp. 4-10 (Expert rebuttal report of Ellen Peck); Ex. 1, pp. 1244:9-1245:6.  This
28   was also not improper in Nevada.  See Randazza Decl., Ex. 10, p. 17 (Expert rebuttal report of Joseph Garin).

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

98.    Prior practice further shows a lack of intent to individually profit.  Following a settlement between LMH and TNAFlix, an infringer represented by Gurvits, Randazza continued the pretense of negotiating for MJRPA to represent TNAFlix.  Id. at 377:20-25.  Having kept up the pretense, Randazza was all the more credible in his negotiations with Gurvits in the Oron matter.  The Arbitrator effectively agreed that Randazza never intended to obtain the actual $75,000 for himself against the interests of LMH.  Instead, the Arbitrator concluded, correctly, that Randazza and Gurvits were bluffing.  See IAA, p. 7, n.4.  The capricious and obviously inconsistent findings that Randazza both was and was not negotiating for a $75,000 bribe demonstrates the lack of any factual foundation for the Arbitrator's interim award.

99.    Further, at no time did the Arbitrator even consider how these tactics benefitted LMH.  Instead, as will be discussed below, he found that the "bribe" caused $275,000 in damages, despite the "bribe" having nothing to do with Oron's later claims for breach of the settlement agreement.

100.    As Randazza neither resigned nor acted against Excelsior's and LMH's interests, each of the portions of the interim award are not only legally wrong, but factually misplaced.  The Arbitrator's findings were arbitrary and capricious.  Thus, the award cannot be confirmed.

### 2.    The Arbitrator Made Improper Legal Determinations.

101.    In the IAA, the Arbitrator applied the incorrect law in several instances and made numerous improper legal conclusions, violating his duties as arbitrator and rendering the arbitration award unenforceable.   With few exceptions, the legal conclusions as to both Randazza's claim and Excelsior's counterclaims are erroneous and violate public policy in manifest disregard of the law.  For general background of the legal issues presented in the Arbitration, Randazza attaches his Opening Post-Hearing Brief.  See Randazza Decl., Ex. 12.  The Arbitrator improperly found against Randazza on his claims as well as on Excelsior's claims against him.

### a.    Randazza Should Have Prevailed On His Claims.

102.    Randazza brought eight claims against Excelsior and LMH:  1) reimbursement of expenses under Cal. Labor Code, sec. 2802; 2) unpaid wages and vacation time under Cal. Labor

Code, §§ 201-203; 3) unpaid wages, expenses, and vacation time under NRS 608.050; 4) breach of contract; 5) wrongful termination in violation of public policy; 6) hostile work environment; 7) retaliation; and 8) declaration of alter ego.  In the IAA, the Arbitrator stated that Randazza "shall take nothing by any of his claims."  IAA, p. 23.  The IAA cannot be confirmed.  Although the Arbitrator erred with respect to all eight claims and might set forth such reason in detail, Randazza will focus on only the breach of contract claims, similarly asserted by him as Counterclaims in this Adversary Proceeding.

### i.    Randazza Is Entitled To Reimbursement of the $25,000 He Advanced in the Oron Litigation.

103.    As to claim 1, Randazza sought reimbursement of the $25,000 in litigation expenses Excelsior required him to advance in the Oron Litigation pursuant to Cal. Labor Code, Section 2802, as incorporated into the Employment Agreement.  See Randazza Decl., Ex. 3, 16-17 (Amended Arbitration Claims of Marc J. Randazza).  Section 2802 states, "[a]n employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer . . . ."  Cal. Labor Code § 2802(a) (2015).  The Arbitrator improperly denied the claim, stating that the statute a) did not apply in Nevada, and b) was not incorporated into the contract.  See IAA, pp. 11-12.[27]

104.    In making his erroneous legal conclusion, the Arbitrator ignored the employment agreement and his duties to interpret that agreement.  The Arbitrator stated that Cal. Labor Code, Section 2802 does not apply extraterritorially, citing Sullivan v. Oracle Corp., 51 Cal. 4th 1191 (2011), and Wright v. Adventures Rolling Cross Country, Inc., No. C-12-0982 EMC, 2012 WL

---

[27] Although the Arbitrator denied this claim, he also permitted Randazza to offset the $25,000 advance against monies awarded.  Id. at 22.  The Arbitrator provided no justification for permitting this offset, which could only be within his power if Randazza actually prevailed on this claim or, perhaps, claim 3 for unpaid expenses.  None of Randazza's December 16, 2013, affirmative defenses raised the entitlement to an offset, so it cannot be argued that the Arbitrator permitted the offset on that basis.  See Randazza Decl., Ex. 13 (Marc J. Randazza's Affirmative Defenses to Counterclaims of Excelsior Media Corporation).  In addition, the $25,000 was loaned to LMH, yet the offset was awarded relative to Excelsior's counterclaims, further indicating that the Arbitrator deemed them alter egos of each other. Thus, at a minimum, Randazza is a prevailing party, who may seek attorney fees.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

2239797 (N.D. Cal. June 15, 2012).  IAA, p. 12, n.9.  The Arbitrator manifestly disregarded the law and exceeded his authority.

105.    First, the California Supreme Court in <u>Sullivan</u> expressly noted that it was not addressing the question of whether such law applied extraterritorially.  51 Cal. 4th at 1201.  The <u>Wright</u> Court noted a presumption against extraterritoriality, finding the labor code did not apply where there was no choice of law provision.  Here, there was a choice of law provision and it explicitly chose California law, with one key exception: it is "without regard to conflict of laws."  <u>See</u> Employment Agreement § 9(E).[28]  The Arbitrator misread both cases and ignored the employment agreement.  Notwithstanding any presumption against extraterritoriality, the parties here agreed California law should apply to their relationship.

106.    Compounding his error, the Arbitrator stated that the choice of law provision only governed contract claims, not statutory claims, citing <u>Narayan v. EGL, Inc.</u>, 616 F.3d 895 (9th Cir. 2010).  IAA p. 12 & n.10.   The Arbitrator misread <u>Narayan</u>.  More accurately, the Ninth Circuit stated, "While the contracts will likely be used as evidence to prove or disprove the statutory claims, the claims do not arise out of the contract, involve the interpretation of any contract terms, or otherwise require there to be a contract."  <u>Narayan v. EGL, Inc.</u>, 616 F.3d at 899.  What <u>Narayan</u> does not say is that parties are precluded from ensuring that all of the benefits of California statutory law could not be incorporated into a contract.[29]  <u>See</u> <u>Selcke v. New England Ins. Co.</u>, 995 F.2d 688, 690 (7th Cir. 1993) ("The law could require contracting parties to specify every right and duty that they wanted to make legally enforceable, but then contracts would be very long.  An economizing measure is for the law to create, whether by statute or common law,

---

[28] This standard language means that California law regarding conflicts of laws would not be used to apply some other state's law on a theory that the other state had a superior interest in the controversy, emphasizing that only California law would apply. <u>See, e.g.</u>, <u>Procter & Gamble Co. v. Bankers Tr. Co.</u>, 925 F. Supp. 1270, 1288 (S.D. Ohio 1996) ("[t]he inclusion of the phrase 'without reference to choice of law doctrine' forecloses the application of [the forum state's] law.")

[29] It is further notable that Section 2802 falls under Division 3, Chapter 2 of the California Labor Code, which, at Section 2750, begins by setting forth the identity of employer and employee as being those who are parties to a contract of employment.  Thus, by definition, Section 2802, which must be read into all California contracts of employment, governs the instant contract where the parties chose California law to apply.

standard, 'off the rack' terms that parties can vary if they want but that govern otherwise, eliminating the need for parties to negotiate them expressly in every contract."). That is, though a Section 2802 claim does not rest on contractual provisions, parties are free to incorporate the law into their agreements. Here, the parties to the employment agreement, stating that it should be "construed in accordance with the laws of the State of California" incorporated the entire corpus of California labor law into the contract. Employment Agreement § 9(E).

107.    The Arbitrator having wholly misapprehended the law and applied the law of a state he was neither empowered to (nor qualified to) apply, the IAA cannot be confirmed.

108.    Randazza is expressly entitled to reimbursement of the $25,000 and is a prevailing party.

### ii.    Randazza Is Owed Unpaid Wages.

109.    In Count II of his Amended Arbitration Claim, Randazza sought unpaid wages and bonuses under California Labor Code, Sections 201-203, as incorporated into the Employment Agreement. See Randazza Decl., Ex. 3, pp. 18-21. These Sections require a discharging employer to pay the wages earned and unpaid of a discharged employee immediately at the time of discharge. Cal. Labor Code §§ 201-203 (2015). Here, Randazza sought a day's pay of $1,014.20, as he only paid for four days from his final week, and an additional $2,281.95, representing an unpaid 5% wage increase from July 1 to August 30, 2012, required by the contract. Id.; Employment Agreement §§ 3(A)-(B). Randazza also sought certain non-discretionary bonuses, namely 25% of each of five settlements, in the amount of at least $190,779.35. See Randazza Decl., Ex. 3, pp. 19-21; Employment Agreement § 3(C).[30] Additionally, Randazza sought the penalty of his daily wage ($1,014) per day per Cal. Labor Code § 2013, for the first thirty days during which Excelsior failed to pay his final wages per California Labor Code Section 203, which states that if an employer fails to pay wages of a discharged employee, "the wages of

---

[30] It is further notable that there was no dispute that Randazza was generally entitled to these 25% bonuses for settlements. Yet, in practice, the settlements were on behalf of LMH, not Excelsior, though the contract itself only speaks to settlements paid to Excelsior. This further evidences that LMH and Excelsior are alter egos of each other.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days." Finally, treble damages of at least $564,130 were sought per Cal. Labor Code § 206(b).  See Randazza Decl., Ex. 3, p. 21.

110.    Once more, the Arbitrator incorrectly found that California law did not apply.  IAA at 11-12.  For the same mistaken reasons as with the first claim, the Arbitrator failed to appreciate that California law is made part of the contract.[31]

111.    Further, the Arbitrator erroneously found that Randazza was nonetheless properly compensated.  Id. at 12 ("In the event [sic], Randazza was properly compensated for all services as to which he has asserted statutory and contractual claims").  This was simply untrue.  First, with respect to the unpaid raise, in Footnote 11, the Arbitrator stated that "claimed compensation raises were discretionary."  Id. at n.12.  However, the Arbitrator undertook no examination of Excelsior's failure to abide the procedure by which it could avoid the raise.  The explicit terms of the employment agreement make the raise mandatory unless there is an executed memorandum of understanding.  See Employment Agreement § 3(B).  The parties never executed a memorandum of understanding and Excelsior failed to present any evidence to the contrary. Thus, the Arbitrator had no factual or legal basis to deny Randazza his raise.  He exceeded his powers by ignoring the contract and acted capriciously.

112.    Second, with respect to the unpaid bonuses, in a similar failure, the Arbitrator undertook no examination of what bonuses were owed for what settlements and whether they were paid.  In fact, he did not even deign to decide how bonuses were to be calculated, as the parties disputed whether they were to be paid on net or gross settlements.  See IAA, p. 12, n.11 ("Randazza's bonuses were to be based on **net** and **gross** amounts") (emphasis added); Randazza Decl., Ex. 1, pp. 31:24-34:9.  Randazza claimed 25% of settlements and fee awards with Oron, Excubitor USA, and other amounts procured by Excelsior and LMH while Randazza was

---

[31] Moreover, even if California law did not apply, Nevada law required the identical result.  See NRS 608.020 & 608.040.

employed.  Randazza Decl., Ex. 3, pp. 19-20; Employment Agreement § 3(C).  The employment agreement entitled Randazza to these fees and the Arbitrator had no option but to award them once it was established that the settlement funds existed.

113.    Instead, in dismissive fashion, the Arbitrator states they were subject to disgorgement.  See IAA, p. 12, n.11.  Yet, even in his disgorgement order, the Arbitrator paid no attention to any of these particular bonuses or unpaid salary claims.  Id. at 24.[32]  Moreover, as more fully set forth below, disgorgement of earned wages is improper.  And, as Randazza did not resign, he is otherwise owed, under California statute, incorporated into the contract, the full amounts claimed.

114.    Alternately, in Count III of his Amended Arbitration Claim, Randazza sought to enforce his rights to the unpaid day, his 5% raise, and the nondiscretionary bonuses[33], pursuant to NRS 608.050, plus statutory penalties.  See Randazza Decl., Ex. 3., pp. 21-23.  The Arbitrator gave short shrift to this claim, stating that it "fails as a matter of law, because there is no private right of action for enforcement of that statute.  It is therefore not necessary to decide whether the [sic] a claim has been stated under that statute."  IAA, p. 12.  The Arbitrator made a fundamental error of law in this finding, without having provided any basis in law.  The Arbitrator undertook no analysis of the private right of action.  No Nevada state court has found a private right of action wanting.  Presumably, the Arbitrator relied upon Excelsior's citation to McDonagh v. Harrah's

---

[32] In the disgorgement order, the Arbitrator states "Claimant shall pay Respondent Excelsior the amount of $197,000.00—as and for disgorgement of an appropriate amount of Claimant's employment compensation (including salary and bonuses) paid under his employment agreement."  Id. at 24.  The disgorgement figure lacks any form of calculation, yet appears curiously akin to Randazza's claim for unpaid bonuses, with one number transposed (the "7" in the hundreds column moved to the thousands).  Assuming that the Arbitrator's reference in Footnote 11 to disgorgement correlates with Section 3 of the award, it appears that the Arbitrator is not requiring Randazza to write a check for $197,000, but rather that his claim for unpaid salary and bonuses of approximately that amount is forfeit.  This interpretation is supported by the fact that it is the only portion of the monetary award to not include interest, as Excelsior, not Randazza, has retained the funds.  For it to be disgorged, then, this also means that Randazza necessarily prevailed on his claim, making him a prevailing party.

[33] Excelsior argued at the Arbitration that the bonuses are not wages within the meaning of NRS 608.050, citing to NRS 608.012.  See RJN, Ex. 6 (Excelsior's Post Arbitration Brief, p. 15).  However, NRS 608.012 distinguishes commissions from other forms of bonuses and deems them as part of the wage.  Randazza's bonus was akin to a commission, selling a release of claims to an infringer for value, and thus is cognizable under the statute.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

Las Vegas, Inc., No. 2:13-CV-1744 JCM (CWH), 2014 WL 2742874 (D. Nev. June 17, 2014), in its post-arbitration brief.  However, such citation was misplaced; the Ninth Circuit found such a claim cognizable less than one year prior.  Rivera v. Peri & Sons Farms, Inc., 735 F.3d 892, 901 (9th Cir. 2013); Fetrow-Fix v. Harrah's Entm't, Inc., No. 2:10-cv-00560-RLH-PAL, 2010 WL 4774255, *5 (D. Nev. Nov. 16, 2010) (finding that the plaintiffs stated a valid claim under NRS 608.050).

115.    The McDonagh judge did not perform a private right of action analysis.  Instead, tracing through the cited case law, the McDonagh decision ultimately rests on the analysis in Baldonado v. Wynn Las Vegas, LLC, 194 P.3d 96, 102 (Nev. 2008), relative to NRS 608.160.  In Baldonado, the Nevada Supreme Court found no private right of action where "the statutory scheme require[ed] the Labor Commissioner to enforce the labor statutes and" there was "the availability of an adequate administrative remedy for those statutes' violations."  124 Nev. at 960. The Baldonado Court reached this stage of the analysis after first determining that there was no express private right of action and the legislative history was silent as to the intent to create a private remedy.  Id. at 958-960.  Although NRS 608.160 is silent as to enforcement, NRS 608.050 is not, and the Baldonado analysis is misplaced.  Specifically, NRS 608.050(2) explicitly grants an employee the right to record a lien against the employer's property and foreclose thereon, in accordance with the provisions of NRS 108.221 to 108.246.  Of note, NRS 108.238, incorporated by reference into NRS 608.050(2), specifically permits a civil action to recover the debt made subject of the lien, i.e. a private right of action.  Similarly, NRS 108.239 entitles the claimant to, in a private civil action, enforce and foreclose the lien granted by NRS 608.050.  Thus, claims under NRS 608.050 contain an express right of action and it is otherwise unreasonable and in manifest disregard of the law to find no private right where the statutory scheme permits the recording of and foreclosure on a lien for the debt created under that statute.  Randazza is entitled, as argued at arbitration, to a day's pay, vested bonuses, the 5% raise, and statutory penalties.  Thus, the IAA should not be confirmed.

### iii.    Randazza Is Entitled To Unpaid Severance And Bonuses.

116.    In his fourth claim, Randazza made claim for breach of contract relative to the

42

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

aforementioned bonuses as well as for unpaid severance.  See Randazza Decl., Ex. 3, pp. 23-24. Pursuant to Section 7(B) of the employment agreement, Randazza was entitled to twelve weeks of salary as a severance if terminated during his fourth year of employment.  Employment Agreement.  This severance, in the amount of $60,852, was not paid.  There is no dispute he was not paid this amount nor the claimed bonuses.

117.    First, the Arbitrator erroneously found that Randazza resigned, disqualifying him from the severance payment.  As set forth in detail above, the facts demonstrate that Randazza did not resign nor did he have any intent to resign.  Excelsior's choice to deem MJRPA's withdrawal of representing LMH as a resignation had no basis in fact and to the contrary was a bad faith action in an effort to avoid paying Randazza the twelve weeks of severance it owed him. It is arbitrary and capricious for the Arbitrator to simultaneously determine that Randazza would selfishly divert $75,000 to himself while he was also readily willing to forego over $60,000 in severance.

118.    The Arbitrator also wrongly found that the bonus should have been based on LMH's net recovery, subtracting litigation costs, rather than gross settlement.  In correspondence between Excelsior and Randazza, it was determined that Excelsior would "pay all expenses/assume all risks."  Randazza Decl., Ex. 14 (E-mail correspondence between Jason Gibson and Marc Randazza dated February 9, 2010, to February 15, 2010).  Were the bonus from net, Randazza would have been subsidizing expenses by 25% and assuming part of the risk.  Only by ignoring the record before him could the Arbitrator have found otherwise.

119.    The Arbitrator further exceeded his authority when he also determined that Excelsior did not have to make "any further contractual payment" based on Randazza's alleged own material breach and the doctrine of unclean hands.  IAA at 13.  Randazza made no breach as discussed below.[34]  Similarly, the doctrine of unclean hands "applies only if the inequitable conduct occurred in a transaction directly related to the matter before the court and affects the

_____

[34] By the same token, however, Excelsior's material breach excuses any post-termination non-performance by Randazza.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

equitable relationship between the litigants." <u>Cal. Satellite Sys. v. Nichols</u>, 170 Cal. App. 3d 56, 70 (Cal. App. 3d Dist. 1985). Here, unclean hands cannot apply where Randazza was deprived of his severance solely because Excelsior spuriously chose to deem MJRPA's withdrawal from representing LMH a resignation by Randazza from Excelsior, disregarding Randazza's contemporaneous disclaimer.

120.     Although the Arbitrator further excuse the contractual duties to pay severance and the bonus due to "material failure of consideration", there was no evidence that Randazza ever failed to do work required of him or get the best possible settlements. There was no evidence that time on outside projects interfered with his employment or that any alleged ethical breaches related to harm caused to Excelsior, let alone to LMH or the public at large.

121.     Similarly, the Arbitrator undertook no analysis of what alleged misconduct should deprive him of which particular bonus was due. For example, Randazza earned his bonus on the Oron matter in July 2012 at the time of settlement; yet, the Arbitrator made no finding that Randazza committed any breach or malpractice at that time causing injury to Excelsior or LMH. Notably, Excelsior's own arguments lack credibility--if there were truly a concern about Randazza's ethics in mid-August 2012, it would not have suffered his employment for weeks. Thus, the IAA must not be confirmed.

### b.    The IAA to Excelsior is Improper.

122.     Excelsior brought seven (7) counterclaims against Randazza:  1) breach of fiduciary duty; 2) conversion; 3) intentional interference with contractual relations; 4) tortious breach of duty of good faith and fair dealing; 5) legal malpractice; 6) unjust enrichment; and 7) breach of contract. LMH brought no counterclaims in the arbitration. The IAA, in the award portion itself, explicitly only addresses counterclaims 1, 2, 6 & 7. IAA, pp. 23-25. The Arbitrator, in his analysis, found that Randazza violated "fiduciary duty and other duties", implicating counts 4 & 5. <u>Id.</u> at 18. The Arbitrator did not address the third claim.[35]

---

[35] The third counterclaim alleged Randazza caused other lawyers to cease working for LMH.

123. At the outset, in varying portions of the IAA, the Arbitrator gave monetary relief in some instances to "Respondent(s)" and in others to "Respondent Excelsior." <u>Compare</u> IAA, p. 23 ("Respondent(s)"), <u>with</u> pp. 24 ("Respondent Excelsior"), 25 ("Respondents," "Respondent," and "Respondents and Counterclaimants Excelsior Media Corp. and Liberty Media Holdings, LLC"). The only respondent to have asserted counterclaims was Excelsior. To the extent monies are awarded to any other respondent, including attorneys' fees,[36] such exceeded the Arbitrator's authority as claims by them were not put before him. Specifically, the award of $275,000 related to the Oron Litigation in which only LMH was a party; no evidence was put on that Excelsior was harmed. Similarly, the $5,000 from James Grady related to the Oron Litigation; although Randazza actually did spend the funds on behalf of LMH, only LMH, not Excelsior, could even raise the issue.

124. The Arbitrator further exceeded his authority, issuing awards against Randazza personally, when the alleged harm was committed by MJRPA. Randazza never received funds in connection with the Righthaven cases; MJRPA did. Randazza did not receive the Grady funds; MJRPA did. Randazza did not hold client funds; MJRPA did. Randazza did not operate an attorney trust account; MJRPA did.

125. Additionally, Excelsior is not entitled, by any reasonable estimate, to any portion of the IAA as the Arbitrator manifestly disregarded the record and the law.

### i. Randazza Did Not Breach Fiduciary Duties.

126. The Arbitrator awarded Excelsior and LMH $275,000, plus prejudgment interest at 10% per annum, for the alleged breach of fiduciary duty arising from Randazza's negotiation for the additional $75,000 payment.[37] <u>Id.</u> at 23. As discussed above, Randazza, through MJRPA,

---

[36] It should be noted that if LMH or Gibson could assert a claim for attorneys' fees, such would contradict the Arbitrator's alter-ego analysis, since by that finding only Excelsior would have a contract right to such fees.

[37] In addition, although Randazza contends that California law is generally applicable, the Oron Litigation occurred in Nevada and thus, to the extent Excelsor or LMH suffered harm, it was occasioned by the resolution of a Nevada matter. The 10% interest rate awarded grossly exceeded the rates permitted by NRS 99.040(1) or NRS 17.130(2). Since the entire Arbitration is under the auspices of a contract, the cap applies.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

had obtained judicial enforcement of the $550,000 July 2012 settlement with Oron, and he was pursuing attorneys' fees and securing Oron's overseas assets. As part of an effort to resolve these outstanding issues, Gurvits appeared for Oron and began negotiating a separate fee for MJRPA to ensure that after the matter was resolved, Oron too might enjoy the firm's skills. The Arbitrator found that Randazza and Gurvits were bluffing. See IAA, p. 7 n.4 (stating that "except for admissions, anything which Randazza and his opposing counsel in the Oron litigation, Val Gurvitz, communicated to each other lacked credibility . . . .").

127.    There is no basis for the IAA. Excelsior alleges that after it fired Randazza, Oron brought claims against LMH and a settlement was reached in that matter. The $275,000 figure represents the claimed reduction in the ultimate agreement between Oron and LMH, from the original $550,000 paid. First, as LMH asserted no counterclaims and was adjudged not to be the alter ego of Excelsior, Excelsior lacked standing to make this claim. Second, there is no causal connection, legal or factual, between the so-called "bribe" and LMH's decision to return $275,000 to Oron. Third, at no point in the Oron Arbitration Demand did it make mention of the negotiation over the $75,000 retainer. See Randazza Decl., Ex. 15. The Arbitrator completely omitted any legal causation analysis required for any claim of breach of fiduciary duty, breach of duty of good faith and fair dealing, breach of contract, or legal malpractice. See Shopoff & Cavallo LLP v. Hyon, 167 Cal. App. 4th 1489, 1508-09 (Cal. App. 1st Dist. 2008) (discussing elements of claims); Kane v. Sklar, 122 Cal. App. 2d 480, 482-483, 265 P.2d 29, 31 (Cal. App. 1954); Carlton v. Quint, 77 Cal. App. 4th 690, 699 (Cal. App. 2d Dist. 2000).[38] The Arbitrator recognized that "proximate cause" and "fact of damage" are separate elements of the claims. IAA, p. 15. Less than one page later, in contravention of the causation element of any of these claims and in manifest disregard of the law, the Arbitrator expressly and capriciously ruled that "violations of

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

_____

[38] Similarly, under Nevada law, causation of damages is an element of these claims as well. See Cuomo v. Deluca & Assocs., P.C., No. 66484, 2016 Nev. Unpub. LEXIS 48 (Jan. 15, 2016) (addressing breach of fiduciary duty, legal malpractice, breach of contract); State v. Sutton, 103 P.3d 8, 19 (Nev. 2004) (damages for breach of covenant of good faith and fair dealing result from "consequences of the wrong"). Both actual and proximate causation are required; Excelsior demonstrated neither. See Dow Chemical Co. v. Mahlum, 970 P.2d 98, 107 (Nev. 1998), overruled in part on other grounds by GES, Inc. v. Corbitt, 21 P.3d 11, 15 (Nev. 2001).

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

fiduciary duties do not require 'fact of harm' to be shown by a preponderance of the evidence or otherwise." Id. at 15-16.  As no reasonable construction of the evidence could tie the negotiation to the so-called resettlement, and the Arbitrator makes no such connection, let alone Excelsior or LMH claiming as much, there was no harm to Excelsior and no proximate causation.  This is in addition to the absence of a breach where the Arbitrator acknowledged that Randazza was not intending to consummate any so-called "bribe."  Absent breach, causation, and harm, no award is justified.  The Arbitrator failed to perform his duties and this award must not be confirmed.

128.    Moreover, the record is devoid of corroboration that LMH ever even paid Oron $275,000, further undermining the claim of damages.  Such failure to corroborate is in violation of the Arbitrator's own order.  On August 15, 2013, Randazza requested production of "all communications related to the settlement of the Oron Litigation."  Following the refusal to produce the communications evidencing the alleged revised settlement between LMH and Oron.com, Randazza moved to compel.   The Arbitrator granted the motion subject to confidentiality considerations on March 31, 2014.  See Randazza Decl., Ex. 16, pp. 3-4.  The Arbitrator confirmed the obligation to produce these communications again on August 28, 2014.  See id. Ex. 17, pp. 1-2.  Excelsior and LMH stipulated to an order on November 3, 2014, that they would produce them.  See id. Ex. 18, p. 2.  The Arbitrator again ordered production on January 16, 2015, of all e-mails from Oron's counsel.  See id. Ex. 19, pp. 1-2.  Despite these multiple orders, Excelsior and LMH never produced any such corroborating evidence of any funds delivered to Oron or any meaningful compliance with the alleged agreement.

129.    Excelsior and LMH never argued that the $75,000 negotiation was the reason LMH allegedly forfeited half of the $550,000 original settlement with Oron, tendering back $275,000.  Instead, they claimed that Randazza provided material assistance to a third party (Datatech Enterprises, LLC) bringing a separate claim against Oron, in violation of paragraph 10 of the July 2012 settlement agreement.  Paragraph 10 of that settlement agreement stated "Liberty will agree to dissuade others from bringing suit against Oron."  Even if this were enforceable, Oron suffered no actual harm and could not have recovered damages from LMH.  Further, there was no evidence Randazza provided any material assistance to others that enabled third-party

suits against Oron.

130.    The argument that Randazza violated ¶ 10 is exceptionally ironic.  Throughout the arbitration, Excelsior and LMH, through their expert, contended that the negotiation of this so-called bribe violated NRPC 5.6(b).  NRPC 5.6(b) prohibits an attorney from negotiating a settlement that restricts his right to practice.  Yet, the very settlement provision in paragraph 10, to the extent it precluded Randazza individually from facilitating the representation of others, would have violated NRPC 5.6(b) and would have been unenforceable as against the same public policy.  Oron could not have legitimately claimed that Randazza was precluded from assisting Datatech Enterprises and, thus, no malpractice or other breach could have been committed by Randazza by virtue of this assistance.  Assuming, *arguendo*, that LMH paid Oron the $275,000, such was due to the further malpractice of successor counsel in failing to contest Oron's claim pursuant to the interpretation of an unlawful contract term as applied.  Randazza is not liable for the errors of his successors and the Arbitrator manifestly disregarded the legal requirement of causation.  Thus, the IAA cannot be confirmed.

### ii.    Randazza Was Not Unjustly Enriched.

131.    The Arbitrator ordered payment to Excelsior and LMH based on an unjust enrichment theory.  IAA at 23.  It was ordered for two instances:  (1) legal fees of $55,000 paid to MJRPA as a result of administrative fees for a receivership in a case involving an unrelated individual, Wayne Hoehn, [39]  and (2) monies received by MJRPA, in the amount of $5,000, from James Grady, relative to expenses in the Oron Litigation -- which was actually MJRPA's to do with as he pleased on behalf of any fight against online piracy, not for the benefit of Excelsior or LMN.  See Grady Decl.  First, as noted by the Arbitrator, these amounts were not paid to Randazza personally, but rather to his non-party law firm, MJPRA.  That alone renders the award improper, as the arbitrator, once again, exceeded his powers.  See Orion Shipping & Trading Co. v Eastern States Petroleum Corp., 312 F.2d 299, 301 (2d Cir. 1963) ("an action for confirmation is not the

---

[39] The Arbitrator erroneously states the $60,000 figure is for the Hoehn representation, but then only awarded $60,000 for both instances.  The Arbitrator earlier correctly identified the Hoehn amount as $55,000.  IAA at 18.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

proper time for a District Court to 'pierce the corporate veil.'"). The Arbitration was solely brought by Randazza in his individual capacity, not on behalf of MJRPA.

132.    Second, in order to establish a cause of action for unjust enrichment, a plaintiff is required to establish: (1) that the defendant received money that was intended to be used for the benefit of the plaintiff, (2) that the money was not used for the benefit of the plaintiff, and (3) defendant has not given money to the plaintiff. Ghirardo v. Antonioli, 14 Cal. 4th 39, 51, 924 P.2d 996, 998 (Cal. 1996). Pursuant to his contract, Randazza was permitted to represent third-parties through his non-party law firm, MJRPA. See Employment Agreement § 6(C).

133.    MJRPA successfully represented an individual named Wayne Hoehn against a company called Righthaven, arising from Mr. Hoehn's fair use of copyrighted materials. Righthaven LLC v. Hoehn, 792 F. Supp. 2d 1138 (D. Nev. 2011), aff'd in part 716 F.3d 1166 (9th Cir. 2013). Subsequently, on June 6, 2013, MJRPA was awarded $55,000 "for its administrative expenses." Righthaven, LLC, v. Hoehn, No. 2:11-cv-00050 (D. Nev. Jun. 6, 2013). The Arbitrator made no evaluation of the basis on which that fee was awarded, neither was any record made. The public record, however, shows that of $34,045.50 awarded for the Hoehn matter alone. Randazza's time represented but 15.02 hours over a six month period, totaling $6,773.50. See Righthaven v. Hoehn, No. 2:11-cv-00050, Document 32-3 (D. Nev. Jul. 5, 2011) (timesheet). The Hoehn distribution also included $3,815 earned by MJRPA in a separate matter of Righthaven v. Leon, No. 2:10-cv-01627 (D. Nev. Jul. 5, 2011), none of which was based on Randazza's time (per ECF 42-3 May 3, 2011 in that matter). Finally, it included the $29,848.35 incurred in Righthaven v. Wolf, No. 1:11-cv-00830 (D. Colo.) of which Randazza's time was but 9.5 hours over a five month period (per ECF No. 59-3, Oct. 14, 2011). Thus, MJRPA received $55,000 for nearly $65,000 in bills, where Randazza spent less than 24 hours of his own time working on the matter, between January and October 2011. There was no evidence that Randazza, in working on average less than three hours per month in his personal time, did any of the work on the Righthaven matters during time when he should have been working for Excelsior. He did not receive funds for the time intended for the benefit of Excelsior. The Arbitrator arbitrarily and in disregard of the law nonetheless ignored his responsibility to consider the intent of the funds.

49

Randazza was not unjustly enriched.

134.    Moreover, the legal fees earned in the <u>Hoehn</u> matter were not for the benefit of Excelsior, nor could they be.  First, Excelsior had no legal, nor moral, right to them at all.  Even if one were to invent a desire to give them to Excelsior, were MJRPA to deliver the legal fees to Excelsior, they would be in violation of California Rule of Professional Conduct 1-320 and NRPC 5.4(a), prohibiting lawyers and firms from sharing fees with non-lawyers.  Excelsior, as a for-profit corporation, does not meet the exception of NRPC 5.4(a)(4).  As a matter of fact and a matter of law, both of which were misapprehended by the Arbitrator, Excelsior is not entitled to the Hoehn fees.  Thus, the Court cannot confirm the award of $55,000 as unjust enrichment.

135.    The Arbitrator also awarded as unjust enrichment $5,000 received by MJRPA from a Mr. James Grady.  IAA, p. 23.  As found by the Arbitrator, Grady funded the Oron Litigation in the amount of $5,000.  <u>Id.</u> at 18.  Excelsior and LMH offered no evidence, and thus the Arbitrator cannot have found, that those funds were not used for LMH's benefit.  Instead, the Arbitrator merely asserted that Randazza's statement lacked corroboration.  IAA, p. 19.  Had the question of corroboration been raised at the hearing, Randazza could well have demonstrated that a) the funds were never intended for the benefit of Excelsior or LMH and yet b) they were nonetheless voluntarily applied to LMH's litigation efforts.  <u>See</u> Grady Decl.  In contrast, as set forth above, at no time did the Arbitrator require LMH or Excelsior to corroborate that Oron was paid $275,000.  Such a double standard and arbitral misconduct cannot be condoned.  Had the Arbitrator acted in an unbiased manner, Randazza could have supplemented the record to introduce such corroborating evidence.  <u>See</u> Randaza Decl., Ex. 20.  Thus, there is no basis to confirm the IAA.

### iii.    Damages for Spoliation or Conversion Cannot be Allowed.

136.    The Arbitrator awarded Excelsior and/or LMH $3,215.98 in expert fees incurred, and he reserved his decision on damages for spoliation and/or conversion pending further evidence of data destruction.  IAA, pp. 23-24.  As noted above, this demonstrates the non-finality of the entire award, precluding confirmation.  Notwithstanding the foregoing, there was no evidence of spoliation or conversion and the Arbitrator manifestly disregarded the law.  In a

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

conversion claim, a plaintiff must show (1) that the plaintiff owned and/or had a right to possess an item of personal property, (2) the defendant intentionally interfered with the plaintiff's right to possession, including by destroying or refusing to return the property, (3) the plaintiff did not consent, (4) the plaintiff was harmed, and (5) the defendant's conduct was a substantial factor in causing the harm.  Plummer v. Day/Eisenberg, LLP, 184 Cal. App. 4th 38, 50, 108 Cal. Rptr. 3d 455, 464-465 (Cal. App. 4th Dist. 2010) (conversion requires an "act of dominion" over personal property); accord Winchell v. Schiff, 193 P.3d 946 (Nev. 2008). [40]  Here, there is no dispute that Randazza, in his final days as an employee, removed non-Excelsior materials and then securely erased data from his work-issued laptop.  MJRPA preserved all LMH property as required.

137.    Randazza was never shown to have erased files from one computer that were not completely backed up to a secure cloud server.  He also did this prior to his separation, before there was any notice of dispute for which he was required to preserve data.  But more capriciously, Randazza is being penalized for doing exactly what a litigation hold required—he preserved the data in a manner that would ensure recovery for litigation.

138.    Further, the Arbitrator disregard that client files were on the computer and Randazza owed those clients a duty to secure that data under NRPC 1.6.  Once the devices were to be returned to Excelsior, it was incumbent on Randazza to secure the third-party client confidential data.  This is a measure promoted by counsel for Excelsior and LMH.  *See generally*, Littler Mendelson, *The "Bring Your Own Device" to Work Movement*, The Littler Report (May 2012), available at http://www.littler.com/files/press/pdf/TheLittlerReport-TheBringYourOwnDeviceToWorkMovement.pdf.

139.    Having had the benefit of over 100,000 documents produced and the delivery of all of its files, Excelsior and LMH identified not a single missing document or category of

---

[40] Neither Nevada nor California recognize a cause of action for spoliation and Excelsior did not make such a claim. Timber Tech Engineered Bldg. Prods. v. Home Ins. Co., 55 P.3d 952, 954 (Nev. 2002). To the extent the expense constitutes a sanction under JAMS Employment Arbitration Rule 29, Randazza could not fairly have been said to not have complied with his obligations under the Rules or the Arbitrator's order where arbitration had not yet been initiated. See JAMS Employment Arbitration Rule 17(a) (duty to exchange information only accrues "after commencement of the Arbitration").

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

documents belonging to them.  Their own experts even recovered 19,000 files transferred to the cloud storage system of MJRPA.  <u>See</u> Randazza Decl., Ex. 1, p. 987:7-15.  They only speculate, and the Arbitrator capriciously adopts, that documents might have been taken.  IAA, p. 17.  The Arbitrator knew that the identification of potentially missing documents was crucial to this claim, yet he arbitrarily ignored his own prior ruling on the subject.  <u>See</u> Randazza Decl., Ex. 17, p. 1.  Absent an evidentiary foundation, the Arbitrator failed to perform his duties and acted in excess of his authority.  The expert fee was unnecessary, as their expert merely confirmed what everyone knew:  Randazza securely wiped the data and there was nothing he needed to retrieve that was not otherwise given by Randazza to them freely.  Further, as Randazza acknowledged, keeping non-Excelsior materials on the laptop and iPhone, delivery of that data to Excelsior could have violated NRPC 1.6, as it could have resulted in the revelation of confidential non-party client information.  To condemn Randazza for abiding the rules of professional conduct is manifest disregard of the law.  Finally, the record was closed as to all issues but attorneys' fees;[41] no further examination or evidence is permissible under the Arbitrator's scope.

140.    Moreover, the Arbitrator's ruling evidences a double-standard.  In Footnote 8 of the IAA, the Arbitrator set forth that he excused the deletion of certain text messages (the award erroneously calls them e-mails) by a Chaz Vorias ("<u>Vorias</u>").  IAA, p. 11, n.8.  These text messages allegedly showed Randazza's assent to the April 2012 pornographic filming in his office.  <u>See</u> Randazza Decl., Ex. 1, p. 958:11-22.  At no time, not after the April 23, 2012 complaint to Gibson or in August 2012 at the direction of counsel at Littler, did Excelsior cause Vorias to preserve those text messages.  <u>Id.</u> at 963:16-965:10.  The Arbitrator excused Excelsior's failure to ensure its agent preserved the alleged text message by shifting the blame to Vorias.  The failure of a company to preserve employee text messages constitutes spoliation.  <u>See</u> <u>Small v. Univ. Med. Ctr. of S. Nev.</u>, No. 2:13-cv-00298-APG-PAL, 2014 WL 4079507 (D. Nev. Aug. 18, 2014).  The irony is that, unlike Vorias' proven destruction of text messages, Excelsior offered

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

---

[41] Of course, if it was still open, that further indicates that the IAA is not a confirmable final award.

no evidence to suggest that Randazza destroyed documents, only, as he conceded, that he moved them to his firm's cloud storage.  The Arbitrator's biased double standard cannot be condoned.  Thus, there is no justifiable basis to confirm the IAA.

### iv.    Disgorgement of Wages Earned is Impermissible.

141.    The Arbitrator wrongly ordered Randazza to disgorge $197,000.00 of his earnings from his employment with Excelsior.  IAA, p. 24.  The Arbitrator stated that it was for violations of fiduciary duty in his capacity as an attorney regarding his performance in the TNAFlix and MegaUpload litigation, representation of XVideos and/or XNXX, and "excessive, undisclosed, time" on other matters.  Id.  The disgorgement order is impermissible as a matter of law.

142.    the contract commands that it is to be interpreted under California law.  Nevertheless, desperate for an underpinning to his paid-for or inherent bias against Randazza, the Arbitrator sifted through what must have been an excessive amount of case law until finally finding the only decision that could support his view – that an employee's wages can be disgorged – by adopting the rational in a Texas case, Burrow v. Arce, 997 S.W.2d 229, 237-238 (Tex. 1999).[42]  The Burrow court relied on Proposed Restatement 3d of the Law Governing Lawyers, § 49 (Proposed Final Draft No. 1, 1996), which stated "A lawyer engaging in clear and serious violation of duty to a client may be required to forfeit some or all of the lawyer's compensation for the matter."  However, this only applies to outside attorneys seeking billed fees.  The actual adopted Restatement provision appears at section 37.  Restatement 3d of the Law Governing Lawyers, § 37, Reporter's Comment E, specifically distinguishes in-house counsel, noting "[o]n nonforfeiture of the salary of a lawyer employee, see [cases cited]."  Randazza was an employee, not outside counsel, rendering § 37 and Burrow entirely inapplicable.  Such is consistent with the laws of California precluding disgorgement of wages, discussed below.

143.    Additionally, in Burrow, the Texas Supreme Court determined that fee forfeiture may be appropriate where a lawyer is engaged in "clear and serious violation of duty."  997 S.W.

---

[42] Moreover, there is no basis to apply Texas law or that of any other state not related to the Employment Agreement.

2d at 241. The Arbitrator made no determination that Randazza's alleged violations were either clear or serious; even assuming a violation, the Arbitrator could not have found it clear or serious where undisputedly qualified experts disagreed that a violation even occurred under California or Nevada law. See Randazza Decl., Exs. 9 & 10.

144.    First, with respect to spending time on non-Excelsior or LMH matters, the Arbitrator did not ground such in fiduciary duties, but rather attended to the contractual provision regarding outside work. IAA, p. 24. Specifically, the contractual provision, Section 6(C), required that Randazza's first duty of "temporal loyalty" lie with Excelsior. Employment Agreement § 6(C). In Footnote 16, the Arbitrator stated that "billed hours shown to be in excess of that permitted by that agreement." IAA, p. 19 n.16. As to his "excessive, undisclosed, time", it appears that the Arbitrator made no findings as to how much time, if any, was taken away from Randazza's responsibilities to Excelsior, nor even how many hours Randazza worked either on his own or for Excelsior.

145.    Nothing in the record showed a failure of Randazza to meet deadlines or any pre-termination concerns regarding time spent. The contract required Randazza to use non-working hours, vacation days, and unpaid leave time to work on outside projects. The Arbitrator made no finding that Randazza did not perform third-party work under these parameters. Although evidence was introduced of Randazza's non-Excelsior and/or LMH time, Randazza testified that he worked long hours. See Randazza Decl., Ex. 1, pp. 632:16-633:7. At no point was he critiqued or disciplined for not spending enough time on Excelsior matters. Id. pp. 675:21-676:15. Thus, the Arbitrator lacked evidentiary foundation to suggest Randazza's time on outside projects was excessive, requiring disgorgement even were it permissible.

146.    Second, with respect to concurrent representation of XVideos and/or XNXX, no evidence was introduced of breach of fiduciary duty or that Excelsior suffered any harm. While working for Excelsior, Randazza's third-party clients included XVideos and XNXX, sites that might facilitate the streaming of online videos. The evidence at the hearing indicated, at most, that Randazza determined that LMH could (much like Righthaven) find itself subject to sanctions if they sued an inappropriate litigation target. See Randazza Decl., Ex. 1, pp. 734:10-737:11; Ex,

21 (e-mail communication from Randazza dated Sep. 6, 2011).  At no point was any evidence introduced that Randazza's opinion was erroneous and, moreover, subsequent to Randazza's departure, LMH never brought suit against them.  <u>See</u> Randazza Decl., Ex. 1, p. 821:12-17.  The policies and choice Randazza instituted relative to XVideos and DMCA notices have not changed, with new counsel for LMH implicitly ratifying them.  <u>Id</u>. pp. 837:15-838:21.

147.    Moreover, the relationship was mutually beneficial, not in conflict, with LMH's content having priority for DMCA takedowns.  <u>Id</u>. pp. 628:20-629:6.  With respect to the representation of XVideos and/or XNXX,[43] the Arbitrator omitted any analysis of legal causation.  Similar to his analysis of post-termination breach of fiduciary duty, in which the Arbitrator found Excelsior had a right without a remedy, the absence of legal causation bars a remedy.  Thus, there is no factual basis for the Arbitrator to have concluded that the representation of XVideos and XNXX violated any of Randazza's fiduciary duties to Excelsior in any way that would warrant disgorgement.

148.    Third, the Arbitrator wrongly found that Randazza's representation (through MJRPA) of LMH on matters involving TNAFlix and MegaUpload breached fiduciary duties.  IAA, p. 24.  In negotiating settlements with TNAFlix and MegaUpload, Randazza was offered fees for legal services to be conflicted out of future third-party representation, none of which was consummated.  Randazza settled both of those matters for $50,000 and $600,000 respectively.  Randazza Decl. Ex. 1, pp. 731:17-732:3.  In the MegaUpload matter, Randazza was offered a $5,000 payment  <u>Id</u>. pp. 749:17-750:6.  He, himself, derided it as a "bribe" which he did not accept.  In the TNAFlix matter, negotiating with Gurvits, Randazza was offered $5,000 and made a bluff demand of $30,000.  <u>See</u> Randazza Decl., Exs. 22 and 23.  None of these negotiations bore fruit or were intended to.  Excelsior is only permitted to recover on a claim for breach of fiduciary duty where the fiduciary duty was owed specifically to Excelsior arising out of the attorney-client

---

[43] As the Arbitrator did not actually make a finding as to whether Randazza represented XVideos, XNXX, or both, it is unknown how he determined that Randazza's representation of one or both of them at a particular time was adverse to Excelsior and a breach of fiduciary duty.

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

relationship.  See Stanley v. Richmond, 35 Cal. App. 4th 1070, 1086-1087, 41 Cal. Rptr. 2d 768, 776 (Cal. App. 1st Dist. 1995).  LMH's expert claimed that these negotiations violated the Nevada and California rules of professional conduct precluding restrictions on the right to practice.  These rules address an attorney's obligations to society at large, not a particular client, in order that any person can hire the services of any attorney of their choosing.  Excelsior itself suffered no harm. No evidence of harm resulting from either negotiation was introduced, and LMH benefitted from the TNAFlix negotiation where Randazza subsequently appeared credible to Gurvits in the Oron Litigation.  Even absent harm, there was no evidence that Randazza breached his fiduciary duties to Excelsior or LMH.  Thus, absent an actual breach of duty, causation, or harm, the Arbitrator had no basis in fact or law to order disgorgement.

149.    Not only is Randazza not subject to penalty as he did not violate any fiduciary duties, the supposed remedies of forfeiture and disgorgement violate California law.  Both Section 37 of the Restatement and Burrow speak to forfeiture of the right to collect fees, rather than disgorgement of fees collected.  No case law has been provided where the attorney was required to disgorge; the only precedent is a statement in dicta that disgorgement may be appropriate.  See Rodriguez v. Disner, 688 F.3d 645, 653 (9th Cir. 2012).  Even in Burrow, no individual attorney was required to return his or her salary.

150.    Moreover, the Ninth Circuit did not analyze California wage law on the question. None of the cases address the salary of in-house counsel as a fee to be disgorged.  None properly could.  California Labor Code, Section 221, states that "[i]t shall be unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee."  The identical result is warranted under Nevada law.  Specifically, NRS 608.100(2) states "It is unlawful for any employer to require an employee to rebate, refund or return any part of the wage, salary or compensation earned by and paid to the employee."  Randazza earned his compensation and cannot be required to disgorge it.  To the extent the poorly drafted IAA indicates that Randazza simply must forego his earned bonuses, such is prohibited by NRS 608.100(1)(c).  Thus, even if outside counsel might be subject to a disgorgement order, in-house counsel, as an employee protected by the wage laws, is not.  Randazza is entitled to retain his

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

salary and bonuses paid under California and Nevada law, and the Arbitrator's IAA is in manifest disregard of the law. For Excelsior to seek enforcement thereof would constitute a new violation of those laws. The IAA cannot be confirmed if its mandate is, itself, illegal.

151. Finally, the Arbitrator did not consider any of the specific factors to determine the extent of forfeiture. With the exception of the few matters at issue in the arbitration, Randazza's service to Excelsior has not been questioned. The Arbitrator gives no indication at how he arrived at the $197,000.00 figure[44] and it does not appear to correlate with any of Excelsior's specific requests for disgorgement. Such analysis is required by <u>Burrow</u>:

> It would be inequitable for an agent who had performed extensive services faithfully to be denied all compensation for some slight, inadvertent misconduct that left the principal unharmed, and the threat of so drastic a result would unnecessarily and perhaps detrimentally burden the agent's exercise of judgment in conducting the principal's affairs . . . . In determining whether and to what extent forfeiture is appropriate, relevant considerations include the gravity and timing of the violation, its willfulness, its effect on the value of the lawyer's work for the client, any other threatened or actual harm to the client, and the adequacy of other remedies.

<u>Burrow v. Arce</u>, 997 S.W.2d 229, 241 (Tex. 1999). For that reason alone, the IAA cannot be confirmed.

152. The Arbitrator additionally impermissibly instituted punitive damages, even in the absence of liability. The Arbitrator specifically ordered disgorgement to act "as a deterrent and disincentive for an attorney or other agent to breach of fiduciary duty." IAA, p. 20, n.18. The disgorgement was thus not compensatory. Absent a showing of actual harm, there is no tort, thus punitive damages cannot be awarded. <u>See</u> <u>Jackson v. Johnson</u>, 5 Cal. App. 4th 1350, 1354-55, 7 Cal. Rptr. 2d 482 (Cal. App. 2d Dist. 1992). Moreover, to the extent the duties arose independently of the contract, Excelsior and LMH were required to show, by clear and convincing evidence, oppression, fraud or malice. Cal. Civ. Code § 3294(a); <u>accord</u> NRS 42.005(1). The Arbitrator made no such findings. The law does not permit the disgorgement order where (a)

---

[44] Although, as noted, it does appear to correlate with the amount of unpaid bonuses due Randazza.

57

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

1    there was no precedent for attorney fee disgorgement; (b) there was no breach of fiduciary duty,

2    causation, or harm; (c) wage laws prohibit in-house counsel from disgorging earnings; and

3    (d) there was no actual harm or oppression, fraud, or malice warranting such punitive damages.

4    In sum, the disgorgement order was issued in manifest disregard of the facts and the law, in

5    violation of the Arbitrator's duties.

6    <div align="center">**v.    Remittance of Trust Funds is Improper.**</div>

7    153.    As previously discussed, a non-party law firm, MJRPA represented LMH in

8    litigation.  Funds were placed in the law firm's client funds trust account relative to expenses and

9    recoveries in litigation.  The Arbitrator orders Randazza to deliver to Excelsior and LMH certain

10   funds held in this trust account and pay 10% interest thereon, specifically, "all Oron related

11   funds[45] and, further, an additional $30,000 of non-Oron-related client funds."  IAA, pp. 24-25.

12   Such is improper for several reasons, in disregard of the law, and in excess of the Arbitrator's

13   authority.

14   154.    As set forth in the disbursement breakdown, of the original $550,000.00 Oron

15   settlement received, Randazza was owed his 25% commission of $137,500.00, plus an additional

16   $25,000.00 for the loan.  See Randazza Decl., Ex. 24.  As counsel, MJRPA was also required to

17   disburse $31,800.00 in litigation costs to third parties.  Id.  Additionally, LMH owed MJRPA

18   $21,279.50 for the services of professionals other than Randazza in the Oron Litigation.[46]  Id.

19   Finally, LMH owed MJRPA $2,601.00 for non-Oron matters.  Remittance of these funds is

20   impermissible.

21   155.    First, to the extent such funds represent wages owed to Randazza, as set forth

22   above, tender would be impermissible.  Disgorgement of wages earned is illegal.  Second, also as

23   noted, the funds are not in a personal trust account, but rather with MJRPA; the Arbitrator lacks

24

25

26   [45] It was claimed that it was $275,000

27   [46] Judge Navarro determined that the actual value of Randazza Legal Group's services, including Randazza's, was
     $131,797.50.  Liberty Media Holdings, LLC v. FF Magnat Ltd., Case No. 2:12-cv-01057 (D. Nev. Sept. 4, 2012).

28   Subtracting out Randazza's labors, for which compensation is due under the employment contract, RLG is actually
     entitled to $81,433.98.

<div align="center">LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169</div>

<div align="center">58</div>

the authority to issue such an order as there has been no proper finding that MJRPA is Randazza's alter ego. Instead, these funds were the subject the Fee Litigation in Nevada State Court. Thus, the trust account was never properly before the Arbitrator. Moreover, that action has been settled, with this Court's approval, and all claims against MJRPA having been released.

156.    Third, the 10% interest is excessive under Nevada law, as previously noted. Additionally, the Arbitrator's requirement of interest conflicts with NRPC 1.15, which does not require that funds held in trust be placed in an interest bearing account. The Arbitrator manifestly disregarded this rule, resulting in an improper penalty to Randazza for MJRPA's compliance with the rule. Certainly, if there was interest earned and the principal was owed, then they would be entitled to the interest earned, but an award of prejudgment interest on disputed funds places a burden on law firms and lawyers that the rules of conduct do not require. See Lopez v. Javier Corral, D.C., 126 Nev. 690, *6 (Dec. 20, 2010) ("an attorney who holds disputed funds in his trust account pending resolution of the dispute does not convert those funds as a matter of law"). Thus, there is no basis at law for the award of interest.

157.    Fourth, there is no basis in fact for the claim for an additional $30,000. Instead, the only record was testimony from Gibson that Randazza Legal Group may have received some settlement funds, which he admitted was without any actual knowledge of such on his part. See Randazza Decl., Ex. 1, pp. 773:9-774:3. The Arbitrator had no facts in evidence that would permit such an award. The award rests on pure speculation and demonstrates the Arbitrator exceeded his authority and acted arbitrarily and capriciously.

### vi.    No Audit of MJRPA's Trust Account Is Permissible.

158.    Continuing his impermissible actions relative to the non-party MJRPA's client funds trust account, the Arbitrator ordered an accounting of that trust account. IAA, p. 25. This cannot be subject to confirmation. First, as previously noted, the record is closed and this was a matter that could have been resolved during the discovery phase. To the extent the record remains open, the IAA cannot be considered final. Second, the Arbitrator gives no purpose to such accounting. In fact, Excelsior never requested an accounting as part of its counterclaim. See Randazza Decl., Ex. 25 (Excelsior's Arbitration Answer and Counterclaim). Thus, it exceeds the

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

Arbitrator's powers to order an accounting.  Third, again exceeding the Arbitrator's authority, it interposes an obligation on MJRPA, which are not parties to the arbitration, and thus beyond the Arbitrator's powers.  Further, since the issuance of the IAA, all matters respecting MJRPA and its trust account has been settled and released.  And fourth, an audit of the account would necessarily reveal the identities of other clients of the non-party law firms, revealing the fact of representation, which may be confidential, and disclosing monies that may be subject to confidentiality agreements or otherwise reveal client financial arrangements.  Such would result in a gross violation of California Rule of Professional Conduct 3-100 and NRPC 1.6.  Moreover, as set forth above, all matters involving MJRPA were settled as approved by the MJRPA Settlement Agreement.

159.    Finally, a "claim for accounting must be tethered to relevant actionable claims." Simon v. Bank of Am., N.A., No. 10-cv-00300-GMN-LRL, 2010 WL 2609436, at *11 (D. Nev. June 23, 2010) (internal citation omitted).  As there is no other actionable claim, no accounting is permissible.  As a result, given the Arbitrator's manifest disregard of facts and law, in excess of his authority, no accounting is warranted and the IAA cannot be confirmed.

### vii.    Randazza Cannot Return a Non-Existent Laptop.

160.    Section 6 of the IAA is meaningless.  IAA. P. 25.  It requires Randazza to return an unidentified laptop computer that all parties know <u>does not exist</u>.  There is no manufacturer, model, serial number, or MAC address entered into evidence or referenced by the Arbitrator that would permit Randazza to identify the computer and comply.  There was no evidence in the record that would identify such computer, when they simply could have testified to issuing computers X &Y and only receiving back computer X.  The only mention in the record is where Gibson states that he is seeking the return of a "second company laptop that Randazza testified he had, and has not returned to the company."  Randazza Decl., Ex. 1, p. 772:16-19.  Nothing in Randazza's testimony mentioned simultaneously having two company issued laptops, only that over the course of his employment, two had been issued; at the time of termination, there was only the MacBook Air.  <u>Id.</u> p. 197:15-22.

161.    The question was never properly before the Arbitrator.  Excelsior did not make a

claim for the return of a computer in its counterclaim. <u>See</u> Randazza Decl., Ex. 25. Further, Randazza agreed to return all computers, otherwise rendering the issue moot. If, hypothetically, this Court were to otherwise enforce the award, no lawful officer entering Randazza's home would be able to know whether any device to be seized is the device awarded by the Arbitrator, as opposed to one purchased by his wife or given by grandparents to his children. Every computer has unique identifier, such as serial number, and the Arbitrator failed to specify the unique identifiers to enable Randazza or the officer to deliver the correct device.

162.    Absent any claim, let alone evidence, the IAA is unreasonable and unenforceable. It exceeded the Arbitrator's authority and is in manifest disregard of the facts. The issue of an alleged second laptop should have been addressed in discovery; the record is closed and there is no meaningful purpose to this section of the award. There is no cause for any further inspection of the non-existent, unidentified computer, as required by IAA § 7. Thus, the IAA cannot be confirmed.

## IV.  CONCLUSION

WHEREFORE, Randazza respectfully requests that the Court deny the Motion for the reasons as set forth herein, and grant him such other and further relief as is just and proper.

Dated:  February 24, 2017.

By:    /s/ Matthew C. Zirzow
LARSON & ZIRZOW, LLC
ZACHARIAH LARSON, ESQ.
Nevada Bar No. 7787
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
850 E. Bonneville Ave.
Las Vegas, Nevada  89101

Attorneys for Defendant

LARSON & ZIRZOW, LLC
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169