LARSON & ZIRZOW, LLC
ZACHARIAH LARSON, ESQ.
Nevada Bar No. 7787
E-mail: zlarson@lzlawnv.com
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
E-mail: mzirzow@lzlawnv.com
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170
Fax: (702) 382-1169

Attorneys for Defendant

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| In re: | Case No.: BK-S-15-14956-abl |
| | Chapter 11 |
| MARC JOHN RANDAZZA, | |
|       Debtor. | |
| | |
| EXCELSIOR MEDIA CORP., a Nevada corporation; and LIBERTY MEDIA HOLDINGS, LLC, a Nevada limited liability company, | Adv. No. 15-01193-abl |
|       Plaintiffs, | **DECLARATION OF MARC JOHN RANDAZZA IN SUPPORT OF OPPOSITION TO MOTION FOR ORDER CONFIRMING INTERIM ARBITRATION AWARD** |
| v. | |
| MARC JOHN RANDAZZA, an individual, | |
|       Defendant. | |
| | |
| AND RELATED COUNTERCLAIMS. | Date: April 18, 2017 |
| | Time: 1:30 p.m. |

I, Marc J. Randazza, Esq., hereby declare as follows:

1.     I am the debtor and debtor in possession in the above-referenced chapter 11 bankruptcy case (the "Chapter 11 Case"). I make this declaration in support of my opposition (the "Opposition") [Adv. ECF No. 125] to the *Motion for Order Confirming Interim Arbitration Award*

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170 Fax: (702) 382-1169

[Adv. ECF No. 104] filed by Excelsior Media Corp., a Nevada corporation ("Excelsior"), and Liberty Media Holdings, LLC, a Nevada limited liability company ("Liberty" and together with Excelsior, the "Plaintiffs"), which seeks to confirm a pre-petition *Interim Arbitration Award* ("IAA").  I have personal knowledge of the facts as stated herein and is called upon to testify, could and would do so consistently herewith.

2.      For ease of reference and to be consistent with the Opposition, I will refer to myself herein in the third person as "Randazza," the "Debtor," or the "Defendant" as applicable.  Unless otherwise indicated, all capitalized terms herein shall have the same meanings as set forth in the Opposition.  This Declaration supports the specific factual assertions made in the Opposition and tracks the order of the arguments therein.

**A.      Factual Background.**

3.      On or about June 10, 2009, Excelsior hired Randazza as its General Counsel as set forth in the Employment Agreement.  The Employment Agreement makes no mention of Randazza representing LMH or the brand name/website "Corbin Fisher."

4.      While serving as general counsel, Randazza was contractually permitted to practice law on behalf of other clients through a law firm, Marc J. Randazza P.A. d/b/a Randazza Legal Group ("MJRPA").  See Employment Agreement § 6(c).  This outside law practice worked to Excelsior's benefit.  For example, in the litigation described in SAC ¶ 49, Randazza represented LMH, through his law firm, MJRPA, rather than through his job with Excelsior.  Gibson is also LMH's managing member.

5.      Excelsior never found fault in Randazza's performance during the course of his employment with it; he successfully resolved complaints, litigated vigorously, and advised them on a variety of legal matters, as well as provided business advice and public relations advice for years.  There is not a single allegation that Randazza did not perform his assigned tasks or that he improperly worked for outside clients during his work hours with Excelsior.  In fact, in the entirety of the SAC, Plaintiffs only identify three (3) outside clients with whom they take issue:  1) Bang Bros., 2) XVideos/XNXX, and 3) Wayne Hoehn in the Righthaven litigation.  They take pains to calculate the amount of time Randazza spent not to even suggest he did so at the expense of time

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

he should have devoted to Excelsior.  Yet, by Plaintiffs' own admission, the wound-down outside practice billed only an average of 564 hours per year, a fraction of the number of hours Randazza would reasonably have been expected to bill as an associate.  See SAC ¶ 21.

6.     Plaintiffs assert that Randazza represented Bang Bros. subsequent to being hired by Excelsior.  See SAC ¶ 39.  Specifically, they claim that Randazza suggested that Bang Bros. lend LMH funds to purchase Cody Media, a competitor.  They then admit that they independently chose not to consummate the transaction.  See SAC ¶¶ 40-42.  There is no suggestion that Plaintiffs did not know Bang Bros.' primary business may have hypothetically competed with theirs; they only speculate that Randazza knew that merely suggesting them as a source of funding for the transaction could somehow, in some unknown way, harm Plaintiffs.

7.     Plaintiffs similarly assert that Randazza represented XVideos and XNXX after being hired by Excelsior.  See SAC ¶ 43.  Although Plaintiffs claim they sought to bring suit against one or both of them in 2011, Randazza gave specific reasons why such suits would not likely be successful and disclosed that he, himself, could not file such suits.  See SAC ¶¶ 44 & 46. Plaintiffs refrained from filing such suit once his employment was terminated – despite hiring multiple other law firms within the statute of limitations.

8.     Plaintiffs also incorrectly assert that <u>Randazza</u> was awarded $55,000 in a suit against Righthaven filed on behalf of a third-party client.  See SAC ¶¶ 93-97.  First, MJRPA represented the <u>defendant</u>, Mr. Wayne Hoehn, not a plaintiff.  Accordingly, neither Excelsior nor the Arbitrator were correct about Randazza's role in those proceedings, despite the clarity of the public record in that regard.  Second, the $55,000 was not actually awarded for representing Mr. Hoehn, but was a distribution for administrative expenses on behalf of the Court-appointed receiver.  Third, it was not Randazza individually, but his law firm, MJRPA, that received the distribution.  And fourth, the distribution to MJRPA occurred nine (9) months <u>after</u> Randazza's employment with Excelsior terminated.  Thus, none of Randazza's representation of outside clients caused any harm to Plaintiffs, nor was any even sufficiently alleged.

9.     During the course of his employment, Randazza found himself facing repeat opposing counsel, notably Valentin Gurvits. Esq. ("<u>Gurvits</u>"), when he dealt with TNAFlix and

3

**LARSON & ZIRZOW, LLC**
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

FF Magnat Ltd., d/b/a Oron.com ("Oron") on LMH's behalf.

10.     Although Gurvits raised the potential of retaining Randazza on behalf of TNAFlix during settlement negotiations, Randazza determined that such might run afoul of the Rules of Professional Conduct.  As a result, Randazza caused there to be a satisfactory settlement between LMH and TNAFlix without ethical quandary.  Notably, at no time does LMH claim that TNAFlix ever made any settlement offer that would have resulted in greater financial compensation to LMH, with or without any compensation to Randazza.

11.     On June 20, 2012, LMH, through its outside counsel, MJRPA, filed suit against Oron for copyright infringement.

12.     Plaintiffs assert that Randazza received $5,000 from a James Grady ("Grady") to help fund the suit against Oron.  See SAC ¶ 90.  As Excelsior was not a party to the suit and Randazza's law firm, MJRPA, represented LMH, it is clear that Randazza received the funds on behalf of MJRPA, a non-party to this litigation.  Further, to the extent Plaintiffs had any legitimate claim against MJRPA regarding the $5,000, such claim has been settled pursuant to the MJRPA Settlement Agreement as approved by the Settlement Order (as those terms are hereinafter defined), which provided for general releases between those parties.  See ECF Nos. 148 and 157.

13.     Furthermore, Grady gave these funds to MJRPA to use as it saw fit.  In fact, MJRPA / Randazza had every right to retain this $5,000 payment for services unrelated to Excelsior or LMH.  Nevertheless, Randazza and MJRPA elected to donate it to LMH's legal bills.

14.     On or about July 1, 2012, LMH and Oron reached a settlement of the litigation between them.  MJRPA thereafter successfully obtained an order enforcing the settlement agreement on behalf of LMH.

15.     Thereafter, Gurvits wished to re-open settlement discussions, and proposed a new agreement (after the Court had already enforced the existing one) containing certain terms with which Excelsior and LMH allegedly disagreed.  Randazza (in his capacity as an attorney with MJRPA) did not believe any new settlement was in order because MJRPA had filed a successful motion to enforce the original one, but Gibson insisted that LMH get its settlement faster than the courts would normally allow.  As a result, Randazza (in his capacity as an attorney with MJRPA)

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

was forced to negotiate once more the prospect of potential representation of Gurvits' client. Then, in fulfillment of his ethical obligations, Randazza, on behalf of MJRPA, presented the August 13, 2012 offer of $600,000 to Gibson as the head of LMH.

16.     Although Plaintiffs and the Arbitrator use the term "bribe" in order to color these proceedings, in reality the settlement stated clearly that certain funds were to be released to Oron's attorney, Gurvits, without any provision for Randazza's retention. Since Randazza already had a vested fee of $137,500 due him, he would have gained nothing by the $75,000 released to Gurvits, even if there were some guarantee MJRPA would be hired.

17.     LMH did not enter into that new settlement and does not allege it did or even desired to. Pending at that time was a motion for attorneys' fees and costs filed by MJRPA seeking an additional $214,964.00; and the Court ultimately awarded $131,797.50.[1] Plaintiffs do not claim that it was feasible for Randazza, through MJRPA, to have achieved a resolution of the dispute with Oron superior to the $764,964.00 he obtained for them. In fact, the proposed settlement was for less.

18.     Randazza agrees that there was animosity at Excelsior and he contemplated quitting. As Excelsior recognizes, however, Randazza determined to continue and even advanced $25,000 *of his own funds on or about August 21, 2012* to continue efforts to secure LMH's representation in Hong Kong, efforts that proved successful. More specifically, Randazza, through Hong Kong counsel, caused LMH to obtain a Mareva injunction in Hong Kong against Oron's worldwide assets. Randazza's advance of funds directly paid the invoices of Hong Kong counsel.

19.     August of 2012 was a trying time for Excelsior. On August 7, 2012, Gibson reported that two significant employees would be terminated, one specifically for economic reasons. Attached hereto as **Exhibit 26** is a true and correct copy of e-mail correspondence between Randazza and Gibson dated Aug. 7, 2012. Benefits, including 401k matching and dependent coverage, were eliminated. Id. Sales were declining and the ownership claimed to be

---

[1] LMH agreed that the amount of fees awarded was appropriate and that Randazza's firm's labors were worth the fees claimed and could be properly awarded.

dipping into personal assets to cover business expenses.  Id.

20.     In addition to corporate financial strain, Randazza became subject to personal disrespect.  In April 2012, without prior notice to him or obtaining his consent, which he would not have given, a pornographic film was made in Randazza's office, which included a woman urinating on his desk.  Filming in employee offices was not to be anticipated prior to that date.  At that time, Randazza had no choice but to attempt to take it in stride.  In that same filming session, homosexual pornography also was photographed in Randazza's office.  Mr. Gibson explicitly highlighted to Randazza that he was "shooting gay porn on [Randazza's] office desk & couch."  A true and correct copy of communications between Randazza and Gibson dated April 20, 2012 to April 24, 2012 is attached hereto as **Exhibit 27**.  Then, on August 9, 2012, Gibson performed fellatio on another employee in the back seat of Randazza's vehicle, adjusting the rear view mirror in an attempt to compel him to watch.  In light of the personal harassment and the financial pressures, Randazza anticipated his termination was imminent.  This was par for the course by Gibson any time someone fell into disfavor.

21.     At the end of August 2012, MJRPA, as counsel for LMH, with the assistance of Hong Kong counsel, seized the settlement funds from Oron through court order.  MJRPA, acting through Randazza, communicated receipt of the funds to LMH within hours of receipt. Notwithstanding the foregoing undisputed fact, Plaintiff continuously, and dishonestly, claims that it was not kept informed of this development.

22.     The following day, MJRPA, acting through Randazza, proposed a contingent distribution of the proceeds.  It was contingent because all settlement terms had not yet been performed, and because the settlement agreement explicitly provided that Randazza was personally liable, as an escrow agent, for the funds plus a 10% penalty if he released them before all terms were complied with.

23.     LMH disagreed with the contingent distribution proposed, even though it resulted in a larger net benefit to LMH than LMH proposed.  See SAC ¶¶ 60 & 61.  MJRPA was prepared to deliver to LMH the funds it was "entitled to receive;" however, LMH demanded the entire *res* and without payment to the firm for its fees and costs, and with Gibson taking the express position

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

that he would cause Excelsior to cheat Randazza of his vested bonus.

24.    Thereupon, Randazza, on behalf of MJRPA, recommended to LMH that his firm cease representing <u>LMH</u> in <u>further</u> matters due to the dispute between the two.  <u>See</u> SAC ¶ 62.  In response, <u>Excelsior</u> communicated that, rather than simply rely on the words Randazza actually used, that MJRPA would file no new cases on LMH's behalf, Gibson chose to "construe his email" as his resignation from his position with Excelsior and alleges that Randazza did, in fact, resign. <u>Id.</u> ¶ 63.  Randazza disputed this contention then and continues to dispute it now.

25.    Excelsior then refused to reimburse Randazza the $25,000 he had advanced for the retention of Hong Kong-based counsel in the Oron Litigation and his remaining pay.  To date, Excelsior continues to refuse to reimburse these employee-advanced litigation funds.  This theft has gone un-remedied.

26.    Plaintiffs claim that Randazza "spoliate[d] evidence" by erasing files from his laptop (SAC ¶ 65(d)), but they admit that all of their records were actually preserved on a separate server.  <u>See</u> SAC ¶ 65.  Additionally, Plaintiffs do not identify a single missing document that was not preserved in cloud storage.  The so-called "spoliation" alleged by the Plaintiffs was, instead, required by the Employment Agreement's "wall of separation" provision.  <u>See</u> Employment Agreement § 6(C).  Neither do Plaintiffs claim this was unusual, nor can they; it was a pattern and practice for the files to be stored on the firm's server and for computers to be wiped regularly, including upon an employee's separation.

27.    Moreover, although Randazza was employed by Excelsior, his representation of LMH was through his law firm, MJRPA.  In anticipation of termination, Randazza ensured that all MJRPA firm files, including those of unrelated clients, could not be accessed through his Excelsior computer, which would have to be returned.  Thus, Randazza wiped the computer to fulfill what he believed in good faith were his ethical obligations of preserving client confidentiality.

28.    In light of the dispute over whether he resigned, as well as his attempt to recover funds owing to him, Randazza initiated an arbitration proceeding against Excelsior, being JAMS No. 1260002283 (the "<u>Arbitration</u>") for amounts owed from Excelsior under the Employment

Agreement and state law, as well as for wrongful termination, and in the alternative, constructive discharge and retaliation.  On or about January 2, 2013, Excelsior served its answer and counterclaims in the Arbitration.  After Randazza filed his initial arbitration claims, LMH voluntarily entered the Arbitration too.  Neither LMH nor Gibson filed counterclaims against Randazza in the Arbitration.

29.    On December 9, 2012, MJRPA filed an action against LMH in the Eighth Judicial District Court, Clark County, Nevada, Case No. A-12-673275-C, therein alleging claims for monies due for legal services rendered in the Oron Litigation (the "Fee Litigation").  On March 13, 2013, MJRPA filed its amended complaint in the Fee Litigation, which asserted claims for breach of contract, unjust enrichment, and account stated.

30.    On March 28, 2013, LMH answered the amended complaint in the Fee Litigation, and filed a counterclaim against MJRPA alleging malpractice claims arising out its representation of LMH in the Oron Litigation.  The counterclaims brought by LMH in the Fee Litigation are related to the allegations they asserted in the Arbitration against the Debtor, and also now in the instant Adversary Proceeding.

31.    On June 3, 2015, the Arbitrator entered the IAA largely in favor of Excelsior and LMH.  Notably, however, nothing in the IAA showed that they had suffered any actual harm at all on account of their claims of liability.  The IAA awarded certain monetary damages in favor of Excelsior and/or LMH and against Randazza.  Id. pp. 23-25, ¶¶ 2-4, and 7.  Critically, however, the IAA was interim only because it left at least three (3) substantial matters unresolved and pending further proceedings.

32.    First, the IAA left open the possibility that the Arbitrator would award additional damages for the alleged spoliation and conversion of Excelsior and/or LMH's files and other data, with such additional amounts to be set forth in a further and/or amended arbitration award and/or in a final arbitration award.  Id. pp. 23-24, ¶ 2.  Such further arbitration proceedings would require additional briefing and the presentation of additional evidence and/or arguments, as well as additional fees and costs paid to the Arbitrator in order for a final decision to be rendered at some unknown, future date.  Moreover, those proceedings would have involved additional evidence and

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

argument that would have potentially modified the IAA upon entry of a <u>final</u> award.

33.    Second, the IAA ordered an accounting from MJRPA's client trust account, even though MJRPA was not party to the Arbitration.  <u>Id.</u> p. 25, ¶ 5.  Further, the IAA required that accounting to be performed by a third-party accountant and/or accounting firm approved by the Arbitrator and paid for by Randazza, which will undoubtedly be at significant additional cost, and also impose unknown delays on any final and complete resolution of the Arbitration.  Further, the Arbitrator had no power to enter such a ruling under the Employment Agreement.

34.    Third, the IAA also allowed Excelsior and/or LMH to establish through further arbitration proceedings the amount of attorneys' fees and costs it may be entitled to recover, if any, under the applicable Employment Agreement.  <u>Id.</u> p. 25, ¶ 8.  The costs sought by Excelsior and/or LMH in such further arbitration proceedings will undoubtedly include hundreds of thousands of dollars in fees and costs to be paid to the Arbitrator, which fees and costs will continue to accrue if the Arbitration were allowed to proceed.  Notably, however, this Court has already determined that such proceedings should not proceed in denying the Stay Relief Motion (as hereinafter defined).

35.    On June 15, 2015, Excelsior, LMH, and Gibson filed a motion (the "<u>Motion to Confirm</u>") in the Eighth Judicial District Court, Clark County, Nevada (the "<u>Nevada State Court</u>"), thereby commencing Case No. A-15-719901-C (the "<u>State Court Action</u>"), which sought to confirm the IAA and have formal judgment entered against Randazza.  Randazza opposed the Motion to Confirm and also sought to vacate or modify the IAA.  Randazza's opposition to the Motion to Confirm filed in the State Court Action asserted that there are substantial and significant disputes about the confirmability of the IAA and such award might otherwise be subject to modification, if not complete vacatur.  Additionally, Randazza's opposition asserted that the State Court Action was filed in the wrong jurisdiction, because any action to enforce any arbitration award arising from the Employment Agreement was contractually required to be venued in San Diego County, California.  <u>See</u> Employment Agreement § 9.E.

36.    Prior to the Nevada State Court hearing argument and ruling on the Motion to Confirm and/or Randazza's opposition and motion to vacate or modify, and obviously also prior

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

to the Arbitration proceeding any further beyond the IAA, Randazza filed his bankruptcy petition, thereby staying both proceedings.   Randazza filed for bankruptcy because of the foregoing practical concerns with how much was left to still do in the Nevada State Court and the Arbitration, as well as the associated costs, as well as in an attempt to achieve a more economical, unified and complete resolution of the disputes.

**B.    The IAA Cannot be Confirmed Where the Arbitrator Exceeded his Powers, Committed Manifest Errors, and Demonstrated Bias.**

  **1.    The IAA was Replete with Bias.**

    **a.    Physical Position Is Not An Indicium Of Credibility When The Arbitrator Directed Such Position.**

37.    The Arbitrator determined Randazza lacked credibility based upon his physical position. See IAA, pp. 6-7, n.4. Randazza was the only witness who was told prior to his testimony where to face, and the Arbitrator said that it was for no other reason than to ensure the court reporter and the Arbitrator properly heard him.   A true and correct copy of certain excerpts from the Arbitration proceeding is attached hereto as **Exhibit 1**, and in particular, see pp. 10:16-11:22. Yet, in the IAA, the Arbitrator interpreted Randazza's compliance with his order to be proof of his untrustworthiness.  There was no similar colloquy before any other witness testified.  See, e.g., Ex. 1, pp. 658-659 (testimony of Jason Gibson in Arbitration).

    **b.    The Arbitrator Expressly Bifurcated The Question Of Alter-Ego Liability But Disregarded His Own Order.**

38.    The Arbitrator dismissed Gibson as a party, finding that Randazza had failed to show Gibson was an alter ego of either Excelsior or LMH, and determined that neither Excelsior nor LMH were alter egos of anybody or entity.  See IAA at 2, n.1.  Randazza had specifically sought declaratory relief in Count 8 of his Amended Arbitration claim that Excelsior, LMH, and Gibson were alter egos of each other, to be held jointly and severally liable.  Attached hereto as **Exhibit 3** is a true and correct copy of Randazza's arbitration demand, and in particular, see pp. 34-37.  The Arbitrator omits from this footnote and the remainder of the IAA any reference to his earlier ruling of January 8, 2014.  A true and correct copy of the Arbitrator's January 8, 2014 order is attached hereto as **Exhibit 4**.  In that earlier ruling, the Arbitrator states that Randazza's "'alter

ego' contentions will be segmented from [his] claims for liability and damages and will be deferred to a later phase of the arbitration or will become moot." Id. p. 1. This order precluded even the taking of discovery from Gibson and the entities that would tend to have shown alter-ego status. Without notice to Randazza, the Arbitrator disregarded his own order, effectively pretending it did not exist. Randazza lacked the opportunity to take discovery or present evidence or argument on the question of alter ego. The issue was not bifurcated, per the Arbitrator's own order. And the Arbitrator failed to undertake any actual analysis or application of the facts to the law. Yet, the Arbitrator still made a determination without even having a proper record before him.

39.     Further, without even being presented the issue for adjudication, the Arbitrator in his interim award, at paragraphs 2, 4, & 5, treated non-parties MJRPA and Randazza Legal Group, PLLC, as Randazza's alter egos. MJRPA, a Florida entity, was the outside law firm representing LMH and other clients. Randazza Legal Group, PLLC did not begin operations until after Randazza's termination and could never have been liable. Yet, the cited paragraphs of the IAA would require one or both of these non-party law firms to disgorge legal fees for work performed in part by other lawyers, disgorge funds held in trust and certain disputed funds to Excelsior and/or LMH, and require one or both of their trust accounts to be audited. All litigation was conducted through the non-party law firm, MJRPA. See Ex. 1, p. 55:11-24. The Arbitrator determined the firms were Randazza's alter egos *sua sponte* and even though they were not parties to the arbitration.

**2.     Errors of Counsel Were Misattributed to Randazza.**

40.     In retaliation for Randazza having filed his arbitration claims, Gibson filed bar complaints against him in each of the five jurisdictions in which he was admitted. To properly preserve his sexual harassment claim, Randazza filed a complaint with the Nevada Equal Rights Commission & Equal Employment Opportunities Commission. A true and correct copy of Randazza's filing with the Nevada ERC and the federal EEOC is attached hereto as **Exhibit 5**. Randazza required different attorneys for each these proceedings. Notably, this matter included over 100,000 documents exchanged as part of discovery. See id. Ex. 1, p. 801:14-18. The Arbitrator stated that Randazza's attorneys made factual errors, where one or more attorneys

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

11

appear to have either not yet located or overlooked evidence.  <u>See</u> IAA, p. 6, n. 4, pp. 17-18.  The Arbitrator attributed these errors to Randazza personally, and then drew adverse credibility findings against Randazza for the errors of counsel.

> **3.**    **The Arbitrator Cannot Make an Adverse Credibility Finding Based on an Issue He Opted Not to Decide.**

41.    Due to office-desk pornography and back-seat fellatio incidents in which Randazza was targeted, separate and apart from the explicit nature of the industry, a sexual harassment and retaliatory termination claim was filed with the Nevada Equal Rights Commission and EEOC and made part of Randazza's arbitration claims.  <u>See</u> Ex. 5.  Excelsior, LMH, and Gibson denied the occurrence of the fellatio incident and denied that these events actually upset Randazza.  The Arbitrator found ultimately that Randazza resigned, thus he explicitly held that he was not resolving a conflict of evidence as to how or whether the incidents occurred and their effect on Randazza.  <u>See</u> IAA, p. 5.  Even though the Arbitrator expressly stated that the sexual incidents were not being decided, the Arbitrator states that Randazza's failure to prove his sexually-based allegations and reactions to them undermined his credibility.  <u>See</u> IAA p. 6, ¶ F.

**C.**    **The Arbitrator Made Gross Factual and Legal Errors.**

> **1.**    **The Arbitrator Made Improper Factual Findings.**

>> **a.**    **Randazza Did Not Resign.**

42.    The Arbitrator found that Randazza's August 29, 2012, e-mail constituted a resignation.  A true and correct copy of this e-mail is attached to the Randazza Declaration as **Exhibit 6**.  As set forth therein, Randazza stated to Gibson that it seemed appropriate that MJRPA withdraw as LMH's counsel.  <u>Id.</u>  Although there is no language about separation of employment with Excelsior, Excelsior treated it as a letter of resignation by Randazza individually.  As documented in this exhibit, immediately upon learning that Excelsior construed the e-mail as a resignation, Randazza disputed that characterization.  <u>Id.</u>; Ex. 1, pp. 206-207.

43.    Second, on August 21, 2012, Randazza advanced LMH $25,000 of his own funds at the behest of his employer, Excelsior.  <u>See</u> Ex. 1, pp. 832:25-833:15.  A true and correct copy of the promissory note evidencing these amounts is attached hereto as **Exhibit 7**.

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

44.     Third, the Arbitrator considered that the transfer of client files to MJRPA's cloud storage, and then erasing those on Excelsior's hardware, evidenced an intent to resign.  Instead, Randazza had prudently hoped for the best, but planned for the worst.  In fact, he was informed by Excelsior's Human Resources manager at the time that Gibson had met with laweyrs to terminate him, and that he should take steps such as that.

45.     Randazza expected to be fired and was required to ensure that other clients' files remained confidential, and he would not have been able to do so after termination.

### b.    There Was No "Bribe."

46.     The Arbitrator grounded his conclusions that Randazza breached fiduciary duties and committed malpractice on Randazza's alleged negotiation for a $75,000 "bribe."  As set forth above, in prior dealings with an opposing attorney, Gurvits, MJRPA had been presented with offers that, following the settlement, he would be retained by the opposing side.  This could create a conflict of interest for MJRPA should another party seek to engage it to pursue a similar claim against Gurvits' client.  Randazza testified that he participated in these conversations to increase available settlement funds.  See Ex. 1, pp. 242:16-243:2.  Randazza testified that he never intended to individually profit.  See id. p. 173:1-22.  No evidence was presented to the contrary.[2]  Neither was there any evidence that Randazza ultimately intended to consummate such a negotiation.[3]  Randazza had never previously consummated such a deal, despite it then being part of the negotiations as well.  See id. p. 397:7-10.

47.     In fact, the final language of the proposed agreement contained no language calling

---

[2] Randazza did express a concern that delivering the earmarked $75,000 to LMH might constitute improper fee sharing under NRPC 5.4, and he intended to adjust his employment bonus and firm's bill commensurately to avoid impropriety.  See Ex. 1, p. 421:1-15.  Typically, an attorney's fee is the property of the client.  Here, however, it was at most a potential legal fee to MJRPA for the representation of Oron, not an attorneys' fee award.  However, Randazza ultimately agreed that he would figure out a way to ensure the earmark would be remitted to LMH as part of the global settlement fund.  A true and correct copy of Randazza's e-mail to Gibson dated August 16, 2012 is attached hereto as **Exhibit 8**.

[3] The only expert as to California professional responsibility, Attorney Ellen Peck, testified that this was not improper.  See Ex. 1, pp. 1244:9-1245:6.  A true and correct copy of the Expert rebuttal report of Ellen Peck is attached hereto as **Exhibit 9**.  In particular, the Court should reference pp. 4-10 thereof.  This was also not improper in Nevada.  A true and correct copy of the expert rebuttal report of Joseph Garin is attached hereto as **Exhibit 10**.  In particular, the Court should reference p. 17 thereof.

for the retention of MJRPA or Randazza. A true and correct copy of the proposed agreement is attached hereto as **Exhibit 11**. Rather, the $75,000 at issue was to be released to Gurvits, who was under no obligation to retain MJRPA or Randazza. See id.

48. Prior practice further shows a lack of intent to individually profit. Following a settlement between LMH and TNAFlix, an infringer represented by Gurvits, Randazza continued the pretense of negotiating for MJRPA to represent TNAFlix. Id. at 377:20-25. Having kept up the pretense, Randazza was all the more credible in his negotiations with Gurvits in the Oron matter. The Arbitrator effectively agreed that Randazza never intended to obtain the actual $75,000 for himself against the interests of LMH. Instead, the Arbitrator concluded, correctly, that Randazza and Gurvits were bluffing. See IAA, p. 7, n.4.

## 2. The Arbitrator Made Improper Legal Determinations.

49. For general background of the legal issues presented in the Arbitration, a true and correct copy of Randazza's Opening Post-Hearing Brief is attached hereto as **Exhibit 12**.

### a. Randazza is Entitled to Unpaid Severance and Bonuses.

50. In his fourth claim, Randazza made claim for breach of contract relative to the aforementioned bonuses as well as for unpaid severance. See Ex. 3, pp. 23-24. Pursuant to Section 7(B) of the employment agreement, Randazza was entitled to twelve weeks of salary as a severance if terminated during his fourth year of employment. This severance, in the amount of $60,852, was not paid. There is no dispute he was not paid this amount nor the claimed bonuses.

51. First, the Arbitrator found that Randazza resigned, disqualifying him from the severance payment. Randazza did not resign nor did he have any intent to resign. Instead, Excelsior chose to deem MJRPA's withdrawal of representing LMH as Randazza's resignation.

52. The Arbitrator also found that the bonus should have been based on LMH's net recovery, subtracting litigation costs, rather than gross settlement. In correspondence between Excelsior and Randazza, however, it was determined that Excelsior would "pay all expenses/assume all risks." A true and correct copy of e-mail correspondence between Jason Gibson and Marc Randazza dated February 9, 2010, to February 15, 2010 is attached hereto as **Exhibit 14**. Were the bonus from net, Randazza would have been subsidizing expenses by 25%

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

14

and assuming part of the risk.

        **b.**    **The IAA to Excelsior is Improper.**

        **i.**    **Randazza Did Not Breach Fiduciary Duties.**

53.    The Arbitrator awarded Excelsior and LMH $275,000, plus prejudgment interest at 10% per annum, for the alleged breach of fiduciary duty arising from Randazza's negotiation for the additional $75,000 payment. Id. at 23. As discussed above, Randazza, through MJRPA, had obtained judicial enforcement of the $550,000 July 2012 settlement with Oron, and he was pursuing attorneys' fees and securing Oron's overseas assets. As part of an effort to resolve these outstanding issues, Gurvits appeared for Oron and began negotiating a separate fee for MJRPA to ensure that after the matter was resolved, Oron too might enjoy the firm's skills. The Arbitrator found that Randazza and Gurvits were bluffing. See IAA, p. 7 n.4 (stating that "except for admissions, anything which Randazza and his opposing counsel in the Oron litigation, Val Gurvitz, communicated to each other lacked credibility . . . .").

54.    Excelsior alleges that after it fired Randazza, Oron brought claims against LMH and a settlement was reached in that matter. The $275,000 figure represents the claimed reduction in the ultimate agreement between Oron and LMH, from the original $550,000 paid. Among other issues, at no point in the Oron Arbitration Demand did it make mention of the negotiation over the $75,000 retainer. A true and correct copy of the Oron Arbitration Demand is attached hereto as **Exhibit 15**.

55.    On August 15, 2013, Randazza requested production of "all communications related to the settlement of the Oron Litigation." Following the refusal to produce the communications evidencing the alleged revised settlement between LMH and Oron.com, Randazza moved to compel. The Arbitrator granted the motion subject to confidentiality considerations on March 31, 2014. A true and correct copy of the Arbitrator's order on the motion to compel is attached hereto as **Exhibit 16**, and in particular, the Court should reference pages 3-4. The Arbitrator confirmed the obligation to produce these communications again on August 28, 2014. A true and correct copy of the Arbitrator's August 28, 2014 order is attached hereto as **Exhibit 17**, and in particular, the Court should reference pages 1-2. Excelsior and LMH stipulated

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

to an order on November 3, 2014, that they would produce them. A true and correct copy of the stipulation and order regarding this discovery dispute is attached hereto as **Exhibit 18**, and in particular the Court should reference page 2. The Arbitrator again ordered production on January 16, 2015, of all e-mails from Oron's counsel. A true and correct copy of the foregoing order is attached hereto as **Exhibit 19**, and in particular, the Court should refer to pages 1-2. Despite these multiple orders, Excelsior and LMH never produced any such corroborating evidence of any funds delivered to Oron or any meaningful compliance with the alleged agreement.

56.    Excelsior and LMH never argued that the $75,000 negotiation was the reason LMH allegedly forfeited half of the $550,000 original settlement with Oron, tendering back $275,000. Instead, they claimed that Randazza provided material assistance to a third party (Datatech Enterprises, LLC) bringing a separate claim against Oron, in violation of paragraph 10 of the July 2012 settlement agreement. Paragraph 10 of that settlement agreement stated "Liberty will agree to dissuade others from bringing suit against Oron." Even if this were enforceable, Oron suffered no actual harm and could not have recovered damages from LMH. Randazza provided no material assistance to others that enabled third-party suits against Oron.

**ii.    Randazza Was Not Unjustly Enriched.**

57.    The Arbitrator ordered payment to Excelsior and LMH based on an unjust enrichment theory. See IAA, 23. It was ordered for two instances: (1) legal fees of $55,000 paid to MJRPA as a result of administrative fees for a receivership in a case involving an unrelated individual, Wayne Hoehn,[4] and (2) monies received by MJRPA, in the amount of $5,000, from James Grady, relative to expenses in the Oron Litigation -- which was actually MJRPA's to do with as he pleased on behalf of any fight against online piracy, not for the benefit of Excelsior or LMN. First, as noted by the Arbitrator, these amounts were not paid to Randazza personally, but rather to his non-party law firm, MJPRA. The Arbitration was solely brought by Randazza in his individual capacity, not on behalf of MJRPA, which was not a party nor ever found to be his alter

---

[4] The Arbitrator erroneously states the $60,000 figure is for the Hoehn representation, but then only awarded $60,000 for both instances. The Arbitration earlier correctly identified the Hoehn amount as $55,000. See IAA, p. 18.

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

ego.

58.    Pursuant to his contract, Randazza was permitted to represent third-parties through his non-party law firm, MJRPA.  See Employment Agreement § 6(C).  MJRPA successfully represented an individual named Wayne Hoehn against a company called Righthaven, arising from Mr. Hoehn's fair use of copyrighted materials.  Righthaven LLC v. Hoehn, 792 F. Supp. 2d 1138 (D. Nev. 2011), aff'd in part 716 F.3d 1166 (9th Cir. 2013).  Subsequently, on June 6, 2013, MJRPA was awarded $55,000 "for its administrative expenses."  Righthaven, LLC, v. Hoehn, No. 2:11-cv-00050 (D. Nev. Jun. 6, 2013).  The Arbitrator made no evaluation of the basis on which that fee was awarded, neither was any record made.  The public record, however, shows that of $34,045.50 awarded for the Hoehn matter alone.  Randazza's time represented but 15.02 hours over a six month period, totaling $6,773.50.  See Righthaven v. Hoehn, No. 2:11-cv-00050, Document 32-3 (D. Nev. Jul. 5, 2011) (timesheet).  The Hoehn distribution also included $3,815 earned by MJRPA in a separate matter of Righthaven v. Leon, No. 2:10-cv-01627 (D. Nev. Jul. 5, 2011), none of which was based on Randazza's time (per ECF 42-3 May 3, 2011 in that matter).  Finally, it included the $29,848.35 incurred in Righthaven v. Wolf, No. 1:11-cv-00830 (D. Colo.) of which Randazza's time was but 9.5 hours over a five month period (per ECF No. 59-3, Oct. 14, 2011).  Thus, MJRPA received $55,000 for nearly $65,000 in bills, where Randazza spent less than 24 hours of his own time working on the matter, between January and October 2011.  Randazza essentially worked on average less than three hours per month in his personal time, and did not do any of the work on the Righthaven matters during time when he should have been working for Excelsior.  He did not receive funds for the time intended for the benefit of Excelsior.

59.    The Arbitrator also awarded as unjust enrichment $5,000 received by MJRPA from Mr. James Grady.  See IAA, p. 23.  As found by the Arbitrator, Grady funded the Oron Litigation in the amount of $5,000.  Id. at 18.  Those funds were used for LMH's benefit.  Attached hereto as **Exhibit 20** is a true and correct copy of an RLG trust report reflecting the foregoing.

### iii.    Damages for Spoliation or Conversion Cannot be Allowed.

60.    The Arbitrator awarded Excelsior and/or LMH $3,215.98 in expert fees incurred, and he reserved his decision on damages for spoliation and/or conversion pending further evidence

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

of data destruction.  See IAA, pp. 23-24.

61.    Randazza, in his final days as an employee, removed non-Excelsior materials and then securely erased data from his work-issued laptop.  MJRPA preserved all LMH property as required.  Randazza never erased files from one computer that were not completely backed up to a secure cloud server.  He also did this prior to his separation, before there was any notice of dispute for which he was required to preserve data.  Randazza preserved the data in a manner that would ensure recovery for litigation.  Further, once the devices were to be returned to Excelsior, it was incumbent on Randazza to secure the third-party client confidential data.

62.    Having had the benefit of over 100,000 documents produced and the delivery of all of its files, Excelsior and LMH identified not a single missing document or category of documents belonging to them.  Their own experts even recovered 19,000 files transferred to the cloud storage system of MJRPA.  See Ex. 1, p. 987:7-15.  They only speculate, and the Arbitrator adopts, that documents might have been taken.  IAA, p. 17.  The Arbitrator knew that the identification of potentially missing documents was crucial to this claim, yet he ignored his own prior ruling on the subject.  See Ex. 17, p. 1.

63.    Randazza securely wiped the data and there was nothing he needed to retrieve that was not otherwise given by Randazza to them freely.  Further, as Randazza acknowledged, keeping non-Excelsior materials on the laptop and iPhone, delivery of that data to Excelsior could have resulted in the revelation of confidential non-party client information.

### iv.    Disgorgement of Wages Earned is Impermissible.

64.    The Arbitrator wrongly ordered Randazza to disgorge $197,000.00 of his earnings from his employment with Excelsior.  See IAA, p. 24.  The Arbitrator stated that it was for violations of fiduciary duty in his capacity as an attorney regarding his performance in the TNAFlix and MegaUpload litigation, representation of XVideos and/or XNXX, and "excessive, undisclosed, time" on other matters.  Id.

65.    Randazza was an employee of Excelsior, not outside counsel.

66.    Although evidence was introduced of Randazza's non-Excelsior and/or LMH time, Randazza testified that he worked long hours.  See Ex. 1, pp. 632:16-633:7.  At no point was he

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

critiqued or disciplined for not spending enough time on Excelsior matters. Id. pp. 675:21-676:15.

67.    Second, with respect to concurrent representation of XVideos and/or XNXX, while working for Excelsior, Randazza's third-party clients included XVideos and XNXX, sites that might facilitate the streaming of online videos.  Randazza determined that LMH could (much like Righthaven) find itself subject to sanctions if they sued an inappropriate litigation target.  See Ex. 1, pp. 734:10-737:11.  A true and correct copy of an e-mail communication from Randazza dated September 6, 2011 is attached hereto as **Exhibit 21**.  Moreover, subsequent to Randazza's departure, LMH never brought suit against them. See Ex. 1, p. 821:12-17.  The policies and choice Randazza instituted relative to XVideos and DMCA notices have not changed, with new counsel for LMH implicitly ratifying them. Id. pp. 837:15-838:21.  Moreover, the relationship was mutually beneficial, not in conflict with LMH's content having priority for DMCA takedowns. Id. pp. 628:20-629:6.

68.    Third, the Arbitrator found that Randazza's representation (through MJRPA) of LMH on matters involving TNAFlix and MegaUpload breached fiduciary duties. See IAA, p. 24. In negotiating settlements with TNAFlix and MegaUpload, Randazza was offered fees for legal services to be conflicted out of future third-party representation, none of which was consummated. Randazza settled both of those matters for $50,000 and $600,000 respectively.  See Ex. 1, pp. 731:17-732:3.  In the MegaUpload matter, Randazza was offered a $5,000 payment. Id. pp. 749:17-750:6. He, himself, derided it as a "bribe" which he did not accept.  In the TNAFlix matter, negotiating with Gurvits, Randazza was offered $5,000 and made a bluff demand of $30,000.  True and correct copies of e-mails regarding the foregoing are attached hereto as **Exhibit 22** and **Exhibit 23**.  None of these negotiations bore fruit or were intended to.  Excelsior itself suffered no harm, and LMH benefitted from the TNAFlix negotiation where Randazza subsequently appeared credible to Gurvits in the Oron Litigation.

### v.    Remittance of Trust Funds is Improper.

69.    As previously discussed, MJRPA represented LMH in litigation.  Funds were placed in the law firm's client funds trust account relative to expenses and recoveries in litigation. The Arbitrator orders Randazza to deliver to Excelsior and LMH certain funds held in this trust

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

account and pay 10% interest thereon, specifically, "all Oron related funds and, further, an additional $30,000 of non-Oron-related client funds." IAA, pp. 24-25.[5]

70.    As set forth in the disbursement breakdown, of the original $550,000.00 Oron settlement received, Randazza was owed his 25% commission of $137,500.00, plus an additional $25,000.00 for the loan. A true and correct copy of an e-mail reflecting the foregoing is attached hereto as **Exhibit 24**. As counsel, MJRPA was also required to disburse $31,800.00 in litigation costs to third parties. Id. Additionally, LMH owed MJRPA $21,279.50 for the services of professionals other than Randazza in the Oron Litigation.[6] Id. Finally, LMH owed MJRPA $2,601.00 for non-Oron matters.

### vi.    No Audit of MJRPA's Trust Account Is Permissible.

71.    The Arbitrator ordered an accounting of non-party MJRPA's client funds trust account. See IAA, p. 25. Excelsior never requested an accounting as part of its counterclaim. A true and correct copy of Excelsior's Arbitration Answer and Counterclaim is attached hereto as **Exhibit 25**. Since the issuance of the IAA, all matters respecting MJRPA and its trust account has been settled and released. Finally, an audit of the account would necessarily reveal the identities of other clients of the non-party law firms, revealing the fact of representation, which may be confidential, and disclosing monies that may be subject to confidentiality agreements or otherwise reveal client financial arrangements.

### vii.    Randazza Cannot Return a Non-Existent Laptop.

72.    The IAA requires Randazza to return an unidentified laptop computer that all parties know does not exist. See IAA, p. 25 (Section 6). There is no manufacturer, model, serial number, or MAC address entered into evidence or referenced by the Arbitrator that would permit Randazza to identify the computer and comply. Excelsior did not make a claim for the return of a

---

[5] It was claimed that it was $275,000

[6] Judge Navarro determined that the actual value of Randazza Legal Group's services, including Randazza's, was $131,797.50. Liberty Media Holdings, LLC v. FF Magnat Ltd., Case No. 2:12-cv-01057 (D. Nev. Sept. 4, 2012). Subtracting out Randazza's labors, for which compensation is due under the employment contract, RLG is actually entitled to $81,433.98.

computer in its counterclaim.  See Ex. 25.  Finally, Randazza agreed to return all computers in any event.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

/s/ Marc J. Randazza
MARC J. RANDAZZA

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169