# EXHIBIT "11"

EXHIBIT "11"

## SETTLEMENT AGREEMENT

THIS AGREEMENT is made between, on the one hand, FF Magnat Limited, a Hong Kong corporation with its principle place of business at _____ Hong Kong (hereinafter, referred to as, "Oron"), and on the other hand, Liberty Media Holdings, LLC a/k/a Corbin Fisher with a principal place of business at 4262 Blue Diamond Rd., Suite 102-377, Las Vegas, NV 89141 (hereinafter collectively referred to as "Liberty").

WHEREAS, Liberty has alleged copyright infringement against Oron;

WHEREAS, Oron denies such copyright infringement;

WHEREAS, Liberty has filed litigation in the Federal District Court for the District of Nevada in the United States, Docket No.2:12-cv-01057-GMN-RJJ (the "Nevada Lawsuit");

WHEREAS, Liberty has filed litigation in Hong Kong (including obtaining an injunction), case # HCPM 1275 /2012 (the "Hong Kong Lawsuit");

WHEREAS, the Court in Nevada ruled in favor of Liberty on certain issues of the Nevada Lawsuit and Oron plans to appeal said rulings;

WHEREAS, the parties wish to settle their disputes without further litigation.

NOW THEREFORE, in consideration of the mutual promises contained herein, and for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## I. MONETARY TERMS (ALL AMOUNTS IN US DOLLARS) AND JOINT OBLIGATIONS

1. Oron shall pay Liberty six hundred thousand dollars ($600,000.00) (the "Settlement Funds"). The Settlement Funds will be paid as follows: the parties will stipulate that $600,000 US Dollars of the frozen funds in Oron's PayPal account will be transferred as soon as possible to the Randazza Legal Group's client trust account to be held in trust and released only in strict accordance with the terms hereof (the "Escrowed Funds"). In addition, $75,000 of Oron's PayPal funds will be transferred immediately to the client trust account of Boston Law Group, PC. Randazza Legal Group shall not disburse the Escrowed Funds to Liberty until the occurrence of all of the following conditions (the completion of (a), (b), (c) and (d) below shall be referenced herein as the "Dispersal Contingency"):

    a. this settlement becomes final, including the exchange of signed copies of the agreement;

    b. Liberty complies with the terms set forth in all sections in Article II (LIBERTY'S

*[handwritten margin notes: "#6754", "1254 after", "for CF", "WHO GETS THIS?"]*



NON-MONETARY OBLIGATIONS) hereof;

c. all of Oron's funds, worldwide (including without limitation in the US and in Hong Kong as well as the accounts set forth in Attachment A herein, collectively the "Oron Accounts") are no longer frozen and have all been dispersed to a bank account of Oron's designation (it being understood and agreed that Oron may, at its sole discretion, direct some of these funds to be transferred to its bank account in Hong Kong and then from that account to another account of its designation);

d. no new lawsuits, motions or injunctions are filed against Oron before subsections (a) through (c) above are fulfilled in their entirety; and

e. the Parties agree that any delay to disbarment under paragraph 1(c) or other lawsuits under paragraph 1(d) that are filed completely independently of Liberty or Randazza Legal Group's involvement shall not affect this Agreement. For example, Flavaworks has filed a case against Oron in Illinois, and neither Liberty nor Randazza Legal Group have any involvement in that case, and nothing that happens with regards to that case shall affect this agreement.

Upon the completion of the Dispersal Contingency in its entirety, the Escrowed Funds shall become the property of Liberty and Randazza Legal Group shall pay the Settlement Funds to Liberty.

If Randazza Legal Group transfers any of the Escrowed Funds to anyone at all before the Dispersal Contingency is complete in its entirety (other than pursuant to a court order or a written agreement of Oron and Liberty) Randazza Legal Group and Attorney Marc Randazza shall be jointly and severally personally liable to Oron for the Escrowed Funds plus a 10% liquidated damages fee. If Oron unreasonably delays the transfer of funds, or more than fourteen (14) days passes, without all contingencies occurring, then the $600,000 shall become Liberty's property immediately, and no further delay in disbursement shall occur.

2. Each party shall cooperate with the other, use best efforts, file all such motions, and take all such actions as are necessary in order to release all funds in all Oron Accounts and enable Oron to transfer all funds from all Oron Accounts to a bank account of Oron's designation and to ensure the occurrence of all other provisions of the Dispersal Contingency.

3. Upon receipt of the Escrowed Funds by Randazza Legal Group, the parties shall file a joint motion under seal with the Nevada Court requesting all remaining money in the Paypal account be wired to an account of Oron's designation and requesting that the court order all other Oron funds to be released in accordance with Oron's wishes (it being understood and agreed that Oron shall first direct these funds to be delivered to its account in Hong Kong and then from that account to another account of its choosing – Oron shall not be required to disclose the details of its final target bank account to Liberty or to any other party.

Deleted: , and
Deleted: .
Deleted: other than Oron
Deleted: In the event that despite Oron's reasonable efforts, the Dispersal Contingency does not occur within thirty (30) days from the date hereof, Randazza Legal Group shall return the Escrowed Funds to Oron upon Oron's written request
Deleted: 1
Deleted: s
Deleted: designation

CONFIDENTIAL        EMC000161

## II. LIBERTY'S NON-MONETARY OBLIGATIONS

4. Liberty warrants and affirms that it shall not act on the Execution obtained in the Nevada Lawsuit at any time after the date hereof;

5. Upon the occurrence of the Dispersal Contingency, Liberty shall, within 24 hours, report the Execution as satisfied in full to the Nevada Court.

6. Upon receipt of the Escrowed Funds by Randazza Legal Group as indicated above, Liberty shall dismiss the Hong Kong Lawsuit within 48 hours (including lifting the injunction), with prejudice, against all Defendants to the action and without claiming any legal fees or any other amounts. Liberty will also affirmatively report to the Hong Kong court that it is not seeking any legal fees from Oron.

7. Upon receipt of the Escrowed Funds by Randazza Legal Group as indicated above, the Nevada Lawsuit will be dismissed against Maxim Bochenko aka Roman Romanov within 24 hours, with prejudice and all motions (including without limitation Liberty's Motion for Legal Fees) shall be withdrawn. However, this shall only occur if Maxim Bochenko signs this agreement and agrees to be bound by all of its terms.

8. Liberty agrees to privately arbitrate any future disputes with the parties to this Agreement and/or to the parties to the Nevada Lawsuit and/or the parties to the Hong Kong Lawsuit, based on facts that occur after the date of this agreement. If there is arbitration, no in-person hearings for the parties shall be required, but they shall be permitted. The parties agree that the Arbitrators shall have injunctive powers equivalent with that of a Federal Judge including, but not limited to the power to grant equitable relief. Any party may attend arbitration telephonically if they wish, and/or arbitration is not required to take place in the United States. For example, the parties may arbitrate through WIPO or ICC in Stockholm, or any other arbitration forum to which the parties may mutually agree. If the Parties cannot agree on a arbitral forum, then the aggrieved party may bring a central claim in Las Vegas, Nevada.

9. Liberty will actively dissuade others from bringing suit against Oron and the parties to the Nevada and Hong Kong lawsuits.

10. Liberty will actively assist Oron in sending letters written by Oron, and doing everything else necessary, to convince Paypal and other payment processors to allow Oron to accept payments through their service. No dishonest statements will be required. In the event that Liberty cannot, in good faith, make a helpful statement (due to a belief that it would require a dishonest statement), then Liberty agrees to make no comment whatsoever. The content of the letter is attached as Exhibit B.

11. Liberty shall announce publically that, after a careful review of the facts, they believe Oron is protected by the DMCA safe harbor and that neither it nor its agents ever physically viewed or downloaded child pornography from the site.

[Handwritten margin note: "WILL HE SIGN?"]

3

12. The parties will craft a joint letter for publications stating that the parties are joining together in the fight against child porn and copyright infringement. This letter will include a statement that Oron is modifying its business practices, with Liberty's help, to embark on a campaign to run a profitable cyber locker without piracy. The content of the letter is attached as Exhibit C.

## III. ORON'S NON-MONETARY OBLIGATIONS:

13. Within 24 hours of the Settlement Contingency, the filing of the Execution as Satisfied and the Dismissal of the Hong Kong and Nevada Lawsuits along with all pending motions, Oron shall withdraw any Notice of Appeal in the Nevada Lawsuit, and will waive any motions, appeals, claims, or any other process that it may have, known or unknown, as will Bochenko.

14. Oron will take both strong and bold measures to keep Liberty Media content off of its servers, and Bochenko will do the same with regards to his websites and businesses.

15. Oron will assist Liberty in the identification and civil prosecution of any parties who have been using Oron to distribute Liberty's copyrighted material, including but not limited to, full disclosure of IP addresses, banking information, emails and any other information that may assist in Liberty in such prosecution (Client Identification). This will not include Oron paying any legal costs for such prosecution however; it may require Oron to sign statements authenticating the information. Liberty shall keep confidential the fact that Oron is providing Client Identification and if such information must be used in a court case then shall both provide a subpoena to Oron for each piece of such information, shall endeavor to only use such information under seal and if such information must be filed publically shall provide Oron with reasonable notice of this fact. The subpoena requirement may be met with a DMCA subpoena, or a state court subpoena issued in a bill of pure discovery, or other similar pre-suit subpoena procedure, and Oron agrees that it will not contests the validity of any such subpoena, or its applicability to Oron.

16. Liberty will have unfettered access to takedown / delete any of Liberty's material that are being distributed through Oron.com, through Oron.com's online access so long as Liberty reasonably believes the content is infringing content owned by Liberty. Liberty may delegate this function to a third-party takedown services (3P). Liberty acknowledges that any such takedowns will automatically include an email notice to the account holder's email telling them that the material has been taken down through the auspices of a DMCA takedown notice filed by Liberty, providing a copy of the DMCA takedown notice including Liberty's contact information. If the takedown is done through a 3P then said 3P must follow the same terms as if they were Liberty.

17. Any payment due to anyone who has been distributing Liberty materials will be frozen, and an accounting thereof will be provided to Liberty. Oron agrees to hold such funds in escrow and to pay them to Liberty if Liberty secures a judgment or settlement from these parties.

4

18. Oron will permanently ban, by email address, PayPal account, IP address or any other reasonable and robust metric, any user who is the subject of even a single Liberty Media takedown notice. Any user account that has a takedown by Liberty will automatically be banned by these terms. Liberty agrees not to abuse this unfettered access.

## IV. GENERAL TERMS

19. <u>By Liberty.</u> Upon receipt by Liberty of the Settlement Payment and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Liberty releases and forever discharges Oron, Maxim Bochenko a/k/a Roman Romanov, and each of their past and present subsidiaries, parent corporations, and each of their respective officers, directors, shareholders, attorneys, agents, employees, contractors, and assigns (collectively, the "Oron Releasees") from any and all debts, claims, demands, actions, causes of action, controversies, attorney's fees, omissions, damages, and liabilities of every description, at law or in equity, whether known or unknown, that Liberty had, now has, or may have against the Oron Releasees, including, without implied limitation, all claims which were raised or could have been raised in the Nevada Lawsuit or the Hong Kong Lawsuit. For that reason, Liberty hereby waives any and all rights or benefits, which it may have under the terms of any applicable statute or case law.



20. <u>By Oron.</u> Upon receipt by Liberty of the Settlement Payment and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Oron and all of its directors, employees, and agents, releases and forever discharges Liberty, and each of its past and present subsidiaries, parent corporations, and each of their respective officers, directors, shareholders, attorneys, agents, employees, contractors, and assigns (collectively, the "Liberty Releasees") from any and all debts, claims, demands, actions, causes of action, controversies, attorney's fees, omissions, damages, and liabilities of every description, at law or in equity, whether known or unknown, that Oron had, now has, or may have against the Liberty Releasees, including, without implied limitation, all claims which were raised or could have been raised in the Nevada Lawsuit or the Hong Kong Lawsuit. For that reason, Oron hereby waives any and all rights or benefits, which it may have under the terms of any applicable statute or case law.

21. By Bochenko. Upon receipt by Liberty of the Settlement Payment and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Bochenko releases and forever discharges Liberty, and each of its past and present subsidiaries, parent corporations, and each of their respective officers, directors, shareholders, attorneys, agents, employees, contractors, and assigns (collectively, the "Liberty Releasees") from any and all debts, claims, demands, actions, causes of action, controversies, attorney's fees, omissions, damages, and liabilities of every description, at law or in equity, whether known or unknown, that Bochenko had, now has, or may have against the Liberty Releasees, including, without implied limitation, all claims which were raised or could have been raised in the Nevada Lawsuit or the Hong Kong Lawsuit. For that reason, Bochenko hereby waives any and all rights or benefits, which it may

CONFIDENTIAL          EMC000164

have under the terms of any applicable statute or case law.

## V. GENERAL TERMS

22. The terms of this Agreement shall be confidential and shall not be disclosed to any third party, except (a) Oron may disclose the terms of this Agreement relating to withdrawing lawsuits and releasing funds (Sections 2, 3, 4, 6 and 7) and (b) as required by law, court, or government agency regulation and in such event under a suitable protective order protecting this agreement from disclosure to the extent available in accordance with the laws of the pertinent country. Both parties shall take reasonable measures to maintain the confidentiality of the terms of this Agreement. Oron may indicate publically that it is implementing new anti-piracy measures (to Oron's benefit in order to dissuade other suits). Liberty may announce that it is instructing and assisting Oron with such measures.

23. Arbitration of all disputes arising after date of this Agreement. All arbitrations may be done telephonically by one or both parties. This Agreement shall be governed by the laws of Nevada without respect to the local conflict of laws provisions thereof. Nevada Law applies to future arbitration disputes, but both parties stipulate that this is not a "contact" with the United States and although Nevada law applies to the agreement, nothing herein shall be deemed to bring Oron into the US for purposes of Jurisdiction or otherwise. Nevertheless, any arbitral award may be enforced in Nevada, and the Parties stipulate that the Courts in Nevada shall have jurisdiction over them for the sole purposed of the enforcement of arbitral awards.

24. This Agreement shall be binding upon the parties hereto, their successors or assigns, and upon any and all others acting by or through them or in privity with them, or under their direction.

25. No representation or warranties have been made by either party to the other, or by anyone else, except as expressly set forth in this Agreement, and this Agreement is not being executed in reliance on any representation or warranty other than those expressly set forth herein.

26. In the event that any provision of this Agreement or the application of any provision of this Agreement is held by a tribunal of competent jurisdiction to be contrary to law, the remaining provisions of this Agreement shall remain in full force and effect, and this Agreement shall be interpreted as if such invalid provisions were omitted.

27. This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof, and supersedes all prior negotiations or agreements, whether written or oral, relating to such subject matter (specifically including the alleged agreement enforced by the Nevada Court). This Agreement may not be altered, amended, modified or otherwise changed except by an instrument in writing duly executed by authorized representatives of each of the parties hereto.

28. In the event that any party must take legal or arbitral action to enforce the terms of this

CONFIDENTIAL

EMC000165

Agreement, the prevailing party shall be entitled to its legal costs and expenses (including reasonable attorneys' fees) in addition to any other damages

29. This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which together should constitute one and the same agreement.

30. In the event that Maxim Bochenko does not sign this Agreement, then he receives no benefits hereunder, and Liberty shall be free to bring any claims whatsoever against Bochenko in any forum. However, if Bochenko does sign, then he shall be bound by any terms that also bound Oron.

IN WITNESS OF their understanding and agreement, the parties have executed this Agreement by signature of a duly authorized officer on the date set forth below.

**ACCEPTED AND AGREED TO:**

FF Magnat Limited

Date: _____   Signature:_____

Liberty Media Holdings, LLC

Date: _____   Signature:_____

Maxim Bochenko a/k/a Roman Romanov

Date: _____   Signature:_____

Randazza Legal Group and Attorney Marc Randazza personally
(with respect to the trust obligations in Section 1 only)

Date: _____   Signature:_____
                              Marc Randazza, Esq.

7

**Attachment A**
**Oron Accounts**

1. PayPal (paypal.com)
2. PaymentWall (http://www.paymentwall.com/)
3. MicroPayment (https://www.micropayment.ch/)
4. CCBill (http://www.ccbill.com/) may have a negative balance even but I guess that doesn't really matter.
5. Payza, ex AlertPay (https://www.payza.com/)
6. PaySpace (payspace.lv)
7. AcquiroPay (http://acquiropay.com/)
8. DaoPay (http://www.daopay.com/)
9. HSBC Hong Kong Bank

8

CONFIDENTIAL

EMC000167