James D. Greene, Esq., NV Bar No. 2647          E-filed on: *April 7, 2017*
**GREENE INFUSO, LLP**
3030 South Jones Boulevard, Suite 101
Las Vegas, Nevada 89146
Ph: (702) 570-6000
Fax: (702) 463-8401
E-mail: jgreene@greeneinfusolaw.com

Attorney for Plaintiffs

# UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF NEVADA

|  |  |
|---|---|
| In re: | Case No BK-15-14956-ABL |
| MARC JOHN RANDAZZA, | Chapter 11 |
| Debtor. | |
| —————————————————— | Adversary Proceeding No. 15-01193-ABL |
| EXCELSIOR MEDIA CORP., a Nevada Corporation; and LIBERTY MEDIA HOLDINGS, LLC, a Nevada Limited Company, | |
| Plaintiffs, | **REPLY IN SUPPORT OF MOTION FOR ORDER CONFIRMING INTERIM ARBITRATION AWARD** |
| V. | |
| MARC JOHN RANDAZZA, an individual, | **Hearing Date: April 18, 2017** |
| Defendant. | **Hearing Time: 1:30 p.m.** |
| —————————————————— | |
| AND RELATED COUNTERCLAIMS. | |

**GREENE INFUSO, LLP**
3030 South Jones Boulevard Suite 101
Las Vegas, Nevada 89146
(702) 570-6000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

TABLE OF CONTENTS

PAGE

I.     INTRODUCTION ................................................................................1

II.    THE "FACTUAL" ALLEGATIONS SET FORTH IN RANDAZZA'S

       OPPOSITION AND DECLARATION SHOULD NOT BE ACCEPTED AS

       TRUE. ..................................................................................................2

III.   RESPONSE TO RANDAZZA'S LEGAL ARGUMENTS....................................2

       A.    The Motion To Confirm Merely Seeks Confirmation Of a Final

             Arbitration Award Which Is Warranted Under State And Federal Law And

             Best Serves To Preserve The Bankruptcy Estate. ........................................2

             1.    Confirmation of the IAA is Irrelevant to Whether or  not Liberty

                   Filed a Timely Claim. .....................................................................2

             2.    The Dismissal of One Cause of Action in the Adversary

                   Proceeding is Irrelevant to Whether or not the IAA should be

                   Confirmed. ......................................................................................6

             3.    The Court's Decision to Deny a Lift in the Stay Order is Irrelevant

                   to the Issue of Whether or not the IAA Should be Confirmed. .......6

       B.    Confirmation Of The IAA Is Warranted Both With Respect To The

             Federal Arbitration Act ("FAA"), State Law, And The Terms Of The

             Parties' Agreement To Arbitrate...................................................................6

             1.    It is Appropriate to Confirm the IAA Pursuant to NRS § 38.239

                   and Pursuant to the Contractual Terms of the Agreement to

                   Arbitrate. ........................................................................................7

TABLE OF CONTENTS
(CONTINUED)

i.      The IAA should be confirmed with respect to Randazza's Claims. ...............................................................................9

ii.      The IAA should be confirmed with respect to Excelsior's counterclaims. ................................................................10

    a.)      The future determination of the amount of the monetary award related to Randazza's spoliation and conversion. .....................................................10

    b.)  The audit of Randazza's attorney trust account........13

    c.)  The award of fees and costs. ....................................14

2.      It is appropriate to confirm the IAA pursuant to the FAA.............15

i.      The IAA is a final order subject to confirmation or because the parties contractually agreed to judgment being entered on any arbitration award, the IAA is subject to confirmation under the FAA....................................................................15

ii.      Alternatively, confirmation should be granted because this is the type of extreme case where confirmation is warranted..........................................................................16

iii.      Confirmation of the IAA was timely sought and this Court has jurisdiction to confirm the IAA. ................................17

C.      Randazza Fails To Establish That Confirmation Of The IAA Should Be Denied Because The Arbitrator Was Biased, Engaged In Misconduct Or Exceeded His Authority. ..........................................................................18

ii.

TABLE OF CONTENTS
(CONTINUED)

1.    This Court's review of the IAA is limited. ....................................19

2. The Arbitrator Was Not Biased Against Randazza ............................20

    i.    The Arbitrator Simply Resolved An Issue Regarding Randazza's Credibility Regarding Randazza's Physical Positioning During Cross-examination............................21

    ii.    The Arbitrator Did Not Refuse to Contemplate that Randazza Could Ever Be a Target of Harassment.............23

    iii.    The Arbitrator Did Not Improperly Rule on the Issue of Alter Ego After Bifurcating that Issue. .............................23

3. The Arbitrator Did Not Exceed His Powers. .......................................24

    i.    The Arbitrator Did Not Exceed His Powers By Ordering An Accounting. .................................................................25

    ii.    Errors of Counsel Were not Attributed to Randazza – Randazza Was Recognized To Be Responsible for Making Misrepresentations In Multiple Forums............................26

    iii.    The Arbitrator Did not Make An Adverse Credibility Finding Based on an Issue He Opted Not to Decide. ........28

4.  The Arbitrator did not Manifestly Ignore the Law ............................31

    i.    The Arbitrator's determination that Randazza resigned was supported by substantial evidence. ....................................32

ii.     The Arbitrator's finding that Randazza negotiated for a
        $75,000 "bribe" to conflict him out of being adverse to
        Liberty's adversary in the future was not arbitrary and
        capricious. ........................................................................34

5.   The Arbitrator did not make improper legal determinations in
     manifest disregard of the law.........................................................37

6.   Randazza Fails To Establish That Confirmation Of The IAA With
     Respect To Excelsior's Counterclaims Is Not Warranted. ............46

     i.     The Arbtirator did not exceed his authority by issuing
            awards against Randazza personally..................................46

     ii.    The Arbitrator Did not manifestly disregard the law in
            finding Randazza Breached his fiduciary duties and
            committed legal malpractice. .............................................47

     iii.   The Arbitrator Did Not Err In His Unjust Enrichment
            Determination ...................................................................50

     iv.    Randazza Has Not Shown Reason Why the Arbitrator's
            Ruling with respect to Conversion/Spoliation Should not be
            Confirmed. ........................................................................52

     v.     Randazza's Disagreement with the Arbitrator's decisions
            that disgorgement is a permissible remedy for his breaching
            his fiduciary duties is not a permissible basis to withhold
            confirmation of the IAA....................................................54

TABLE OF CONTENTS
(CONTINUED)

PAGE

vi.     Remittance of the Trust Funds and the Ordered Accounting

        Was Appropriate. ...............................................................57

vii.    Return of Company Issued Laptop ...................................59

IV.   CONCLUSION.........................................................................................60

Plaintiffs Excelsior Media Corp. ("Excelsior") and Liberty Media Holdings, LLC ("Liberty" or "Liberty") and, together with Excelsior, "Plaintiffs"), by and through their undersigned counsel, James D. Greene, Esq., of Greene Infuso, LLP, hereby file its Reply in support of its Motion for an Order Confirming the Interim Arbitration.

DATED this __ day of April, 2017

GREENE INFUSO, LLP
  /s/ James D. Greene
James D. Greene, Esq.
Nevada Bar No. 2647
3030 South Jones Boulevard, Suite 101
Las Vegas, Nevada 89146

# I.    INTRODUCTION

Regardless of which law is applied, federal or state (including Nevada or California law), Debtor Defendant Marc J. Randazza ("Randazza") has not identified a meritorious basis to withhold confirmation of the IAA.  Randazza has also not established any permissible basis to vacate the IAA, either in whole or in part.  Notwithstanding the limited and specific action the Arbitrator intended to take subsequent to the Interim Arbitration Award ("IAA") the IAA is confirmable under both state and federal law.  The IAA completely resolved all of Randazza's claims asserted against Excelsior and Liberty by ruling entirely in favor of Excelsior and Liberty.  The IAA further finally resolved all factual and legal issues related to Excelsior's counterclaims against Randazza in favor of Excelsior, awarded both monetary and equitable relief to Excelsior, and left only two final, isolated monetary awards to be determined.  The parties spent years on the arbitration, hundreds of thousands of dollars, and a week-long evidentiary hearing complete with testimony of no less than four experts to have the matter ruled on by an esteemed former federal court judge and Harvard Law graduate that was selected by the parties.  Plaintiffs seek confirmation of the IAA to establish their claim.  It will be up to this Court to ultimately determine what impact, if any, a confirmed IAA has on the dischargeability proceeding.  The IAA is deserving of confirmation and Randazza should not be permitted to squander the bankruptcy estate so that he can have a do-over because he is unhappy with the result of the arbitration.

GREENE INFUSO, LLP
3030 South Jones Boulevard, Suite 101
Las Vegas, Nevada 89146
(702) 570-6000

## II. THE "FACTUAL" ALLEGATIONS SET FORTH IN RANDAZZA'S OPPOSITION AND DECLARATION SHOULD NOT BE ACCEPTED AS TRUE.

Notably, the vast majority of factual allegations set forth in section "II. Factual And Procedural Background" of Randazza's Opposition are entirely devoid of evidentiary support. Only two emails and the Employment Agreement are cited as evidentiary support notwithstanding the availability of five volumes of arbitration testimony and hundreds of arbitration exhibits. This is not a motion to dismiss where well-pleaded factual allegations in a complaint are accepted as true. This is a motion to confirm an arbitration award where there is a complete body of testimonial and documentary exhibits to draw upon. Randazza's unsupported factual allegations (many of which, as set forth below, actually contradict his sworn testimony) should be disregarded.

Likewise, the Declaration of Marc John Randazza in Support of Opposition to Motion for Order Confirming Interim Arbitration Award (ECF No. 138) was filed three weeks after Randazza's Opposition, is undated and is untimely. To the extent the Court, nonetheless, chooses to consider Randazza's declaration, it, too, consists almost entirely of unsupported "facts" and legal arguments parading as "facts" that should also be disregarded.

## III. RESPONSE TO RANDAZZA'S LEGAL ARGUMENTS

### A. The Motion To Confirm Merely Seeks Confirmation Of A Final Arbitration Award Which Is Warranted Under State And Federal Law And Best Serves To Preserve The Bankruptcy Estate.

#### 1. Confirmation of the IAA is Irrelevant to Whether or not Liberty Filed a Timely Claim.

Randazza's Opposition includes an argument that Liberty did not timely file a proof of claim. That argument not only lacks merit, but is irrelevant to the subject motion. The proof of claim filed by Plaintiffs identifies Excelsior as the "current creditor". Pursuant to the proof of claim form, this is "the person or entity to be paid for this claim". *See* Claim 8-1 on Court Claims Register. The proof of claim also lists Liberty as another name "the creditor used with the debtor". The proof of claim on its face therefore clearly evidences the intent of both Excelsior and Liberty to assert a claim and merely specifies that Excelsior is the party to receive payments.

GREENE INFUSO, LLP
3030 South Jones Boulevard Suite 101
Las Vegas, Nevada 89146
(702) 570-6000

2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GREENE INFUSO, LLP
3030 South Jones Boulevard Suite 101
Las Vegas, Nevada 89146
(702) 570-6000

Even if the Court accepts Randazza's tortured analysis of Plaintiffs' proof of claim, Liberty should be deemed to have filed an informal proof of claim.  First, the proof of claim specifically refers to Liberty as well as Excelsior, evidencing the intent of both entities to assert a claim against Randazza's estate.  Second, the claim is supported by the IAA, which awards damages to both Excelsior and Liberty.  Finally, Plaintiffs' filing of their motion for relief from stay (ECF No. 60) and their complaint in this adversary proceeding, both of which clearly identify Liberty as a moving party and a plaintiff, respectively, further evidences the intent of both parties to assert a claim.  The filing of a dischargeability complaint alone has been held to constitute an informal proof of claim. *See In re Nikoloutsos*, 199 F. 3d 233, 236 (5th Cir. 2000).  Given all of those factors, Liberty should be deemed to have filed an informal claim if the Court agrees with Randazza's flawed analysis of the timely-filed proof of claim.

As a related matter, the distinction Randazza is trying to draw for the Court to support this and other arguments – that his work for Liberty was not part of his duties as General Counsel for Excelsior -- is entirely inconsistent with and directly contradicted by his prior sworn testimony.  In an attempt to avoid confirmation of the IAA, Randazza represents to this Court that his work for Liberty was not part of his duties as General Counselor of Excelsior but was part of a separate, outside law practice he was permitted to maintain.[1]  Randazza represents to this Court in his declaration:

> 3.      On or about June 10, 2009, Excelsior hired Randazza as its General Counsel as set forth in the Employment Agreement.  The Employment Agreement makes no mention of Randazza representing LMH or the brand name/website "Corbin Fisher."

> 4.      While serving as general counsel, Randazza was contractually permitted to practice law on behalf of other clients through a law firm, Marc J. Randazza P.A. d/b/a/ Randazza Legal Group ("MJRPA").  See Employment Agreement § 6(c).  This outside law practice worked to Excelsior's benefit.  For example, in the litigation described in SAC ¶ 49, Randazza represented LMH, through his law firm, MJRPA, rather than through his job with Excelsior.  Gibson is also LMH's managing member.

---

[1] For example, in order to try and establish error in the IAA, Randazza claims the Arbitrator erred by holding him responsible for $5,000 given to him by an individual named James Grady to help fund the Oron lawsuit because he filed that lawsuit in the name of himself and his law firm rather than under the banner of General Counsel of Excelsior. Randazza claims:  "As Excelsior was not a party to the suit and Randazza's law firm, MJRPA, represented LMH, it is clear that Randazza received the funds on behalf of MJRPA, a non-party to this litigation."  **ECF No. 125, Randazza's Opposition to Motion for Order Confirming Interim Arbitration Award at page 6, para. 15.**

**ECF No. 138 at page 2, ¶¶ 3-4.** In direct contrast, Randazza gave this sworn testimony regarding litigating for Liberty on direct examination at the arbitration:

> Q.      ...When did you start under this contract working for Excelsior?
> A.      Oh, I'm sorry. That would have been, I think – I think July; June or July of 2009.
> Q.      Now, I asked you working for Excelsior. Was the legal work you did mostly for Excelsior –
> A.      You mean –
> Q.      -- the entity?
> A.      -- from 2009 on?
> Q.      Yes.
> A.      Oh, yes. No, no. In fact, I did almost nothing for Excelsior. In fact, most of the vast majority of the work I did was for its subsidiary Liberty Media Holdings.
> Q.      So, for instance, when you filed lawsuits, on whose behalf did you file them?
> A.      They were always filed for Liberty. I don't recall ever filing one for Excelsior.

**Exhibit 1, Vol. 1 of Arbitration Transcript at 37:6-24.[2]** Randazza's sworn arbitration testimony was that the vast majority of his work as General Counsel for Excelsior consisted of work for Liberty and little else. Now, he is representing to this Court just the opposite.[3]

Throughout the arbitration proceeding, Randazza maintained that Excelsior, Liberty, other related entities, and Excelsior's Chief Executive Officer Jason Gibson[4] were alter egos of each other. Early in the arbitration proceeding, Randazza moved the Arbitrator to issue an order, in part, requiring that Liberty join the arbitration proceeding based upon his representation that Excelsior, Liberty, and Jason Gibson were alter egos. **Exhibit 6, Randazza's Letter Brief dated March 29, 2013 at page 1.** Randazza made the following sworn statements, subject to the penalty of perjury, in support of his reuqest:

> 10.      I worked for Excelsior as an employee between July 1, 2009 and August 29, 2012, when Mr. Gibson terminated my employment with Excelsior on August 30, 2012.
>
> 11.      During the period of my employment, ***I performed the tasks for Excelsior required by the Agreement and asked of me by Mr. Gibson. That work included (but was not limited to) the following described generally***:

---

[2] The five volumes of arbitration transcripts are attached to the Declaration of Wendy M. Krincek, Esq., filed concurrently herewith as Exhibits 1-5.

[3] Several examples of Randazza's penchant to change his story to suit his needs are identified in this Reply; this is just one of them.

[4] The Arbitrator mistakenly refers to Jason Gibson as Jason Gideon several times in the IAA.

GREENE INFUSO, LLP
3030 South Jones Boulevard Suite 101
Las Vegas, Nevada 89146
(702) 570-6000

4

GREENE INFUSO, LLP
3030 South Jones Boulevard Suite 101
Las Vegas, Nevada 89146
(702) 570-6000

     a.    ***Conducting a nationwide series of lawsuits against copyright infringers on behalf of Liberty Media Holdings LLC*** ("Liberty"), which owned all of the copyrights and trademarks created through Excelsior's efforts, bringing in approximately $2,000,000 in settlements;

     b.    ***Representing Excelsior, Liberty in other litigation*** protecting its intellectual property rights, and disputes with other parties;

     c.    ***Providing general business and public relations advice to Excelsior, Liberty***, and Gibson; ...

         *            *            *

12.   ***I performed the tasks assigned to me by Excelsior during my employment there under the Agreement.  In many cases, as I discuss below, the work was not only on behalf of Excelsior, but on behalf of its alter egos Liberty*** and Mr. Gibson himself; Liberty held the intellectual property that Excelsior produced, sold and licensed.

         *            *            *

24.   ***Although I was an employee of Excelsior under the Agreement and paid by Excelsior, I almost always litigated on behalf of Liberty, which held the copyright and trademark rights to the material that was the subject of my litigation activities.***  In the instances where legal action was needed on behalf of Excelsior and/or its employees, it was generally to breach or obtain the maximum benefit from a contract Excelsior or one of its officers had entered.

**Exhibit 6, Declaration of Marc J. Randazza attached to Letter Brief as Exhibit 1 at pp. 2 and 7 (emphasis added).**  Liberty subsequently stipulated to make a general appearance as a respondent to the arbitration matter and the Arbitrator ordered that discovery and presentation of evidence related to the alter ego issue be delayed in light of Liberty's voluntary entry into the proceeding.

**Exhibit 7, Notice of Appearance by Liberty Media Holdings, LLC.**

     Randazza uniformly claimed up until this point that his work, including litigation for Liberty, was part of his duties as General Counsel for Excelsior.[5]  Now, Randazza takes a contrary and untrue position simply because it suits his needs better.  Not only is Randazza's credibility incredibly tarnished by this flip-flop; he certainly cannot ascribe error to the Arbitrator treating his litigation activities for Liberty as falling under his General Counsel duties, when he is the one that told the Arbitrator, under oath, that was the case.  All of Randazza's arguments and statements calculated to avoid confirmation of the IAA by claiming the Arbitrator erred by holding him personally responsible for misconduct he engaged in while litigating cases for Liberty utterly lack merit and must be disregarded.

---

[5] Notably, Randazza has never produced a retainer or engagement agreement with Liberty, never invoiced Liberty for any work since he was being paid for it as General Counsel of Excelsior, and in this very case, as in the arbitration, Randazza claims Excelsior breached the Employment Agreement by failing to pay him a proper bonus on settlement proceeds from lawsuits he filed on behalf of Liberty.  **ECF No. 98, Third Claim for Relief at page 24.**

GREENE INFUSO, LLP
3030 South Jones Boulevard Suite 101
Las Vegas, Nevada 89146
(702) 570-6000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Moreover, whether or not Liberty has a valid proof of claim is irrelevant to the resolution of this motion.  The instant motion merely seeks to have the Court confirm the arbitration award. It does not seek to confirm the award as to one claimant or the other, but merely to confirm the award.  If the arbitration award is confirmed, it is confirmed.  The scope and effect of the award is not at issue in this instant motion.  Thus, not only is Randazza's argument on this issue disingenuous and incorrect, it is irrelevant.

2.    **The Dismissal of One Cause of Action in the Adversary Proceeding is Irrelevant to Whether or not the IAA should be Confirmed.**

Randazza's argument that the confirmation motion is an attempt to "resurrect" dismissed claims is particularly confusing.  Randazza refers to the claim under section 523(a)(2) and claims for disgorgement and for attorneys' fees and costs as being "resurrected".  Opposition, p. 22, lines 16-18.  Randazza fails to explain how the confirmation of the arbitration award will "resurrect" the dischargeability claim for fraud; the fact is it will not.  The section 523(a)(2) dischargeability claim has been dismissed and nothing in the motion to confirm seeks to "resurrect" it.

As to the disgorgement claim, Plaintiffs acknowledged at the hearing on the initial motion to dismiss that the *remedy* of disgorgement of the sums ordered by the Arbitrator was not practical given Randazza's bankruptcy, but that the amounts the Arbitrator ordered disgorged should be part of Plaintiffs' claim.  The Court acknowledged this during the hearing on Randazza's first motion to dismiss.  *See* Transcript dated 6/10/16, page 44:10-14.  Thus, there is no "resurrection" of the disgorgement remedy, but Plaintiffs are entitled to, and intend to pursue, recovery of all sums ordered disgorged as part of their allowed claim.

Finally, as to attorneys' fees and costs, the Court has ruled that Plaintiffs could not recover post-petition attorneys' fees, but that they could seek to recover fees and costs for pre-petition matters.  *See* Tanscript dated 10/18/16, page 25:23-24.  Thus, Plaintiffs claims to recover pre-petition attorneys' fees as part this litigation never went away and are not being "resurrected" by confirmation of the arbitration award.

/    /    /

### 3.    The Court's Decision to Deny a Lift in the Stay Order is Irrelevant to the Issue of Whether or not the IAA Should be Confirmed.

Randazza's argument that the motion to confirm the arbitration ward is a "backdoor" effort to have the Court reconsider its denial of Plaintiffs' motion for relief from stay is truly ironic and evidences Randazza' real intent:  To retry this entire case, which he badly butchered during the arbitration.  The Court should reject this transparent attempt to obtain another bite of the apple by Randazza.

Randazza contends the Plaintiffs are trying to "buttress their 523(a) claims" by seeking confirmation of the arbitration award.  Randazza, however, ignores the fact that, in addition to opposing Plaintiffs' claims of non-dischargeability, he has filed counterclaims objecting to Plaintiffs' proof of claim, which is supported by the Arbitrator's award.  Confirmation of the award would largely resolve Randazza's counterclaims, leaving only the issues, of pre-petition attorneys' fees and spoliation damages for the Court to resolve.  The determination of dischargeability and what, if any, impact a confirmed IAA has upon it is strictly within the purview of this Court, but the merits of Plaintiffs' claims against Randazza (regardless of whether all or any portion of them are nondischargeable) and of Randazza's claims against Plaintiffs have been litigated and determined.  Randazza simply does not like the outcome of the arbitration and thus seeks to waste the hundreds of thousands of dollars the parties expended in the arbitration and a week or more of this Court's resources for a "do over".  Such a result would be an enormous waste of the parties' and the Court's resources as well as estate assets.

Finally, Randazza's argument that the instant motion is an attempt to get the Court to reconsider its denial of Plaintiff's stay relief motion completely misses the mark.  The Court denied the stay relief motion because it can address the remaining legal matters (such as attorneys' fees and further damages) without the cost of the arbitrator and because this Court has sole jurisdiction to determine the dischargeability of any debt.  This Court therefore can and should consider and confirm the arbitration award which will largely resolve Randazza's claim objection.  That alone will save roughly a week of trial time.  The actual determination of dischargeability will remain the purview of this Court whether or not the IAA is confirmed.

**B.    Confirmation Of The IAA Is Warranted Both Under The Federal Arbitration Act ("FAA"), State Law, And The Terms Of The Parties' Agreement To Arbitrate.**

Randazza is wrong when he alleges that confirmation of the IAA would be inappropriate. As the Court will recall, on the verge of the hearing on Excelsior's motion to confirm the IAA in state court, Randazza raced to the courthouse to file for bankruptcy and stay that proceeding. Excelsior sought confirmation of the IAA under both state and federal law.  Randazza's counsel had forewarned that he could not risk allowing the IAA to be confirmed.  However, state and federal law both support confirmation of the IAA.

**1.    It is Appropriate to Confirm the IAA Pursuant to NRS § 38.239 and Pursuant to the Contractual Terms of the Agreement to Arbitrate.**

As explained in Excelsior's Motion for Order Confirming Interim Arbitration Award, Nevada adopted the Uniform Arbitration Act and NRS 38.239 of that Act provides for confirmation of arbitral awards.  There is no statutory or case law-based requirement that an arbitration order or award be final to be confirmed under Nevada law.  Randazza's primary argument to the contrary is to cite to federal cases that are irrelevant because they discuss the Federal Arbitration Act rather than Nevada law.  Plaintiff also cites to NRS 38.330(4) claiming language in that statute requiring that an arbitration award be made within 30 days of the conclusion of the arbitration implies that an "award" must final.  However, Randazza's reliance upon that statute is in error in several respects, including because that statute specifically applies only to arbitration of claims relating to residential property within common-interest communities.  *See* NRS 38.300 et. seq.

Randazza does not cite to the relevant portions of Nevada's Uniform Arbitration Act, which make it very clear that interim awards like the IAA can and should be confirmed.  Nevada Revised Statute 38.222(2) empowers an arbitrator to issue provisional remedies, including interim awards as the arbitrator finds necessary to promote the fair and expeditious resolution of the controversy. Nevada Revised Statute 38.234 permits a party to an arbitral proceeding to request that an arbitrator incorporate a pre-award ruling into an award under NRS 38.236 and make a motion for an expedited order to confirm a pre-award ruling under NRS 38.239, which must be confirmed unless the court vacates, modifies or corrects the award.  Nevada Revised Statute 38.236's only requirements for an

GREENE INFUSO, LLP
3030 South Jones Boulevard Suite 101
Las Vegas, Nevada 89146
(702) 570-6000

8

**GREENE INFUSO, LLP**
3030 South Jones Boulevard Suite 101
Las Vegas, Nevada 89146
(702) 570-6000

arbitral "award" is that a record be made of it, that it is signed or authenticated by the arbitrator and that notice be given to all parties. Nevada Revised Statute 38.239 regarding "confirmation of award," simply provides that, "[a]fter a party to an arbitral proceeding receives notice of an award, the party may make a motion to the court for an order confirming the award at which time the court shall issue a confirming order unless the award is modified or corrected pursuant to NRS 38.237 or 38.242 or is vacated pursuant to NRS 38.241". It is clear that the statutory scheme of Nevada's Uniform Arbitration Act allows for the confirmation of interim awards.

In this matter, it was unnecessary for Excelsior or Liberty to request that the Arbitrator incorporate the rulings in the IAA into an "award" as the IAA already qualifies as an award. Nevada Revised Statute 38.234 explicitly allows Excelsior and Liberty to seek confirmation of the IAA. And, NRS 38.239 dictates that the IAA "shall" be confirmed unless modified, corrected or vacated. The IAA has not been modified, corrected or vacated. Randazza has not filed a motion for the IAA to be modified, correct or vacated and even if he had there is no proper basis for any of those actions to occur. Consequently, it is quite clear that the IAA can and should be confirmed under Nevada law.[6]

In addition to Nevada's Uniform Arbitration Act allowing for the confirmation of any arbitral awards regardless of whether they are final or not, here, the parties contractually agreed in the Employment Agreement, itself, that _**any**_ award made by the arbitrator may be confirmed. The arbitration provision states:

> Judgment on any Award made by the arbitrator may be entered in any court having jurisdiction.

**Exhibit 2 to Plaintiffs' Motion for Order Confirming Interim Arbitration Award, ECF Doc. No. 104-1 at page 10 of 11, Section 8.** Notably, the Employment Agreement is governed by

---

[6] Randazza claims Nevada's Uniform Arbitration Act has no applicability and the IAA cannot be confirmed pursuant to NRS 38.239 citing to *Brennan v. Opus Bank*, 796 F.3d 1125, 1129 (9th Cir. 2015). However, that case is irrelevant and only addressed the issue of whether federal or state substantive law regarding arbitrability of disputes (i.e. whether the parties agreed to arbitrate a particular dispute) controlled. Likewise, Randazza's reliance upon *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52 (1995) is misplaced. Randazza claims that case stands for the proposition that the FAA governs procedural matters unless the parties explicitly indicate to the contrary. However, that is not the holding of *Mastrobuono* which dealt with the issue of ambiguity created by conflicting arbitration and choice of law provisions in an agreement on the issue of the availability of punitive damages and not with the issue of whether the IAA may be confirmed pursuant to state and/or federal law.

California law. **Id at page 11 of 11, Section 9.E.**  Although Randazza typically relies upon that provision to apply California law to every aspect of the parties' dispute, he does not do so with respect to confirmation of the ADA.  To the extent California law might be applicable, confirmation of the IAA would also be appropriate both because the parties agreed "any" award could be confirmed and because California law allows for the confirmation of both final and partial awards. *See Bolter v. Superior Court*, 87 Cal. App. 4th 900, 906 (2001) (holding that arbitration agreements are subject to the same standards as any other contract) and *Hightower v. The Superior Court of Los Angeles County*, 86 Cal. App. 4th 1415, 1419 (2001) (concluding that an incremental award process is within the broad scope of an arbitrator's authority to fashion an appropriate remedy; it is not precluded by nor offensive to the California Arbitration Act; nor, is it prohibited by the rules which the parties agreed would govern the arbitration of their dispute); *see also Roehl v. Ritchie*, 147 Cal.App.4th 338, 351 (2007) (holding that California law requirement that an arbitral award include a determination of all the questions submitted does not foreclose an arbitrator's ability to use a multiple incremental or successive award process as a means of finally deciding all submitted issues).

Likewise, even if the FAA controls, it also allows for confirmation of the IAA.  The FAA requires that this Court honor the portion of the subject arbitration agreement providing for confirmation of "any" award by the arbitrator just as it would any other contractual provision.  The U.S. Supreme Court stated in *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 479 (1989), a case cited to by Randazza:

> "...it does not follow that the FAA prevents the enforcement of agreements to arbitrate under different rules than those set forth in the Act itself.  Indeed, such a result would be quite inimical to the FAA's primary purpose of ensuring that private agreements to arbitrate are enforced according to their terms.  Arbitration under the Act is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit.  Just as they may limit by contract the issues which they will arbitrate, *see Mitsubishi*, supra, at 628, so too may they specify by contract the rules under which that arbitration will be conducted .... By permitting the courts to "rigorously enforce" such agreements according to their terms *see Byrd*, supra, at 221, we give effect to the contractual rights and expectations of the parties, without doing violence to the policies behind by the FAA."

Thus, the FAA requires that this court honor and enforce the parties agreement that "any" award is subject to confirmation, which necessarily implies that even non-final awards are confirmable;

GREENE INFUSO, LLP
3030 South Jones Boulevard Suite 101
Las Vegas, Nevada 89146
(702) 570-6000

1  otherwise, reference would have been made to "the" award.  Based upon the foregoing confirmation

2  of the IAA is appropriate under both state and federal law.

3          **i.**     ***The IAA should be confirmed with respect to Randazza's claims.***

4          The IAA wholly and finally resolved all of the claims asserted by Randazza.  Following

5  detailed factual and legal determinations, it states:

6          1.     Claimant and Counter-Respondent Marc J. Randazza ("Claimant") shall take
                 nothing by any of his claims set forth in his Amended Arbitration Demand.

7  **Exhibit 1 to Plaintiffs' Motion for Confirmation, ECF No. 104-1, sections A-P at pages 3-13**

8  **and section 1 at page 23.**  The only arguable item left to be completed with respect to the arbitration

9  of Randazza's claims is a determination of fees and costs to be awarded to Excelsior and/or

10 Liberty.[7]  As set forth above, at a minimum, the IAA should be confirmed with respect to the

11 Arbitrator's ruling on Randazza's claims under both state and federal law since state law permits

12 confirmation of interim awards and the parties contractual agreement that judgment could be

13 entered with respect to any order issued by the Arbitrator should be enforced under both state and

14 federal and state law.

15         **ii.**    ***The IAA should be confirmed with respect to Excelsior's counterclaims.***

16         The 26-page IAA also made a final determination with respect to the counterclaims asserted

17 by Excelsior against Randazza that should be confirmed under both state and federal law.  Pages

18 13-22 of the IAA sets forth detailed factual and legal determinations by the Arbitrator.  The IAA

19 goes on to explain and provide for awards of both monetary and equitable relief.  Only three discrete

20 items related to the remedies awarded were left for future determination by the Arbitrator – and,

21 indeed, it was because of Randazza's own wrongdoing that two of those three items could not be

22 immediately addressed.  The three items include:  (1) the determination of fees and costs to be

23 awarded to Excelsior and Liberty as the prevailing parties; (2) the appointment or approval by the

24 Arbitrator of an accountant to oversee an audit of Randazza's attorney trust account; and (3) the

GREENE INFUSO, LLP
3030 South Jones Boulevard Suite 101
Las Vegas, Nevada 89146
(702) 570-6000

---

[7] The IAA states:  Respondents and Counterclaimants Excelsior Media Corp. and Liberty Media Holdings, LLC shall be afforded the right in this arbitration to establish their rights --- if any, and according to proof --- to contractual attorney's fees and costs.  Briefing of the issue was complete and submitted to the Arbitrator at the time the matter was stayed by virtue of Randazza filing for bankruptcy.

determination of the monetary amount to be awarded for Randazza's spoliation of evidence and conversion of Excelsior's property, which would take place after Randazza returned a second company laptop and a forensic examination was conducted to determine what, if anything, had been deleted from that laptop by Randazza. The existence of these three specific, isolated decisions to be made do not preclude confirmation of the IAA under the FAA.

> **a.)** **The future determination of the amount of the monetary award related to Randazza's spoliation and conversion.**

Regarding the Arbitrator's ruling in the IAA that a future monetary award for Randazza's spoliation of evidence/conversion would be made, the IAA provides for an as yet unspecified amount to be awarded for Randazza's spoliation and conversion of files and data as follows:

> Said amount will include the amount of $3,215.98 --- as and for Respondents' expenses reasonably incurred in connection with QUIVX forensic examination and attempted restoration of data on employer-owned laptop computers and iPhone used and returned, as applicable, by Claimant and Erika Dillon. In addition, an amount yet to be determined, in the exercise of the Arbitrator's discretion, will be awarded for Claimant's spoliation and conversion of Excelsior's and Liberty's files and other data contained on employer-owned laptop computers entrusted to Claimant and Erika Dillon during their employment by Respondents or either of them. The additional amount awarded will be set forth in a further and/or amended interim arbitration award /or in the final arbitration award.

**Exhibit 1 to Plaintiffs' Motion for Confirmation, ECF No. 104-1 at pages 23-24, Section "2".** The remedy portion of the IAA goes on to order Randazza to return a second company-owned laptop he had wrongfully withheld from Excelsior:

> 6. Claimant is hereby ordered to return the as-yet-unreturned company-owned laptop to Respondents' counsel forthwith--- and in no event later than ten (10) days from the date of the issuance of this Interim Arbitration Award.
>
> 7. Respondent shall be awarded as damages or costs reasonably incurred with this litigation, expenses reasonably incurred by QVIX or similarly qualified expert vendor--- up to a maximum of $3,500 ---in connection with the vendor's performance of successful and/or attempted retrieval of data a report to the Arbitrator of what, if anything was deleted from the computer and when.

**Id. at page 25.** Excelsior had alleged that Randazza retained two company-owned laptops, one of which he returned only after wiping it multiple times and the other never was returned (and still has not been provided to Excelsior by the deadline set by the Arbitrator or to this day. The Arbitrator's determinations resulting in his ruling requiring the return and examination of the second laptop

GREENE INFUSO, LLP
3030 South Jones Boulevard Suite 101
Las Vegas, Nevada 89146
(702) 570-6000

prior to the monetary amount for Randazza's spoliation being calculated was based upon the following analysis by the Arbitrator:

> Whether or not Mr. Randazza's breaches of fiduciary duty proximately resulted in damages sustained by Excelsior, Liberty or both of them --- as a matter of sound public policy --- Mr. Randazza should not be allowed to retain any pecuniary or legal benefit resulting from or closely connected to those breaches.
>
> For example, Mr. Randazza has including in his defense of his admitted deletion of files and other legal information via multiple wipings of company-owned computers the assertion that Respondents have not been able to show any damages resulting from those multiple wipings. This is another of Mr. Randazza's assertions in this arbitration of "No harm, no foul" --- which the Arbitrator has not accepted, primarily because of the violations of duties constituting and/or including fiduciary duties. Ethical and other violations of fiduciary duties do not require "fact of harm" to be shown by a preponderance of the evidence or otherwise.
>
> Moreover, in the circumstances of (1) multiple ethical violations having been shown to have been committed by Mr. Randazza --- including negotiating for and in the instance of the <u>Oron</u> settlement agreeing to a "bribe" to be conflicted out of future litigation with adverse settling parties and other conflicts of interest --- and (2) Mr. Randazza's ethical challenges shown in this arbitration, there should be a presumption of "fact of harm" caused to E/L by Mr. Randazza's conduct and, additionally, a presumption of Mr. Randazza's intention to harm his clients by wiping everything off of his and his legal assistant's company-owned computers.
>
> As E/L's inside general counsel and employee, Mr. Randazza had a legal and fiduciary duty --- no later than when his employment ceased, regardless of whether or not with or without cause and/or by whom ended --- to deliver every file and other piece of data and/or information --- complete, intact and undeleted, unmodified and immediately accessible and usable by E/L. That included all files and data stored on the computers entrusted to Mr. Randazza and his legal assistant Erika Dillon for their use by and on behalf of E/L. Because of his noncompliance, indeed resistance to compliance with those duties, they continued to the day of the rendering of this award --- including beyond Mr. Randazza's belated and resisted turnover of one of the laptop computers --- because another laptop entrusted to Mr. Randazza remains unreturned. Those continuing fiduciary duties owed by him to E/L exist, including by reason of his exclusive control over the computers and thus superior knowledge of what was on each computer's hard drive before and after he had everything on the returned laptop completely and multiply deleted – including prior and in contemplation of his planned resignation on August 29, 2012.
>
> In the circumstances, Mr. Randazza's generalized and unspecified claims of privacy --- in attempted justification of his ordered complete and multiple wipings of company-owned computers --- cannot be accorded weight or credibility. By the same token, that ordered conduct raises an inference that whatever was deleted was known and intended by Mr. Randazza to be harmful to him and any claims and contentions which he might make in any dispute with E/L --- i.e., deliberate spoliation, in addition to conversion.
>
> Mr. Randazza cannot escape liability for spoliation or conversation --- or, additionally, violation of his fiduciary duties as an employee, executive and general counsel of E/L, by reason of the same conduct --- by claiming, as he has, that Respondents have not shown any specific or tangible injury by reason of his conduct in causing company-owned computers to be completely wiped of all data prior to

GREENE INFUSO, LLP
3030 South Jones Boulevard Suite 101
Las Vegas, Nevada 89146
(702) 570-6000

13

GREENE INFUSO, LLP
3030 South Jones Boulevard Suite 101
Las Vegas, Nevada 89146
(702) 570-6000

their resisted and belated return.  In the circumstances --- and paraphrasing former Defense Secretary Donald Rumsfeld – neither Respondent should bear any burden or responsibility to come forward with any evidence of damage, when they do not know what they do not know.  As stated above --- with his actual exclusive knowledge of what was on the computers' hard drives before and because he ordered them to be completely wiped and, in the instance of his returned laptop, multiply wiped before ultimate return --- Mr. Randazza committed spoliation of evidence, as well as improper conversion of his employer's files, data and equipment and, in so doing, also violated his fiduciary duties owed to E/L.

**Id. at pages 15-17.**  Hence, as part of the IAA, the Arbitrator ordered that Randazza return the second company-owned laptop which he had improperly retained, a forensic examination of that laptop be conducted (as had been conducted with respect to the returned laptop) and reported on to the Arbitrator prior to his determination of a monetary award for Randazza's spoliation and conversion as Randazza's own misconduct in failing to return the second laptop prevented its inclusion in the IAA.  Such an award falls squarely into the realm of an incremental award necessitated by the facts of the matter approved in *Hightower v. The Superior Court of Los Angeles County*, 86 Cal. App. 4th 1415, 1419 (2001) and *Roehl v. Ritchie*, 147 Cal.App.4th 338, 351 (2007), and does not prevent confirmation of the IAA.  Moreover, Nevada state law allows for the confirmation of the IAA notwithstanding this unspecified amount because it allows confirmation of non-final awards, and the parties contractually agreed that any award by the arbitrator could be confirmed.

### b.) The audit of Randazza's attorney trust account.

The Arbitrator ordered in the IAA that Randazza submit to:

> 5.    An accounting of Claimant's attorney trust account is hereby ordered --- including to ensure compliance with Paragraph 4 hereof.  The accounting shall be performed by a qualified third-party accountant and/or accounting firm appointed and/or approved by the Arbitrator.  The cost and expense of which shall be borne solely by Claimant --- although Respondents may advance the funds necessary for the accounting, subject to ordered reimbursement by Claimant.  Claimant is hereby ordered to cooperate fully with the ordered accounting.

**Id. at page 25.**[8]  The IAA can be confirmed notwithstanding the inclusion of this equitable remedy.

---

[8] Paragraph 4 of the IAA provides:  "Claimant is hereby ordered forthwith (i.e., within ten (10) days of the date of the issuance of this Interim Arbitration Award) to turn over to Respondents all Oron-related funds and, further, an additional $30,000 of non-Oron-related client funds of Respondents – which funds have been held in Claimant's attorney trust account – plus pre-award interest at the legal rate of ten percent (10%) per annum from August 29, 2012."  **Id. at pages 24-25.**

Because Randazza had improperly retained Plaintiffs' money in his trust account and also cut off all access to their legal files, Plaintiffs had requested this relief as a remedy in the extensive post-arbitration briefing by the parties:

> 16.  A third-party accounting of Randazza's trust fund(s) to ensure all settlement funds (including various pay-over-time settlements) Excelsior/Liberty is entitled to have been paid to the Company.  Such accounting should be done by an accounting firm of Excelsior's choice but paid for by Randazza.

**Exhibit 8, Plaintiffs' Post-Arbitration Brief at page 75.**  Randazza did not address or oppose the request for an accounting in his reply to Excelsior's post-arbitration brief.  **Exhibit 10, Randazza's Reply Post-Arbitration Brief.**  By virtue of Randazza's unwarranted actions in depriving Excelsior of access to its own records, Excelsior had no way of knowing what settlement payments were due and when they were due, including whether such settlement payments were being sent to Randazza's trust account.[9]  To the extent the accounting could require further order of the Arbitrator (which might only be approval/appointment of an accountant), it is the type of incremental award that does not bar confirmation of the IAA.[10]  It does not preclude confirmation of the IAA under state or federal law, especially in light of the parties contractual agreement that any arbitral award could be confirmed.

---

[9] Subsequent to his resignation from Excelsior and during discovery in the arbitration proceeding, Excelsior discovered that Randazza received fees for work being handled under the auspices of his Employment Agreement with Excelsior which he did not disclose receipt of and kept for himself:

> U.    Mr. Randazza was unjustly enriched in the amount of $60,000.  Of that amount, $55,000 was paid to and received by Mr. Randazza's law firm, rather than E/L, in connection with (1) Mr. Randazza's ostensibly pro bono representation in connection with the so-called "Righthaven cases," of which E/L was generally aware and consented to (A) with the understanding and on the condition that Mr. Randazza was acting as a faithful, compensated E/L employee, including in compliance with his employment agreement, with costs of the representation advanced by E/L, including compensation as employees of Mr. Randazza and his legal assistant Erika Dillon, and (2) unaware that compensation was to be or actually paid to Mr. Randazza, via his law firm, until after the fact, indeed after Mr. Randazza's resignation from E/L employment.[15] Mr. Randazza also received $5,000 from James Grady, in connection with E/L's Oron litigation.  Although Mr. Randazza testified, without corroboration, that Mr. Grady's payment was used for Oron litigation expenses, Mr. Randazza did not disclose the receipt of the Grady $5,000 payment to E/L.  In the circumstances, and under principles of unjust enrichment, all compensation paid to or for the benefit of Mr. Randazza should have been paid directly to E/L or turned over to E/L by Mr. Randazza – neither of which was done, immediately or ever.

**Exhibit 1 to Plaintiffs' Motion for Confirmation ECF No. 104-1 at pages 18-19.**  Of the $60,000 paid and received, (A) $55,000 was court-awarded attorneys' fees, which were paid to Mr. Randazza's law firm, and (B) $5,000 was paid by James Grady.  The Arbitrator specifically found that Randazza had previously and improperly failed to disclose to Excelsior payments he received.

[10] Mr. Randazza was the sole equity owner of his outside law firm at the time.

GREENE INFUSO, LLP
3030 South Jones Boulevard Suite 101
Las Vegas, Nevada 89146
(702) 570-6000

15

**c.)  The award of fees and costs.**

Randazza opposes confirmation of the IAA because it provides the following award:

8.    Respondents and Counterclaimants Excelsior Media Corp. and Liberty Media Holdings, LLC shall be afforded the right in this arbitration to establish their rights --- if any, and according to proof – to contractual attorney's fees and costs.

**Exhibit 1 to Plaintiffs' Motion for Confirmation,  ECF No. 104-1at page 25.**  Randazza opposes confirmation of the IAA based upon the Arbitrator's award solely because that amount will be significant.  **Defendant's Opposition (Doc. No. 125) at page 12, ¶38.**  No authority is cited for his position and it has no merit.  Excelsior cited case law finding arbitral awards leaving for later determination the amount of fees and costs to be awarded did not prevent confirmation of such awards.  Moreover, there is nothing in state law preventing confirmation of an award because the amount of fees and costs is left to future determination.  Nevada (and California) allow interim awards to be confirmed.  And, the parties contractually agreed that any arbitral award could be confirmed.

**2.    It is appropriate to confirm the IAA pursuant to the FAA.**

In the event the Court concludes that confirmation of the IAA should or could only be sought pursuant to the FAA, confirmation is still warranted either because (1) the IAA is a final award notwithstanding the isolated remedy issues to be determined; or (2) even if the IAA is not considered a final award, this case presents the type of extreme case where review and confirmation of a non-final award is warranted.

**i.    *The IAA is a final order subject to confirmation or because the parties contractually agreed to judgment being entered on any arbitration award, the IAA is subject to confirmation under the FAA.***

With respect to the issue of whether the IAA is a confirmable order for purposes of the FAA, Plaintiffs have not located any Ninth Circuit appellate or district level cases ruling as to whether or not an Arbitrator's order resolving all factual issues, legal issues and liability with the sole exception of calculating the amount of attorneys' fees and costs constitutes a final award and/or may be

**GREENE INFUSO, LLP**
3030 South Jones Boulevard Suite 101
Las Vegas, Nevada 89146
(702) 570-6000

reviewed and confirmed.[11]  In the event the sole issue precluding this court from confirming the IAA is the portion of the remedy related to the return of the laptop for forensic examination and subsequent determination of the yet to be determined monetary award for Randazza's spoliation and conversion set forth in paragraphs 2, 6 and 7 of the IAA, Excelsior would agree to forego confirmation of that aspect of the IAA and have the remainder confirmed.  *See e.g. Burton Way Hotels, Ltd. v. Four Seasons Hotels Limite*d, 663 Fed. Appx. 567 (9th Cir. 2016) (the Ninth Circuit upheld parts of an arbitration panel's ruling and overturned confirmation of other rulings). Excelsior does not believe this should be necessary, however, since as set forth, supra, the Supreme Court indicated in *Volt* that the FAA would dictate that this Court "rigorously" enforce the arbitration agreement between the parties and confirm any award entered by the arbitrator, including the IAA.

### ii.  *Alternatively, confirmation should be granted because this is the type of extreme case where confirmation is warranted.*

Any attempt to portray the federal court's reluctance to become involved in the review and confirmation of non-final awards under the FAA is indicative of hostility or mistrust of the arbitral process is misguided.  The opposite is true.  Courts attempt to abstain in such circumstances only to achieve the benefits of the arbitral process in an efficient matter.  The Ninth Circuit explained as follows:

> The Supreme Court has made clear that courts have only a limited role to play when the parties have agreed to arbitration. Before the Federal Arbitration Act was passed, the Court explained, "American courts were generally hostile to arbitration" and "refused, with rare exceptions, to order specific enforcement of executory agreements to arbitrate." *Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 593, 128 S. Ct. 1396, 170 L. Ed. 2d 254 (2008) (Stevens, J., dissenting). Congress's core purpose in passing the Act was to curb this "judicial hostility towards arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 131 S. Ct. 1740, 1747, 179 L. Ed. 2d 742 (2011). For this reason, in the context of arbitrability determinations, the Court has adopted the view that the Act, "both through its plain meaning and the strong federal policy it reflects, requires courts to enforce the bargain of the parties to arbitrate, and not substitute its own views of economy and

---

[11] The Ninth Circuit held in *Millmen's Local 550, United Brotherhood of Carpenters and Joiners of America v. Wells Exterior Trim*, 828 F.2d 1373, 1376-77 (9th Cir. 1987), that an arbitral award was not final and reviewable under section 301 of the Labor Management Relations Act where the arbitrator solely ruled on liability and retained jurisdiction to later rule upon the remedy if the parties to that labor arbitration were unable to reach agreement amongst themselves. However, that case is distinguishable both because it dealt with the LMRA rather than the FAA and because the arbitral order provided no remedy, whereas the subject award addresses all aspects of damages with the sole exception of attorney's fees and costs and an amount to be awarded for spoliation.

GREENE INFUSO, LLP
3030 South Jones Boulevard Suite 101
Las Vegas, Nevada 89146
(702) 570-6000

17

efficiency for those of Congress." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217, 105 S. Ct. 1238, 84 L. Ed. 2d 158 (1985) (internal quotation marks and alterations omitted). The Court has also made clear that motions to vacate will be granted "only in very unusual circumstances" to prevent arbitration from becoming "merely a prelude to a more cumbersome and time-consuming judicial review process." *Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064, 2068, 186 L. Ed. 2d 113 (2013) (internal quotation marks omitted).

We first addressed the question of authority to intervene in an ongoing arbitration in *Aerojet-General*. In that case, after a state court ordered two parties to proceed with arbitration, one of the parties filed an action in district court to object to the AAA's chosen venue for the arbitration. 478 F.2d at 249—50. The district court enjoined the parties from proceeding with the arbitration pending a trial on the question of whether the venue selection was reasonable. *Id*. at 251. On appeal of the injunction, we addressed the threshold question, "whether judicial scrutiny of arbitration proceedings is ever appropriate prior to the rendition of a final arbitration award." *Id*. We concluded that."judicial review prior to the rendition of a final arbitration award should be indulged, if at all, only in the most extreme cases." *Id*. (emphasis added). We noted the considerations that weighed heavily against a mid-arbitration intervention, explaining that "[t]he basic purpose of arbitration is the speedy disposition of disputes without the expense and delay of extended court proceedings," and that "[t]o permit what is in effect an appeal of an interlocutory ruling of the arbitrator would frustrate this purpose." *Id*. In an abundance of caution, we refrained from ruling "that immediate judicial review of a ruling setting the place for arbitration is never justified," noting the remote possibility of an extreme case that could cause "severe irreparable injury" from an error that "cannot effectively be remedied on appeal from the final judgment" and that would result in "manifest injustice." *Id*. Nevertheless, we held that the dispute over venue in *Aerojet-General* was "emphatically not such a case." *Id*.

*Sussex v. U.S. District Court for the District of Nevada, Las Vegas*, 781 F.3d 1065, 1072-73 (9th Cir. 2015).  Courts applying the FAA refrain from meddling in non-final arbitral orders in order to honor the parties' contractual agreement to arbitrate and have the arbitration conducted in an efficient matter without the delay and expense that would be added by judicial intervention.  Such restraint by the Courts is exercised so that the matter can continue through the arbitral process to the final award.  Such restraint is not warranted here and this matter presents the type of extreme circumstance where the Court should review and confirm the IAA because there is no option for this matter to be returned to arbitration for the Arbitrator to rule upon the amount of fees and costs to be awarded and the damages for spoliation/conversion.  Refusing confirmation would be inimical to the FAA since it utterly voids the parties agreement and intent to arbitrate, but even worse, it does so after the parties have spent years at significant expense to arbitrate the matter and the IAA takes the matter at or just shy to the goal line of being a final order.  The IAA is final with respect to Randazza's claims, rules on liability on all counterclaims, provides remedies for those

GREENE INFUSO, LLP
3030 South Jones Boulevard Suite 101
Las Vegas, Nevada 89146
(702) 570-6000

18

counterclaims and only leaves for further action three incremental rulings (as to attorney's fees and costs, approval of an accountant, and damages for spoliation/conversion).    It is hard to fathom a better example of an extreme case where even if this Court were to determine the IAA is non-final, confirmation is warranted nonetheless.

### iii.    *Confirmation of the IAA was timely sought and this Court has jurisdiction to confirm the IAA.*

Randazza claims that any request for confirmation of the IAA is time-barred because the subject motion for confirmation was filed more than one year after the IAA was issued and § 9 of the FAA requires that an application to confirm an arbitral award take place within one year.  The IAA was issued on June 3, 2015.  Plaintiffs promptly applied for confirmation of the IAA that very month, as acknowledged by Randazza in paragraph 39 of his Opposition.  Confirmation was sought under both the FAA and Nevada's Uniform Arbitration Act.  **Exhibit 11, Motion for Confirmation filed in state court.**  That motion was stayed and currently remains stayed only because Randazza raced to the bankruptcy court to prevent its confirmation.[12]  Confirmation of the IAA was timely sought.  Even had it not been, the factors to equitably toll the deadline to apply for confirmation exist including that Plaintiffs acted with diligence to obtain confirmation and there is no prejudice to Randazza since the current motion for confirmation in state court remains stayed.  *Move, Inc. v. Citigroup Global Mkts.*, 840 F.3d 1152, 1157-58 (9th Cir. 2016).

Randazza further claims this court does not have jurisdiction to confirm an award under the FAA.  Section 9 of the FAA indicates the parties can designate any "court" they want to confirm an award and if no court is specified then application "may" be made to the United States court in and for the district within which such award was made.  This cannot mean that when the parties fail to designate a court only the federal district court where the award was made is the only court that can confirm an arbitration award since the FAA does not even confer subject matter diversity.  *Pacific Reinsurance Management Corp. v. Ohio Reinsurance Corp.*, 935 F.2d 1019, 1021 (9th Cir.

---

[12] Randazza also contends in his Opposition that Excelsior sought confirmation in the wrong venue because the Employment Agreement provides that any action to "enforce" an arbitrator's award will be venued in San Diego County, California, unless otherwise agreed to by the parties.  To the extent an application for confirmation is an action to enforce the award, Randazza agreed to the venue of state court in Nevada when he appeared to oppose confirmation and moved that the IAA be vacated.

GREENE INFUSO, LLP
3030 South Jones Boulevard Suite 101
Las Vegas, Nevada 89146
(702) 570-6000

1991).  Non-diverse parties, which is the case here, would never be able to obtain confirmation. Moreover, to the extent the provision in the Employment Agreement providing that actions to "enforce" an arbitrator's award are to be venued in San Diego and that provision constitutes a designation of a "court" with respect to a motion for confirmation, which is not entirely clear, Randazza waived that provision when he appeared in state court in Nevada to oppose confirmation of and seek to have the IAA vacated.

### C.    Randazza Fails To Establish That Confirmation Of The IAA Should Be Denied Because The Arbitrator Was Biased, Engaged In Misconduct Or Exceeded His Authority.

Randazza's Opposition does not move the court to vacate, correct or modify the award.  In the absence of such an action, the IAA should be confirmed under both state and federal law.  *See* NRS 28.239 and 9 U.S.C. § 9.  Even if Randazza's challenges to the IAA are reviewed, they do not provide a basis to vacate the IAA.

### 1.    This Court's review of the IAA is limited.

"[T]he scope of judicial review of an arbitration award is limited and is nothing like the scope of an appellate court's review of a trial court's decision."  *Health Plan of Nevada, Inc. v. Rainbow Medical, LLC*, 120 Nev. 689, 695, 100 P.3d 172, 176 (Nev. 2004).  Upon motion, a court may only vacate an arbitration award if the party seeking that the award be vacated is able to establish one of the following circumstances:

> (a) The award was procured by corruption, fraud or other undue means;
> (b) There was:
> (1) Evident partiality by an arbitrator appointed as a neutral arbitrator;
> (2) Corruption by an arbitrator; or
> (3) Misconduct by an arbitrator prejudicing the rights of a party to the arbitral proceeding;
> …
> (d) An arbitrator exceeded his or her powers;
> …

NRS § 38.241.[13]  Regardless of whether the award is being challenged under statutory or common-law grounds, the party seeking to attack the validity of the arbitration award has the burden of

---

[13] The standard to vacate under the Federal Arbitration Act is substantially similar:
(1) where the award was procured by corruption, fraud, or undue means;
(2) where there was evident partiality or corruption in the arbitrators, or either of them;

GREENE INFUSO, LLP
3030 South Jones Boulevard Suite 101
Las Vegas, Nevada 89146
(702) 570-6000

**GREENE INFUSO, LLP**
3030 South Jones Boulevard Suite 101
Las Vegas, Nevada 89146
(702) 570-6000

proving the required ground relied upon by ***clear and convincing evidence***. *Health Plan of Nevada, Inc.*, 120 Nev. at 695.  "Only 'a barely colorable justification for the outcome reached' by the arbitrators is necessary to confirm the award. *D.H. Blair & Co. v. Gottdiener,* 462 F.3d 95, 110 (2d Cir. 2006).  Indeed, "courts should defer to the arbitrator's resolution of the dispute whenever possible." *Robbins*, 954 F.2d at 682.  The FAA and California law similarly dictate a very limited review of arbitral awards.  *See G.C. & K.B. Invs., Inc. v. Wilson*, 326 F.3d 1096, 1105 (9th Cir. 2003).  "Neither erroneous legal conclusions nor unsubstantiated factual findings justify federal court review of an arbitral award . . . ." *Bosack v. Seward*, 586 F.3d 1096, 1102 (9th Cir. 2009) "Because the decision to arbitrate grievances evinces the parties' intent to bypass the judicial system and thus avoid potential delays at the trial and appellate levels, arbitral finality is a core component of the parties' agreement to submit to arbitration." Generally, courts cannot review arbitration awards for errors of fact or law, even when those errors appear on the face of the award or cause substantial injustice to the parties.  *Richey v. Autonation, Inc*., 341 P.3d 438, 442 (Cal. 2015).

2.        **The Arbitrator Was Not Biased Against Randazza**

---

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.
9 U.S.C. § 10. As is the standard to vacate an arbitration award under California law:
(a) Subject to Section 1286.4, the court shall vacate the award if the court determines any of the following:
(1) The award was procured by corruption, fraud or other undue means.
(2) There was corruption in any of the arbitrators.
(3) The rights of the party were substantially prejudiced by misconduct of a neutral arbitrator.
(4) The arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted.
(5) The rights of the party were substantially prejudiced by the refusal of the arbitrators to postpone the hearing upon sufficient cause being shown therefor or by the refusal of the arbitrators to hear evidence material to the controversy or by other conduct of the arbitrators contrary to the provisions of this title.
(6) An arbitrator making the award either: (A) failed to disclose within the time required for disclosure a ground for disqualification of which the arbitrator was then aware; or (B) was subject to disqualification upon grounds specified in Section 1281.91 but failed upon receipt of timely demand to disqualify himself or herself as required by that provision. However, this subdivision does not apply to arbitration proceedings conducted under a collective bargaining agreement between employers and employees or between their respective representatives.
(b) Petitions to vacate an arbitration award pursuant to Section 1285 are subject to the provisions of Section 128.7.

Cal. Code Civ. P. 1286.2.

Randazza makes various claims of bias against the Arbitrator, each of which boil down to his disagreement with a factual or legal finding of the Arbitrator and, therefore, fail to establish bias. "Claims of evident partiality fall into two categories: (1) actual bias and (2) nondisclosure of information." *Thomas v. City of N. Las Vegas*, 122 Nev. 82, 98, 127 P.3d 1057, 1068 (Nev. 2006). Randazza does not allege any nondisclosure of information by the Arbitrator. Randazza does allege the Arbitrator was biased. The integrity of the arbitrator's decision is directly at issue in actual bias cases. *Woods v. Saturn Distribution Corp.*, 78 F.3d 424, 427 (9th Cir. 1996). The appearance of impropriety alone is insufficient to establish evident partiality in actual bias cases. *Id.* The party claiming partiality must prove actual bias by establishing "**specific facts which indicate improper motives**." *Id.* (emphasis added). Randazza does not identify any specific facts that indicate an improper motive by the Arbitrator. In fact, Randazza does not even hazard a guess at what the Arbitrator's supposed improper motive was.

Randazza's evidence of the Arbitrator's supposed bias against him – an arbitrator selected by both parties who is a Harvard graduate and former federal court judge – is that the Arbitrator (1) addressed a dispute regarding Randazza's credibility that was raised by the parties in their post-arbitration briefing; (2) "refused to contemplate that Randazza could ever be a target of harassment;" and (3) bifurcated an alter ego issue and then allegedly disregarded that bifurcation by ruling on the alter ego issue in the IAA. Randazza fails to both: (1) accurately characterize the rulings of the Arbitrator; and (2) establish that his allegations constitute specific facts indicating the Arbitrator had an improper motive in ruling against him.

       **i.**      ***The Arbitrator simply resolved an issue regarding Randazza's credibility regarding Randazza's physical positioning during cross-examination.***

The issue of Randazza's body position was raised by both parties in their post-arbitration briefing as being indicative of Randazza's credibility, or lack thereof. Excelsior argued that evidence that Randazza made false statements to the EEOC, a federal court, in pre-arbitration briefing, to the State Bar and to his own ethics expert, in addition to his body positioning during cross-examination demonstrated a lack of credibility such that his testimony should be afforded little to no weight. **Exhibit 8 at 2:22-3:19.** Randazza responded in his post-arbitration reply brief

by claiming Excelsior's characterization was not true and that he was looking at the Arbitrator rather than opposing counsel during cross examination:

> "Respondents assert that Mr. Randazza sat sideways during his examination, suggesting evasiveness. In fact, Mr. Randazza was doing what any good witness does -look at the fact-finder. Rather than face Ms. Krincek directly and ignore the Arbitrator, Mr. Randazza directed attention to the Arbitrator to better allow assessment of his sincerity."

**Exhibit 10 at 3:17-23.**  In the IAA, the Arbitrator commented upon this factual dispute between the parties.  The Arbitrator was well-equipped to do this since he personally observed Randazza's conduct at the arbitration.  The Arbitrator in commenting upon Mr. Randazza's lack of credibility first noted Randazza's failure to prove the highly-charged, sexually based allegations and/or his claimed strong reactions to those alleged events because they were either unproven or actually disproved impaired Randazza's credibility overall and then included a footnote addressed the factual issue raised by the parties.  The Arbitrator indicated that Randazza's credibility was also undermined because he lied to the Nevada State Bar and in his EEOC Charge of Discrimination.

**Exhibit 1 to Plaintiff's Motion for Confirmation, ECF 104-1 at page 6, fn. 4.**  The Arbitrator went on to say in that footnote:

> Resolving a credibility-related issue presented in the post-hearing briefs concerning asserted testimonial evasiveness implied by Mr. Randazza's body positioning and whether he had eye contact with the Arbitrator (as asserted by Mr. Randazza in his Reply), throughout his extensive testimony at hearing and primarily on cross-examination, the Arbitrator observed that Mr. Randazza sat sideways in his chair relative to Claimant's counsel's table – with his back to (i.e., 180 degrees away from ) his own counsel and 90 degrees away from Respondent's counsel – albeit with his seated body positioned toward the part of the wall behind and to Mr. Randazza's left from where the Arbitrator was seated.  Mr. Randazza almost always listened to questions and answered in that position – leaning well forward and looking down or straight ahead into "middle distance" in the direction of the wall behind where the Arbitrator was seated.  Mr. Randazza rarely answered a question on cross-examination with sustained eye contact with either the questioning attorney or the Arbitrator.

**Id.**  In other words, on cross-examination Randazza did not look at opposing counsel, or the Arbitrator, or even his own attorney --- he looked at a wall (or sometimes at the ground).  The Arbitrator was present at the arbitration and knew Randazza's claim that Excelsior was mischaracterizing his positioning on cross-examination was not true and noted that to resolve the credibility-related issue raised by the parties.  Moreover, it is clear from the foregoing that the

GREENE INFUSO, LLP
3030 South Jones Boulevard Suite 101
Las Vegas, Nevada 89146
(702) 570-6000

1  Arbitrator did base his assessment of Randazza's lack of credibility entirely (or even significantly)

2  on Randazza's body position as Randazza's Opposition implies.

3       Finally, the Arbitrator did not direct Randazza to look at the wall rather than at the Arbitrator

4  or opposing counsel during cross examination as Randazza claims.  Randazza misleadingly cites to

5  a request from the Arbitrator given just prior to Randazza's direct examination by his own counsel.

6  On direct examination, Randazza's counsel opted to stay seated at the same side of the conference

7  table as Randazza leaving Randazza seated with his attorney asking questions to the right of him

8  and the Arbitrator and court reporter to the left of them.  **Exhibit 1, Arbitration Tr. Vol. 1; 10:16-**

9  **11:22.**  In that position, Randazza could not simultaneously look at both his own attorney and the

10  Arbitrator and court reporter, hence, the Arbitrator indicated that Randazza should look towards the

11  Arbitrator and court reporter.  **Id.**  No such instruction was given during cross-examination and

12  would have been unnecessary since Randazza and opposing counsel were seated across the

13  conference table from each other.  Even if there was any factual accuracy to Randazza's

14  contentions, which there is not, the fact that the IAA took partially into account Randazza's

15  positioning on cross-examination (or perhaps it was Randazza's misrepresentation about his

16  position during cross-examination that was taken into account) when assessing Randazza's

17  credibility does not amount to specific facts indicating an improper motive by the Arbitrator.

18       ***ii.***    ***The Arbitrator did not refuse to contemplate that Randazza could ever be a target of harassment.***

19

20       Randazza next contends that the Arbitrator's supposed ruling that Randazza could not be a

21  victim of sexual harassment because he worked for an employer that produced pornography

22  evidences bias.  The Arbitrator made no such finding.  Randazza fails to cite to any portion of the

23  IAA setting forth such a ruling because none exists.  In any event, even if there had been such a

24  ruling, it would not constitute specific facts which indicate that the Arbitrator had an improper

25  motive.  As noted, Randazza cannot even identify what improper motive the Arbitrator supposedly

26  had to rule against him.

27

28

**GREENE INFUSO, LLP**
3030 South Jones Boulevard Suite 101
Las Vegas, Nevada 89146
(702) 570-6000

### iii.     The Arbitrator did not improperly rule on the issue of alter ego after bifurcating that issue.

Last, Randazza claims the Arbitrator was biased against him because the Arbitrator ruled that he was going to bifurcate discovery on alter ego issues until after the arbitration but then ruled on the alter ego issue in the IAA.  Randazza misapprehends the Arbitrator's bifurcation-related order and fails to show how this ruling would evidence a specific fact that indicates the Arbitrator had an improper motive.  As set forth, *supra,* early in the arbitration process, Randazza alleged that Excelsior was an alter ego of Jason Gibson, Liberty, and two other corporate entities.  Randazza alleged that Excelsior was intentionally underfunded such that it would not have assets sufficient to satisfy a judgment against it and sought discovery on the alter ego issue and a declaration that each was an alter ego of the other.  **Exhibit 6 at p. 1.**  Liberty represented that it would voluntarily enter the arbitration and thereafter made a general appearance as a Respondent.  **Exhibit 7.**  The Arbitrator later ruled:

> B) Claimant's "alter ego" contentions will be segmented from Claimant's claims for liability and damages and will be deferred to a later phase of the arbitration or will become moot.  Deferral or mootness will depend on whether or not Claimant will have been successful in establishing at least one of his substantive claims and further establishing a reasonable probability that an amount awarded in say, an interim arbitration award exceeds the ability of both Respondent entities to pay a projected awarded amount.

**Exhibit 12, Arbitrator's Order of January 8, 2014 at para. "B".**  In other words, the Arbitrator would rule against Randazza unless he (a) prevailed on at least one claim and; (2) established a reasonable probability that Excelsior and Liberty together would not be able to satisfy an award.  Randazza did not either (1) prevail on any claim; or (2) present any evidence that Excelsior and Liberty could not satisfy an award.  Because the alter ego issue was outstanding at the time the IAA was issued, the Arbitrator explained in the IAA that he was referring to Excelsior and Liberty collectively and interchangeably as "E/L" for convenience, specified that treating those two entities that way was not in any way a determination of the other alter ego allegations made with respect to Jason Gibson or any other entity and that, "Mr. Randazza failed to sustain his burden of proof that either Excelsior or Liberty were or are "alter egos" of Respondent Jason Gideon [sic] or of any person or entity.  **Exhibit 1 to Plaintiff's Motion for Confirmation, ECF No. 104-1 at page 2,**

GREENE INFUSO, LLP
3030 South Jones Boulevard Suite 101
Las Vegas, Nevada 89146
(702) 570-6000

25

1   **fn. 1.**  This determination is not at odds with the January 8, 2014 order, as the Arbitrator specifically

2   held that Randazza needed to prevail on at least one claim and show that Liberty and Excelsior

3   could not satisfy an award against them to move forward with his alter ego allegation.  Randazza

4   did neither.  In any event, even if this finding was in error or was premature (which it was not), it

5   is not evidence of an improper motive or provide any other basis to vacate the IAA.[14]

6                **3.        The Arbitrator Did Not Exceed His Powers.**

7                In addition to claiming the Arbitrator was biased, Randazza claims the Arbitrator exceeded

8   his powers in several respects.  This allegation also lacks merit.  The Nevada Supreme Court

9   outlined the extremely limited nature of this basis for vacatur:

10              "Arbitrators exceed their powers when they address issues or make awards outside
            the scope of the governing contract. The broader the arbitration clause in a contract,
11          the greater the scope of an arbitrator's powers.  However, allegations that an
            arbitrator misinterpreted the agreement or made factual or legal errors do not support
12          vacating an award as being in excess of the arbitrator's powers. Arbitrators do not
            exceed their powers if their interpretation of an agreement, even if erroneous, is
13          rationally grounded in the agreement.  The question is whether the arbitrator had the
            authority under the agreement to decide an issue, not whether the issue was correctly
14          decided. Review under excess-of-authority grounds is limited and only granted in
            very unusual circumstances.  An award should be enforced so long as the arbitrator
15          is arguably construing or applying the contract. If there is a colorable justification
            for the outcome, the award should be confirmed."

16  *Health Plan of Nevada*, 100 P.3d at 177.

17                   ***i.        The Arbitrator did not exceed his powers by ordering an
                        accounting.***

18              Randazza contends the Arbitrator exceed his authority when he "treated non-parties MJRPA

19  and Randazza Legal Group, PLLC, as Randazza's alter egos."   The Arbitrator made no order

20  specifically about either of Randazza's law firms (of which Randazza was the sole owner and had

21  no other equity partners while employed by Excelsior).   As explained, *supra*, because Randazza

22  had improperly withheld Plaintiffs' money from Plaintiffs in a trust account and because Randazza

23  had cut off Plaintiffs' access to their legal records depriving them of the ability to determine what

24

25

26  _____

27  [14] Randazza also contends that the Arbitrator improperly issued a monetary award to Excelsior, Liberty and Gibson
    jointly.  **Opposition at page 30 para 81.**  Randazza is wrong.  There is no monetary award to Gibson in the IAA.

28  The monetary awards are issued to "Respondent(s)" (para. 2 of IAA) and "Respondent Excelsior" (para. 3 of IAA)
    and "Respondent" (para. 7 of IAA).

**GREENE INFUSO, LLP**
3030 South Jones Boulevard Suite 101
Las Vegas, Nevada 89146
(702) 570-6000

settlement payments over time were being paid (potentially into Randazza's trust account), the Arbitrator ordered:

> "An accounting of Claimant's attorney trust account is hereby ordered --- including to ensure compliance with Paragraph 4 hereof. The accounting shall be performed by a qualified third-party accountant and/or accounting firm appointed and/or approved by the Arbitrator. The cost and expense of which shall be borne solely by Claimant --- although Respondents may advance the funds necessary for the accounting, subject to ordered reimbursement by Claimant. Claimant is hereby ordered to cooperate fully with the ordered accounting."

**Exhibit 1 to Plaintiffs' Motion for Confirmation, ECF No. 104, at page 25, ¶5.** As cited above, Randazza testified at the arbitration that the bulk of his work as General Counsel for Excelsior was litigating in the name of Liberty. The IAA does not reference any specific law firm and, instead, based this remedy on Randazza's own, sworn testimony that all of his work for Liberty was under the auspices of his role as General Counsel. The only evidence Randazza cites -- his explanation that he was using the name of his firm to litigate rather than the company's name because he thought it would be more intimidating to opponents – does not support his argument. Moreover, Excelsior requested the third-party accounting in its post-arbitration brief. **Exhibit 8.** Randazza did not oppose the request or otherwise argue an accounting would be improper in his post-arbitration reply brief. **Exhibit 10.** "[I]t is well settled that a party may not sit idle through an arbitration procedure and then collaterally attack that procedure on grounds not raised before the arbitrators when the result turns out to be adverse." *Marino v. Writers Guild of America, East, Inc*., 992 F.2d 1480, 1484 (9th Cir. 1993), *cert. denied*, 510 U.S. 978 (1994). Not only is there no basis to conclude that the Arbitrator exceeded his powers in ordering an accounting, Randazza did not oppose that requested remedy at arbitration and is, therefore, precluded from challenging it now.

>        ii.        *Errors of counsel were not attributed to Randazza – Randazza was recognized to be responsible for making misrepresentations in multiple forums.*

Randazza also argues that his attorneys were responsible for "errors" that he was held accountable for by the Arbitrator and further tries to imply the "errors" are unsurprising since there were over a 100,000 pages of documentation exchanged during discovery. Preliminarily, Randazza has not provided one iota of evidence that the errors/misrepresentations by multiple attorneys on

GREENE INFUSO, LLP
3030 South Jones Boulevard Suite 101
Las Vegas, Nevada 89146
(702) 570-6000

27

his behalf were the result of anything other than Randazza intentionally giving his attorneys misinformation.  The evidence showed these were not errors – they were misrepresentations by Randazza.  Randazza's attempt to imply that the misrepresentations were the result of the amount of documents produced in this matter is disingenuous, at best.  Randazza was responsible for over 100,000 documents being produced and did so as a document dump on Excelsior and Liberty to harass and drive up the cost of the arbitration to them.  Randazza's disagreement with the Arbitrator's assessment that his misrepresentations were just that, rather than honest mistakes of his counsel, does not form any legitimate basis to vacate the IAA.

Moreover, the Arbitrator's assessment of credibility was (1) not limited to misrepresentations in documents drafted by counsel for Randazza; and (2) Randazza's attempt to blame others for his misrepresentations was not credible.  The only common denominator amongst the many misrepresentations Randazza made in multiple forums was Randazza, himself.  Excelsior and Liberty provided the following summary in its post-arbitration brief:

> In fact, Excelsior believes that the number and nature of the misrepresentations made by Randazza clearly evidence that he is not credible and no weight should be placed on his testimony.  Randazza's testimony revealed that he made false statements to the EEOC in his charge of discrimination, to a federal court in a motion for fees, to the Florida Bar in response to a complaint made against him, in his Complaint in this matter, and in his pre-arbitration brief.[15]  **See Arbitration Hearing Transcript (hereinafter "Tr.") at 314:21-318:1, 319:4-16, 326:20-329-22, 341:1-341:25, 342:24-343:16, 418:8-422:19, 538:18-542:14, 610:11-612:5.**  Indeed, the evidence at the hearing even revealed that Randazza was not truthful with _his own ethics expert_.  **Id.** at 1173:2-1176:20.
>
> Some of the most powerful evidence in this case arises from Randazza's ever-evolving misrepresentations to cover up his misdeeds.  As the Arbitrator will recall, with respect to Xvideos, prior to being compelled to produce retainer agreements and billing records, Randazza represented to the State Bar that he represented Xvideos in resolving one specific matter and, "after that, Randazza did not do any work for Xvideos."  **Exhibit 372 at EMC001610.**  Randazza further reported this same misrepresentation to his own ethics expert -- that his representation of Xvideos was very limited in scope and ceased in 2009 – which then became a basis for his own expert's conclusions.  **Tr. at 1173:5-13.**  At arbitration, Randazza was forced to acknowledge his misrepresentation to the bar and admit that after the one specific matter he handled for Xvideos, rather than ceasing to do further work for them as he reported to the State Bar and his ethics experts, he continued to represent Xvideos and, in fact, billed time to Xvideos during each of the following 23 months he remained employed by Excelsior, all the while dissuading Excelsior from pursuing claims against Xvideos.  **Tr. at 538:8-541:22 and Exhibit 313 at p. 4.**

---

[15] Randazza also proudly testified that he is not opposed to lying to opposing counsel.  **Exhibit 2 at 392:18-20.**

GREENE INFUSO, LLP
3030 South Jones Boulevard Suite 101
Las Vegas, Nevada 89146
(702) 570-6000

Likewise, with respect to TNAFlix, prior to Excelsior disclosing that it had obtained Randazza's email communications with opposing counsel in the TNAFlix matter, Randazza reported to the State Bar that after being offered a bribe by opposing counsel to never sue his client again, Randazza responded by informing, "both Mr. Gurvits and Gibson that Randazza would not accept payment in exchange for a limitation on who Randazza could represent or not represent in the future." **Exhibit 372 at EMC001606 and Tr. 240:18-243:2.** The evidence undeniably demonstrates that Randazza's representation to the State Bar is not truthful. Randazza's emails prove that he explicitly initiated and negotiated for a monetary payment for himself to conflict himself out of ever being adverse to TNAFlix. **Tr. 346:17-370.23**. Thus, at arbitration, Randazza was forced to abandon the position he took with the State Bar – that Gurvits offered him a payment to conflict him out and he refused that overture. Randazza's new story at arbitration became that he did negotiate for a payment to conflict himself out (and to broker a sale of TNAflix for a fee), but it was all make-believe and part of a negotiation strategy to get Liberty more settlement money. ***Id.*** However, even this new story is belied by the evidence. *After the TNAflix matter was settled*, Randazza not only drafted and forwarded agreements for TNAflix to retain him to conflict him out and serve as a broker, but was almost desperate in his communications with Gurvits to have those agreements executed. **Tr. 370:24-379-18**. The absurdity of Randazza's latest story is evidenced by his own testimony:

> Q:    Now, this is building on the last e-mail that we looked at where you had forwarded to Val the retainer agreement, the broker agreement for TNAFlix on February 11th?
> A:    Yes.
> Q:    Later in this afternoon, Val responds and he says, I forwarded to my client. Will let you know what they say. Do you see that?
> A:    Yes.
> Q:    And you respond to Val, and you say, Please prevail upon them that time is of the essence. Do you see this?
> A:    I do.
> Q:    Time is of the essence with respect to this hypothetical sale of TNAFlix where you don't really have a client that's interested in buying them - -
> A:    Yes.

**Tr. 375:18-376:12**.

Again and again, Randazza has shown himself to not be credible. Excelsior believes Randazza's testimony should not warrant any weight in any regard absent some independent evidence supporting his testimony. Randazza's defense to the counterclaims brought against him depend almost entirely upon his testimony that although his actions may have appeared unethical, he engaged in them in order to benefit Excelsior. Setting aside the clear illogical nature of many of Randazza's positions, his lack of credibility makes it impossible to believe the explanations for his unethical behavior.
**Exhibit 8 at 3:11-5:18.**

The Arbitrator stated in the IAA that Randazza's credibility was "undermined and impaired" because his most inflammatory allegations (which involved his claim of sexual harassment) were

GREENE INFUSO, LLP
3030 South Jones Boulevard Suite 101
Las Vegas, Nevada 89146
(702) 570-6000

29

GREENE INFUSO, LLP
3030 South Jones Boulevard Suite 101
Las Vegas, Nevada 89146
(702) 570-6000

either unproved or disproved[16], misrepresentations to the State Bar regarding the Oron bribe of $75,000 for himself, misrepresentations in the Charge of Discrimination he filed against Liberty, and his mannerisms during cross-examination. **Exhibit 1 to Plaintiffs' Motion for Confirmation at page 6, fn. 4**. There is ample evidence supporting the Arbitrator's findings with respect to Randazza's credibility. Randazza makes no attempt to argue which standard for vacatur his argument meets – because it meets none. The Arbitrator made credibility determinations based upon the evidence before him. That Randazza disagrees with those determinations is irrelevant.

### iii. The Arbitrator did not make an adverse credibility finding based on an issue he opted not to decide.

With respect to Randazza's claim at arbitration that he was sexually harassed by virtue of two discrete incidents, Randazza now argues, "[t]he Arbitrator found, ultimately (and contrary to the clear evidence), that Randazza resigned, thus he explicitly held that he was not resolving a conflict of evidence as to how or whether the incidents occurred and their effect on Randazza." **Randazza's Opposition ECF 125 at 32:19-21.** Randazza claims the Arbitrator then contradicted himself and "prejudicially" found that his failure to prove his sexually-based allegations and reactions to them undermined his credibility. Randazza claims this constitutes "clear bias" and "the absolute failure of the Arbitrator to execute his duties."

Randazza mischaracterizes the IAA. The only issue the Arbitrator stated there was a conflict of evidence that he found unnecessary to resolve was whether a sex act occurred in the back of Randazza's car and the degree to which that upset Randazza. **Exhibit 1 to Plaintiffs' Motion for Confirmation, ECF 104-1 at page 5, ¶E.** The IAA contained the following detailed findings with respect to Randazza's allegations of a sexual nature:

> [S]ince the outset of the arbitration, Mr. Randazza made highly-charged, sexually-based "core allegations" and his claimed strong reactions to them in support of his statutory and contractual claims, which were in the main disproved or not proved. That failure of proof undermined and impaired Mr. Randazza's credibility concerning all of his testimony and his claims and related contentions. The evidence established at hearing was that Mr. Randazza intended that his allegations would induce Mr. [Gibson] to authorize a settlement financially favorable to Mr. Randazza, based on Mr. Randazza's belief at the time--- and ultimately proven incorrect—that

---

[16] In fact, Plaintiffs' introduced into evidence at arbitration a text from Randazza to a third party where Randazza acknowledged he was making allegations of a sexual nature so that Plaintiffs would not make their dispute public. **Exhibit 8 at 23:27-24:18.** Excelsior had compelled a forensic examination of Randazza's iPhone during discovery.

Mr. [Gibson] would so settle, rather than have to litigate true or false allegations relating to his own sexuality, sexual activity, and the pornographic nature of E/L's business. Mr. Randazza's miscalculation, as aforesaid, led to an ultimately successful counterattack by E/L, via counterclaims in this arbitration, centering on ethical and legal challenges to Mr. Randazza's conduct as E/L's general counsel and litigation counsel during his employment by E/L.

J.      In addition to Mr. Randazza's disputed, disproved and unproved allegations of sexual conduct engaged in or authorized by is important evidence which established that Mr. Randazza was not either (1) a target of any discriminatory or conduct which created a hostile work environment, because of his being a heterosexual or "straight" male, or (2) offended by any of the sexually related conduct of which he has complained.

K.      Prior to and subsequent to agreeing to go "in house" as E/L's general counsel, Mr. Randazza was outside counsel to several companies engaged in Internet pornography, including videos and stills available on openly homosexual websites. Since at least the date of the commencement of his employment as E/L's inside general counsel through his last day of E/L employment, Mr. Randazza knew of and was not in any way uncomfortable with Mr. [Gibson's] gay sexual orientation--- which was also that of most, but not all, of E/L's other executives --- and the frequent seasoning of business and socially related conversation and written communications with crude gay and other sexual terms, references and allusions, which Mr. Randazza also used.[17] Mr. Randazza was not embarrassed to be seen or filmed in full undress at a poolside business-social event at [Gibson's] home.  Mr. Randazza permitted and encouraged his children to have warm personal relationships with Mr. [Gibson], who they called "Uncle."

L.      The evidence was that the only complaints which Mr. Randazza had concerning the pornographic filming in his offices in April 2012 –four months before the end of his employment--- were that (1) he was not given the courtesy of advance notice of the shoot and (2) after the shoot was completed, Mr. Randazza's office was not restored to just the way it had been before the office was prepped for filming.

The preponderance of disputed evidence was not that Mr. Randazza complained to Mr. [Gibson] centering on or in any way reasonably relating to sexual discrimination or harassment or a hostile work environment based on sex, including "male-on-male" sex, which has been recognized as a basis for a legal claim. Accordingly, allegedly involuntary termination of Mr. Randazza's employment, based on Mr. Randazza's April 2012 complaint about the filming of pornography in his office --- which did not constitute statutorily "protected activity" ---is not includible as a component for a statutory claim that he had been fired in retaliation for making that complaint. Mr. Randazza's complaint about the allegedly personally offensive oral copulation of Mr. Gideon in the back seat of his car on August 9, 2012 was not genuinely or deeply felt and was made primarily for tactical reasons. Therefore, the end of Mr. Randazza's employment was not and was not the product of anything retaliatory, in violation of public policy (e.g., engaging in protected activity), as a

[17] For example, Mr. Randazza admitted that he used the term "butthurt" ---which he alleged that Mr. Gideon used to demean his expression of feelings about the pornographic filming in his office. In a series of texts about the shoot, Mr. Randazza texted, in a crude possible sexual/legal "double entendre," "Don't jizz on my briefs." Mr. Randazza has admitted that "The Arbitrator has seen many texts and emails from Mr. Randazza with informal, rough, vulgar content." Reply at p. 10:9-10. In making a different point, Mr. Randazza concedes by assertion that "Respondents [have] conceded that jokes and banter were common in the office.".

matter of law.

Moreover, the preponderance of the evidence is that Mr. Randazza had advance notice of the filming of a pornographic video in his office and that he did not either object or indicate that the noticed shoot was in any way objectionable or offensive to him. That evidence is the playful exchange of texts between Messrs. Randazza and [Gibson] concerning the intended shoot and the testimony of the director of the shoot, Chaz Vorrias, who testified that he advised Mr. Randazza of the shoot in advance and received no objection from Mr. Randazza.

M.    Contrary to the strong impression created by Mr. Randazza's pre-Arbitration Hearing narrative of allegations, there was no evidence that any photograph(s) of his wife or children or anything personal of or concerning Mr. Randazza or any member of his family, or in any way reasonably violative of
their respective personal privacy, were used or visible in the video. The (possible) visibility of a painting on the wall of Mr. Randazza's office, which was painted by Mr. Randazza's wife, is not to the contrary.

In the circumstances, there was no action taken which was either statutorily offensive or hostile.

**Exhibit 1 to Plaintiffs' Motion for Confirmation, ECF No. 104-1 at pages 6-12.** The IAA is not contradictory as Randazza contends. There is no specific evidence of an improper motive by the Arbitrator to establish bias as Randazza contends and Randazza's disagreement with the Arbitrator's assessment of his credibility is not a basis upon which confirmation can be denied.

### 4.    The Arbitrator Did Not Manifestly Ignore The Law

Randazza claims the Arbitrator "made numerous findings and determinations that are factually and legally misplaced, so much so that he failed to execute his duties in manifest disregard of the facts and the law, exceeding his powers, demonstrating his arbitrariness and caprice."

**Randazza's Opposition, ECF 125 at 33:4-6.** This confusing statement references multiple standards in overlapping and erroneous fashion. However, it appears Randazza is referencing the two limited common-law grounds under Nevada law under which a party may challenge an arbitration award: "(1) the award is arbitrary, capricious, or unsupported by the arbitration agreement; or (2) the arbitrator manifestly disregarded the law." *Clark Cnty. Educ. Ass'n v. Clark Cnty. School District*, 122 Nev. 337, 339 131 P.3d 5, 7 (Nev. 2006). Under the first ground, "the reviewing court may only concern itself with the arbitrator's findings and whether they are supported by substantial evidence or whether the subject matter of the arbitration is within the arbitration agreement." *Id.* The arbitrary-and-capricious standard does not allow a reviewing court

GREENE INFUSO, LLP
3030 South Jones Boulevard Suite 101
Las Vegas, Nevada 89146
(702) 570-6000

to vacate an arbitrator's award based on misinterpretation of the law. *Id.* at 343-344. The review is limited to whether the arbitrator's findings are supported by substantial evidence in the record. *Id.*

According to the Nevada Supreme Court, the common-law judicial inquiry into whether an arbitrator manifestly disregarded the law is "narrow" and "extremely limited." *Bohlmann v. Byron John Printz & Ash, Inc.*, 120 Nev. 543, 547, 96 P.3d 1155, 1158 (Nev. 2004). "[T]he reviewing court may only concern itself with whether the arbitrator knew of the law and, if so, consciously disregarded it, not whether the private arbitrator's interpretation of the law was correct." *Clark Cnty. Educ. Ass'n v. Clark Cnty. School District*, 122 Nev. at 337, 343-44, 131 P.3d at 7.

> "A 'reviewing court should not concern itself with the 'correctness' of an arbitration award" and thus does not review the merits of the dispute. In other words, the issue is not whether the arbitrator correctly interpreted the law, but whether the arbitrator, knowing the law and recognizing that the law required a particular result, simply disregarded the law."

*Bohlmann*, 120 Nev at 547, 96 P.3d at 1158. Neither common law standard permits a reviewing court to consider the arbitrator's interpretation of the law. *Clark Cnty. Educ. Ass'n v. Clark Cnty. School District*, 122 Nev. at 337, 342, 131 P.3d at 9. The FAA similarly defines a manifest disregard of the law. *See Collins v. D.R. Horton, Inc.,* 505 F.3d 874, 879 (9th Cir. 2008).

Regardless of whether the IAA is being challenged under statutory or common-law grounds, the party seeking to attack the validity of the arbitration award has the burden of proving the required ground relied upon by ***clear and convincing evidence***. *Health Plan of Nevada, Inc.*, 120 Nev. at 695. "Only 'a barely colorable justification for the outcome reached' by the arbitrators is necessary to confirm the award. *D.H. Blair & Co. v. Gottdiener,* 462 F.3d 95, 110 (2d Cir. 2006). Indeed, "courts should defer to the arbitrator's resolution of the dispute whenever possible." *Robbins*, 954 F.2d at 682. Preliminarily, none of the arguments set forth in section "F" of Randazza's Opposition (pp. 33-61) evidence a manifest disregard of the law by the arbitrator. Consequentially, Excelsior and Liberty limit this reply to establishing the IAA was not arbitrary and capricious with respect to the so-called findings and determinations by the arbitrator that are factually and legally misplaced.

GREENE INFUSO, LLP
3030 South Jones Boulevard Suite 101
Las Vegas, Nevada 89146
(702) 570-6000

> ### i. The Arbitrator's determination that Randazza resigned was supported by substantial evidence.

Randazza claims the Arbitrator erred by finding he resigned because his resignation email only indicated that his law firm, and not himself, could no longer represent Liberty and there is no evidence that Randazza intended to sever the employment relationship. Randazza has not shown by clear and convincing evidence that the Arbitrator's finding was not supported by substantial evidence. The Arbitrator's finding was supported by not only substantial, but overwhelming evidence. Because this factual dispute over whether a resignation or involuntary termination occurred impacted several of Randazza's claims there was substantial evidence presented and post-arbitration briefing on this topic. **Exhibit 8, at 17:1-20:16, attached hereto as Exhibit 8 and Exhibit 9.** Randazza's resignation email specifically referenced the subject of the email to be "My continued representation of the company." **Exhibit 9, Arb. Ex. 329.** Randazza uniformly contended that Excelsior and Liberty were alter egos and testified that the vast majority of his work as General Counsel for Excelsior was performing duties for Liberty, including litigation, so much so, that he did next to nothing for Excelsior. Randazza's email, alone, is sufficient support for the Arbitrator's finding that he resigned.

However, the evidence of Randazza's intent to resign went much, much further than that. The evidence that Randazza resigned included, but was not limited to evidence that in the days and hours leading up to Randazza sending his resignation email he: planned for his paralegal at Excelsior to quit her employment at Excelsior and become employed by his own private law firm; set up an email account for his Excelsior paralegal at his private law firm; made arrangements for the removal of all his personal items from his office and two days prior to resigning was witnessed removing some personal items from his office and said "f**k this shit, I quit"; conspired with his Excelsior paralegal to remove all Excelsior's electronic files to a cloud-based storage system to which Excelsior would not have access; and wiped his company-owned laptop more than 24 hours prior to resigning and ran wiping software two more times on the day he resigned for good measure. Randazza's claim that "there is no evidence that Randazza had the intent to sever the employment relationship" is nothing short of delusional.

The Arbitrator summarized his findings on this topic as follows:

G.      As stated above, Mr. Randazza voluntarily ended his employment by E/L. The principal evidence of that consisted of (1) Mr. Randazza's August 29, 2012 email to Mr. Gideon, (2) days before sending Mr. [Gibson] his August 29 email, Mr. Randazza cleaned out his personal belongings from his office, (3) shortly after Noon on August 28--- and more than 24 hours before sending his August 29 email to Mr. [Gibson]--- Mr. Randazza had his corporate laptop computer "wiped" the first of four times during his last week of employment, and (4) before that, Mr. Randazza was overheard to say "Fuck this shit, I quit" following a company *happy hour* event.

H.      In his August 29, 2012 email to Mr. Gideon, Mr. Randazza stated that he could no longer represent the Company, i.e., E/L. In the circumstances then known, Mr. [Gibson] and other E/L executives with whom he consulted reasonably, and not hastily, concluded from their review of Mr. Randazza's August 29, 2012 email that Mr. Randazza had resigned from his employment. Their conclusion was proven accurate by facts which became known after Mr. Randazza's departure. Any actions taken by them based on that reasonable belief did not result in any involuntary termination of Mr. Randazza's E/L employment.

I.      The lack of absolute, unquestionable, pristine clarity in Mr. Randazza's August 29, 2012 carefully worded and crafted email that he was resigning his employment was deliberate.

**Exhibit 1 to Plaintiffs' Motion for Confirmation, ECF 104-1 at pages 8-9.**  Randazza's disagreement with the Arbitrator's finding is not a basis upon which to vacate the IAA.  In light of the evidence and the Arbitrator's undoubted review and analysis of the same, Randazza has failed to present clear and convincing evidence that these factual findings were arbitrary or capricious— making Randazza's challenge to the Award on this basis meritless.

> ii.     ***The Arbitrator's finding that Randazza negotiated for a $75,000 "bribe" to conflict him out of being adverse to Liberty's adversary in the future was not arbitrary and capricious.***

When Excelsior first raised allegations that Randazza had improperly negotiated with Oron, who he was suing on their behalf, for a $75,000 payment to himself in exchange for his agreement to never sue Oron again, Randazza denied any such negotiations took place.  For example, Randazza reported to the State Bar that when approached with such an offer by opposing counsel, Val Gurvitz, he told Gurvitz that was unethical and did not negotiate for payment to himself. **Exhibit 9, Arb. Ex. 372 at EMC001606.**  Importantly, Randazza made that denial before he knew that Excelsior had obtained his emails communications with Gurvitz.  Those emails utterly contradicted representations to the State Bar and included gems such as this communication from

GREENE INFUSO, LLP
3030 South Jones Boulevard Suite 101
Las Vegas, Nevada 89146
(702) 570-6000

**GREENE INFUSO, LLP**
3030 South Jones Boulevard Suite 101
Las Vegas, Nevada 89146
(702) 570-6000

Randazza to Gurvitz in the midst of negotiating a settlement in a dispute between Liberty and an entity referred to as "TNA":

> Randazza to Gurvitz:  Keeping me out of the TNA game is a little more complicated.
>
> If your client wants to keep me personally out of the TNA game, then I think that there needs to be a little gravy for me.  And it has to be more than the $5k you were talking about before.  I'm looking at the cost of at least a new Carrera in retainer deposits after circulating around the adult entertainment expo this week. I'm gonna want at least used BMW money.
>
> In order to conflict me out of future matters, I suggest this: Your firm retains me as "of counsel" to you. I get $5k per month (for six months) paid to me, from you (TNA will reimburse you, I presume).  I will render advice on TNA and TNA only, and I'll be Chinese walled from your other clients so that other conflicts are not created. … That way, I'm adequately compensated for my loss of major potential work, and I'm conflicted out of acting adversely to TNA.

**Exhibit 9, email marked as Ex. 356.**  Additional damning emails were produced that Randazza had sent to the same opposing counsel regarding the later Oron litigation:

> Randazza to Gurvitz:  whatever you guy [sic] pay me to retain me would come from your paypal account, and would have no real relevance to that. I spoke to my partner, who was adamant that we should earn $100k if we're never to be able to sue [Oron] forever and ever. I got him to go with $75k.  But, for that, we'll provide some really great value—including a jurisdiction derailing plan that you'll drool over.

**Exhibit 9, email marked as Ex. 366.**  With the disclosure of the emails, Randazza could no longer maintain his story that he refused to engage in negotiations for a bribe.  His new story became to admit that he negotiated for a bribe but claim he was only pretending to negotiate so that Liberty could get a bigger settlement.  This story was also easily seen through.  Excelsior had also received and produced numerous communications from Randazza to opposing counsel after settlements for Liberty had been finalized showing Randazza doggedly trying to secure the payments to himself in the TNA matter.  Excelsior further produced Randazza's e-mails in the Orong matter where he was trying to convince Gurvitz to cover up the nature of the $75,000 bribe he was to receive by having reference to it removed from the settlement agreement and/or having it characterized as a personal "settlement" payment to him.  A detailed analysis of the evidence presented at the arbitration regarding the bribe negotiations can be found in **Excelsior's Post-Arbitration Brief at Exhibit 8, 30:19-38:1 regarding the TNA matter and at 40:3-44:2 regarding the Oron matter.**

Randazza and Oron eventually came to an agreement that Randazza would be paid a $75,000 bribe to prevent him from filing future lawsuits against that company. *Id.* On August 13,

2012, Randazza presented Excelsior's CEO Jason Gibson with a settlement agreement for his review that included a payment of $550,000 to Liberty but also referenced an additional $75,000 payment.  *Id.* Gibson questioned Randazza about the $75,000, and Randazza described it as a "bribe" and attempted multiple times to rationalize it.  *Id.* The evidence was overwhelming and clear that Randazza initiated the improper bribe negotiations, attempted to conceal them, and that the discovery of the bribe ultimately fractured Randazza and Gibson's business relationship and personal friendship.  *Id.*

The Arbitrator discussed the $75,000 bribe at varying points throughout the Interim Arbitration Award but his specific factual findings were as follows:

> The precipitating events which led to the end of Mr. Randazza's employment was Mr. [Gibson] having first learned on August 13, 2012 that Mr. Randazza had been involved in and successfully concluded negotiations for a bribe in the amount of $75,000, to be paid to Mr. Randazza by the other side in connection with resolution of high-importance litigation, commonly referred to as the "Oron litigation," which had been initiated and pursued on behalf of E/L by Mr. Randazza, as E/L's counsel of record. The first indication of that was Mr. [Gibson] noticing a provision included in an execution copy of an Oron settlement agreement, presented to him for signature by Mr. Randazza on that date, and Mr. [Gibson's] inquiring of Mr. Randazza about that provision.
>
> After initial contacts with Mr. Randazza concerning what Mr. Gideon discovered in the Oron settlement agreement, communications and relations between Messrs. [Gibson] and Randazza noticeably chilled during Mr. Randazza's remaining employment, which ended on August 29, 2012.
> **...**
> Mr. Randazza beat a hasty retreat, in an attempt to salvage the situation by offering to pay the bribe money over to E/L, when initially confronted by Mr. [Gibson] concerning the "bribe" provision in the Oron settlement agreement, presented for [Gibson's] signature.
> **...**
> The Arbitrator has determined, based on the evidence, that Mr. Randazza solicited the bribe in the first instance, attempted to negotiate with Oron's counsel ways and means whereby it would be concealed from and not become known by E/L, and disclosed it to E/L, per Mr. [Gibson], for the first time only on August 13, 2012, when the settlement documentation prepared and presented for Mr. [Gibson's] signature on behalf of E/L by Oron's counsel surfaced a $75,000 retainer payment to Mr. Randazza.
>
> The Arbitrator has further determined that E/L never gave Mr. Randazza permission or consent to solicit, negotiate or accept the $75,000 bribe,* or any bribe or any other payment other than payment of all proceeds being solely for the benefit of and deposited to the account of his clients/principals, E/L.
>
> *On August 13, 2013, Mr. [Gibson] handwrote an arrow and "Who gets this" next to the $75,000 payment provision in the copy of the execution copy of the Oron settlement agreement presented to him by Mr. Randazza. The Arbitrator credits that

GREENE INFUSO, LLP
3030 South Jones Boulevard Suite 101
Las Vegas, Nevada 89146
(702) 570-6000

notation as being first notice to and genuine surprise expressed by Mr. Gideon about any Oron settlement payment not being made directly to E/L.

That notation also was the genesis of a rapid unraveling of the theretofore close professional and personal relationship, symbolized by Mr. [Gibson's] sharply reducing communications with Mr. Randazza and Mr. Randazza's repeated and ultimately unsuccessful efforts to salvage his situation, by attempting to re-establish direct contact with Mr. [Gibson]. As previously stated, the Arbitrator has not accepted Mr. Randazza's central contention and narrative that this state of affairs, triggered on August 13, 2012, was manufactured by Mr. Gibson and served as a convenient or other pretext for an earlier-decided termination of Mr. Randazza's employment.

The Arbitrator has not accepted that E/L's knowledge of or informed consent to any such situation can be implied by non-objection and silence in response to an unspecific, Delphic allusion in one of Mr. Randazza's emails prior to August 13, 2012 or to Mr. Randazza's after-the-fact, self-serving reference to alleged earlier communications, wherein Mr. Randazza claimed in the later email to have "fully disclosed ... overtures about that."

**Exhibit 1 to Plaintiffs' Motion for Confirmation, ECF No. 104-1 at pages 3-4 and 7.**  In light of the Arbitrator's findings, it is impossible to characterize Randazza's contention in his Opposition that "[t]he Arbitrator effectively agreed that Randazza never intended to obtain the actual $75,000 for himself against the interests of Liberty" as accurate.  The Arbitrator did include the following finding in a footnote of the IAA:

"In addition, except for admissions, anything which Mr. Randazza and his opposing counsel in the Oron litigation, Val Gurvitz, communicated to each other lacked credibility, because Mr. Randazza testified that he and Mr. Gurvitz routinely lied to each other in their settlement communications"

**Exhibit 1 to Plaintiffs' Motion for Confirmation, ECF No. 104-1 at 4 and 7 n.4.**  This had nothing to do with Randazza's claim to be pretending to negotiate for a bribe for himself.  Rather, Randzza had attempted to mitigate the damage caused by his unethical bribe negotiations by claiming in his post-arbitration brief that Liberty was not harmed by his negotiations for an extra $75,000 for himself because Oron's counsel had already told him that his client wouldn't pay any more money to Liberty.  ***See* Exhibit 13, Randazza's Post-Arbitration Brief at 27:16-24.**  Excelsior responded to this allegation by pointing out Randazza could not credibly rely upon supposed assertions by his opposing counsel regarding what his client would or would not pay to settle a matter as Randazza had testified that both he and the opposing counsel routinely lied to each

GREENE INFUSO, LLP
3030 South Jones Boulevard Suite 101
Las Vegas, Nevada 89146
(702) 570-6000

**GREENE INFUSO, LLP**
3030 South Jones Boulevard Suite 101
Las Vegas, Nevada 89146
(702) 570-6000

other in settlement negotiations. **Exhibit 14 at 31:18-23.**[18]  Accordingly, the Arbitrator did not make contradictory findings on this issue as Randazza now claims and his findings regarding the bribe were not arbitrary and capricious.

**5.**    **The Arbitrator did not make improper legal determinations in manifest disregard of the law.**

Randazza next opposes confirmation of the Arbitrator's ruling against him with respect to: (1) his Claim One for an alleged failure to reimburse Randazza for expenses in violation of Cal. Labor Code §2802 with respect to $25,000 he volunteered to advance to pay legal expenses related to the Oron matter and; (2) his Claim 2 where he claimed a violation of Cal. Labor Code §§ 201-203 for alleged unpaid wages and vacation time.  Randazza claims the Arbitrator misinterpreted the law.  A misinterpretation of the law is not manifest disregard of the law and Randazza's argument fails for that reason.   *See Bohlmann v. Byron John Printz & Ash, Inc.*, 120 Nev. 543, 547, 96 P.3d 1155, 1158 (Nev. 2004).  Moreover, the Arbitrator's ruling that Cal. Labor Code §2802 did not apply to his employment in Nevada was correct.  Randazza admits he moved to Nevada in mid-2011 to continue his role as General Counsel for Excelsior. **Exhibit 2 at 494:18-495:15; Exhibit 9, Ex. 302 at ¶ 21**.  Both claims attempted to apply California wage and hour claims to Randazza's employment in Nevada.  Randazza argued that the Governing Law clause in the Employment Agreement specifying that California law will govern the interpretation of the Employment Agreement, acted to import all of California's wage and hour laws to his employment in the State of Nevada.  The Arbitrator disagreed and concluded that the California statutes Randazza claimed were violated in Nevada did not apply extraterritorially (outside of California) and the governing law provision did not affect these non-contractual claims.  The Arbitrator did not manifestly

---

[18] Randazza also misrepresents at page 35 n.26 of his Opposition that the only expert as to California professional responsibility, was his expert Ellen Peck, who opined his negotiations for bribes were not improper.  First, Ms. Peck was not the only California professional responsibility expert.  Excelsior's expert Dennis Kennedy was qualified as an expert and testified as to both Nevada and California professional responsibility issues. Mr. Kennedy's expert report was admitted into evidence is attached as **Exhibit 16** hereto.  Second, Ms. Peck as an expert on California professional responsibility did not offer an opinion regarding the Oron negotiations, as they occurred in Nevada.  Randazza's Nevada professional liability expert, Joseph Garin testified that if the Arbitrator were to accept the premise that Randazza actually intended or expected to receive the money he was negotiating for, then a personal interest did exist – meaning a violation of the rules of professional responsibility occurred.  **Exhibit 5 at 1221:11-24.**

1   disregard the law in this ruling.  In fact, the Arbitrator correctly applied the law.  Moreover, even if

2   he had erred in its application, that is insufficient to establish a manifest disregard of the law.

3       When reviewing an award for manifest disregard for the law the Court's review is extremely

4   limited to determining whether "the arbitrator knew of the law and, if so, consciously disregarded

5   it, not whether the private arbitrator's interpretation of the law was correct."  *Clark Cnty. Educ.*

6   *Ass'n*, 122 Nev. at 339.  There simply is no evidence that the Arbitrator knew the law and recognized

7   that it required a particular result but "simply disregarded the law."  *Bohlmann*, 120 Nev. at 547.

8   What is evident, is that the parties briefed the issues of whether California law provided that its

9   Labor Code applied extraterritorially/outside of California.  The Arbitrator agreed with Excelsior's

10  contention that under California's doctrine of extraterritoriality, its wage and hour laws did not

11  apply outside its borders.  Thus, even if Randazza was correct in his contention that the Governing

12  Law provision acted to import all California laws into his employment relationship (which he is

13  not) he couldn't pick and choose which applied (i.e. contend its wage and hour laws applied but not

14  its doctrine of extraterritoriality).   After considering the initial briefing of the parties, the Arbitrator

15  issued an Order indicating that subject to reconsideration, he preliminarily believed that California

16  wage and hour law was not applied extraterritorially and that the governing law "provision of the

17  parties' employment contract for Claimant's services---generally proving for the application of

18  California substantive law---does not govern which law applies to statutory wage-and-hour and

19  other non-contractually-based claims in arbitration."  *See*  **Exhibit 15, Arbitrator's July 3, 2013**

20  **Order at pg. 2**.  Then, post-arbitration, the parties briefed the issue once again and the Arbitrator

21  again considered and interpreted the legal authority before him in coming to his final conclusion on

22  this matter.  *See* **Exhibit 8, Excelsior's Post-Arbitration Brief at 9:10-11:20 for substantial legal**

23  **authority supporting the Arbitrator's decision**.

24      The Arbitrator specifically concluded as follows:

25  N. Mr. Randazza's California Labor Code-based claims--- for Excelsior's failure to
    (1) pay him his final wages in August 2012 (2nd Claim) or (2) reimburse and
26  indemnify his for business expenses incurred by him in during 2012 (1st Claim) ---
    fail as a matter of law. The same is true for Mr. Randazza's claim for payment of all
27  of his wage-related claims --- including payment of raises, bonuses and repayment
    of his $25,000 loan. That is because --- at all times relevant to those California Labor
28  Code claims, since June 2011, Mr. Randazza worked and lived in Nevada, to which
    Mr. Randazza relocated, as did E/L, in order to continue as E/L's general counsel.

GREENE INFUSO, LLP
3030 South Jones Boulevard Suite 101
Las Vegas, Nevada 89146
(702) 570-6000

40

As stated or indicated in a pretrial ruling bearing on the same issue, (1) the California Labor Code, presumptively, does not apply extraterritorially [footnote *Sullivan v. Oracle Corp.*, 51 Cal.4th 1191, 12016 (2011); *Wright v. Adventures Rolling Cross Country, Inc.*, 2012 U.S. Dist. LEXIS 104378 (N.D. Cal. 2012) (presumption against extraterritorial application of state law applies to unpaid wage claims under California Labor Code, plus "situs of the work" is the most important factor in determining extraterritoriality, trumping residency and where wages are paid)]. and does not apply to the facts and circumstances of this case, and relatedly, (2) that determination, concerning Mr. Randazza's non-contractual claims, is unaffected by the California-as-governing substantive-law provision of Mr. Randazza's employment agreement with Excelsior, which applies and controls only as to breach-of-contract claims and not, as in this instance, Mr. Randazza's statutory claims [footnote *See, e.g.*, Narayan v. EGL, Inc., 616 F.3d 895, 899 (9th Cir. 2010)].

**Exhibit 1 to Plaintiffs' Motion for Confirmation, ECF No. 104-1 at pages 11-12**.

Randazza also claims that the Arbitrator erred in finding that Randazza could not establish his first or second cause of action, because he allowed Randazza an offset from Excelsior's counter-claims in the amount of $25,000 (the same amount of money Randazza contributed to the litigation of the Oron case and required Mr. Gibson to sign an unethical promissory note regarding).[19] Absent any authority in the record or case law supporting his position, Randazza claims that by allowing this offset, the Arbitrator actually found Randazza a prevailing party on at least one of his claims and therefore the award must be modified to find Randazza a prevailing party. By allowing the offset in his discretion, the Arbitrator was not making Randazza a prevailing party on one of his claims. Instead, he noted that:

> While Mr. Randazza's obtaining Mr. [Gibson's] signature on the promissory note for Mr. Randazza's $25,000 loan to E/L for Hong Kong legal fees was rife with ethical infirmities, in the exercise of the Arbitrator's discretion, the Arbitrator will not void the underlying loan. However--- again in the exercise of the Arbitrator's discretion---the Arbitrator will limit the benefit of that decision to allowing Mr. Randazza to assert an offset, under this paragraph, to any and all amounts awarded on E/L's counterclaims, up to a maximum amount of $25,000 (i.e., no interest) …

**Exhibit 1 to Plaintiffs' Motion for Confirmation, ECF No. 104-1 at page 22**. Accordingly, all the Arbitrator did was allow Randazza an offset against the recovery awarded to Excelsior and Liberty Media. The fact that the Arbitrator elected not to grant every remedy Excelsior requested does not make Randazza a prevailing party. *In re Fruehauf Trailer Corp.,* 414 B.R. 36, 42 (Bankr.

---

[19] For a full discussion of the evidence regarding the $25,000 promissory note *see* **Exhibit 8 at 45:9-28; 51:13-24; 12:14-13:1**.

GREENE INFUSO, LLP
3030 South Jones Boulevard Suite 101
Las Vegas, Nevada 89146
(702) 570-6000

**GREENE INFUSO, LLP**
3030 South Jones Boulevard Suite 101
Las Vegas, Nevada 89146
(702) 570-6000

D. Del. 2009)(a set-off is equitable in nature and can be calculated as the Court deems most equitable). Nowhere in the IAA is Randazza named a prevailing party and the Arbitrator specifically found that all of his wage-and-hour/reimbursement claims (whether California or Nevada based) failed as a matter of law. **Exhibit 1 to Plaintiffs' Motion for Confirmation, ECF No. 104-1 at pages 11-12**.

Even though the Arbitrator explicitly found that Randazza's first two claims failed as a matter of law, Randazza still claims the Arbitrator erred in also finding that "Randazza was properly compensated" for the items of damages he sought from his first and second causes of action. **Exhibit 1 to Plaintiffs' Motion for Confirmation, ECF No. 104-1 at page 12**. Randazza complains that the Arbitrator's footnote which states "For example, Mr. Randazza's bonuses were to be based on net and gross amounts (which he acknowledged prior to the end of his employment), claimed compensation raises were discretionary. Whatever Mr. Randazza was paid as compensation and bonuses is subject to the remedy of disgorgement." Randazza also accuses the Arbitrator of having no basis to deny the alleged raise he was owed and whether he was owed additional bonus amounts dependent upon whether they were to be calculated on the net or the gross (which was disputed by the parties).

Excelsior presented evidence at the hearing and provided a detailed summary of why Randazza was adequately compensated under the law, even if his California labor claims could survive. *See* **Exhibit 8 at 11:21-15:4**. For example, with respect to Randazza's claim that he is owed a raise, the Chief Executive Officer of Excelsior, Jason Gibson, testified that Randazza never advised him of such a requirement and in correspondence with Gibson on August 16, 2012, Randazza admitted that he had advised Gibson that the company was not obligated to give him a raise. **Exhibit 9, Arb. Ex. 327.** Accordingly, despite Randazza's subjective disagreement with the Arbitrator's finding it was supported by the evidence and therefore not arbitrary or capricious. It also cannot be forgotten that the Arbitrator was not under an obligation to fully analyze these California claims because he had already found that they failed as a matter of law.

Randazza further claims the Arbitrator's finding there was no private cause of action for his Claim 3 for violation of Nevada Revised Statute 608.050 was in manifest disregard of the law.

42

Again, Randazza misapprehends what a manifest disregard of the law means.  It is not that the arbitrator got the law wrong – as he contends – it is that the arbitrator understood the law correctly but opted to disregard it.  Consequently, this argument fails for that reason alone.

Randazza claims the Arbitrator erred in finding that his claim for unpaid wages and penalties under NRS 608.050 (Third Cause of Action) failed as a matter of law.  In its post-arbitration brief, Excelsior set forth multiple reasons why Randazza had not established that he was entitled to recovery under NRS 608.050—including that his claim failed as a matter of law because there is no private right of action for violation of that statute.  ***See* Exhibit 8 at 15:5-16:1**.  NRS § 608.050 allows the continuation of regular wages to an employee who is not paid his or her regular wage when that wage becomes due after the employment relationship terminates, for up to 30 days. *Orquiza v. Walldesign, Inc.*, No. 2:11-CV-1374 JCM CWH, 2012 WL 2327685, at *6 (D. Nev. June 19, 2012).  This statute only provides for penalties—not the recovery of actual unpaid wages. These penalties "apply only to the regular wages owed to an employee for the work performed between pay periods at the time employment ended." *Id.* at 5 (emphasis added); *Evans v. Wal-Mart Stores, Inc.*, No. 2:10-CV-1224 JCM VCF, 2014 WL 298632, at *3-5 (D. Nev. Jan. 24, 2014) see also NRS 608.012 (specifically noting that a bonus is not within the definition of wages under Nevada law).  Accordingly, Randazza's allegation that the alleged unpaid $25,000 loan and the various bonuses he claims he is owed give rise to this claim lacked merit. Additionally, this statute applies only when an employee was discharged or laid off. NRS § 608.050 ("[w]henever an employer of labor shall discharge or lay off employees").

Even if the statute were applicable to the instant situation, case law holds that no private right of action exists to enforce this statute. *McDonagh v. Harrah's Las Vegas, Inc.*, No. 2:13-CV-1744 JCM CWH, 2014 WL 2742874, at *3 (D. Nev. June 17, 2014). In actuality, enforcement of this statute, and many others in NRS Chapter 608, lies with the Nevada Labor Commissioner—not private litigants. *Id.*  The Arbitrator specifically agreed that Mr. Randazza's claim for unpaid wages and penalties under NRS 608.050 failed as a matter of law because "there is no private right of action for enforcement of that statute."  **Exhibit 1 to Plaintiffs' Motion for Confirmation, ECF No. 104-1 at page 12**.  Randazza disagrees with the Arbitrator's legal conclusion, but he has not

GREENE INFUSO, LLP
3030 South Jones Boulevard Suite 101
Las Vegas, Nevada 89146
(702) 570-6000

43

GREENE INFUSO, LLP
3030 South Jones Boulevard Suite 101
Las Vegas, Nevada 89146
(702) 570-6000

shown manifest disregard of the law (that the Arbitrator knew there was a private cause of action and disregarded that law). Rather, the Arbitrator correctly concluded no private cause of action exists. Excelsior cited and argued the *McDonagh* case which stands for the proposition that no private right of action under NRS 608.050 exists. Randazza's counsel offered no retort or contrary case law for this or the other propositions for why Randazza's NRS 608.050 claim failed in either his Post-Arbitration Brief or his Post-Arbitration Reply Brief. **Exhibit 13 (Randazza Post-Arbitration Brief at pp. 12-14 and Exhibit 10, Randazza Reply Brief at 14:24-15:10.** Given that, Randazza cannot show that the Arbitrator knew the law required a private right of action under NRS 608.050 but disregarded it anyway.[20]

Randazza claimed at Arbitration that Excelsior breached his Employment Agreement by not paying him a 12-week severance due if he was involuntarily terminated, a 25% bonus on the Oron settlement, and a bonus off any additional settlements received since his employment ended. The evidence at the arbitration and Excelsior's Post-Arbitration Brief detailed how Randazza failed to prove his breach of contract allegations because he resigned his employment which excused Excelsior's obligation to pay a severance, he prevented Excelsior from ever collecting the actual Oron settlement funds (until the Arbitrator ordered them to be released in the IAA), and he committed a material breach of the agreement which excused Excelsior's performance. **Exhibit 8 at 16:2-21:18.** Randazza presented no competent evidence that any other settlements were ever received by the company. *Id.*

After weighing all the evidence, the Arbitrator rightfully determined:

P.      As to Mr. Randazza's contractual claims--- which are governed by the Employment Agreement, including the provision that California law governs its interpretation and enforcement, etc.--- (1) Mr. Randazza is not entitled to a contractual severance payment, because he voluntarily resigned his employment [footnote: See Pars. 5(A), (B) and (G), supra, concerning Mr. Randazza's having voluntarily ended his E/L employment, including via and as evidenced by written

---

[20] The only thing Randazza does offer is his attempt to distinguish the court's opinion in *McDonagh*, and his citation to two cases Randazza never took the time to cite and provide to the Arbitrator. The Arbitrator could not have manifestly disregarded case law he was unaware of. Nonetheless, even if the Court were to consider those cases, it must be noted that while the NRS 608.050 claims survived dismissal in *Rivera v. Peri & Sons Forms, Inc.*, 735 F.3d 892, 901 (9th Cir. 2013) and *Fetrow-Fix v. Harrah's Entm't, Inc.*, 2010 U.S. Dist. LEXIS 125625 (D. Nev. Nov. 16, 2010), the respective defendants in those cases did not argue that no private right of action existed to enforce NRS 608.050. Accordingly, those cases are neither binding nor persuasive authority in support of the proposition Randazza now cites them for.

and verbal and non-verbal conduct. Mr. Randazza was contractually entitled to payment equivalent to 12-week severance only if his employment was involuntarily terminated.], (2) Mr. Randazza is not entitled to any payment for expenses in connection with the annual International Trademark Association Conference, which he did not attend, and (3) Mr. Randazza's bonuses were to be paid on "net" amount, not "gross" amounts, as contended by Mr. Randazza.

In the event, E/L has been legally excused from any obligation to make any further contractual payment, by reason of Mr. Randazza's material breaches of contract with respect to the his obligations under the same contract, Mr. Randazza's employment agreement. That is so under contract law principles----separate and apart from equitable principles, which are also applicable to contract claims, including the equitable doctrine of unclean hands, which is applicable to Mr. Randazza's contract claims.

**Exhibit 1 to Plaintiffs' Motion for Confirmation, ECF No. 104-1 at 12-13**.

As is the case throughout his brief, Randazza is purposely vague as to what grounds he is challenging the Arbitrator's decision regarding his contractual claims. Randazza appears to be arguing once more that there is no factual support for the Arbitrator's finding that he resigned. As discussed at length above, Randazza is clearly misguided on that point.

Randazza next argues that the Arbitrator erred in his determination that the bonuses were to be calculated on Liberty's net recovery rather than his gross. Evidence during the Arbitration established that Randazza was not entitled to receive any Oron-related bonus because of his misconduct in handling those matters. Even if Randazza were entitled to receive a bonus on the Oron settlement, he was only entitled to bonuses off the net of settlement awards and not the gross amount he now claims he is owed. Evidence was further presented at arbitration that Randazza had also been paid on the net amount of settlement proceeds and had actually distributed from his own trust account bonus payments based upon the net settlement amount. **Exhibit 8 at 14:2-15:4** (summarizing evidence of Randazza acknowledging that the Employment Agreement did not adequately address whether bonus should be paid on net or gross) **and Exhibit 14, Excelsior's Post Arbitration Reply Brief at 3:20-4:8.**.

In an attempt to avoid the well settled rule that ambiguities in a contract are to be construed against the drafter, during the arbitration Randazza misrepresented his role as the drafter of the employment agreement. Although Randazza claimed Excelsior drafted the Employment Agreement entered by the parties, the evidence showed Excelsior initially sent a short offer letter

GREENE INFUSO, LLP
3030 South Jones Boulevard Suite 101
Las Vegas, Nevada 89146
(702) 570-6000

1   and Randazza responded with the draft Employment Agreement. **Exhibit 3 at 666:25-668:7,**

2   **671:25-672:11, 673:17-674:4.** In light of these facts, any ambiguity as to whether Randazza should

3   be paid off the gross vs. the net, should be construed against Randazza—which is why the Arbitrator

4   found accordingly.

5          Finally, Randazza argues that the Arbitrator "exceeded his authority" when he determined

6   that Randazza committed a material breach which excused any further contractual payment.

7   Randazza cannot even articulate what these further contractual payments are or might be.

8   Nonetheless, he argues that the Arbitrator undertook no analysis of what alleged misconduct should

9   deprive him of any potential bonuses that would be due. As noted previously, NRS 38.241(d)'s

10  basis for vacating an award if an arbitrator exceeds his powers is limited. Courts must "presume

11  that arbitrators are acting within the scope of their authority." *Health Plan of Nevada, Inc.*, 120

12  Nev. at 697. An arbitrator exceeds his powers only "when they address issues or make awards

13  outside the scope of the governing contract." *Id.* The Nevada Supreme Court has held that

14  "[a]llegations that the arbitrator misinterpreted the agreement or made factual or legal errors do not

15  support vacating an award as being in excess of the arbitrator's powers." *Id.* Randazza presents no

16  evidence that the Arbitrator was addressing an issue or making an award outside the scope of the

17  governing contract when he concluded that Randazza materially breached the Employment

18  Agreement. Instead, Randazza's argument once again appears to be an allegation that the Arbitrator

19  made a factual or legal error. Accordingly, Randazza cannot establish that he Arbitrator exceeded

20  his power.

21         Randazza does not dispute that under California law when a party's failure to perform a

22  contractual obligation constitutes a material breach of the contract, the other party may be

23  discharged from its duty to perform under the contract. *Brown v. Grimes*, 192 Cal. App. 4th 265,

24  277, 120 Cal. Rptr. 3d 893, 902 (2011)(citing 1 Witkin, Summary of Cal. Law (10th ed. 2005)

25  Contracts, §§ 813, 814, p. 906 (Witkin)("*Material* failure of consideration discharges the other

26  party's duty").[21] Even if Randazza is challenging the decision on a factual basis, Excelsior's Post-

27

28  _____

[21] Plaintiffs concede that California law governed the parties' contractual claims against one another in light of the choice of law provision but deny that it governed any other causes of action.

**GREENE INFUSO, LLP**
3030 South Jones Boulevard Suite 101
Las Vegas, Nevada 89146
(702) 570-6000

GREENE INFUSO, LLP
3030 South Jones Boulevard Suite 101
Las Vegas, Nevada 89146
(702) 570-6000

Arbitration Brief summarized the evidence solicited at the hearing regarding how Randazza breached the Employment Agreement by failing to comply with his ethical obligations, by spending excessive time on non-Excelsior matters, and by failing to wind down his outside law practice as envisioned by the agreement.  **Exhibit 8 at 20:17-21:18; 72:11-15**. The evidence at the hearing also established that Randazza breached the Employment Agreement by failing to comply with many ethical obligations as detailed *infra* and in an the expert report prepared by Dennis Kennedy. *See* **Exhibit 16 and Exhibit 9, Arb. Ex. 332 (EMC000498-499)** (noting Randazza is "bound to adhere to the professional ethical standards imposed upon attorneys by state bar associations and under the common law" and that his representation of other clients must be rendered without legal or professional conflict with Excelsior).   In light of the many breaches of fiduciary duties established in this case and discussed herein, the Arbitrator's conclusion that Randazza committed a material breach of the agreement cannot possibly be found arbitrary or capricious under the common law.[22]

### 6.    Randazza Fails To Establish That Confirmation Of The IAA With Respect To Excelsior's Counterclaims Is Not Warranted.

#### i.    The Arbitrator did not exceed his authority by issuing awards against Randazza personally.

In paragraph 124 of the Opposition, Randazza includes a brand new argument alleging that the Arbitrator exceeded his authority by making awards against Randazza personally for improper conduct he committed in his capacity not as General Counsel of Excelsior, but acting as an outside lawyer for Excelsior/Liberty through his personal law firm Randazza Legal Group.  Preliminarily, Randazza did not raise this argument at arbitration and he is foreclosed from bringing it now.  "[I]t is well settled that a party may not sit idle through an arbitration procedure and then collaterally attack that procedure on grounds not raised before the arbitrators when the result turns out to be adverse." *Marino v. Writers Guild of America, East, Inc*., 992 F.2d 1480, 1484 (9th Cir. 1993), *cert. denied*, 510 U.S. 978, 114 S. Ct. 472, 126 L. Ed. 2d 423 (1994).   Even if he could raise this

---

[22] Randazza's claim that the Arbitrator could not have found Randazza to have unclean hands is meritless, but even if it weren't, the Arbitrator's finding that Randazza committed a material breach is not dependent upon an unclean hands determination.

GREENE INFUSO, LLP
3030 South Jones Boulevard Suite 101
Las Vegas, Nevada 89146
(702) 570-6000

argument, it does not have merit because Randazza was acting in his capacity of General Counsel for Excelsior when he litigated in the name of Liberty.  *See, infra*, at page 4.  Second, the parties squarely put the claims and counterclaims within the Arbitrator's scope including those that involved Randazza's unethical conduct litigating cases for Liberty.  Randazza never argued at arbitration, in his pre or post-arbitration briefing or even in his opposition to the motion to confirm the IAA that was stayed in state court that the Arbitrator improperly held him personally responsible for wrongful acts he committed against Excelsior in his capacity as a partner in his outside law firm.  Instead, Randazza was claiming (under oath) at arbitration that virtually all his duties as General Counsel of Excelsior related to performing work for Liberty, including litigating in Liberty's name.[23]

### ii.    The Arbitrator did not manifestly disregard the law in finding Randazza breached his fiduciary duties and committed legal malpractice.

Randazza makes various arguments in an attempt to convince the Court that the Arbitrator erred in his conclusion that Randazza breached fiduciary duties he owed to Excelsior and Liberty and that some portions of the award lack a sufficient basis.  Randazza is again purposely vague as to what grounds he contends the Arbitrator's decision be vacated.  It should also be noted that Randazza makes multiple factual and legal arguments which should not be considered by the Court because Randazza never made or established at the arbitration or in any of his post-arbitration briefing.

Randazza's chief complaint is centered on a $275,000 award of actual damages that the Arbitrator granted Plaintiffs because of various breaches Randazza engaged in.  Randazza claims the Arbitrator granted this award in manifest disregard of the law and without any factual basis.  Specifically, Randazza claims that the Arbitrator's legal conclusion that proximate causation of damages was not required for monetary damages to be awarded on a breach of fiduciary duty claim was error.  The only cases Randazza cites are three California cases which recite the barebones

---

[23] Randazza is opportunistically changing his story now and trying to claim his work for Liberty was not in his capacity as General Counsel so he can later advance a meritless argument that Excelsior's settlement with his outside law firm approved earlier by this court covers the claims asserted in the adversary proceeding.

elements of a legal malpractice claim—which in most instances recognizes causation and harm as elements of damages.  While the Arbitrator does conclude that "[e]thical and other violations of fiduciary duties do not require 'fact of harm' to be shown by a preponderance of the evidence," his decision in that regard relates to other "ethical" breaches of fiduciary duties in which the Arbitrator correctly presumed "fact of harm" caused to Excelsior/Liberty by Randazza.  **Exhibit 1 to Plaintiffs' Motion for Confirmation, ECF No. 104-1 at 16, 19 n.17, 20 n.18.**  Randazza attempts to misdirect this court to legal malpractice cases when the Arbitrator's finding related to the breach of fiduciary duty claim.  In that respect, the Arbitrator did not manifestly disregard the law as he explained at length the legal authority for his position—and acknowledges that experts for both parties presented conflicting interpretations of the law on that subject.  **Id. at 15-17, 19 n.17, 20 n.18, 21.**  The Arbitrator's thorough consideration of varying case law and his interpretation of the same does not amount to manifest disregard of the law.

Further, Randazza's challenge to the $275,000 award based upon a lack of factual damages is also misguided because that award was based on actual damages incurred by Excelsior.  Excelsior presented evidence at the Arbitration which showed that because of various forms of legal malpractice committed by Randazza during the course of the Oron litigation, Oron not only appealed United States District Court Judge Navarro's Order enforcing the settlement agreement, but on November 16, 2012 Oren also filed an arbitration demand against Liberty.  **Exhibit 9 (Arb. Ex. 334)**.  The demand alleged, amongst other things, that Randazza utilized a hacker to obtain privileged and confidential documents/information for use in the litigation.  **Exhibit 9 (Arb. Ex. 334 EMC000738); Exhibit 3 at 768:18-769:12.**  Oron also alleged that in contravention of the settlement agreement, Liberty did not dissuade others from bringing suit against Oron and actually assisted another company in filing a "copycat" lawsuit against them.  **Exhibit 9 (Arb. Ex. 334 EMC000741).**  As discussed above, Randazza was the sole cause of both of these serious allegations made in the arbitration demand.  Because of these serious allegations, Excelsior's new counsel engaged in settlement discussions with Oron and eventually Liberty was forced to resettle the Oron case for $275,000 (which was half of the previous settlement amount of $550,000).  **Exhibit 3 at 765:17-768:5, 768:18-769:12.**  At the time of the resettlement the entire $550,000

GREENE INFUSO, LLP
3030 South Jones Boulevard Suite 101
Las Vegas, Nevada 89146
(702) 570-6000

49

settlement was being held hostage by Randazza in his trust account supposedly as disputed funds. Randazza agreed to release $275,000 to Liberty so that amount could be paid back to Oron. **Id. at 765:17-768:5, 768:18-769:1.** Randazza's malpractice and unethical behavior was the driving force behind Liberty's agreement to resettle the case for half of what it had already been awarded. **Id. at 766:21-767:8, 770:4-770:8.** Accordingly, Randazza's actions during the Oron litigation caused Liberty actual damages in the amount of $275,000 (plus interest).

Randazza claims that no reasonable construction of the evidence could tie the $75,000 negotiation to the $275,000 reduced settlement. In so doing, Randazza must be claiming that the award should be vacated because it was arbitrary and capricious. Unfortunately for Randazza, as noted above, there was factual support for the $275,000 that Excelsior/Liberty suffered in actual damages. **Exhibit 8 at 63:2-64:12.** Randazza is correct in that the Arbitrator does state that "E/L was damaged in at least the amount of $275,000, by reason of the Oron resettlement, as a direct and proximate result of events being set in motion by Mr. Randazza's violations of fiduciary duty and other duties, by his having secretly negotiated a $75,000 bribe. **Exhibit 1 to Plaintiffs' Motion for Confirmation, ECF No. 104-1 at p. 18 ¶ T.** However, that sentence refers to "violations of fiduciary duty"—meaning not a single violation. *Id.*

The fact that the Arbitrator did not specifically mention every violation of a fiduciary duty relating to the Oron settlement that led to the resettlement is irrelevant. That is especially true when the Arbitrator specifically recognized the severity of Randazza's breach by utilizing a hacker to obtain privileged and confidential information regarding Oron and causing Liberty to violate the Oron settlement agreement by aiding and encouraging another party in their claims against Oron. **Id. at p. 8** ("further damaging E/L's recovery in the Oron litigation by knowingly forwarding illegally "hacked" computer data to counsel for another company") and IAA at p. 18 (noting that the Nevada State Bar's initial dismissal of the complaint against Randazza was irrelevant because many of the issues and much of the evidence presented at the arbitration … was not available to be presented by E/L in support of its grievance (e.g., Mr. Randazza's assisting Datatech, including forwarding fruits of a disclosed … computer "hacker")). It is important to note that Randazza is not claiming that there was no evidence of him engaging in those acts which ultimately led to the

GREENE INFUSO, LLP
3030 South Jones Boulevard Suite 101
Las Vegas, Nevada 89146
(702) 570-6000

50

resettlement (because there is such evidence and that is why Liberty made the decision to pay back half of the original Oron settlement amount)—he simply seeks that the award be vacated because of how the Arbitrator chose to draft the award. In so doing, Randazza fails to show clear and convincing evidence that a ground exists to vacate the award.

Randazza also argues that the record is devoid of corroboration that Liberty paid Oron $275,000—which he claims undermines Plaintiffs' actual damages. Randazza never raised this issue during the arbitration proceeding. In light of that fact, Randazza cannot claim that the Arbitrator's conclusion that Excelsior was damaged by that repayment of those funds lacks evidentiary support.[24] Regardless of Randazza's attempt to make arguments he failed to raise at arbitration or in his post-arbitration briefing, there is evidentiary support in the record for the Arbitrator's finding. Mr. Gibson specifically testified regarding the settlement at the hearing:

> Q:    Was the Brownstein firm able to eventually enter a new settlement agreement with Oron?
> A:    Yes, they were.
> Q:    Under the new settlement terms, did the company agree to forego half of the $550,000 settlement?
> A:    Yes.
> Q:    So you resettled for $275,000; is that correct?
> A:    That's correct.
> Q:    Did the company agree to release the other half, the other $275,000 back to Oron?
> A:    Yes, we did. It came first to us, and then we transferred it to Oron.

**Exhibit 3 at 765:25-766:14.** Plaintiffs also dispute Randazza's claim that Plaintiffs failed to produce communications relating to the resettlement of the Oron agreement. Plaintiffs produced the non-privileged communications to opposing counsel and prepared a privilege log for those that were privileged. Additionally, Plaintiffs produced and utilized the executed resettlement agreement

---

[24] Randazza raises another new argument—that the provision of the original settlement agreement between Oron and Liberty, in which Liberty agreed to dissuade others from bringing suit against Oron, violates public policy because it may have been construed to prevent Randazza from representing other parties against Oron. First, Randazza never raised this issue during the arbitration or in his post-arbitration briefing, thus he cannot possibly argue that the Arbitrator committed some manifest disregard of the law with respect to his findings. Even so, the obvious problem with Randazza's argument is that the settlement agreement was not a restriction of anyone's right to practice. The agreement simply stated that Liberty would dissuade others from bringing suit against Oron. Randazza's conduct prompted allegations that Liberty breached the agreement by aiding and encouraging other parties to sue Oron. Even if this provision were a violation of the rules of professional conduct, a separate and independent basis existed for resettling the Oron litigation—utilizing a hacker to improperly and likely unlawfully obtain confidential and privileged information from Oron—making Randazza's argument moot.

GREENE INFUSO, LLP
3030 South Jones Boulevard Suite 101
Las Vegas, Nevada 89146
(702) 570-6000

51

with Oron during the Arbitration hearing.  *See* **Exhibit 9 (Arb. Ex. 386).**

   **iii. The Arbitrator did not err in his unjust enrichment determination**

  The evidence at arbitration showed that Randazza conducted pro-bono litigation while accepting salary from the Company, yet failed to disclose or turn over an award of $55,000 in attorney's fees he recovered in the pro-bono case.  Randazza had proposed the pro-bono project to Excelsior, which Excelsior accepted under the condition that Randazza comply with his Employment Agreement and represent the client as General Counsel of Excelsior.  Randazza's Employment Agreement specifically contemplated that when Randazza conducted pro-bono cases it would be under the auspices of Excelsior's legal department and that the work be done in a manner that would allow any benefits from the representation to flow to the company.  Randazza never disclosed the fee award he received for work on those pro bono matters.

  Additionally, Randazza was unjustly enriched by the $5,000 contribution made by James Grady to benefit the Company in the Oron litigation.  Even though Excelsior was footing the entire bill for the Oron litigation, Randazza never informed Excelsior of the $5,000 contribution, never turned the money over to Excelsior, and at arbitration was unable to identify what he specifically used those funds for (other than to line his own pockets).  In light of these facts, the Arbitrator ordered that Randazza reimburse Excelsior for the unjust enrichment he benefitted from. ***See*** **complete discussion in Excelsior's Post-Arbitration Brief, Exhibit 8 at 71:11-72:10.**  In his Opposition, Randazza newly alleges that the $5,000 Grady gave to him was not earmarked for Liberty's lawsuit against Oron, in particular, but was given to him to be used at his discretion for anti-piracy issues.  Randazza submits a declaration from Grady, who incidentally is the individual who facilitated the use of a hacker in the Oron matter, to support this new claim.  However, Randazza's sworn testimony at arbitration *directly contradicts* the Grady declaration, which was not presented at Arbitration and, therefore, cannot be a basis to not confirm the IAA:

> Q.  During this time period, you entered a retainer agreement with Mr. Grady, correct?
> A.  I did.
> Q.  And Mr. Grady contributed $5,000 to going after Oron, correct?
> **A.  He contributed to Liberty's legal fees, yes.**
> Q.  You kept Mr. Grady's $5,000, correct?
> A.  I didn't keep it.  I put it toward the expenses for this case.
> Q.  How did you do that?

GREENE INFUSO, LLP
3030 South Jones Boulevard Suite 101
Las Vegas, Nevada 89146
(702) 570-6000

A.  I don't recall.  I'm sure I have a record of where it went.

**Exhibit 3 at 602:13-25.**  In yet another example of Randazza's penchant to change his story to suit his needs regardless of whether he is under oath or not, Randazza unequivocally testified, indeed volunteered, at arbitration that the $5,000 from Grady was a contribution towards Liberty's legal fees.

> After considering the evidence presented, the Arbitrator concluded:
>
> U.    Mr. Randazza was unjustly enriched in the amount of $60,000. Of that amount, $55,000 was paid to and received by Mr. Randazza's law firm, rather than E/L, in connection with (1) Mr. Randazza's ostensibly pro bono representation in connection with the so-called "Righthaven cases," of which E/L was generally aware and consented to (A) with the understanding and on the condition that Mr. Randazza was acting as a faithful, compensated E/L employee, including in compliance with his employment agreement, with costs of the representation advanced by E/L, including compensation as employees of Mr. Randazza and his legal assistant Erika Dillon, and (2) unaware that compensation was to be or actually paid to Mr. Randazza, via his law firm, until after the fact, indeed after Mr. Randazza's resignation from E/L employment. Mr. Randazza also received $5,000 from James Grady, in connection with E/L's Oron litigation. Although Mr. Randazza testified, without corroboration, that Mr. Grady's payment was used for Oron litigation expenses, Mr. Randazza did not disclose the receipt of the Grady $5,000 payment to E/L. In the circumstances, and under principles of unjust enrichment, all compensation paid to or for the benefit of Mr. Randazza should have been paid directly to E/L or turned over to E/L by Mr. Randazza ---neither of which was done, immediately or ever.

**Exhibit 1 to Plaintiffs' Motion for Confirmation, ECF No. 104-1 at 18-19.**  The foregoing does not present any basis upon which to withhold confirmation of the IAA with respect to Excelsior's counterclaim for unjust enrichment.

Finally, and as mentioned previously, Randazza's claim that the Arbitrator "misapprehended" the facts and the law in the instant case is not a ground to vacate the arbitration award.  Randazza fails to present clear and convincing evidence that the Arbitrator manifestly disregarded some specific legal mandate, and as noted previously, there was substantial evidence in the record for the Arbitrator to come to his conclusion that Randazza was unjustly enriched.

**Exhibit 8 at 71:11-72:10; IAA at 18-19.**

> ### iv.    *Randazza has not shown reason why the Arbitrator's ruling with respect to conversion/spoliation should not be confirmed.*

The IAA includes a finding that Randazza deliberately spoliated evidence and committed conversion with respect to Excelsior's files, data, and equipment when Randazza caused both his

GREENE INFUSO, LLP
3030 South Jones Boulevard Suite 101
Las Vegas, Nevada 89146
(702) 570-6000

53

**GREENE INFUSO, LLP**
3030 South Jones Boulevard Suite 101
Las Vegas, Nevada 89146
(702) 570-6000

company-issued laptop and the laptop of his legal assistant to be wiped of all data contained therein in the days leading up to his resignation.  The overwhelming evidence was discussed in **Exhibit 8 at 5:18-9:7; 70:2-71:6**.  The evidence confirmed that Randazza purposely destroyed evidence off his computer by running data-wiping software on his computer on four different occasions from August 28-30, 2012. ***Id***.  The same software was run on Randazza's assistant's laptop on August 29, 2012.  ***Id***.  As a result of the software being run, "[n]o deleted files could be recovered from the unallocated space of either device due to the use of [the software] Disk Utility Secure Erase." **Exhibit 9 (Arb. Ex. 305 at p. 3 of 41); Exhibit 4 at 978:20-981:19, 982:17-21, 985:5-8.**  Randazza attempted to justify his actions at Arbitration, as he does here, by claiming that he only ran the wiping software to protect his privacy and the privacy of his clients.[25]

The Arbitrator found Randazza's position to be incredible and meritless:

In the circumstances, Mr. Randazza's generalized and unspecified claims of privacy --- in attempted justification of his ordered complete and multiple wipings of company-owned computers --- cannot be accorded weight or credibility. By the same token, that ordered conduct raises an inference that whatever was deleted was known and intended by Mr. Randazza to be harmful to him and any claims and contentions which he might make in any dispute with E/L --- i.e., deliberate spoliation, in addition to conversion.

Mr. Randazza cannot escape liability for spoliation or conversion --or, additionally, violation of his fiduciary duties as an employee, executive and general counsel of E/L, by reason of the same conduct --- by claiming, as he has, that Respondents have not shown any specific or tangible injury by reason of his conduct in causing company-owned computers to be completely wiped of all data prior to their resisted and belated return. In the circumstances---and paraphrasing former Defense Secretary Donald Rumsfeld ---neither Respondent should bear any burden or responsibility to come forward with any evidence of damage, when they do not know what they do not know. As stated above—with his actual exclusive knowledge of what was on the computers' hard drives, before and because he ordered them to be completely wiped and, in the instance of his returned laptop, multiply wiped before ultimate return--- Mr. Randazza committed spoliation of evidence, as well as improper conversion of his employer's files, data and equipment and, in so doing, also violated his fiduciary duties owed to E/L.

---

[25] Randazza also claims that neither Nevada nor California recognizes causes of action for spoliation and that Excelsior did not make such a claim.  Randazza is correct that spoliation is not a cause of action but Plaintiffs provided the Arbitrator with a significant amount of case authority which stands for the proposition that the Arbitrator could and should sanction Randazza for deliberate spoliation of evidence.  **Exhibit 8 at 5:18-9:7.** JAMS Employment Arbitration Rule 29 also vests the Arbitrator with authority and discretion to sanction Randazza.  Randazza's argument that the rules don't require the parties to exchange discovery until the Arbitration commences is irrelevant to whether he spoliated evidence while on notice of the dispute between he and the Excelsior and was under an obligation to preserve it.

GREENE INFUSO, LLP
3030 South Jones Boulevard Suite 101
Las Vegas, Nevada 89146
(702) 570-6000

**Exhibit 1 to Plaintiffs' Motion for Confirmation, ECF No. 104-1 at page 17.**

Randazza claims the Arbitrator erred in concluding that he spoliated evidence and/or converted Excelsior's documents and files by deleting his laptop and uploading Excelsior documents to a cloud-based server which prevented Excelsior from accessing its own documents and data.[26] As highlighted above, there was substantial evidence which allowed the Arbitrator to find that Randazza spoliated the evidence and committed conversion. Randazza's attempt to reargue the facts does not supply this Court with substantial evidence to conclude that the Arbitrator's findings in this respect were arbitrary or capricious nor is there evidence that the Arbitrator manifestly disregarded the law.[27]

Finally, Randazza attempts to shift the blame off his own spoliation and argue that the Arbitrator's sanctions are unfair because one of Excelsior's non-management employees testified at the Arbitration that he no longer had communications between himself and Randazza from 2012. With respect to Randazza's argument regarding the employee's testimony, the Arbitrator noted: "Mr. Vorrias's admitted deletion of his emails with Mr. Randazza was done without knowledge of their significance in connection with the dispute underlying this arbitration and, in the event, is not attributable to either Excelsior or Liberty, because he was not a managing agent of either entity." **Exhibit 1 to Plaintiffs' Motion for Confirmation, ECF No. 104-1 at page 11 n.8.** Randazza's claim that by holding him, an experienced attorney, to a different standard than a non-management employee of Excelsior with only limited knowledge of the instant litigation was a double standard that cannot be condoned is entirely unpersuasive. Nonetheless, even if such a decision was an error (it was not), it still would not be grounds to vacate the award and Randazza provides no authority

---

[26] Randazza's claim that he wiped his client's computers without their knowledge or consent in order to comply with the Rules of Professional Conduct by protecting attorney client privileged documents is ludicrous. Nothing in those rules would condone or support such conduct. Moreover, there are certainly other avenues that were available to protect any alleged privileged data on his company-issued laptop. Randazza's claim to have wiped his laptop to protect other clients is an obvious smokescreen.

[27] Randazza also mischaracterizes the Interim Arbitration Award. He claims that the Arbitrator "reserved his decision on damages for spoliation and/or conversion pending further evidentiary evidence of data destruction." That statement is not accurate. While the Arbitrator did state that the amount he will grant for the conversion/spoliation (above and beyond the $3,215.98 Excelsior incurred in conducting a forensic examination of the laptops) was yet to be determined, his decision on the value of said award is not conditioned upon either party presenting additional evidence. **Exhibit 1 to Plaintiffs' Motion for Confirmation at pages 23-24.**

which indicates otherwise.

>                   ***v.  Randazza's disagreement with the Arbitrator's decision that
>                   disgorgement is a permissible remedy for his breaching his
>                   fiduciary duties is not a permissible basis to withhold confirmation
>                   of the IAA.***

The IAA awarded Excelsior $197,000.00 as disgorgement representing a small portion of Randazza's employment compensation (including salary and bonuses) paid to him during his employment. The disgorgement was based on Randazza's violations of fiduciary duty owed to Excelsior/Liberty in connection with the TNAFlix litigation and MegaUpload cases, during Randazza's concurrent representation of XVideos and/or XNXX during his employment by Excelsior, and for spending excessive, undisclosed, time on non-Excelsior/Liberty matters far beyond contractually-permitted time under his employment agreement. **Exhibit 1 to Plaintiffs' Motion for Confirmation, ECF No. 104-1 at page 24**. The parties provided extensive briefing to the Arbitrator regarding the issue of whether or not disgorgement was an available remedy. Moreover, the parties' experts also provided opinions and case citations for the Arbitrator to consider.

Randazza claims that the Arbitrator erred both legally and factually in granting the remedy of disgorgement for his breaches of fiduciary duty and in finding he breached his duty in the first place. Specifically, Randazza claims that there was (a) no precedent for attorney fee disgorgement for the Arbitrator to rely upon; (b) there was no breach of fiduciary duty, causation, or harm; (c) wage laws prohibit in-house counsel from disgorging earnings; and (d) there was no actual harm or oppression, fraud, or malice warranting disgorgement (which he claims is punitive-damage-like).

All of Randazza's arguments lack merit. Randazza does not allege the Arbitrator's disgorgement award was the product of evident partiality, misconduct, or the Arbitrator exceeding his powers. Instead, Randazza only states that the disgorgement order was issued in manifest disregard of the facts and the law. Accordingly, Randazza appears to be challenging this decision based on the two limited common law grounds to vacate the award. Randazza fails to present clear and convincing evidence of either ground.

GREENE INFUSO, LLP
3030 South Jones Boulevard Suite 101
Las Vegas, Nevada 89146
(702) 570-6000

56

GREENE INFUSO, LLP
3030 South Jones Boulevard Suite 101
Las Vegas, Nevada 89146
(702) 570-6000

As an initial matter, Plaintiffs introduced a substantial amount of evidence to provide a proper factual basis to establish Randazza's breaches of fiduciary duties and/or malpractice. A summary of that evidence presented with regard to the TNAFlix litigation, MegaUpload litigation, Randazza's concurrent representation of XVideos and/or XNXX during his employment by Excelsior, and Randazza's excessive and undisclosed time spent on non-Excelsior/Liberty matters far beyond contractually-permitted time under his employment agreement can be found in **Exhibit 8 at 29:15-40:12; 53:4-57:11; 72:23-73:15; and Exhibit 14 hereto, Excelsior's Post-Arbitration Reply Brief at 18:7-25:22**. Randazza's attempts to relitigate the facts before this court is improper and should not be considered. The Arbitrator had a sufficient factual basis for his determination that Randazza breached his fiduciary duties to Excelsior/Liberty and he presents no clear or convincing evidence that the Arbitrator's finding otherwise was arbitrary or capricious.

With respect to the Arbitrator's alleged legal errors, there is no basis to conclude that the Arbitrator manifestly disregarded the law. Both parties retained legal ethics experts in this case who gave conflicting opinion testimony regarding the applicability of disgorgement as a potential remedy in general and its application to the instant case. After the Arbitration was completed, the parties then filed post-arbitration briefs and reply briefs to address the legal and factual issues before the Arbitrator. Both parties presented authority on whether disgorgement was an appropriate remedy in this case. A discussion of the legal analysis on this topic presented by Excelsior can be found in **Exhibit 8 at 64:13-70:1**.[28] Having reviewed the authority submitted by both parties, the Arbitrator interpreted the law and applied them to the facts of the instant case—ultimately deciding that disgorgement of a portion (much less than Excelsior requested) of Randazza's salary and bonuses was appropriate. **Exhibit 1 to Plaintiffs' Motion for Confirmation, ECF No. 104-1 at pages 19-22 (including footnotes 17-20 which contain a detailed analysis of the Arbitrator's**

---

[28] It should also be noted that in addition to the authority cited in Excelsior's Post-Arbitration Brief on this topic, a recently issued decision by the Georgia Court of Appeals also supports Excelsior's position. *Helms & Greene, LLC v. Willis*, 773 S.E.2d 491, 495 (Ga. Ct. App. 2015), *reconsideration denied* (July 23, 2015)(law firm could proceed on its breach of fiduciary duty claim against its former managing member, who engaged in marketing activities for his separate business while employed by the firm, even though law firm failed to demonstrate that it incurred damages or that managing member obtained benefit from his marketing activities, where law firm sought alternative remedy that permitted recovery of compensation paid by law firm).

**GREENE INFUSO, LLP**
3030 South Jones Boulevard Suite 101
Las Vegas, Nevada 89146
(702) 570-6000

**legal reasoning).** The fact that the Arbitrator ultimately interpreted the conflicting legal authority in favor of Excelsior is not evidence that the Arbitrator manifestly disregarded the law.[29] Even if this Court believed, as Randazza claims, that the Arbitrator erred in his interpretation of the law such an error would not be grounds to vacate the award.

Randazza raises, for the first time, an argument that the Arbitrator could not have granted disgorgement to an in-house attorney because California labor laws prevent the same. Randazza never raised this argument during the Arbitration or in his post-arbitration briefing. ***See* Exhibits 10 and 13.** Plaintiffs are unsure how Randazza can reasonably claim the Arbitrator erred or manifestly disregarded a law which had nothing to do with the instant dispute and was never even addressed with the Arbitrator. Additionally, the law in question, California Labor Code Section 221, is entirely inapplicable. The purpose of that law is to prevent "secret deductions or 'kickbacks' that made it appear as if an employer was paying wages in accordance with an applicable contract or statute but in fact paying less." *Steinhebel v. Los Angeles Times Commc'ns*, 126 Cal. App. 4th 696, 707, 24 Cal. Rptr. 3d 351, 358 (2005). Randazza provides no authority for the proposition that an award of disgorgement would violate the law or that it is in any way designed to prevent such a result.

Finally, Randazza's claim that the Arbitrator erred in granting what Randazza characterizes as punitive damages is also without merit. The Arbitrator did not order punitive damages—and nowhere in the Interim Arbitration Award does the Arbitrator indicate he is ordering punitive damages. Randazza likens disgorgement to punitive damages because the Arbitrator noted that one of the rationales for why disgorgement or fee forfeiture is necessary (especially in cases where harm is difficult to prove) is to deter. The Texas Supreme Court explained the issue as follows:

> To limit forfeiture of compensation to instances in which the principal sustains actual damages would conflict with both justifications for the rule. It is the agent's disloyalty, not any resulting harm, that violates the fiduciary relationship and thus impairs the basis for compensation. An agent's compensation is not only for specific results but also for loyalty. Removing the disincentive of forfeiture except when harm results would prompt an agent to attempt to calculate whether particular

---

[29] It should also be noted that other than Randazza's subjective belief, his claim that the Arbitrator did not consider the factors to determine the extent of the forfeiture is entirely unsupported. The fact that the Arbitrator did not explain every detail regarding how he came to his ultimate decision does not mean his decision was in error or that he manifestly disregarded the law.

> conduct, though disloyal to the principal, might nevertheless be harmless to the principal and profitable to the agent. The main purpose of forfeiture is not to compensate an injured principal, even though it may have that effect. Rather, the central purpose of the equitable remedy of forfeiture is to protect relationships of trust by discouraging agents' disloyalty.

*Burrow v. Arce*, 997 S.W.2d 229, 238 (Tex. 1999). This reasoning can hardly be said to transform the equitable remedy of disgorgement or forfeiture into punitive damages. Further, this argument was never brought before the Arbitrator which means Randazza has no evidence that the Arbitrator manifestly disregarded the law in his determination.

### vi. Remittance of the trust funds and the ordered accounting were appropriate.

The IAA requires Randazza to turn over to Plaintiffs all <u>Oron</u>-related client funds and, further, an additional $30,000 of non-Oron-related client funds of Plaintiffs---which funds Randazza had unilaterally decided to withhold in his attorney trust account throughout the pendency of the dispute. The Arbitrator also ordered an accounting of that trust account to ensure compliance with the ordered remittance of the trust fund dollars and to ensure no other Excelsior settlement amounts were received by Randazza that Excelsior is unaware of. The JAMS Employment Arbitration Rules & Procedures specifically provide:

> The Arbitrator may grant any remedy or relief that is just and equitable and within the scope of the Parties' agreement, including, but not limited to, specific performance of a contract or any other equitable or legal remedy.

**Exhibit 17, JAMS Employment Arbitration Rules & Procedures Rule 24.**

A brief history of the Oron settlement funds is necessary for the Court to understand the misrepresentations made by Randazza with respect to these funds. Prior to Randazza's resignation from the company in August 2012, Liberty settled its copyright infringement lawsuit against Oron. As part of that settlement, Oron agreed to pay $550,000 to Liberty in exchange for the release of its claims. The entire $550,000 was deposited into Randazza's attorney trust account prior to his resignation from Excelsior. Randazza retained the funds in his trust account even after his resignation by resorting to self-help and claiming he had a right to hold those funds hostage as disputed funds. Oron later filed an arbitration demand against Liberty and Liberty re-settled with Oron and agreed to pay back $275,000 to Oron. Randazza released $273,000 of the $550,000 of

GREENE INFUSO, LLP
3030 South Jones Boulevard Suite 101
Las Vegas, Nevada 89146
(702) 570-6000

Liberty's funds he was holding hostage because, admittedly, it exceeded the amount Randazza claimed was actually in dispute in the arbitration he filed against Excelsior/Liberty. Those funds were used by Liberty to satisfy the resettlement with Oron. Randazza still unlawfully retained the remaining approximately $275,000 of Liberty's money in his trust account. Plaintiffs previously addressed the authority of the Arbitrator to order an accounting. Randazza also claims the Arbitrator erred in ordering the return of an additional $30,000 wrongfully withheld in his trust account. If something were factually incorrect or improper, as Randazza claims there was regarding the additional $30,000 in settlement funds in his trust account, Randazza would have opposed that request in his post-arbitration briefing or would have served upon the Arbitrator a request to correct an error in the IAA pursuant to JAMS Rule 26. Randazza did not oppose that evidence at the hearing or in his post-arbitration briefing, nor has he made an application to the Arbitrator to correct his award. Instead, Randazza raises the issue now in an attempt to challenge the entire case before this Court. Such an action is improper and Randazza provides no evidence of a ground upon which the IAA could be vacated.

Finally, Randazza claims that the Arbitrator's requirement that Randazza pay interest on the funds he improperly withheld for nearly three years was improper and a manifest disregard of the law because attorney trust accounts are not required to be interest bearing accounts.[30] As noted previously, the Arbitrator specifically took notice of the frivolousness of Randazza's claims and the improper purpose for which he had been holding the funds in dispute. The Arbitrator refused to believe Randazza's claims were brought in good faith. In light of that fact, the Arbitrator acted within his discretion to grant the aforementioned interest on those funds as he clearly believed such an award was just and equitable. **Exhibit 17, JAMS Employment Arbitration Rules & Procedures Rule 24.** Randazza presents no evidence that the Arbitrator manifestly disregarding the law in granting interest on the improperly retained funds.

---

[30] Randazza also argues that by setting the value of interest at 10 percent, the Arbitrator committed manifest disregard of the law. As addressed previously, that argument is meritless.

GREENE INFUSO, LLP
3030 South Jones Boulevard Suite 101
Las Vegas, Nevada 89146
(702) 570-6000

*vii.*     ***Return of company issued laptop***

During the arbitration, Randazza offered testimony regarding a second laptop that Excelsior issued him during his employment (separate from the laptop he eventually did return which was wiped).  Evidence at the Arbitration suggested that Randazza never returned that second laptop.  **Exhibit 1 at 197:15-19**; **Exhibit 3 at 772:16-19**.  Excelsior had a counterclaim for conversion and requested in its post-arbitration brief that Randazza be ordered to return the second laptop.  Randazza did not oppose or address this request in his reply brief.  **Exhibit 10.**.  The Arbitrator ordered Randazza to return the laptop within 10 days of the issuance of the IAA.  Randazza did not comply and took the position that the computer -- from which he admittedly produced thousands upon thousands of pages of Excelsior/Liberty documentation during discovery -- is not actually company-owned computer.[31]  Excelsior responded to Randazza's counsel indicating that it had no wish to retain a computer that did not belong to it, but because Randazza had not disputed ownership in the post-arbitration briefing and because Excelsior/Liberty justifiably did not put much credence in Mr. Randazza's representations, it did expect the computer to timely be produced so that it could ensure it was the computer from which the documents had been produced and, if so, determine whether it was company property.  Randazza countered offering to turn the computer over to a third party at his expense to determine ownership of the computer.  Excelsior/Liberty refused wishing to handle the determination of ownership without Randazza's involvement, and Randazza, to date, has not produced the computer.

Randazza states he cannot return a computer that he claims "likely does not exist."  Randazza claims that because the Arbitrator ordered him to return the computer, the Arbitrator's award is factually unsupported.  Excelsior cited in its post-arbitration brief the testimony from the hearing in which Randazza admitted that he had a second computer which may not have been returned.  Excelsior also specifically sought the return of the computer in its post-arbitration brief,

---

[31] The fact that Randazza claimed to have produced thousands of documents stored on this computer during discovery makes the allegation in his opposition that he has no way of knowing what computer he is expected to return especially meritless.  That said, as previously stated, if the award of spoliation damages and return of the laptop is the only reason the IAA would not otherwise be confirmed, Excelsior and Liberty would waive their right to such remedies and request that the IAA be confirmed in all other respects.

GREENE INFUSO, LLP
3030 South Jones Boulevard Suite 101
Las Vegas, Nevada 89146
(702) 570-6000

1   yet, Randazza inexplicably failed to even dispute that he had such a laptop.   Under the

2   circumstances, Randazza cannot claim the Arbitrator had no basis in which to order return of the

3   laptop.  Additionally, Randazza had ample time to inform the Arbitrator of such an error, if indeed

4   an error had been committed, but he has made no application to the Arbitrator requesting such a

5   correction.  For these reasons, Randazza lacks clear and convincing evidence that the Arbitrator

6   exceeded his powers or that his award was arbitrary or capricious.

7   **IV.      CONCLUSION**

8          Randazza's Opposition is a classic example of an attempt to throw everything at the wall

9   in the hope that something will stick.  However, none of Randazza's arguments opposing

10  confirmation of the IAA have merit.  Plaintiffs have demonstrated that the IAA can and must be

11  confirmed under both state and federal law and respectfully request that this Court issue an order

12  confirming the IAA in full.

13         DATED this 7 day of April, 2017

14                                    GREENE INFUSO, LLP

15                                       /s/ James D. Greene
                                       James D. Greene, Esq.

16                                    Nevada Bar No. 2647
                                       3030 South Jones Boulevard, Suite 101

17                                    Las Vegas, Nevada 89146

18

19

20

21

22

23

24

25

26

27

28

**GREENE INFUSO, LLP**
3030 South Jones Boulevard Suite 101
Las Vegas, Nevada 89146
(702) 570-6000

I am employed by the law firm of Greene Infuso, LLP in Clark County.  I am over the age of 18 and not a party to this action. My business address is 3030 South Jones Boulevard, Suite 101, Las Vegas, Nevada 89146.

On April 7, 2017 I served the document(s), described as:

**REPLY IN SUPPORT OF MOTION FOR ORDER CONFIRMING INTERIM ARBITRATION AWARD**

**DECLARATION OF WENDY M. KRINCEK IN SUPPORT OF REPLY IN SUPPORT OF MOTION FOR ORDER CONFIRMING INTERIM ARBITRATION AWARD**

☒    by placing the ☐ original ☒ a true copy thereof enclosed in a sealed envelope addressed as follows

☐  a.  ECF System *(You must attach the "Notice of Electronic Filing", or list all persons and addresses and attach additional paper if necessary)*

☒  b.  BY U.S. MAIL. I deposited such envelope in the mail at Las Vegas, Nevada.  The envelope(s) were mailed with postage thereon fully prepaid.

Zachariah Larson, Esq.
Matthew Zirzow, Esq.
LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101

I am readily familiar with Greene Infuso, LLP.'s practice of collection and processing correspondence for mailing.  Under that practice, documents are deposited with the U.S. Postal Service on the same day which is stated in the proof of service, with postage fully prepaid at Las Vegas, Nevada in the ordinary course of business.  I am aware that on motion of party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after the date stated in this proof of service.

☐  c.  BY PERSONAL SERVICE.

☐  d.  BY DIRECT EMAIL

☐  e.  BY FACSIMILE TRANSMISSION

I declare under penalty of perjury that the foregoing is true and correct.

Dated, this 7th day of April, 2017

/s/ Frances M. Ritchie
An employee of Greene Infuso, LLP

GREENE INFUSO, LLP
3030 South Jones Boulevard Suite 101
Las Vegas, Nevada 89146
(702) 570-6000

63