Arbitration Proceedings ~ Volume I ~ February 9, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

```
 1              ARBITRATOR HABERFELD:  And therefore
 2     what?
 3              MR. WHITE:  The only -- so the probative
 4     value of the printouts is perhaps redundant.  It's
 5     just showing documents reflecting what
 6     Mr. Randazza testified.
 7              ARBITRATOR HABERFELD:  So it would be
 8     corroborative --
 9              MR. WHITE:  Yes.
10              ARBITRATOR HABERFELD:  -- of his
11     testimony?
12              I'm going to reserve that in the event
13     that it's challenged, I will give you another shot
14     at corroborating.
15              MR. WHITE:  Yes, Your Honor.
16              ARBITRATOR HABERFELD:  But right now, no.
17     BY MR. WHITE:
18        Q.   Let's talk about some of the other claims
19     regarding your other matters, Mr. Randazza.  You
20     testified before about how common it was in the
21     industry for the people representing pirates to
22     make these offers to try to conflict you out or to
23     offer what you might colloquially call bribes.
24              Do you remember that?
25        A.   Yes.
```

Arbitration Proceedings ~ Volume I ~ February 9, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 241

1      Q.   So did that happen with TNAFlix as one of
2   the -- one of the matters they cited?
3      A.   Yes, it did.
4      Q.   Now, in that case, was there an issue of
5   some purported buyer that might be interested in
6   buying?
7      A.   There was.
8      Q.   And did you bring that up to the counsel
9   for TNAFlix?
10      A.   I did.
11      Q.   What was the purpose in negotiation of
12   raising this issue of potential buyer?
13      A.   Probing information about them, try to
14   get them to get excited about getting a buyer, up
15   the amount of the settlement agreement.
16      Q.   Was there any buyer that you knew of?
17      A.   Nobody that I had in mind.
18      Q.   Was it hypothetically possible there
19   could be a buyer someplace?
20      A.   Of course, it's hypothetically possible.
21   But not like I had a buyer who said, I want to buy
22   a Website that you just sued.
23      Q.   So the respondents have submitted
24   exhibits showing a discussion back and forth
25   between you and TNAFlix counsel --

Arbitration Proceedings ~ Volume I ~ February 9, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 242

1      A.   Yes.

2      Q.   -- about possibly brokering the sale and

3   who would get the percentage of what?

4      A.   Uh-huh, yes.

5      Q.   Did you understand during any of this

6   that that was actually ever going to amount to

7   anything?

8      A.   This, like anything with Val Gurvits,

9   it's always very suspect.  So, no, I did not

10  expect it would ever amount to anything except

11  perhaps Val telling TNAFlix to up the amount of

12  settlement.

13     Q.   Now, we talked about Megaupload and the

14  discussion in that case, as well?

15     A.   Yes.

16     Q.   Did you expect the negotiations there

17  with the opposing counsel to result in anything

18  actually going to you as opposed to Liberty?

19     A.   No, I did not.

20     Q.   You occasionally go as far as to

21  produce -- create documents kind of playing along

22  with the other side?

23     A.   Yes.

24     Q.   What was your ultimate purpose in doing

25  that?

Arbitration Proceedings ~ Volume I ~ February 9, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 243

```
 1      A.   To get the most I could in the settlement

 2   that I was working on at the time.

 3      Q.   Let's talk about XVideos.

 4      A.   Yes.

 5      Q.   What was XVideos?

 6      A.   A tube site.

 7      Q.   Like the tube site you testified about

 8   this morning?

 9      A.   Yes.  Not just was, but is.

10      Q.   Did you ever make a proposal to

11   Mr. Gibson about a joint effort against XVideos, a

12   joint suit against XVideos?

13      A.   There was some discussion of that.

14      Q.   Would you look at Exhibit 28, please?

15      A.   All right.  I'm there.

16      Q.   Please let me know when you've reviewed

17   it and you recognize what it is?

18      A.   I have reviewed it.

19      Q.   Is this an e-mail from you to Mr. Gibson

20   about a proposed lawsuit against XVideos?

21      A.   It is.

22      Q.   And why at this time, January 2010, was a

23   lawsuit against XVideos feasible?

24      A.   Well, Gill was going to do most of the

25   work, and so I -- I was relying in large part on
```

Arbitration Proceedings ~ Volume I ~ February 9, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 244

1    his representations that it was a good suit.

2        Q.    What would the cost be under this

3    proposal to Liberty?

4        A.    $5,000.

5        Q.    What did you anticipate was the likely

6    outcome?

7        A.    Well, at that point we thought we would

8    at least get the $5,000 back, but probably get

9    more back.  And, you know, a lot of it, I was

10   listening to Gill at the time as to it being a

11   good target.

12       Q.    Now, did you subsequently learn more

13   about XVideos?

14       A.    I did.

15       Q.    Did they ever approach you to see if you

16   would represent them?

17       A.    Actually, I got approached by their

18   French counsel.

19       Q.    And on what subject?

20       A.    There was no interest in this case here,

21   so I kind of put this aside, and we weren't going

22   forward with it.  But he asked me if I would -- if

23   I knew Gill, and that if I could speak to Gill on

24   behalf of him and his client, because Gill was

25   making some threats to them.

Arbitration Proceedings ~ Volume I ~ February 9, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 245

```
 1              I knew this French lawyer for a number of
 2    years, actually.  His name escapes me.  I can look
 3    it up tonight.  But he -- he and I used to have
 4    drinks at meetings from time to time that he would
 5    always show up at.
 6         Q.   Did you eventually represent XVideos in
 7    that matter that was brought to you?
 8         A.   Yes.
 9         Q.   And who -- well, what did you do for them
10    in that matter?
11         A.   The primary responsibility for it was
12    handled by Jessica Christensen.  But she
13    negotiated with Gill to resolve the dispute
14    between his clients and XVideos.
15         Q.   And in the course of settling that, was
16    anything done to the way that XVideos did
17    business?
18         A.   Yes.
19         Q.   What was that?
20         A.   XVideos -- you know, at the time -- let
21    me give you a little background so the answer
22    makes sense.
23              But at the time there was this program
24    that has since completely flopped.  But at the
25    time, there was a program called Vobile.  And what
```

Arbitration Proceedings ~ Volume I ~ February 9, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 246

```
 1    Vobile was purporting to do, was it was going to
 2    create a video fingerprinting database.  And every
 3    adult entertainment company that would join it was
 4    supposed to upload all of its movies to this
 5    database, which would then reduce their movies
 6    into a digital fingerprint, kind of like the
 7    hashtag we talked about earlier with torrenting.
 8            So every video can be reduced to this
 9    harsh value.  It's a numerical value that a
10    computer will recognize.  So what the theory was
11    is that Vobile would go out and sign up studios
12    that produced movies and tube sites that had
13    uploaders uploading the movies, and in order to
14    upload a movie, it would have to go through this
15    fingerprinting database.
16            Now, upon doing that, if it tripped a
17    wire that this is one of our protected videos, it
18    would then go on to whatever your -- what they
19    referred to them as Vobile rules, and your Vobile
20    rules could be really whatever you wanted them to
21    be.  Let's say somebody uploaded your entire
22    one-hour movie, well, Vobile could then either
23    trim it to three minutes if you wanted it to just
24    be a trailer, or Vobile could turn it into a
25    completely different movie, like you could make a
```

Arbitration Proceedings ~ Volume I ~ February 9, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 247

```
 1    PSA saying, Why are you trying to steal our
 2    movies?  Or you could even just have it reject it.
 3            So the person would spend all this time
 4    uploading the movie, and then it would get there,
 5    and it would say, This movie is no longer
 6    available.  Seemed like a great idea.  In fact,
 7    one of the options for it was also that it would
 8    turn the movie into a sponsored link, that then
 9    the studio would make money from.  So,
10    essentially, you are harnessing the pirates out
11    there, who are all the people uploading the stuff
12    to your Website, as your own sales force.
13       Q.   Did you think at the time that this was
14    something that if widely adopted would benefit
15    Liberty?
16       A.   Yeah.  I mean, it would have -- had it
17    worked, it would have eliminated all of the piracy
18    by users of tube sites, or it would have simply
19    turned them into a force for making money for
20    Liberty and other similarly situated studios.
21            But in order to do that, both parties had
22    to join the Vobile program and then agree that
23    they would -- the movie studios had to upload
24    their content to the fingerprinting database, and
25    the tube site had to somehow be encouraged to join
```

Arbitration Proceedings ~ Volume I ~ February 9, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

1    Vobile, and their motivations were somewhat
2    limited.
3        Q.    So how would you convince XVideos in this
4    situation to join it?
5        A.    Well, at this point, Gill was suing them,
6    and one option was, Why don't we get them to
7    become the inaugural tube site using Vobile, and
8    then I can get Corbin Fisher in as one of the
9    inaugural studios to use Vobile, and then we are
10   the first ones to do this, maybe we get advanced
11   position in the market on it.  It seemed like a
12   really good idea.
13       Q.    Did Corbin Fisher ever adopt Vobile?
14       A.    Sort of.  They -- they agreed to join the
15   program, and then they had -- there was somebody
16   there who was supposed to be uploading the videos
17   to the fingerprint database, but it was always
18   behind, and never really got done, so we only had
19   a few videos in it.  I couldn't tell you what
20   percentage, but I'm sure it was less than half,
21   and that's less than half at the time we started.
22   I don't think anything going forward was ever
23   uploaded.
24       Q.    Did Mr. Gibson ever make any decision
25   about continued participation in Vobile?

Arbitration Proceedings ~ Volume I ~ February 9, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 249

```
 1       A.   You know, we often went back and forth on

 2   it.  He -- usually the explanation to me was we

 3   don't have the resources or the manpower to upload

 4   these videos to Vobile.

 5       Q.   Now, after you started representing

 6   XVideos on that --

 7       A.   Yes.

 8       Q.   -- was there ever a situation when some

 9   of Corbin Fisher's property might have been

10   uploaded onto that tube site?

11       A.   Oh, yeah.

12       Q.   And at that stage, so we're talking now

13   in 2011?

14       A.   Yes.

15       Q.   What was the appealability of XVideos as

16   a target itself of a lawsuit?

17       A.   It was not a good one.  They didn't have

18   a membership area, so there was no -- they weren't

19   selling memberships, like the GLBT sites, the ones

20   that we got the default judgment against because

21   they were committing discovery violations.

22            So tracing their money was extremely

23   difficult.  Even having worked for them, I didn't

24   know where the heck their money was.  Also, they

25   were based offshore, and they had a pretty robust
```

Arbitration Proceedings ~ Volume I ~ February 9, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page  250

1    policy.  In fact, they didn't like the idea of

2    Vobile because they, themselves, had a better

3    fingerprinting system.

4           So with their fingerprinting system and

5    Vobile's fingerprinting system, I'm going to have

6    to show secondary liability.  I'm going to have to

7    show that this Website was a willing and active

8    participant in the piracy and not just providing

9    the Website, kind of like YouTube.

10          YouTube isn't going out there and doing

11   this.  So I'm going to have to show that they were

12   actively courting piracy, when meanwhile they had

13   adopted a system that was better than the industry

14   standard that we were trying to do, and then they

15   adopted the industry standard.

16          It was a -- you know, it was -- it was a

17   pretty bad mission, plus they had already settled

18   with Gill.  And at that point, like I said before,

19   you don't want to be the second one going after

20   one of these sites because then they just realized

21   that they are just going to get the death of a

22   thousand cuts.

23   Q.    Was the Free Speech Coalition involved in

24   pushing Vobile?

25   A.    Yes, yes.  The Free Speech Coalition is

Arbitration Proceedings ~ Volume I ~ February 9, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 251

1    the industry trade organization for the adult

2    entertainment industry.  So they saw Vobile, as

3    well, as a way that we could possibly do something

4    about movies being uploaded to tube sites.

5        Q.   Would you please take a look at

6    Exhibit 43?

7        A.   Okay.  I'm there.

8        Q.   Do you recognize what this is?

9        A.   Yes.  It's an e-mail exchange between

10   Andrew Rasmus and I.

11       Q.   So at the bottom, this looks likes he's

12   sending links to you at XVideos; is that right,

13   and asking, Can we go after them?

14       A.   Yes.

15       Q.   And can you explain your response?

16       A.   Yes.  I was explaining the Vobile system

17   to him.  I was explaining that Jessica and I had

18   personally had them sign up for Vobile.

19       Q.   What did you mean by, Thus, making an

20   ethical problem if we sue this particular Website?

21       A.   Well, that we had represented them, so

22   that seems to be a problem, as well.

23       Q.   There was reference in --

24       A.   But also I felt like -- I felt like we

25   had a problem if we were part of jamming Vobile

Arbitration Proceedings ~ Volume I ~ February 9, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 252

1    down their throat, how are we going to wind up
2    suing them?  I mean, it would have looked very bad
3    for us.  Not only that, I was afraid that we would
4    have prevailing party attorney's fees turn back on
5    us.
6        Q.   And you said something before that, you
7    say, I personally shoved Vobile down their throat
8    for the Free Speech Coalition.
9        A.   Yes.
10       Q.   What did that mean?  Did you mean to
11   convey that you were representing the Free Speech
12   Coalition?
13       A.   No, because I never represented FSC.  I
14   guess FSC -- it was an FSC project, and they were
15   aware of that, because we were a member of FSC.
16       Q.   So when you are saying you are shoving it
17   down their throat, are you talking about
18   convincing them as your client?
19       A.   Yes.  I should have made that a little
20   more clear there.
21       Q.   Now, do you know -- well, first of all,
22   let me go forward.  Mr. Rasmus is saying there is
23   no DMCA agent in this e-mail.
24       A.   Yes.
25       Q.   Do you see that?

Arbitration Proceedings ~ Volume I ~ February 9, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

```
 1        A.    Yes.
 2        Q.    What's the significance of that in terms
 3   of whether or not the tube site is a good target
 4   for Liberty?
 5        A.    Well, one, I don't think he was correct
 6   on that, because I am reasonably certain that they
 7   had a DMCA agent, and I'm certain they had one by
 8   then.
 9             Also, if you have a DMCA agent, that's
10   where you send takedown notices to.  So if you
11   have the -- what is it, you sign up, you put a
12   DMCA agent on this public database, and that's
13   where you can send your takedown requests.  It
14   would be an absolute defense to liability if you
15   have a DMCA agent, somebody sends you a takedown
16   request to that DMCA agent, and then you take it
17   down.
18             So if you don't have one, it doesn't mean
19   you are liable, but it makes it -- it gets rid of
20   that absolutely defense.
21        Q.    Was it still possible if you could
22   identify uploaders to tube sites to sue them?
23        A.    Of course.
24        Q.    And did Liberty ever do that?
25        A.    We never sued, to the best of my
```

Arbitration Proceedings ~ Volume I ~ February 9, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 254

```
 1    recollection, an uploader to a tube site.  I mean,

 2    it was so long ago.  There are so many cases.  We

 3    may have, but I have no recollection of suing an

 4    individual uploader.

 5           Wait, wait, wait.  No, I do have a

 6    recollection.  We did sue some uploaders.  We sued

 7    them by their fictitious names, by their screen

 8    names on the tube sites, and sought early

 9    discovery on them.  I'm pretty sure we did it in a

10    case called Sun Porno, which was going on at the

11    time of my termination.  I'm not sure to what

12    extent the company continued to pursue those

13    uploaders at that time.

14       Q.   Let me ask you, did you -- do you

15    remember whether or not you informed Mr. Gibson or

16    Excelsior that you were representing XVideos in

17    that particular matter?

18       A.   I don't recall making that clear or

19    unclear disclosure.

20       Q.   Did you get a written conflict waiver

21    from them?

22       A.   No.

23       Q.   Would you please take a look at

24    Exhibit 55?  That would be in the second volume.

25       A.   Okay.  Got it.
```

Arbitration Proceedings ~ Volume I ~ February 9, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

```
 1          ARBITRATOR HABERFELD:  One moment,
 2    please.
 3          Go ahead.
 4    BY MR. WHITE:
 5      Q.   Do you remember what this e-mail is
 6    about?
 7      A.   Yes.
 8      Q.   So it starts with an e-mail about some
 9    sort of clip at XVideos that might be infringing,
10    correct?
11      A.   Yes.
12      Q.   What's the reason for your response?
13      A.   Around this time, or maybe before, I had
14    a meeting with everybody at the company who worked
15    on DMCA takedown issues.  And it was always a
16    concern of mine if we were seen as going after
17    fair use, because there was -- at this time, you
18    know, this -- this law has receded a little since
19    then.  But there was a case calls Lenz versus
20    Universal, that's L-e-n-z.  In that case,
21    Mrs. Lenz filed a lawsuit under 17 USC Section
22    512(f) of the DMCA.
23          And this is -- you know, the DMCA can
24    actually sting you backwards as a copyright owner.
25    If you file a bogus or unsupportable DMCA takedown
```

Arbitration Proceedings ~ Volume I ~ February 9, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

1    notice, you are liable under 17 USC Section 512

2    (f).

3         Lenz versus Universal was one where

4    Universal Music got sued because they -- it was

5    very clearly fair use, and on a motion to dismiss,

6    it seemed that the law was -- the law had

7    developed that if -- you just had to not consider

8    fair use or it had to be obvious fair use.

9         So what I directed at the company was

10   that before anybody did a takedown -- in fact, I

11   think we changed the online form that we used to

12   report piracy links to have a checkbox that says,

13   I have considered fair use.  And what I directed

14   was I've considered fair use, and it's not fair

15   use.  I've considered fair use, and it is fair

16   use, in which case it is nothing.  Or I'm not

17   sure, and I'm referring it to the attorney.

18       Q.   So was this an example of a particular

19   video that you thought might have a fair use

20   argument?

21       A.   Yeah.  I wanted to -- I wanted to help

22   the people on this distribution list understand

23   what fair use looked like.  So here, while this

24   video was up on XVideos, mind you that it's not

25   them who uploaded it, it's a third party.  So the

Arbitration Proceedings ~ Volume I ~ February 9, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page  257

```
 1    question is:  Do we have a claim at this point

 2    against that user who uploaded that video?

 3              And it was my assessment that that is

 4    very clearly fair use, because the person who

 5    reported it to us hadn't considered that.  And

 6    what it is, it's got two clips of the films ending

 7    around 18 minutes and 30 seconds.  I don't know

 8    how long this video was in the first place, but

 9    it's essentially got -- if I remember this, and

10    I'm, you know, recalling looking at the e-mail

11    here to refresh my memory, but it was a very long

12    video with like three second shots from a whole

13    bunch of porn videos.

14              So they were all the -- well, you can see

15    the descriptive title there.  It doesn't take a

16    lot of imagination to see what it was.  But that

17    would usually represent about two to four seconds

18    of a video.

19              So if you use two to four seconds of a

20    20-minute movie, you are going to have a very hard

21    time saying that that's copyright infringement.

22    So if we filed a DMCA notice on this, that party

23    who uploaded that would have had a 512(f) claim

24    against the company, and win or lose, what we're

25    going to look like is anti-expression bullies, and
```

Arbitration Proceedings ~ Volume I ~ February 9, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 258

```
 1    we're going to look bad, and we're potentially
 2    going to have to pay attorney's fees to that party
 3    and damages.
 4        Q.   Has the scope of the law changed any
 5    since that time, 2011?
 6        A.   It's become a little harder to prove a
 7    512(f) claim, but I think even now this claim, I
 8    would say don't do this, when -- as I said here,
 9    when the report does state that it's a
10    compilation, we should err on the side of not
11    taking it down.
12        Q.   Another claim that's been made is about
13    your spending time working on your individual
14    clients as opposed to Excelsior work.
15        A.   Uh-huh.
16        Q.   Did you get -- do you recall the -- you
17    looked at first your contract with Excelsior that
18    had the disciplinary steps?
19        A.   Yes.
20        Q.   Did you get any written statements of
21    discipline saying that you were not getting
22    something done that needed to be done?
23        A.   Neither record or recollection of that.
24        Q.   Do you recall any verbal counseling that
25    you were not getting things -- completing tasks
```

Arbitration Proceedings ~ Volume I ~ February 9, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

```
 1   because you were spending too much time on private
 2   clients?
 3        A.   None.
 4        Q.   Do you have a sense of how much time you
 5   spent on Excelsior year-to-year in terms of -- in
 6   compared to, say, a 40-hour workweek?
 7        A.   Well, are we saying Excelsior or are we
 8   saying Corbin Fisher?
 9        Q.   Let's say all the Corbin Fisher
10   companies.
11        A.   You know, on average, 40-plus hours per
12   week.
13        Q.   All right.  Was there ever a time when
14   maybe for a month or two that would drop if you
15   had something busy going on in a private case?
16        A.   No.  I can -- you know, maybe at worst on
17   a -- there might have been a day when I had a lot
18   going on in a private case, and I would wind up
19   either staying late that night or making it up on
20   the weekend.
21        Q.   Would you ever -- would you notify the
22   company when you were using your paid time off
23   days?
24        A.   Yeah, but I wouldn't -- I don't think I
25   ever said in particular I'm taking PTO today to do
```

Arbitration Proceedings ~ Volume I ~ February 9, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 260

```
 1    something for an outside client.  I would just

 2    take PTO.

 3        Q.   Would you take a look at Exhibit 56,

 4    please?

 5        A.   Yes.  I see that.

 6        Q.   Do you have it before you?

 7        A.   I do.

 8        Q.   Do you recognize that e-mail exchange?

 9        A.   I do.

10        Q.   Jason asks, Are you on campus today?  You

11    say, No.  Took PTO.

12        A.   Yes.

13        Q.   Is this what you would do if you used one

14    of your days in order to work on an individual

15    matter?

16        A.   Yes.

17        Q.   And did you ever get any sort of

18    complaints or counselings when you were there

19    directed to you from the hierarchy?

20        A.   That's an awful question.  Any complaints

21    at all?

22        Q.   Okay.

23             ARBITRATOR HABERFELD:  That's why we take

24    more frequent breaks in the afternoon.

25             MR. WHITE:  Yes.
```

Arbitration Proceedings ~ Volume I ~ February 9, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

```
 1   BY MR. WHITE:
 2        Q.   You said that you didn't -- never got
 3   counseled through the counseling process on the
 4   issue of not getting things done?
 5        A.   Yes.
 6        Q.   Did you ever get counseled on any other
 7   issues, for instance, related to publicity?
 8        A.   Yes.
 9        Q.   What was that issue?
10        A.   One time Mr. Dunlap spoke to me about
11   some concerns that -- when I went to -- when I
12   did, you know, media events and things like that,
13   that I would simply use my name and not tout the
14   company.
15        Q.   Did you do anything corrective?
16        A.   I did.  You know, I think right about
17   that time, I did a spot for CNBC on online piracy.
18   And when they called me up to fact check and quote
19   check all of the stuff in the piece, I insisted to
20   them that they change my designation of Marc
21   Randazza, adult entertainment attorney or First
22   Amendment attorney, to Corbin Fisher general
23   counsel.
24        Q.   Did any counseling like that from
25   Mr. Dunlap or Mr. Gibson come to you saying --
```

Arbitration Proceedings ~ Volume I ~ February 9, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 262

```
 1    identifying any particular tasks you hadn't
 2    completed?
 3         A.   No, that never happened.
 4         Q.   Let me ask you as we approach the
 5    4:00 o'clock hour -- let me ask you about the
 6    client Bang Brothers.
 7         A.   Yes.
 8         Q.   What is Bang Brothers?
 9         A.   They are a porn company located in
10    Florida.
11         Q.   How would you compare their product to
12    what Corbin Fisher produced?
13         A.   Very different.  Bang Brothers is sort
14    of -- well, it attracts a different genre of
15    sexual orientation, to start off.  And so Bang
16    Brothers is primarily straight porn.  Corbin
17    Fisher is sightedly not.
18         Q.   And has Bang Brothers traditionally been
19    sort of aimed at a different taste or market of
20    sensibility?
21         A.   Yeah, it's more of a -- you know, it
22    tends to be more -- you know, almost -- some of it
23    is almost comedy porn, if you can wrap your head
24    around that.
25         Q.   So did Bang Brothers ever approach you to
```

000263

Arbitration Proceedings ~ Volume I ~ February 9, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 263

1    represent them as an outside client?

2        A.   Well, I represented them since -- I mean,

3    I have to check my records, but I think I

4    represented them since 2005.

5        Q.   Now, did there come a time when Excelsior

6    was considering making a purchase of another site?

7        A.   Yes.  They wanted to buy SeanCody.com.

8        Q.   What is SeanCody.com?

9        A.   Sean Cody is probably, I'd say, their

10   only real -- was their only real competitor.  You

11   know, their genre is what's known as gay for pay.

12   At least the fantasy on -- on the videos is that

13   these are straight men who are willing to engage

14   in sex with other men for the right amount of

15   money.

16       Q.   And were you tasked in any way to setting

17   up or financing that possible acquisition?

18       A.   I was not tasked with it.  I was in on

19   the meetings where we were discussing possibly

20   purchasing the -- purchasing this competitor.

21       Q.   And did you ever suggest a possible

22   financier?

23       A.   Of course, yes.  Because during the

24   conversations, there was some talk of getting

25   financing from a third-party, that my

Arbitration Proceedings ~ Volume I ~ February 9, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 264

1    understanding was they were going to charge a,

2    what I thought was a usurious interest rate on the

3    borrowed funds.  The number that I heard was 37

4    and a half percent annually.

5         Q.   So did you make any alternate

6    suggestions?

7         A.   I did.  I suggested that Bang Brothers

8    might be interested if I gave them a call in

9    financing that, because I think they only needed

10   about $5 million.  And, well, that's probably a

11   lot to everybody here, that wasn't really a lot of

12   money to Bang Brothers.

13        Q.   Did you explain when you suggested this

14   how you might have an in to suggest this to Bang

15   Brothers?

16        A.   I mean, it was so commonly known that I

17   did -- I represented them, it was so often

18   discussed.  You know, in fact, I think -- in

19   addition, I think I made a call from my cell phone

20   to their general counsel in the middle of a

21   meeting and said, you know, Hey, Mark, you know,

22   do you think we could work on some kind of a deal

23   for this.  And his position was, Yeah, let's --

24   let's talk about it.

25             That's as far as it got, but I was hoping

Arbitration Proceedings ~ Volume I ~ February 9, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

1    that at the very least, we could have a

2    competitive bid on lending us the money to get

3    that interest rate down, because we just -- can

4    you imagine the maintenance costs on $5 million at

5    37 and a half percent a year?

6        Q.   Let's talk about Eric Carrender.

7        A.   Yes.

8        Q.   Who is Eric Carrender?

9        A.   He -- I don't remember what he did, but I

10   know that he worked at the company at the same

11   time I did.

12       Q.   After you left the company, was there a

13   time when he also left the company?

14       A.   Yes.

15       Q.   Did he -- did he reach out to you for

16   assistance?

17       A.   He did.

18       Q.   Now, were you involved at all in -- let

19   me restart that.  Did he have harassment claims

20   against the company?

21       A.   He thought he did.

22       Q.   Were you involved at all in the events

23   underlying those claims?  Had that ever been

24   brought to your attention when you were at

25   Excelsior?

Arbitration Proceedings ~ Volume I ~ February 9, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

```
 1      A.   No.   Nobody ever even brought it up to
 2  me, which I found to be strange, since I was the
 3  general counsel at the time the events allegedly
 4  happened.
 5      Q.   So did you give Mr. Carrender legal
 6  advice about whether his claims were good or not,
 7  or how he should pursue them?
 8      A.   No.   I told him he had to talk to another
 9  attorney, and that I would refer him to somebody,
10  but that I didn't want to talk about his actual
11  claims.
12      Q.   Did you assist him in finding an
13  attorney?
14      A.   Yes.
15      Q.   Did you make any suggestions for how to
16  negotiate with an attorney when you are getting
17  one?
18      A.   Yeah.  Eric was kind of rambling, and --
19  you know, rambling character, and I could tell
20  that he probably -- any attorney that practiced
21  the way I do would probably look at him and say,
22  Get out of my office, if you are going to talk to
23  them that way.  So I told him to probably be a
24  little more concise when he speaks to potential
25  counsel.  And then I -- that's about the extent of
```

Arbitration Proceedings ~ Volume I ~ February 9, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 267

```
 1   it.
 2        Q.   Let's talk about the Respondents' claim
 3   that you inappropriately contacted Chip Carter --
 4        A.   Yes.
 5        Q.   -- when he was an employee --
 6        A.   Right.
 7        Q.   -- at Excelsior.
 8        A.   Right.
 9        Q.   Had you worked with Chip Carter when you
10   were at Excelsior?
11        A.   Yes.
12        Q.   And what did he do?
13        A.   He did marketing and communications.
14        Q.   And at the time you reached out to him,
15   what were you seeking?
16        A.   I had heard that there were Bar
17   complaints filed against me that had been
18   distributed to every employee at the company, and
19   I wanted to see a copy of them.
20        Q.   Now, from your observations, did you work
21   with Chip in the sense of when you had -- when you
22   had press releases that had legal issues?
23        A.   Sometimes.  Sometimes we sent them out
24   without him reviewing them, sometimes he helped
25   review and revise them.
```

Arbitration Proceedings ~ Volume I ~ February 9, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

```
 1        Q.   Did you observe that he had the apparent
 2   authority to send out press releases on his own?
 3        A.   He did not have that authority.  In fact,
 4   he was threatened to being fired if he did so.
 5        Q.   Was that one of the e-mails that we
 6   looked at earlier today?
 7        A.   Yes.
 8        Q.   Did you have an understanding that he had
 9   the ability to bind the company?
10        A.   No.
11        Q.   Mr. Randazza, there was an incident in
12   which you sent an e-mail that caused controversy.
13   Can you just very briefly say what the background
14   of that was?
15        A.   Yes.  This is what's known as the
16   "thieving little shits" e-mail.  During the -- as
17   I said before, let's go back to the BitTorrent
18   campaign, and this was very unpopular, and people
19   who -- you know, there's a whole group of people
20   who are what we call copyright abolitionists who
21   believe that enforcing copyrights this way is
22   inherently evil.
23            So somebody sent me an e-mail accusing me
24   of trying to kill gay teenagers because if they
25   got sued under this program, that they would then
```

Arbitration Proceedings ~ Volume I ~ February 9, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 269

```
 1    commit suicide rather than be defendants in a
 2    lawsuit.
 3            And I explained in this e-mail to this
 4    person I responded, and said, you know -- first of
 5    all, I don't remember the exact content of it, but
 6    I do remember saying that, you know, that was all
 7    kind of hooey.  But, also, that Corbin Fisher does
 8    have a straight product, and while it isn't
 9    actually straight porn, Jason always explained it
10    to me as it's -- it's straight cover so if there
11    is a closeted gay guy who wants to look at Corbin
12    Fisher stuff, he can point to that Website, that
13    sub Website and say that he was looking at that so
14    his wife doesn't know that he's looking at gay
15    porn.
16            So I suggested that any thieving little
17    shit who gets caught with this who doesn't want to
18    be outed can just say that they were stealing
19    that.  That person turned out to be -- turned out
20    to send that e-mail to a number of media outlets
21    saying that I had called every gay teenager a
22    thieving little shit.
23       Q.   Did some of those media outlets publish
24    it?
25       A.   Yes.
```

Arbitration Proceedings ~ Volume I ~ February 9, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page  270

```
 1        Q.   Did XBIZ publish it?

 2        A.   No.  XBIZ declined to at my request.

 3        Q.   Did you apologize for this within the

 4   company?

 5        A.   I did.  I fell on my sword about it.

 6        Q.   Would you look at Exhibit 44, please?

 7        A.   Sure.  Yes.

 8        Q.   Do you recognize what this is?

 9        A.   Yes.

10        Q.   What is it?

11        A.   This is an e-mail that I sent out

12   after -- what I had done was Vaughn Greenwalt

13   was -- he is now a lawyer, but at the time Vaughn

14   was a law clerk or intern that had come to work at

15   the company under me.  And what I did is I asked

16   Vaughn to essentially independently critique my

17   actions and how I had -- what had happened, how I

18   did it, how I responded to it, and to give me a

19   very objective opinion.  Because, you know, I

20   could very easily stand up and defend myself, but

21   I wanted to have an independent review of it.

22        Q.   After this, was there further formal

23   discipline against you?

24        A.   No.  In fact --

25        Q.   Was it something that the company tended
```

Arbitration Proceedings ~ Volume I ~ February 9, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 271

```
 1   to bring up after this point in 2011?
 2       A.   Not really.  It was -- you know,
 3   sometimes if there was some external -- if there
 4   was an interview to be granted or something,
 5   somebody would yell at me on the way out the door,
 6   Don't call anybody a thieving little shit, you
 7   know, on my way to court.  I would get -- I would
 8   get made fun of about it.
 9       Q.   Is it fair to say sometimes they would
10   joke about it?
11       A.   Well, yeah.
12       Q.   Would you look at Exhibit 380, please?
13       A.   Yep.
14       Q.   Do you recognize what that is?
15       A.   Right, there you go.  That's -- that's an
16   e-mail from Jason to me.
17       Q.   And he says, Obviously if you call anyone
18   a thieving little shit at the event, then you can
19   credit that one to your First Amendment attorney
20   credentials?
21       A.   Yes.
22       Q.   With a smiley face?
23       A.   Yes.
24       Q.   Was that the sort of tone as time went by
25   about that prior incident?
```

Arbitration Proceedings ~ Volume I ~ February 9, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 272

```
 1        A.    Yes.
 2              MR. WHITE:  Your Honor, it's 3:58, and I
 3     could go into a different area, but it would
 4     probably be like a five to ten minute area.
 5              ARBITRATOR HABERFELD:  I'm okay with it,
 6     if you would like to, or we can recess.  Whatever
 7     you prefer.
 8              MR. WHITE:  I'm fine with recessing now
 9     or whatever.
10              MS. KRINCEK:  Okay.
11              ARBITRATOR HABERFELD:  Okay.  We'll be in
12     recess until 9:00 a.m. tomorrow morning?
13              MR. WHITE:  Yes, Your Honor.
14              ARBITRATOR HABERFELD:  Okay.  See you all
15     then.
16              MR. WHITE:  And just for the record, I've
17     disclosed people I anticipate calling, depending
18     on how far we get tomorrow.  I understand from
19     Ms. Krincek that under your order, the people I
20     should anticipate possibly coming tomorrow would
21     be Mr. Gibson and the other executives of the
22     company; is that --
23              MS. KRINCEK:  Yeah.  I mean, I think
24     between finishing your direct and my cross, it
25     would probably take up the bulk of the day, and
```

Arbitration Proceedings ~ Volume I ~ February 9, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

```
 1    then you are going to have Ron Green also testify,
 2    and then we'll move onto my witnesses after that.
 3           MR. WHITE:  Okay.
 4           MS. KRINCEK:  But Jason will be my first
 5    one, and then I'm not sure what order the rest of
 6    them will be.
 7           MR. WHITE:  Very well.
 8           MS. KRINCEK:  If you need me to pin that
 9    down more, let me know.  I don't know that we'll
10    get to them tomorrow.
11           MR. WHITE:  That's fine.  Thank you.
12           ARBITRATOR HABERFELD:  Anything further
13    before we recess?
14           See you all tomorrow morning.
15               (Thereupon, the proceedings
16                were concluded at 4:00 p.m.)
17                     * * * * *
18
19
20
21
22
23
24
25
```

Case 15-01193-abl   Doc 144-2   Entered 04/07/17 10:04:43   Page 35 of 239

Arbitration Proceedings ~ Volume I ~ February 9, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 274

```
 1                    CERTIFICATE OF REPORTER

 2

 3    STATE OF NEVADA )
                      )      SS:
 4    COUNTY OF CLARK )

 5

 6

 7        I, Jo A. Scott, Certified Court Reporter, do

 8    hereby certify:

 9        That I reported in shorthand (Stenotype) the

10    proceedings had in the above-entitled matter at

11    the place and date indicated.  That I thereafter

12    transcribed my said shorthand notes into

13    typewriting, and that the typewritten transcript

14    is a complete, true and accurate transcription of

15    my said shorthand notes.

16        IN WITNESS WHEREOF, I have set my hand in my

17    office in the County of Clark, State of Nevada,

18    this 23rd day of February, 2015.

19

20

21    _____

22    Jo A. Scott, RPR, CCR NO. 669

23

24

25
```

Arbitration Proceedings  ~ Volume I ~  February 9, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 1

**A**

**A.D** 46:8
**a.m** 3:2 272:12
**abated** 47:8
**Abel** 96:19,21
**ability** 23:3 63:21
  64:13 80:21
  167:2,4 189:17
  189:21 227:24
  228:6,10 268:9
**able** 20:21 23:3
  25:16 26:17 64:3
  104:4 120:1
  142:22 147:23
  167:14 194:20
  195:10 200:19
  214:7 225:18
  231:11 239:15
**abolitionists**
  268:20
**above-entitled**
  274:10
**absolute** 253:14
**absolutely** 178:12
  191:10 253:20
**abuses** 77:20 88:16
**accept** 47:6 206:24
  213:7
**acceptable** 120:21
  151:17
**accepted** 161:22
**access** 93:12 199:7
  210:20 214:3
  215:16
**accommodate** 8:10
**account** 39:14
  51:14 72:25
  142:15 167:6,8
  167:10 171:12,14
  173:13 185:11
  187:1 223:14,25
  224:18

**accountant** 189:18
**accounts** 163:9
  227:22
**accurate** 66:22
  103:16 152:15
  201:1 274:14
**accurately** 26:2,9
  43:25 44:22 45:4
**accused** 76:19
  204:25
**accusing** 268:23
**acknowledge** 33:3
**acquisition** 263:17
**Act** 67:18 91:24
**acting** 23:19
**action** 227:4,10
  228:18
**actions** 229:22
  270:17
**active** 250:7
**actively** 86:21
  250:12
**actor** 42:13
**actors** 53:16
**actual** 228:22
  266:10
**ad** 83:6 84:19,19
**Addison** 139:17
  182:24 209:6
**addition** 100:22
  101:19 264:19
**additional** 143:21
  217:10 218:1
  222:8
**additionally** 27:3
  148:16
**address** 10:5 52:20
  65:16,16,17,25
  69:9 71:24
**addresses** 70:4,4
**adhere** 152:11
**adhered** 56:24

**adjunct** 75:25
**adjust** 83:17
**adjusted** 137:15
  142:25
**admissibility**
  210:25
**admitted** 224:23
**admitting** 211:16
**adopt** 169:2
  248:13
**adopted** 247:14
  250:13,15
**adult** 16:23 17:1,4
  24:7 25:12 38:16
  59:1 61:21 66:18
  81:16,20 86:4,5,9
  124:7,14 150:16
  170:3 220:14
  246:3 251:1
  261:21
**advance** 166:16
**advanced** 248:10
**advancing** 167:19
**adversarial** 15:7
  204:22
**advertised** 125:15
**advertising** 84:14
  85:12
**advice** 76:15 93:7
  94:12,21 266:6
**advised** 9:24
**advising** 76:20
**AEBN** 148:17
  164:25 165:1
  216:16,19 217:2
  217:2 218:11
  220:21,25
**AEBN's** 165:3
**affairs** 23:19
  236:12
**affirmation** 10:10
  12:21

**afford** 20:21
  193:22 196:7
**afraid** 18:14 46:18
  47:15 195:8
  252:3
**afternoon** 260:24
**agent** 252:23 253:7
  253:9,12,15,16
**aggression** 49:6
  72:9
**aggressive** 47:14
  56:15 58:19
**aggressively** 53:12
**aggressiveness**
  44:18 47:20
  52:25 61:1
**agitated** 121:18
**ago** 56:20 157:8
  187:5 229:19
  238:8,11 254:2
**agree** 5:17 125:24
  151:13 247:22
**agreed** 8:20,21
  23:24 82:24
  151:16 166:5
  203:24 248:14
**agreement** 19:15
  21:4 26:16 33:6,9
  34:17,23 35:13
  35:19,21 36:1,10
  36:12 56:17,20
  56:21 156:14
  157:21 159:15
  160:8,18 161:10
  161:20 162:1
  163:21 170:8
  172:6 173:13
  184:16 188:1
  216:21 218:5,8
  218:18 219:13,14
  219:15,16,16
  226:17 227:3

**afford** 241:15
**agreements** 20:7
  68:21
**ahead** 48:6 52:18
  60:14 161:15
  169:5 217:16
  220:22 255:3
**AIDS** 106:14
**aimed** 262:19
**Air** 197:22
**airport** 100:8,20
**al** 3:10
**album** 143:14
  144:1
**albums** 143:12,19
  144:10
**alcohol** 134:18
**Allan** 207:22,24,24
**allegation** 235:23
**allegedly** 60:8
  266:3
**allow** 143:6 215:20
**allowed** 7:20 26:5
**altered** 6:24
**alternate** 264:5
**alternating** 136:19
**Amazon's** 198:8
**ambiguous** 7:23
**amended** 130:4
**Amendment** 14:16
  15:1,9,22 16:4,18
  16:25 261:22
  271:19
**Amendment/inte...**
  15:15
**Amherst** 14:4
**amicable** 43:1
**amicably** 182:7
**ammunition**
  158:15
**amnesty** 68:7,22
  69:13

Arbitration Proceedings ~ Volume I ~ February 9, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

amount 29:6,18,20
33:1,15 47:5,7
56:22 80:22
121:7 123:21
135:10 144:12
150:1 151:21
156:8 167:16
225:2 230:2,2
235:23 241:15
242:6,10,11
263:14
amounts 31:14
analysis 203:25
222:3
anatomically 85:18
Andrew 97:25 99:1
103:3,4 182:23
183:9,10,17
191:7 213:12,13
213:14 251:10
Andrew's 98:19
Angeles 2:5 16:20
angry 53:5 122:16
announced 228:3
annoying 15:6
annually 264:4
answer 12:7 44:21
45:2,4 54:17 57:5
57:6 59:10,11
61:9 87:21 90:21
99:6 152:8,24
161:6,8 169:3
174:9 218:22
233:4 245:21
answered 7:22
anti-expression
257:25
anti-torrenting
66:22
anticipate 244:5
272:17,20
anticipating 12:8

antiskittle 9:9
Anton 163:5
anybody 24:2
72:21 79:3 90:8
92:15 120:2
137:2 141:7,11
145:17 147:3
256:10 271:6
anymore 58:5
127:22 193:22
195:8
anyone's 126:5
anyway 52:17
115:6
anyways 131:4
apologize 103:10
111:4 270:3
apologized 91:3
app 215:19
apparent 216:17
268:1
apparently 100:1
118:21 134:2
165:14
appeal 184:15
225:9
appealability
249:15
Appeals 229:6
appear 22:18
42:18 47:13
51:15 105:8
112:8
appearance 8:25
appearances 2:1
3:16 4:4
appeared 116:17
237:14 239:24
appearing 238:5
appears 4:21 19:8
52:15 72:13
113:15 224:9

238:3
appellate 229:16
Apple 198:10
applicable 5:12
11:25
application 230:13
applications 230:5
apply 5:21 35:9,11
approach 70:7
199:3 244:15
262:4,25
approached 23:15
145:5 147:8
154:24 155:6
244:17
approaching 148:5
appropriate 205:5
223:24
approval 55:2
90:12 91:7
161:13
approve 184:20
April 105:9
arbitrage 28:25
arbitration 1:1,2
1:14 3:8 5:7,15
5:21 6:1,2 8:4
29:22 76:16
130:4 225:11,15
226:7 238:2
arbitrator 3:5,23
4:3,8,12,21 5:2
5:19 6:13 8:5,21
9:7,17,23 10:2,11
10:15,18,24 11:6
11:10,21,23
12:11,19 17:24
18:3,11,15 41:17
41:20 45:15,19
45:21 48:3,6
50:11 51:18,19
52:4,15,21 61:12

62:6,10,12,25
63:5,8,12 76:24
78:1 87:12,15
96:7,12,16 99:4
99:10,16 101:12
101:15,20,24
113:13 116:5,9
130:7 131:25
132:4 141:6,10
141:14,16,19,22
158:20,23 168:21
180:11,14 196:21
196:22 210:14,22
211:5,7,23 212:9
212:17 226:22,25
229:12,14 230:23
232:9,11 235:19
236:1,4 237:21
238:9,19,25
239:3,5,19 240:1
240:7,10,16
255:1 260:23
272:5,11,14
273:12
arbitrator's 5:25
25:20
archive 237:13
area 35:23 36:17
36:21 81:13
100:20 101:6
102:15,15 109:20
236:2 249:18
272:3,4
argue 219:23
argued 104:8
167:7 177:14
arguing 12:8
235:15 237:18
argument 9:21
218:17 220:1
229:24 256:20
arguments 230:16

Arizona 77:10
arose 180:20
arrive 41:23
arrived 42:7
art 53:7
Arthur's 222:24
article 83:14,17,19
84:4 88:2,13
articulate 224:16
articulated 211:13
Arts 14:10
aside 26:24 42:2
43:11 191:1
197:11 244:21
asked 7:22 20:12
20:22 37:11
42:19 56:5 83:25
83:25 93:1 99:3
99:19 102:7,8,9
126:12 132:19
145:2 155:9
166:3 191:8,8
196:3 200:14
220:18 244:22
270:15
asking 13:6,21
37:6 72:9 108:11
108:12 134:24
156:18 217:7
232:15 251:13
asks 260:10
aspect 126:15
ass 49:2
assaulted 101:3
assert 229:20
assessment 165:9
166:25 257:3
assets 163:4 217:22
assist 25:7 171:20
222:25 227:21
266:12
assistance 3:14

Arbitration Proceedings  ~ Volume I ~  February 9, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page  3

17:21 99:2 217:6
217:10 220:25
221:25 227:17
265:16
**assistant** 233:12
**assisted** 19:25
**assisting** 227:14
**assists** 18:4
**associate** 37:4
**associates** 21:14
**association** 16:3
75:23
**assume** 34:18
**assumes** 115:22
**assuming** 182:10
**assured** 86:18
185:4
**atrophy** 25:10
**attached** 70:3
161:11 184:1
**attachment** 184:19
184:25
**attacked** 100:2,3
**attempt** 223:12,20
**attempts** 179:17
**attention** 7:4 27:15
51:18 92:18
109:1 155:8,9
204:2,4 265:24
**attitude** 101:18,21
101:22 102:24
121:16
**attorney** 12:4 20:6
28:13 54:20
133:4 146:1
147:15 169:22
170:4 216:10
232:17 234:3
256:17 261:21,22
266:9,13,16,20
271:19
**attorney's** 80:21

135:12 174:19
194:21 223:9
230:1 231:10,15
252:4 258:2
**attorney/client**
86:7 95:17,23
211:1
**attorneys** 156:17
183:19 191:2
221:17,21,22
**attracts** 262:14
**August** 134:24
181:22 186:1
190:13,19 191:19
194:3 204:3
221:12
**authority** 43:17
214:9 227:11
233:14 268:2,3
**available** 65:6
76:13 237:19
247:6
**avenue** 177:21
**average** 75:11
129:1 259:11
**AVN** 86:6,18
**avoid** 149:7
**award** 84:11,22
85:2,6,7,13,17
**awards** 84:7,13
**aware** 7:5 77:7,22
182:4 220:1
252:15
**Awe** 133:23
**awesome** 163:17
**awful** 93:20 260:20

―――――――
**B**
**baby** 21:16
**back** 20:10 28:23
41:20 42:20 44:3
45:18 50:17
62:12 87:3 96:16

99:6,8 106:24
116:8 117:19
118:20 122:6
128:5,22 129:15
132:4 136:7,9
137:7 138:10
140:11,22 141:17
143:17 149:2
160:9 172:6
180:12,14 186:24
190:16 194:20
198:25 216:5,7
221:5 223:2
232:11 238:4
241:24 244:8,9
249:1 252:4
268:17
**background** 13:8
13:24 77:7
245:21 268:13
**backseat** 136:18
137:12 139:21
140:6
**backwards** 255:24
**bad** 89:12 135:15
250:17 252:2
258:1
**badly** 197:3
**bag** 167:15
**Balasubramani**
155:2
**Bang** 236:18 262:6
262:8,13,15,18
262:25 264:7,12
264:14
**bank** 148:14 187:7
**banking** 146:17
**bankruptcy** 81:4
**Bar** 133:9 267:16
**barely** 80:6
**bars** 75:22 165:15
**base** 16:25 45:3

**based** 8:5 9:21
19:23 20:2 65:15
74:14 77:2 83:9
130:3 147:25
163:14 167:5
184:22 192:20
208:3 235:6,10
249:25
**basically** 6:10
**basis** 40:3 74:24
93:8 103:5
121:24 224:16
231:16 239:8
**Bates** 108:24
117:23 159:5,6
186:6 206:14
213:18
**bathroom** 171:23
**Bay** 36:17
**bear** 8:18
**Beat** 88:2,3
**beautiful** 123:18
**bed** 140:24
**beg** 48:5
**began** 14:18 32:22
102:21 103:1
130:15 137:11,13
**beginning** 27:20
48:15 55:13
126:23
**beguiling** 29:12
**behalf** 3:25 4:2
37:22 75:10
92:11 148:6,25
150:18 220:25
228:7 244:24
**belief** 158:7 179:5
**believe** 4:16 5:5
8:10,15 9:5 16:12
20:1 32:8 40:18
45:8 51:24 56:17
84:17 85:24

94:15 135:11
137:2 138:13
157:15 159:19
170:19 194:4
204:1 210:24
213:22 214:16,19
214:22 224:14,17
226:16 268:21
**believed** 188:12
230:7
**believing** 239:8
**belong** 125:7
**belongings** 100:14
**benefit** 24:17,19,22
25:20 30:24
182:11 189:15
233:24 247:14
**benefits** 82:21 83:8
127:24,24 158:16
158:16 192:20,24
197:7
**berth** 7:18
**best** 11:1 34:20
114:11 138:23
189:17,21 196:12
197:8 200:12
253:25
**better** 10:21 11:19
25:16 39:7,8 56:6
80:9 118:6 150:5
176:25 250:2,13
**beyond** 5:21 128:3
**biased** 76:17
**bid** 265:2
**bidding** 146:3
**big** 21:15 80:7 84:2
120:14 121:18
123:18 133:15
167:16 179:1
192:3,5 194:18
**biggest** 129:13
194:23

Arbitration Proceedings ~ Volume I ~ February 9, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 4

billable 82:25
billing 97:6
bills 232:17 233:21
bind 268:9
binder 32:12 40:15
  54:13 90:17
  104:19 110:6
  149:9 158:19,21
birds 139:6
birthday 99:23
  133:24,25
bit 15:25 21:17
  23:17,25 49:8
  60:3,23,23 63:25
  64:7 70:17 104:8
  132:25 146:20
  165:16 166:1
  190:6 195:11
bitch 115:14 140:1
BitTorrent 62:24
  63:11,15,17,18
  64:25 66:2,15
  69:21 70:8,21
  71:22 73:11,12
  73:12,14 268:17
BitTorrenting 69:5
blogs 86:12
blood 178:19
blow 53:11 121:10
blowjob 137:11,18
  138:20
blurry 134:6
board 16:6
boat 135:5 136:15
Bob 67:2
bodily 115:16,23
  119:1 184:19,25
body 36:5
bogus 255:25
bona 6:23
bonus 30:10,22
  31:14 33:18

144:5 205:1
bonuses 30:2 31:5
book 113:16
booked 100:18
books 78:15,19
  113:19
borrowed 264:3
boss 33:24
Boston 112:24
  113:4,11
bother 140:5
bothered 55:3
  115:5 123:16
bottom 48:18
  104:21,25 108:24
  154:15 173:4
  174:12 181:21,22
  191:22 193:23
  233:20 251:11
bought 84:19,19
bounce 173:24
Bowl 112:25 113:1
box 38:4
boy 124:16
bragged 82:9
brakes 34:18
break 62:5 95:22
  109:20 141:5,7
  171:23 180:9
breaks 260:24
Breck 42:14
Brian 2:14,14 4:7
  4:7 50:21 90:8
  149:16
bribe 152:11,15
  153:16 157:5
  170:25 172:22
bribery 174:16
bribes 240:23
brief 62:5 63:11
  180:9 235:16
briefly 6:6 14:20

63:15 106:4
  268:13
briefs 9:22 107:3
  107:11 118:14
bring 51:17 127:19
  128:12,14 129:13
  147:21 165:17
  171:5 241:8
  271:1
bringing 32:23
  128:17,25 129:5
  129:6,10
British 163:2
broke 60:8 232:14
brokering 242:2
Brothers 236:18
  262:6,8,13,16,18
  262:25 264:7,12
  264:15
brought 41:11
  43:14 79:4 129:3
  129:16 156:17
  179:1 194:17
  195:25 216:16
  245:7 265:24
  266:1
Brown 2:4 3:18,21
bucks 43:13 68:10
  68:10 69:14
  220:15
building 123:22
built 97:13
bulk 272:25
Bullet 176:11
bullies 257:25
bump 39:14
bumped 144:24
bunch 68:15
  171:13 257:13
burden 7:17
burning 46:12
bus 136:12

Bush 108:3 111:20
  111:24
business 10:5
  37:25 38:2,5,6
  66:10,12,12
  94:24 139:8
  142:19,25 234:11
  245:17
business's 34:20
busy 164:7 259:15
buy 84:15 126:25
  241:21 263:7
buyer 241:5,12,14
  241:16,19,21
buying 241:6
buys 67:10

————————
C
————————
C 30:3
cab 100:17 140:13
  140:15,19,19,21
  140:21
calculated 189:16
calculation 188:5,8
  188:12
calculations
  188:23
calendar 201:4
calendars 50:25
California 1:9 2:5
  35:8,13,14 36:2,3
  36:13 38:23
  39:11 51:1 133:9
  155:12 177:16
  238:23
call 9:8 75:3 83:15
  85:15 89:8 91:8
  99:24 191:22
  205:16 240:23
  264:8,19 268:20
  271:6,17
called 14:15,21
  24:8 40:13 74:8

85:10 91:20
  92:25 100:17
  145:2 148:17
  170:24 178:9
  198:22 200:13,17
  207:24 208:1
  245:25 254:10
  261:18 269:21
calling 85:21
  272:17
calls 136:4 164:8
  255:19
calm 9:12
Cameron 110:1
  136:16 138:2,5
  192:6 193:1,2
campaign 66:14
  69:4 78:23 79:5
  158:17 268:18
campus 260:10
canceled 81:12
candidacy 84:25
car 93:21 134:21
  136:10,11,13,14
  136:15,21,23
  139:5,7 140:12
  140:17,20,22
  190:16
cards 37:25 38:3,5
  38:6 150:5
care 70:25 94:24
  196:16 220:7
Carolina 113:2
Carrender 265:6,8
  266:5
carry 94:10,13
  108:12
Carter 90:1 267:3
  267:9
case 16:22 43:7
  44:15 54:25
  57:24 61:20 63:7

Arbitration Proceedings  ~ Volume I ~  February 9, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page  5

63:13 76:4 79:23
79:24 85:20
88:15 95:20
101:5 135:12
136:6 142:4
145:14,20,23
148:22 152:9
153:5,7,10,18,20
153:21 154:14
155:10 156:24
157:7 158:8
163:11,11,12,20
166:9,10,24
177:16 185:8
192:5 205:9
216:19 217:9
223:13 224:3
241:4 242:14
244:20 254:10
255:19,20 256:16
259:15,18
**cases** 42:11 46:5,6
65:24 77:21
78:12 79:15,15
79:20 145:12,17
148:20 151:2
155:3,25 156:20
163:12 177:4,5
205:21 254:2
**cash** 165:16 170:20
**casino** 132:25
**catch** 59:5
**categories** 13:7
**categorized** 53:19
**category** 6:23
234:5
**caught** 269:17
**cause** 59:23 218:4
**caused** 85:21 215:3
268:12
**CC'd** 233:11
**CCR** 1:25 274:21

**cell** 264:19
**center** 27:17 142:3
**cents** 80:9
**certain** 7:21 8:12
17:9 31:21 50:18
56:22 76:20
78:15 84:18 90:5
169:18 217:9
225:2 237:14
253:6,7
**certainly** 45:17
49:16 53:11
69:19 74:11
83:11 84:15
90:10 152:15
160:3 196:6
**certainty** 182:5
**CERTIFICATE**
274:1
**Certified** 274:7
**certify** 274:8
**chain** 148:8 156:3
191:15
**chair** 5:24 10:20
11:8
**challenge** 184:13
**challenged** 240:13
**challenging** 121:1
**chance** 89:18
178:24 204:18
**change** 33:5,9 34:1
36:10 42:17
74:24 95:2,3
102:20,24 127:2
127:15 128:9
130:15 131:1
155:14 175:9
214:24 215:2
261:20
**changed** 23:1 58:4
215:15 256:11
258:4

**changes** 19:16
**Channel** 77:14
**character** 111:21
266:19
**characteristic** 49:5
72:8 88:9
**characterize** 41:3
42:24 56:13 70:8
213:2 230:15,21
**characterized**
111:20 190:9,10
**charge** 92:19
164:10,11,14
231:4 264:1
**charged** 93:9 190:2
**charging** 77:17
**cheat** 205:1
**check** 228:21
261:18,19 263:3
**checkbox** 256:12
**checked** 51:13
**checking** 5:22
**checks** 68:18,21
**cheesecake** 125:5
**chief** 8:18 25:25
58:11
**child** 136:20
137:24 228:4
**Chip** 90:1,9 91:6
267:3,9,21
**choice** 35:4,11
72:24 126:12
131:14 170:5
**Christensen** 19:22
245:12
**Chronicle** 112:24
**chuckling** 109:15
**churning** 174:13
**Circuit** 229:7
231:3
**circular** 139:1
**circulated** 125:4

**circumstance**
232:2
**circumstances**
61:18 231:13
**cite** 45:11
**cited** 241:2
**City** 88:1,3
**civil** 49:1,12
**civility** 9:11
**claim** 95:25 130:2
130:5 147:21
177:7,10 234:10
235:8 257:1,23
258:7,7,12 267:2
**claimed** 60:6
171:14 237:1
**claiming** 225:12,13
**claims** 8:18,23
13:23 60:10
101:5 216:15
226:6 227:2
234:8 238:4
240:18 265:19,23
266:6,11
**clarity** 35:16
**Clark** 274:4,17
**classifications**
62:20
**clause** 204:21
205:4
**clean** 34:15 107:15
107:24 118:20
119:5
**cleaned** 107:16,25
118:14 125:15
**cleaning** 107:23
**clear** 7:20 26:17,20
27:1,4,7,15 28:7
30:18 31:20 32:3
34:24 120:23
131:12 133:16
134:4 148:4,9

165:12 186:8,14
197:5 200:2
252:20 254:18
**clearly** 22:10 126:3
178:25 205:2
256:5 257:4
**clerk** 270:14
**click** 142:18
**client** 16:25 29:4
43:4,5,14 58:6
96:6 150:23
151:16 178:16
191:4 210:15
212:13 215:16
236:17 239:11
244:24 252:18
260:1 262:6
263:1
**client's** 210:18
**clients** 17:4 23:8
25:13 26:6,18,22
26:24 27:6 28:22
76:15 92:11
158:16 170:3
216:12 234:19,22
235:1,23 236:10
236:10,13 238:13
238:13,21 239:9
239:9,16,24
245:14 258:14
259:2
**clip** 111:2 255:9
**clips** 257:6
**close** 39:19 40:9,11
150:11 213:23
**closed** 167:11
**closely** 87:1
**closeness** 41:5
**closeted** 269:11
**closing** 235:16
**cloud** 198:1,3,17
**cloudy** 133:16

Arbitration Proceedings  ~ Volume I ~  February 9, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page  6

club 124:16
clubhouses 16:9
clubs 124:14
Clyde 207:23
  208:1
CNBC 261:17
CNN 15:8
Coalition 85:6,15
  250:23,25 252:8
  252:12
coast 28:23,24 81:6
  206:11
coax 158:5
code 100:20
Cody 263:9
coffee 136:1
coincide 103:13
cold 127:7
collect 77:22 80:8
  80:21 167:17
collected 31:15
  80:25
collecting 56:24
  146:10
college 14:2 140:14
colloquially 152:6
  152:14 240:23
colloquy 5:22
colony 163:2
colorfully 74:8
Comcast 63:24
come 7:12 16:5
  17:6,12 31:18
  45:18 49:2 52:17
  79:17 89:1 99:25
  107:22 111:22
  131:3,16 133:23
  133:25 138:9
  141:17 147:7
  148:24 150:9
  157:16,18 159:20
  170:25 179:14

184:6,21 189:20
196:9,17 197:5
239:7,12 261:25
263:5 270:14
comedy 262:23
comes 8:7 12:1
  57:13,16 62:23
  84:4 186:24
comfortable 124:4
coming 11:12 57:9
  67:17 88:20
  121:12 130:23
  272:20
comment 88:8
  109:22
commentary 14:25
  15:2,8
commentator
  14:23
comments 109:17
  109:25 114:5
  127:21 129:18,23
  130:9,15
commercials 67:8
commit 269:1
committed 48:25
committing 42:2
  249:21
common 51:3
  140:15 152:18,19
  240:20
commonly 264:16
communicate 64:3
  65:15 120:4
  191:4 201:20
communicated
  20:3,5 93:15
  217:2
communicating
  100:12
communication
  14:11 89:7 180:3

communications
  19:24 55:11
  88:10 93:22,23
  180:19 210:19
  211:1,16 213:8
  267:13
community 70:9
companies 61:24
  66:19 70:19
  86:16 91:25
  92:14 143:8
  146:8 147:11
  218:9 220:14
  259:10
company 1:9 4:5
  4:14 16:23 21:18
  24:8 25:23,24
  26:7 30:25 36:25
  38:16,17 39:7
  41:24 42:6,14,16
  42:19 53:17
  55:24 58:10 66:9
  73:11 74:15
  78:25 85:10
  91:19,22 97:8,9
  97:19,23 98:5,6,7
  98:12,18 100:24
  101:10 105:25
  108:20,22 113:6
  119:15,17 124:2
  125:8,22 126:19
  126:22 127:1
  129:1,5,11
  134:12,19 135:1
  135:5,15 136:12
  143:11 145:1
  146:13,25 148:17
  151:17 163:7
  166:9,11 169:1
  170:19,21 171:12
  179:1 182:19
  183:5 190:7

191:25 192:4
193:3,4 194:18
194:24 196:17
200:14 203:1,5
203:13 204:11
219:18 246:3
254:12 255:14
256:9 257:24
259:22 261:14
262:9 265:10,12
265:13,20 267:18
268:9 270:4,15
270:25 272:22
company's 38:11
  39:4 42:1 44:19
  78:15 91:8
  128:20
company-issued
  197:17
compare 44:4
  262:11
compared 259:6
comparison 79:13
compass 94:19
compel 238:20
competitive 265:2
competitor 263:10
  263:20
compilation
  258:10
complain 79:8,10
  80:15 228:13
Complainant 1:5
  2:2 3:9,18
complaint 75:3
  226:20
complaints 127:16
  226:15 260:18,20
  267:17
complete 126:7
  150:25 218:21
  274:14

completed 262:2
completely 12:3,6
  92:5 127:7
  245:24 246:25
completing 258:25
complicated 185:9
complimentary
  130:19
computer 65:12
  92:13 180:7
  198:7,15,19,20
  200:19 201:12
  209:13 246:10
computers 197:15
conceal 82:7
  234:24 237:4
concealed 94:10,13
  108:12
concealing 187:3
concealment 237:6
concern 70:23
  86:24 234:25
  235:12 255:16
concerned 44:18
  45:25 69:18
  156:3 175:1
  198:23 220:9,11
concerning 7:16
concerns 175:5
  199:25 261:11
concise 12:6
  266:24
concluded 273:16
conclusion 5:6
conclusions 76:9
  76:12
concurrently 99:11
  99:12
condition 138:12
conditions 56:25
condominium 16:3
conduct 80:10

Arbitration Proceedings  ~ Volume I ~  February 9, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page  7

156:4 214:12
conducting 81:2
confident 123:3
confidential
  104:14,15 118:15
  236:17 238:24
confidentiality 8:2
  8:4
confirm 5:9
confirmed 183:8
  191:7
conflated 155:4
conflating 85:5
conflict 146:1,2
  150:11 151:1,14
  152:12 157:3
  217:10 221:18,20
  221:23 237:1
  239:14 240:22
  254:20
conflicted 157:12
conflicting 170:25
  172:22
conflicts 239:10,17
confrontation
  119:20
confusing 45:14
confusion 8:16
congratulations
  87:3 192:9
conjunction 163:5
  164:4
connect 101:13
connection 7:20
  30:11 41:25
  63:20,23 64:13
  65:18 94:5 99:3
  101:25
connections 25:11
consecutively
  98:25 99:5,5,11
consequences 62:3

consider 4:18
  81:17 118:3
  194:10 256:7
consideration 33:8
  34:2
considerations
  83:3
considered 166:15
  256:13,14,15
  257:5
considering 83:13
  263:6
consistent 44:8
  50:19 52:25
  60:17 79:13,24
  90:4 128:19
  131:11 174:23
  186:1 202:6,22
consternation
  59:24
Constitution
  238:24
construe 206:23
consultant 14:15
contact 68:7
contacted 267:3
contemplate 28:17
contemplated
  35:18 36:1
contemplating
  39:2
contemplation
  20:19
contemporaneous
  213:8
contemporaneou...
  212:25
content 46:12
  47:16,17 66:1
  144:8 247:24
  269:5
contest 147:23

contested 224:21
context 45:13
  147:8 153:6
  183:15 203:7
  211:22,22
continually 49:10
  238:21
continue 34:16
  181:18,19 205:15
  208:10 214:17
  220:9 222:25
continued 15:2
  25:13 31:23
  34:23 204:10
  208:13 248:25
  254:12
contract 19:6,13
  21:5 23:23 27:13
  28:13 29:6 35:4
  37:7 38:19
  234:16 258:17
contracted 42:15
contractors 53:19
  97:23
contracts 82:14
contractual 219:21
  234:20
contrary 87:2
  180:1 211:17
contravention
  227:3
contribution 129:7
control 12:4 104:7
controlling 88:19
  88:20
controversy 85:21
  85:23 86:2
  268:12
convenient 35:25
conversation 5:20
  6:3,6,8 12:13
  78:18 107:6

120:7 123:2
  183:3,16 204:15
conversations
  169:17 263:24
convey 47:19
  179:22,25 205:20
  209:15 210:2
  252:11
conveyed 49:6
  178:2
conveying 210:3
convince 248:3
convincing 227:21
  252:18
cool 64:14 121:12
  147:19 162:25
cooled 127:7
cooperating
  181:16
coordinate 94:20
copied 22:4 89:23
  155:3 216:4
  222:20
copies 6:12 66:5
  215:22,25
copy 168:10,14
  267:19
copyright 16:4,6
  46:7 54:3,5 67:17
  75:24,25 76:2,2,3
  77:4,24 91:24
  255:24 257:21
  268:20
copyrights 268:21
Corbin 38:3,6,7,8
  38:9,12 44:25
  46:3,18 49:15
  54:7 55:14 61:20
  68:6 77:14 83:15
  83:24 84:18
  92:19 96:22
  147:22 151:23

152:2 199:3,9,11
  199:12,14 216:18
  248:8,13 249:9
  259:8,9 261:22
  262:12,16 269:7
  269:11
corner 111:13
  123:18
corporation 1:7,8
  3:10 88:17 148:1
correct 9:20,25
  10:1 23:3 61:15
  72:16 124:2
  154:21 174:4
  190:15 195:14
  203:14 206:15,20
  219:2 237:3
  253:5 255:10
corrective 261:15
correctly 80:20
correspondence
  198:15
corridor-like
  123:10
corroborating
  240:14
corroborative
  240:8
cost 39:14 79:13
  131:15,21 164:16
  166:23 189:22
  244:2
Costa 132:12,14,21
  132:21,24 133:4
costs 79:9 131:20
  167:19 189:23,24
  189:24,25 265:4
couch 105:13
  125:7,9,12
  126:10,11
counsel 3:14 23:8
  24:3,7,24 25:1,5

Case 15-01193-abl    Doc 144-2    Entered 04/07/17 10:04:43    Page 43 of 239

Arbitration Proceedings  ~ Volume I ~  February 9, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page  8

28:10,15 42:13
43:2 79:11,20
80:2 91:9 127:22
145:2 148:19,19
151:10 154:19,25
155:9 156:11
165:3 166:22
172:21 184:25
186:23 206:20
212:15 216:11
217:11,17 224:23
241:8,25 242:17
244:18 261:23
264:20 266:3,25
**counsel's** 230:12
**counseled** 261:3,6
**counseling** 258:24
261:3,24
**counselings** 260:18
**counterclaim**
147:21 235:15
**counterclaims** 8:19
8:23 78:13 235:5
**country** 21:20 65:2
**County** 274:4,17
**coup** 84:1
**couple** 15:4 76:1
90:21 92:12
109:15,18 119:4
125:21 126:21
130:22 132:8
144:6,6 185:3
195:2 221:8
**course** 18:23 29:19
32:5 42:19 72:5
75:17 76:3 93:14
106:12 108:2
158:4 184:15
202:6 205:22
225:1 241:20
245:15 253:23
263:23

**courses** 16:10
**court** 5:3,12 10:7
10:14,19 11:14
11:16 62:25 63:4
67:13 69:25,25
99:8 116:8
141:15 169:13
177:11 183:22
184:10,12 218:5
223:21 228:22
229:6,21,25
233:21 235:7
271:7 274:7
**Court's** 167:9
**courting** 250:12
**courts** 67:21
231:10
**cover** 269:10
**coverage** 58:14
88:11,19
**covered** 8:17
**covering** 86:25
**covers** 81:16
**crack** 107:10
**crazy** 60:4
**create** 142:23
242:21 246:2
**created** 66:20,23
**creating** 119:24
**creative** 177:17
**credentials** 271:20
**credit** 271:19
**criminal** 48:25
49:11
**crisis** 170:20
**criticizing** 127:8
**critique** 270:16
**cross** 8:18 9:8
125:24 272:24
**cross-examination**
7:14,19 12:2
**cross-examine** 4:19

**cross-examining**
7:17 12:4
**crossing** 126:1
**crowbar** 60:8
**crowd** 66:23
**cultivate** 86:15
**cultivated** 83:10
88:2
**current** 27:4 75:20
238:13
**customer** 45:3
**cut** 44:13 192:24
193:10 196:10
197:6
**cuts** 193:24 250:22
**cyberlocker** 142:11
**cyberlockers**
142:24 145:12
**Cybersocket** 85:10
85:11
**Cybersocket's**
85:13
**cybersquatter**
33:17

——————————
**D**
**D** 2:17
**Dallas** 46:9
**damaged** 139:5
**damages** 258:3
**dancing** 124:17
**dark** 123:19
126:14
**data** 64:15 197:13
201:6,12
**database** 246:2,5
246:15 247:24
248:17 253:12
**Datatech** 148:18
227:14,14
**Datatech's** 148:19
**date** 37:2 194:23
202:13 274:11

**dated** 55:6 103:3
159:17 185:25
**dates** 237:14
**dating** 103:5
**daughter** 39:23
40:13
**daughter's** 136:19
137:23 140:17
**David** 108:13,15
108:16 136:17
137:11
**day** 8:13 49:25
68:17 89:10
92:11 109:19
114:4 132:24
133:7,8 134:5,7
136:1 138:4
143:18 164:6
186:10 212:21
259:17 272:25
274:18
**days** 29:14,15
109:18 119:4
143:3 184:8
185:8 186:9
259:23 260:14
**deal** 21:15 23:2
52:8 54:10 98:21
99:25 103:1
120:13,14,15
121:9,19 146:23
150:11,25 174:16
192:3 199:22
217:15 264:22
**dealership** 139:2,4
**dealing** 179:12,13
**deals** 189:10
**dealt** 70:19 169:24
**death** 250:21
**debts** 81:4,5
**decency** 140:16
**decent** 73:19 141:1

**decide** 9:1 52:18
128:6
**decided** 34:7 67:5
103:23 165:5
**decision** 33:19,20
76:25 219:12
220:2 248:24
**deck** 135:25
**declarations**
231:18,21
**declared** 81:4
**declined** 20:24
270:2
**declining** 193:16
**deep** 115:8
**defamation** 16:5
147:14 177:9
**defamer** 177:17
**default** 88:15
249:20
**defaulted** 77:11
**defend** 145:6
270:20
**defendant** 65:25
69:6 71:16
146:19
**defendants** 62:20
69:18 144:23
269:1
**defending** 155:10
155:11
**defense** 145:1
146:1 154:25
156:17 177:17
234:3 253:14,20
**defenses** 73:8,17
76:13,13 145:16
**definitely** 127:7
**degree** 14:3,6 20:4
107:9
**degrees** 14:2,7
**delete** 95:5

Arbitration Proceedings  ~ Volume I ~  February 9, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page  9

**deleting** 202:19
**deliberate** 35:10
**deliberately** 27:9
　30:6 31:8
**delighted** 128:24
**demand** 54:24
　55:12 69:7 82:17
　84:3 130:4
　147:10 223:3
　224:12 225:15
**demands** 148:25
**demeanor** 127:3
**denied** 224:14
**denying** 210:20
**departed** 223:7
**department** 55:21
　102:12 127:16
　233:13
**departments**
　102:11
**departure** 181:25
　223:11
**depend** 156:10
**depending** 272:17
**depict** 116:17
**depicted** 133:5
**depicts** 110:14
**deploy** 148:11
**deposit** 80:18
**deposition** 6:11
　25:18 26:2 44:15
　45:12 78:21,24
　79:3 196:20
　235:10
**depositions** 63:6
　78:14
**describe** 14:20
　39:17 41:23 42:5
　123:8,23 125:5
　127:5 138:11
　152:5 166:18,21
**described** 152:6

**description** 152:16
**descriptive** 114:14
　257:15
**designation** 261:20
**desk** 103:24 105:12
　107:14 109:16
　112:3,6,9 113:16
　114:6,10,16,19
　114:24,25 115:17
　115:19,24 116:14
　116:17,19,23
　119:2 123:12
　125:19 168:18
**desktop** 198:5
**despite** 46:14
　214:16
**destroy** 72:4
**detail** 54:2 101:7
**details** 56:8 95:21
　96:4
**deter** 45:1
**develop** 28:14
　81:23
**developed** 25:11
　36:5 256:7
**developing** 15:19
　15:23 24:21
**devices** 202:4
**DeVoy** 189:24
**DeWitt** 16:14
　207:23
**dialogue** 153:11
**Diego** 20:20 21:20
　36:16 39:15,20
　39:22 41:24 42:7
　88:1 93:19 145:1
**difference** 51:14
**different** 16:11
　38:1 50:16 51:15
　62:17 64:6,21
　117:9 124:6
　156:16 178:1

206:12 246:25
　262:13,14,19
　272:3
**difficult** 11:4,18
　13:16 78:8
　249:23
**digital** 91:23 246:6
**Dillon** 168:23
　195:13 197:11
　208:4
**Dillon's** 196:19
**dime** 77:22 190:1
**dinner** 93:21
**dire** 194:25
**direct** 2:19 8:17
　11:24 12:1 13:2
　77:16 85:24 96:6
　123:22 208:3
　212:9 272:24
**directed** 256:9,13
　260:19
**directing** 44:6 46:1
　208:6
**directly** 123:20
**director** 90:3
　120:11 183:2
　208:23 209:18
**directory** 85:12
**directs** 206:19
**disagreement** 23:4
**disappointed**
　33:13
**disapproval** 139:8
**disaster** 73:15
**disburse** 163:10
　184:14 185:5
　187:10
**disbursed** 187:18
　188:6
**disciplinary** 22:1
　258:18
**discipline** 22:22

258:21 270:23
**disclosed** 176:1
　272:17
**disclosure** 254:19
**discounted** 93:9
**discovered** 81:1
　156:19
**discovery** 52:2
　69:25 77:20
　78:14 79:2 88:16
　149:7 163:6
　170:11 249:21
　254:9
**discrepancy** 57:8
**discretion** 4:18
　5:25
**discretionary**
　30:10
**discrimination**
　130:3
**discuss** 9:18 23:6
　23:11 24:16
　97:14 154:7
　205:16 225:14
　231:25
**discussed** 9:2
　32:19 34:6
　153:22 159:25
　208:4,11,17
　227:18 237:8
　264:18
**discussing** 7:24
　88:6,6 95:16
　175:22 263:19
**discussion** 3:12
　17:13 26:3,10
　32:22 35:9 41:19
　96:15 127:23
　132:3 153:20
　157:11 179:5
　196:14 211:19
　234:6 235:3

241:24 242:14
　243:13
**discussions** 32:4
**disfavored** 7:21
　178:25
**Disk** 198:11
**disloyalty** 166:16
**dismiss** 227:4
　256:5
**dismissive** 122:14
**display** 142:16
**disproportionate**
　79:17 80:24
**dispute** 53:24 97:3
　210:3 225:7,8
　237:11 245:13
**disputes** 95:6
**disputing** 95:19
**disrespect** 115:8
　126:8,17
**disrespectfully**
　70:24
**dissatisfaction**
　23:18
**dissuade** 218:8
**distributed** 267:18
**distribution**
　256:22
**District** 77:10
　155:12 229:21
**disturbed** 114:22
**disturbing** 17:25
**DMCA** 92:9 228:3
　252:23 253:7,9
　253:12,15,16
　255:15,22,23,25
　257:22
**DNA** 65:10
**doctor** 41:10
**document** 6:25
　22:5 167:18
　198:21 228:14

Arbitration Proceedings  ~ Volume I ~  February 9, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page  10

230:22
**documentary** 6:4
  7:8
**documentation**
  6:17
**documents** 197:24
  199:21,23 223:23
  238:18 240:5
  242:21
**Doe** 69:16,20
**doing** 10:9 15:5,8
  24:15 25:3 28:12
  28:18,18 29:1
  54:4 55:17 61:5
  64:9 66:19 68:15
  69:15 73:23 75:9
  82:8,11,21 97:5,8
  107:5 115:12
  119:19 121:23
  127:17 137:17
  156:11 166:19
  179:8 184:17
  191:18 198:9
  201:10,11 216:18
  218:15 223:3
  232:3 233:24
  234:11 235:24
  239:6 242:24
  246:16 250:10
**dollar** 44:3 80:9
  165:13 178:10
**dollars** 47:10 68:8
  129:4,12 151:14
  151:16
**domain** 33:22 34:3
  74:15
**door** 114:10 271:5
**doubt** 182:11
**downhill** 128:1
**download** 58:5
  63:21 64:1 65:22
  142:13,18,22

143:1,4,6,16,17
  144:2,4,11
  215:11,22
**downloaded** 144:9
**downloading**
  64:10 143:6
**downloads** 143:24
  144:6
**downside** 222:9
**dozens** 144:22
**Dozier** 20:7
**draft** 19:13,14
  172:6 173:10
  198:25 201:15
**drafted** 20:9
**drafting** 19:12
**drafts** 118:11
**drank** 135:25
**drew** 92:17
**drift** 212:4
**drink** 133:18,22,24
  133:25 134:1,12
**drinking** 132:9
  133:7
**drinks** 40:8 134:8
  245:4
**drive** 136:7,9
  137:7 198:5,6,7
  199:2,7
**driver's** 136:17
**drives** 199:11
  214:3
**driveway** 139:2
**driving** 45:3
  137:10 140:15
**drop** 49:17 259:14
**dropped** 126:9
  130:4
**dropping** 205:21
**drove** 103:19 136:9
  136:11 140:13
**drunk** 132:11

138:15,18
**dry** 21:21
**due** 214:8
**duly** 12:24
**dungeon** 106:3,9
**Dunlap** 2:14 4:7
  57:9,16 58:8,9
  61:14 90:9
  149:16 231:23
  261:10,25
**duties** 41:25 42:6
**DVD** 66:4
**DVDs** 46:12
**DWI** 108:11
**Dylan** 67:2

**E**

**E** 1:16 2:17 29:8
**e-mail** 23:17 32:18
  34:7,11,14 40:23
  40:25 48:13,19
  49:23,25 50:1,1
  50:21 54:16 57:9
  57:10 58:3,8,13
  59:15 60:11
  61:14 71:14,23
  85:20 87:18
  93:24 106:7
  153:2 154:9,16
  155:13 156:2,3
  161:5,12 174:11
  175:8,21,24
  176:7 186:18
  190:20 191:15,19
  192:6,18 202:4
  202:12,16 204:7
  204:9 206:23
  207:5 209:9
  214:20,24 215:12
  215:15 222:17
  223:2 233:7,16
  243:19 251:9
  252:23 255:5,8

257:10 260:8
  268:12,16,23
  269:3,20 270:11
  271:16
**e-mailed** 64:20
**e-mails** 48:14 50:4
  50:7 51:4,6 57:21
  58:1 72:14,15
  76:5 93:18 120:6
  185:25 204:24
  212:25 216:4
  268:5
**earlier** 49:25 55:13
  128:17 153:18,19
  153:20 154:22
  170:17 183:21
  246:7 268:6
**earliest** 42:21
**early** 69:25 99:24
  220:18 254:8
**easier** 46:24
**easily** 270:20
**East** 28:23 206:11
**Eastern** 148:2
**eBay** 46:13
**economical** 30:21
**edited** 22:8
**effect** 60:7 115:10
  117:5
**effective** 39:6
  206:24
**effectively** 36:10
**effectuate** 187:25
**effort** 243:11
**eight-hour** 89:9
**eighth** 118:11
**either** 6:16 31:13
  47:7 84:19 85:8
  99:13,14 123:12
  216:22 223:1
  246:22 259:19
**elaborate** 178:6

222:7
**election** 14:25 15:1
**electrically** 5:11
**electronic** 65:10
**elevate** 194:19
**elevated** 80:22
**Eleventh** 1:19
**eliminated** 201:12
  247:17
**embarked** 69:4
**EMC** 206:17
  226:22
**EMC000462**
  108:25
**EMC177** 188:3
**EMC178** 187:20
**EMC179** 186:6,15
**EMC39955** 213:18
**EMC734** 226:9
**emergency** 23:20
  23:21,21
**emoticon** 24:4
**employed** 66:18
  168:25 195:16
  199:6
**employee** 17:14
  22:6 53:15
  108:22 209:12
  267:5,18
**employee-friendly**
  36:4
**employees** 53:3,13
  109:15
**employment** 5:21
  6:1 31:12 169:7
  206:24 207:25
**empower** 29:3
**encourage** 39:10
**encouraged** 247:25
**encouraging**
  219:19
**encrypted** 198:12

Arbitration Proceedings  ~ Volume I ~  February 9, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page  11

**endeavors** 26:8
**ended** 169:8 239:6
**endorse** 220:9
**enforce** 161:25
    162:14 170:8,9
    170:23 183:22
    192:1
**enforced** 184:12,23
    216:21 218:5
    228:18
**enforcement** 82:15
    184:17
**enforces** 48:24
**enforcing** 162:16
    169:13 268:21
**engage** 263:13
**engaged** 153:11
**English** 231:8
**enlist** 98:20
**enormous** 64:12
**entered** 36:12
    196:20 229:1
**entertain** 8:7
**entertainment**
    16:23 17:2,4 24:7
    25:12 38:17
    61:22 66:19
    81:17,18,21
    220:14 246:3
    251:2 261:21
**entire** 47:2 92:18
    209:25 246:21
**entirely** 17:9 50:6
**entities** 38:1
    236:11
**entitled** 4:24 31:13
    188:13 204:10
    217:19 224:17,22
    224:24
**entitlement** 225:13
**entity** 27:24 28:8
    37:14 56:1 69:22

**234:**12,14,23
**entry-level** 102:12
**environment** 130:2
**episodes** 143:18
**equally** 237:19
**equities** 34:1
**equity** 33:8
**Eric** 231:22 233:10
    265:6,8 266:18
**Erika** 168:17,21,23
    195:13 196:19
    199:8 208:4
**err** 258:10
**escapes** 245:2
**escort** 81:7
**especially** 21:19
    24:20 76:14
    80:25 101:6
    165:1 174:18
    179:12,13
**ESQ** 2:3,3,8,8
**essentially** 8:11
    24:25 29:1 65:16
    67:14 69:4,21
    203:10 220:15
    230:3 247:10
    257:9 270:16
**establish** 211:14
**established** 21:13
    235:6,25
**estimate** 164:15,18
**et** 3:10
**Ethan** 2:8 4:1
**ethical** 156:19
    251:20
**ethnicity** 129:19
    129:21
**Europe** 148:2
**evade** 207:10
**evaporate** 31:21
**event** 7:5 30:18
    134:13 135:1,4

**240:**12 271:18
**events** 134:19
    140:20 148:9
    200:11 261:12
    265:22 266:3
**eventually** 16:11
    19:6 38:22 69:8
    78:13 123:1
    137:3 159:13
    171:5 184:21
    185:10 209:22
    225:2,15 245:6
**everybody** 58:22
    64:7,7,24 65:10
    67:6 70:10 76:3
    110:3 112:20
    117:15 136:11
    189:22 191:24
    192:4 255:14
    264:11
**everybody's** 50:25
**evidence** 6:4,4,13
    6:18,19 7:6,7,9
    7:10,16 77:16
    115:22,23 196:20
**evidentiary** 3:7 5:6
    5:14,20,24 7:15
**evil** 268:22
**exact** 33:15 37:2
    68:19 71:25
    80:16 148:8
    200:10 269:5
**exactly** 17:9 61:20
    84:10 89:6 121:4
    174:25 200:11
**exam** 133:10
**examination** 2:19
    4:14 11:24 13:2
    203:24
**examined** 13:1
**example** 20:14
    23:12 26:22

**29:**21 33:11
    47:23 49:22
    58:21,22,23
    64:16 71:6 87:8
    131:15 143:12
    151:12 189:22
    256:18
**exceeding** 32:25
**Excelsior** 1:7 3:9
    13:9,12,15,19
    17:7,14 19:7
    20:11 23:9 24:18
    25:7,22 30:11,17
    32:6 36:13,22
    37:8,11,12,18,24
    38:3,13,19 56:1
    58:4 59:14 61:2
    66:14 73:2 79:6
    82:5,7,21 83:9
    84:8 87:1,24
    88:21 92:24 94:1
    97:7 102:3,17
    124:15 166:18
    169:8 184:7
    189:8 195:16,19
    197:23,24 198:14
    200:1 201:18
    208:19 209:24
    214:3,20 223:8
    231:9,18 234:11
    234:17 237:5
    254:16 258:14,17
    259:5,7 263:5
    265:25 267:7,10
**Excelsior's** 57:25
    201:12
**Exceptions** 21:24
**exchange** 32:18
    34:23 48:13 58:8
    60:12 71:14 72:2
    89:21 91:2
    119:22 153:2

**154:**10 175:9
    190:20 201:7
    204:24 208:3
    209:5 212:25
    213:6,11 217:12
    221:12 223:1
    251:9 260:8
**exchanged** 6:11
    216:1
**excited** 241:14
**exclusive** 67:20
**exclusively** 15:17
    17:5 55:12
**excuse** 22:13 88:20
    226:20 236:11
**executed** 19:7
    187:17
**executioner** 201:25
**executive** 47:2 98:6
    109:20 137:4,6
**executives** 36:16
    40:2 81:21 94:2
    94:10 102:8
    272:21
**exhibit** 19:1 22:14
    26:13 32:11,22
    40:14,21 47:24
    49:19 51:11,12
    54:12 57:2 59:7
    60:11 61:6 68:12
    71:8 72:13 87:9
    89:16 91:12
    104:18 105:1
    106:5,24 110:6
    111:1,3 112:3
    117:20,21 131:22
    149:9 152:22
    153:3,25 158:18
    159:3,4,4,5,7
    161:1 162:2,3,4,7
    162:8 167:25
    173:2,25 180:22

Arbitration Proceedings  ~ Volume I ~  February 9, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

184:1 185:18
188:20 191:11
192:14 202:7
204:4 208:25
210:5 213:15
221:6 222:6
223:17 225:24
228:23 229:10
232:6,21,25
237:23,25 243:14
251:6 254:24
260:3 270:6
271:12
**exhibits** 17:22 18:8
49:20 51:17
110:19 132:11
170:17 171:19
174:4 224:2
225:22 237:12
241:24
**existing** 26:22
205:15
**exit** 138:24
**expect** 28:20 68:11
80:5 242:10,16
**expectations** 47:19
**expected** 49:7
79:24 166:7
**expecting** 182:11
**expended** 230:6
**expenditures** 32:25
**expense** 167:23
**expenses** 34:17,19
148:23
**expensive** 79:20
126:25 148:15
**experience** 126:22
150:15 202:25
**experiences** 36:22
**expert** 76:9 85:19
200:21 203:24
208:13

**experts** 8:11,13
**explain** 58:17
152:7 173:21
176:15 239:8
251:15 264:13
**explained** 7:23
25:8 71:1 269:3,9
**explaining** 233:15
251:16,17
**explanation** 63:11
249:2
**explicit** 89:2
119:10
**explicitly** 31:24
**exploration** 64:16
**express** 44:11
70:20 86:24
88:18 90:12 91:7
103:7 104:11
138:20 139:7
140:4
**expressed** 24:5
104:5
**expressing** 23:17
41:1
**expressive** 41:15
**extend** 68:25
**extensive** 6:9
**extent** 8:21 45:11
66:15 205:2
254:12 266:25
**external** 271:3
**extra** 174:19
**extremely** 47:14
249:22
**eyes** 138:5

**F**

**f** 256:2
**fabricated** 51:24
**face** 10:6 114:20
114:20,21 124:25
135:21 182:16

271:22
**face-to-face** 120:7
121:11
**faced** 123:20
138:14
**facet** 143:21
**Facetious** 113:10
**facility** 36:18
**fact** 4:19 32:9 33:9
36:14 37:17,18
38:2,16 40:11
43:2 46:4,14,21
49:9 56:3 69:12
84:18 91:5 97:11
104:3 115:18
119:18 126:23
134:20 140:13,17
143:22 146:18
167:18 171:3
177:14 178:16
184:18 185:10
191:3 197:4
200:7 201:8
203:16 209:23
214:16,23 216:3
218:17 223:5
227:25 232:16
237:7 247:6
250:1 256:10
261:18 264:18
268:3 270:24
**factored** 125:16
**facts** 115:22
**failed** 80:18 128:16
**fair** 11:21 12:9,10
91:2 134:11
226:14 230:4
255:17 256:5,8,8
256:13,14,14,15
256:15,19,23
257:4 271:9
**fairly** 29:18 40:9

49:5 88:9 92:22
**faith** 166:8,10
**fall** 200:6
**falling** 200:1
**familiar** 9:23 16:21
63:1 71:12 72:20
**families** 130:16,16
131:10
**family** 21:22 29:24
40:10 122:3
127:24 130:10,17
136:22,23 192:24
**famous** 108:4
**fans** 71:2,4,5
**fantastic** 147:18
**fantasy** 263:12
**far** 8:6 15:10 40:4
47:3 53:12 73:16
83:18 100:15
122:2 123:4
157:20 165:12
177:19 194:12
198:23 220:8,11
239:3,4 242:20
264:25 272:18
**fast** 131:19 170:13
**faster** 21:14 63:21
65:9 198:12
**fault** 37:6
**faux** 42:2
**favor** 61:4 84:15
208:1
**favorably** 84:16
**favorites** 124:20
**fax** 187:7
**FBI** 48:24
**fear** 46:2 58:14
**feasible** 243:23
**February** 1:17 3:1
32:23 274:18
**Federal** 67:18,21
183:22

**fee** 183:25 230:13
232:17
**feel** 34:19 52:7
66:21 69:3 80:4
115:1 117:6
119:11 122:10
126:19 128:3
139:20 140:18
217:18
**feeling** 120:5
203:17
**feelings** 85:4 88:19
**fees** 79:11,20 80:2
80:21 135:12
166:22 183:23
184:4 188:25
194:21 223:10
229:21 230:1,6
231:10,15 233:19
252:4 258:2
**fell** 111:25 270:5
**felony** 48:23
**felt** 24:19 25:9 39:6
44:12 80:15
83:16 84:1
117:11,14 150:2
150:4 156:11
177:9 178:23,25
204:16 218:14
228:17 236:16
251:24,24
**FF** 226:5,11
**fib** 63:25
**fiction** 143:9
**fictitious** 254:7
**fight** 61:22 147:5
**fighting** 184:15
**figure** 49:14 50:25
180:5 189:19
193:20 200:16
**figured** 68:23 81:9
142:23 148:12

Arbitration Proceedings  ~ Volume I ~  February 9, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page  13

175:2 189:21
193:20
**figuring** 186:18
**file** 32:25 37:22
62:18 64:5 65:12
67:18 69:24,24
74:25 95:4
142:12,13 143:25
184:18,24 223:23
255:25
**filed** 37:21,23 46:6
77:10 161:25
162:21 216:20
223:10 225:10,11
225:15 255:21
257:22 267:17
**files** 64:12 104:16
198:22 199:14
205:12 217:4
218:2
**filing** 37:24 136:6
145:21 163:20
183:21 205:10
217:9 218:9,12
228:15
**filings** 235:8
**film** 126:14
**filmed** 125:10,13
125:19
**filming** 126:15
**films** 48:15 110:18
111:7 257:6
**final** 132:23 160:12
198:25
**finally** 35:3 81:7
118:11 122:8
**financial** 194:25
**financier** 263:22
**financing** 263:17
263:25 264:9
**find** 11:4 50:11
65:25 109:12

112:20 135:20
169:10 219:23
220:19 231:14
235:12
**finding** 71:10
266:12
**findings** 6:24
**finds** 218:15
**fine** 10:11,15,24
17:25 45:20
122:10 141:10,13
141:18 272:8
273:11
**finger** 74:22 84:10
**fingerprint** 246:6
248:17
**fingerprinting**
246:2,15 247:24
250:3,4,5
**finishing** 272:24
**fire** 31:2 43:6
119:18 158:14
191:2 202:1
**firearm** 94:22
**firearms** 94:6
**fired** 125:25
126:11 139:22
178:18,24 179:6
179:23 180:6
183:8 193:1
194:4,8 200:3
201:7,9,25 202:2
202:13 204:17
213:2,10 268:4
**firm** 16:1,16,18,19
16:22 21:12
23:18 26:25,25
28:2,10,11,12
45:9 55:20
150:10 164:3,11
189:11,14 196:4
230:8 238:13,15

**first** 3:7,15 9:24
12:17,24 13:7,11
14:16,22,25 15:9
15:15,22,25 16:4
16:7,17,25 17:6
18:10,17,19
19:13,14 21:4
23:15 29:14
30:16 32:9 34:10
35:18 39:20
42:11,12 46:5,6
48:18 49:22
50:20 54:15,21
57:7,12 62:22
65:5 68:20 74:3
78:11 83:16
88:22 90:13
103:17 104:18,20
104:25 105:5
111:9 112:23
113:1 123:7
142:6 146:25
147:5 152:7,22
165:2 172:23
173:2 176:17
181:4,10 188:20
191:16,21 192:13
200:22 204:7,21
217:17 226:11
227:2 234:10,15
236:21 248:10
252:21 257:8
258:17 261:21
269:4 271:19
273:4
**Fischer** 189:23
**fish** 151:9
**Fisher** 38:3,6,7,8,9
38:12 44:25 46:3
46:18 49:16 54:7
55:14 61:20 68:6
77:14 83:15,24

84:18 92:19
96:22 147:22
151:23 152:3
199:9,12,14
248:8,13 259:8,9
261:22 262:12,17
269:7,12
**Fisher's** 199:4
249:9
**five** 3:7 14:14
42:16 56:12 64:1
64:3,8 75:21
171:25 208:14
272:4
**five-day** 29:22
**fix** 197:8
**flag** 237:9,11
**flagging** 7:3
**flexible** 8:15
**flight** 89:9
**flings** 103:6
**floating** 133:16
**flood** 76:4
**floor** 1:19 2:5
107:14 114:12,14
114:18 115:7
**flopped** 245:24
**Florida** 14:11 15:3
15:5 20:19 36:19
38:21 51:2
262:10
**fluids** 112:8 115:16
115:23 116:14,17
116:19 119:1
**Fly** 88:4
**focus** 128:20
129:14
**folder** 198:22,24
199:21
**follow** 8:14 12:12
75:24 76:23
175:14 229:5

**followed** 7:16
75:16 100:13
**following** 47:17
77:3
**follows** 13:1
**force** 123:13
247:12,19
**foreground** 124:24
**forensic** 189:18
**foresaw** 24:20
**forget** 115:15
**form** 179:5 193:16
256:11
**formal** 93:6 270:22
**formally** 184:17
**former** 42:13 53:13
53:14,16 80:11
95:8 97:3 168:22
201:15 203:4,4
**forth** 20:10 50:17
122:6 128:22
149:2 172:7
241:24 249:1
**forward** 40:1 70:21
201:5 227:7,10
239:7,12 244:22
248:22 252:22
**forwarded** 155:14
155:21 186:4
**forwarding** 186:21
**fought** 192:5
**found** 66:6 109:11
146:23 219:10
266:2
**foundation** 73:14
76:21
**four** 69:1 144:3
176:17 177:4
225:12 238:18
257:17,19
**Fox** 14:23 15:2,5
**frame** 112:2,5,11

Arbitration Proceedings  ~ Volume I ~  February 9, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page  14

**framed** 111:12
**frankly** 46:19
    176:25 189:17
    218:13
**free** 83:1,7 85:6,15
    93:8 143:2
    250:23,25 252:8
    252:11
**freely** 34:18
**freight** 189:8
**French** 244:18
    245:1
**frequent** 260:24
**frequently** 58:24
    128:13
**Friday** 89:12,13
    170:18,18
**friend** 86:20 96:23
    114:11 120:19
    133:24 207:23
**friendliness** 41:4
**friendly** 86:19
**friendship** 97:13
    182:1
**frighten** 88:25
**frog** 195:9
**front** 27:16 38:13
    40:15 71:8 80:17
    112:23 113:3
    114:17 117:15
    125:2 139:2
    166:3,7
**Frost** 110:1 136:16
    192:7
**fruition** 157:16,18
**FSC** 85:9 252:13
    252:14,14,15
**Fuck** 44:2,3 220:5
**fucking** 44:2
    122:11 138:4
**full** 60:14 104:14
    133:15 189:8

233:21
**fully** 176:1 187:17
**fun** 271:8
**function** 104:9
**fund** 31:4 164:21
    174:20,23
**funds** 30:11 31:18
    160:15 188:6
    224:21 225:13
    264:3
**funny** 125:3
    174:16
**further** 6:21 96:3,7
    175:9 205:6
    270:22 273:12
**furtherance**
    163:11
**future** 26:8 151:1
    151:15 152:13
    171:17,23 194:1
**FYI** 186:19

**G**

**G-a-p-p** 233:10
**G-u-r-v-i-t-s**
    169:23
**gains** 220:12
**Gapp** 231:22
    233:10
**Garrou** 16:14 17:8
    37:5 42:10
**gather** 52:1
**gathered** 238:18
**gay** 84:11 105:12
    124:1,16 125:22
    263:11 268:24
    269:11,14,21
**Gaytorrent.net**
    205:11
**GC** 25:3
**general** 23:8 24:3,7
    24:24 42:12
    47:13 54:1 61:17

61:21 71:15
78:17 91:8
130:17 148:18,19
165:3 261:22
264:20 266:3
**generally** 41:25
    42:5 59:13 97:2
    131:18,20
**generate** 92:10
**generated** 129:1
**generous** 29:6,18
**genre** 262:14
    263:11
**gentleman** 59:17
    234:2
**gentlemanly** 234:3
**gentlemen** 51:2
**George** 111:20,21
**Georgetown** 14:6
**gesture** 39:25
**getting** 17:21 39:8
    65:11 67:1 75:8
    79:9 82:20 86:25
    94:9 106:22
    108:12,21 139:22
    148:12 157:11
    164:1 174:22
    176:12 177:3
    178:24 183:19
    193:4,21 202:18
    216:24 217:5,21
    225:19 238:22
    241:14 258:21,25
    261:4 263:24
    266:16
**Gibson** 1:10 2:13
    4:6 17:7,13 19:24
    20:3 22:5 23:11
    32:5 37:25 39:18
    41:1 42:22 43:20
    44:5 47:19 48:19
    49:6 51:23 54:22

54:25 55:25
60:12,17,25
61:15 72:3 78:5
78:23 79:8 80:10
84:22 85:3 86:14
86:23 87:23
88:18 89:22 90:5
93:15 94:2 95:18
95:20 96:6,11,24
97:14,18,21
98:11,20 101:3
102:4,17 103:7
103:25 105:6,11
106:14 107:13
108:17 111:23
118:4 128:10,19
129:18 150:6
153:14,23 154:10
155:14,21 160:18
161:10 164:20
165:9 168:8
171:6 172:10,16
174:12,24 176:7
178:1 179:18
180:19 183:13
186:5,18,24
187:9,22 190:20
192:11 201:20
202:16 203:3
207:9,19 219:2
221:2 222:20
223:2 227:18
232:16 233:8,15
234:24 243:11,19
248:24 254:15
261:25 272:21
**Gibson's** 34:14
    44:14 56:14
    101:18,22 165:19
    206:5 235:10
**giddy** 69:3
**gift** 112:15

**Gill** 24:6,6 25:1
    47:17 216:9,10
    222:25 243:24
    244:10,23,23,24
    245:13 248:5
    250:18
**girlfriend** 97:4
**give** 12:14,17
    20:12,14 28:24
    37:2,25 45:13
    75:4 76:9 78:5
    83:16 84:7 94:12
    94:21 126:14
    137:11 151:14
    158:12,13 160:18
    161:13,15 171:8
    172:17 182:10
    188:5 214:2
    230:9 240:13
    245:21 266:5
    270:18
**given** 24:20 68:9
    76:14 125:18
    126:21 145:15
    146:18 193:6
    204:22 221:25
**gives** 158:14 163:6
**giving** 11:15 12:5
    21:15 76:17
    170:24 176:12
    177:25 193:18
    217:9 219:18
    220:24 222:8
**glass** 133:14,15
**GLBT** 88:16
    249:19
**Globe** 112:25
    113:4
**glowing** 92:22
**go** 6:5 9:13 15:23
    17:19 26:24 29:3
    29:22 39:4,21

Arbitration Proceedings  ~ Volume I ~  February 9, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

40:7 43:14 45:16
46:15,20 48:6
52:2,18 53:15
59:5 65:9 66:14
67:12 70:11
73:16 75:2,4 91:9
96:3,12,16
100:19 104:4,6
106:25 110:5
117:19,23 118:17
124:21 127:7
128:1,22 131:25
132:16,18,19
135:7,8,13,15,16
140:23 143:2
148:15 157:20
158:15 161:15
164:1,20 165:6
170:7 171:12
173:12 176:24
178:11 189:18
194:12 195:10
197:3 203:11
208:13 211:7
216:17 217:16
220:22 238:4
242:20 246:11,14
246:18 251:13
252:22 255:3
268:17 271:15
272:3
**go-go** 124:16
**goal** 31:21,21
  88:24 151:20
**goals** 44:25
**God** 58:15 197:1
**goes** 7:6 65:8
  108:10 123:5
  155:18 163:4
**going** 6:5,23 8:10
  8:11,14,24 9:10
  10:5 13:6 17:20

18:10,11,25
20:10 21:17 23:5
24:24 25:9,15,17
26:23 27:2,21
33:25 34:25
35:19 44:12,13
44:22 45:1,11,16
46:1 49:13 50:17
52:16 54:2 56:17
60:13,22 62:2
67:3 68:10,25
70:11,17,21
74:19 76:22
79:16 86:21
87:11 88:23 91:3
101:1,6,12 102:9
102:14 104:17
108:4 110:5
115:21 121:23
122:3 126:24
127:1 129:25
131:23 132:8
134:23 135:22
140:11 142:2,23
143:13,17 144:2
144:3,8,9 147:23
148:10,15 149:3
150:7 151:17
153:23 157:15
164:10,11,13
165:6 166:24
171:10,11,11,13
171:15,18,20
172:6 173:16
178:12,13,15,16
179:22 182:19
183:7 185:4
190:3,23 192:19
193:10,12,21,24
194:4 195:1
196:18 197:6
201:9 204:2

205:12,16 208:5
209:25 212:14
213:17 216:7,17
217:14 219:19,23
220:16,22 222:23
234:21,25 235:4
235:12 239:14
240:12 242:6,18
243:24 244:21
246:1 248:22
250:5,6,10,11,19
250:21 252:1
254:10 255:16
257:20,25 258:1
258:2 259:15,18
264:1 266:22
273:1
**gold** 165:15
**golf** 16:10
**good** 3:6 11:7 13:4
  13:5 21:13 24:13
  46:19 63:5,8
  67:23 68:9 73:6
  74:20,25 75:12
  84:1 85:8 88:12
  89:11,13 92:24
  129:7 136:2,3
  141:5 145:15
  146:22 178:24
  207:23 219:25
  244:1,11 248:12
  249:17 253:3
  266:6
**Goose** 133:17
  134:2
**gotten** 33:14,15
  167:13
**grab** 73:20 74:8
**gradually** 128:1
**grainy** 124:25
**grand** 75:5,6,13
  146:4 158:10,13

158:13 166:12,12
**grant** 70:1
**granted** 192:2
  271:4
**granting** 162:14
  170:23
**gratitude** 41:1
**great** 129:10 247:6
**greater** 7:17
  145:18
**Green** 273:1
**Greenberg** 159:9
**Greenwalt** 270:12
**grew** 39:19
**Grey** 133:17 134:2
**gross** 31:25 32:9,10
  32:20 34:1 42:2
  188:17
**group** 55:7,10 56:2
  56:9 77:13 189:4
  189:5 235:7,25
  236:6 238:7
  268:19
**guarantee** 174:18
**guess** 3:15 103:2
  140:10 168:24
  173:24 191:21
  252:14
**guided** 5:24
**guidelines** 78:6
**gun** 94:20 136:15
**Gurvits** 169:23
  171:2,4,7,14
  172:7 242:8
**Gurvits'** 171:13
  173:12
**gut** 115:2
**guy** 43:2 46:2,7,9
  60:22 67:16 72:1
  72:4 204:20
  269:11
**guys** 49:14 83:23

92:16 145:10
153:15 165:7
220:8

---

**H**

**Haberfeld** 1:16 3:5
  3:23 4:3,8,12,21
  5:2,19 9:7,9,17
  10:2,11,15,18,24
  11:6,10,21,23
  12:11,19 17:24
  18:3,11,15 41:17
  41:20 45:15,19
  45:21 48:3,6
  50:11 51:19 52:4
  52:15,21 61:12
  62:6,10,12,25
  63:5,8,12 76:24
  78:1 87:12,15
  96:7,12,16 99:4
  99:10,16 101:12
  101:15,20,24
  113:13 116:5,9
  130:7 131:25
  132:4 141:6,10
  141:14,16,19,22
  158:20,23 168:21
  180:11,14 196:22
  210:14,22 211:5
  211:7,23 212:9
  212:17 226:22,25
  229:12,14 230:23
  232:9,11 235:19
  236:1,4 237:21
  238:9,25 239:3
  239:19 240:1,7
  240:10,16 255:1
  260:23 272:5,11
  272:14 273:12
**half** 133:1 166:3,7
  248:20,21 264:4
  265:5
**Hancock** 59:18

Arbitration Proceedings  ~ Volume I ~  February 9, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

**hand** 150:5 274:16
**handbook** 22:7,10
  22:12 23:1
**handle** 9:1 52:5,6
  215:11
**handled** 95:18,19
  96:10 214:25
  215:15 245:12
**hands** 74:24 200:1
  200:6
**hands-on** 25:4
**happen** 9:11 32:24
  78:20 81:25
  123:3 133:5
  137:7 140:14
  150:21 170:12
  175:3 185:6
  192:19 241:1
**happened** 28:9,16
  83:18 85:2
  107:23 110:8
  150:19 152:8,20
  172:23 175:13
  176:2 185:3,13
  190:17,21 213:2
  213:25 215:6
  236:17 262:3
  266:4 270:17
**happening** 102:22
  107:7,20 137:21
  138:7 139:21
  140:6 155:24
**happens** 34:3 50:3
  65:5
**happy** 50:13 88:22
  119:8 160:6
**harassment** 265:19
**hard** 12:12 44:9
  46:16 54:10 59:5
  131:19 170:13
  192:5 198:5,6,7
  257:20

**hard-core** 43:10
  81:2
**harder** 258:6
**harnessing** 247:10
**harsh** 246:9
**hashtag** 65:5 246:7
**hate** 140:2
**hated** 92:15 139:4
**hates** 70:10
**head** 120:25 155:4
  262:23
**heading** 21:24
  227:2
**headquarters**
  36:15 39:4,9
**health** 41:8 127:23
  127:24 131:15
**hear** 11:18 44:17
  44:20 116:5
  142:6 239:19
**heard** 85:19 114:8
  264:3 267:16
**hearing** 3:8 5:7,15
  9:19 29:4 52:11
  224:6,10,12,23
  238:10
**hearings** 9:12
  164:8
**hearsay** 7:13
  196:19
**heart** 42:17
**heavily** 17:1
**heck** 114:9 249:24
**held** 135:1 184:22
**hell** 70:25 147:5
**help** 26:6,7 50:9
  98:20 99:19,25
  171:16 192:18
  216:25 219:22
  256:21
**helped** 19:18
  267:24

**helpful** 45:14
**helping** 218:3
**Hemisphere** 72:22
**Henry** 2:3 3:20
  231:23,24
**hesitancy** 70:20
**Hey** 56:5 68:23
  109:16 129:10
  138:9 143:25
  217:3 264:21
**hi** 131:4
**hiccups** 185:1
**hid** 95:10 234:11
**hidden** 74:18
  163:23 235:11
**hide** 209:17
**hiding** 208:19
**hierarchy** 260:19
**high** 21:21 79:9
  149:21
**higher** 20:4 39:14
  49:12 149:24
**highway** 138:22
**hire** 102:9 131:9
  131:13 166:17
**hired** 108:21
  136:12 151:1
  206:20
**hiring** 133:3
  156:25
**history** 176:17,19
  237:7
**hit** 34:18 67:4
  70:18 75:3
  118:11 146:8
  147:2
**hold** 73:21 160:20
  214:7
**holder** 150:18
**holding** 167:15
**Holdings** 1:8 37:20
  38:5

**hole** 167:12
**home** 103:20
  117:13 121:25
  122:24 123:1
  126:24 138:18
**Honduras** 81:6
  95:10
**honest** 115:13
  229:25
**honestly** 103:15
  115:18
**Hong** 147:25
  148:15 162:23
  163:11 164:2,3
  164:11 165:11,25
  166:17 167:1,12
  167:20 186:23
  217:11,17 221:17
  221:21 227:4,9
**Honor** 3:17,20
  4:18 5:17 9:6,16
  10:1 17:19 18:6
  50:10 61:11 62:4
  62:15 63:10,19
  71:10 76:6,19
  95:14 101:1,8
  107:11 113:12
  116:1 129:25
  130:6 141:3,24
  158:22 210:11
  225:21 226:24
  230:10,19 237:9
  239:7,22 240:15
  272:2,13
**HONORABLE**
  1:16
**hoo** 165:21
**hooey** 269:7
**hook** 160:5 187:18
**hope** 2:4 6:8 9:20
  41:14 194:17
**hoped** 135:19

**hopefully** 182:6
**hoping** 210:9
  264:25
**horrified** 124:24
**host** 91:25
**hostile** 130:2
**hosting** 74:15
  91:25
**hour** 81:9 133:1
  141:9 189:23,24
  189:25,25 190:4
  233:22 262:5
**hourly** 189:9
**hours** 40:6 185:5
  187:6,8 230:6
  259:11
**house** 20:22 35:23
  36:17 38:21
  39:21,22 60:8
  65:21 99:25
  100:7,14 106:20
  133:12 140:24
**Houston** 112:24
  113:2
**Howard** 1:18 2:9
**HR** 120:11,25
  139:17 183:2
  208:23 209:18
**huge** 66:3 84:5
  120:13,15 121:9
  197:6
**Hughes** 1:18 2:9
**huh** 138:5
**human** 20:5
**humiliate** 117:14
**hundred** 144:6
**hurt** 44:18
**hypothetical**
  218:24
**hypothetically**
  151:13 241:18,20

————————
**I**

Arbitration Proceedings  ~ Volume I ~  February 9, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page  17

iCloud 198:10
idea 56:6 68:1
  138:23 158:8
  215:5 247:6
  248:12 250:1
identified 69:6
  71:21
identify 230:18
  238:20 239:12
  253:22
identifying 262:1
identities 70:3
ill-gotten 220:12
illegally 64:18
imagination
  257:16
imagine 64:5 66:8
  66:10,25 143:15
  265:4
immediate 223:15
immediately 31:2
  187:10 205:21
  206:25 211:19,25
  214:2
immune 92:5
impact 46:25 67:25
  137:17 167:1
  227:24
impacted 94:17
impediment
  146:10
implying 41:14
important 20:16
  20:25 21:10,11
  22:21 48:24 55:4
  193:2,7
impositions 26:21
impression 20:8
  24:23 39:7
improper 228:1
  230:14
improperly 76:20

229:21
in-house 25:9
  127:22 216:11
  233:18
inappropriate
  76:11
inappropriately
  267:3
inaugural 248:7,9
inbox 76:4
incentives 144:5
incentivize 150:22
incentivized 39:12
incident 101:4
  103:13,19 128:12
  131:23 134:24
  190:16 268:11
  271:25
incidents 138:17
inclined 7:1
include 97:17
  202:19 210:7
included 21:1
  183:18 228:14,23
including 45:12
  95:25
inconsistent 60:21
incorrect 174:2
incorrectly 231:4
increase 151:21
incredibly 156:12
incurred 230:2
independent 53:19
  97:22 201:1
  230:8 270:21
independently
  270:16
indicate 7:13
  149:17 156:3
  161:9,18
indicated 5:2 7:11
  274:11

indicates 200:22
indication 74:16
  217:13
individual 65:1,18
  74:5 254:4
  258:13 260:14
individually 1:10
individuals 65:14
  69:9 70:8
industry 16:24
  25:12 59:22
  66:17,18 67:4,9
  70:19 81:17,19
  85:11 86:9 92:18
  124:7 150:16
  152:18,20 170:2
  197:3 220:14
  240:21 250:13,15
  251:1,2
industry's 61:22
inevitable 173:23
  204:16
influence 227:9
inform 84:21 85:16
  168:12 192:18
informal 43:3
information 60:9
  95:17 104:15
  147:20 148:20
  202:3 217:21
  218:2 219:10
  241:13
informed 150:6
  155:24 192:24
  254:15
infringe 54:4
infringement 54:3
  77:25 257:21
infringer 33:16
  46:7 65:24 73:9
  73:10
infringers 45:1

infringing 92:2
  255:9
inherently 268:22
initial 41:12 87:18
initially 56:16,16
  83:1
initiated 89:24
injunction 162:22
  162:24 163:4
  164:2 167:4,5,11
  167:13
injustice 60:14
input 90:7
inquire 76:22
inquiry 36:21
insight 145:15
insisted 261:19
insistent 156:13
install 200:17
instance 37:21
  51:22 53:3 94:5
  116:16 157:21
  236:18 261:7
instructed 43:10
  46:15 85:15
instructing 60:18
  126:24 212:13
instruction 210:12
instructions 54:9
  78:6 200:15
  220:4 222:8
insult 83:4
insurance 131:15
intellectual 14:12
  14:16 15:22
  16:18 53:1,6
  62:19 128:21
intend 205:20,24
intended 161:21
  203:11
intent 15:21
  115:10 117:14

149:4 204:13
  209:15
intention 173:18
inter 131:6
inter-involved
  131:7
intercept 203:10
interest 24:15
  34:20 168:6
  217:20 237:1
  239:10,17 244:20
  264:2 265:3
interested 24:2
  49:13 81:22
  216:24 241:5
  264:8
interesting 16:7
interestingly
  144:25
interim 182:9
intern 270:14
internal 234:4
international
  14:12 75:23
Internet 63:20,22
  64:12 65:18 70:2
  237:13
interpret 166:14
interpretation
  115:11 219:21
interpreted 121:2
  121:5 159:16
intertwined 216:6
interview 271:4
interviewed 15:12
interviews 15:14
inured 30:25
invented 73:12
invest 165:10
investigating 165:1
investigation 81:3
investment 166:19

Case 15-01193-abl   Doc 144-2   Entered 04/07/17 10:04:43   Page 53 of 239

Arbitration Proceedings  ~ Volume I ~  February 9, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page  18

invited 7:19
invoked 211:3
involved 71:22
   77:12 165:5
   250:23 265:18,22
involvement 73:24
involving 77:13
   88:15 100:1
IO 77:13
IP 16:25 65:15,25
   69:9 70:3,4 71:24
   75:16,21
iPhone 203:13,18
   203:21 215:13
Ira 154:16 156:11
   156:12
Ira's 158:9
irreverent 105:20
   106:17 107:10
irritant 104:4
irritation 104:6
island 81:5,10
issue 4:9,12,23
   27:16 32:23
   50:15 52:7 60:23
   156:17 170:24
   175:14 179:4,18
   180:19 190:6
   212:12 216:5,6
   221:3 222:4
   241:4,12 261:4,9
issued 203:14
issues 14:17 15:1,9
   15:16,22 16:5,5,6
   16:8 23:4 69:18
   69:19 75:25
   78:15 98:21
   170:21 183:4
   212:7 255:15
   261:7 267:22
Italian 14:5
Italy 14:13

Item 29:8
items 96:4 113:7,8
   114:22 122:17
   201:17
iTunes 144:13

                J

J 1:4 2:13,19 3:8
   12:23
Jackson 207:22,25
JAF 189:22
jail 49:15
Jake 59:22
jamming 251:25
JAMS 3:10 4:16
   5:21 6:1 226:6
January 55:6
   243:22
Jason 1:10 2:13
   4:6 19:14 23:15
   32:19,22 33:19
   34:6,7 35:1 40:13
   41:1,8 46:21
   50:20 53:4 70:12
   85:14 89:8 91:7
   92:16 94:19
   95:12 98:9,15,24
   100:2,2,3,15
   102:7,7 103:23
   105:20 106:16
   107:22 115:14
   119:13 120:2
   124:18,22 126:22
   131:12 133:14
   135:14,21 136:14
   136:16,18 137:1
   137:11 138:1,8
   139:10,25 145:8
   145:9,19 149:15
   152:7 159:24,25
   160:6 170:11,12
   173:21 175:21,25
   181:2 182:6,8

189:23 191:3
195:11 200:5
202:5,12 204:9
204:14 218:14,23
220:8,18 233:13
260:10 269:9
271:16 273:4
Jason's 96:23
   99:23,25 127:3
   194:19 213:22
Jay 189:23
JD 107:9
Jennifer 108:5
   124:22
Jennifer's 108:3
Jessica 19:22
   245:12 251:17
jizz 107:2
Jo 1:25 274:7,21
job 16:1,11 25:16
   39:8 118:7
   119:13 126:20
   196:4 197:10
   201:25 237:6
John 20:6 69:16,20
join 142:20 246:3
   247:22,25 248:4
   248:14
joinder 69:18,19
joined 98:5
joining 17:14
   20:11 197:12
joint 148:22
   216:19 228:9
   243:11,12
jointly 217:4
joke 105:21,25
   108:7 109:9
   115:5 118:23,24
   271:10
joked 106:8
jokes 106:17

107:12 117:6
124:9,18
joking 106:14
   108:1 109:5
   118:1
Jon 98:23,24 99:20
   100:1,1,2,3,7
   100:13,17,22
   102:9 137:2
   203:8,11,12
journalism 14:5
journalist 88:3
judge 67:13,23
   112:21 159:16
   162:13 224:11
   228:18
judges 69:17 84:17
judging 235:9
judgment 30:20
   33:16 46:16 47:4
   56:23 80:7 84:2,5
   88:16 89:8
   167:17 183:23
   249:20
judgments 58:25
JUDICIAL 1:2
juice 118:21 134:3
July 37:10,10
   49:24 50:1
   159:17
jumped 23:22
jumping 136:19
   169:5
June 37:10
Jungle 198:11
   199:2,7 214:3
jurisdiction 67:20
   147:24 163:24
   167:9
Justin 53:21 58:14
   58:20 59:21

                K

Kansas 67:16
Kazakhstan 74:19
keep 31:2 34:8,15
   74:22 118:7
   119:13 131:20
   147:2 150:6
   155:23 172:12
   175:2 209:25
   215:18 221:2,2
   222:23 223:24
   228:13
keeping 25:14
   129:14
Ken 172:3
Kenneth 2:3 3:17
kept 104:12 194:24
   194:25 198:1
   203:9 222:3
kick 115:2
kid 21:21 43:12
kid's 140:24
kidding 106:21
   133:21
kids 40:12 114:11
   119:12 130:20,22
   138:10 140:22
kids' 115:6 122:22
kill 139:6 268:24
kind 6:23,25 64:14
   65:10 67:3 73:10
   74:22 81:9 94:8
   94:18 106:20
   114:24 123:13
   129:8 131:11
   137:23 139:25
   144:8,20 145:4
   147:3,19 151:11
   152:10 162:19
   165:2,2 166:2
   171:3 175:2,12
   178:25 197:20
   215:10 216:25

Arbitration Proceedings  ~ Volume I ~  February 9, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 19

219:24 242:21
244:21 246:6
250:9 264:22
266:18 269:7
**kindly** 10:4
**kinds** 12:8 104:14
104:15
**Kink** 236:22
**Kirk** 120:9,10,11
139:16,17 182:23
182:24 183:8
191:7 201:24
208:24 209:6
**kissing** 124:19,23
**knew** 36:3 40:4
47:3 62:1 78:12
80:7 119:13
126:21 139:22
145:4,4 146:15
148:1,10 149:6
150:3 152:19
178:23 183:7,18
191:6 192:5
200:4 207:24
241:16 244:23
245:1
**know** 10:12 12:11
20:16 21:6,21
22:3,7 23:14,16
24:2,2,12 25:1,8
25:9 26:21 27:12
28:8,22 30:19
32:14,24 33:3,7
33:11,12,21 34:4
34:7 37:1 39:20
40:12,12 41:6
43:3,9,10,12 44:8
44:9,10,11 46:11
47:4,8,8,12 48:25
49:9,14 50:5 53:4
53:4,10 55:2,18
56:18,19 57:4

58:20,21 59:9
60:3,4,23 61:8
62:1 63:9 64:14
64:15 66:4,8,11
66:16,21 67:2,6
67:13,14,20
68:13 69:17
70:11,15,16,22
70:24 71:1 72:22
72:23 73:7,20,21
74:2,2,10,14 75:1
75:5,6,11,12,13
75:20 76:4 77:8
79:4,19,19,21
80:1,5,6,19,23
81:11,18 82:18
82:23 83:1,3,5,6
83:18 84:2,25
85:5,5,9 86:17
87:2,20 88:13,24
89:10,11,18
90:20 92:22
93:18,21 96:9
100:17 101:5
102:12 103:3,6
103:12 104:8,22
105:20 106:16
107:10 110:3,7
114:8,9,17 115:5
115:7,9,19 117:8
117:10,11,16
120:16,17,20,20
120:22 121:6,6
121:21,22 122:1
122:9,21,22
123:3,5,6,16
124:22 125:15
126:9,15,16,25
127:6,20,25
128:12,24 129:1
129:3,3,6,8,8,15
129:17 130:19,21

130:21,24,25
131:12,13,16
135:20 137:5,23
138:9 139:24
140:1,3,9,19,21
141:1 143:10
144:5 145:9,25
146:3,4,4,12,13
146:15,15,17,21
146:24 147:4,19
148:11,16 150:1
151:8,12 152:23
153:19 154:6,21
155:17 156:12
158:6,7,9,16
160:24 163:21,22
164:16,24 165:6
166:1,3,9,12
167:7,16 172:14
174:8 177:17,25
179:9 180:5,6
181:6 185:4,21
187:6 189:17,19
191:3,6,8,13
194:19,21,24
196:3,8 197:4,6
198:7 200:4,13
201:8,22 202:5
203:11 204:15,17
205:1 208:8,15
209:2,12,21
212:16 214:22
215:3,9 216:23
217:3,12,16
219:11,20,22
220:8,19,20
221:10,21 222:25
223:3 229:3
231:9,22 233:2
243:16 244:9
245:20 249:1,24
250:16 252:21

255:18,23 257:7
257:10 259:11,16
261:12,16 262:21
262:22 263:11
264:18,21,21
265:10 266:19
268:19 269:4,6
269:14 270:19
271:2,7 273:9,9
**knowing** 81:1
**known** 38:12 44:25
59:21 64:25
69:15 131:20
142:10 148:18
170:2,4 177:15
263:11 264:16
268:15
**knows** 8:6 65:11
**Kong** 147:25
148:15 162:23
163:11 164:2,3
164:11 165:11,25
166:17 167:1,12
167:20 186:23
217:11,17 221:17
221:21 227:4,9
**Krincek** 2:8 3:24
3:24 4:5 5:17
11:8 45:5,20
49:18 51:6 52:9
63:6 72:12 76:6
95:14 96:9 101:1
115:21 129:25
141:8 154:2
168:24 196:18
210:11,16,23,24
211:6,11,21
212:5,11,18,22
230:10 235:4,14
235:21,22 237:17
237:22,25 238:11
239:2,6 272:10

272:19,23 273:4
273:8
**Krueger** 53:22
56:14 58:14,20
59:4,21 60:3,3
79:23 80:6
**Krueger's** 54:20

---

**L**

**L** 2:3
**L-e-n-z** 255:20
**lack** 35:16
**ladder** 146:8
**lady** 107:23
**laid** 226:15
**Lake** 38:21 135:2,6
**landlord** 80:11
95:9
**language** 27:18
43:24 60:16
124:11 160:11
212:10
**laptop** 133:13
197:16,17,21,25
199:16 200:8
208:11,17,20
**large** 25:23 30:21
33:18 36:5 46:16
47:5 66:23 73:7
92:8 133:12
196:10 243:25
**larger** 28:11
**largest** 86:9 144:18
**Larry** 16:13
**Las** 1:20 2:10 3:1
93:20 100:8
206:9
**late** 190:19 237:18
259:19
**lately** 129:16,17
**latest** 143:18
170:18
**latitude** 90:9

Arbitration Proceedings  ~ Volume I ~  February 9, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page  20

**laughing** 110:3
171:3
**Laura** 189:24
**law** 14:2,6,12 15:1
15:18,21 21:12
28:2,10,11,12
35:4,8,9,11 36:3
36:5 55:19 76:1
164:3 207:25
214:10 230:8
255:18 256:6,6
258:4 270:14
**laws** 67:21
**lawsuit** 42:13
67:15,18 69:24
74:25 77:4,9,13
77:23 146:19
147:14 243:20,23
249:16 255:21
269:2
**lawsuits** 37:22
62:18 68:8 69:16
70:21 73:5 75:16
**lawyer** 107:12
132:25 150:17
199:8 245:1
270:13
**lawyer's** 104:13
**lawyers** 12:12
56:12 76:2
166:17 167:12
**lay** 166:2
**laying** 76:21 80:2
**lead** 8:16 154:19
**leader** 61:21
**leading** 92:19
**leaning** 170:13
**learn** 155:5 225:14
228:25 244:12
**learned** 187:5
**learning** 186:25
**lease** 95:6,9,11

**leather** 116:24
**leave** 4:17 52:17
134:21 195:24
**leaving** 8:25 21:12
190:7 195:22
196:25 216:6
**led** 170:18
**left** 11:14 13:19
15:5 21:21 81:10
111:13 112:23
114:19 119:1
136:14 168:16,16
200:1 201:18
215:25 225:16
227:8,23 228:7
228:11 265:12,13
**legal** 26:6 27:24
30:11 37:12 55:7
55:10,21 56:2,9
76:9,12 93:5,7
94:16,22,24 95:5
96:25 104:14,15
113:15,16 127:16
132:20 143:9
152:16 189:4,5
233:12 235:7,25
236:6 238:7
266:5 267:22
**legally** 144:12
**legit** 144:13
**lending** 265:2
**Lenz** 255:19,21
256:3
**Leonard** 231:23,24
**let's** 11:6 13:24
21:3 34:8 35:4
36:20 47:23
48:17 50:11
63:22 68:23,24
68:24 71:6 87:8
88:24 96:12 99:6
106:24 109:11

117:19 150:14
151:12 158:8
160:23 161:1
173:23 176:16,16
190:5,6 191:11
192:13 197:15
200:18 204:6
216:5,7 225:14
229:9 234:5,10
240:18 243:3
246:21 259:9
264:23,24 265:6
267:2 268:17
**letter** 54:17,19
55:5 69:7 82:17
84:4 194:13
209:22 228:9
**letterhead** 55:6,13
55:15 56:8,11
**letters** 54:25 55:9
55:12 186:23
**letting** 139:9
**level** 52:24 55:24
72:9 117:10
127:16
**levels** 117:9
**Lewis** 207:22,25
**liability** 1:9 92:5,7
142:24 210:18
211:15 250:6
253:14
**liable** 73:22 74:5
160:11,13 253:19
256:1
**Liberty** 1:8 37:20
37:23 38:4,10,10
53:1,2 55:14 73:2
75:10 88:21 94:1
144:16 146:2
148:6,25 156:9
157:13 158:4,13
159:22 176:12,24

177:1 178:11
187:11 198:14
205:6 223:12
225:3,16 226:16
227:4,8,20,23
228:2,7,10,25
229:20 230:12
231:19 234:17
242:18 244:3
247:15,20 253:4
253:24
**Liberty's** 54:5
62:18 66:1
224:22 230:11
234:4,8
**license** 67:7,8
**licensing** 16:9
**Lieberman** 147:15
149:2,2 159:10
159:23 169:18
171:2
**lied** 200:3
**light** 49:8 123:15
**liked** 22:25 46:21
**likelihood** 35:22
75:1
**likes** 251:11
**liking** 118:5
**limited** 1:9 69:20
75:1 226:11
239:17 248:2
**Limited's** 226:6
**line** 45:16,18,22
76:7,23 95:15
101:2 125:23
126:1,2,4,17
130:1 140:9
146:22
**lined** 207:17
**link** 58:13 84:4
142:14,17 247:8
**links** 251:12

256:12
**lips** 11:18
**liquid** 133:16,16
**liquids** 117:2
**list** 15:11 76:1
102:15 178:25
193:25 194:2
236:9 256:22
**listed** 236:19,21,22
**listening** 244:10
**literal** 106:15
220:6
**literally** 43:23
165:24 232:24
**litigating** 53:12,13
78:11
**litigation** 13:22
25:4 26:23 42:1,6
42:9,25 44:6 46:1
47:14 55:11
60:18 74:7,10
76:10 78:7,7,22
79:9,10 80:11
88:7 142:3
169:14 177:18
179:11 189:1,6
199:13 203:20
214:15 223:7
225:2
**litigator** 190:3
**little** 15:6,7,25
23:24 46:2 49:14
60:3 63:25 64:7
67:19 69:3 70:17
83:6 85:21,25
90:9 99:13,14
114:14 132:25
145:22 156:16
164:17 166:1
195:11 245:21
252:19 255:18
258:6 266:24

Arbitration Proceedings  ~ Volume I ~  February 9, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page  21

268:16 269:16,22 271:6,18
**Littler** 2:9 3:24 4:1
**live** 98:15
**lived** 36:16 46:9 88:23
**living** 20:18 39:15 81:5
**LLC** 1:8
**LLM** 14:12
**loan** 20:23
**local** 15:3 79:11,20 166:22 208:1
**located** 168:15 198:6,7,8 217:22 262:9
**locations** 132:16 133:2
**lock** 160:7 163:13
**locked** 104:2 148:12 165:17 220:10
**locker** 144:15
**lodestar** 230:3 231:6 233:19
**log** 209:12 215:17
**loggerheads** 205:2
**long** 6:6 17:24 31:18 39:1 56:24 62:6 64:19 83:25 101:24 118:8 119:14 121:7 123:10,13 126:14 141:6 142:13 145:19 151:9 164:5,6 165:5 187:5 197:24 229:19 254:2 257:8,11
**longer** 14:18 127:1 201:16 203:12 205:12 247:5

**look** 19:1,3 21:4,23 22:9,9 26:12,19 29:5 40:14 43:12 46:3 47:23,24 48:2,17 50:19 54:15 57:1,14 61:6 67:23 70:13 71:6,7,11 74:9,13 74:21 77:8 82:13 87:8,9,14 89:15 89:19 90:17 91:11 104:17,20 106:4 120:19 121:8,22 122:8 124:24 125:1 149:8 152:22 161:1 171:18 173:1,23 174:7 178:4 180:24 181:3,21 185:17 185:21 187:20 188:20 191:11,15 192:13 198:4 202:7 208:25 209:9 210:5 213:15,20 221:7 222:6,13 223:17 224:8 225:19,20 225:21 226:4 229:9 232:20,21 232:24 243:14 245:2 251:5 254:23 257:25 258:1 260:3 266:21 269:11 270:6 271:12
**looked** 30:19 50:24 84:16 90:20 144:23 148:10 150:3 252:2 256:23 258:17 268:6

**looking** 11:4,17 29:8,9,13 39:21 50:20 51:9 56:7 66:6 67:11 109:2 112:2,17 117:20 117:25 169:15 181:6 182:8 186:5 188:3 202:14 207:12 209:8 226:19 228:21 257:10 269:13,14
**looks** 90:1 160:8 161:12 198:5 251:11
**loop** 221:3
**Los** 2:5 16:20
**lose** 120:6 257:24
**loss** 41:9
**lot** 25:4,4,11,12 28:13,22 34:3 40:5,5 43:6 46:20 53:11 59:20 62:24 63:21 66:20 73:16 80:3 81:3,4 92:14 93:20 114:23 127:18,18 133:10 134:18 145:4 147:13 173:24 183:4 244:9 257:16 259:17 264:11,11
**love** 196:6,9
**low** 131:21 143:4,4
**Lowderman** 2:14 4:7 25:19 191:9
**Lowderman's** 25:18 95:11
**lower** 125:16
**lunch** 141:7,21
**lying** 114:12,13,18

114:20
**Lyons** 59:22

**M**

**Mac** 215:9
**MacBook** 197:22
**Macintosh** 215:11
**magazine** 81:16
**Magnat** 226:5,11
**maid** 119:5
**mail** 58:6 215:8,9 215:12 216:1 222:22
**mailing** 68:18
**main** 16:19
**maintain** 26:6 214:17 224:18
**maintaining** 24:17
**maintenance** 265:4
**majored** 14:5
**majority** 37:19
**making** 11:17 33:1 53:8 69:3 105:21 109:25 117:6 121:18 125:1 172:17 176:4 194:7 196:11 199:3 203:3 235:8 244:25 247:19 251:19 254:18 259:19 263:6
**man** 131:16
**man's** 113:23
**manage** 136:4 219:4,6
**managed** 136:5
**manages** 38:10
**managing** 25:1,5
**manpower** 249:3
**manufactured** 6:24
**Marc** 1:4 2:13,19

3:8 12:23 28:1 88:8 261:20
**marched** 195:9
**Mareva** 162:22,24 167:4,11,13
**mark** 109:8 264:21
**marked** 6:17
**marked-up** 172:6
**market** 248:11 262:19
**marketing** 90:3 267:13
**Mary** 38:21
**masked** 178:15
**mass** 14:10
**Massachusetts** 14:4 35:20 39:3 185:14 186:2
**Master** 14:10
**material** 116:3,22 143:16
**materials** 77:17 199:4
**math** 30:19
**mathematical** 177:3
**matter** 3:8 5:11 8:2 36:8 42:12 45:10 49:21 50:4,5 53:12 80:7 96:5 141:5 151:18 177:1 187:6 231:5 236:14 245:7,10 254:17 260:15 274:10
**matters** 8:17 30:12 95:18,20 96:11 198:14 205:6,15 212:6,12 240:19 241:2
**mattress** 74:19
**maximum** 29:20

Arbitration Proceedings  ~ Volume I ~  February 9, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page  22

44:10
**McCoig** 94:14
  108:15,16 136:18
  136:24,25 137:20
**McCoig's** 138:12
**Mead** 135:2,6
**meals** 40:5
**mean** 29:5 37:13
  52:14 56:4,7 66:9
  99:5,10 101:2
  107:8,21,21
  120:5 121:2,7
  123:5 125:23,24
  126:11 128:2,25
  130:18 140:2,10
  140:22,25 148:8
  156:10,11,15
  158:9 163:17,19
  165:2,24 166:23
  167:3 175:11
  177:22 179:7
  180:2 182:3
  192:21 193:3,7
  201:3 205:8
  219:11 220:5
  228:21 231:17
  235:22 247:16
  251:19 252:2,10
  252:10 253:18
  254:1 263:2
  264:16 272:23
**meandering** 15:25
**meanies** 68:15
**means** 50:7 121:1
  121:4 218:10
**meant** 103:12
  149:6 176:15
**media** 1:7,8 3:9
  14:16 15:3,10,14
  15:21 24:8 37:20
  38:3,4,13,16 59:1
  61:1 66:9 77:13

87:4 146:3
  216:10,11 261:12
  269:20,23
**Media's** 230:12
**mediation** 1:2 43:4
  149:3,6
**mediations** 149:5
**MEDURA** 2:8
**meet** 17:6 88:5
  121:14 210:9
  219:4
**meeting** 120:9,24
  121:17 127:10
  181:14 183:19
  219:2 255:14
  264:21
**meetings** 183:18
  191:1 245:4
  263:19
**megabits** 63:23
  64:4,8,10
**Megaupload**
  154:13,19,24
  155:20 156:24
  242:13
**member** 75:19,21
  75:22 142:21
  143:20 252:15
**members** 16:6 61:2
  124:14 203:4
**membership**
  249:18
**memberships**
  249:19
**memo** 149:15
  155:17
**memory** 44:23
  134:4,6 257:11
**men** 110:14 131:21
  263:13,14
**Mendelson** 2:9
  3:25 4:2

**mention** 96:5
**mentioned** 24:1,1
  97:25 152:21
  157:8 193:9
  195:13
**Mercedes** 139:2,4
**mere** 236:16
**merely** 235:25
**merit** 76:13
**merits** 77:19
**message** 88:20
  90:14 93:18,24
  115:12 120:17,23
  126:7 193:18
  213:11
**messages** 94:18
  105:5 115:4
  120:6 181:2
  203:10
**met** 132:23,24
**metastasizes** 65:8
**method** 51:25
  58:24 231:6,9
**methods** 162:17,19
**Miami** 28:12
  186:10,11
**Micah** 202:2,13
**Micah's** 202:19
**middle** 90:13 95:5
  136:20 137:22
  264:20
**midway** 186:17
**Mike** 59:18,18
**Millennium** 91:24
**million** 79:7 129:2
  129:4,5,6 151:14
  151:16 220:10,12
  220:15 264:10
  265:4
**millions** 129:12,12
**mind** 33:11 62:23
  125:12 241:17

256:24
**mine** 86:21 112:15
  137:5 207:23
  255:16
**minimized** 67:24
**minimum** 68:10
**minor** 180:8
**minored** 14:5
**minute** 272:4
**minutes** 62:9 64:22
  143:7 172:1
  219:6 246:23
  257:7
**mirror** 137:16,19
**misleading** 45:14
**missed** 211:12
**missing** 169:11
**mission** 250:17
**misunderstanding**
  119:24
**mixed** 85:4
**mocked** 70:22
**model** 23:12 24:13
  24:14 47:18
  142:19,25
**Moldova** 148:3
  165:15
**moment** 11:3 48:3
  87:12 115:9
  132:13 157:8
  174:3 180:8
  216:7 232:5
  255:1
**Monday** 1:17 3:1
**money** 31:2 34:4
  46:15 47:6,7 53:8
  56:22 74:17,18
  75:7,8 127:19
  128:17,25 129:10
  129:13,16 142:21
  146:15 147:22
  148:12,13,14

150:4,10,22
  157:2,11 158:5
  163:10,23 164:11
  165:7,10,25
  166:2,13,17,25
  167:6,15 170:13
  170:15 171:8,11
  171:13 172:25
  176:24 184:10,22
  185:10 191:5
  193:13 210:21
  211:18 217:14
  220:11,16 223:13
  223:21 224:13
  247:9,19 249:22
  249:24 263:15
  264:12 265:2
**monitor** 112:12
  114:18 223:6
**month** 83:1 143:5
  259:14
**mood** 194:19
**morale** 135:15
**morning** 3:6 13:4,5
  41:9 99:23,24
  106:18 133:19
  164:9 243:8
  272:12 273:14
**Mosier** 200:13
**motion** 66:18
  69:24 135:12
  161:25 162:5,14
  162:21 170:23
  183:22,25 191:25
  224:4 229:16
  230:17 256:5
**motions** 231:15
**motivate** 74:11
**motivations** 248:1
**mouth** 93:2
**move** 10:22 11:5
  20:20 21:19

000297

Arbitration Proceedings  ~ Volume I ~  February 9, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

35:19,22,24 36:2
36:8,11,20 38:14
38:22 39:2,3,10
81:13 130:6
131:23 134:23
167:5 169:19
199:1 227:10
230:19 234:5
235:13,17 273:2
**moved** 15:4 20:18
28:23 39:13
93:19 165:3
201:5
**moves** 227:7
**movie** 64:20 65:3,4
65:5,22 67:16
71:25 72:23
133:6 143:4
246:14,22,25
247:4,5,8,23
257:20
**movies** 36:18 64:18
66:9 67:7 68:6
69:5 70:14 74:3
143:19 144:9
246:4,5,12,13
247:2 251:4
**moving** 39:8
119:21 141:4
184:3 195:3
**multiple** 51:4
55:22 90:14
156:20 176:19
**mundane** 82:18
**Music** 256:4
**myriad** 93:17

**N**

**N** 2:17
**naked** 132:11
**name** 10:4 33:22
34:3 38:8 42:14
46:8 59:18,22

74:15 80:7 85:14
88:17 95:2,3,5,5
95:12 147:15
169:23 202:2
245:2 261:13
**named** 17:10 53:21
97:25
**names** 70:5 254:7
254:8
**narrative** 12:5
66:22 211:18
**narrow** 4:23
123:10
**NASA** 64:15
**national** 130:3
**nationally** 15:2
**nature** 20:7 54:1
97:2 99:2 126:14
**Navarro** 159:16
162:13 224:11
228:19
**near** 101:8 153:14
171:23 194:1
**neat** 63:19 143:9
**necessary** 8:15
**neck** 113:23
**need** 6:14 52:8
59:12 62:8 70:16
127:21 129:13
141:11 164:21
165:7 170:17
221:17,23 273:8
**needed** 29:3 70:5
84:23 102:10
218:14 220:1
258:22 264:9
**needs** 25:14 64:24
96:9
**negative** 66:24
83:15,19
**neglected** 41:7
**negotiate** 29:2 30:6

30:13 31:16
266:16
**negotiated** 20:15
21:9 31:9 245:13
**negotiating** 26:16
29:17 173:15
**negotiation** 150:7
150:20 158:4
225:5 241:11
**negotiations** 23:7
49:11 136:4
149:18,25 150:16
151:5 156:8,15
156:16 163:15
170:22 172:13
242:16
**neither** 77:21
258:23
**net** 31:25 32:1,20
34:1,25 188:16
188:17
**Nevada** 1:7,20
2:10 3:1 94:11
162:21 163:10
167:5 214:10,11
274:3,17
**never** 28:8,15 40:4
53:13 56:4 73:13
83:18 84:19,19
126:4 140:21
144:4 148:3
157:19 163:22,23
167:13 168:10
176:8 179:10
205:3 228:4
248:18 252:13
253:25 261:2
262:3
**nevertheless** 46:11
**new** 21:16,21,22
113:1 141:4
185:6 205:12

216:2 229:1
**Newhouse** 2:4 3:18
3:21
**news** 14:23 15:3
83:21 89:12,13
192:25
**newspaper** 125:2
**nice** 28:25 39:25
41:12 43:2,24
68:12,13
**nicely** 84:1 88:8
**Nick** 200:13,20
**night** 164:5 259:19
**nights** 28:21
**Ninth** 229:7 231:3
**no-warning** 67:15
**noir** 126:15
**non-colloquial**
140:3
**non-performer**
102:3
**nondiscretionary**
30:2
**nonmonetary**
160:2
**Nope** 158:2
**normal** 156:1
**north** 123:21
**notably** 223:9
**notation** 173:8
**note** 167:24 168:5
168:9 169:10
**notebook** 47:24
**noted** 6:20,21
51:19
**notes** 52:22 274:12
274:15
**notice** 92:2 102:21
127:2 188:11
226:6 256:1
257:22
**noticed** 49:18

57:20
**notices** 253:10
**notify** 259:21
**number** 3:11,13
13:7 53:16 65:17
68:19,24 80:16
104:23 117:23
119:19 149:24
158:9,20 209:12
226:22 230:6
235:23 237:23
245:1 264:3
269:20
**numbers** 29:11
149:22
**numerical** 246:9

**O**

**o'clock** 133:19,20
141:17 164:8,9
262:5
**object** 76:7 95:15
101:2 115:21
125:19 130:1
196:18 210:11,16
230:10 235:4
**objection** 6:14,15
6:16,20,25 45:6
76:25 78:2 96:8
116:9 212:16
230:23
**objections** 6:22 7:2
7:21 224:3
**objective** 270:19
**oblique** 23:16
**observations**
267:20
**observe** 114:7
115:16 116:18
203:3 268:1
**observed** 119:16
**observing** 102:23
**obvious** 177:19

Arbitration Proceedings  ~ Volume I ~  February 9, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page  24

179:7,8 183:6,7
191:6 221:24
256:8
**obviously** 76:16
95:16 151:16
271:17
**occasionally**
105:23 242:20
**occasions** 90:15
134:8,17 231:10
**occur** 237:16
**off-collar** 124:9
**off-record** 41:18
96:14 132:2
**off-the-record** 3:12
**offense** 49:1
145:13
**offer** 22:6,24 33:5
43:8 68:22 83:8
150:17 161:22
197:10 240:23
**offered** 150:10,10
153:15 203:20
211:19
**offers** 240:22
**office** 16:19,20
36:18 40:7 43:5
93:22 103:24
104:1,5,7,11,13
105:12 106:3,8
109:13,14 110:11
110:24 111:10,11
114:4,7 115:4
121:25 122:2,18
122:20,25 123:5
123:9,11,13,20
125:20 126:5,6
126:10,13 130:23
134:22 137:5
138:5 168:16,17
169:7 195:4
266:22 274:17

**officer** 25:25 58:11
**offices** 36:15 55:22
123:18
**official** 5:15 213:21
**offshore** 146:13
167:10 249:25
**oh** 8:1 37:9,17
40:19 61:4 70:10
106:21 134:20
157:1 163:17
166:1 191:23
197:1 201:8
206:16 221:19
225:25 234:16
249:11
**okay** 3:23 9:7,17
10:2 11:6,20,23
12:19 13:10,13
13:17,20,25 18:2
19:2 26:4 27:22
35:6 45:21 48:11
57:12 61:7 63:5
76:24 86:1 87:22
89:17 90:19
91:13 97:10
101:24 102:18
104:23 106:6
107:1 109:1
111:2,5 113:13
117:22 118:18
120:24 122:11
126:12 130:7,25
134:25 140:16
142:5 145:19
149:11 153:1
155:1 158:8
161:2 165:22
168:1,1 171:22
174:1,5,6,10,11
180:23 181:9
185:19,24 191:14
197:9 202:8

204:5,8 209:5,11
211:21 212:17
213:19 217:25
218:20 221:9,19
222:12 223:19
226:21 229:11
232:23 234:7,9
236:4 251:7
254:25 260:22
272:5,10,11,14
273:3
**old** 238:4
**Olivia** 107:14
**Olivia's** 118:21
**once** 41:23 142:22
143:15 147:4
148:6 156:20
171:15 184:24
194:3 227:8,23
228:7,10
**one-hour** 246:22
**one-person** 55:20
**ones** 77:6 239:13
239:24 248:10
249:19
**ongoing** 23:23 27:5
42:9 133:10
**online** 256:11
261:17
**onus** 239:7
**onward** 29:16
**oOo-** 3:3
**open** 11:8 78:14,19
133:13 205:11
213:21 219:20
221:24
**opened** 114:10
**opening** 9:21
**openly** 204:22
237:10
**operating** 58:11
**opinion** 230:9

270:19
**opinions** 76:18
**opportunity** 83:17
135:18
**opposed** 106:15
212:2 242:18
258:14
**opposing** 43:1
55:19 151:10
153:11 156:10
172:21 242:17
**optics** 67:22
**option** 70:13
170:15 248:6
**options** 247:7
**order** 8:3,9,12,24
9:11 18:12 49:11
50:8 60:9 64:24
70:5 72:16
142:22 150:11
162:13 163:5
166:24 169:13
170:8 171:16
177:20 184:1,6,6
223:10,12,21
246:13 247:21
260:14 272:19
273:5
**ordered** 5:23
184:11
**organization** 251:1
**organizations**
75:18
**orientation** 262:15
**origin** 130:3
**original** 34:17
35:12 164:24
**originally** 130:2
176:21 198:9
**Orlando** 16:21
**Orleans** 113:1
**Oron** 13:22 79:10

135:12 136:6
142:3,6,10
144:15,20,22
146:10 147:7
148:6,25 149:18
154:25 155:5
157:10,10 159:14
159:18 161:15
162:17 163:16
171:16 177:7
184:14 188:25
189:6 192:1
193:13 194:18
199:12 216:6,8
216:15,19 217:1
218:15 219:9,13
219:14 220:15
221:21 223:7
225:10,11,15
226:12,13 227:21
228:3,23,25
230:13
**Oron's** 217:21
**Orshal** 42:14
**Orwell's** 111:21
**outcome** 244:6
**outed** 269:18
**outlets** 269:20,23
**outline** 187:22
**Outlook** 215:10
**outside** 23:7 24:10
24:17 25:1,5,6
26:6,17 28:2,7,18
80:2 177:11
189:11,14 212:15
216:12 235:24
238:21 260:1
263:1
**outstanding**
212:12
**outtakes** 111:6
**overlap** 99:14

Case 15-01193-abl    Doc 144-2    Entered 04/07/17 10:04:43    Page 60 of 239

Arbitration Proceedings  ~ Volume I ~  February 9, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page  25

overrule 6:22
Overruled 78:2
  196:22
overtures 176:4
owed 44:12
owes 92:18
owned 35:23
owner 25:23 98:6
  255:24
owners 226:12
ownership 148:2

**P**

P 2:3
P-e-t-r-e-s-c-u
  96:20
P-r-i-n 71:19
p.m 50:21 57:13
  206:3,6 273:16
panic 75:4
PA 28:1
package 83:2
packed 100:14
  122:19
page 2:18 19:9
  21:5,23,23,25
  27:14,20,21 29:8
  29:9 30:2 32:21
  34:11 45:16,21
  48:18 49:23 50:8
  50:20 54:15,16
  54:21 55:5 57:12
  57:15 58:13
  90:13 91:11,17
  104:20,21 105:1
  106:25 108:11,23
  109:2 113:4
  117:23,24 118:17
  119:21 125:2
  159:6 173:2
  174:12,15 181:3
  181:4,7,8,10,21
  182:8 186:5,6,15
  186:17 187:20

188:9,20 192:13
202:15 204:6
207:5 209:8,9
213:18,20 221:7
221:8 226:9,19
226:20 227:13
232:24
pages 87:17 90:21
  112:24 174:8
  180:24
paid 29:7,18 30:11
  41:11 47:10
  56:22 82:24
  195:1 214:8,18
  224:22,24 230:2
  259:22
painting 111:17
  122:21
panic 75:4
papers 9:10,13,20
  22:24 114:23
  136:6 177:12
paradigm 216:12
paragraph 21:4
  26:20 27:9,10
  30:3,7 34:12
  91:16 160:3,5,10
  176:14 178:5,17
  202:14,15 207:12
paralegal 104:6,9
  168:22 195:18
  233:13
pardon 27:20 48:5
  186:6
paren 213:22,23
parents 130:24
Parkway 1:18 2:9
part 22:6 23:2
  24:14 25:23
  27:20 30:16 31:4
  44:24 46:25
  48:17 61:23

65:21,23 73:7
75:18 92:9 98:6
99:7 116:7
140:18 156:22
157:12 171:8
178:8 182:7
210:18 211:9,11
211:12,13 228:17
235:9,14 243:25
251:25
partially 85:9
participant 250:8
participate 64:25
  65:13
participation
  248:25
particular 8:5
  13:22 16:24
  42:25 53:21
  55:16 65:3,4,4
  89:7 103:19
  159:21 179:18
  198:21 251:20
  254:17 256:18
  259:25 262:1
particularly 18:3
  30:1 33:13,23
  160:1
parties 8:20 18:7
  55:19 149:5
  153:11 203:24
  212:8 217:12
  225:12,12 237:12
  247:21
partner 17:11
  21:14
parts 45:11,13
  210:3 211:20
party 7:18 31:13
  77:11 85:14
  135:5,24 140:23
  158:6 211:2,3

252:4 256:25
257:22 258:2
pas 42:2
pass 45:17
passenger's 136:16
pasted 22:4
pat 87:3
path 194:12
  218:12
Patrick 207:8
Patriots 112:25
  122:23
pay 7:3 30:22,22
  31:2 34:17
  142:21 146:2,6
  147:4,4 150:2,22
  165:7,10 166:22
  178:15 197:6
  203:21 258:2
  263:11
paying 44:2 71:5
  157:2,5 169:18
  189:8
payment 20:22,23
  47:6 74:12
  152:13 155:19
  207:11 227:21
PayPal 148:13
  167:6,8,10
  184:13,19,21
  185:11
PDF 215:23
peach 133:17
  134:2
penalties 49:2
penalty 49:12
  160:16
penny 60:13
people 27:12 38:15
  44:9 46:17,20
  51:4 53:1,5,16
  60:2,6 61:24 62:1

64:6,9,21 65:2,8
65:13 66:12,23
67:1 68:17,21
69:17 70:3,14
71:1,5 97:18
104:4 105:22
109:24 117:6,17
119:19 128:4
129:14 130:16
131:10,21 140:25
142:12 143:11,24
144:3 152:2
157:23 172:17
178:18 189:12
193:7 201:25
203:4,11 207:14
213:9 219:19
239:16 240:21
247:11 256:22
268:18,19 272:17
272:19
people-issued 90:6
perceive 82:20
  163:14
perceived 83:14
percent 30:10,17
  31:25 33:3 34:25
  151:25 160:15
  187:19 188:17
  208:14 220:17
  264:4 265:5
percentage 242:3
  248:20
Perfect 155:11
perfectly 35:21
performer 94:13
  96:22 98:9,24
  100:23 108:20
  136:25 137:1
  183:12
period 42:8 105:7
  130:10,13 164:7

Arbitration Proceedings ~ Volume I ~ February 9, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

171:6 184:9
216:2
**periods** 69:20
**permissible** 35:21
**permission** 140:12
**permit** 94:13
108:12
**permits** 94:10
**permitted** 4:17
**persevere** 67:9
**person** 47:9 49:15
65:6,7 93:16,18
102:13 107:9
118:14 119:23
129:5 139:18
141:1 184:19
193:3 200:18
247:3 257:4
269:4,19
**personal** 39:17
40:6 94:2,4 95:6
95:20 96:11,22
97:14,17,22
98:10 101:3
108:17 113:7,8
122:17 143:12,14
189:14 197:13
199:16,20,21
201:17 202:3,19
**personally** 81:7
95:18 100:11,18
127:10 131:6
136:21 160:4,13
187:17 251:18
252:7
**pertinent** 99:7
116:7
**Peter** 92:25
**Petrescu** 96:19
**phase** 149:19
**Phinney** 93:1
**phone** 65:17

160:22 164:8
202:18 203:8,12
215:20 264:19
**phones** 203:1,4
**photo** 143:12,14
144:1
**photograph** 125:1
125:6
**photographer**
193:5
**photographs** 54:6
**photos** 202:20
**phrase** 59:5 205:23
**physical** 168:14
169:6
**physically** 38:20
**picked** 41:8 58:22
**picture** 111:9,12
124:23
**pictures** 110:9,12
110:16 112:18
114:11 115:6,25
116:16,20 122:22
125:5 199:20
**piece** 65:11 68:14
200:18 261:19
**pile** 85:1
**Piller** 163:5
**pin** 273:8
**pink** 133:16
**pint** 134:2
**piper** 147:4
**piqued** 24:14
**piracy** 49:16 61:22
66:1 69:11 71:22
73:1 92:14,15
144:16 147:13
148:20 247:17
250:8,12 256:12
261:17
**pirate** 64:18
146:24 148:22

155:17
**pirated** 66:6
144:11
**pirates** 240:21
247:10
**pirates'** 170:4
**pirating** 71:25
**pitch** 154:20
155:15,19
**pitfalls** 145:17
**place** 36:9,14
38:15 43:7 85:17
85:18 103:15
112:1 117:12
123:7 129:9
130:20 195:9
216:2 257:8
274:11
**places** 35:7 77:7
114:24 124:21
**plagiarized** 22:11
**plain** 231:7
**Plaintiff's** 22:13
**plan** 39:3 164:24
191:10 210:2,7
**plane** 90:25 100:8
100:18
**plans** 194:7
**play** 151:4 170:14
203:17
**played** 146:20
**players** 124:7
**playing** 16:9 108:2
242:21
**pleading** 177:20
226:14 231:3
**pleadings** 198:15
223:6 230:17
235:7
**please** 10:3,6 11:15
18:22 21:23
26:12 30:4 32:11

40:14 47:24 48:4
54:12,15 57:1
59:7 61:6 71:7
78:3 87:9 89:15
90:18 91:12
104:18 106:24
111:1 112:11
117:19 118:17
138:21 152:22,24
153:25 158:18,21
161:1 162:7
167:25 174:3
175:16 180:22
181:3 182:10
185:17 188:21
191:11,13 202:7
208:25 210:5
218:21 221:5,10
222:6,11 223:17
224:8 225:20
226:4,23 229:9
233:3 243:14,16
251:5 254:23
255:2 260:4
270:6 271:12
**plus** 160:15 187:18
194:21 250:17
**poach** 86:21
**pocket** 86:18
**podcast** 59:16,17
59:23 60:5
**podcaster** 59:19
**point** 25:11 27:11
41:4 45:2 66:3
84:17 86:17 90:5
102:16 106:1
115:2 118:3
126:24 128:2
139:22 141:4
144:20 145:13
146:9,12 150:2
158:10 163:19

169:20 170:6
171:22 172:15
175:8 176:1,11
178:10,23 179:17
180:4,6 190:15
190:19 195:8
197:20 215:8,14
222:22 227:13,20
228:2,9 244:7
248:5 250:18
257:1 269:12
271:1
**pointed** 170:17
**policies** 22:23
**policy** 46:19
201:23 250:1
**ponder** 33:4
**pool** 132:12
**poor** 170:20
205:23
**poorly** 117:17
**popped** 147:9
**popular** 70:9
**porn** 81:19 92:15
103:23 105:12
124:1,4 125:9,13
125:22 193:4
228:4 257:13
262:9,16,23
269:9,15
**PornGuardian**
91:20,21,22 92:8
92:20,23 93:1,5
147:10,11,14,16
148:7 155:6
**Porno** 254:10
**porous** 116:24
**portion** 45:7,8
48:19 59:21
87:18 169:18
202:15 226:5
**position** 23:15

Arbitration Proceedings  ~ Volume I ~  February 9, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

24:21,24 25:22
36:8 58:9 71:2,3
102:2,3,6 137:4
161:19 183:1
210:23 220:9
222:24 223:24
224:25 230:15
237:18 238:22
248:11 264:23
**positions** 230:12
**positive** 83:21
**possibility** 17:13
20:11 120:18
195:21 197:12
218:3
**possible** 9:12 12:5
28:9 29:20 30:20
36:1 78:13
100:15 145:16,16
201:5 216:15,25
222:9 241:18,20
253:21 263:17,21
**possibly** 32:24 52:8
61:24 64:22
80:25 242:2
251:3 263:19
272:20
**postgraduate** 14:7
**potential** 144:21
144:22 221:20
239:17 241:12
266:24
**potentially** 258:1
**pounce** 218:16
**PR** 61:23 70:18
**practice** 16:3 24:10
24:18 25:6
150:14 202:23
230:17
**practiced** 266:20
**practices** 139:8
**practicing** 28:7

**precise** 168:25
**prefer** 272:7
**prehearing** 9:22
**prejudice** 227:5
237:21
**premarked** 6:11
**preparation** 22:15
**prepared** 5:13
168:15 171:6
**presence** 4:13 26:7
36:13
**present** 2:12 4:11
5:4 10:8 44:14
84:21
**presentation** 84:24
84:25
**presented** 6:17
35:13 172:9
235:20
**presenting** 8:13
**presently** 10:21
**preserve** 9:11
181:25
**preserved** 199:4
**press** 46:23 68:1
70:9 81:14,14
83:22 86:4,5
88:10,12,19 89:3
89:11,22,24 90:6
91:14 93:2
267:22 268:2
**pressure** 127:19
162:17 163:15
196:24
**presume** 72:4,22
180:4
**presumed** 78:12
164:17
**pretext** 179:9
193:21
**pretextual** 175:13
179:10

**pretextually**
177:20
**pretty** 18:12 24:13
29:6 33:17 39:19
39:19,24 43:1,2
51:3 68:9 81:2
82:18 83:24
88:22 91:5 93:8
106:22 117:8
123:3 129:6
134:6 156:1,1
163:1 164:7,7
167:16 177:8
179:8 183:5,7
185:14 193:2
196:10 197:5
208:23 215:5
228:22 231:24
232:3 249:25
250:17 254:9
**prevailing** 252:4
**preventing** 78:23
**previously** 139:5
**price** 98:23,24 99:3
99:20 100:12
102:2 103:14
125:17 137:2
143:4
**Price's** 101:10
203:8
**primarily** 16:2,17
79:11 262:16
**primary** 245:11
**Prin** 71:16,19
**print** 10:4 15:10,14
83:24,25 237:13
**printed** 49:22 50:6
57:21,23 72:15
206:12,12 215:23
**printout** 237:12
**printouts** 238:3
240:4

**prior** 14:24 16:22
17:10 26:25
58:25 103:25
223:10 271:25
**privacy** 8:3 238:23
**private** 27:6 29:4
201:6 228:14
259:1,15,18
**privately** 82:2
**privilege** 95:23
96:2 177:18
211:2
**privileged** 95:17
238:24
**privileges** 100:20
**probably** 10:25
43:7 50:25 70:14
70:15 86:8 96:21
118:10 123:16,21
142:7,23 144:12
144:17 146:5
150:4 164:16,17
165:17 193:6
194:23 208:7
236:21 244:8
263:9 264:10
266:20,21,23
272:4,25
**probative** 238:17
239:20 240:3
**Probing** 241:13
**problem** 4:15
51:10 66:2 72:13
73:1,9 144:15,18
156:20 178:8
212:18 218:24
251:20,22,25
**problematic** 160:3
**problems** 98:21
218:4 219:1
230:18
**procedurally** 163:1

**proceed** 9:23 116:4
**proceeding** 5:5
**proceedings** 1:14
4:20 184:17
224:20 273:15
274:10
**process** 17:25 18:4
19:12,19 81:7
208:10 261:3
**processors** 227:22
**produce** 52:1
185:2 237:15
238:4 242:21
**produced** 50:4
158:4 238:1
246:12 262:12
**product** 262:11
269:8
**production** 52:1
57:24
**professional**
117:11 156:4
**professionally** 20:9
**professor** 75:25
**professors** 76:2
**profit** 190:1
**program** 215:8,10
215:12 245:23,25
247:22 248:15
268:25
**progressive** 22:22
**prohibited** 7:2
**project** 199:1,9
252:14
**prolonged** 78:7
**promise** 196:12
**promissory** 167:24
168:5,8 169:10
**promote** 54:8
**promoted** 137:3
**promotional** 83:2
**promptly** 207:3

Case 15-01193-abl    Doc 144-2    Entered 04/07/17 10:04:43    Page 63 of 239

Arbitration Proceedings ~ Volume I ~ February 9, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 28

**proof** 8:9
**proper** 50:8
**properties** 62:19
**property** 14:12,17
15:15,22 16:18
53:2,6 54:7 98:19
128:21 150:18
249:9
**proposal** 210:8,13
243:10 244:3
**propose** 51:20,22
**proposed** 30:17
33:10 35:13
39:13 54:19 83:2
157:21 243:20
**proposing** 157:24
**prosecution** 60:10
**prosecutors** 49:13
**prostitution** 54:8
**protected** 228:3
246:17
**protecting** 128:21
**protective** 8:3
**protects** 177:18
**proudest** 132:13
**prove** 258:6
**provide** 20:23
21:22 73:13 79:2
93:7
**provided** 6:12
22:19 92:9 113:7
**providers** 70:2
91:25
**provides** 91:22
142:19
**providing** 73:23
250:8
**provisions** 22:9
35:5
**proxy** 200:18
**pry** 234:4
**PSA** 247:1

**psychological**
58:24
**PTO** 259:25 260:2
260:11
**public** 45:9 46:17
46:25 47:5,9 67:4
67:24 68:14
147:12 217:23
228:14,22 236:11
236:12,14 239:24
253:12
**publication** 81:20
86:9
**publicity** 261:7
**publicly** 228:2
**publish** 84:3
269:23 270:1
**published** 86:10,12
238:11
**publishes** 38:11
**puked** 138:24
**pull** 18:10 138:21
**pulled** 138:24,25
139:1
**pulling** 61:25
113:23 177:8
**pulse** 74:22
**purchase** 263:6
**purchasing** 263:20
263:20
**pure** 169:14
**purported** 241:5
**purporting** 171:8
246:1
**purports** 226:18
**purpose** 28:4 29:17
151:19 175:24
210:17 211:14,17
241:11 242:24
**purposes** 11:24
73:19
**pursue** 254:12
266:7

**pursuing** 162:16
216:14
**pushed** 9:14
**pushing** 250:24
**put** 9:3 18:7,17
23:23 27:8,9 34:2
43:5 48:14 49:1
58:14 71:8 80:13
80:23 84:9,23
85:8 93:2 103:2
115:13 133:14
140:2 145:18
156:13 160:4
163:15 166:12
167:23 168:6
177:19 239:7
244:21 253:11
**puts** 158:14
**putting** 79:25 80:3
162:17 177:22
**puzzled** 224:15

**Q**

**qualify** 76:8
**quarter** 34:4
**question** 12:17
37:7 42:4 44:21
44:24 58:7 61:9
76:22 78:3 101:9
116:6 126:2
128:16 161:6,8
161:10 164:12
194:6 213:4
218:21 220:20
233:4 257:1
260:20
**questioning** 76:7
76:23 95:15
101:2 130:1
236:3
**questions** 11:12
13:6 53:20 54:18
57:5,6 59:10,11

87:21 90:22
96:10 132:9
152:24 174:9
185:23 222:14
230:20
**quick** 225:19
**quicker** 172:25
**quickly** 39:19
207:21
**quit** 182:10 208:8
208:9 213:9,22
**quite** 46:10 56:19
121:6 134:20
138:16 142:7
146:13 148:3,9
208:12
**quote** 53:15 85:24
91:19 92:17,24
93:13 220:5
235:12 261:18
**quoting** 78:17

**R**

**radar** 144:21
145:10 148:17
**radio** 16:9
**raid** 163:9
**raise** 156:8
**raised** 69:13 134:1
**raising** 69:19 95:24
241:12
**rambling** 266:18
266:19
**ran** 23:20 106:19
145:17 236:6
**Randall** 222:24
**Randazza** 1:4 2:13
2:19 3:9,19,22
4:10 9:25 10:3,9
10:17,20 11:11
11:20,22 12:2,10
12:15,18,23 13:4
18:25 23:6 28:1

31:13 50:14
51:25 52:24 55:7
55:9 56:2,9 62:17
76:8 77:2 78:5
95:16,22,25
96:19 101:23
102:14 123:23
125:18 142:2
144:14 160:12
180:10,18 189:4
189:5 199:15
225:23 230:11
231:2 232:8,14
235:6,25 236:6
238:7,20 240:6
240:19 261:21
268:11
**Randazza's** 31:12
211:15 239:23
**rapid** 143:5
**Rasmus** 98:1,12
103:1 183:10
213:13,14 251:10
252:22
**Rasmus'** 95:11
**rate** 93:9 190:2
264:2 265:3
**rates** 189:9 230:6
**reach** 265:15
**reached** 137:15
159:14,18 267:14
**reaching** 181:13
**react** 85:3 172:16
**reacted** 179:10
192:25
**reacting** 175:8
**reaction** 179:4
**read** 9:19 11:18
25:17 26:1 27:13
30:14 44:21 99:6
99:8 116:8
160:21 176:14

Arbitration Proceedings  ~ Volume I ~  February 9, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

215:11,17
**ready** 32:15,16
57:4 59:9,11 61:9
61:10,12 78:1
87:20 90:21,23
104:22 152:24
154:7,8 161:6,8
174:8 202:18
233:4
**real** 75:7 89:11
184:13 263:10,10
**realized** 109:8
115:3,3,8 117:18
250:20
**really** 22:25 23:17
25:3 26:19 28:11
32:23 35:19 38:5
38:8,11 39:1,3
41:7,12 46:14
47:10 56:4 63:18
63:25 64:2,11,14
64:19 65:17
66:20 67:22
68:11 70:25 73:6
79:21 80:4 83:3
84:1,10 92:12
103:19 104:9
106:18 107:6,20
110:8 118:3
120:4,5,23
123:11,19 125:3
127:18,21 128:11
131:3 132:15
135:14 138:6
140:3 144:4
145:15 148:21
152:10 162:25
165:2 167:8
170:13 175:12
177:23 186:13
187:6 192:5
193:5 194:24

198:23 200:12,16
208:15 215:3
216:23 219:12
225:11 235:12
246:20 248:12,18
264:11 271:2
**rear** 136:17 137:15
137:19
**reason** 31:13 76:17
126:6 185:6
255:12
**reasonable** 43:18
230:7
**reasonably** 50:18
146:25 237:17
253:6
**reasons** 7:23
125:21
**reassembled** 65:12
**recall** 35:12 37:24
61:18 79:1,18
85:23 97:11 98:2
138:19 168:9,11
206:7 208:6
216:22 232:2,18
254:18 258:16,24
**recalling** 257:10
**receded** 255:18
**receipt** 7:16
**receive** 54:9
143:15
**received** 6:13,18
7:6,12 186:25
**reception** 136:2,3
**receptive** 83:21
**recess** 62:11
141:19,21 180:13
232:10 272:6,12
273:13
**recessing** 272:8
**recipient** 193:25
**recognize** 19:4,5

32:17 40:23 48:8
48:10,11 110:11
110:24 113:19
149:12 153:2
154:6,9 159:2,4,7
161:5 162:10
168:2 175:18
180:25 185:22,24
202:9 209:2,4
222:16 229:16
243:17 246:10
251:8 260:8
270:8 271:14
**recognized** 222:14
**recollection** 37:2
53:14 176:10
201:2 223:15
254:1,3,6 258:23
**record** 3:5 4:5 5:3
5:9,9,15 6:7,9
7:11,24 9:3,4
41:17,21 45:6
49:18 51:10
52:13 62:10,13
72:12 96:13,17
99:7 116:7 132:1
132:5 141:22
144:10 180:15
217:23 228:22
232:9,12 236:14
258:23 272:16
**recorded** 5:12
**recording** 66:17
67:4,9 70:18
**records** 234:4
263:3
**Red** 122:23
**reduce** 246:5
**reduced** 246:8
**redundant** 240:4
**reel** 151:9
**Ref** 1:6

**refer** 24:25 73:20
153:18 266:9
**reference** 3:10 6:7
18:7 23:16 27:10
27:23 173:6
207:13 211:12
251:23
**referenced** 29:10
29:11
**referral** 37:4
**referred** 152:14
246:19
**referring** 45:7
159:11 172:20
189:14 202:18
204:23 212:6
256:17
**refers** 45:8 153:19
188:25
**reflect** 26:9
**reflected** 51:8
**reflecting** 240:5
**reflects** 26:3 44:23
**refrain** 56:23
**refresh** 257:11
**refused** 20:15
**regard** 212:15
**regarding** 8:3
59:17 76:10
132:20 240:19
**regardless** 31:14
**registrar** 74:16
**regular** 40:3 74:24
93:8 103:5
121:24 231:16
**regurgitation** 6:9
**reject** 247:2
**rejecting** 85:16
**related** 129:18
235:24 261:7
**relations** 45:9 67:4
67:25 68:14

**relationship** 13:15
21:13 31:22
39:18 41:5 44:7
81:14,23 83:9
86:7,8,19 88:2
93:4,5,10,12
98:10,16,21,25
101:4 102:4,16
102:20 103:18
108:17 130:10,14
137:1 169:7
175:10 183:13
204:22
**relationships** 25:15
86:15 97:15,18
97:22
**relaxed** 6:2 7:15
**release** 68:2 89:8
89:22,24 91:14
93:3
**released** 66:4
**releases** 83:22 89:3
90:6 267:22
268:2
**Releasing** 77:14
**relevance** 101:11
101:13
**relevancy** 101:4
**relevant** 17:21
45:10,12 63:12
76:14,15 186:13
201:16
**religious** 113:8
**relished** 46:5
**reluctant** 166:2
**relying** 230:3
243:25
**remained** 23:2
**remedies** 226:6
**remember** 3:14
33:14 43:25 44:1
46:7 53:21 59:19

Arbitration Proceedings ~ Volume I ~ February 9, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

59:20 60:4 61:19
66:3 70:12 80:20
89:6,6 90:23 91:5
106:17,22 110:1
110:2 121:21
126:23 134:17
135:1 139:16
142:7 159:25
165:1 172:23
180:2 196:1
200:10,12,25
201:23 202:1,4
223:19 225:19
240:24 254:15
255:5 257:9
265:9 269:5,6
**remind** 48:22
49:10 136:24
237:22
**reminded** 129:9
**reminds** 128:16
**remote** 200:18
**Remuneration**
30:1
**rendered** 27:24
**rent** 39:21
**rented** 39:22
**repeat** 42:3 68:22
100:16
**rephrase** 116:11
**replaced** 37:5
169:20,22
**reply** 224:4
**report** 86:2,4
167:23 200:22
208:13 256:12
258:9
**reported** 1:25 59:1
257:5 274:9
**reporter** 5:4,12
10:7,13,14,19
11:14,16 63:1,4

71:18 99:8 116:8
141:15 274:1,7
**reports** 85:20
**represent** 145:3
155:20 217:11
239:4 244:16
245:6 257:17
263:1
**representation**
27:6 78:25 82:4
113:20 204:10
207:18 216:13
236:16 237:5
238:12
**representations**
244:1
**representative**
4:25
**representatives** 4:6
4:13,22
**represented** 82:1
86:20 124:6
146:16 207:13
234:22 236:11,13
236:15 238:14,16
239:9 251:21
252:13 263:2,4
264:17
**representing** 205:5
216:18 234:16
240:21 249:5
252:11 254:16
**represents** 170:3
**reproduction**
113:3
**reputation** 44:19
**request** 14:22
56:14 62:5 93:13
224:14 253:16
270:2
**requested** 180:10
**requests** 92:11

253:13
**require** 6:8 8:24
205:16
**required** 234:15
**requirement**
234:21
**requires** 8:7
**research** 92:14
**reserve** 52:7 76:24
240:12
**resignation** 190:10
194:13 205:24
206:23,24 207:9
213:7
**resigned** 213:1
**resigning** 194:10
**resistance** 145:18
**resolution** 52:17
**resolve** 79:13
245:13
**resolved** 52:11
212:7
**resource** 237:19
**resources** 20:5
249:3
**respect** 6:3 7:14
8:17,22 35:3 42:6
99:20 126:17
206:7 207:16
212:11 224:12
230:13
**respective** 102:10
**respond** 82:16
107:2,16 120:12
166:4 176:7
188:3,18 192:11
207:3 209:19
239:15
**responded** 82:18
133:23 269:4
270:18
**Respondent** 3:25

4:2,6
**respondents** 1:11
2:7 3:10 110:22
200:21 237:1
241:23
**Respondents'**
13:23 18:9 22:13
132:11 171:19
206:14 225:22
232:20 267:2
**responding** 90:6
**responds** 120:8
182:9
**response** 43:22
57:15 68:3 122:5
161:24 165:20,22
196:14 206:5
207:18 210:14
238:22 251:15
255:12
**responses** 79:2
**responsibility**
91:10 245:11
**responsive** 12:7
**rest** 40:10 47:7
86:23 108:10
134:4,6 273:5
**restart** 265:19
**restructured**
176:23
**result** 62:2 78:13
162:5 242:17
**resume** 141:17
**retain** 171:15
**retained** 164:3
**retainer** 157:21
**retaining** 176:21
**retrieved** 128:3
**return** 80:18 169:6
232:7
**returning** 157:10
**revealed** 236:15

**review** 89:2 160:19
225:18 267:25
270:21
**reviewed** 22:12,15
37:1 110:18
183:25 224:2
229:18 243:16,18
**reviewing** 267:24
**revise** 267:25
**revoked** 100:21
**reward** 143:22
**rewarded** 143:23
**Rica** 132:12,14,21
132:21 133:4
**Rican** 132:24
**rid** 183:19 193:4
193:21 253:19
**ride** 139:11
**rigged** 84:13
**right** 11:13 17:23
18:9,15 23:22
26:12 35:1 36:20
57:1 58:7,12
60:15 89:24
90:24 92:4 99:14
99:16 104:17
110:5 119:21
134:9,23 135:23
137:5 149:11
161:23 165:19
168:20 171:18
173:1,9 174:21
175:7 178:4
179:25 186:12
188:18 189:19
190:5 192:15
193:15,17 201:3
201:10 206:10
208:17 214:17
219:8 226:4,19
228:5 234:13
237:2 238:11,23

Arbitration Proceedings  ~ Volume I ~  February 9, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

240:16 243:15
251:12 259:13
261:16 263:14
267:6,8 271:15
**rights** 163:9
**ring** 110:8
**risk** 21:17 112:22
166:11,12 219:9
233:22
**risks** 34:18 170:6
218:4
**RLG** 55:13 188:25
189:3 199:8
233:17 234:12,19
234:24
**RLG's** 189:9
**road** 70:12 137:11
**robust** 7:18 249:25
**role** 100:23 101:10
126:19 203:17
**rolled** 138:5
**Ron** 189:25 273:1
**room** 23:21 39:23
114:22 123:12
**root** 211:15
**roots** 112:21,21
**Rothken** 154:16
155:15,16
**round** 68:20 69:2
69:13
**row** 144:19
**RPR** 1:25 274:21
**Rubin** 207:22
**rude** 124:11
**rule** 9:9 45:22 78:1
131:19 152:12
210:19,25 211:4
211:16
**rules** 4:17 5:20,22
6:1,2 156:4
214:11 221:22
246:19,20

**rulings** 5:24
**rumors** 74:23
**run** 74:3 81:3,4
**running** 124:18
211:18 233:17
234:18
**Russia** 148:3

___

**S**

**sails** 53:11
**salary** 39:14 195:2
196:10
**sale** 75:3 242:2
**sales** 129:2 193:16
247:12
**San** 20:20 21:20
36:16 39:15,20
39:22 41:24 42:7
88:1 93:19 145:1
**sanctions** 49:11
77:20
**sat** 56:4 70:12
133:12 135:25
**satellite** 16:20
**satisfactorily** 52:10
**satisfied** 52:16
**satisfy** 45:19
**save** 198:22,25
199:20,22
**saved** 58:1 198:19
199:5 201:13
215:24
**savvy** 92:13 215:5
**saw** 24:12,13 51:10
61:21 114:11
115:5 116:16
118:15 140:21
144:17 162:2
168:17 251:2
**say-so** 91:4
**saying** 34:15 57:13
67:14 76:5 78:16
84:4 92:18 94:20

104:8 105:12
106:19 118:4
128:19 131:9
163:22 174:12
176:8 179:9
184:15 186:18
192:9,25 207:8
229:6 231:3
247:1 252:16,22
257:21 258:21
259:7,8 261:25
269:6,21
**says** 29:13 30:9
31:4 48:21 58:13
68:4,13,14 72:5
90:11 108:3,24
108:25 111:2
118:13 133:17,24
159:7,9 176:1
177:24 182:9
186:24 193:24
205:4,14 206:19
206:22 209:11
211:24 219:13,14
226:5 227:3
228:2 231:7
256:12 271:17
**scan** 199:21
**scare** 70:14
**scattered** 114:12
114:13 115:6
216:3
**scene** 103:23
109:12 125:19,25
126:5
**scenes** 42:16 125:9
125:13
**scheduled** 3:7 40:4
**scheduling** 8:16
**school** 15:18
**scientific** 138:13
**scope** 239:18 258:4

**score** 194:23
**Scott** 1:25 274:7,21
**scout** 132:16
**screen** 142:16
254:7
**Sean** 263:9
**SeanCody.com**
263:7,8
**seat** 136:16,20,20
137:23,24 140:18
**second** 13:11 29:14
32:21 34:11
36:20 54:16
63:23 64:4,8,10
71:7 89:16
106:25 112:2
118:19 132:1
144:18 146:22
147:1,6 149:9
154:1 158:19,21
173:25 181:3,7,8
207:12 209:8,9
211:9,11,12,13
234:5 250:19
254:24 257:12
**secondary** 92:7
250:6
**seconds** 64:23
257:7,17,19
**section** 30:1 91:24
128:17 176:11
227:2 255:21
256:1
**sections** 75:21
**secure** 104:2,12
197:13 198:12
**securing** 201:6
**security** 80:18
**see** 10:21 11:6
21:25 22:10 30:5
30:23 31:6,17
32:21 33:25 36:1

48:1,17,19 49:3
50:19,22 51:3,13
52:9 54:14,17
55:5,19,21,23
57:3,7,11,18
71:23 72:2,6
74:13 76:3 84:5
87:10 88:4 91:23
105:2,15 108:14
109:3 110:16
111:14 113:17,24
113:25 115:6
116:14,21 117:17
118:13 119:6
123:17 135:17
137:18 158:24
168:1 170:16
180:11 181:5,11
182:14 192:3,6
193:24 202:14
204:9,19,19
205:18 207:1
208:12 209:11
210:6 221:13,19
224:9 226:10
233:18 244:15
252:25 257:14,16
260:5 267:19
272:14 273:14
**seeing** 4:9 115:20
202:4
**seek** 183:23
**seeking** 230:1
267:15
**seen** 27:12 69:16
76:5 77:3 85:19
128:4 132:10
161:21 168:10
178:18 189:13
197:10 203:16
255:16
**self-dealing** 189:13

Case 15-01193-abl    Doc 144-2    Entered 04/07/17 10:04:43    Page 67 of 239

Arbitration Proceedings  ~ Volume I ~  February 9, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page  32

**self-interest** 177:2
**sell** 66:9,11 68:7
**selling** 46:12
249:19
**send** 54:21,24 55:1
55:4 58:25,25
64:8 68:1 70:1
88:10 89:8 90:11
91:6 92:1 118:12
119:5 126:6
143:13,25 157:21
185:10 188:23
194:14 199:19
212:21 213:24
253:10,13 268:2
269:20
**sending** 51:4 118:9
147:10 165:25
204:13 206:2
251:12
**sends** 253:15
**sense** 49:21 177:3
245:22 259:4
267:21
**sensibility** 262:20
**sensitive** 123:24
**sensitivity** 7:4
**sent** 19:13,14 20:8
22:5 50:20,21
60:6 69:6 81:6
84:24 85:20
90:14 106:16,18
115:12 120:17
121:8 149:1,15
159:23,24 160:9
161:10 167:1
175:21 186:10
267:23 268:12,23
270:11
**sentence** 25:17
26:1 30:14 31:11
58:12 60:12

205:14
**separate** 27:24
234:12,14,18,21
234:23
**separately** 97:7
**separation** 55:24
**sequence** 200:10
**series** 9:12 21:25
110:9 111:6
113:5 119:6
185:25
**serious** 6:16 26:21
48:25 144:5
170:21
**serve** 81:8
**server** 57:25 58:2
81:7 198:2,3,17
198:25 206:12
**servers** 58:4 76:1
216:4
**service** 1:2 17:4
23:25 70:2
198:10
**services** 27:23
91:23 92:9
**sessions** 3:7 5:6,14
**set** 6:2 26:23
142:15 274:16
**sets** 18:7
**setting** 58:3 263:16
**settle** 33:20 34:19
35:1 43:7 146:24
150:23 167:2
169:15
**settled** 43:13
145:20 152:9
171:16 185:8
220:17 250:17
**settlement** 30:10
30:20 31:4,5,14
31:18 32:10 33:1
33:12 43:11

46:24 47:5 56:21
151:21 154:13
156:14 157:12
159:15,18 160:7
160:12 161:20
162:1,14,15
163:20 169:13
170:7,8 171:9
176:23 177:6
179:12 184:11,16
184:23 187:16,25
192:1 210:13,19
210:25 211:16,24
212:1,2 216:21
218:4,8 219:13
219:14,16 226:17
229:1 241:15
242:12 243:1
**settlements** 46:25
75:9 136:5
**settling** 147:3
245:15
**seven-eighths**
98:18
**seventh** 27:14
29:15 118:11
**severance** 21:8
30:22 31:3
207:11
**sex** 106:3 110:14
140:11,24 263:14
**sexual** 97:22
262:15
**shady** 177:8
**shame** 61:24
**share** 98:12 148:20
222:24
**shared** 147:20
**shareholder** 25:24
**Sharon** 107:15
118:20
**sheet** 159:13

161:20 162:3
163:18
**shift** 101:17,20
102:14 190:6
**shit** 85:22,25
138:13 269:17,22
271:6,18
**shits** 268:16
**shoot** 88:24 94:20
103:23 126:6,13
132:17
**shooting** 105:12
109:6 115:4
118:1
**shorthand** 140:4
274:9,12,15
**shot** 36:17 109:13
123:6,6 126:5
213:5 240:13
**shots** 257:12
**shoved** 252:7
**shoving** 252:16
**show** 61:23 73:22
107:11 139:25
166:10 206:1
210:20 211:17
212:1 232:5
238:6 239:21
245:5 250:6,7,11
**showed** 70:18
103:17 203:8
**showing** 87:17
91:14 210:17
240:5 241:24
**shown** 200:21
238:7
**shows** 143:19
144:10
**Sicilian** 129:22
**side** 6:16,18 9:1,10
9:15,21 23:23
114:19 123:12

136:17 145:14
150:9 190:9
242:22 258:10
**side's** 8:14
**sides** 5:10 8:12
225:6
**sightedly** 262:17
**sign** 56:21 72:24
115:8 126:7
160:6,25 166:15
168:8 231:17,21
246:11 251:18
253:11
**signature** 19:9,11
**signed** 35:16,18
158:1 160:9
168:10,12,18
231:22,24
**significance** 58:17
221:15 253:2
**significant** 66:2
73:8 121:6
135:10
**signing** 159:21
217:10
**silly** 107:12 120:12
**similar** 86:15 155:4
211:1
**similarly** 84:6
247:20
**simple** 34:15
**simply** 31:22
143:25 210:20
247:18 261:13
**simultaneous**
163:8
**simultaneously**
162:22 163:13
**single** 107:9 131:21
150:19 163:6
**sir** 5:1
**sister's** 185:16

Arbitration Proceedings  ~ Volume I ~  February 9, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

**sit** 10:17 78:21,24
79:3 138:10
140:22
**site** 35:20 72:24,25
73:9,22,23 74:6
77:5,9,24 84:11
142:11,20,21
143:1,13,18,20
147:13 148:23
239:25 243:6,7
247:25 248:7
249:10 253:3
254:1 263:6
**sites** 72:19 73:1,4
73:16 75:9,16
76:10 77:15 92:1
144:15 146:24
150:16 155:17
246:12 247:18
249:19 250:20
251:4 253:22
254:8
**sits** 174:16
**sitting** 10:21 25:21
67:13 136:20
137:22 232:3
**situated** 84:6
247:20
**situation** 100:1
133:5 169:16
248:4 249:8
**situations** 36:6
63:17 117:16
**six** 42:15 98:18
185:8
**sixth** 27:14 42:18
**skills** 25:10
**skip** 236:2
**skittled** 9:14
**slanted** 17:1
**sleazy** 177:23
**Sledgehammer**

88:5
**slide** 113:22
**slow** 180:8
**slowly** 143:3
**small** 16:19,20
46:22 81:5
**smaller** 47:6
**smalltime** 59:19
**smash** 73:20 74:8
**smell** 109:16
178:19
**smelled** 114:6
**smiley** 271:22
**Soaks** 117:4
**socializing** 127:13
**socially** 124:22
**soda** 133:18
**soft** 116:24
**software** 200:18
**sold** 66:5 74:23
**solely** 5:25
**somebody** 44:12
46:22 53:7 58:20
58:23 59:5 68:4
68:12,14 74:2
84:3,6 106:1
117:17 120:3
143:14 211:24
246:21 248:15
253:15 266:9
268:23 271:5
**somebody's** 140:12
140:23
**someplace** 39:4
241:19
**somewhat** 70:22
99:20 131:5
146:25 248:1
**song** 67:2,7,10
**soon** 38:25
**soothe** 175:4
**sorry** 29:11 37:9

40:19 42:3 71:19
99:12 105:24
111:3 116:4
122:9,11 130:12
140:2 154:2
159:5 174:2,5
180:7 191:23
213:3 218:19
**sort** 23:12,16 48:14
49:5 60:16 62:19
78:16 81:18 88:9
100:22 105:22
110:2,3 111:25
128:2 130:19
135:17 149:17
153:11 199:3
216:12 248:14
255:9 260:17
262:13,19 271:24
**sought** 162:22
229:21 230:1
254:8
**sounds** 76:7 201:3
**sources** 87:5
**soured** 102:17
**South** 2:4
**Southern** 155:11
**Sox** 122:23
**space** 64:16 84:15
**speak** 14:16 175:25
244:23
**speaking** 197:11
**speaks** 56:11
266:24
**special** 54:25
142:14,17
**specialized** 207:25
**specialty** 15:20,24
**specific** 6:14
130:12 134:17
232:2 239:9
**specifically** 7:14

21:9 101:21
150:14 179:14,16
215:23 230:18
**Speech** 85:6,15
250:23,25 252:8
252:11
**speed** 60:14 64:12
**spell** 71:18
**spend** 40:5,6 60:13
93:20 117:13
247:3
**spending** 96:1,2
258:13 259:1
**spent** 117:12 122:1
122:2,2 259:5
**Sperlein** 24:6,6,10
216:9 220:25
**spilled** 116:25
**spirited** 165:14
**split** 148:23,23
164:25
**spoke** 10:18 261:10
**sponsored** 85:10
247:8
**sponsoring** 85:14
**spot** 261:17
**spring** 17:18 58:2
102:21 214:20,25
215:7
**squeeze** 167:14
**squirted** 107:14
118:21
**SS** 274:3
**stacked** 114:24
**stage** 59:22 249:12
**stamp** 57:8 108:24
159:5 186:7
206:15
**stamped** 159:6
213:18
**stamps** 72:14
**stance** 44:5 56:13

79:12
**stances** 60:18
**stand** 10:6 270:20
**standard** 7:15
250:14,15
**standing** 210:16
**start** 12:15 13:24
36:24 37:7 48:21
69:8 70:5 98:7
121:24 127:8
131:8 133:6
175:7 191:15
194:5,7 195:3
197:7 204:6
220:24 262:15
**started** 10:4 15:8
15:19 16:13
19:13 38:18
42:10 68:18
69:15 78:11 88:1
88:1 89:1 90:5
102:24 103:4
108:19 127:25
128:1 133:8
138:20 146:3
148:24 198:9
200:22 201:24
248:21 249:5
**starting** 147:11
**starts** 255:8
**stat** 219:20
**state** 45:5 75:22
170:19 258:9
274:3,17
**stated** 201:22
**statements** 147:12
177:11 258:20
**states** 74:18 77:23
94:25 163:3
167:7
**stating** 223:23
**status** 149:18

Arbitration Proceedings  ~ Volume I ~  February 9, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page  34

172:13
**statutory** 68:9
**stay** 26:25 39:21
  39:24 128:6,7
**stayed** 135:25
**staying** 133:13
  259:19
**steal** 60:9 66:12
  247:1
**stealing** 46:11,18
  47:15,16 48:22
  49:15 53:5 67:1,2
  68:6 70:14 71:4
  129:14 269:18
**steals** 67:6
**steeply** 93:9
**stenographically**
  5:11
**Stenotype** 274:9
**STEPHEN** 1:16
**steps** 22:1 197:13
  200:7 212:14
  220:24 258:18
**stern** 118:4
**Stevan** 147:15
**sting** 255:24
**stipulate** 56:23
**stipulated** 5:10,16
  5:18,23 47:4
**Stoffel** 202:2
**stole** 62:2 67:16
**stolen** 193:14
  220:12,13,16
**stomach** 174:13
**stone** 139:7
**stood** 123:4 172:15
**stop** 69:5 144:14
  209:19 223:4
**stopped** 15:5 66:6
  208:14
**storage** 143:10
**store** 142:17

**stored** 198:16
**straight** 262:16
  263:13 269:8,9
  269:10
**straighten** 182:6
**straits** 194:25
**strange** 175:13
  193:5 266:2
**strangely** 136:3
**strategically**
  161:23
**strategy** 47:1,3,13
  55:16 61:23
  66:17 148:11
  149:25 156:22
  169:12
**Street** 2:4
**strictly** 12:3
**strike** 41:15
**string** 151:11
**strong** 88:18 118:4
**strongly** 50:24
**struck** 175:12
**structure** 26:15,16
  157:12 159:20
  178:14
**stuck** 165:3
**studio** 247:9
**studios** 246:11
  247:20,23 248:9
**studying** 133:9
**stuff** 63:21 83:3,7
  122:23 177:8,22
  195:11 200:5
  247:11 261:19
  269:12
**stupid** 164:12
**style** 125:1
**sub** 269:13
**subject** 6:13,19 8:3
  8:25 45:10 81:13

101:6 141:4
  167:8 222:18
  244:19
**subjects** 3:13
**submission** 9:22
**submit** 115:25
  233:21 237:20
**submitted** 110:19
  110:21 230:16
  232:17 238:19
  241:23
**subpoenas** 70:2
**subscriptions**
  77:18
**subsequent** 170:22
**subsequently**
  244:12
**subsidiary** 37:19
**succeed** 75:8 78:22
**success** 75:2 77:6
**successful** 77:4,9
  162:6 179:20
  184:3
**successfully** 77:24
**sudden** 67:15
**sue** 49:2 69:19
  73:10,11 147:18
  219:20 251:20
  253:22 254:6
**sued** 53:14 67:1
  69:21 77:15,24
  88:17 144:25
  171:16 241:22
  253:25 254:6
  256:4 268:25
**sufficiently** 19:3
**suggest** 44:17
  151:10 164:23
  263:21 264:14
**suggested** 164:24
  235:11 264:7,13
  269:16

**suggestion** 52:4
  172:18
**suggestions** 172:17
  172:20,21 264:6
  266:15
**suicide** 269:1
**suing** 53:1,2 63:16
  66:15 69:8 70:7
  71:2 146:10,14
  248:5 252:2
  254:3
**suit** 73:20 216:25
  218:9,12 243:12
  244:1
**Suite** 2:10
**suits** 76:20
**summer** 17:18
**sums** 214:8
**Sun** 254:10
**sunlight** 123:22
**Super** 112:25
  113:1
**support** 71:3
**supposed** 92:3
  173:11,12,14
  216:13 218:7,8
  246:4 248:16
**suppressing**
  124:12
**sure** 11:22 22:25
  23:1 27:15 28:6
  29:21 30:24
  31:19 33:7 36:2,7
  45:6 48:9 49:21
  50:6 62:1,6 63:18
  67:15,24 72:15
  91:6 93:6 104:9
  130:14 132:15
  140:25 157:25
  160:20 178:7
  180:11 185:9,14
  186:14 194:7

199:3 201:9
  208:12,18,23
  228:23 231:24
  232:4 248:20
  254:9,11 256:17
  270:7 273:5
**surprise** 27:12
**surprised** 68:17
**suspect** 50:24
  242:9
**suspected** 28:14
  148:2 200:4
  239:13
**suspended** 47:8
**sustain** 7:1 66:13
**sustained** 116:10
  230:24
**swarm** 65:1,1,7,14
  65:21,23 69:21
**swing** 129:15
**switched** 198:11
**sword** 270:5
**sworn** 10:8 12:21
  12:24
**symbiotic** 25:14
**system** 22:22 198:9
  216:2 250:3,4,5
  250:13 251:16

**T**

**T-i-p-p-a-y-a-g-...**
  71:20
**tabbed** 18:12
**table** 9:14 25:21
  133:12 165:18
**tact** 156:19
**tactic** 156:7 179:11
  179:12
**tag** 113:25
**take** 16:11 19:3
  28:20 29:23,24
  43:20 47:23 48:2
  48:17 52:20

Arbitration Proceedings  ~ Volume I ~  February 9, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

54:15 60:18
64:19 71:6 83:5
87:8 89:15,19
91:9 92:2,3 94:24
102:11 112:22
122:24 123:1
124:22,25 141:7
141:8 143:3
145:22 148:23
149:8 155:19
156:18 161:1
166:24 171:23
173:23 178:10
180:9,24 182:16
185:17,21 191:11
196:8,10 197:12
200:7 212:14
213:15 220:24
222:13 223:17
226:4 229:9
251:5 253:16
254:23 257:15
260:2,3,23
272:25
**takedown** 91:23
92:9,10 253:10
253:13,15 255:15
255:25 256:10
**taken** 1:17 7:3
62:11 125:7
141:21 180:13
213:5 230:12
232:10
**talk** 9:8 21:3 29:25
32:15 35:4,7
48:10,12 97:21
104:1,22 109:11
119:22 120:1,3
120:16,19 121:11
135:21 150:13,14
176:21 179:18
181:19,24 182:6

195:21 197:15
204:20 211:24
217:8 218:14,18
234:10 240:18
243:3 263:24
264:24 265:6
266:8,10,22
267:2
**talked** 8:1,9 9:7
56:3 72:18 90:24
100:13 133:1
154:22 176:22
182:18 183:4,21
205:10 212:24
218:23 230:5
232:15 242:13
246:7
**talking** 40:7 45:9
59:14 61:17 70:5
97:6 106:7,21
107:20 114:9
139:16 148:5
149:21 151:15
160:11 180:18
212:14 221:16,16
226:13 249:12
252:17
**talks** 174:15
176:11
**tall** 133:15
**Tampa** 35:3
36:16
**taper** 27:4
**target** 73:4,6,19
74:7 144:21,24
244:11 249:16
253:3
**targeted** 72:1
**targets** 158:15
**tasked** 42:22 94:1
94:5 95:12 100:4
119:19 263:16,18

**tasks** 202:19
258:25 262:1
**taste** 262:19
**tax** 199:23
**team** 59:14 61:2,4
86:24 87:24
112:20 124:15
132:15 148:21
166:18
**team's** 47:2
**TeamViewer**
200:17
**tech** 215:5
**technology** 25:25
63:19
**techs** 92:13
**teenager** 269:21
**teenagers** 268:24
**tell** 14:1 19:3 26:2
30:15 35:8 43:14
48:8,9 59:13
62:22 63:15
72:18 81:15
83:23 112:19
119:13 124:9
152:2,17 159:2
161:5 162:10
165:8,13 174:3
180:25 191:5
196:5 208:22
209:24 218:15
219:8 220:21,21
220:22 222:13
248:19 266:19
**telling** 107:22
115:14 119:1
121:21 156:19
191:24 209:18,22
242:11
**tells** 63:24
**temporarily**
198:19

**tempting** 238:6
**ten** 62:8 64:6,9
75:15 80:9
160:15 180:12
187:18 272:4
**tenant** 35:24
**tend** 74:24 117:2
134:18 147:5
172:16
**tended** 136:2
270:25
**tends** 76:4 84:15
262:22
**tension** 66:20
**term** 21:8 28:5
31:16 138:13
159:13 162:3
163:18 171:7
197:24
**terminate** 191:10
**terminated** 182:5
182:20 190:25
213:21
**terminates** 31:12
**terminating** 77:19
**termination**
190:11 254:11
**terms** 20:25 21:3
30:7 35:2 63:16
80:13 126:19
128:20 140:5
144:16 160:1,2
161:20 181:24
187:16 188:12
229:3 253:2
259:5
**terrible** 103:11
**terribly** 164:12
**testified** 13:1 26:5
219:1 227:15
240:6,20 243:7
**testify** 8:11 12:24

273:1
**testifying** 68:19
76:11 230:11
**testimonial** 6:4 7:8
7:10
**testimony** 8:5,22
11:15 52:12 76:9
76:17 235:10,20
239:23 240:11
**text** 93:18,24 94:18
104:21 105:3,5
105:11 106:18
109:2 115:3
118:19 120:6,17
120:22 181:2
203:10 213:11,20
223:1
**texts** 117:20 118:9
119:23 181:3
202:20 221:8
**Thank** 11:9 62:15
86:1 99:16 132:6
141:24 158:23
180:16 212:17
226:25 229:14
235:17 273:11
**thanks** 92:19 154:3
**theaters** 74:4
**theme** 78:17
131:12
**theoretical** 218:6
**theoretically** 64:13
65:22
**theory** 246:10
**thicket** 92:7
**thieving** 85:24
268:16 269:16,22
271:6,18
**thing** 20:16 43:13
51:3 75:6 81:8
103:17 105:22
132:23 139:25

Arbitration Proceedings  ~ Volume I ~  February 9, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page  36

151:11 160:5
162:25 163:7
181:7 193:6
215:21 224:15
**things** 12:9 14:21
16:10 23:4 26:19
34:15 36:3 42:21
44:23 87:4 96:1
97:5,8 102:22
113:6 120:1,3,5
135:22 155:24
172:14 182:7
187:23 190:23
193:9 194:20
195:3 197:2
199:18 200:19
215:4 229:5
258:25 261:4,12
**think** 4:9,22 8:1
9:19 10:18,19,24
10:25 12:18 22:8
24:3 25:14,15
29:10 33:22
34:24 35:14
37:10,10 38:4,4
41:11 42:11
45:13,14,15 46:4
52:2 53:18 56:10
56:10,18,20
59:16 60:7,21
63:3 69:1 75:12
75:13 80:19 81:1
82:15,25 88:5,14
90:8 92:15 93:10
100:19 102:7
104:5 105:17,19
106:1 107:8,8
111:22 118:8,23
119:23 120:3
125:17,24 126:3
126:13 129:3
131:5,19 138:23

141:8 143:23
145:14,21,22
146:3 147:17,17
149:1,4 151:11
163:19,19 164:13
165:15 167:23
168:17 169:17
170:16 177:16
186:13 190:24
194:22 196:7
203:8 204:25
208:7 209:21
210:16 211:4
212:5 213:11
217:15 218:1
219:25 225:9
227:25 237:16
238:1 247:13
248:22 253:5
256:11 258:7
259:24 261:16
263:3 264:9,18
264:19,22 272:23
**thinking** 34:16
67:12 68:2,8
107:5 120:20
145:20
**thinks** 51:23
**third** 29:14 86:9
112:5 113:3
174:15 181:22
186:5 256:25
**third-party** 147:21
263:25
**Thomas** 2:8 4:1,1
52:9
**thought** 16:8 28:9
28:11,23 39:24
41:12 46:19 55:3
63:9 68:25 73:18
79:16 89:9
104:11 107:19

109:5 117:25
118:6 120:18
139:6 149:23
160:2 172:18
179:6 186:14
188:6 201:9
204:17 218:6
238:25 239:14
244:7 256:19
264:2 265:21
**thousand** 47:10
64:21 66:5,11
67:1 68:8 88:25
144:6 250:22
**thousands** 92:10
**threat** 148:7
**threaten** 49:10
197:2
**threatened** 147:13
184:24 268:4
**threatening** 184:15
184:18
**threats** 55:20
244:25
**three** 4:22 69:1
98:16,17 144:2
144:19 174:7
176:17 177:4
225:11 246:23
257:12
**three-hour** 51:14
**three-way** 77:12
**throat** 252:1,7,17
**throttled** 143:2
**thrust** 229:24
**ticket** 100:18
**tie** 112:12,14,17
113:23 114:2,3
**time** 6:15 8:8 13:14
13:18 17:12
20:18 21:16 24:8
24:11 26:22

27:13 28:11,21
28:25 29:1,2,7,18
29:20,23,24 31:5
31:18 33:4,12
35:15 36:11
39:16 40:1,6,7,7
41:4,6,10 42:7,8
43:17 50:17,18
51:1,5,7,8,14
52:11 56:12 57:8
64:6,19,22 66:20
69:21 72:14
74:25 79:5 80:3
80:23 82:17,17
82:25 83:13 89:1
93:5,20,25 94:19
94:19 96:1,2 97:8
97:9 101:18
102:16,23 103:4
105:6 106:2
107:15,24 108:9
108:16 109:8
110:7,16 116:21
117:12 118:25
119:17 120:11
121:7 122:1,2
124:10 127:19
130:9,13,19
131:8 135:20,21
141:5,14 144:2
144:12 147:1,5,6
147:7 148:1,2,20
148:24 150:9
151:6 152:4,7,20
153:22 164:7
168:23 171:6
172:23 173:10
176:17 182:18
183:2 184:9
192:23 196:11
197:17,19 199:6
204:15,19 206:1

206:5 208:14,20
213:6,24 216:2,8
216:20 217:12
218:11,25 229:3
229:19 231:23,23
243:2,22 244:10
245:4,4,20,23,25
247:3,13 248:21
254:11,13 255:13
255:17 257:21
258:5,13 259:1,4
259:13,22 261:10
261:17 263:5
265:11,13 266:3
267:14 270:13
271:24
**timeline** 103:16
**timely** 6:15
**times** 15:12 51:15
134:21 185:3
**timing** 49:20
**Tipp** 71:19
**Tippayagosai**
71:17
**Titan** 24:8 25:2
77:13 216:10,11
**Titan's** 47:16
**title** 88:4 91:25
257:15
**TNAFlix** 153:7,10
157:7 241:1,9,25
242:11
**today** 4:4 232:3
259:25 260:10
268:6
**told** 33:24 43:16
84:23 100:19
125:25 135:14
145:25 146:1
160:24 168:17
174:23 176:4,8
183:17 191:9

Arbitration Proceedings  ~ Volume I ~  February 9, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page  37

192:21 196:6,11
    208:7,23 266:8
    266:23
**tolerate** 79:3
**tomorrow** 272:12
    272:18,20 273:10
    273:14
**tone** 102:20 122:13
    128:9 131:1
    175:9 271:24
**tonight** 245:3
**tool** 73:13
**top** 49:23,23 57:15
    58:13 60:11,19
    60:20 72:2 85:1
    88:14 91:16
    116:22 153:14
    159:6,10 181:4
    181:10 191:20
    207:5
**Topeka** 67:16
**topic** 76:15
**Torino** 14:13
**torn** 114:1
**torrenters** 144:18
**torrenting** 246:7
**tout** 261:13
**town** 40:2
**trace** 65:19
**tracing** 249:22
**track** 194:20
**tracked** 97:9
**tracking** 97:11
**trade** 38:8 81:19
    81:20 85:11
    251:1
**trademark** 33:16
    75:23 82:15
**trademarks** 75:24
**traditionally**
    262:18
**traffic** 214:20

**trailer** 246:24
**transcribed** 274:12
**transcript** 1:14
    5:13 45:7 224:10
    274:13
**transcription**
    274:14
**transfer** 33:21
    160:12 171:10,11
    171:13 173:17
    184:22 191:5
**transmit** 64:15
    225:2
**transmitted** 159:24
**transmitting** 64:11
**trash** 198:24
**treat** 117:17
**treated** 126:8
    183:6
**tree** 219:12
**Trice** 46:8
**tried** 132:22 149:5
    152:7 197:4
**tries** 38:14
**trigger** 211:25
**trim** 246:23
**trio** 77:15
**trip** 81:11 138:12
    138:18
**tripped** 246:16
**TRO** 162:21
**trouble** 94:16
**true** 105:17 176:5
    176:8 274:14
**trust** 171:12,14
    173:13 174:20,23
    185:11 187:1
    223:14,25 224:18
**trusted** 104:10
**truth** 12:25,25,25
**truthful** 12:7
**truthfully** 15:11

**try** 3:13 11:15
    49:12 68:23
    86:21 128:6,7
    136:4 149:3
    150:17 156:8
    164:25 169:15
    171:16 175:25
    179:19 181:13,19
    204:14 207:10
    209:12 228:1
    234:4 237:4
    240:22 241:13
**trying** 66:9 76:8
    122:7 151:8
    152:11 154:20
    155:15,18 170:9
    175:4 177:25
    184:10 188:16
    204:25 208:16
    209:17 238:20
    247:1 250:14
    268:24
**tube** 72:19 73:1,4,9
    73:16,22,23 74:6
    75:9,16 76:10
    77:5,9,15,23 92:1
    243:6,7 246:12
    247:18,25 248:7
    249:10 251:4
    253:3,22 254:1,8
**Tuesday** 89:13
**tunnel** 126:14
**tunnel-like** 123:13
    123:20
**turn** 27:19 30:4
    32:11 54:12 59:7
    106:4,24 108:23
    111:1 112:11
    117:18 128:4
    153:25 158:18
    162:7 167:25
    175:1,16 179:2

180:22 203:18,23
    204:2,4 213:17
    214:14 216:5,7
    221:5 223:13
    246:24 247:8
    252:4
**turned** 106:3
    140:20 211:20
    224:13 247:19
    269:19,19
**turning** 106:8
    113:22 206:4
**TV** 143:18 144:10
**twice** 140:14
**two** 14:8 26:19
    35:7 36:3 42:11
    76:23 82:17
    87:17 110:14
    112:23 117:9
    119:12 139:6
    143:3 145:12
    155:3 163:12
    181:4,10 197:18
    199:11 212:7
    220:15 225:6
    230:20 231:24
    236:25 238:2,2
    257:6,17,19
    259:14
**two-day** 103:6
**type** 16:15 44:5
    72:8 82:11 83:12
    102:6 129:23
    135:4
**types** 14:21 62:17
    62:19 76:12 94:4
    124:6 199:18
    217:6
**typewriting** 274:13
**typewritten** 274:13
**typical** 24:24 54:24
**typically** 44:5

| **U** |
| --- |

**Uh-huh** 36:23
    58:16 87:19
    91:18 105:4
    110:15 112:13
    128:18 156:5
    180:21 181:23
    186:20 190:8
    191:17 194:2
    200:24 206:21
    226:8 227:6
    228:16 242:4
    258:15
**Ukraine** 148:3
**ultimate** 242:24
**ultimately** 67:5
    81:1 151:19
    158:16 201:6
    224:11
**uncertainty** 74:10
**Uncle** 40:13
**unclear** 254:19
**uncomfortable**
    85:18
**undergraduate**
    14:3
**underlying** 265:23
**underneath** 38:9
**understand** 51:7
    52:19 70:17
    108:7 118:24
    119:7 121:12
    122:7 125:11
    142:9 187:12
    194:6 213:3
    227:17 231:2
    242:5 256:22
    272:18
**understandably**
    53:5
**understanding** 5:8
    19:23 32:7,8

Arbitration Proceedings  ~ Volume I ~  February 9, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page  38

93:11 98:8 158:3
192:19 214:6,9
264:1 268:8
**understands** 50:14
**understood** 28:4
34:22 58:18
118:25 123:4
164:19 202:23
**unduly** 7:22
**unemployed** 46:9
46:10
**unfortunate** 67:19
**unfortunately** 16:1
**unfreeze** 227:22
**unincorporated**
69:22
**United** 74:18 77:23
163:3 167:7
**Universal** 255:20
256:3,4
**universally** 70:1
**University** 14:4,11
14:13
**unnecessary** 95:21
**unpopular** 268:18
**unprecedented**
84:11,12
**unquote** 53:15
**unrelated** 212:12
**unsuccessful**
179:21
**unsupportable**
255:25
**untimely** 238:17
**unusual** 106:13
150:15 155:23
**up-to-date** 172:12
222:3,23
**upcoming** 132:16
**upload** 63:22 64:2
65:6 72:23
142:12 246:4,14

247:23 249:3
**uploaded** 246:21
248:23 249:10
251:4 256:25
257:2,23
**uploader** 74:5
254:1,4
**uploaders** 143:22
143:23 246:13
253:22 254:6,13
**uploading** 73:24
77:16 143:11
246:13 247:4,11
248:16
**uploads** 74:2
**upper** 111:12
**upset** 43:5 53:9
60:2 67:3 71:1
78:16 106:18,20
106:22 122:8
**upsetness** 103:7,10
**upsetting** 117:9
**urged** 52:25
**urging** 61:1
**USC** 255:21 256:1
**use** 29:3 58:5 61:1
64:17 83:4 94:22
121:25 124:11
126:10 143:13
156:7 171:15
177:20 203:4
215:9,11,20
217:16 221:17
248:9 255:17
256:5,8,8,13,14
256:15,15,16,19
256:23 257:4,19
261:13
**useful** 132:22
**user** 257:2
**users** 62:24 66:15
247:18

**uses** 64:15
**usually** 40:3 59:1
63:20 87:2 93:8
93:16 97:9
114:17 120:1
146:22 163:4
249:2 257:17
**usurious** 264:2

_____

**V**

**vacation** 144:1
168:19 186:9
**vaccine** 147:3
**vague** 7:22 37:6
**Val** 169:23 173:12
173:15,16 175:1
175:1 176:16,22
178:9,9,11,14
179:13,14,16
242:8,11
**valid** 177:9
**value** 43:14 182:16
203:21 239:20
240:4 246:9,9
**various** 82:14
**vast** 37:18
**Vaughn** 270:12,13
270:16
**Vegas** 1:20 2:10
3:1 93:20 100:8
206:9
**vein** 210:13
**vendors** 82:14
**Venkat** 155:2,9
**verbal** 93:23
258:24
**verbally** 47:20 87:6
**verbatim** 22:4
**verbiage** 48:21
**version** 66:7 171:5
213:22
**versions** 238:5
**versus** 34:1 80:14

255:19 256:3
**vest** 31:5 98:18
103:2
**vested** 31:14
**vesting** 30:14
**viable** 73:4 74:7
93:13
**video** 48:23 49:16
73:25 111:2
132:10 142:16
246:2,8 256:19
256:24 257:2,8
257:12,18
**videos** 115:20
246:17 248:16,19
249:4 257:13
263:12
**view** 25:7 137:15
137:19
**viewed** 126:20
225:6
**vindicate** 62:18
**vindictive** 195:12
200:5
**violate** 219:15,17
**violated** 117:13
122:3 218:17
226:16
**violation** 77:4
219:24
**violations** 53:2
249:21
**virtual** 182:5
**virtually** 84:18
**visibility** 144:24
**visible** 112:18
**visit** 41:12 130:23
**Vobile** 245:25
246:1,11,19,19
246:22,24 247:22
248:1,7,9,13,25
249:4 250:2,24

251:2,16,18,25
252:7
**Vobile's** 250:5
**volume** 1:15 18:10
18:13,16,18,20
71:7 89:16
152:23 154:1
161:3 173:25
225:21 229:11
254:24
**volumes** 6:11
17:21
**voluntarily** 124:1
**volunteer** 132:18
**volunteered**
102:11
**vomit** 138:21 139:7
139:9
**vs** 1:6
**vulnerabilities**
73:18

_____

**W**

**wait** 61:11 100:15
143:16 171:25
234:16 254:5,5,5
**waiting** 165:4
170:14
**waived** 9:21 96:3
211:2
**waiver** 217:11
221:18,23 254:20
**walked** 109:14,19
110:4 112:1
133:14
**Walters** 16:14,21
**want** 9:1 14:23
21:20 25:24
27:11,11 29:19
31:21 37:3 42:18
43:23 45:5 49:12
52:5,13,18 55:2
55:23 58:21 59:2

000313

Arbitration Proceedings ~ Volume I ~ February 9, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 39

| | | | | |
|---|---|---|---|---|
| 59:2 64:2,18 66:4 | 187:10 196:9,15 | 211:25 214:24 | **Wednesday** 89:14 | 18:2,5,14,17,21 |
| 67:12 68:19 72:4 | 197:5 218:1 | 215:15 216:18 | **week** 107:24 | 18:24 41:22 |
| 73:21 78:20 79:7 | 220:2,2 246:20 | 219:22 232:16 | 163:21,25 237:16 | 45:17,23,24 48:5 |
| 80:17 82:16 83:4 | 246:23 256:21,21 | 233:20,25 237:13 | 238:1 259:12 | 48:7 50:12,13 |
| 88:6 89:4,12 91:6 | 263:7 267:19 | 239:1 245:16 | **weekend** 259:20 | 51:21,22 52:14 |
| 95:10 100:16 | 270:21 | 251:3 263:16 | **weekends** 28:21 | 52:19,23 61:11 |
| 101:15 107:16,25 | **wanting** 191:2 | 266:21,23 268:21 | **Weekly** 81:19 | 61:13 62:4,8,14 |
| 116:11 120:24 | **wants** 50:12 | 271:5,7 | **weeks** 23:24 238:2 | 62:15,16 63:10 |
| 121:10,23 122:1 | 151:10 269:11 | **ways** 93:17 182:7 | **weigh** 84:15 | 63:14 72:17 |
| 122:4,20,21 | **warfare** 58:24 | 212:6 | **weight** 7:7 41:9 | 76:19 77:1 78:4 |
| 130:20,21,21,23 | **warm** 128:5 | **we'll** 11:4 52:12,13 | 42:3 52:3 61:25 | 87:13,16 95:24 |
| 135:7,8 145:10 | **warning** 68:4 | 115:25 147:20 | **weird** 94:18 | 96:18 99:18 |
| 147:5 154:21 | **warnings** 48:14 | 191:22 272:11 | **well-known** 124:13 | 101:8,14,17,22 |
| 158:10 170:10,11 | **wasn't** 25:3 33:7 | 273:2,9 | **Wendy** 2:8 3:24 | 102:1 113:10,14 |
| 170:12,15,15 | 39:1 43:3 44:13 | **we're** 3:6 8:11,14 | 207:8 209:22 | 115:25 116:2,4 |
| 181:24 184:14,20 | 44:24 60:20,20 | 11:7 45:15 64:3 | **went** 39:20 46:8 | 116:12,13 130:6 |
| 184:20 187:9 | 67:5 86:21 93:24 | 65:11 68:10,13 | 49:15 73:13 95:8 | 130:8 132:6,7 |
| 189:13 195:7 | 94:22 109:9 | 68:14,25 95:19 | 95:10 114:10 | 141:3,13,18,23 |
| 200:6 205:11 | 140:19,20 148:9 | 101:5 141:19 | 124:16 144:19 | 141:24 142:1 |
| 217:17 225:10 | 166:11 167:8 | 143:10,10 151:15 | 145:9 147:1 | 154:3,5 158:22 |
| 228:20 236:20 | 183:17 201:13,22 | 165:6 169:5 | 149:2 158:9 | 159:1 169:4 |
| 239:4 241:21 | 207:9 209:17 | 181:6 185:4 | 163:20 168:18 | 171:25 172:4,8 |
| 250:19 266:10 | 225:8 264:11 | 186:5 190:5 | 177:1 186:9 | 180:7,16,17 |
| 269:17 | **watch** 146:19 | 217:18 218:15 | 216:2 249:1 | 196:23 210:15 |
| **wanted** 12:14 | **water** 43:6 178:19 | 224:24 235:5,8 | 261:11 271:24 | 211:10,13 212:20 |
| 20:17 22:24,25 | **way** 10:25 11:5 | 249:12 257:24 | **weren't** 73:6 80:2 | 225:20 226:3,24 |
| 23:2 24:5 26:20 | 12:5,8 17:25 | 258:1,1 | 104:4 146:6 | 227:1 229:15 |
| 26:24 27:1,3,15 | 21:19 24:20 25:1 | **we've** 34:8 97:6 | 187:17 244:21 | 230:19 231:1 |
| 28:6 29:21 30:17 | 30:23 34:8 35:10 | 196:19 | 249:18 | 232:13 235:9,17 |
| 30:24 31:19 33:6 | 44:23 50:5 52:5,6 | **Web** 58:6 91:25 | **West** 28:24 | 236:1,2,5 237:24 |
| 33:6 35:2,11,14 | 52:6,10,12 64:11 | **Webmail** 215:16 | **Western** 72:21 | 239:20,22 240:3 |
| 36:2,7 51:17 | 88:23 90:4 97:12 | **Website** 38:10,15 | **Weston** 16:14 17:8 | 240:9,15,17 |
| 55:18,18,21,23 | 115:13 122:10 | 54:8 142:14 | 37:5 42:10 | 255:4 260:25 |
| 67:22,24 89:2,10 | 126:8,17 133:22 | 215:17,18 236:7 | **WHEREOF** | 261:1 272:2,8,13 |
| 95:4 118:7 | 135:20 140:2,3 | 236:9,15,19,23 | 274:16 | 272:16 273:3,7 |
| 119:12 120:16 | 140:18 152:1 | 238:4,7 241:22 | **White** 2:3,4,19 | 273:11 |
| 121:10 122:24 | 159:15,21 160:8 | 247:12 250:7,9 | 3:17,17,18,21 | **Whitehead** 2:3 |
| 131:20 135:14 | 167:18 173:15 | 251:20 269:12,13 | 4:10,16 5:1,18 | 3:20,21 18:6,19 |
| 143:1 145:11,22 | 177:21 178:12,14 | **Websites** 142:11 | 9:5,16 10:1,9,16 | 18:23 171:20 |
| 146:2,19 148:21 | 179:2,10 183:6 | 145:5 237:14 | 10:22 11:1,2,9,13 | 172:3 229:12,13 |
| 156:13 172:14 | 195:12,22 205:15 | 238:5 239:20 | 11:17 12:17,19 | **Whitehead's** 17:20 |
| 176:24 182:6 | 205:23 208:17 | **wedding** 185:16 | 12:20 13:3 17:19 | **widely** 247:14 |

Arbitration Proceedings  ~ Volume I ~  February 9, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page  40

wider 7:18
wife 21:22 35:23
    39:23 40:12
    108:6 111:17
    112:16 119:12
    124:19 125:5,6
    126:24 199:19
    269:14
wife's 111:24
    122:21
willing 145:3,22
    146:6 158:12
    166:11 250:7
    263:13
willingly 134:9
win 77:18 179:1
    194:18 257:24
wind 28:10 32:25
    53:11 148:5
    151:18 156:25
    157:2,5 177:3
    205:15 252:1
    259:18
window 123:14,20
windows 123:18
wing 109:21 137:4
    137:6
wink 24:4
winning 84:22
wipe 200:7,22
    208:16 209:20
wiped 201:15
    202:3 203:1
    208:20 209:13,16
wiping 201:17
    208:11 209:20
wire 246:17
withdraw 205:5
    212:16
withdrawing
    127:23 131:5
witness 2:18 8:22

9:24 10:8,20
17:22 18:21 50:9
50:16 63:3 99:9
99:12 113:11
141:12 154:4
158:24 168:22
169:2 171:22
172:2,5 225:25
274:16
witnesses 4:14
    11:25 273:2
woman 103:5
    113:22 131:14,14
    202:1
women 103:3
    131:15
won 77:19 85:2
    112:25 113:4
Woo 165:21
word 22:8,8 85:8
    103:11 191:25
    229:2
words 93:2 169:14
    230:4
work 6:5 10:25
    11:1 13:8 15:19
    16:15,25 17:6
    20:6 21:18 23:13
    25:2,4,13 27:4
    28:13,18,19
    30:23 32:5 35:20
    37:12,19 53:6
    68:16 82:8,11,15
    82:19,21,23 94:2
    94:4,8 95:3,6
    96:25 117:12
    121:22 122:24
    125:22 132:20
    133:10,21 135:11
    145:13 146:5,7
    150:1 151:15
    152:13 164:3,5,6

167:16 189:5,14
195:18 196:17
197:23 201:10
210:10 235:24
243:25 258:14
260:14 264:22
267:20 270:14
worked 42:11,12
    44:23 56:9 93:25
    95:4 124:1
    163:12 176:25
    200:14 203:5
    217:4,15 238:21
    239:13 247:17
    249:23 255:14
    265:10 267:9
working 13:12
    15:19 16:2,13
    17:3 29:23 31:20
    35:17 36:22,24
    37:8,11 38:18,20
    39:9 41:7,24 94:9
    121:24 133:9,14
    136:5 139:5
    189:12 198:13,20
    198:22 199:9
    201:24 205:12
    239:1 243:2
    258:13
works 11:2
workweek 259:6
world 65:3 66:10
    113:5 165:17
worldwide 163:3,6
worried 21:17
worse 237:6
worst 180:4 182:10
    197:10 201:14
    259:16
worth 33:23 34:3
    67:5 80:4 82:25
    143:19 146:14

165:10 220:10
238:18
wouldn't 31:18
70:23 79:14
84:13 123:3
141:1 175:1
185:7 191:4
195:10 259:24
wound 60:21
108:21 147:10
wrap 262:23
wrapped 148:14
writ 184:18,24
write 67:21 223:2
writes 153:15
writing 47:20
83:14 87:6 93:16
161:13 222:2
231:25 232:16
written 79:2 90:12
91:7 171:7
201:22 254:20
258:20
wrong 78:18
103:18 119:14
wrote 88:3 92:25
167:24 194:13
207:8

**X**

X 2:17
XBIZ 81:15,16,23
82:8,22,23 84:13
85:9 86:2,25 87:4
88:14 270:1,2
XVideos 243:3,5
243:11,12,20,23
244:13 245:6,14
245:16,20 248:3
249:6,15 251:12
254:16 255:9
256:24

**Y**

yeah 14:22,24
18:19 34:13
36:14 39:12 41:6
55:18 60:2 61:19
63:4 68:23 71:23
75:17,19 87:25
89:4 99:9,13
106:1,6 110:10
111:25 113:25
114:23 118:2
119:18 124:5,17
124:20 125:6
130:18 134:20
136:23 137:8
138:6,19 140:7
140:19,22 144:17
148:8 149:1
153:1 155:7
161:4 163:17
167:3 171:1
172:2 174:14
185:3 186:8
187:21 192:4,21
193:2 197:18
198:20 199:5
206:16,18 211:6
211:21 213:5
219:11 238:11
239:2 247:16
249:11 256:21
259:24 262:21
264:23 266:18
271:11 272:23
year 29:14,14,15
84:12 129:2,3
153:8 176:17,19
196:11,13 265:5
year-to-year 259:5
years 13:11 14:14
15:4 56:19 75:15
98:17,17 126:21

Arbitration Proceedings  ~ Volume I ~  February 9, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page  41

195:2 238:7,11
245:2
**yell** 271:5
**Yep** 153:17 157:14
159:12 173:7
174:17 176:13
178:20 181:12,20
182:2,13 189:2
191:12 205:17
209:14 271:13
**yield** 75:11
**YNOT** 86:8,8
**YouTube** 72:20
74:1,4,4 250:9,10

**Z**

**zero** 101:4
**zone** 28:25 51:7,14
**zones** 50:17 51:5

**0**

**1**

**1** 19:1 26:13,20
27:10 69:20
77:14 160:5
178:10 225:21
**1:00** 141:17
**10** 155:11
**10,000** 42:19 44:13
**10:15** 62:4
**100** 146:4
**100,000** 66:6 69:7
70:16 149:23
**11** 84:9
**11:31** 57:16
**11:54** 141:15
**11th** 81:9
**12:34** 49:25
**12:42** 49:24 50:23
**1260002283** 1:6
3:11
**13** 2:19

**14-year** 190:3
**15** 29:14
**150,000** 177:5
**16th** 181:18
**17** 91:25 255:21
256:1
**177** 188:9
**18** 257:7
**180** 190:3
**180.83** 189:25
**18th** 181:22
**1984** 111:21
**1st** 159:17

**2**

**2** 79:7 159:7 160:3
160:10 176:1
220:10,12 227:13
**2,500** 47:10 68:24
82:25
**2:28** 57:13
**20** 29:15 75:5,13
**20-minute** 257:20
**20,000** 68:20
**2004** 14:19,24,24
14:24 15:13
16:12,13 113:5
**2005** 263:4
**2008** 37:3
**2009** 17:17,18 37:3
37:10,15 39:16
45:25
**2010** 32:23 84:9
153:9 243:22
**2011** 39:17 41:4
45:25 55:6 142:8
249:13 258:5
271:1
**2012** 36:21 58:3
89:5 99:24
102:21 105:9
130:14 131:2,8
131:23 134:24

190:13,19 191:19
194:3 204:3
214:20,25 215:7
**2013** 223:20
**2015** 1:17 3:1
274:18
**205** 41:10,14
**213** 2:6
**23** 110:6
**23605** 104:25
**23788** 120:17
**23rd** 274:18
**24** 110:19
**24th** 221:12
**25** 29:15 30:10,17
31:25 33:3 34:25
110:19 111:1
151:25 166:11,12
188:17
**25,000** 166:16
167:19
**250** 68:10
**26** 111:3
**27** 104:18 105:1
106:24 117:21
**28** 243:14
**28th** 200:23
**29** 87:9,14 204:3
**29th** 186:1 190:6
**2nd** 49:24 50:1

**3**

**3** 29:8 30:2 176:11
176:11 177:24
227:20 229:11
**3,000** 80:20
**3:00** 164:8
**3:10** 206:3
**3:26** 50:2,21
**3:28** 50:22
**3:58** 272:2
**30** 29:15 32:11
257:7

**30,000** 33:21
196:12
**300** 2:10
**325** 171:21 172:3
173:2
**333** 2:4
**334** 225:24
**34** 47:24 48:9,11
52:22
**340** 22:14,14
**35** 57:2
**35.83** 189:24
**36** 51:11 52:22
**37** 106:5 264:3
265:5
**372** 232:21
**38** 202:7
**380** 271:12
**3800** 1:18
**3960** 2:9
**3E** 29:13

**4**

**4** 159:7 228:2
**4:00** 164:9 262:5
273:16
**4:04** 206:6
**40** 51:12 52:22
59:7 60:11 75:14
**40-hour** 259:6
**40-plus** 259:11
**400** 233:21
**40th** 2:5
**41** 152:22 153:3
**42** 54:12
**43** 251:6
**44** 270:6
**45** 61:6
**462** 108:24
**463** 117:24
**49** 40:19

**5**

**5** 228:9 264:10
265:4
**5,000** 69:14 244:4
244:8
**5:30** 120:8
**50** 40:14 63:23
64:1,10 70:16
75:5,14 146:5
149:23 158:10,12
158:13 184:11
**50,000** 145:23
164:16 196:11
**500** 69:20 149:22
**500,000** 149:22
**51** 89:16
**512** 91:24 256:1
**512(f)** 255:22
257:23 258:7
**52** 71:8
**53** 153:25 154:2,3
**55** 254:24
**550,000** 161:16
163:24 184:11
187:1 194:21
209:25 210:8
217:17 223:14
225:3
**56** 260:3
**57** 90:17
**58** 149:9

**6**

**6** 21:5 27:21
226:19
**60** 189:24
**600,000** 33:16
**613-0500** 2:6
**63** 161:1
**66** 173:25 191:11
**669** 1:25 274:21
**67** 174:5
**68** 180:22 221:6
**69** 175:16,18

Arbitration Proceedings  ~ Volume I ~  February 9, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page  42

| | |
|---|---|
| **6C** 27:9,18 | **93** 184:1 |
| **7** | **94** 223:17 |
| **7** 21:23,25 29:9 | **95** 224:3 |
|    129:2,5 226:20 | **96** 224:3 |
| **70** 167:25 | **97** 224:8 |
| **702** 2:11 100:20 | **99** 229:10 |
| **72** 222:6,10 | **99.129.3.214** 71:24 |
| **73** 185:18 | |
| **74** 204:4 | |
| **740** 226:24 | |
| **75** 174:19 179:5 | |
|    189:23 210:5 | |
|    220:17 | |
| **75,000** 173:6 | |
|    175:22 176:12 | |
|    178:1 180:20 | |
|    190:21 | |
| **750** 68:10 | |
| **76** 208:25 | |
| **77** 213:15 | |
| **7B** 21:4 | |
| **7th** 191:19 | |
| **8** | |
| **8** 21:25 | |
| **80,000** 69:2 | |
| **862-8800** 2:11 | |
| **89** 237:24,25 | |
| **89169** 2:10 | |
| **9** | |
| **9** 1:17 3:1 | |
| **9-0** 158:18 | |
| **9,500** 43:13 44:13 | |
| **9:00** 133:19,20 | |
|    272:12 | |
| **9:10** 3:2 | |
| **90** 158:18,22 162:2 | |
|    162:4 | |
| **90071** 2:5 | |
| **91** 162:8 | |
| **92** 184:1 | |

# EXHIBIT 2

# EXHIBIT 2

Case 15-01193-abl   Doc 144-2   Entered 04/07/17 10:04:43   Page 79 of 239

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 275

```
 1                    ARBITRATION BEFORE

 2        JUDICIAL ARBITRATION AND MEDIATION SERVICE

 3

 4   MARC J. RANDAZZA,          )
                                )
 5              Complainant,    )
                                )
 6   vs.                        ) Ref. No. 1260002283
                                )
 7   EXCELSIOR MEDIA            )
     CORPORATION, a Nevada      )
 8   corporation; LIBERTY       )
     MEDIA HOLDINGS, LLC, a     )
 9   California limited         )
     liability company; and    )
10   JASON GIBSON,              )
     individually,             )
11                              )
                Respondents.    )
12   _____)

13

14        TRANSCRIPT OF ARBITRATION PROCEEDINGS

15                    VOLUME II

16   BEFORE THE HONORABLE STEPHEN E. HABERFELD

17      Taken on Tuesday, February 10, 2015

18         At 3800 Howard Hughes Parkway

19                 Eleventh Floor

20               Las Vegas, Nevada

21

22

23

24

25   REPORTED BY:  JO A. SCOTT, RPR, CCR NO. 669
```

CERTIFIED
COPY

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 276

```
 1   APPEARANCES:

 2   For the Complainant:

 3       KENNETH P. WHITE, ESQ.
         HENRY L. WHITEHEAD, ESQ.
 4       Brown White & Newhouse
         333 South Hope Street
 5       40th Floor
         Los Angeles, California 90071
 6       (213) 613-0500

 7   For the Respondents:

 8       WENDY MEDURA KRINCEK, ESQ.
         ETHAN THOMAS, ESQ.
 9       Littler Mendelson
         3960 Howard Hughes Parkway
10       Suite 300
         Las Vegas, Nevada 89169
11       (702) 862-8800

12   Also Present:

13       MARC J. RANDAZZA
         JASON GIBSON
14       BRIAN LOWDERMAN
         BRIAN DUNLAP
15

16

17                    I N D E X

18   WITNESS                            PAGE

19   MARC J. RANDAZZA
       Cont. Direct Examination by Mr. White    277
20     Cross-Examination by Ms. Krincek         298

21

22

23

24

25
```

All-American Court Reporters (702) 240-4393
www.aacrlv.com

000320

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page  277

```
 1        LAS VEGAS, NEVADA; TUESDAY, FEBRUARY 10, 2015

 2                       8:58 A.M.

 3                        -oOo-

 4

 5             ARBITRATOR HABERFELD:  Back on the

 6     record.  Anyone who is not ready?

 7             I'm just going to remind Mr. Randazza you

 8     are still under oath.  Do you understand that?

 9             THE WITNESS:  I do.

10             ARBITRATOR HABERFELD:  Mr. White?

11             MR. WHITE:  Thank you, Your Honor.

12                CONTINUED DIRECT EXAMINATION

13     BY MR. WHITE:

14        Q.   Mr. Randazza, yesterday we were talking

15     about your relationship with XVideos, that entity.

16             Do you recall that?

17        A.   Yes.

18        Q.   Did your relationship with them have any

19     impact on your ability to get Corbin Fisher

20     content taken down from XVideos?

21        A.   Yes, it did.

22        Q.   How so?

23        A.   Well, it had a positive effect.

24        Q.   Can you explain why?

25        A.   XVideos has a -- like most tube sites,
```

All-American Court Reporters (702) 240-4393
www.aacrlv.com

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 278

```
 1    has -- well, not all.  Like some tube sites, has a
 2    takedown request form.  So you -- if you find a
 3    video of yours that a user has uploaded to it and
 4    you don't want it there, you can place the link in
 5    that form, you send it to them, and it will go
 6    into a cue, and they will get to it when they get
 7    to it.
 8              For example, I think if you -- at least
 9    until recently, if you sent one to You Tube, it
10    would take at least a couple of days to come down.
11    Some providers take weeks to do it.
12              XVideos is probably not one of the
13    fastest ones.  But I would send any Corbin Fisher
14    links directly to XVideos CEO, and he would have
15    them removed immediately.
16      Q.    Was that because of the relationship you
17    built with them when you represented them?
18      A.    Yes.  I called that in as a necessary
19    favor.
20      Q.    Is that ability something you concealed
21    from Jason?
22      A.    No.
23      Q.    Would you say you bragged about your
24    ability to do that?
25      A.    Yeah, that is one of my faults.  But,
```

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 279

```
 1   yes, of course.  I wanted to make sure that
 2   everybody knew how valuable I was to them, so I
 3   would brag about that.
 4          In addition, they gave Corbin Fisher a
 5   concession that they, to the best of my knowledge,
 6   have given to no one else, which is they agreed to
 7   do keyword suppression.  No tube site is required
 8   to do this.  It doesn't -- it doesn't -- it isn't
 9   required under the Copyright Act, it isn't
10   required under any defense, but I told them, Put
11   in a term that if anybody uploads a video that
12   even has the word Corbin Fisher in it, I want it
13   either reviewed or suppressed, and they did that,
14   as well.
15       Q.   Let's turn to PornGuardian.  Now, you had
16   had a relationship with PornGuardian prior to the
17   Oron case, correct?
18       A.   Correct.
19       Q.   Did that bring any benefits for
20   Excelsior?
21       A.   Huge benefits.
22       Q.   Such as?
23       A.   Well, such as they -- as far as they told
24   me, they were giving us a big discount on takedown
25   services.  Prior to that, and I'd say concurrent
```

Case 15-01193-abl   Doc 144-2   Entered 04/07/17 10:04:43   Page 84 of 239

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page  280

```
 1   with that, Corbin Fisher had a program in-house
 2   where they took down links.  They would send these
 3   DMCA takedowns to various sources where they found
 4   their content that they didn't want it, and Jason
 5   generally paid people a dollar per link to take
 6   the links down.  You can imagine thousands a month
 7   might add up.
 8          PornGuardian did it for a flat fee, I
 9   think of -- like I think it was about $800 per
10   month.  And they took thousands and thousands
11   down.  In fact, so many that at one point Jason
12   had some doubts as to how they could possibly be
13   doing that without inflating the numbers.  That
14   was one benefit.
15      Q.   Did you ever brag about how you were able
16   to do this for Excelsior because of your
17   relationship with PornGuardian?
18      A.   I don't know if I bragged about that.  I
19   mean, it was such a minor thing.  We got just a
20   discount on their monthly rate.
21      Q.   Was there something else that you did
22   brag about about the relationship with
23   PornGuardian?
24      A.   Yes.
25      Q.   What was that?
```

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 281

1      A.   My greatest value that my friendship with

2   them came along with is the fact that they didn't

3   just do all this takedown for Corbin Fisher.  They

4   did it for pretty much every gay company in the

5   adult space.  I don't -- I don't think there was

6   any company they didn't have in their portfolio.

7           So by looking at their data and having

8   access to all their back-end data, I could do

9   research on so many different Websites and so many

10  different piracy sources cross company.  So, for

11  example, there might be a company that just

12  focused on us, just focused on Corbin Fisher, or

13  there might be a -- you know, a pirate operation

14  that hits us very little, but has a huge amount of

15  piracy for other Websites.

16          So you have kind of a myopic research

17  view if you didn't see all of that.  PornGuardian

18  gave me, I would say, probably hundreds of

19  thousands of dollars worth of information that

20  they would normally charge that amount for, either

21  for free or a steeply discounted rate.

22      Q.   So was that something you bragged about?

23      A.   Oh, yeah.

24      Q.   Is it fair to say that when your

25  relationships with companies through your legal

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 282

1    work for them gave the company benefits, that you

2    went out of your way to report that?

3         A.    I would be very proud of it and try to

4    drop -- you know, I would make an effort to drop

5    information about it, because I think it

6    demonstrated my value to the company.

7         Q.    So on PornGuardian, you testified

8    yesterday that -- well, there was a little

9    confusion in your testimony.  You clarified later.

10             Tell us how, very briefly again, clarify

11    whether -- what PornGuardian's role was in getting

12    the Oron case?

13        A.    Oh, yeah.  I think yesterday I did clear

14    up that.  I mixed up Megaupload and Oron since

15    those cases were so markedly similar.

16        Q.    So just to be perfectly clear, did you

17    get the Oron -- the information about Oron as a

18    result of representing PornGuardian?

19        A.    I don't remember whether it was

20    PornGuardian or AEBN that brought it to me first.

21    I do know that one of them -- I think AEBN put

22    them on my radar, and then PornGuardian put them

23    on my -- elevated them on my list of targets

24    because I got a call from them that Oron had

25    threatened a lawsuit against PornGuardian.  I want

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page  283

```
 1    to say it was for defamation for them making
 2    statements that Oron was involved in rampant
 3    piracy and had -- and had -- they possibly
 4    detected child pornography on their servers.
 5        Q.   So how did that impact your ability to go
 6    after Oron?
 7        A.   Well, like I said, in my matrix of
 8    whether I was going to say a target was a good one
 9    or not, you wanted to have traceable assets, you
10    wanted to have some point of contact in the United
11    States.  The fact that they had retained counsel
12    in the United States made me think that he's got
13    to be getting paid somehow, so there must be some
14    money to trace.
15            And, additionally, I thought if he did
16    actually follow through and file that lawsuit,
17    well, then we would at least be able to try to --
18    try to intervene on that lawsuit somehow and
19    remove any argument over jurisdiction.
20            You know, 12 -- 12(b)(2) arguments were
21    usually how these cases lived and died.  So if
22    they were to waive the issue of 12(b)(2), that
23    would make them a great target.
24        Q.   Mr. Randazza, did you for a time
25    represent both PornGuardian and Liberty in claims
```

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 284

```
 1   against Oron?

 2       A.   Yes.  Initially I did.

 3       Q.   Did that come to a stop?

 4       A.   It did.

 5       Q.   Who stopped it?

 6       A.   I did.

 7       Q.   Why?

 8       A.   Because what I did was I approached

 9   Lieberman and told him that, you know, now that I

10   had his attention and his client's attention, I

11   wanted a settlement for Corbin Fisher.  He was

12   tying the two together, Corbin Fisher and

13   PornGuardian.  I don't even know how I got him to

14   agree that PornGuardian should get paid, when they

15   were a potential defendant, but he apparently got

16   scared of something.

17           And I believe it was probably because

18   Porn -- you know, I explained PornGuardian's

19   relationship with all these other companies, so if

20   you didn't get PornGuardian out of the way,

21   perhaps all these other companies would come after

22   him, as well.

23           I got -- he got to a point where he was

24   going to give $550,000 to Corbin Fisher and

25   $50,000 to PornGuardian.  PornGuardian wanted more
```

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 285

```
 1    money.  And seeing that that was even

 2    potentially -- that I was even going to have to

 3    spend one phone call arguing with Lieberman about

 4    raising that money, which could hold back the

 5    rapid payment to Corbin Fisher, I immediately told

 6    PornGuardian I couldn't represent them anymore and

 7    handed the matter to their other attorney,

 8    Mr. Aaronson.

 9        Q.   Now, was there a time when Oron's counsel

10    suggested that it was going to be a package deal

11    that if Oron -- they would only sign the 550 for

12    Liberty if also PornGuardian signed off on 50?

13        A.   Yes.

14        Q.   But after you stopped representing

15    PornGuardian, did Oron, in fact, sign the term

16    sheet that was eventually enforced?

17        A.   Yes.

18        Q.   Do you know whether or not they reached a

19    settlement with PornGuardian?

20        A.   I have no knowledge of that.  I don't

21    know one way or the other.

22        Q.   All right.  One of the Respondents'

23    claims regarding conflict is from a company called

24    Kink.

25             Are you familiar with that company?
```

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

```
 1      A.   I'm very familiar with them.
 2      Q.   For how long have you represented them?
 3      A.    When it began, I'm not sure, but it was
 4  when I was an associate at Weston, Garrou, so it
 5  may have been as early as 2005, 2006.
 6      Q.    Did you ever represent them in any highly
 7  publicized matters?
 8      A.   Yes, I did.
 9      Q.    What was the most highly publicized
10  matter, briefly?
11      A.    It was the affectionately known
12  "fuck brief" matter.
13      Q.   What was that?
14      A.    That was a United States patent and
15  trademark office case in which my client, I think
16  they did it through another attorney, they tried
17  to file a US PTO registration for one of their
18  Website's trademarks, which was
19  fuckingmachines.com.  It was rejected under
20  Section 2(a) of the Trademark Act, which is the
21  portion of the Trademark Act that provides that
22  immoral or scandalous trademarks cannot be
23  registered.
24          This happens to be a pet area of mine.  I
25  think it's -- I think it's unconstitutional.  I'd
```

000330

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

1    actually written my LLM thesis on it.

2            But we did a really fun brief that went

3    through the reasons why it's unconstitutional, but

4    also why the word "fuck" should no longer be

5    considered to be immoral and scandalous in today's

6    society, using all kinds of popular culture

7    references, quotes from politicians you know, how

8    it's used as not just expletive, but, you know,

9    you can use a whole sentence that says it, one of

10   the quotes was from George Carlin.

11       Q.   So were you representing Kink in that?

12       A.   Oh, yes.

13       Q.   How would you characterize the amount of

14   publicity it got?

15       A.   Huge.  I mean, international publicity.

16       Q.   All right.  Let's turn to another claim

17   that the Respondents have?

18       A.   Yes.

19       Q.   Respondents made some claims about your

20   relationship with Mr. -- a Mr. Grady.

21       A.   James Grady, yes.

22       Q.   Who provided you with information in the

23   Oron case?

24       A.   Yes.

25       Q.   Do you recall how he came to your

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 288

```
 1    attention in connection with the Oron case?
 2        A.   Well, Jim had a -- I had been giving Jim
 3    legal advice off and on for years.  He was
 4    generally represented by another attorney in
 5    Colorado.  But James would -- they would call me a
 6    lot and ask me for second opinions on things.  I
 7    didn't really have that formal of a relationship
 8    with him.
 9            But he called me at some point after the
10    Oron matter started with -- telling me that he had
11    a source that had a lot of information about Oron.
12        Q.   And did you follow up with him about
13    the -- how that source was getting the
14    information?
15        A.   I did.
16        Q.   Did you ever ask him about whether or not
17    it was obtained legally or illegally?
18        A.   I did, because I wanted to make sure that
19    I could use it as evidence.
20        Q.   Would you please take a look at
21    Exhibit 399?  Let me know when you are there,
22    please.
23        A.   I'm there.
24        Q.   Do you recognize this e-mail exchange?
25        A.   Of course.
```

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

1      Q.   Is this with Mr. Grady?

2      A.   Yes.

3      Q.   And were you contemplating using him as a

4    witness in hearings in Oron?

5      A.   Yes.

6      Q.   What was going to be his purpose?

7      A.   Well, he was going to at least -- he was

8    going to give me a report on everything he knew

9    about Oron in that case.

10      Q.   Were you contemplating -- for what

11   purpose in the case?  What were you going to try

12   to use him try to convince the court to do?

13      A.   I think this was to get my injunction.

14      Q.   Was that the injunction to freeze the

15   PayPal accounts?

16      A.   Yes.

17      Q.   All right.  Would you look at the part

18   from you to him that starts with, Okay, I need?

19      A.   Yes.

20      Q.   Would you read Number 2, please?

21      A.   Yes.

22      Q.   So this says you have to consider what

23   happens if the judge wants to know where you got

24   your information?

25      A.   Yep.

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

1      Q.   As far as I know, it's lawfully obtained.

2   And you say, Hacker, problematic.

3           Were you trying to convey to him what to

4   say?

5      A.   No.  I wanted to make sure if I'm going

6   to fly this guy down, put him on the stand, I'm

7   not going to put him there if he got this

8   information improperly.

9           So I was -- he had already told me it was

10  legal.  He had already told me -- he didn't tell

11  me where.  He didn't want to tell me who he had

12  gotten it from, but I wanted to impress upon him

13  that, look, on July 3rd, you are going to be

14  sitting in a Federal Courthouse, so if you are

15  telling me one thing, you better not tell me

16  something different when you are my witness.

17     Q.   Did you get him to send materials to you

18  that he had gathered?

19     A.   I asked him to send them to Jason

20  directly.

21     Q.   And did you ask him to send them in a

22  particular way?

23     A.   Yes.  Because I didn't know if they were

24  going to come from him or from his source, and

25  I -- he seemed very concerned about being targeted

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

1    for being the source, so I told him to have them

2    sent to Jason.  I didn't -- and if they are coming

3    directly from the source, I didn't want to know

4    that person's name.  He can testify about that

5    later.

6        Q.   So how did you have him ask -- did you

7    ask him to send them anonymously?

8        A.   Yeah.  I told him to put them in a box

9    and have them sent to Jason's PO Box.

10       Q.   Now, when -- did Mr. Gibson receive them?

11       A.   Yes.

12       Q.   Did you have a conversation with

13   Mr. Gibson about them?

14       A.   I told him that a package was going to be

15   coming for him that would be very useful in the

16   Oron case, and I explained to him where they were

17   coming from.

18       Q.   What was his reaction?

19       A.   Elation, to put it lightly.

20       Q.   Did you have an understanding of where

21   these documents actually came from?

22       A.   To this day, I do not know where he got

23   them.  All I know is that he was getting them from

24   somebody else.

25       Q.   Did you have any theories at the time?

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

```
 1        A.    Well, when he first brought them to me,

 2   they seemed like so -- it was probably somebody

 3   who was inside Oron.  My theory to this day is --

 4   I'm guessing, given the way things shook out, that

 5   it might have been from a guy by the name of Maxim

 6   Bochenko, but I'm just guessing.

 7        Q.    Did that person ever have to be part of

 8   any Oron settlement?

 9        A.    Yes.

10        Q.    Did you obtain right to sue letters in

11   this case?

12        A.    Yes.

13        Q.    Did you obtain a closed case letter from

14   the Nevada NERC?

15        A.    I did.

16        Q.    Did you get an EEOC right to sue letter?

17        A.    I did.

18        Q.    How about California?

19        A.    I did.

20        Q.    Let's talk in our final category about

21   your claims for damages.

22        A.    Yes.

23        Q.    Now, what are you claiming in connection

24   with the Oron settlement?

25        A.    The 25 percent of the proceeds, which is
```

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

1    at least $137,500 as 25 percent of the $550,000.

2        Q.   Are you claiming the 25,000 that you

3    advanced?

4        A.   I am claiming those as money I advanced

5    as an employee.

6        Q.   Would you take a look -- and, Henry,

7    could you get it -- at Exhibit 347?

8            ARBITRATOR HABERFELD:  That's in addition

9    to the 25 percent?

10           MR. WHITE:  Yes, Your Honor.

11   BY MR. WHITE:

12       Q.   Are you claiming your severance under the

13   contract?

14       A.   I am.

15       Q.   Would you please turn to Exhibit 347?

16           MR. WHITEHEAD:  And that should be before

17   Your Honor.  But if not, let me know.

18           THE WITNESS:  Okay.  I got it.

19   BY MR. WHITE:

20       Q.   347 is your Amended Claim.

21           Would you please turn to Page 7?

22           ARBITRATOR HABERFELD:  I don't have it

23   yet, please.

24           MR. WHITE:  I beg your pardon, Your

25   Honor.

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

```
 1              ARBITRATOR HABERFELD:  One moment,

 2    please.

 3              THE WITNESS:  347 doesn't appear to be --

 4              MR. WHITE:  My apologies.  Let me see --

 5              ARBITRATOR HABERFELD:  One moment.  We're

 6    getting it.

 7              THE WITNESS:  We've got the wrong number

 8    anyway.

 9              MR. WHITE:  Yes.  I apologize.  I do have

10    the wrong number.  It should be 302.

11              My apologies, Your Honor.

12              THE WITNESS:  Got it.

13              ARBITRATOR HABERFELD:  Proceed.

14    BY MR. WHITE:

15       Q.   That's your amended claim in this matter,

16    correct?

17       A.   Yes.

18       Q.   Would you please turn to Paragraph 75,

19    which is on page --

20       A.   I got it.  Page 18.

21       Q.   Page 18.

22       A.   Yes.  I see it.

23       Q.   How were you paid, daily or weekly?

24       A.   Weekly.

25       Q.   So when you were -- when Corbin Fisher
```

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 295

```
 1    purported to accept what you sent as a

 2    resignation, did they pay you for that full week?

 3         A.    No.

 4         Q.    How much did they pay you?

 5         A.    For four days that week.

 6         Q.    And is that reflected here in your claim?

 7         A.    It is.

 8         Q.    Turning to the next page, are you

 9    claiming a five percent wage increase as provided

10    in the contract starting on July 1st --

11         A.    Yes.

12         Q.    -- 2012?

13         A.    Yes.

14         Q.    Did you get that wage increase from the

15    time between July 1st and the time that you

16    ended -- that the employment at Excelsior ended?

17         A.    No.

18         Q.    Are you claiming unpaid vacation time?

19    Did they pay you all your unpaid vacation when you

20    were -- when the employment ended?

21         A.    To the best of my memory, no.

22         Q.    And then if you please turn to Page 20?

23         A.    Yes.

24         Q.    And I would like you to look at

25    Subsections D and E.
```

Arbitration Proceedings  ~ Volume II ~  February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page  296

1      A.    Okay.

2      Q.    Excuse me.  C, D, and E.

3            Were you aware of amounts of settlements

4      that had been reached but had not yet been

5      received by Excelsior as of August 29th, 2012?

6      A.    Yes.

7      Q.    And, for instance, this refers to

8      settlements from Excubitor USA?

9      A.    Uh-huh.

10     Q.    Did Excelsior pay you based on the gross

11     rather than the net on that?

12     A.    No.  They paid me on the net.

13     Q.    Were you aware that settlements had been

14     reached, but not yet received in the matter in

15     which Mr. Rushie in Pennsylvania represented you?

16     A.    Yes.

17     Q.    Is that the $14,000 in Subparagraph D?

18     A.    Yes.  Apparently Rushie disbursed that

19     money to them, but I didn't get paid my cut.

20           ARBITRATOR HABERFELD:  When you say not

21     paid your cut, not paid at all, or paid net as

22     opposed to gross?

23           THE WITNESS:  No, nothing at all.

24           ARBITRATOR HABERFELD:  Okay.  Thank you.

25     ///

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 297

```
 1   BY MR. WHITE:
 2       Q.   Previously you had made a claim for
 3   $1,384.38 in expenses, and you've withdrawn that,
 4   correct?
 5       A.   I believe we were shown documentation
 6   that that did get paid to me, so, yes.
 7       Q.   And are you also seeking damages for your
 8   termination after the incidents of the film and
 9   the incident in the backseat of your car?
10       A.   Yes.
11            MR. WHITE:  Thank you, Mr. Randazza.
12            Your Honor, I don't have anything else.
13            ARBITRATOR HABERFELD:  Ms. Krincek, would
14   you like to begin cross now, or would you like a
15   short break?
16            MS. KRINCEK:  I can start now.  I think
17   it's a little early for a break, for the morning
18   break anyways.
19            ARBITRATOR HABERFELD:  Well, whatever
20   works best for you.
21            MS. KRINCEK:  I'm ready to go.
22            ARBITRATOR HABERFELD:  Okay.  Before you
23   start, I'd just like to remind Mr. Randazza about
24   the brief conversation we had about the
25   responsibilities of your being a witness on
```

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 298

```
 1   cross-examination.
 2           Anything you want to have me refresh on
 3   or ask me any questions about before we start?
 4           THE WITNESS:  No, Your Honor.
 5           ARBITRATOR HABERFELD:  Okay.
 6           MR. WHITE:  Your Honor, one thing is that
 7   obviously if Mr. Randazza were refreshed in his
 8   memory from something during his cross,
 9   Ms. Krincek would be entitled to see that.
10           I've instructed him, if he has things he
11   wants to say to me, to put it on a notepad, and
12   those I construe as attorney/client
13   communications.
14           ARBITRATOR HABERFELD:  We'll see how that
15   goes.
16           MS. KRINCEK:  Okay.  I'm not sure I
17   follow that.
18           ARBITRATOR HABERFELD:  I'm not sure I
19   did, either.  So let's see how that goes.
20                   CROSS-EXAMINATION
21   BY MS. KRINCEK:
22       Q.   Mr. Randazza, near the start of the day
23   yesterday you testified about the beginning of
24   your employment relationship with Excelsior and
25   the origin of the employment agreement that was
```

000342

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

```
 1    executed between yourself and Excelsior.

 2              Do you recall giving that testimony?

 3        A.    I do.

 4        Q.    Can you turn to -- in Complainant's

 5    exhibit binders, Exhibit Number 1?

 6        A.    I am there.

 7        Q.    And, again, this is the employment

 8    agreement you and Excelsior entered, correct?

 9        A.    Correct.

10        Q.    I want to make sure we have a clear

11    understanding of your testimony.  Is it your

12    testimony that the company, and not you, drafted

13    this employment agreement?

14        A.    No, that wasn't my testimony.

15        Q.    So who drafted this employment agreement?

16        A.    It was jointly drafted.

17        Q.    By whom?

18        A.    The company and myself, with the

19    assistance of counsel.

20        Q.    And who sent the first draft of this

21    employment agreement?

22        A.    The first draft of any employment

23    agreement I know came from Excelsior.

24        Q.    Did it have --

25        A.    It came from Mr. Gibson.
```

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

```
 1        Q.    Excuse me?

 2        A.    It came from Mr. Gibson.

 3        Q.    And was it a multipage document like

 4   this?

 5        A.    I don't recall the -- what it looked like

 6   when it first came to me.

 7        Q.    Was it entitled Contract of Employment

 8   for Corporate General Counsel?

 9        A.    I don't recall the exact title on it, but

10   if you have something to refresh my memory, I'm

11   sure that could -- that could help.

12        Q.    Did it have a severance provision in it;

13   do you recall?

14        A.    I do not specifically recall the original

15   draft having a severance provision.

16        Q.    Now, you testified about some specific

17   matters, like one involving someone named Breck

18   Orshal and somebody named Justin Krueger.  And I

19   believe you were trying to make the point that

20   Mr. Gibson sometimes took aggressive positions in

21   legal disputes.

22              Was that the point you were trying to

23   make?

24        A.    Yes.

25        Q.    Would you agree that you sometimes take
```

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 301

1  aggressive positions in legal disputes?

2      A.    I took the position that my client wanted

3  me to take.  In fact, I often took very

4  conciliatory positions and recommended such

5  positions.

6      Q.    You don't consider yourself an aggressive

7  litigator?

8      A.    It -- when it serves my client's

9  interest, and -- or when my client demands me to

10 do so, despite it being against their best

11 interest, I am.

12         But I'm actually more proud of the cases

13 where I'm able to do things quickly and

14 efficiently and in a more conciliatory fashion.

15     Q.    You testified early yesterday that you

16 had business cards in the name of Excelsior Media,

17 business cards in the name of Liberty Media, and

18 business cards in the name of Corbin Fisher.

19         Are you sure you had Liberty Media

20 business cards?

21     A.    No, I'm not.  I think I expressed a

22 little bit of cloudiness on that, but I do know

23 that I had Corbin Fisher ones and Excelsior ones.

24     Q.    You worked for Excelsior from June of

25 2009 until August 29th, 2012, correct?

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 302

```
 1       A.    That is correct.

 2       Q.    And you had met Mr. Gibson and done work

 3   for Excelsior prior to commencing employment with

 4   Excelsior, correct?

 5       A.    Excelsior, Liberty, Becar Management.  I

 6   would really say all of the Corbin Fisher related

 7   companies.

 8       Q.    You did work for them as outside counsel?

 9       A.    I did.

10             ARBITRATOR HABERFELD:  One moment,

11   please.  Let me just check with the court

12   reporter.

13             Are you getting all of this easily?

14             THE COURT REPORTER:  Yes.

15             ARBITRATOR HABERFELD:  Okay.  Because a

16   lot of what you are doing is you are looking down

17   at your notes, and you are going at a certain

18   quick pace, and so I wanted to make sure that the

19   court reporter is having no difficulty.

20             MS. KRINCEK:  Okay.

21             MR. WHITE:  Your Honor, may I also ask my

22   client to raise his head when he responds to

23   questions?

24             THE WITNESS:  Sorry.

25             MR. WHITE:  Thank you.
```

000346

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 303

```
 1   BY MS. KRINCEK:

 2       Q.    You agree that you had a close

 3   relationship with Jason Gibson during the time

 4   that you worked at Excelsior; is that fair?

 5       A.    That is fair.

 6       Q.    You regularly socialized with Mr. Gibson

 7   outside of work, correct?

 8       A.    I did.

 9       Q.    You went out to dinner with him

10   frequently?

11       A.    I did.

12       Q.    Mr. Gibson socialized with your wife and

13   children?

14       A.    He did.

15       Q.    You mentioned on direct examination that

16   your kids even referred to him as uncle?

17       A.    Natalia did.  Antonio wasn't verbal at

18   that point.

19       Q.    You considered the employees at Excelsior

20   Media to be your family, correct?

21       A.    I did.

22       Q.    And that included Mr. Gibson?

23       A.    At most of the time I was there, yes.

24       Q.    Do you recall sending Mr. Gibson a video

25   of your wife doing what you referred to as pole
```

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 304

```
 1    dancing for minivan money?

 2        A.   Yes.

 3        Q.   Can I have you turn to Exhibit 318 in our

 4    binders?

 5        A.   Okay.  I see it and I've reviewed it.

 6        Q.   Mr. Randazza, this is an e-mail that you

 7    sent to Jason Gibson on July 8th of 2011, correct?

 8        A.   That is correct.

 9        Q.   So you would have been working at

10    Excelsior for about two years at the time of this

11    e-mail?

12        A.   Almost exactly two years.

13        Q.   And you expressed to Mr. Gibson how

14    grateful you were for everything he does for us.

15             Do you see that?

16        A.   I do.

17        Q.   And "us" refers to you and your family,

18    correct?

19        A.   Yes, it does.

20        Q.   And Mr. Gibson took you -- I think you

21    testified about this on direct, but he took you to

22    a place called Medi the day before, which is some

23    type of weight loss center, correct?

24        A.   Yes.

25        Q.   And you were sincere when you sent this
```

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 305

```
 1    e-mail, correct?
 2        A.    Yes.
 3        Q.    Can you turn to Exhibit 319?
 4        A.    Yes.
 5        Q.    This is an e-mail that you sent to
 6    Mr. Gibson on July 25th, so later that same month
 7    in 2011, correct?
 8        A.    Yes.
 9        Q.    And you again thanked Mr. Gibson for
10    getting you to go to Medi, correct?
11        A.    I did.
12        Q.    And your family in Massachusetts was
13    moved by the fact that Mr. Gibson had taken care
14    of you by doing that, correct?
15        A.    Yes.  They thought it was very nice of
16    him.
17        Q.    You enjoyed a good personal relationship
18    with Mr. Gibson at this time; is that fair?
19        A.    At that time, I did, yes.
20        Q.    During your employment, you went on a
21    company trip with Jason and others to Costa Rica,
22    correct?
23        A.    Yes.
24        Q.    Can I have you turn to Exhibit 335?
25        A.    I'm there.
```

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 306

```
 1       Q.    Exhibit 335, this is a series of
 2  photographs of you taken on that trip to
 3  Costa Rica; is that correct?
 4       A.    That is correct.
 5       Q.    And you're naked in these photos,
 6  correct?
 7       A.    That is correct.
 8       Q.    And Jason and others were present when
 9  these photos were taken, correct?
10       A.    Correct.
11            MS. KRINCEK:  If we could turn on --
12  could you turn on the projector?
13            ARBITRATOR HABERFELD:  Is this an
14  exhibit?
15            MS. KRINCEK:  Yes, it is.
16               (Video played.)
17  BY MS. KRINCEK:
18       Q.    Marc, that's video of you from that trip
19  to Costa Rica, correct?
20       A.    Yes, it is.
21       Q.    Okay.
22            ARBITRATOR HABERFELD:  What exhibit
23  number is that that you just set up on the screen?
24            MS. KRINCEK:  Yes.  That is Exhibit
25  Number 427.
```

Arbitration Proceedings  ~ Volume II ~  February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page  307

```
 1   BY MS. KRINCEK:

 2       Q.   And Jason and others were present during

 3   the filming of that video, correct?

 4       A.   I believe so.

 5       Q.   Next I would like to play a couple of

 6   audio recordings.  The first one is Exhibit 428.

 7            MR. WHITE:  Your Honor, may I inquire of

 8   counsel briefly?

 9            ARBITRATOR HABERFELD:  Why don't you

10   inquire of me, and then we'll see.

11            MR. WHITE:  My question is whether the

12   audio exhibits are going to be the ones of the

13   caricatures of Rodney the Redneck Racist or Samir.

14   If they are, I would object.

15            Ms. Krincek objected to me getting into

16   racial issues, so I don't think they're anymore

17   relevant based on her own objection.

18            MS. KRINCEK:  Well, the purpose of my

19   audio and video exhibits, Your Honor, is to

20   establish the nature of the relationship between

21   Mr. Randazza and Mr. Gibson, and kind of the

22   boundaries that they had -- or lack of boundaries

23   thereof in their interactions --

24            ARBITRATOR HABERFELD:  I think I

25   understand.
```

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 308

```
 1              MS. KRINCEK:  -- with each other.
 2              ARBITRATOR HABERFELD:  I think I'm going
 3    to have to take it instance by instance --
 4              MR. WHITE:  Yes, Your Honor.
 5              ARBITRATOR HABERFELD:  -- if there is an
 6    objection.  But generally, I believe, I will
 7    probably overrule them, although I'm waiting to
 8    hear what the specific objection is and the
 9    specific instance.
10              MR. WHITE:  Yes, Your Honor.
11              (Audio played.)
12    BY MS. KRINCEK:
13       Q.   I won't play the whole thing,
14    Mr. Randazza, but that's a message that you left
15    for Jason Gibson, correct?
16       A.   Yes.
17       Q.   And the next one.
18       A.   Jason loved those.
19       Q.   You two had the kind of relationship
20    where you could share off-color, politically
21    incorrect, do things with each other, to each
22    other that some people might find offensive, but
23    you two were generally on the harder end of the
24    side of things.
25              Do you agree with that?
```

000352

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

1      A.    No, I would say that's mischaracterizing.

2      Q.    But you were comfortable leaving these

3   kind of sexually oriented, potentially racist

4   recordings for him?

5      A.    I don't agree with your characterization.

6           MS. KRINCEK:  This next recording is

7   Exhibit 428.

8           For the record, Your Honor --

9           ARBITRATOR HABERFELD:  What did you just

10   play?  I thought that was 428.

11           MS. KRINCEK:  I'm sorry.  They are both

12   on 428.

13           ARBITRATOR HABERFELD:  Okay.  Are they

14   separated by A or B, or are they just run on, or

15   what?  What do you want to tell me about that, for

16   the record?

17           MS. KRINCEK:  Yeah.  On 428, it's a disc,

18   and so there is two separate audio files on there,

19   so it appears like it is on the screen right here,

20   and that's the same way it is on the CD that's in

21   your binder.

22           ARBITRATOR HABERFELD:  Okay.  Are there

23   transcriptions?  I didn't -- I didn't open up.

24   Are there transcriptions, or are they just the

25   CDs, or how are they presented in evidence?

Arbitration Proceedings  ~ Volume II ~  February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page  310

```
 1              MS. KRINCEK:  They are on CDs in your

 2    binder.

 3              ARBITRATOR HABERFELD:  Okay.  Very good.

 4              (Audio played.)

 5    BY MS. KRINCEK:

 6       Q.   Mr. Randazza, that's also a recording

 7    that was made, and Jason Gibson was present when

 8    you made that recording or when you recorded it,

 9    correct?

10       A.   Yes.  That was a character Rob the

11    Amazing Racist.

12       Q.   Thank you.

13       A.   Based on hate mail the company received.

14       Q.   There is no question pending, but thank

15    you.

16              ARBITRATOR HABERFELD:  Is there a date

17    for the recordings that's at all material here for

18    when these were made?

19              MS. KRINCEK:  I don't have the date of

20    the recordings, other than it was during the

21    course of Mr. Randazza's employment.

22              ARBITRATOR HABERFELD:  Okay.

23              THE WITNESS:  Your Honor, I can recall

24    approximately.

25              ARBITRATOR HABERFELD:  That's fine.
```

Arbitration Proceedings  ~ Volume II ~  February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page  311

```
 1    There is no question.  I'm just speaking with

 2    Ms. Krincek.

 3    BY MS. KRINCEK:

 4        Q.   You're alleging in this arbitration that

 5    Mr. Gibson harassed you because you are a straight

 6    male; is that correct?

 7        A.   Mr. Gibson's aggression towards people

 8    was usually based on whatever immutable

 9    characteristics they had that he could use against

10    them.

11        Q.   That wasn't my question.  You have a

12    claim for harassment in violation of state and

13    Federal law?

14        A.   Correct.

15        Q.   And that claim alleges that Mr. Gibson

16    harassed you because you are a straight male; is

17    that your allegation?

18        A.   As a straight male, yes.

19        Q.   Is it fair to say that until 2012, you

20    had no suspicions that Jason did not supposedly

21    like the fact that you were a straight male?

22        A.   I wouldn't be able to testify that I had

23    no suspicions, but there was never any -- that I

24    can recall, any negative action toward me.

25        Q.   Right.  You've identified two instances
```

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 312

```
 1    to support your claim of harassment; the first

 2    incident was the filming in your office in

 3    April 2012, correct?

 4        A.   That is correct.

 5        Q.   And the second incident was the car ride

 6    home from the Lake Mead company outing on

 7    August 9th, 2012, correct?

 8        A.   Correct.

 9        Q.   You sent Mr. Gibson videos of your kids

10    from time to time, correct?

11        A.   I did.

12        Q.   And you did that because you liked to

13    send him videos of your kids, correct?

14        A.   Yes, I would often.  I was a proud dad,

15    so if my kids did something cute, I would send

16    them to most everybody I knew.

17        Q.   Even though you're now alleging

18    Mr. Gibson had animus towards you because you are

19    a married straight man, isn't it true that you,

20    your wife, and your kids stayed with Mr. Gibson at

21    his home that he shared with his partner for

22    extended periods of time?

23        A.   That is true.

24        Q.   Isn't it true that until you presented

25    Mr. Gibson with the settlement agreement with Oron
```

Arbitration Proceedings  ~ Volume II ~  February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page  313

```
 1   for his review on August 13th, 2012 that called

 2   for the $75,000 bribe to you or your firm, that

 3   you and Mr. Gibson were getting along fine?

 4        A.   That is not true at all.

 5        Q.   Isn't it true that up until August 5th,

 6   2012, you were reporting that you liked working

 7   for Mr. Gibson?

 8        A.   I may have.  I really don't recall what

 9   you are referring to.

10        Q.   Can you turn to Exhibit 322?

11        A.   Yeah.  Here we go.

12        Q.   Mr. Randazza, this is an e-mail at the

13   top e-mail on the first page that you sent to

14   Mr. Gibson on August 5th, 2012, correct?

15        A.   Yes.

16        Q.   Can you read for me the last two

17   sentences of the first paragraph of your e-mail to

18   Mr. Gibson?

19        A.   In the good news department, that?  Is

20   that where you want me to be in?

21        Q.   The first paragraph --

22        A.   Oh, I'm sorry.

23        Q.   -- last two sentences.

24        A.   I like working for you.  I don't want to

25   see the business sold to someone who I will not
```

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 314

```
 1   get along with as well as I get along with you
 2   guys.
 3       Q.   Thank you.  And when you say in that
 4   e-mail, I like working for you, you are referring
 5   to Mr. Gibson, correct?
 6       A.   I'm -- well, I think I'm referring to
 7   plural, so Mr. Gibson, Mr. Lowderman, you guys,
 8   but, yes.
 9       Q.   You are referring to --
10       A.   Jason is included in that -- in that
11   plural.
12       Q.   You don't dispute that by early
13   August 2012 you were still regularly socializing
14   with Mr. Gibson outside of work, do you?
15       A.   I probably did.
16       Q.   I think you testified earlier this
17   morning that you filed a Charge of Discrimination
18   with the Nevada Equal Rights Commission and EEOC
19   against the company, correct?
20       A.   I did.
21       Q.   Can you turn to Exhibit 310?
22       A.   I can.
23       Q.   Is this a copy of the Charge of
24   Discrimination that you filed against the company?
25       A.   Yes, it is.
```

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 315

1      Q.   And on the bottom of each of the three
2    pages of the Charge, you signed each page under
3    penalty of perjury, correct?
4      A.   Correct.
5      Q.   And you filed this Charge on January 30th
6    of 2013, correct?
7      A.   Correct.
8      Q.   And since you were signing the Charge
9    under penalty of perjury, you were careful to make
10   sure the statements you were making were true and
11   accurate; is that fair?
12     A.   I would say some of them I was a little
13   careless in reviewing.  An associate had prepared
14   this for me.
15     Q.   Who prepared the Charge of Discrimination
16   for you?
17     A.   Jay DeVoy wrote the original draft of it.
18     Q.   And then you reviewed it, and you signed
19   it, correct?
20     A.   Correct.  He didn't seem to have all the
21   dates correct.
22     Q.   But you signed it nonetheless, correct?
23     A.   Nonetheless, I signed it.
24     Q.   On Page 2 of the Charge, Mr. Randazza,
25   can you look at the section titled Sexual

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 316

1    Harassment?

2       A.   Yes.

3       Q.   You stated under oath in the first

4    sentence under that topic, On or about April 1,

5    2012, I received a text message from Mr. Gibson

6    indicating that he was filming an adult sex scene

7    in my office.

8       A.   Yes.

9       Q.   In the same text message, he made the

10   comment, quote, Your wife's bush is also in the

11   scene --

12      A.   Correct.

13      Q.   -- end quote.  And that was referencing a

14   painting depicting George Bush my wife had given

15   me to hang in my office.  Although I was

16   embarrassed and uncomfortable with the nature of

17   the text message, I initially believed it was sent

18   in jest.

19      A.   Yes.

20      Q.   Now, we looked at the texts you exchanged

21   with Mr. Gibson yesterday.  For the record, they

22   were Complainant's Exhibit 27.

23      A.   Yes.

24      Q.   Can you go back to those now?  And if you

25   would like to stay in the same binder, you can

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 317

1    look at 330, which is an identical exhibit we

2    have.

3        A.    Okay.

4        Q.    On the bottom of the first page of 330 --

5        A.    Yes.

6        Q.    -- Mr. Gibson texted you and said, I'm

7    shooting gay porn on your office desk and couch,

8    correct?

9        A.    Yes.

10           ARBITRATOR HABERFELD:  Could we do this

11    by your Bates numbers, EMC -- this is 459, for the

12    record?

13           MS. KRINCEK:  Sure.

14           ARBITRATOR HABERFELD:  That would be

15    helpful for me to have reference in the record.

16           MS. KRINCEK:  Okay.

17           ARBITRATOR HABERFELD:  Unless you think

18    there is another or better way to do that.

19           MS. KRINCEK:  No, that's fine.

20           THE WITNESS:  Okay.  I see that message.

21    BY MS. KRINCEK:

22        Q.    You didn't receive a text from Mr. Gibson

23    about shooting in your office on April 1st,

24    correct?  It was about three weeks later that you

25    received that text?

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 318

```
 1        A.   Yeah, April 22nd.
 2             ARBITRATOR HABERFELD:  I'm also -- sorry.
 3   Can I ask, would it also be helpful to refer, do
 4   you see at the far left margin there is some kind
 5   of reference by number?
 6             MS. KRINCEK:  Sure.
 7             ARBITRATOR HABERFELD:  Does that mean
 8   anything that would assist us in identifying --
 9   for ease of identification in getting to it?
10             MS. KRINCEK:  They should be numbered.  I
11   believe when the texts are downloaded and printed
12   out, they come out numbered consecutively.
13             ARBITRATOR HABERFELD:  Okay.
14             MS. KRINCEK:  So I can refer to that
15   number, as well.
16             ARBITRATOR HABERFELD:  If you would do
17   that, that would be helpful to me.  Thank you.
18             THE WITNESS:  Okay.  So we're looking at
19   23605?
20   BY MS. KRINCEK:
21        Q.   Correct.
22        A.   Okay.  What can I answer for you?
23        Q.   Well, you just answered that question,
24   but I would like you to toggle back to the Charge,
25   but still --
```

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 319

```
 1      A.   Okay.

 2      Q.   -- keep your hand on the text messages.

 3      A.   Okay.

 4      Q.   The next sentence in your sworn Charge

 5  you wrote about -- you said, In the same text

 6  message, he made the comment, quote, your wife's

 7  bush is also in the scene.

 8           You put quotes around that statement like

 9  it was a direct quote from Mr. Gibson's text,

10  correct?

11      A.   Yes.

12      Q.   Going back to the text exchange between

13  yourself and Jason, is that a direct quote

14  anywhere that appears in this text exchange?

15      A.   It is not.  It is an inaccurate

16  paraphrase of 23663.

17      Q.   And it is also not in the same text

18  message when Mr. Jason told you he was going to

19  shoot porn in your office as it says in your

20  Charge, correct?

21      A.   That's true.  It's in a separate text

22  message.

23      Q.   In your sworn Charge, you also state that

24  you were embarrassed and uncomfortable with the

25  nature of the text message that Mr. Gibson sent,
```

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 320

```
 1    correct?

 2         A.   Yes.

 3         Q.   Now, after Mr. Gibson texted you and

 4    said, I'm shooting gay porn on your office desk

 5    and couch, if you turn the page to EMC460, Text

 6    Number 23622, what was your response?

 7         A.   I'm sorry.  What exhibit, 460?

 8         Q.   Exhibit 330.

 9         A.   Oh, I'm sorry.  Okay.

10         Q.   The texts, still.  I gave the Bates stamp

11    number, which is EMC460.

12         A.   Okay.

13         Q.   So Mr. Gibson texted you to alert you he

14    was shooting gay porn in your office, and what was

15    your response?

16         A.   Don't get jizz on my briefs.

17         Q.   Does your response make you embarrassed

18    and uncomfortable?

19         A.   My response?

20         Q.   Your response.

21         A.   No, my response does not make me

22    embarrassed or uncomfortable.

23         Q.   The next text, which is from Mr. Gibson

24    to you, Number 23661, Mr. Gibson texted you,

25    Olivia squirted all over your desk and floor.
```

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 321

```
 1    Sharon won't have time to clean until end of next
 2    week.
 3            And your response was?
 4       A.   My response was a sarcastic response of,
 5    I don't want it cleaned up.
 6       Q.   So did that portion of Mr. Gibson's text
 7    make you embarrassed and uncomfortable?
 8       A.   Not until I realized that it was true and
 9    that he was not joking.
10       Q.   I think you previously testified on
11    direct that you are not someone that is easily
12    offended; is that correct?
13       A.   No, I am not easily offended.
14       Q.   In fact, you once asked your female
15    assistant, Erika Dillon, in the workplace to give
16    you a handjob, correct?
17       A.   No, that is inaccurate.
18       Q.   You are denying that you asked your
19    assistant to give you a handjob?
20       A.   Yes, I'm denying that I ever requested
21    that she do so.
22       Q.   Can you -- I'm going to get you your
23    deposition transcript --
24       A.   Sure.
25       Q.   -- to take a look at.
```

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 322

```
 1      A.   Just call my attention to the fact that

 2   those words were exchanged, that I will say.  That

 3   is my testimony.

 4      Q.   Well, let's look at your deposition

 5   transcript.

 6           MR. THOMAS:  Do you want me to grab it

 7   from here?

 8           MS. KRINCEK:  Yeah.

 9           MR. THOMAS:  Is it in Volume 1?

10           MS. KRINCEK:  It's -- it might be in

11   Volume 2.

12           MR. WHITE:  Which exhibit should I be

13   looking at?

14           MS. KRINCEK:  Do you have the witness

15   copies of exhibits?

16           MR. WHITE:  I have one on my screen.  Do

17   you object to me -- Your Honor, would it be

18   acceptable if I show Mr. Randazza the version on

19   my screen as Ms. Krincek --

20           MS. KRINCEK:  It might be easier if we

21   have the paper copy.

22           MR. WHITEHEAD:  We also have the paper

23   copy, as well, of the deposition.

24           MR. WHITE:  Mr. Whitehead, would you

25   please hand that to Mr. Randazza?
```

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 323

```
 1            THE WITNESS:  Thank you.
 2   BY MS. KRINCEK:
 3       Q.   Can you turn to Page 58 of your
 4   deposition transcript?
 5       A.   Yes.  I'm there.
 6            ARBITRATOR HABERFELD:  If you will call
 7   out page and line --
 8            MS. KRINCEK:  Sure.
 9            ARBITRATOR HABERFELD:  -- for the record
10   and for Mr. White, please.
11   BY MS. KRINCEK:
12       Q.   Page 58, Lines 4 through 12.
13       A.   4 through 12, yes.
14       Q.   Question:  Do you recall suggesting to
15   Erika Dillon in the workplace that she give you a
16   hand job?
17            Answer:  That was not what happened.
18            Question:  What happened?
19            Answer:  I recall Erika walked in and
20   said, Do you want anything else?  And I did
21   jokingly say that.  Neither of us understood it to
22   be a request, nor would I have accepted a handjob
23   had it been offered.
24       A.   Correct.
25       Q.   Do you see that?
```

Arbitration Proceedings  ~ Volume II ~  February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page  324

```
 1      A.   Yes.

 2      Q.   So you did ask your assistant for a

 3 handjob in the workplace?

 4      A.   No, that's not what that is.  If you are

 5 making a joke with somebody, that's different.

 6 Tell somebody, Would you go jump off of a bridge?

 7 You don't really want them to jump off a bridge.

 8      Q.   Well, you made the request.  It was just

 9 a joke, correct?

10      A.   Then it's not a request.  That's a joke,

11 if you -- it's what I said in the depo.

12      Q.   Can you turn back to Exhibit 330?  You

13 are still there, which is the text exchange.

14      A.   Sure.

15      Q.   And can you go to EMC464?

16      A.   Okay.  I'm there.

17      Q.   And this is, for the record, the portion

18 of the text exchange where you are texting with

19 Mr. Gibson about the scene having been filmed in

20 your office?

21      A.   Yes.

22      Q.   Text Number 23786, the second from the

23 bottom?

24      A.   Yes.

25      Q.   This is your text to Mr. Gibson saying,
```

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

```
 1    It's your building, it's your desk, you can do
 2    with it as you please, correct?
 3         A.   Yes.
 4         Q.   And Mr. Gibson responded and said, Don't
 5    be butthurt.  This is the guy that jokes with our
 6    female paralegal about needing a handjob in front
 7    of the CEO, right?  No disrespect was meant, but
 8    you know that already.  And that text was sent
 9    five hours before we shot in your office.  You are
10    probably the only First Amendment attorney in the
11    biz to have a hot scene filmed in his office.
12              Do you see that?
13         A.   I do.
14         Q.   Mr. Gibson used the word "butthurt" in
15    his text response to you, correct?
16         A.   Correct.
17         Q.   Can you go back to 310, which is your
18    Charge of Discrimination?
19         A.   Okay.
20         Q.   Under Sexual Harassment on Page 2.
21         A.   Yes.
22         Q.   The last sentence, you wrote, To my
23    surprise, Gibson offered no apology for violating
24    my workspace; instead he made yet another
25    embarrassing comment suggesting that I not be, and
```

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 326

1    you put the word "butthurt" in quotes, about the

2    incident, correct?

3        A.   Correct.

4        Q.   Now, you aren't really embarrassed by the

5    use of the term "butthurt," correct?

6        A.   When it is used to be dismissive about

7    something that I care about, I find it

8    embarrassing.  But the mere word itself, no.

9        Q.   That's a word that you use, correct?

10       A.   Sure.

11       Q.   Can I have you turn to Exhibit 302?

12       A.   Okay.  I'm there.

13       Q.   Exhibit 302, Mr. Randazza, is the Amended

14   Arbitration Claims you filed in this matter,

15   correct?

16       A.   Correct.

17       Q.   Can you please turn to Page 29 of your

18   Amended Arbitration Demand?

19       A.   Okay.  I'm there.

20       Q.   Can you please read Paragraph 120 and the

21   first sentence of 121?

22       A.   On April 22nd, Mr. Gibson ordered Corbin

23   Fisher employees and contractors to engage in

24   sexual acts in Mr. Randazza's office and on his

25   desk.  Corbin Fisher employees filmed this

Arbitration Proceedings  ~ Volume II ~  February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page  327

```
 1    interaction, which was released on one of Corbin

 2    Fisher's Websites as a pornographic scene for

 3    viewing download and/or purchase.  Mr. Gibson

 4    informed Mr. Randazza after the fact that he had

 5    done so via text message.  That text message

 6    alluded to Mr. Randazza's wife's "bush."

 7         Q.   That's it.  You can stop there.

 8         A.   Oh, okay.

 9         Q.   So in your Charge you said Mr. Gibson

10    texted you to alert you to the filming on or about

11    April 1st, and in your arbitration demand you say

12    he texted you to alert you after the fact of the

13    filming, correct?

14         A.   Correct.

15         Q.   Neither of those are true, though,

16    correct?

17         A.   He did let me know after the fact.

18         Q.   But he first alerted you before the

19    filming took place, correct?

20         A.   I don't believe so.  The text message

21    didn't suggest that.

22         Q.   The text message that says he's filming

23    gay porn in your office?

24         A.   That sounds to me like it's happening

25    right now.
```

000371

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 328

1     Q.   Well, certainly wasn't after the fact

2   that he texted you, as you put down in your

3   arbitration demand, correct?

4     A.   I don't know exactly what time he filmed

5   the scene and what time he told me.  I mean, I do

6   know -- we do know what time he told me, but I

7   don't know if there is any record of what time the

8   scene was actually filmed.

9     Q.   Right.  So you don't know whether it's

10   accurate that he -- what you said in your

11   arbitration demand, that he texted you after the

12   fact?

13     A.   The text message suggests to me that it

14   happened after it commenced.  Perhaps he wasn't

15   done.

16     Q.   Can you please turn to Page 11,

17   Paragraph 39?

18     A.   Sure.

19     Q.   Can you read the first sentence of

20   Paragraph 39?

21     A.   Consistent with the above, in April 2012,

22   without Mr. Randazza's knowledge or consent,

23   Mr. Gibson directed Excelsior employees to perform

24   sex acts in Mr. Randazza's personal office, on his

25   desk, and on top of photos of his wife and toddler

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 329

```
 1   children.
 2       Q.   You're aware that Excelsior produced in
 3   discovery the video and still photos that were
 4   taken in your office on April 22nd, 2012, correct?
 5       A.   I am aware of that.
 6       Q.   And you reviewed the photographs and part
 7   of the video that showed your desk at your
 8   deposition, correct?
 9       A.   Correct.
10       Q.   Your allegations that sex acts were
11   performed on top of photos of your wife and
12   toddler children is not true, correct?
13       A.   I would not say that.
14       Q.   You have viewed either video footage or
15   still photographs of people having sexual --
16   engaged in sexual acts on top of photos of your
17   toddler children and wife?
18       A.   The photos were beneath the parties,
19   based on where I found them.
20       Q.   I thought you testified they were
21   scattered to the side --
22       A.   Yes.
23       Q.   -- on direct.
24            So when they were beneath the parties,
25   what does that mean?  Where were they?
```

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 330

```
 1        A.    I don't know where they were during all
 2   of the filming.
 3        Q.    So you don't have any basis to make this
 4   allegation that people had sex on top of pictures
 5   of your wife and kids, right?
 6        A.    That is inaccurate.
 7        Q.    So what's your basis, then, for making
 8   that allegation?
 9        A.    I found the photos scattered on the floor
10   as if they had been pushed off the desk during
11   whatever tryst took place on my desk, and then
12   thereafter, based on where they were, if you look
13   at the whole scene.  It's not inaccurate to say
14   that they were above photos of my wife and kids.
15        Q.    So you have looked at the whole scene
16   that was filmed?
17        A.    I don't know if I've watched it end to
18   end, but I forwarded through parts that were
19   either irrelevant or not that -- that I didn't
20   want to continue watching.
21        Q.    And you've never actually seen any photos
22   or video where people are having sex on top of
23   your wife and kids' pictures, correct?
24        A.    That would not be an accurate
25   characterization of what I just said.
```

000374

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

1      Q.   Can we go back to your deposition

2    transcript?

3      A.   Sure.

4      Q.   Page 69.

5      A.   Yes.

6      Q.   I'm going to read from Page 69 --

7      A.   Yes.

8      Q.   -- lines 13 to 16.

9      A.   Yes.

10     Q.   Question:  But you've never actually seen

11   any photos or videos where people are having sex

12   on top of your wife or your kids' pictures,

13   correct?

14          No.

15          And you do -- you do recall looking at

16   the still photos that were taken in your office?

17          I recall seeing some stills.

18          Okay.  In those still photos, no one is

19   having sex on top of pictures of your wife and

20   kids in those pictures, correct?

21          I'm sorry.  I honestly cannot recall any

22   particular details about the photos.

23          I'm sorry.  I must have mismarked that

24   cite, so I'll look at it the during a break to

25   clear that up.

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 332

1      A.    Okay.

2      Q.    Isn't it true, Mr. Randazza, that part of

3    your strategy in this case was to include

4    allegations of an inflammatory sexual nature to

5    foster fear into Mr. Gibson or the company so they

6    wouldn't make your dispute with it public?

7          MR. WHITE:  I'm going to object to the

8    extent that talking about strategy would require

9    him to reveal attorney/client communications.

10   Otherwise, I won't object.

11         ARBITRATOR HABERFELD:  Do you want to

12   rephrase, or do you want to stand on the question

13   as phrased?

14         MS. KRINCEK:  Well, I'll try to rephrase.

15   BY MS. KRINCEK:

16     Q.    You're including allegations of an

17   inflammatory sexual nature because you didn't want

18   the company to make your dispute with it public,

19   that's the reason that you put in the sexual

20   allegations, correct?

21     A.    There is no accuracy to that statement

22   whatsoever.

23     Q.    Do you know who Chip Carter is?

24     A.    Yes.

25     Q.    His real time is John Thurston Carter,

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 333

```
 1   correct?
 2       A.    I didn't know his middle name is
 3   Thurston.
 4       Q.    You told Mr. Carter that Jason not
 5   wanting the sexual harassment stuff out there was
 6   a fear you tried to foster, correct?
 7       A.    I don't recall telling him that.
 8            MR. WHITE:  I would like to get the
 9   deposition transcript of Chip Carter, and I'm
10   going to use an exhibit from that.
11            If you can get that for the arbitrator.
12            And it is Exhibit 89.
13            MR. WHITEHEAD:  I'm sorry?
14            MR. WHITE:  Chip Carter.
15            ARBITRATOR HABERFELD:  Mr. Thomas, can I
16   ask you to come to assist in finding that exhibit
17   for me.  You probably know where it is faster than
18   I can find it.
19            MS. KRINCEK:  It's in the QUIVX Bates
20   stamped documents.
21            ARBITRATOR HABERFELD:  Will you give as a
22   page number?
23            MS. KRINCEK:  Sure.  2006 -- 2016 to
24   2000 --
25            ARBITRATOR HABERFELD:  I think we're
```

000377

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page  334

```
 1    almost there.  We have it.
 2            THE WITNESS:  Exhibit 89?
 3    BY MS. KRINCEK:
 4        Q.   Exhibit 89, QUIVX2016 --
 5        A.   Okay.
 6        Q.   -- to 2017.
 7             And let me have --
 8        A.   I'm sorry.  Which Bates numbers should I
 9    be looking at?
10        Q.   Start on 2016.
11        A.   Okay.  Okay.  I'm there.
12        Q.   And near the bottom, the first one, the
13    first text that I'm going to refer to is the fifth
14    from the bottom.
15             Do you think he may have sent it to XBIZ,
16    AVN, or my other clients?
17             Do you see that?
18        A.   I do.
19        Q.   So this is a text exchange that you are
20    having with Mr. Carter after Mr. Carter has
21    provided you with a copy of the Bar complaint?
22        A.   Okay.
23        Q.   So you text Mr. Carter, and you say, Do
24    you think he may have sent it to XBIZ, AVN or my
25    other clients, correct?
```

Arbitration Proceedings  ~ Volume II ~  February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page  335

```
 1      A.   Yes.
 2      Q.   And then Mr. Carter's response is the
 3 very last one on the page according to the phone
 4 numbers, he says, No, just the Bar, I think.  I'm
 5 not sending press out --
 6      A.   Okay.
 7      Q.   -- I asked.
 8           And then on the following page, 2017,
 9 your response is, Wow.  So there is a line of
10 decency.
11           Do you see that?
12      A.   Yes.
13      Q.   And Chip responded -- or, I'm sorry.  And
14 you responded, Or are they afraid of the negative
15 PR if the public sees the bullshit.
16           Do you see that?
17      A.   Yes.
18      Q.   And Chip responded, Oh, no.  It just
19 raises too many questions, and he doesn't want the
20 sexual harassment stuff out there.  And you
21 responded, Yep, a fear I tried to foster, correct?
22      A.   Yes.
23      Q.   Now, going back to your Amended
24 Arbitration Demand, you also stated in
25 Paragraph 39 of that that Mr. Gibson directed
```

Arbitration Proceedings  ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page  336

```
 1    Excelsior employees to perform the sex acts filmed

 2    in your office?

 3         A.   I'm sorry.  Can you --

 4         Q.   You don't have to read it.  I --

 5         A.   Okay.

 6         Q.   But in that paragraph, you allege that

 7    Mr. Gibson directed the Excelsior employees to

 8    perform the sex acts filmed in your office?

 9              If you would like to go back and

10    reference that paragraph to confirm that, I'm

11    happy to give you the opportunity to do that.

12         A.   Okay.

13         Q.   It's Paragraph 39 on Page 11 of

14    Exhibit 302.

15         A.   39, Page 11.

16         Q.   Paragraph 39.

17         A.   Okay.  Okay.  I'm there.

18         Q.   You allege that Mr. Gibson directed

19    Excelsior employees to perform the sex acts filmed

20    in your office, correct?

21         A.   Yes.

22         Q.   You don't know who the individuals were

23    that were filmed in your office that day, correct?

24         A.   You mean who the actors were?

25         Q.   Correct.
```

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 337

```
 1      A.   I couldn't tell you exactly who the

 2  actors are.

 3      Q.   And you don't know whether or not they

 4  were employees of Excelsior, correct?

 5      A.   As opposed to independent contractors?

 6      Q.   Correct.

 7      A.   No, I don't have any knowledge of their

 8  employment status.

 9      Q.   You did -- you reviewed your arbitration

10  demand before it was served; is that fair?

11      A.   Yes.

12      Q.   Do you have any firsthand knowledge

13  whether it was Mr. Gibson or someone else, like

14  Aaron Anderson, that picked your office to film

15  that day?

16      A.   I'm basing my knowledge on Mr. Gibson's

17  text message that says, I'm filming porn in your

18  office.

19      Q.   Now, on direct testimony yesterday, it

20  seemed that you were indicating that even though

21  you didn't see any evidence of fluids on your

22  leather desk personally, that you were offended

23  that fluids might have been present on your

24  leather desk, which I believe you described as

25  porous, correct?
```

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 338

```
 1      A.   Correct.
 2      Q.   At one time you had in your home that you
 3  resided in with your wife and children a couch
 4  that Liberty Media had used in pornographic
 5  scenes, correct?
 6      A.   Yes.
 7      Q.   And you had boasted to people that the
 8  couch had been used in porn scenes, correct?
 9      A.   Yes.
10      Q.   And would it be crazy to think that some
11  fluids might have made it onto the couch when
12  Liberty Media -- when Liberty Media used that
13  couch for filming?
14      A.   I'm sure it happened at some point in its
15  history.
16      Q.   Yet you still found it suitable to put in
17  your personal residence, correct?
18      A.   Yes.
19      Q.   Can you turn to Exhibit 315?
20      A.   Yep.  Okay.
21      Q.   Exhibit 315, Mr. Randazza, is an e-mail
22  you sent to Jason Gibson and Andrew Rasmus on
23  November 28th of 2009, correct?
24      A.   Correct.
25      Q.   And the attached photo is a picture of
```

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

```
 1   your wife on that couch?

 2       A.   Yep.

 3       Q.   Correct?

 4       A.   Yes.

 5       Q.   This is Exhibit 315.

 6       A.   Yes.

 7       Q.   You were comfortable sharing a photo of

 8   this nature with Mr. Gibson --

 9       A.   Yes.

10       Q.   -- of your wife, you being a straight

11   male, fair?

12       A.   Yes.

13       Q.   Is it true that you invited Liberty Media

14   to film in your own personal residence?

15       A.   I told them that if they needed a

16   location, they were welcome to use portions of my

17   house.

18            ARBITRATOR HABERFELD:  What was the

19   answer, please, Ms. Reporter?

20       (Whereupon, the pertinent part of the record

21        was read back by the court reporter.)

22            ARBITRATOR HABERFELD:  "Them," who is

23   "them"?

24            THE WITNESS:  Liberty Media.

25            ARBITRATOR HABERFELD:  Liberty Media?
```

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 340

```
 1              THE WITNESS:  Yes.

 2              ARBITRATOR HABERFELD:  Who, people?

 3              THE WITNESS:  I'm sorry?

 4              ARBITRATOR HABERFELD:  Could you identify

 5      the people you said that to?

 6              THE WITNESS:  Oh, I'm sure that I said

 7      that to Jason.

 8              ARBITRATOR HABERFELD:  Okay.

 9      BY MS. KRINCEK:

10         Q.   You probably said it to other people,

11      too?

12         A.   Probably.

13         Q.   I want to turn to talking about the

14      incident that occurred on August 9th, 2012 in the

15      car ride that you talked about earlier that

16      followed a company sponsored houseboat outing to

17      Lake Mead during the day, correct?

18         A.   Correct.

19         Q.   Do you recall that employees were

20      permitted to bring their families on that outing?

21         A.   Yes.

22         Q.   Do you recall that Henry Leonard, the

23      CFO, brought his children?

24         A.   I don't have any particular recollection

25      of that.
```

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 341

```
 1      Q.   Let me have you go back to your Charge of
 2   Discrimination, which is 310.
 3      A.   Okay.
 4      Q.   And the third page of your Charge of
 5   Discrimination --
 6      A.   Okay.
 7      Q.   -- you say, On August 9th, 2012, Gibson
 8   insisted that I attend a party with him and other
 9   members of the staff.  After the event, Gibson
10   directed that I take him and another employee to
11   the airport.
12           Do you see that?
13      A.   Yes.
14      Q.   You weren't taking anyone to the airport
15   that day, correct?
16      A.   No.  That is completely erroneous.
17      Q.   And you offered to drive Mr. Gibson back
18   to the office?
19      A.   Yes, that's true.
20      Q.   Mr. Gibson didn't direct that you take
21   him, you offered?
22      A.   I did, yes.
23      Q.   And Cameron Frost and David McCoig were
24   also in the car, correct?
25      A.   They were.
```

000385

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 342

```
 1       Q.   Mr. Frost sat in the front passenger's
 2   seat, correct?
 3       A.   He did.
 4       Q.   You were obviously in the driver's seat?
 5       A.   Correct.
 6       Q.   Mr. Gibson and Mr. McCoig sat in the
 7   backseat, correct?
 8       A.   Correct.
 9       Q.   And there was a five-point harness child
10   seat in the backseat, as well, correct?
11       A.   Correct.
12       Q.   And my understanding is that was
13   positioned behind the passenger's seat, correct?
14       A.   Correct.
15       Q.   Now, you are alleging that Mr. Gibson
16   performed fellatio on Mr. McCoig during the ride
17   back to the office, correct?
18       A.   Correct.
19       Q.   Yesterday you testified that Mr. McCoig
20   and Mr. Gibson were side-by-side in the center and
21   back driver's seat because you had the car seat
22   behind the passenger's seat, correct?
23       A.   Correct.
24       Q.   And it was your testimony that Mr. Gibson
25   and Mr. McCoig were in those seat positions when
```

000386

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 343

```
 1   the alleged oral sex act took place, correct?

 2       A.   Correct, yes.

 3       Q.   You are not saying that Mr. McCoig was

 4   sitting in the child car seat when the sex act

 5   took place, are you?

 6       A.   The blowjob itself did not occur while he

 7   was sitting in the child seat.  He climbed in and

 8   out of the child seat a few times, and actually

 9   broke it.

10       Q.   That's when he was throwing up?

11       A.   No, that was afterwards.

12       Q.   Now, in your prearbitration brief, it

13   says that Mr. McCoig was seated in the child seat

14   when the oral sex act occurred, and that's

15   incorrect, right?

16       A.   That is incorrect.

17       Q.   Mr. McCoig on that ride to the office was

18   very drunk, correct?

19       A.   He appeared to be so.

20       Q.   You had to pull over because he was

21   throwing up, correct?

22       A.   No, because he said he had to throw up,

23   yes.

24       Q.   And you asked him to hold off, and you

25   picked the Mercedes dealership for him to throw up
```

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 344

1    because you had a grudge against it, correct?

2         A.    That is why I stopped in that particular

3    spot.

4         Q.    And Mr. McCoig also threw up out your

5    window a second time, correct?

6         A.    He did.

7         Q.    And you're aware that Mr. Gibson denies

8    that an act of oral sex occurred in the backseat

9    of your car, correct?

10        A.    I am aware of his denial.

11        Q.    And you are aware that Mr. Frost denies

12   that an act of oral sex occurred in the backseat

13   of your car, correct?

14        A.    That's what I've been told, yes.

15        Q.    While you were employed by Excelsior, you

16   drafted company policies, correct?

17        A.    Yes.

18        Q.    And you were responsible for reviewing

19   and updating the company handbook, correct?

20        A.    I did work on that, yes.

21        Q.    And you were familiar with the company's

22   harassment policy, correct?

23        A.    Correct.

24        Q.    And as an attorney, you are familiar with

25   the concept that employees feeling harassed can

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 345

```
 1   file a charge with the EEOC, correct?
 2       A.   Correct.
 3       Q.   Now, you never complained while you were
 4   employed at Excelsior that you were being sexually
 5   harassed, correct?
 6       A.   I complained about the events to Kirk.
 7            ARBITRATOR HABERFELD:  Question?  Let's
 8   have the question read back.
 9       (Whereupon, the pertinent part of the record
10        was read back by the court reporter.)
11            ARBITRATOR HABERFELD:  Thank you.
12   BY MS. KRINCEK:
13       Q.   Do you recall what specifically you said
14   to Mr. Addison?
15       A.   I don't remember what I specifically said
16   to him.
17       Q.   And as you sit here today, you are not
18   sure what day you supposedly met with Mr. Addison,
19   correct?
20       A.   I am not sure, no.
21       Q.   And you never filed a Charge of
22   Discrimination while you were employed, correct?
23       A.   Not while I was employed, no.
24       Q.   I'm going to turn to a new topic, which
25   is the TNAFlix matter that you handled for the
```

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 346

```
 1   company.
 2        A.   Okay.
 3             ARBITRATOR HABERFELD:  How long do you
 4   have on that?
 5             MS. KRINCEK:  A fair amount of time,
 6   maybe about a half.  So if it's -- now is an
 7   appropriate time to break.
 8             ARBITRATOR HABERFELD:  Are you signaling?
 9   I'm going to interpret that as a signal that this
10   might be a good time for us to take our first
11   break.
12             MS. KRINCEK:  It probably is.
13             (Whereupon, a recess was taken.)
14             ARBITRATOR HABERFELD:  Ms. Krincek?
15             MS. KRINCEK:  Thank you.
16   BY MS. KRINCEK:
17        Q.   Mr. Randazza, I'm going to move on to a
18   new topic, which is the TNAFlix matter that you
19   handled on behalf of the company, Liberty Media.
20        A.   Okay.
21        Q.   In September of 2010, you filed a lawsuit
22   on behalf of Liberty Media Holdings against
23   TNAFlix.com, correct?  Does that sound right?
24        A.   I can't tell you the exact date, but that
25   sounds right.
```

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 347

```
 1       Q.   The suit alleged copyright infringement,
 2   correct?
 3       A.   Correct.
 4       Q.   Liberty Media was the plaintiff, correct?
 5       A.   Correct.
 6       Q.   TNAFlix.com was represented by an
 7   attorney named Val Gurvits that you referenced
 8   yesterday during your testimony, correct?
 9       A.   Yes.  I think it was also represented by
10   Oleg Cross, and I believe Evan Fray-Witzer.
11       Q.   TNAFlix was owned by an entity known as
12   Youngtek Solutions, correct?
13       A.   Yes.
14       Q.   Can I have you turn to Exhibit 350?
15       A.   Yes.  Wait.  Maybe not.  Sorry.  I got
16   the wrong volume.
17       Q.   It is the very last one.
18       A.   I'm there.
19       Q.   This Exhibit 350 is an e-mail exchange
20   that you had with Val Gurvits and it looks like
21   other people were copied on December 7th of 2010
22   related to the TNAFlix matter, correct?
23       A.   Correct.
24       Q.   And in the bottom e-mail, which is from
25   Mr. Gurvits to you, Mr. Gurvits says, Dear Marc, I
```

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 348

```
 1    did discuss your settlement offer with my client.

 2            Do you see that?

 3        A.    Yep.

 4        Q.    So it appears you had made a settlement

 5    offer on behalf of Liberty Media; is that correct?

 6        A.    Correct.

 7        Q.    And Mr. Gurvits goes on to say, Youngtek

 8    does not want to settle and is prepared to go to

 9    trial, because -- and he listed two reasons.  And

10    Reason B is, There is no way to prevent others

11    from suing once this action is settled.

12            Do you see that?

13        A.    I do.

14        Q.    In the top part of Exhibit 350 is your

15    e-mail response to Mr. Gurvits, correct?

16        A.    Correct.

17        Q.    And in the last paragraph you respond to

18    Point B of Mr. Gurvits' e-mail, and you say, As

19    far as B goes, I actually could largely prevent

20    other plaintiffs from entering the fray -- not all

21    possible plaintiffs, but a large portion of the

22    adult entertainment industry could have been held

23    back.

24            Do you see that?

25        A.    Yes.
```

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 349

```
 1        Q.   By this, Mr. Randazza, you mean you could
 2   prevent others from suing TNAFlix, correct?
 3        A.   I wished for Val to believe that, yes.
 4        Q.   Can I have you now turn to Exhibit 351,
 5   which is going to be in the second volume.
 6        A.   Okay.  Exhibit list?
 7        Q.   Exhibit 351.
 8        A.   Oh, okay.  I have it, yes.
 9             ARBITRATOR HABERFELD:  Do I have 351?
10             MR. THOMAS:  I think it may be underneath
11   some of these other ones.
12             ARBITRATOR HABERFELD:  Will we be coming
13   back to Mr. Randazza's deposition any time soon?
14             MS. KRINCEK:  I hope not, but --
15             ARBITRATOR HABERFELD:  Okay.  So let's
16   put that back.  Thank you.
17             I've got 351.
18   BY MS. KRINCEK:
19        Q.   This is an e-mail communication from you
20   to Mr. Gurvits on the TNAFlix matter from
21   December 16th, 2010, correct?
22        A.   Correct.
23        Q.   And you are making a settlement proposal
24   to TNA for a monetary amount of $125,000, correct?
25        A.   Correct.
```

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 350

```
 1        Q.   Can you turn to the next exhibit,
 2   Exhibit 352?
 3        A.   I'm there.
 4        Q.   And this is an e-mail from yourself to
 5   Mr. Gurvits, again, regarding the TNAFlix matter?
 6        A.   Yes, I see it.
 7        Q.   You say at the beginning, Val, thanks for
 8   the call today.
 9             So it appears Val called and made a
10   counteroffer; is that a fair assumption?
11        A.   From looking at this, yes.
12        Q.   And then in the next line you say,
13   Counter-counteroffer.
14             So you are making a counter to Val's
15   counteroffer, correct?
16        A.   Yes.
17        Q.   And your counteroffer is for a monetary
18   amount of $50,000, correct?
19        A.   Correct.
20        Q.   And you have some nonmonetary demands set
21   forth in the paragraph numbered 2, correct?
22        A.   Yes.  What I want is them to be
23   proactive.
24        Q.   And then in the next paragraph following
25   the one numbered 2, can I have you read that next
```

000394

Arbitration Proceedings  ~ Volume II ~  February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page  351

1   paragraph, As far as?

2      A.   As far as conflicting me out of future

3   cases, that will require significantly more than

4   $5,000.  In fact, I have someone waiting in the

5   wings with a $50,000 retainer right now.

6      Q.   So it appears Val had made an offer to

7   conflict you out of future TNA cases for $5,000,

8   and you told him it will require significantly

9   more than $5,000, correct?

10     A.   Yep, that's how every negotiation with

11  Val usually went.

12     Q.   Now, in the next paragraph you say,

13  Naturally, I'm in a strange ethical bind, as your

14  offer to conflict me out of future cases against

15  your client is something that would benefit my

16  current client.  Accordingly, I would be willing

17  to be conflicted out of cases against TNA, but

18  that 5K figure has to come up, correct?

19     A.   Correct.

20     Q.   Did you ever receive written consent from

21  Liberty to negotiate for a monetary payment to

22  yourself in connection with the TNA dispute?

23     A.   No.

24     Q.   Can you turn to the next exhibit,

25  Exhibit 353?

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 352

```
 1        A.    Okay.  Yes, I see it.
 2        Q.    And this is further e-mail communication
 3   between yourself and Mr. Gurvits related to the
 4   TNAFlix matter, correct?
 5        A.    Yes.
 6        Q.    Can you read your e-mail from Mr. Gurvits
 7   into the record?
 8        A.    I have a strange development in the TNA
 9   matter.  It is actually tangential to it.  Another
10   client of mine asked me if I knew anyone at TNA,
11   because they want to purchase the site.  I think
12   they are talking about mid seven figures.
13             This puts me in a weird position, I
14   think.  But, I believe that if TNA is interested
15   in such discussions, that I can orchestrate an
16   ethical way for us to manage that.  May as well
17   ask them if they would have an interest.  If so,
18   you and I can figure out how to ethically work on
19   such a transaction.  I'd imagine that you
20   personally could earn a shitload more money for a
21   broker fee than you'd earn litigating this case,
22   and me, as well.
23        Q.    You do not have any specific recollection
24   of informing Liberty, either orally or in writing,
25   that you were going to propose acting as a broker
```

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 353

```
 1   on that potential transaction, the sale of

 2   TNAFlix, correct?

 3       A.   I have no record of that.

 4       Q.   And you are not aware of any --

 5            ARBITRATOR HABERFELD:  What's the

 6   question?  Read the question again, Ms. Reporter.

 7       (Whereupon, the pertinent part of the record

 8        was read back by the court reporter.)

 9            ARBITRATOR HABERFELD:  Do you have a

10   recollection of that, Mr. Randazza?

11            THE WITNESS:  I don't have any specific

12   recollection of that.

13   BY MS. KRINCEK:

14       Q.   And you are not aware of any writings

15   where you disclosed to Liberty that you were going

16   to make an overture to Mr. Gurvits about a client

17   of yours being interested in purchasing TNAFlix,

18   correct?

19       A.   No.

20       Q.   And you don't have a recollection of

21   orally informing Liberty that you were going to

22   make an overture to Mr. Gurvits about you having a

23   client interested in purchasing TNAFlix, correct?

24       A.   Correct.

25       Q.   Now, the statement that you had another
```

000397

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 354

```
 1   client interested in purchasing TNAFlix that you

 2   made to Mr. Gurvits in this e-mail communication,

 3   you've testified that that was not a true

 4   statement, correct?

 5       A.   No, I never had a buyer.

 6       Q.   Is it your testimony that

 7   misrepresentation about having an interested buyer

 8   was part of your negotiation strategy?

 9       A.   With Val, yes.

10       Q.   I'm going to have you turn to

11   Exhibit 354.

12       A.   Yeah.

13       Q.   This is additional e-mail communication

14   that you and Mr. Gurvits had on December 30th, so

15   you can see the bottom portion of the e-mail on

16   Exhibit 354 is the one that we just looked at as

17   353.

18            Do you see that?

19       A.   Yes.

20       Q.   And Mr. Gurvits e-mailed you back and

21   said, That is an interesting development.  I will

22   e-mail my client, correct?

23       A.   Yes.

24       Q.   And you respond to Mr. Gurvits that same

25   day, and you say, Bizarre to say the least.  Happy
```

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

1   New Year to you, too.  Here's how I think we can

2   do it -- and I think I have more ethical pitfalls

3   than you.  I'd have to reveal to Liberty that this

4   was going on, and I think that a settlement with

5   CF would have to be part of the deal.  But, I

6   think that we could do it so that the settlement

7   would be paid only after the sale so that there

8   was no suspicion on Youngtek's part that this was

9   any sleight of hand on my part to just get Liberty

10  a settlement, correct?

11      A.   Yep.

12      Q.   You're proposing the settlement and sale

13  of TNAFlix be tied together, correct?

14      A.   As one possible outcome, yes.

15      Q.   Can I have you turn to Exhibit 356?

16      A.   Okay.

17      Q.   I'm going to have you turn to Page 3 of

18  that e-mail communication.  It's Bates stamped,

19  for the record, EMC1362?

20      A.   I'm there.

21      Q.   Now, we just looked at the December 22nd

22  e-mail exchange between you and Mr. Gurvits where

23  you told -- or, I'm sorry.  We didn't just look

24  at, but earlier we looked at the December 22nd

25  e-mail exchange where you told Mr. Gurvits it was

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 356

```
 1   going to require significantly more than the

 2   $5,000 to conflict you out of future cases, and

 3   that was Exhibit 352.

 4            Do you recall that?

 5       A.   Uh-huh.

 6       Q.   And we just looked at Exhibit 356, around

 7   January 11th of 2011.

 8            I'm sorry.  Let me have you, instead, go

 9   to about two-thirds of the way down on EMC1362.

10   On January 11th, 2011, Mr. Gurvits e-mails you,

11   and says, By the way, there seems to be a lot of

12   interest on my client's side to sell.

13            How do we explore this possibility?

14       A.   Yes.

15       Q.   And then you responded, and you said,

16   Name price.  Lawyers split a 15 percent broker

17   fee.  I'll call potential buyer?

18       A.   Yep.

19       Q.   And then Mr. Gurvits responds to your

20   e-mail and says, I will ask, but without having

21   some indication of what the buyer is thinking, I

22   suspect the asking price will be a gazillion

23   dollars.  You mentioned mid seven digits.  Do you

24   think the buyer will pay 5MM.

25            Does that mean $5 million?
```

000400

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 357

```
 1        A.    That's how I understood it.
 2        Q.    And then you respond to Mr. Gurvits and
 3   say, I can ask, if that's a real number.  If I ask
 4   the seller and TNA comes back saying six mil, the
 5   buyer will tell me to screw off, correct?
 6        A.    Correct.
 7        Q.    And then Mr. Gurvits responds and says,
 8   Okay.  I will ask TNA.  I am sure they will want
 9   to start high.  Doesn't everyone?  Will let you
10   know.  7.5 percent of anything in that ballpark is
11   just fine with me.
12        A.    Uh-huh.
13        Q.    And then you respond to him, and you say,
14   Of course it is.  And I presume that your client
15   doesn't mind paying out 15 percent to us to put
16   the deal together.  And to make the deal go
17   smoothly, we are going to need to kill off the
18   case.
19              Do you see that?
20        A.    Yep.
21        Q.    And that's referring to the TNAFlix and
22   Liberty Media dispute, correct?
23        A.    Uh-huh.
24              MR. WHITE:  Your Honor, may I
25   respectfully ask my client to say yes and no,
```

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 358

```
 1    instead of uh-huh.
 2              THE WITNESS:  Sorry.
 3              ARBITRATOR HABERFELD:  Done.
 4    BY MS. KRINCEK:
 5        Q.   Can I have you turn -- if I could just
 6    have a moment.  I misnumbered an exhibit that I
 7    need to find.
 8              Can I have you turn to Exhibit 356?
 9        A.   Okay.  I'm there.
10        Q.   And now I want to go to the first page of
11    356.
12        A.   Okay.
13        Q.   Near the bottom, at 7:29 p.m., Val
14    Gurvits e-mailed you and said, I don't want to
15    muddy the waters with a possible sale.  If the
16    case can be settled, we should settle it without
17    reference to the sale.
18              Do you see that?
19        A.   Yes.
20        Q.   So Val was telling you that the two
21    things shouldn't be tied together, the settlement
22    and the potential sale of TNAFlix, correct?
23        A.   Yep, yes.
24        Q.   And then he also communicates to you in
25    this e-mail that TNAFlix is not going to go above
```

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

```
 1   50,000?

 2       A.    Correct.

 3       Q.    And the top portion of this e-mail is

 4   your response to Mr. Gurvits that same day,

 5   January 11th, 2011, correct?

 6       A.    Correct.

 7       Q.    And you respond with a four-pronged

 8   settlement proposal --

 9       A.    Uh-huh.

10       Q.    -- correct?

11       A.    Yes, I did.

12       Q.    And you lay out Numbers 1 through 4, and

13   then you say, Keeping me completely out of the TNA

14   game is a little more complicated.

15            Can you read the following paragraph?

16       A.    If your client wants me -- wants to keep

17   me personally out of the TNA game, then I think

18   there needs to be a little gravy for me.  And it

19   has to be more than the $5,000 we were talking

20   about before.  I'm looking at the cost of at least

21   a new Carrera in retainer deposits after

22   circulating around the adult entertainment expo

23   this week.  I'm going to want at least used BMW

24   money.

25       Q.    And then you say, In order to conflict me
```

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 360

1    out of future matters, you suggest this, and then

2    you make a proposal where Val's firm retains you

3    of counsel, you get paid $5,000 per month for six

4    months paid to you from Val, and then you presume

5    that TNAFlix will reimburse you, correct?

6        A.    Yes.

7        Q.    Was it your position that this

8    communication was just more settlement negotiation

9    strategy on your part?

10       A.    It was feeling Val out to see just how

11   much he was lying to me.

12       Q.    Can I have you turn to Exhibit 372?

13       A.    Yep.

14            ARBITRATOR HABERFELD:   Number again,

15   please?

16            MS. KRINCEK:   372.

17            ARBITRATOR HABERFELD:   Thank you.

18   BY MS. KRINCEK:

19       Q.    Exhibit 372, Mr. Randazza, is the

20   response that was submitted to the Florida Bar

21   dated June 13th, 2013, correct?

22       A.    Correct.

23       Q.    And that was submitted on your behalf in

24   response to a Bar complaint that was filed by

25   Excelsior Media, correct?

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 361

```
 1      A.   That is correct.
 2      Q.   Would it surprise you to learn that
 3 Excelsior did not produce -- had not produced in
 4 discovery in this matter the TNAFlix e-mails
 5 between you and Mr. Gurvits we just went through
 6 prior to the date of this response?
 7           MR. WHITE:  I'm sorry.  Can I ask that
 8 question to be read back?
 9           MS. KRINCEK:  It was messy.  Let me reask
10 it.
11 BY MS. KRINCEK:
12      Q.   Would it surprise you, Marc, to know that
13 Excelsior had not produced in discovery these
14 e-mails that we just looked at between yourself
15 and Mr. Gurvits in the TNA matter, you didn't have
16 that production from us when this Bar response was
17 sent?
18      A.   I don't understand.  I didn't have those
19 e-mails before this was sent?
20      Q.   Correct.  We didn't produce them to you
21 as of June.  They were produced in July of 2013.
22           Do you have any reason to dispute that?
23      A.   I have no record of -- in front of me of
24 when I -- when you produced them, but they were
25 from my account.
```

000405

Arbitration Proceedings  ~ Volume II ~  February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page  362

```
 1        Q.    Can I have you turn to Page 2?

 2        A.    I'm there.

 3        Q.    The last complete paragraph on that page,

 4   this relates to the TNAFlix matter, it starts off,

 5   In Randazza's first interaction.

 6              Can you read that paragraph that you

 7   reported to the Florida State Bar?

 8        A.    In Randazza's first interaction with this

 9   attorney, Val Gurvits, Gurvits offered Randazza

10   similar payment.  Randazza informed Gibson that

11   Gurvits had offered Randazza that payment, and

12   Gibson asked what it meant.  Randazza explained to

13   him essentially that he wanted to bribe Randazza

14   to never sue his client again.  This is in a case

15   against TNAFlix.com.  Gibson actually encouraged

16   Randazza to take it if this would facilitate the

17   settlement with TNAFlix.  However, Randazza

18   explained to both Mr. Gurvits and Gibson that

19   Randazza would not accept payment in exchange for

20   a limitation on who he could represent, nor

21   represent in the future.  No payment in the

22   TNAFlix was made to Randazza.

23        Q.    So I'm interested, in particular, in the

24   second to last sentence, However, Mr. -- However,

25   Randazza explained to both Mr. Gurvits and Gibson
```

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 363

1   that Randazza would not accept payment in exchange

2   for a limitation on who Randazza could represent

3   or not represent in the future.

4        A.   Yes.

5        Q.   Now, when Mr. Gurvits made the $5,000

6   overture to you to conflict you out of TNAFlix

7   cases, you responded by telling him it was going

8   to take significantly more than that.

9             We looked at that e-mail, right?

10       A.   Right.

11       Q.   And then after that, you told him it was

12  going to -- there was going to have to be some

13  gravy in it for you, and after shopping around the

14  industry event, that you were looking at used BMW

15  money, correct?

16       A.   Correct.

17       Q.   Yet here you represent to the Bar that

18  when Mr. Gurvits approached you with the bribe,

19  you explained to Mr. Gurvits that you would not

20  accept a payment in exchange for a limitation?

21       A.   Yes.  I have e-mails with him to that

22  effect.

23       Q.   That e-mail occurred later, correct?

24       A.   I don't recall the exact sequence.

25       Q.   Okay.

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 364

```
 1              ARBITRATOR HABERFELD:  Is that e-mail in

 2    evidence?

 3              MS. KRINCEK:  It will be now.

 4    BY MS. KRINCEK:

 5         Q.   Exhibit 357.

 6         A.   Okay.  I'm there.

 7         Q.   Exhibit 357, Mr. Randazza, is an e-mail

 8    exchange between you and Val on January 12th of

 9    2011, correct?

10         A.   Yes.

11         Q.   And so the prior e-mail that we looked

12    at, Exhibit 356, about the used BMW money was from

13    January 11th.  This one is the following day on

14    January 12th.

15              You tell Mr. Gurvits you did a little

16    research, and you are sorry, but you can't see in

17    light of this research how you could ethically

18    enter into an agreement to limit my practice,

19    correct?

20         A.   Correct.

21         Q.   And then you even attached a link to, and

22    it looks like an ABA article on the topic there,

23    correct?

24         A.   Yes.

25         Q.   And then near the bottom, you say, Here's
```

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

```
 1    how I think it needs to go down:  1, We settle
 2    with CF; 2, They can find a way, and you
 3    asterisked this word "afterward" to engage me.
 4           Do you see that?
 5       A.   Yes.
 6       Q.   And then in the top, it doesn't look like
 7    Mr. Gurvits has any intervening response, but you
 8    e-mail him again, and say, Here is more research
 9    on it, and you attach a link to, it appears,
10    another article, which I believe we have attached,
11    correct?
12       A.   Yes.
13       Q.   And you reiterate here, you said, Like I
14    said below, if TNA wants to hire me, in asterisks,
15    after the settlement on terms that we discuss, in
16    asterisks, after settlement, then my phone line
17    will be open.  However, it seems that if we place
18    any part of a, quote, buyoff as a condition of
19    settlement, then all four of us could wind up in
20    Bar trouble.  I'm certainly not risking it,
21    correct?
22       A.   Correct.
23       Q.   Could I have you turn to Exhibit 358?
24       A.   Okay.
25       Q.   And let's start on the second page, which
```

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 366

```
 1   is EMC1401.

 2       A.   Okay.

 3       Q.   Mr. Gurvits is responding on

 4   January 20th, 2011 to the four-pronged settlement

 5   offer that you made on behalf of Liberty Media

 6   previously, correct?

 7       A.   Yes.  You mean at the very bottom,

 8   10:32 a.m.?

 9       Q.   Correct.

10       A.   Okay.

11           MR. WHITE:  I'm sorry.  May I ask what

12   Bates stamp you are looking at?

13           THE WITNESS:  EMC001401.

14   BY MR. WHITE:

15       Q.   Mr. Gurvits tells you that TNAFlix will

16   pay $50,000 to Liberty?

17       A.   Yes.

18       Q.   And then you respond to Val, and you

19   explain something about the position of his

20   directors in your follow-up e-mail to him, and

21   appears to me that you are -- in your response,

22   you are trying to position Liberty to get more

23   than $50,000, correct?

24       A.   That's what the e-mails look like.

25       Q.   And if you turn to the first page,
```

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 367

```
 1   EMC1400, of Exhibit 358, at the bottom, Val
 2   Gurvits responds to you, and part of what he says
 3   is, As I said before, 50,000 was acceptable before
 4   Xmas, and if it was acceptable on January 11th,
 5   then it should be acceptable now.  If the deal is
 6   off, I can only say thanks on behalf of my
 7   college-bound kids.
 8           Do you see that?
 9       A.   I do.
10       Q.   And then you respond to him, and you say,
11   They will go to a way better college if we can
12   broker a sale, correct?
13       A.   Correct.
14       Q.   And Mr. Gurvits says, Agreed, but I am
15   concerned about ethical issues that arise if these
16   two things are connected, so let's finish this
17   case one way or another and then move onto the
18   sales, correct?
19       A.   Uh-huh, yes.
20       Q.   And then you respond, and you say, Of
21   course they can't be connected, but I wouldn't be
22   so caviler about saying 50,000, take it or leave
23   it, with that plane flying around.
24           Do you see that?
25       A.   I do.
```

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 368

```
 1      Q.   And that plane flying around is the

 2   prospect of earning a 7.5 percent broker fee on a

 3   potentially $5 million sale of TNAFlix?

 4      A.   That's what I'm trying to infer to Val,

 5   yes.

 6      Q.   That's a pretty strong incentive for Val

 7   to try and get the case settled, a prospect of

 8   earning a broker fee on the sale, that's why you

 9   are using it, correct?

10      A.   I'm trying to get Val to get that number

11   up between -- from 50 to $70,000.  Although I do

12   recall at the time, I had been told to settle this

13   case for 40 -- 40 or $45,000.

14      Q.   Can you turn to Exhibit 359?

15      A.   Okay.  I'm there.

16      Q.   On January 26th, there's an e-mail from

17   Val to yourself, and he says, Marc, Attached is

18   the draft of the settlement agreement and the

19   joint motion to dismiss.

20           Do you see that?

21      A.   I do see it.

22      Q.   So Val forwarded to you a draft

23   settlement agreement on the TNAFlix/Liberty Media

24   dispute, correct?

25      A.   Correct.
```

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 369

 1      Q.    Now, it's your position in this

 2    arbitration that your proposal to Val to be paid

 3    $30,000 to not sue TNAFlix in the future wasn't a

 4    sincere proposal, but a negotiation strategy,

 5    correct?

 6      A.    I never -- yes, I never expected it to go

 7    through, and it didn't.

 8      Q.    And you never expected to broker the sale

 9    of TNAFlix and make a seven and a half percent

10    commission; that's negotiation strategy, also,

11    correct?

12      A.    Well, I did think there was an outside

13    chance it could happen, and, frankly, if it had

14    happened, I think you might have seen in one of

15    the earlier e-mails, that would have caused the

16    settlement amount to elevate to $100,000.

17           But my real belief was it wasn't going to

18    happen.

19      Q.    If the true goal of these negotiation

20    strategies was to get Liberty more settlement

21    money, and you're only pretending you're

22    interested in brokering the sale and being

23    conflicted out of TNAFlix, why even insert

24    yourself into the deal at all?  For example, the

25    broker deal, why not just tell Val he can take the

000413

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 370

1    whole 15 percent broker commission on the deal to
2    give him more incentive to resolve the case?
3        A.    Because when you play chess with Val, you
4    need to know how to play chess with Val.
5        Q.    So you don't think it would have been a
6    more effective strategy had you put more, quote,
7    gravy out there for him?
8        A.    I don't think Val would have believed it,
9    and, you know, I'm not going to say that I didn't
10   think there was hypothetically the possibility
11   that this could happen, but I don't think it
12   raised beyond hypothetical.
13       Q.    So Val sends you the draft settlement
14   agreement on January 26th of 2011, correct?
15       A.    That looks like it, yes.
16       Q.    And if you turn to the next exhibit,
17   Exhibit 360.
18       A.    Yes.
19       Q.    On February 1st of 2011, you send to Val,
20   the subject matter of this e-mail is Signed Sealed
21   Delivered.
22           Do you see that?
23       A.    I do.
24       Q.    You send back to Val the settlement
25   agreement signed on behalf of Liberty Media,

000414

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

```
 1   correct?

 2       A.   Yes, I do.

 3       Q.   And the settlement provides for $50,000

 4   to be paid to Liberty?

 5       A.   Yes.

 6       Q.   Correct?

 7       A.   Yes.

 8       Q.   So the settlement negotiations are over,

 9   you've got a deal on TNAFlix at this point, right?

10       A.   Yes.

11       Q.   Can you turn to Exhibit 361?

12       A.   I'm there.

13       Q.   This is an e-mail exchange between

14   yourself and Val Gurvits, correct?

15       A.   Correct.

16       Q.   And it's on February 2nd, 2011, so after

17   the settlement agreement has been signed by

18   Liberty, correct?

19       A.   Correct.

20       Q.   And the bottom e-mail, the first one on

21   this e-mail exchange between you and Val,

22   February 2nd, it appears an evening e-mail to Val,

23   Subject, TNA.

24           And what did you say to him?

25       A.   Are you saying on 361?
```

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 372

```
 1       Q.   361.
 2       A.   Yeah.  And you're working on a broker
 3   agreement that reflects you and me as the brokers
 4   for sale, 15 percent commission split, seven and a
 5   half for each of us.
 6       Q.   Your first e-mail that day was down at
 7   the bottom.  So how should we proceed?  Do they
 8   want a retainer letter from me?  Correct?
 9       A.   Correct.
10       Q.   And Val responded, he said, I think so.
11   I will e-mail them and confirm, correct?
12       A.   Correct.
13       Q.   And then you said to Val, Okay, and we're
14   working on a broker agreement that reflects you
15   and me as the broker for sale, 15 percent
16   commission split 7.5 percent for each of us,
17   correct?
18       A.   Correct.
19       Q.   So you are coordinating with Mr. Gurvits
20   how to finalize your hypothetical overtures to
21   serve as broker and to take payment to be
22   conflicted out, correct?
23       A.   Not to be conflicted out, to -- if this
24   had happened, which I still thought, like I said,
25   was hypothetical, it would have to be formalized.
```

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 373

```
 1       Q.   And the next exhibit, Mr. Randazza, 362.
 2       A.   Yes.
 3       Q.   That's an e-mail from February 11th from
 4  you to Mr. Gurvits.  Exhibit 362.
 5            And you say, Val, can you get this
 6  executed, correct?
 7       A.   Yes.
 8       Q.   And attached is a Legal Services Fee
 9  Agreement between your law firm, Randazza Legal
10  Group, and Youngtek Solutions that your -- that
11  you've drafted and are providing to Mr. Gurvits to
12  try to get Youngtek, which is TNAFlix, to sign,
13  correct?
14       A.   Yes.
15       Q.   And in Section 2, Scope of Services, you
16  wrote, Client hires attorneys to represent client
17  with respect to telephonic legal, intellectual
18  property, and business advice rendered to client.
19            Do you see that?
20       A.   Yes.
21       Q.   And a little bit further down, you say,
22  And sale of client's company and/or Internet
23  properties --
24       A.   Yes.
25       Q.   -- correct?
```

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

```
 1              And then in Section 4, which is titled
 2    Legal Fees --
 3         A.   Yes.
 4         Q.   -- your agreement provides for telephonic
 5    legal advice for a term of one year, correct?
 6         A.   Correct.
 7         Q.   And you say this representation shall be
 8    paid by an initial retainer of $36,000, which the
 9    parties agree is earned upon receipt, correct?
10         A.   Yes.
11         Q.   And then further down, there is a section
12    that's entitled Sale of Assets.
13              Do you see that?
14         A.   I do.
15         Q.   And in this provision, TNAFlix or
16    Youngtek would be agreeing that yourself and
17    Boston Legal Group have the exclusive right to
18    sell Youngtek Solutions and any of its online
19    assets, including TNAFlix, EMPFlix, and/or any
20    other online properties owned by the client for
21    one year, correct?
22         A.   Correct.
23         Q.   And under this deal, it says, This sale
24    shall entitle Randazza Legal and Boston Law to ten
25    percent of the sale price.
```

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

```
 1              Do you see that?
 2         A.   I do.
 3         Q.   So somehow along the way, it's gone from
 4    a potential 15 percent broker commission to a ten
 5    percent broker commission, correct?
 6         A.   Yes.
 7         Q.   And instead of getting $30,000 paid,
 8    $6,000 -- 5,000 -- excuse me -- $5,000 a month for
 9    six months, you are now getting $36,000, correct?
10         A.   Yes.
11         Q.   I don't, Mr. Randazza, see any provision
12    in here that's a carve out that would allow you to
13    represent Liberty Media if they had any disputes
14    with TNAFlix in the future, do you?
15         A.   No, I do not.
16         Q.   Can you turn to Exhibit 363?
17         A.   Okay.  I'm there.
18         Q.   Now, this is building on the last e-mail
19    that we looked at where you had forwarded to Val
20    the retainer agreement, the broker agreement for
21    TNAFlix on February 11th?
22         A.   Yes.
23         Q.   Later in this afternoon, Val responds,
24    and he says, I forwarded to my client.  Will let
25    you know what they say.
```

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 376

```
 1              Do you see that?
 2        A.    Yes.
 3        Q.    And you respond to Val, and you say,
 4   Please prevail upon them that time is of the
 5   essence.
 6              Do you see this?
 7        A.    I do.
 8        Q.    Time is of the essence with respect to
 9   this hypothetical sale of TNAFlix where you don't
10   really have a client that's interested in buying
11   them --
12        A.    Yes.
13        Q.    -- correct?
14              Okay.  Can you turn to the next exhibit,
15   364?
16        A.    Yes.
17        Q.    This is an e-mail from you to Mr. Gurvits
18   on February 15th, 2011, where you forwarded a
19   broker agreement to Mr. Gurvits, correct?
20        A.    I see it, yeah.
21        Q.    So there is no longer a piece to this
22   where you are going to be retained by counsel for
23   Oron, this is purely on the broker end of things,
24   correct?
25        A.    I believe you misspoke when you said
```

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 377

```
 1    Oron.

 2         Q.   I'm sorry.  TNAFlix.

 3         A.   Correct.

 4         Q.   And did you draft this agreement,

 5    Mr. Randazza?

 6         A.   I don't recall if I was the author of it.

 7         Q.   So you forwarded to -- you did forward it

 8    to Mr. Gurvits?

 9         A.   It looks that way, yes.

10         Q.   Under recitals, it says, Whereas, RLG has

11    indicated that it is aware of certain prospective

12    buyers who may be interested in purchasing the

13    assets or stock of the company, correct?

14         A.   Yes.

15         Q.   And then do you see under the Commission

16    section, Number 2, is providing for you and

17    Mr. Gurvits to split a ten percent commission on

18    the sale of Youngtek, correct?

19         A.   I do.

20         Q.   This is a lot of work you are going

21    through just to thwart your allusive being a

22    broker and taking a bribe, when the settlement of

23    TNAFlix has already been accomplished; don't you

24    think?

25         A.   Doesn't look like a lot of work to me.
```

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

1    Most of this is standard.  Just find and replace.

2        Q.   You, Mr. Randazza, failed the multistate

3    profession responsibility examination in Nevada

4    the first time you took it, correct?

5        A.   I did.

6        Q.   A settlement with Liberty Media got

7    executed, but your side deals benefiting yourself

8    to be retained by TNAFlix and to become a broker

9    for them, they never get finalized, right?

10       A.   Correct.

11       Q.   And you received a 25 percent bonus on

12   the $50,000 settlement reached with TNAFlix from

13   Liberty Media, correct?

14       A.   I did.

15       Q.   And you received your salary during the

16   entire time you were working on the TNAFlix

17   dispute for Liberty Media, including the time you

18   were spending trying to finalize your side deals

19   with them for yourself, correct?

20       A.   If -- I may have spent time while there,

21   yes.

22       Q.   Maybe it would have worked out better for

23   you if you were able to get your retainer

24   agreement signed before the settlement agreement

25   was signed, then you would have been assured that

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

1    you would be retained by TNAFlix and be paid that

2    money; don't you think?

3            ARBITRATOR HABERFELD:  Let me hear back

4    the question.  Read it back, please, Ms. Reporter.

5            (Whereupon, a recess was taken.)

6            ARBITRATOR HABERFELD:  Do you know the

7    question?

8            THE WITNESS:  Not at all.

9    BY MS. KRINCEK:

10    Q.    Do you need her to reread it again?

11    A.    No.  I don't understand the question.

12    Q.    So the way it worked out with TNAFlix,

13    you didn't send your retainer agreement for the

14    $36,000 payment until after the settlement

15    agreement with Liberty and TNAFlix was signed off,

16    correct?

17    A.    I don't remember the chronology, but I

18    think that's true.

19    Q.    Do you think you would have had a better

20    chance of getting your retainer agreement signed

21    off if you had sent it before you sent the

22    settlement agreement?

23    A.    No.

24    Q.    I'm just going to move on to a different

25    topic briefly, and that's the Megaupload matter.

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

1    And for this, I just wanted to ask you a couple

2    questions about an exhibit that Mr. White looked

3    at with you, Exhibit 53, in Complainant's.

4        A.   Okay.  Okay.  I'm there.

5        Q.   Exhibit 53.  And I'm going to be

6    referring specifically to the page that's Bates

7    stamped -- looks like there's a typo in the Bates

8    stamping, but it's ECM3461.

9        A.   Okay.  I'm there.

10       Q.   And do you recall, Mr. Randazza, that the

11   Megaupload dispute that you handled on behalf of

12   Liberty Media happened in between the TNAFlix

13   matters and the Oron matters?

14       A.   Yes.

15       Q.   So on the page that's Bates stamped 3461,

16   and this is part of an e-mail communication from

17   you to the attorney for Megaupload on August 22nd,

18   2011, third paragraph down, you say, I recognize

19   that one of your client's goals is to take me out

20   of future games.  Judge Lynch communicated that,

21   and you have, as well.

22           Do you see that?

23       A.   Yes.

24       Q.   Then you tell Mr. Rothken, In order to

25   address any of your clients' concerns about future

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 381

1    suits, I am blocking off some time on

2    September 5th, 2011, which should be sufficiently

3    beyond the wire date for my client to consider the

4    matter closed.  I will make myself available for

5    an hour any time between 8:00 a.m. and 6:00 p.m.

6    PDT to have a conversation with your client about

7    assisting them in putting some protections in

8    place to counter future attacks from other

9    companies.

10           I think that I have some good ideas,

11   which would prove useful to them, and which may

12   act as a prophylactic, if implemented, from future

13   infringement suits.  Naturally, to share those

14   ideas, I will need Mega to share some confidential

15   information with me.  And I believe that

16   possession of that information in that context

17   will place me in a position of not being able to

18   represent other companies against them, as the

19   receipt of that confidential information in the

20   course of representation would make it unethical

21   for me to later represent another party against

22   them.

23           Do you see that?

24   A.   Yes.

25   Q.   After that paragraph, you say, However, I

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 382

```
 1    must make it clear that I cannot come to any
 2    specific terms about that while there is still
 3    unresolved business between Mega and Corbin,
 4    correct?
 5        A.   I do.
 6        Q.   And at the bottom of ECM3461, you write
 7    to Ira Rothken, However, the same ethics that do
 8    not make it possible for me to cut corners on the
 9    "conflict out" provision will be in place after
10    the agreement is signed.  I did not get where I am
11    by having a reputation for being someone who would
12    stab others in the back.  When we have our
13    conversation, your clients shall be given every
14    opportunity to discuss retaining me as one of
15    their attorneys.  Once we come to an understanding
16    and an agreement on that front, your clients will
17    have gained both the immediate comfort of knowing
18    that I cannot -- that I not only cannot come after
19    them, but that I will be duty-bound to protect
20    them.
21             Do you see that?
22        A.   I do.
23        Q.   So you are telling Mr. Rothken that as an
24    ethical attorney, they have your word that you
25    will give them the opportunity to conflict you out
```

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 383

```
 1   after the settlement is finalized with Liberty,
 2   fair?
 3       A.   Yeah, that I would speak with them, yes.
 4            THE WITNESS:  Can we take a brief break,
 5   just five minutes?
 6            ARBITRATOR HABERFELD:  Are you --
 7            MS. KRINCEK:  That's fine.  I was going
 8   to move on to a different topic, so that's fine.
 9            ARBITRATOR HABERFELD:  Are you completed
10   with this segment?
11            MS. KRINCEK:  I am.
12            ARBITRATOR HABERFELD:  Let's take a short
13   break.  Ten minutes.
14            (Whereupon, a recess was taken.)
15            ARBITRATOR HABERFELD:  Back on the
16   record.
17   BY MS. KRINCEK:
18       Q.   Mr. Randazza, the next topic that I
19   wanted to ask you questions about is related to
20   the settlement of the Oron dispute that you
21   handled on behalf of Liberty Media.  So through
22   this arbitration proceeding, you are seeking a
23   25 percent contractual bonus based upon the
24   proceeds of a settlement that was entered with
25   Oron, correct?
```

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 384

```
 1        A.    Correct.

 2        Q.    And you filed suit against Oron on behalf

 3   of Liberty Media in 2012 alleging that Oron

 4   infringed upon Liberty's copyrighted works,

 5   correct?

 6        A.    That was the gist of it, yes.

 7        Q.    Stevan Lieberman represented Oron

 8   initially, correct?

 9        A.    Yes.

10        Q.    If you will turn to Exhibit 345.

11        A.    Yes.  I see it.

12        Q.    You participated in settlement

13   negotiations with Mr. Lieberman that resulted in

14   Mr. Lieberman sending to you this document that's

15   Exhibit 345, correct?

16        A.    Correct.

17        Q.    And that Liberty authorized you to

18   execute the agreement on its behalf, correct?

19        A.    Commanded me to.

20        Q.    And you did so, and you returned the

21   executed document to Mr. Lieberman, correct?

22        A.    I did.

23        Q.    And Oron, under this agreement, was to

24   pay Liberty Media $550,000, correct?

25        A.    Correct.
```

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 385

```
 1        Q.   And Section 2 of this agreement had you

 2   subject to a personal penalty for early transfer

 3   to anyone, including Liberty or Excelsior,

 4   correct?

 5        A.   Yes.

 6        Q.   And part of the settlement terms included

 7   Liberty's agreement to --

 8        A.   Wait, wait, wait.  I'm sorry.  Could you

 9   repeat that question?  I think I might have

10   answered it inaccurately.

11        Q.   Sure.  Section 2 had you subject to a

12   personal penalty for early transfer to anyone of

13   the money, including to Liberty or to Excelsior?

14        A.   Okay.  Yes.

15        Q.   And part of the settlement terms included

16   Liberty's agreement to dissuade others from

17   bringing suit against Oron, correct?

18        A.   Correct.

19        Q.   That's in Paragraph 10.

20        A.   Yes.

21        Q.   Paragraph 12 of the agreement that you

22   executed on Liberty's behalf also has a provision

23   in there that Liberty is going to review actual --

24   is going to conduct a review of the actual files,

25   shows that there's -- sorry.
```

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 386

```
 1            Liberty agrees to announce publicly that
 2    after a careful review of the facts they believe
 3    Oron is protected by the DMCA safe harbor and that
 4    a review of the actual files shows that there
 5    never was any child porn on Oron's site.
 6            That's one of the settlement terms?
 7       A.   That's one of the terms.
 8       Q.   And Paragraph 13, Liberty and Oron agree
 9    that the parties will craft a joint letter for
10    publication stating that the parties are joining
11    together in the fight against child porn and
12    copyright infringement, correct?
13       A.   Yes.
14       Q.   Now, the child -- you testified earlier
15    that the child pornography issue was related to
16    Oron's defamation claim against PornGuardian,
17    correct?
18       A.   I believe we raised it in the -- in the
19    statements of facts in our case against Oron.
20       Q.   "Our case" meaning the case where you
21    were representing PornGuardian or the case where
22    you were representing Liberty Media?
23       A.   No, there was never a case where I was
24    representing PornGuardian.  I mean in the Liberty
25    Media case.
```

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 387

```
 1        Q.    But you were representing PornGuardian in
 2   its dispute with Oron, correct?
 3        A.    Yes.  I don't believe I was at this
 4   point.
 5        Q.    So what statement of facts on behalf of
 6   Liberty Media referenced child pornography on
 7   Oron?
 8        A.    I don't recall, but I do believe that
 9   there was something in there that we had noted
10   that they didn't -- I often put in allegations
11   that these companies that were allegedly stealing
12   a lot of pornography were not adhering to 18 USC
13   Section 2257, which is the recordkeeping
14   requirement for adult entertainment productions,
15   and I think we used that as sort of a bit of
16   salacious narrative.
17        Q.    Well, I'm not sure what that has to do
18   with a child pornography allegation by Liberty
19   Media, but --
20        A.    Well, that's a child pornography
21   violation.
22        Q.    Well, regardless, Oron had accused
23   PornGuardian of defamation, and part of that claim
24   entailed an allegation that PornGuardian was
25   accusing them of having child pornography on their
```

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 388

```
 1   site, correct?

 2       A.   That is my recollection, yes.

 3       Q.   Oron subsequently claimed that this was

 4   not a binding settlement agreement, correct?

 5       A.   They did.

 6       Q.   And you filed a motion, and Judge Navarro

 7   in Federal Court entered an Order finding the

 8   agreement to be enforceable on August 7th of 2012,

 9   correct?

10       A.   Correct.

11       Q.   And after that, you filed a motion for

12   attorney's fees against Oron on behalf of Liberty,

13   correct?

14       A.   Correct.

15       Q.   And Liberty was granted its attorney's

16   fees by Judge Navarro, correct?

17       A.   Correct.

18       Q.   And the amount of fees awarded was a

19   little over $130,000 by Judge Navarro, correct?

20       A.   Correct.

21       Q.   Now, you did eventually receive the

22   $550,000 settlement amount from Oron into your

23   trust account, correct?

24       A.   I did.

25       Q.   You did not, however, receive any
```

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 389

```
 1   attorney's fee award from Oron into your trust

 2   account, correct?

 3       A.    No.  By that point, they had -- by the

 4   time the entitlement to it had been established, I

 5   was terminated.

 6       Q.    And Oron advised you that it planned to

 7   appeal Judge Navarro's ruling on the attorney's

 8   fee award, correct?

 9       A.    I believe they did.

10       Q.    Can I have you turn to Exhibit 377?

11       A.    I'm there.

12       Q.    Exhibit 377 is an e-mail from yourself to

13   Stevan Lieberman on August 7, 2012, correct?

14       A.    Correct.

15       Q.    And you communicated to Mr. Lieberman

16   that if Mr. Oron would like to wire us the

17   $550,000 within 24 hours, we will withdraw our

18   motion for fees.

19            Do you see that?

20       A.    I do.

21       Q.    So it appears at the point of this

22   e-mail, you hadn't yet received Judge Navarro's

23   ruling awarding you attorney's fees, correct?

24       A.    Correct.  I think we had just filed it.

25       Q.    And then in the last e-mail,
```

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

1    Mr. Randazza, you say to Oron's counsel, And if
2    Oron would like someone to show them how not to
3    get sued in the future and would like to have some
4    more of my playbook, they are welcome to contact
5    me directly or through you.  I make a much better
6    friend than enemy, correct?
7        A.    Correct.
8        Q.    Is this more settlement strategy that you
9    are engaging in with this statement?
10       A.    It is.
11       Q.    So you had no expectation that you would
12   actually be retained by Oron; is that correct?
13       A.    I don't think it would be honest for me
14   to say that I didn't think there was a
15   hypothetical chance, as in every one of these
16   other ones that you've seen and ones you haven't
17   brought up, as well.  Nevertheless, it was my
18   experience at that point that that didn't ever
19   happen.
20       Q.    This is the first time in negotiations
21   with Oron over the litigation where the topic of
22   you assisting Oron was raised, correct?
23       A.    No, that's not correct.
24       Q.    Can you point me to any written
25   communications where counsel for Oron ever raised

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 391

1  this issue earlier?

2      A.   I cannot -- I cannot recall any, but

3  there may be some in the file, but I do recall

4  speaking with Lieberman about this.

5      Q.   So you are not aware of any documentation

6  about communications prior to this initiated by

7  Oron about working with you, correct?

8      A.   Sitting here right now, I cannot recall

9  any particular documents.

10     Q.   Can you go to Exhibit 376?

11     A.   Okay.  Here we go.  Okay.

12     Q.   This is another e-mail from you to

13  Mr. Lieberman regarding the Oron matter on

14  August 7th, 2012, and you say, Stevan, Liberty

15  smells blood now.

16         Do you see that?

17     A.   I do.

18     Q.   Part of the way down you say, I suggest

19  that Oron makes an offer of something to cover the

20  fees expended in the fight since the motion to

21  enforce has been filed.

22         And when you are talking about to cover

23  the fees, you are talking about the attorney's

24  fees that Liberty has expended, correct?

25     A.   Correct.

000435

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 392

1      Q.   And in the bottom paragraph you say, Tell
2  Oron that they're going to have to extend an olive
3  branch.  I don't give a shit how much it is.  I
4  don't get paid more for it, correct?
5      A.   Correct.
6      Q.   I don't recall, Mr. Randazza, when you
7  listed your damages on direct examination, that
8  you mentioned a portion of the -- claiming a
9  portion of the attorney's fee award that was never
10  received.
11      A.   Yes.
12      Q.   Is that part of the damages you are
13  claiming in this matter?
14      A.   It is.
15      Q.   That's the part that here you are saying
16  you don't get paid more for it, correct?
17      A.   That's what I'm telling Stevan.
18      Q.   Well, you wouldn't lie to opposing
19  counsel, would you?
20      A.   Yes, I would.
21      Q.   Can you please turn to Exhibit 366?
22      A.   I'm there.
23      Q.   This is an e-mail that you sent to
24  Mr. Lieberman also on August 7th, 2012, correct?
25      A.   Yes.

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 393

```
 1      Q.    Okay.
 2      A.    At 8:43 p.m. yes.
 3      Q.    You say, I just got a call from our Hong
 4   Kong counsel.
 5            Do you see that?
 6      A.    I do.
 7      Q.    And that's referring to the Gall Law Firm
 8   that you had retained to represent Liberty Media
 9   in the Hong Kong proceedings, correct?
10      A.    Correct.
11      Q.    Number 1 you say, They spent 80K so far
12   in USD.
13            Does that mean US dollars?
14      A.    That's what that means.
15      Q.    Liberty is going to want a little more
16   than 25K to satisfy them on that.  Do what you
17   can, correct?
18      A.    Yes, correct.
19      Q.    And in Paragraph 2, you're proposing that
20   Oron pay to Liberty $650,000, correct?
21      A.    Correct.
22      Q.    And that the money be transferred from
23   Oron's HSBC account in Hong Kong to Liberty
24   Media's Hong Kong attorney's account, correct?
25      A.    Correct.
```

000437

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 394

```
 1        Q.   And Paragraph 3 you say, Then whatever
 2   you guys -- seems like a typo -- whatever you guy
 3   pay me to retain me would come from your PayPal
 4   account and would have no real relevance to that.
 5        A.   Yep.
 6        Q.   You say, I spoke to my partner, who was
 7   adamant that we should earn 100K if we're to never
 8   be able to sue FF Magnat, Bochenko, Novafile.com,
 9   Oron.com, et cetera, forever and ever.  I got him
10   to go with 75K.  But, for that, we'll provide you
11   some really great value, including a jurisdiction
12   derailing plan that you'll drool over, correct?
13        A.   That's what that says.
14        Q.   And that's what you wrote to
15   Mr. Lieberman, Oron's counsel?
16        A.   That's what I wrote to Mr. Lieberman,
17   yes.
18        Q.   So you're proposing that whatever Oron is
19   going to hypothetically pay you should come out of
20   Stevan Lieberman's PayPal account, correct?
21        A.   Yeah.  I'm not only doing that there.
22        Q.   Excuse me.  I missed that.
23        A.   I'm not -- that's not all that I'm
24   proposing there.
25        Q.   The $650,000 to Liberty under this plan
```

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 395

```
 1    would go to Liberty's Hong Kong counsel's trust
 2    account, correct?
 3        A.    Correct.
 4        Q.    And the payment to you is going to
 5    Mr. Lieberman's PayPal account, correct?
 6        A.    Well, it would come from his.
 7        Q.    From his -- okay.
 8              The partner that you are referring to
 9    that was insisting on $100,000 and you are
10    representing you had to convince to agree to take
11    $75,000, that is Ronald Green, correct?
12        A.    Correct.
13        Q.    And the discussion with Ron that you are
14    referencing there, your testimony is that
15    conversation actually occurred between you and
16    Mr. Green, correct?
17        A.    I did think so during my deposition, yes.
18        Q.    And after your deposition, Mr. Green was
19    deposed, he denied that that conversation ever
20    took place, correct?
21        A.    That's what I heard.
22        Q.    In any event, you conveyed to
23    Mr. Lieberman that you should be paid 75,000 if
24    you are to never be able to sue FF Magnat, Oron,
25    Bochenko, et cetera, forever and ever, correct?
```

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

1      A.   I was also trying to scare him with this.

2      Q.   In the last sentence, Mr. Randazza, when

3  you reference a jurisdiction derailing plan, that

4  would make it more difficult for companies like

5  Liberty Media to obtain jurisdiction in the US

6  over Oron in the future, correct, that's what is

7  meant by a jurisdiction derailing plan?

8      A.   That's what I'm proposing.

9      Q.   You understood at the time of this e-mail

10 that it is unethical to negotiate as part of a

11 settlement to restrict your legal practice,

12 correct?

13     A.   That was my understanding.

14     Q.   So this e-mail, before we move on to the

15 next, was sent by you to Mr. Lieberman at

16 8:43 p.m.

17          Do you see that?

18     A.   I do.

19     Q.   Can you turn to the next exhibit,

20 Exhibit 367?

21     A.   I'm there.

22     Q.   So a few minutes after the last e-mail we

23 just looked at, you e-mail Mr. Lieberman, and you

24 say, Get this back to me ASAP.  As soon as I get

25 it back, I'll start moving everything else around.

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 397

```
 1              Do you see that?
 2       A.   I do.
 3       Q.   And then you attach to Mr. Lieberman's
 4  e-mail a retainer agreement between yourself and
 5  Oron, correct?
 6       A.   Yes, yes.
 7       Q.   Now, on the TNAFlix matter, you never got
 8  your retaining agreement signed after the
 9  settlement agreement was finalized, correct?
10       A.   Correct.
11       Q.   So here you are sending out your
12  retaining agreement before you've gotten to the
13  point of having a settlement agreement about the
14  600 or $650,000 drafted with Mr. Lieberman,
15  correct?
16       A.   Yes.  Direct your attention to
17  Paragraph C.
18       Q.   But it's correct that you haven't gotten
19  to the point where you've exchanged settlement
20  agreements about the 600, $650,000 that you've
21  been e-mailing about with Mr. Lieberman, correct?
22       A.   No.  We had a settlement already at this
23  point, as far as I was concerned.
24       Q.   And now you are negotiating in the past
25  e-mails that we have looked at for more money to
```

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 398

```
 1    go to Liberty Media --
 2        A.   Yes.
 3        Q.   -- in light of the attorney's fees award?
 4        A.   Correct.  I'm trying to get -- there
 5    wasn't an -- I don't think there was an award yet,
 6    but in light of the fact that I was seeking the
 7    fees.
 8        Q.   Okay.
 9        A.   But, yes.
10        Q.   So in this retainer agreement that you
11    send to Mr. Lieberman for Oron, under Number 1
12    you've got a few conditions down there, the first
13    one is that the client, meaning Oron, returns a
14    signed copy of the agreement to you, correct?
15        A.   Correct.
16        Q.   And then the second condition is that
17    Oron pays the initial retainer fee of $75,000
18    called for under Paragraph 5, and it's retained in
19    your trust account, correct?
20        A.   Yes.
21        Q.   And then the third condition is that Oron
22    resolves all matters without limitation with
23    respect to Liberty Media Holdings, correct?
24        A.   Correct.
25        Q.   So you're tying the settlement of the
```

000442

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 399

```
 1    Oron and Liberty dispute to your retainer
 2    agreement, correct?
 3         A.   I'm dangling that in front of him to get
 4    the money as quickly as I can.
 5         Q.   They're both referenced in the same
 6    document.  This document deals with you being
 7    retained by Oron, and also Oron resolving its
 8    dispute with Liberty as a condition of this
 9    agreement being entered, correct?
10         A.   They need to do that first, yes.
11         Q.   Under Scope of Services --
12         A.   Yes.
13         Q.   -- around the middle of the paragraph,
14    you say, The initial retainer will give client
15    advice and counsel for a period of 30 days
16    immediately following the execution of this
17    agreement, correct?
18         A.   Correct.
19         Q.   So for 30 days' work, you are going to
20    earn $75,000, correct?
21         A.   If it ever happened.
22         Q.   And on the next page, under Legal Fees,
23    Mr. Randazza --
24         A.   I'm sorry.  Can you specify what you mean
25    by "you"?  You don't -- do you mean me
```

000443

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 400

1    individually or everybody at the firm?

2        Q.    I think we understand what that means.

3             But if you can turn to the next page on

4    legal fees.

5        A.    Okay.

6        Q.    Subsection A, An initial retainer of

7    $75,000, which the parties agree is nonrefundable

8    and earned upon receipt.

9             That was the nature of the financial

10   arrangements set forth in this agreement, you

11   fully earned the $75,000 upon receipt, correct?

12       A.    Yep.

13       Q.    There is no provision that I see in this

14   agreement precluding a conflict from preventing

15   you from representing Liberty adverse to Oron in

16   the future, correct?

17       A.    Correct.

18       Q.    And you testified that your experience in

19   the industry is that it is common for opposing

20   counsel to offer money to conflict you out,

21   correct?

22       A.    Yes.

23       Q.    Do you supposed that could be because you

24   are willing to negotiate with them for that

25   arrangement?

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 401

```
 1        A.    No, I don't suppose that.

 2        Q.    You never received permission from

 3   Liberty to negotiate for this retainer from Oron,

 4   correct?

 5        A.    I never discussed it with them

 6   explicitly.

 7        Q.    You never received permission from them

 8   to represent Oron, correct?

 9        A.    I don't think I did.

10        Q.    Can you turn to Exhibit 372?

11        A.    Okay.  I'm there.

12        Q.    And this, again, 372 is your Bar response

13   to the Florida State Bar.

14        A.    Okay.

15        Q.    If you can turn to the second page, which

16   for the record is EMC1606.

17        A.    I'm there.

18        Q.    The section that's labeled The $75,000

19   Bribe.

20              Do you see that?

21        A.    Yes.

22        Q.    Can you please read the third and fourth

23   paragraph -- third and fourth paragraphs?

24        A.    From July through August 2012, Liberty

25   and Oron litigated over whether the settlement
```

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

```
 1    agreement was actually a binding settlement
 2    agreement.  In early August, the court held that
 3    the settlement agreement was valid and entered
 4    judgment in Liberty's favor, which was collected
 5    from Oron's PayPal account, and remains in
 6    Randazza's trust account today.
 7            Oron appealed this decision.  As part of
 8    a blanket resolution of the whole matter, Oron's
 9    successor counsel suggested a payment that would
10    include $75,000 for Randazza to not represent
11    others against the site.  Randazza did not seek or
12    solicit this payment; it was offered by Oron's
13    counsel.  In fact, this is a frequent issue in
14    litigation involving Liberty.
15        Q.   You represented to the Bar that Oron
16    successor counsel suggested a payment that would
17    include 75,000 to you, correct?
18        A.   Correct.
19        Q.   But you were the one that told Oron's
20    counsel conflicting you out was going to require a
21    $75,000 payment; isn't that correct?
22        A.   I think that discussion started with
23    Stevan.
24        Q.   That was your e-mail where you said your
25    partner was insisting on $100,000, and you had to
```

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 403

1    convince him to take $75,000, correct?

2        A.   That's right.

3        Q.   So you came up with the $75,000 figure?

4        A.   I'm not sure, actually, who came up with

5    it first, but I do know that it was referenced in

6    that e-mail.  But this was, what, three years ago?

7        Q.   Well, actually, you wrote this in -- this

8    was written in 2013, correct?

9        A.   I'm saying the conversation was at least

10   two years ago, three years ago.

11       Q.   You had all the e-mails about your

12   communications, correct?

13           MR. WHITE:  I'm sorry.  Could I have that

14   question read?

15       (Whereupon, the pertinent part of the record

16         was read back by the court reporter.)

17           THE WITNESS:  Actually, no.  There are a

18   number of e-mails that are missing.

19   BY MS. KRINCEK:

20       Q.   But you produced -- the e-mails that we

21   just looked at, you produced them in this

22   litigation after we produced them, you produced

23   copies of them?

24       A.   Yes.

25       Q.   The statements to the Bar that you did

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 404

```
 1   not seek or solicit the $75,000 payment, that's

 2   also not true, correct?

 3        A.   I did not initially seek or solicit

 4   payment.

 5        Q.   But --

 6        A.   They are the ones that began the

 7   discussion.

 8        Q.   But in that e-mail to Mr. Lieberman, you

 9   are telling him you are going to require $75,000

10   to never, ever, ever be able to sue Oron.com

11   again, correct?

12        A.   That's inaccurate.

13        Q.   What's inaccurate about it?

14        A.   What that is actually stating is that I

15   would be selling a certain degree of knowledge to

16   him for it.  It's not saying that I would do it in

17   order to be conflicted out.  That would be the

18   practical effect of it.  But if he wanted to buy

19   my knowledge, I was willing to sell it to him for

20   that much.

21        Q.   But you are seeking the $75,000 payment

22   in that e-mail, right?

23        A.   I don't think that's an accurate way to

24   describe it.

25        Q.   Let me have you look at Exhibit 405.
```

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 405

```
 1      A.   Okay.
 2      Q.   This, Mr. Randazza, is an e-mail,
 3   Exhibit 405, from Val Gurvits --
 4      A.   Yep.
 5      Q.   -- to you, and it's dated August 9th,
 6   2012.
 7           Do you see that?
 8      A.   Yes.
 9      Q.   So at this point it appears that Val
10   Gurvits takes over as primary counsel for Oron in
11   settlement negotiations, correct?
12      A.   Well, he revealed himself, yes.
13      Q.   He's now the primary person that you are
14   dealing with instead of Stevan Lieberman, right?
15      A.   I'm pretty sure he was the whole time,
16   but, yes, that's who I'm talking to directly now.
17      Q.   And Mr. Gurvits says, Here's my current
18   draft of the settlement agreement.
19           Do you see that?
20      A.   Yep.
21      Q.   And he actually attached a draft of the
22   settlement agreement to this e-mail, correct?
23      A.   Yes, he did.
24      Q.   Now, in this version of the settlement
25   agreement that Mr. Gurvits sent to you, in
```

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 406

```
 1    Section 1 on the page that's Bates stamped
 2    MJR20235 --
 3         A.   Uh-huh.
 4         Q.   -- that provides for Oron to pay Liberty
 5    Media $600,000.
 6              Do you see that?
 7         A.   I do.
 8         Q.   So that's $50,000 more than Liberty was
 9    getting under the settlement agreement that was
10    enforced by Judge Navarro, correct?
11         A.   Yes.  It was essentially he was settling
12    the $131,000 attorney's fees motion for 50 grand.
13         Q.   And then it says, The settlement funds
14    will be paid as follows:  The parties will
15    stipulate that 675,000 US dollars of the frozen
16    funds in Oron's PayPal account will be transferred
17    immediately to the client trust account of Boston
18    Law Group, PC.
19              Do you see that?
20         A.   Yes.
21         Q.   And the client trust account of Boston
22    Law Group PC, that's Val Gurvits' trust account,
23    correct?
24         A.   Correct.
25         Q.   So $675,000 is going into Mr. Gurvits'
```

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

1    trust account, and $600,000 of that is the

2    settlement payment to Liberty Media, correct?

3        A.    Correct.

4        Q.    And then in the last paragraph of

5    Number 1, it says, Upon the completion of the

6    disbursal term, Boston Law Group shall pay the

7    settlement funds to Liberty Media or its attorney

8    and pay Attorney Marc Randazza, Attorney Randazza,

9    the remainder of the escrowed funds in accordance

10   with the terms herein.

11            Do you see that?

12       A.    That was Val's proposal.

13       Q.    All right.  And then on the next page,

14   MJR20236, in Section 2, says, Oron shall engage

15   Attorney Randazza in accordance with the terms of

16   the engagement agreement attached hereto as

17   Attachment B, effective as of -- it's got a blank

18   there.

19       A.    I'm sorry.  Can you tell me where you are

20   looking at specifically again?

21       Q.    MJR20236.

22       A.    Yes.

23       Q.    The Paragraph Number 2.

24       A.    Okay.  Got it.

25       Q.    Val's version of the settlement agreement

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 408

 1    that he sends to you.

 2        A.   Yes.

 3        Q.   It has this provision in there that says,

 4    Oron is engaging you in accordance with the terms

 5    of the engagement agreement that Val has as an

 6    attachment to this, correct?

 7        A.   Yes.

 8        Q.   So Val's proposing that the retainer

 9    agreement that you sent with the $75,000 payment

10    be attached to this settlement agreement, right?

11        A.   That appears to be Val's proposal.

12        Q.   And then Val's also proposing that this

13    sentence be in here, Liberty hereby consents to

14    such engagement.

15             Do you see that?

16        A.   Yes.

17        Q.   And then in Paragraph 3, there's also a

18    provision that says, Upon the completion of the

19    disbursal terms, Boston Law Group shall pay

20    Randazza a bonus of 50,000 US dollars out of

21    escrowed funds.

22             Do you see that?

23        A.   I do.

24        Q.   You weren't anticipating at this point

25    that your retainer agreement was going to actually

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 409

 1    be referenced and attached as an exhibit to the

 2    settlement agreement you were going to have to

 3    give to Liberty Media; is that correct?

 4        A.   I wasn't anticipating that the engagement

 5    would be attached?

 6        Q.   Right.

 7             ARBITRATOR HABERFELD:  Why don't you --

 8    why don't you restate the question with a time

 9    more specifically in the preface?

10             MS. KRINCEK:  Sure.

11             ARBITRATOR HABERFELD:  At what point?

12    BY MS. KRINCEK:

13        Q.   So at this point when Val is forwarding

14    you the draft settlement agreement, which you

15    potentially have to show to Liberty Media to get

16    approved, correct?

17        A.   Correct.

18        Q.   He's got attached the engagement

19    agreement that provides for you to get $75,000,

20    correct?

21        A.   Actually, a lot more than that, from the

22    looks of it.

23        Q.   Okay.

24        A.   75, and then there's 50 here, and then

25    there's another 50 in Paragraph 6.  So it looks

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 410

```
 1    like I get 175,000 personally under this -- under

 2    this proposal.

 3         Q.   Now, you were concerned that you were

 4    going to have to show Liberty Media a draft

 5    settlement agreement that said that you were

 6    getting $75,000; is that correct?

 7         A.   I wasn't concerned about that, and it was

 8    a -- and from the looks at this, it was 175,000,

 9    not just 75,000.

10              ARBITRATOR HABERFELD:  Did you get an

11    answer to your question?

12              MS. KRINCEK:  It's fine.

13              ARBITRATOR HABERFELD:  Let's have it read

14    back, or you just want to let it go?

15              MS. KRINCEK:  I can let it go.

16              ARBITRATOR HABERFELD:  All right.  Let's

17    go to the next question.

18    BY MS. KRINCEK:

19         Q.   Can you turn to Exhibit 406?

20         A.   Yes, I'm there.

21         Q.   This is an e-mail exchange between you

22    and Mr. Gurvits on August 9th, soon after he has

23    forwarded to you the draft settlement agreement

24    that attaches your retaining agreement, correct?

25         A.   Correct.
```

Arbitration Proceedings  ~ Volume II ~  February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page  411

```
 1       Q.    And you e-mail Mr. Gurvits, and you say,
 2   After consulting with ethics counsel, I must
 3   modify one part of our discussion.  Please inform
 4   Oron that my prior offer to represent them is
 5   revoked.  It is not that I would not consider it
 6   in the future, but I think that even discussing it
 7   at this point creates an ethical gray area that I
 8   would rather not be in.
 9           As you are aware, it is ethically
10   improper to enter agreements that restrict an
11   attorney's right to practice.  I think that having
12   that issue even being contemplated at this point
13   is premature and can sour the whole deal,
14   potentially even making the entire agreement
15   unenforceable.
16           You say, I guess I will just have to
17   realize that if they do not get some of the
18   benefits that they had hoped to get, that I will
19   not get $75,000.  That is a hell of a lot of
20   money, so they can probably consider my possible
21   incentives and act accordingly.  Given that I know
22   that I have a $75,000 pot of gold at the end of
23   the rainbow, one could guess how I might be
24   incentivized to behave.  However, I can make no
25   representations in that regard.
```

000455

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 412

```
 1            That's what you wrote to Mr. Gurvits,
 2   correct?
 3       A.   It is, yes.
 4       Q.   And you didn't need at this point to
 5   consult with ethics counsel to figure out that
 6   negotiating for a payment to conflict you out or
 7   negotiating for a payment in connection with a
 8   settlement agreement is unethical, right?
 9       A.   I did, because it seemed like we were
10   structuring it in a way that would be okay.  But
11   it was my understanding after looking into it that
12   it shouldn't go forward that way.
13       Q.   What was wrong with it?  What was wrong
14   with the deal the way it was structured?
15       A.   Well, first of all, the -- I think the
16   $175,000 made it clear that it was so over the
17   top, that I think Val was overplaying his hand.  I
18   didn't quite know what he was doing, but it
19   didn't -- it just didn't smell right to me, and I
20   didn't want to get near that fence.
21       Q.   Was the fact that you were going to be
22   getting $75,000 a problem?
23       A.   No, because ultimately I didn't expect
24   any of that to happen.  Again, this is a theme you
25   see with Val.
```

Arbitration Proceedings  ~ Volume II ~  February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page  413

```
 1      Q.   So Val responds to your e-mail, and he

 2  say, Understood.  I will take care of it in a way

 3  that addresses your concerns, correct?

 4      A.   Correct.

 5      Q.   Can I have you turn to Exhibit 368?

 6           ARBITRATOR HABERFELD:  Are you at a

 7  convenient breaking point, or do you want to keep

 8  going?

 9           MS. KRINCEK:  No, that's fine.  We can

10  break here.

11           ARBITRATOR HABERFELD:  Are you sure?

12           MS. KRINCEK:  Yeah.

13           ARBITRATOR HABERFELD:  Let's take our

14  lunch recess, and see you back in an hour.

15           MR. WHITE:  Okay.  Thank you, Your Honor.

16           (Whereupon, a lunch recess was taken.)

17           ARBITRATOR HABERFELD:  Back on the

18  record.

19           Ms. Krincek?

20  BY MS. KRINCEK:

21      Q.   Mr. Randazza, before we broke for lunch,

22  we had left off, we had just looked at

23  Exhibit 406, which is an August 9th e-mail between

24  Val and yourself where after Mr. Gurvits sent you

25  a version of the settlement agreement that had
```

Arbitration Proceedings  ~ Volume II ~  February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page  414

```
 1   your retainer agreement with Oron attached as an

 2   exhibit, you responded to him about consulting

 3   with ethics counsel --

 4        A.   Uh-huh.

 5        Q.   -- and he responded to you, Understood, I

 6   will take care of it in a way that addresses your

 7   concerns.

 8             Can you please now turn to Exhibit 368?

 9        A.   Okay.  I'm there.

10        Q.   And I wanted to ask you about the top

11   e-mail on the first page of Exhibit 368, the Bates

12   stamp is EMC1568.

13             The e-mail exchange below that,

14   continuing on the next few pages, seem to be a

15   back and forth between yourself and Mr. Gurvits

16   about where the settlement money to Liberty is

17   going to be maintained, whether it's going to be

18   maintained by the court or in whose trust account,

19   yours or his.

20             Do you remember having that back and

21   forth with Mr. Gurvits?

22        A.   What page is this do you want me looking

23   at again?

24        Q.   Well, why don't you -- I'm going to ask

25   you about the top e-mail.
```

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 415

```
 1        A.   Okay.

 2        Q.   But I just wanted to get your general

 3   understanding about the rest of the e-mail string.

 4        A.   Okay.

 5        Q.   So if you want to read the rest of it,

 6   and then I can reask my question.

 7        A.   Okay.  So what's your question.

 8        Q.   So my question for you:  Is the rest of

 9   the e-mail string, you and Mr. Gurvits were going

10   back and forth to try and agree upon where the

11   settlement money for Liberty would be kept, in

12   whose trust account, or the court, or those type

13   of issues?

14        A.   That's what it looks like.

15        Q.   And then the top e-mail is an e-mail from

16   you to Mr. Gurvits on August 10th, 2012, Subject:

17   Re:  Agreement Oron.

18             Do you see that?

19        A.   Yes.

20        Q.   And you say, Okay.  Write up the stip.

21   I'm driving back from Phoenix.  We move $675,000,

22   correct?

23        A.   Yes.

24        Q.   And then you say, I think we can deal

25   with the other thing by saying the 75K is released
```

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 416

```
 1   to my trust for a settlement with me personally.

 2   It's not a retainer for services, but rather a

 3   settlement.  That might work.

 4        A.   Yes.

 5        Q.   You wrote that to Mr. Gurvits, correct?

 6        A.   I did.

 7        Q.   You're proposing that to cover up the

 8   fact that you are getting a $75,000 retainer

 9   payment from Oron by characterizing it as a

10   settlement, correct?

11        A.   That's entirely incorrect.

12        Q.   You testified yesterday on direct

13   examination regarding whether you had any personal

14   claims against Oron, that Oron had done some

15   pretty shady things against you personally.

16        A.   Yes.

17        Q.   Do you recall that testimony?

18        A.   I do.

19        Q.   Did you have any specific legal claims

20   against Oron to resolve?

21        A.   Nothing I thought I would ever actually

22   win.

23        Q.   Do you have any written communications

24   you can point us to where you asserted to Oron or

25   other counsel that you had any personal claims
```

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

1    against them?

2        A.    No.

3        Q.    Turn to Exhibit 407, please.

4        A.    Okay.  I'm there.

5        Q.    This is an e-mail from Mr. Gurvits to you

6    on August 12th, 2012, and he's attaching a

7    proposed settlement agreement in the Oron matter,

8    correct?

9        A.    Correct.

10        Q.    And he sent you this at 8:38 p.m.; is

11    that correct?

12        A.    Yes.

13        Q.    And Mr. Gurvits tells you in his e-mail

14    to you, As I indicated before, these terms shall

15    not become binding unless and until executed by

16    both parties and the signature pages exchanged by

17    no later than Monday, August 13th, correct?

18        A.    Correct.

19        Q.    If you will, in this same Exhibit 407,

20    flip forward to the page that's Bates stamped at

21    the bottom MJR20326.

22        A.    Okay.  I see it.

23        Q.    And I wanted to focus your attention on

24    the bottom portion of that page, Number 1, Oron

25    shall pay Liberty $600,000.

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 418

```
 1              Do you see that?
 2        A.    Yes.
 3        Q.    So that's consistent with the last
 4   version of the settlement agreement that we looked
 5   at where Liberty Media is getting $600,000,
 6   correct?
 7        A.    Yes.
 8        Q.    Now, the $75,000 payment earmarked for
 9   your -- for you or your firm in this version of
10   the settlement agreement, it provides that that
11   $75,000 is going to be transferred immediately to
12   the client trust account of Boston Law Group.
13              Do you see that?
14        A.    I do.
15        Q.    And the Boston Law Group trust account is
16   Mr. Gurvits' trust account, correct?
17        A.    Correct.
18        Q.    Gone from this version of the agreement
19   is any reference to the $75,000 being a payment
20   for you, correct?
21        A.    Correct.
22        Q.    And you still had not disclosed to
23   Liberty Media that your negotiations included you
24   potentially receiving a payment for $75,000,
25   correct?
```

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

```
 1        A.    Incorrect.

 2        Q.    Let me have you go to your deposition.

 3   Page 162.  I'm going to start at Line 14 on

 4   Page 162 through 16 -- Page 163, Line 3.

 5             Question:  Okay.  So I'm asking as far as

 6   you are concerned, though, the $75,000 that's

 7   going into Val's account --

 8             Answer:  Yes.

 9             Question:  -- that's money that you will

10   potentially receive if the retainer agreement that

11   you previously sent is executed.

12             Answer:  As I understood, that money

13   would -- first of all, I didn't -- I don't really

14   know at the point what Val was thinking.  I know

15   that that was going to come in if this all got

16   executed, and then I would disclose it to Jason.

17   It would probably be part of the settlement

18   agreement funds, and then I would get my bonus

19   based on the amount -- the total amount that came

20   in.

21        A.    Uh-huh.

22        Q.    So you say in here that if it all got

23   executed, then you would disclose it to Jason,

24   correct?

25        A.    Jason and I had already discussed it,
```

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 420

```
 1    though, because you might recall an e-mail before

 2    where I was talking about if it was a -- if it was

 3    payment for legal fees, I couldn't give it to

 4    Liberty, but if it was payment for a settlement, I

 5    could.

 6        Q.   What e-mail exchange are you referring

 7    to?

 8        A.   I don't recall exactly which exhibit it

 9    was, but you and I, I believe, went back and forth

10    on it earlier.

11        Q.   It sounds like you might be referring to

12    the e-mail exchange that occurred on August 29th

13    of 2012 -- or, I'm sorry -- August 13th of 2012,

14    after you presented the settlement agreement to

15    Jason in his office?

16        A.   That sounds right.

17        Q.   And when this agreement was sent to you,

18    which is Exhibit 407, this is the day before

19    August 12th, 2012.

20            Do you see that?

21        A.   Correct, yes.

22        Q.   So that e-mail communication you had just

23    referenced had not occurred, correct?

24        A.   Correct.  Conversations had, but not an

25    e-mail exchange.
```

000464

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 421

```
 1       Q.   What conversations had occurred?

 2       A.   That if it were paid, that he -- that he

 3  had offered to, quote, unquote, bribe me again,

 4  and that if it were paid to me as fees, I couldn't

 5  put it in the pot.  Jason said, Well, I would

 6  think that every dollar that comes in belongs to

 7  the company.  None of it belongs to you.

 8            Which is why Val and I were discussing

 9  let's just make it a settlement agreement with me,

10  that way if I get a settlement, that can be -- I

11  can do whatever I want with that.  But I can't

12  share fees with a nonlawyer.

13            Ultimately the math on this worked out to

14  it would change my bonus by, you know, $31,000, so

15  didn't ultimately matter.

16       Q.   Mr. Randazza, the communication that you

17  are just talking about with Jason about if it's

18  fees, it can't be paid to you --

19       A.   Yeah.

20       Q.   -- that's the August 13th, 2012,

21  communication, correct?

22       A.   That's the e-mail, but that's not the

23  conversation.  I don't have a recording of the

24  conversation I had with Jason.

25       Q.   So it's your testimony today that you had
```

000465

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

1    an earlier verbal undocumented conversation with

2    him prior to August 13th, and then you had a

3    repetitive documented communication with him on

4    August 13th?

5        A.    It is my testimony that I talked to Jason

6    about all of these facts any time I got some time

7    with him.  So I didn't record the exact date and

8    time of the conversation that I had with him three

9    years ago, but I had these conversations with him,

10   and I think that the e-mails show that.

11       Q.    So you can't be certain whether -- when

12   that conversation occurred, if it was before or

13   after August 12th of 2013?

14       A.    I cannot testify with mathematical

15   precision, but I can tell you it is my best

16   recollection that it did.

17       Q.    And you have no documentation to support

18   that contention, correct?

19       A.    Not that I have been able to dig up, no.

20       Q.    Before we move on to our next exhibit,

21   within this settlement agreement, can you please

22   turn to the page that's Bates stamped MJR20328?

23       A.    I am there.

24       Q.    And I wanted to ask you about the

25   paragraphs that are Numbered 9 and 10 of that

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 423

```
 1   agreement.  And Paragraph 9, there is still a
 2   provision in there about dissuading others from
 3   bringing suit against Oron.  It says, Attorney
 4   Randazza and Liberty will actively dissuade others
 5   from bringing suit against Oron and the parties to
 6   the Nevada and Hong Kong lawsuits, correct?
 7        A.   Yes, this was Val's proposal.
 8        Q.   And then Paragraph 10, Attorney Randazza
 9   and Liberty will actively assist Oron in sending
10   letters written by Oron and doing everything else
11   necessary to convince PayPal and other payment
12   processors to allow Oron to accept payment through
13   their service and to send letters to every company
14   and entity to whom Liberty or Randazza sent
15   letters pertaining to this matter.  No dishonest
16   statements will be required, correct?
17        A.   Yes.
18        Q.   Can you turn to Exhibit 369?
19        A.   I'm there.
20        Q.   Exhibit 369 is an e-mail that's your
21   response to the e-mail attaching the settlement
22   agreement from Mr. Gurvits that we just looked at,
23   correct?
24        A.   Yep.
25        Q.   And this happens on August 12th, 2012,
```

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

1    correct?

2       A.   Yep.

3       Q.   In the last line of your e-mail to

4    Mr. Gurvits is, Caveat to 9 and 10:  I'll do it if

5    Oron pays me.  75K ought to do it, correct?

6       A.   Yep.

7       Q.   Do you recall that on August 13th, 2012,

8    you presented Jason with the new version of the

9    Oron settlement agreement to review?

10      A.   I don't have any recollection of exactly

11   what happened on August 12th, 2013.

12      Q.   August --

13      A.   -- 13th, 2012.

14      Q.   I'm going to read from your deposition

15   transcript, Page 174.

16      A.   Yep.  Okay.

17      Q.   Line 24.  Question:  Exhibit 32, Marc, do

18   you recall that this is the settlement agreement

19   with Oron that you presented to Jason to review on

20   August 13th, 2012?

21           Answer:  Yes.

22           Do you see that?

23      A.   Yes.

24      Q.   So you did present the settlement

25   agreement to Jason to review on August 13th,

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 425

```
 1   correct?
 2        A.   That was my recollection at the time,
 3   yes.
 4        Q.   Can you turn to Exhibit 325?
 5        A.   Okay.  I'm there.
 6        Q.   Exhibit 325 is the settlement agreement
 7   that you presented to Jason on August 13th, absent
 8   the handwritten notations, correct?
 9        A.   Yes.
10        Q.   Jason reviewed the agreement and asked
11   you who was getting the $75,000, correct?
12        A.   That's what he wrote on this after the
13   fact.
14        Q.   Do you recall him reviewing the agreement
15   and then asking you who was getting the $75,000?
16        A.   Yes.  I thought that was strange.
17        Q.   And you explained to him that it was a
18   bribe to your law firm, correct?
19        A.   I said -- I think I said it was that
20   represented the bribe that we had talked about
21   before.
22        Q.   Your testimony today is that you have
23   specific recollection of saying to Mr. Gibson that
24   day that that is the bribe, and not a bribe to
25   you?
```

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 426

```
 1        A.    Jason and I had discussed the fact

 2    that --

 3        Q.    Can I get an answer to my question?

 4        A.    I'm sorry.  I can't answer if you are

 5    going to interrupt me during my answer.

 6        Q.    Well, your answer was not --

 7              ARBITRATOR HABERFELD:  At this point

 8    let's not have argument on this particular point

 9    at this particular time.

10              I would ask you, Mr. Randazza, to please

11    remember the conversation about your job as a

12    witness on cross.

13              THE WITNESS:  Sure.

14              ARBITRATOR HABERFELD:  I'm only reminding

15    you of it now because I think it's appropriate for

16    me to do so now.

17              I want you to listen to the question.

18              What was the last question?

19        (Whereupon, the pertinent part of the record

20         was read back by the court reporter.)

21              ARBITRATOR HABERFELD:  That's the

22    question.  Did you hear it?

23              THE WITNESS:  Yes.

24              ARBITRATOR HABERFELD:  What's your best

25    answer?
```

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 427

```
 1              THE WITNESS:  Repeat it again.
 2        (Whereupon, the pertinent part of the record
 3         was read back by the court reporter.)
 4              THE WITNESS:  I don't have a specific
 5   recollection of the exact quotations being used
 6   that day.  I do have a recollection of the
 7   conversation, and --
 8   BY MS. KRINCEK:
 9        Q.    And you explain --
10        A.    -- the facts that we exchanged.
11        Q.    And you explained to Mr. Gibson in
12   response to this inquiry about who the $75,000 was
13   going to, that it was a bribe to your law firm,
14   correct?
15        A.    The way I can honestly answer this
16   question is that this was not the first time Jason
17   and I had discussed this $75,000.
18        Q.    Are you saying that you and Jason
19   specifically had previously discussed a payment of
20   $75,000?
21        A.    No.  I'm specific -- I'm saying that
22   Jason and I had specifically discussed that Val's
23   at it again with his pay me not to represent
24   anybody against his client again.
25        Q.    That's the prior conversation that you
```

000471

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 428

1    had with Jason on this topic?

2         A.   More than one, yes.

3         Q.   Do you recall during this meeting where

4    you presented Jason with the settlement agreement

5    that Jason verbalized to you that he thought all

6    the money should be going to the company?

7         A.   My recollection is I gave him the

8    document, he said he would talk to me about it

9    later, and then he came into my office, and we

10   talked about it then.

11        Q.   Well, do you recall when he was in your

12   office that he told you that he thought all the

13   money should be going to the company?

14        A.   I do.

15        Q.   Do you recall at that time telling Jason

16   that you couldn't give him any part of the 75,000

17   if it was attorney's fees because that would be

18   unethical?

19        A.   If it was attorney's fees, yes.

20        Q.   You told Jason at that time you were

21   intending on using the money to pay the RLG,

22   Randazza Legal Group guys, correct?

23        A.   I don't think that's accurate.

24        Q.   Are you denying that you told him that?

25        A.   Yes.  I don't think that that's accurate.

Arbitration Proceedings  ~ Volume II ~  February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page  429

```
 1      Q.   You told Mr. Gibson that the $75,000 was
 2   to take care of the Randazza Legal Group people;
 3   you don't recall saying that to Mr. --
 4      A.   I recall asking him to pay them a bonus
 5   for all the hard work that they had done on the
 6   case because they were being -- they had worked
 7   all through into the night, but I don't think I
 8   made any specific representations about it being
 9   earmarked for that.
10      Q.   You could tell Jason was upset about the
11   $75,000 payment, correct?
12      A.   I didn't think that's what he was really
13   upset about, because his -- it was strange that he
14   was acting surprised about something that we had
15   talked about quite a bit.
16      Q.   Well, you just testified that you hadn't
17   specifically talked about a $75,000 payment,
18   right?
19      A.   The specific number, I do not recall
20   talking about the specific number.  I recall
21   discussing that Val was up to his old tricks
22   again.
23      Q.   And is it your contention that from that,
24   the company is supposed to glean that you've
25   negotiated and reached a deal to be retained by
```

000473

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

```
 1    Oron for a $75,000 payment?
 2         A.   I had not reached such a deal, so, no.
 3         Q.   Isn't it true that you could tell Jason
 4    was upset about the $75,000 because he made a face
 5    after he found out about it?
 6         A.   Again, I don't believe, and I didn't
 7    believe at the time that he was upset about that,
 8    because it was -- it was old news to him at that
 9    point.  I felt that it was pretextual, and he was
10    upset about something else.  What, I did not know.
11         Q.   Isn't it true because you knew that you
12    had been caught, and Jason was upset about the
13    fact you had negotiated a $75,000 bribe to
14    yourself, that at that point you told Jason you
15    would give it to the company?
16         A.   No, that is inaccurate.
17         Q.   Can you please turn to Exhibit 324?
18         A.   Okay.  I am there.
19         Q.   I want to ask you, Marc, first about the
20    portion of the e-mail that's from Mr. Gibson to
21    you on August 13th, 2012.  It starts on the bottom
22    of the first page of Exhibit 324, and it's Bates
23    stamped EMC157.
24              Do you see where I'm at?
25         A.   Uh-huh.  Yes, I see it.
```

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

```
 1        Q.    And Jason wrote to you, I'm going to be
 2   frank that my stomach is churning after reading
 3   the proposed agreement.
 4              Do you see that?
 5        A.    I do.
 6        Q.    If you turn to the second page of that
 7   exhibit, EMC158.
 8        A.    Yes.
 9        Q.    The second paragraph Jason wrote to you,
10   I'm not comfortable with how seemingly little we
11   are getting back for our investment compared to
12   what we would getting back spending our money on
13   any of those things -- other things listed above.
14   We are paying for virtually everything and taking
15   all of the risk and when it is all said and done,
16   all of these parties are standing there waiting to
17   diminish the company's share of the pie.
18              We feel pretty strongly that every dollar
19   that comes from a defendant should be ultimately
20   earmarked for the company since on top of any
21   bonus, it is responsible for paying for office and
22   equipment expenses, Bar fees, continuing education
23   expenses, travel expenses, court filings, Erika's
24   salary and benefits, investigation costs, your
25   salary and benefits.
```

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 432

```
 1            The whole "bribery" deal sits funny with

 2    us as it is written, especially when there is no

 3    guarantee we will even get the extra 75K from

 4    their attorney's trust fund.

 5            Do you see that?

 6        A.   I do.

 7        Q.   And do you still deny that you initially

 8    told Mr. Randazza (sic) that the money was for you

 9    and your firm, and then after he was upset said

10    you would give it to the company?

11            ARBITRATOR HABERFELD:  Please listen to

12    the question.  I may have misheard it.

13            Listen to the question.

14      (Whereupon, the pertinent part of the record

15        was read back by the court reporter.)

16            ARBITRATOR HABERFELD:  Did you catch it,

17    Ms. Krincek?

18            MS. KRINCEK:  Catch what?

19      (Whereupon, the pertinent part of the record

20        was read back by the court reporter.)

21            MS. KRINCEK:  Let me restate that.

22    BY MS. KRINCEK:

23        Q.   Do you still deny that you initially told

24    Mr. Gibson that the $75,000 was for you and your

25    firm, and after he was upset, then said you would
```

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 433

 1    give it to the company?

 2        A.    No.  I always told him that that was

 3    Val's proposal, so, no.

 4        Q.    In your response to Mr. Gibson, you told

 5    Mr. Gibson that your associate Jay DeVoy and

 6    partner Ron Green had not been paid for any of

 7    their work on Oron, correct?

 8        A.    I'm sorry.  Which exhibit?

 9        Q.    Same exhibit, your response to

10    Mr. Gibson's e-mail.

11        A.    Okay.  And, I'm sorry.  What was your

12    question again?

13        Q.    Yeah.  You conveyed to Mr. Gibson that

14    Jay DeVoy and Ron Green, the RLG people, hadn't

15    been paid for their work on Oron yet, correct?

16        A.    I know Ron didn't.  I don't think I was

17    intending to convey that Jay hadn't been paid.

18        Q.    Because he testified at his deposition

19    that he had been paid, correct?

20        A.    I don't know what he said at his

21    deposition, but I would confirm that Jay was on

22    salary, so Jay got paid.  Ron got paid only on

23    what was collected.

24        Q.    Ron, who you refer to and is identified

25    by your law firm as a partner, at this point was

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 434

```
 1   really a 1099 independent contractor, correct?
 2        A.   That is how he collected his pay, but he
 3   was -- I considered him to be my partner.
 4        Q.   He had no equity interest in Randazza
 5   Legal Group, correct?
 6        A.   He did not own any equity in it, no.
 7        Q.   And he only recently became an employee
 8   of the firm, correct?
 9        A.   We changed his -- we changed his
10   contract, yes, to make him a W-2 salaried employee
11   with a bonus structure rather than the way we had
12   it before.
13        Q.   When you got -- when you got Jason's --
14   this e-mail that we just looked at from Jason to
15   you on August 13th, after reading this e-mail, you
16   knew that Jason was upset about the $75,000
17   payment, correct?
18        A.   As I've testified before, I thought that
19   this was all a pretext for something else.
20        Q.   Can you turn to Page 181 of your
21   deposition?
22        A.   Okay.
23        Q.   Page 181, Line 1.  Question:  Still on
24   Page 2, Marc, about a little less than halfway
25   down, Jason wrote, The whole "bribery" deal sits
```

000478

Arbitration Proceedings ~ Volume II ~ February 10, 2015
***Marc J. Randazza vs. Excelsior Media Corporation***

Page 435

1    funny with us as it is written, especially when

2    there is no guarantee we will even get the extra

3    $75,000 from their attorney's trust fund.

4        A.    Yes.

5        Q.    Answer:  Yes, I see that.

6              Question:  Do you see that?

7              Answer:  I do.

8              Question:  You understood after reading

9    this e-mail that Jason was upset about the $75,000

10   payment, correct?

11             Answer:  Yes.

12             And this e-mail exchange, again, is on

13   August 13th, 2012, correct?

14       A.    Yes.

15       Q.    Can you turn to Exhibit 370, please?

16       A.    Okay.  I see it.

17       Q.    This is an e-mail exchange, the bottom

18   portion and the top portion is from August 14th,

19   2012.

20             Do you see that?

21       A.    I do.

22       Q.    Bottom portion, you e-mail Mr. Gurvits on

23   August 14th at 11:43 a.m., and you say, I have a

24   new ethical problem.  Trying to resolve it.

25             Do you see that?